IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAIʻI; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>                                               Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**<br><br>                                               Defendants. | Case No. **3:25-cv-06310-MMC** |

**DECLARATION OF ANGELA RODGERS**

## DECLARATION OF ANGELA RODGERS

**Angela Rodgers**, declares under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct:

### Professional and Agency Background

1. I am a Deputy Director of Programs for the Arizona Department of Economic Security (ADES). I am familiar with the information in the statements set forth below either through personal knowledge, in consultation with the ADES staff and/or ADES subcontractors, or from documents that have been provided to and reviewed by me.

2. As a Deputy Director, I oversee three divisions within ADES: Benefits and Medical Eligibility, Employment and Rehabilitation Services, and Child and Community Services.

3. Before becoming a Deputy Director at ADES, I served as the ADES Director for two years and over a decade as President and Chief Executive Officer of the Arizona Food Bank Network. Collectively, I have over 25 years of experience in human services operations, policy analysis, resource management and cross sector collaboration. I hold a master's degree in social work and a bachelor's degree in criminology and sociology.

4. ADES is Arizona's comprehensive social services agency. Its mission is strengthening individuals, families, and communities for a better quality of life. ADES carries out its mission through work with individuals, families, community and advocacy organizations, and state and federal partners to facilitate the safety and economic security of persons who qualify for ADES benefits and services in the State of Arizona.

5.  Among the programs administered by ADES is the Supplemental Nutrition Assistance Program (SNAP), which provides eligible households with monthly electronic benefits they can use to purchase nutritious food at authorized retail, online and convenience stores. By helping families fight food insecurity and meet one of their fundamental needs, they can focus on overcoming barriers to self-sufficiency.

**SNAP in Arizona**

6.  SNAP is a key part of Arizona's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In federal fiscal year 2024, an average of 950,978 people received SNAP benefits in Arizona each month, including 401,455 children and 135,677 elderly individuals. More than $2,029,794,041 in SNAP benefits were issued over the course of state fiscal year 2024.

7.  Pursuant to federal law, ADES is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising the day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

8.  Arizona expends approximately $152.5 million in administrative costs to run its SNAP program each year, approximately $74.759 million of which is reimbursed by the federal government. Arizona state general funds currently cover approximately $67.86 million in SNAP expenditures, and in-kind match contributions cover the remaining $9.854 million.

**USDA's Data Requests**

9.  As part of the SNAP application process, ADES collects and stores sensitive personally identifiable information ("PII") from applicants and recipients, including but not

limited to, home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income and resource information.

10. Arizona's statutes provide for the protection of the confidentiality of PII collected from applicants to programs that ADES administers, which includes SNAP. *See* Ariz. Rev. Stat. § 41-1959(A) (providing that "all personally identifiable information concerning any applicant, claimant, recipient, employer or client is confidential and shall not be released unless ordered by a superior court judge or provided for by rule of court" or "except as provided in" statutorily enumerated exceptions). In addition, the Arizona Legislature has protected information related to the SNAP program in particular, including by requiring the anonymization of SNAP-related data in required reports and deletion of that report after a certain time. *See* Ariz. Rev. Stat. § 46-297.02 (instructing that a required spending report of SNAP benefits "shall be de-identified to prevent identification of individual recipients" and must be "purge[d] … six months after the report is issued").

11. On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent ADES a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP." The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter

benefits received by date ranges." The letter further stated that the requested data would cover the period beginning January 1, 2020, through present.

12. On May 9, 2025, ADES was notified by its SNAP EBT contracted payment processor, Fidelity Information Services (FIS), that USDA was seeking to obtain SNAP participant data directly from FIS. On July 24, 2025, FIS informed ADES that they were aware of the July 23, 2025 USDA guidance and that FIS had not provided the requested data to USDA and did not intend to do so without ADES' express instruction.

13. On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database." 90 Fed. Reg. 26,521 (June 23, 2025).

14. The SORN announced that the USDA intended to collect the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

15. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

16. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

17. In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[1]

18. These uses are duplicative of existing systems. ADES already conducts these checks, using systems such as the Systematic Alien Verification for Entitlement ("SAVE") program. ADES also relies on other federal datasets to confirm eligibility. This includes the State Verification and Exchange System (SVES) and the State Online Query Internet (SOLQI) for social security verification as examples. ADES has also communicated to USDA about our plans to participate in the National Accuracy Clearinghouse (NAC), a federal clearinghouse designed to ensure that individuals do not improperly receive SNAP benefits from multiple states at the same time. 7 C.F.R. § 272.18. This implementation is planned for the first quarter of calendar year 2026.

19. On July 9, the USDA Secretary Brooke L. Rollins sent ADES a letter requesting the categories of records listed in the SORN and directing the state to produce the requested data starting July 24 and no later than July 30, 2025.

20. As prior USDA guidance recognizes, asking for sensitive information from participants threatens to chill participation in the SNAP program. *See* FNS Memo to SNAP Regional Directors re Conforming to the Tri-Agency Guidance Through Online Applications

---

[1] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf.

5

(Feb. 18, 2011), *available at* https://fns-prod.azureedge.us/sites/default/files/Tri-Agency_Guidance_Memo-021811.pdf. For that reason, USDA previously discouraged States from asking for citizenship, immigration status, and SSNs for nonparticipating household members in SNAP applications because these inquiries "may have a chilling effect on the pursuit of the application" and "deterred households from filing applications," and warning that "[f]ear and misinformation may deter many non-citizens from seeking benefits for which they are eligible - particularly if there are other members in the household who may be ineligible because of their immigration status." *Id.*

21. There is technical work that would need to be done to comply with USDA's data request. Given the scope and breadth of the request, clarifying and understanding the request and then collecting, validating, and transmitting the data would take time. This timeline is exacerbated due to the multiple sources ADES would need to pull the data from including the legacy mainframe system that ADES uses for SNAP.

22. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent ADES another letter, reiterating the USDA's data request. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

23. On July 28, 2025, Arizona along with several other states filed the present action in the Northern District of California challenging the USDA's actions.

24. On July 30, 2025, ADES wrote to USDA to advise that it would not be able to comply with the data request at this time in light of the pending litigation. ADES did not receive a response from USDA.

25. On August 12, 2025, Deputy Under Secretary Penn sent a letter to Arizona Governor Katie Hobbs informing her that because FNS had not received the participant data "the State of Arizona is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that Arizona could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

26. The August 12, 2025 letter further states: "In order for FNS to determine that Arizona has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Arizona will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Arizona fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

27. Currently, ADES and USDA each contribute 50% toward the administrative costs associated with delivering SNAP benefits in Arizona. If USDA withholds their share of administrative funds, currently $74.759 million, from Arizona, service delivery would be severely impacted. Arizona has a part time legislature which ended session in June of 2025. This

means to get any additional timely state funding to address the loss in federal funding, the state would need to pass an appropriations bill outside of the normal state budget process through a special legislative session. Passage of a special funding bill cannot be guaranteed, it is more likely that ADES would need to make significant staff reductions as well as decrease technology investments which would almost certainly delay SNAP eligibility determinations as well as benefit delivery and negatively impact service delivery for all clients. This funding loss could also jeopardize ADES's ability to mitigate fraud, waste, and abuse of SNAP benefits.

Executed this 15th day of August, 2025, in Phoenix, Arizona.

Angela Rodgers
Deputy Director of Programs
Arizona Department of Economic Security