IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAIʻI; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>                                              Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture**; U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**<br><br>                                              Defendants. | Case No. **3:25-cv-06310-MMC** |

**DECLARATION OF ABBY MCCLELLAND**

## DECLARATION OF ABBY MCCLELLAND

**Abby McClelland**, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of Colorado. I am over the age of 18 and understand the obligations of an oath.

### Professional and Agency Background

2. I am the director of the Food and Energy Assistance Division within the Colorado Department of Human Services (CDHS or Agency), which includes the Supplemental Nutrition Assistance Program (SNAP). I have held this position since June 2024. Prior to this role, I was responsible for data analysis on various federal and state benefit programs, including SNAP, for CDHS and for the Boulder County Department of Human Services. I also worked extensively with the SNAP program in my seven years of experience as an administrative benefits attorney for Neighborhood Legal Services in Los Angeles, California. I make this declaration based on personal knowledge and on my review of information and records gathered by CDHS staff.

3. CDHS supports people and families by connecting them with assistance, resources, and support at every stage of their lives. The Agency serves Coloradans through bold and innovative health and human services. And together, CDHS empowers Coloradans to thrive. The Office of Economic Security, which includes the Food and Energy Assistance Division, provides benefits assistance, including SNAP, to ensure Coloradans have what they need to live a stable life. These benefits programs help Colorado families consistently put food on the table, heat their homes, find livable-wage work, and afford basic necessities.

4.  Among the programs administered by the CDHS is SNAP, which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Colorado**

5.  SNAP is a key part of Colorado's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In 2024, an average of 594,526 people received SNAP benefits in Colorado each month, including over 300,000 children and about 114,000 elderly individuals. More than $1.4 billion in SNAP benefits were issued during 2024 in Colorado.

6.  Pursuant to federal law, CDHS is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising counties' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

7.  Colorado expends nearly $200 million in administrative costs to run its SNAP program each year, approximately $100 million of which is reimbursed by the federal government.

**U.S. Department of Agriculture's (USDA) Unprecedented Request for Colorado's SNAP data**

8.  As part of the SNAP application process, counties and CDHS collect sensitive personally identifiable information (PII) from applicants and recipients, including but not limited to, home address, date of birth, Social Security Number, citizenship and immigration status, household income, and other financial resource information.

9. Colorado strictly protects the confidentiality of its residents' SNAP data. With limited exceptions, the use or disclosure of information concerning applicants, recipients, and former or potential recipients of public assistance, including SNAP benefits, is permitted only for purposes directly connected with the administration of such public assistance and related DHS activities. *See* § 26-1-114(1), C.R.S. It is "unlawful for any person to solicit, disclose, or make use of or to authorize, knowingly permit, participate in, or acquiesce in the use of any lists or names of or any information concerning persons applying for or receiving public assistance and welfare directly or indirectly derived from the records, papers, files, or communications of the state or county departments or subdivisions or agencies thereof or acquired in the course of the performance of official duties," except as otherwise specified in the statute. Violation of this restriction constitutes a petty offense. *Id.* at (3)(a)(I), (5). Colorado regulations also adopted the requirements of 7 C.F.R. § 272.1(c)(1), which restricts disclosure to specifically enumerated persons and for limited reasons. 10 CCR 2506-1:4.140. Such information disclosures must be adequately protected against unauthorized disclosure to other persons or for purposes not specified in section 272.1.

10. On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service (USDA-FNS) Senior Policy Advisor for Integrity Gina Brand sent CDHS a letter stating that, as explained in the President's Executive Order, the USDA must retain "'unfettered access to comprehensive data' from federally funded programs like SNAP." The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would

seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present.

11. On May 5, 2025, CDHS received a letter from its EBT vendor, Fidelity Information System (FIS) stating that FIS had been contacted by the USDA and its assigned Department of Government Efficiency (DOGE) team in connection with the March 20, 2025 Executive Order, "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos." Pursuant to its contract with CDHS, FIS had not shared any confidential or PII with USDA or DOGE. FIS forwarded the letter to CDHS on May 9. CDHS informed FIS that it did not consent to the disclosure of such data on May 13, 2025.

12. On June 23, 2025, the USDA published a System of Records Notice (SORN) in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database." 90 Fed. Reg. 26,521 (June 23, 2025).

13. The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also stated that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the

total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

14. These categories of information would be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

15. The USDA's actions are unprecedented. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

16. In its mandatory Privacy Impact Assessment (PIA), USDA states that the uses of the data in the National SNAP Information Database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[1]

17. These uses are duplicative of existing systems. CDHS already conducts these checks, using systems such as the Systematic Alien Verification for Entitlement (SAVE) program. Likewise, Colorado is in the process of implementing federally mandated participation in the National Accuracy Clearinghouse (NAC), a federal clearinghouse designed to ensure that individuals do not improperly receive SNAP benefits from multiple states at the same time. Notably, the technology buildout for Colorado to comply with NAC requirements is estimated to cost $890,370, for which the state will be responsible for 50% of the cost and the federal government will be responsible for the other 50%. This figure doesn't include the additional costs to the state for implementation, staff time, and training to ensure compliance and effective use of the system.

---

[1] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf.

18. On July 9, 2025, the USDA Secretary Brooke L. Rollins sent a letter to all SNAP State Agencies with a demand for five years' worth of data on all SNAP applicants and recipients (July 9 Letter). The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24, 2025, and no later than July 30, 2025.

19. CDHS sometimes shares SNAP data with certain entities, but does so only in compliance with state and federal laws, including 7 C.F.R. § 272.1(c). Any data shared beyond those persons and purposes enumerated in section 272.1 is anonymized and aggregated. Further, 7 U.S.C. § 2020(a)(3)(B) requires that, when providing records to USDA, the State agency and the USDA Secretary must negotiate and agree upon data and security protocols prior to sharing information or records. On July 23, 2025, CDHS sent a letter to USDA requesting the development of required data security protocols, and reiterated its request for the required protocol a second time in itsJuly 30, 2025 response letter to USDA's July 9, 2025 data demands. USDA acknowledged receipt of the July 23, 2025 protocol request letter, but provided no further communications in response. As a result, CDHS and USDA do not have an agreed upon data and security protocol in place, nor have any negotiations begun regarding the same.

20. CDHS has significant concerns that disclosing PII of SNAP applicants and recipients to USDA may have a chilling effect on SNAP participation in Colorado, as individuals who are fearful of having their personal data shared will likely be deterred from submitting applications. Community outreach contacts who assist in educating community members on the SNAP program are already reporting concerns from potentially eligible households about submitting applications based on news reports about the USDA's massive data request. Notably, the resulting deterrence is impacting those qualified to receive SNAP.

21. Through a federal option called "direct certification" for its school lunch program, Colorado currently certifies over 97,500 children for federally funded free or reduced price meals due to their households' participation in SNAP. Any reduction in SNAP enrollment for families with schoolchildren therefore has a negative impact on federal eligibility for free or reduced-price meals. Additionally, Colorado guarantees free lunch for all K-12 students in participating public schools. Any loss in federal funding would have to be assumed by Colorado.

22. Colorado estimates that every federal dollar of SNAP that the state receives produces $1.58 of economic activity in the state. Reduced SNAP enrollment would impact not only the direct federal benefit to the individual who chooses not to enroll, but also the associated economic benefit to the state. Colorado anticipates other adverse impacts if there are declines in enrollment as well, including increased reliance on emergency services and public safety net programs, and overall deterioration of public health.

23. CDHS has significant concerns about consolidating large volumes of personal data in yet another database, as this significantly increases the risk by creating a valuable target for potential cyberattacks. In the event of a breach, the impact would be severe due to the concentration of sensitive information. Numerous households statewide have already been the victims of data breaches and identify theft, having their entire benefits balance being stolen. Moreover, data breaches create untenable risk to victims of intimate partner and domestic violence by compromising their location and contact information, as well as the location of any potential children to the relationship. Nothwithstanding the correlation between domestic violence and child abuse, a database breach would also put the general privacy interests of children at risk, as a large portion of SNAP recipients are minors. CDHS also has concerns that

release of the information could result in various forms of discrimination, including by potential employers.

24. Compilation and transmission of the requested data is a massive undertaking and administrative burden. For transmission of current SNAP information alone, CDHS anticipates it would take no less than three months, but more likely upwards of six months or more to complete the request. It will also require thousands of personnel hours and result in significant cost to the state.

25. On July 18, 2025, Colorado, joined by twenty other states and the District of Columbia, submitted a comment letter outlining our objections to the USDA's creation of a vast National SNAP Information Database and the USDA's demand for state data.

26. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Gina Brand sent Colorado another letter, reiterating the USDA's demand for information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

27. That same day, as referenced in paragraph 19, CDHS sent a letter to USDA stating it could not provide any records without a data and security protocol first being in place as required by 7 U.S.C. § 2020(a)(3)(B)(i). The letter included protocol terms necessary to

comply with applicable law and requested a response from USDA by July 25, 2025, in advance of USDA's impending data demand deadline. To date, CDHS has not received a response to this request, beyond a non-substantive acknowledgment of receipt.

28. On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to CDHS stating that "[f]ailure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. § 2020(g)."

29. On July 28, 2025, Colorado, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

30. On July 30, 2025, CDHS sent the USDA a letter expressing its concern with the USDA's data demand. CDHS stressed that there were significant legal and logistical hurdles that needed resolution before it could act on the overly burdensome request, including the previously requested data security protocols. CDHS requested USDA stay the deadline to provide the requested data until the litigation has been resolved. To date, USDA has not provided a response to this request.

31. On August 12, 2025, Deputy Under Secretary Penn sent a letter to Colorado Governor Jared Polis informing him that because FNS had not received the participant data, "the State of Colorado is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that Colorado could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

32. The August 12, 2025 letter further states: "In order for FNS to determine that Colorado has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Colorado will undertake in order

to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Colorado fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

33.     If the federal government withholds the approximately $100 million in SNAP administrative funds, Colorado will suffer irreparable harm. Without this SNAP funding, CDHS and its 64 delegate counties will be required to cut staff and systems that are critical to implementing and supporting the SNAP program in Colorado. Further, the majority of funding to the Food and Energy Assistance Division is federal and, therefore, it cannot be reallocated between programs. A funding gap of this magnitude would need to be supplemented by Colorado's General Fund. There is currently a $1 billion budget shortfall in Colorado.[2] Accordingly, any attempt to backfill these cut funds would be near impossible and would very likely require cutting or eliminating other benefits programs in Colorado. The actions of the USDA will have a direct and negative overall impact on the health and well-being of vulnerable Colorado citizens.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August, 2025, in Denver, Colorado.

*signature*

Abby McClelland
Director, Food and Energy Assistance Division
Colorado Department of Human Services

---

[2] *See* Colo. Exec. Order No. D 2025 009 (Aug. 06, 2025).