IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**STATE OF CALIFORNIA; STATE OF
NEW YORK; STATE OF ARIZONA;
STATE OF COLORADO; STATE OF
CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF
COLUMBIA; STATE OF HAWAIʻI;
STATE OF ILLINOIS; OFFICE OF THE
GOVERNOR** ex rel. Andy Beshear, in his
official capacity as Governor of the
Commonwealth of Kentucky**; STATE OF
MAINE; STATE OF MARYLAND;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF
MICHIGAN; STATE OF MINNESOTA;
STATE OF NEVADA; STATE OF NEW
JERSEY; STATE OF NEW MEXICO;
STATE OF OREGON; STATE OF RHODE
ISLAND; STATE OF WASHINGTON;
STATE OF WISCONSIN,**

                           Plaintiffs,

      **v.**

**UNITED STATES DEPARTMENT OF
AGRICULTURE; BROOKE ROLLINS,** in
her official capacity as U.S. Secretary of
Agriculture**; U.S. DEPARTMENT OF
AGRICULTURE'S OFFICE OF
INSPECTOR GENERAL,**

                           Defendants.

Case No. **3:25-cv-06310-MMC**

**DECLARATION OF THOMAS HALL**

## DECLARATION OF THOMAS HALL

**Thomas Hall**, declares under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1.      I am a resident of the State of Delaware. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2.      I am the Director of the Division of Social Services (DSS) within the Delaware Department of Health and Social Services, which administers many of the state's social services ranging from Delaware's Medicaid program, Delaware's free and reduced-price school lunch program, providing emergency housing and child care that enables caretakers to hold jobs, obtain training, or meet a child's special needs. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

3.      Among the programs administered by DSS is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Delaware**

4.      SNAP is a key part of Delaware's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In 2024, approximately 117,700 Delaware residents, or 11.2% of the state's population, received SNAP benefits in Delaware. Each year from 2015 to 2019, SNAP lifted an average of 20,000 people, including

9,000 children, above the poverty line in Delaware.  SNAP Participants received $245,85 million in benefits in 2024.

5.      Pursuant to federal law, DSS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising statewide offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

6.      Delaware expends approximately $ 60 Million in administrative costs to run its SNAP program each year, approximately $32 Million of which is reimbursed by the federal government.

**USDA's Unprecedented Request for Delaware's SNAP data**

7.      As part of the SNAP application process, DSS collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to, home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income and resource information.  Delaware strictly protects the confidentiality of its residents' SNAP data.

8.      Delaware adheres to both federal regulations and state code in the protection of client information.  Section 1101 of Title 31 of the Delaware Code provides:

31 DE Code § 1101:

§ 1101. Confidential character of public assistance records; penalties for violations.

(a) The several departments, bureaus, commissions and agencies of the State may establish and enforce reasonable rules and regulations governing the custody, use and preservation of the records, papers, files and communications of such departments, bureaus, commissions and agencies. Wherever, under provisions of law, names and addresses of recipients of public assistance are furnished to or held by any other agency

2

or department of government, such agency or department of government shall be required to adopt regulations necessary to prevent the publication of lists thereof or their use for purposes not directly connected with the administration of public assistance.

(b) It shall be unlawful for any person to solicit, receive or make use of, disclose, or authorize, knowingly permit, or participate in the use of any information relating to any person who has applied for or who receives Temporary Assistance for Needy Families, general assistance, food stamps, aid to the blind or medical assistance where such information is derived directly or indirectly from the communications or records of the agency administering such aid or assistance or is acquired in the course of the performance of official duties; provided, however, that such conduct shall not be unlawful:

> (1) When engaged in for purposes directly connected with the administration of such aid and assistance;
>
> (2) When engaged in for purposes directly connected with the administration of public social services;
>
> (3) Where the person who has applied for or who receives such aid or assistance, or a person authorized to act for such person, consents to such conduct; or
>
> (4) Where a court of competent jurisdiction orders such conduct after a finding that the need for such conduct outweighs any injury that such conduct may cause the applicant or recipient.

(c) Whoever violates subsection (b) of this section shall be fined not more than $500, or imprisoned not more than 6 months, or both.

9.      On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent DSS a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP". The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by

3

date ranges." The letter further demanded that the requested data would cover the period

beginning January 1, 2020, through present.

10.     DSS has not authorized its SNAP data vendor, Conduent, to share SNAP

participant data with USDA.

11.     On June 23, 2025, the USDA published a System of Records Notice ("SORN") in

the Federal Register notifying the public that it sought to create a large-scale ''National

Supplemental Nutrition Assistance Program (SNAP) Information Database.''[1]

12.     The SORN announced that the USDA intended to demand the following

categories of records from "53 State agencies and their designated vendors and/or contractors":

"records containing personally identifying information, including but not limited to SNAP

participant name, Social Security Number (SSN), date of birth (DOB), residential address,

Electronic Benefit Transaction (EBT) card number, and case record identifier number or other

identifiers or data elements maintained by States, vendors, or contractors to identify SNAP

recipients." *Id.* The SORN also states that USDA would collect "information derived from and

associated with EBT transactions, including but not limited to records sufficient to calculate the

total dollar value of SNAP benefits received by participants over time, such as applied amounts

and benefit available dates." *Id.*

13.     These categories of information will be collected for all "individuals who have

received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

14.     The USDA's actions are unprecedented.  To my knowledge, the USDA has never

before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP

data.

---

[1] 90 Fed. Reg. 26,521 (June 23, 2025).

15.     In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

16.     These uses are duplicative of existing systems. DSS already conducts these checks. For example, Delaware utilizes the Systematic Alien Verification for Entitlement (SAVE) verification system, as well as the Public Assistance Reporting Information System (PARIS) is a Federal-State partnership that collects and matches public assistance eligibility information to improve program integrity among participating states. Utilizing the PARIS data match, participating states can ensure individuals enrolled in Medicaid, TANF and/or SNAP in one state are not receiving duplicate benefits based on simultaneous enrollment in these programs in another state.

17.     Additionally, when a client reports they have received SNAP benefits in another State, Delaware requires proof of closure: clients must provide proof that your previous SNAP case has been closed. This is crucial to avoid "duplicate participation". Additionally, the eligibility worker will contact the other state to get confirmation that the out of state case has closed and when the last benefits were issued.

18.     The state of Delaware maintains strict system and data security  and is in compliance with the Centers for Medicare & Medicaid Services  standards set by the  Minimum Acceptable Risk Safeguards for Exchanges (MARS-E) for security and privacy plans. Delaware is compliance with the privacy and security standards established by the Social Security

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

Administration, Food and Nutrition Service, the Internal Revenue Service, and The Delaware Department of Technology & Information. On July 9, the USDA Secretary Brooke L. Rollins sent DSS a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

19.    Federal law requires DSS to maintain systems that safeguard the data obtained from SNAP applicants, and DSS takes that obligation seriously.

20.    Were DSS to disclose the personal identifying information on all applicants for and recipients of SNAP benefits over the past five years, I have no doubt that doing so would chill participation in the SNAP program.  Many people who would qualify for benefits, and thereby potentially be lifted out of poverty, would choose not to apply for fear not only of the simple invasion of privacy that improper disclosure would represent, but also out fear that the federal government could misuse the information to unfairly target them and their families. Short of an actual disclosure, even threat of such disclosures risks chilling participation in SNAP.

21.    Delaware's free and reduced-price school lunch program, which is partially funded by federal dollars, is also directly tied to SNAP, through a federal option called "direct certification" for its school lunch program, Delaware currently certifies almost 80,000 children for federally funded free or reduced-price meals due to their households' participation in SNAP. Any reduction in SNAP enrollment for families with schoolchildren therefore has a negative impact on federal eligibility for free or reduced-price meals.

22.    If the risk of or actual disclosure of SNAP data chills eligible individuals from participating in SNAP, those same people would be likely to disengage from applying for other social services to which they would be entitled, and from engagement with the State government

in general.  That could lead to increased reliance on emergency services and public safety net programs, deterioration of public health, and reduced cooperation with law enforcement, risking public safety.

23.    The risk or actual disclosure of SNAP could also cause them to fear, or be put at risk of, identity theft in the case of a data breach theft if there is improper sharing information on EBT cards and transactions.

24.    Delaware maintains data collected from employers, applicants, recipients, landlords, medical facilities, federal agencies, state agencies, and federal databases/exchanges. This data is collected and maintained for the purpose of determining eligibility, certifying enrollment, and distributing benefits.  There is a commingling of data from various sources and across programs, for this reason it is important to develop and execute a robust data sharing agreement that takes into consideration privacy, HIPPA, and data security to ensure that only the appropriate and critical information is safely and securely transmitted/transferred.

25.    On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent DSS another letter, reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

26.    On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to DSS stating that "Failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

27.    On July 28, 2025, Delaware, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

28.    On August 15, 2025, DSS sent USDA an email expressing its concern with USDA's data demand. The following was sent to the USDA-FNS, and a copy of the original email is attached as Exhibit A:

> The Delaware Department of Health and Social Services (DHSS) is in receipt of the July 9, 2025, July 23, 2025, and July 25, 2025 letters from the United States Department of Agriculture Food and Nutrition Service (USDA-FNS) requesting State agency Supplemental Nutrition Assistance Program (SNAP) data in relation to the System of Records Notice (SORN) published on June 23, 2025, which proposed the creation of a large federal database of SNAP participant information including sensitive personally identifiable information (PII). The letters sought production of the data by July 30, 2025.

> DHSS notes that on July 28, 2025, the Delaware Attorney General Kathy Jennings and the attorneys general of several other states filed a suit to challenge the development of this new system of records and corresponding demands for state-held data, alleging that they are contrary to statute and the Constitution and reflect an arbitrary and capricious departure from past policy. *See California et al. v. U.S. Dep't of Agriculture et al.*, Civ. Action No. 3:25-6310 (N.D. Cal.).

> There are significant legal and logistical hurdles that would need to be resolved before DHSS could act on the overly burdensome demand by USDA-FNS for the SNAP participant data outlined in the SORN. There has been no clear guidance from USDA-FNS on "other identifiers or data elements maintained by states, vendors and/or contractors to identify SNAP recipients" or "information derived from and associated with EBT transactions". Further, prior to any legally authorized ongoing or large-scale data transmission, DHSS follows standard data security protocols, which include negotiating and executing a data sharing agreement or memorandum of understanding to govern the transfer, use, and retention of the data. In light of these considerations, the July 30, 2025 deadline for State agencies to submit the SNAP participant data outlined in

8

the SORN would be unfeasible to meet even if there were no other considerations precluding transmission.

DHSS will continue to comply with federal and state law when it comes to awarding and administering benefits, including by ensuring that SNAP is only provided to individuals and families who are eligible, and by continuing to meet our obligations under existing data sharing agreements. For the reasons stated herein, DHSS respectfully urges that USDA-FNS withdraw the requests for data delineated in the above-referenced letters.

For the reasons stated herein, DHSS respectfully urges that USDA-FNS withdraw the requests for data delineated in the above-referenced letters, or, at minimum, stay the deadline to submit the requested data pending resolution of the litigation referenced above.

In the above request Delaware asked for an extension of the deadline. We have not received a response to this request.

29.     I am aware that, on August 12, 2025, Deputy Under Secretary Penn sent letters to several other states informing them that, because FNS had not received the participant data those states are "out of compliance with SNAP requirements." The letter further states that, "[as] provided by 7 CFR 276.4, this letter serves as an advance notice that [the State] could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

30.     The August 12, 2025 letter further states: "In order for FNS to determine that [the recipient State] has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions [State] will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If [the recipient State] fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

31.     Given these threats to other States, Delaware is concerned that USDA may move quickly against Delaware as well.  If USDA were to cut off funding for SNAP administrative funds as threatened against other States by the August 12, 2025 letter, Delaware would likely have to cut staff and programs that are critical to supporting the SNAP program or divert resources from other important services in order to maintain delivery of SNAP services. Especially because such actions could disrupt delivery of food benefits to thousands of Delaware children just as they begin a new school year,  and for all the reasons why disclosure of Delaware's SNAP data would harm participation in SNAP and risk harm Delaware's public health and public safety overall, the USDA's continued insistence that Delaware provide SNAP data poses the threat of irreparable harm to Delaware.  Delaware, therefore, seeks a stay of UDSA's iterative demands for Delaware's SNAP data.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of August, 2025, in New Castle Delaware.

_Thomas S. Hall_

Thomas Hall
Director
Division of Social Services, Delaware Department of
Health and Social Services.

10