IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**STATE OF CALIFORNIA; STATE OF
NEW YORK; STATE OF ARIZONA;
STATE OF COLORADO; STATE OF
CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF
COLUMBIA; STATE OF HAWAI'I;
STATE OF ILLINOIS; OFFICE OF THE
GOVERNOR** ex rel. Andy Beshear, in his
official capacity as Governor of the
Commonwealth of Kentucky**; STATE OF
MAINE; STATE OF MARYLAND;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF
MICHIGAN; STATE OF MINNESOTA;
STATE OF NEVADA; STATE OF NEW
JERSEY; STATE OF NEW MEXICO;
STATE OF OREGON; STATE OF RHODE
ISLAND; STATE OF WASHINGTON;
STATE OF WISCONSIN,**

                                   Plaintiffs,

        **v.**

**UNITED STATES DEPARTMENT OF
AGRICULTURE; BROOKE ROLLINS,** in
her official capacity as U.S. Secretary of
Agriculture**; U.S. DEPARTMENT OF
AGRICULTURE'S OFFICE OF
INSPECTOR GENERAL,**

                                 Defendants.

Case No. **3:25-cv-06310-MMC**

**DECLARATION OF KASEY REAGAN**

**Kasey Reagan**, declares under penalty of perjury, under 28 U.S.C. § 1746, as follows:

1.     I am a resident of the State of Illinois. I am over the age of 18 and understand the obligations of an oath.

2.     I am the Statewide Program Initiatives Administrator for the Division of Family and Community Services (FCS) for the Illinois Department of Human Services (IDHS or Agency).

3.     IDHS was created in 1997 to provide Illinois' residents with streamlined access to integrated services and help them lead healthy, safe and enriched lives.

4.     IDHS is one of Illinois' largest state agencies, with more than 14,000 employees administering programs related to early childhood services and education, behavioral health and recovery, family and community services, rehabilitation services and developmental disabilities.

5.     In Illinois, IDHS is the state agency tasked by the Illinois Public Aid Code with the administration of the Supplemental Nutrition Assistance Program (SNAP).

6.     I have held the position of Statewide Program Initiatives Administrator at IDHS since May 2019. Since 2001, I have served in several capacities within IDHS including but not limited to EBT Program Director, EBT Reconciliation manager and Human Services Caseworker.

7.     As the Statewide Program Initiatives Administrator, I am responsible for the operations and management of Illinois' SNAP program administration, including both the SNAP Fraud Unit and the Electronic Benefit Transfer (EBT) system which is the means by which all food benefits are distributed. Additionally, I serve as subject matter expert for the Illinois eligibility system that determines the eligibility of applicants for medical, cash and food assistance programs.

8.     It is nearly impossible to overstate the crucial role SNAP plays in the lives of Illinoisans who most need help accessing food. SNAP is a cornerstone public health program with long term success at fighting hunger and helping low-income people and families buy the food they need.

9.     Through the SNAP program, IDHS provides food assistance to roughly 1.89 million state residents for the month of July 2026. Of the households receiving benefits: 33% have children, 30% have older adults (60 and over), and 27% have a person with a disability.

10.    More than $4.9 billion in SNAP benefits were issued through State Fiscal Year 2025.

11.    In federal fiscal year 2025, Illinois has received $177,042,875 in federal funding to assist the state in administering its SNAP program. Illinois is budgeted to pay at least $177,042,875 in match.

12.    Under federal and Illinois law, IDHS is responsible for the issuance, control and accountability of SNAP benefits and the Electronic Benefit Transfer ("EBT") system, which is the sole method of SNAP issuance and electronic system that allows SNAP participants to pay for food using their benefits at authorized retail food stores.

13.    IDHS is also responsible under law for designing and administering processes—based on federal guidelines—for determining how people can apply for benefits, certifying eligible applicants and households, tracking whether participants meet the requirements for the program on a monthly basis, and adjusting their benefits based on any relevant changed circumstances. IDHS is also responsible for maintaining internal controls to ensure SNAP program integrity.

14.    As part of the process of administering SNAP and determining eligibility of applicants and participants, Illinois collects sensitive personally identifiable information (PII) from individual applicants and their household members, such as home addresses, dates of birth, Social Security Numbers, race and ethnicity data, disability information, certain citizenship and immigration status, household income and resource information.

15.    IDHS understands that the federal SNAP act and Illinois' state plan for SNAP administration require significant protections and restrictions on disclosure of applicant and participant records, strictly limiting how Illinois can use and disclose this sensitive and confidential information.

16.    The Illinois Public Aid Code sets additional limits, preventing IDHS from "disclosing the contents of any records, files, papers and communications" of applicants or recipients of public aid, including SNAP, except for purposes directly connected with the administration of public aid.

17.    To facilitate IDHS' administration of SNAP in Illinois and effectively and efficiently provide benefits at such a significant scale, the state has contracted with a number of third party vendors and contractors.

18.    Under SNAP regulations, even where a state has contracted with a third party to manage benefits issuance, the state agency remains responsible for ensuring that assigned duties are carried out in accordance with the SNAP act and regulations.

19.    One such contractor is Fidelity Information Services, LLC (FIS), who was awarded a contract to administer EBT services and payment processing for SNAP transactions within Illinois.

20.    By virtue of being Illinois' EBT processor, FIS is in receipt of confidential personal information on all Illinois' SNAP recipients, as well as transaction data. FIS' contract with the State of Illinois provides that all information received from the State is confidential and may not be disseminated without Illinois' written consent.

21.    In a letter dated May 5, 2025, FIS informed IDHS that FIS "was recently contacted by [USDA] and its assigned Department of Government Efficiency ('DOGE') team" in connection

with a recent federal Executive Order #14,243, titled "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos". A copy of that letter is attached as Exhibit 1.

22.    The letter stated that FIS "answered general questions about FIS' role as a processor of EBT transactions" but that "no proprietary, confidential, or personally identifiable information ha[d] been shared with . . . USDA or DOGE."

23.    The next day, May 6, 2025, IDHS received a letter from U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand titled "FNS – Data Sharing Guidance" Citing Executive Order 14,243, stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP".

24.    The letter further stated that the USDA was "working with several SNAP [EBT] payment processors to consolidate SNAP data" and that "processors may reach out to [States] to provide notice of this partnership and data sharing." The letter added that USDA "is taking steps to require all States to work through their [EBT payment processors] processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present.

25.    On Friday May 9, 2025, IDHS received another letter from FIS where FIS referenced the May 6, 2025 USDA guidance and told IDHS that "USDA has made a formal requires for records regarding SNAP cardholder and transaction data." The letter indicated FIS'

belief that USDA was entitled to this disclosure directly from FIS and that "FIS intends to fully cooperate with the USDA in facilitating its request for information, as required by applicable law and the guidance." A copy of this letter is attached as Exhibit 2.

26.    The letter indicated that FIS had the "approval and support of USDA," was notifying IDHS of this formal request, and sought consent to disclose the information with a deadline of Wednesday, May 14th.

27.    On Monday, May 12, IDHS wrote to FIS indicating that IDHS could not consent to disclosure "at this time" and requested a meeting with FIS.

28.    On Wednesday May 14, 2025, IDHS attended a meeting with FIS where FIS provided assurance that they were not planning to disclose IDHS SNAP data to USDA without IDHS' authorization.

29.    On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database." (the SNAP ID).

30.    The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of

SNAP benefits received by participants over time, such as applied amounts and benefit available dates."

31.    These categories of information would be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits."

32.    The USDA's actions are unprecedented and do not comport with IDHS' understanding of the SNAP administrative framework. To my knowledge, the USDA has never sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data. Nor has USDA FNS ever sought to inspect Illinois' SNAP records for the purposes that it alleges.

33.    In its privacy impact assessment for this new database, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients." These functions are in fact already States' responsibility under the SNAP statute and regulations, and duplicative of existing systems provided by the SNAP regulations.

34.    Illinois is required to verify noncitizen eligibility through the Systematic Alien Verification and Eligibility (SAVE) System and already conducts these checks for every SNAP applicant that attests to having a qualifying non-citizen immigration status.

35.    Illinois verifies income and employment through a variety of systems designed to comply with federal regulations.

36.    Illinois also is a participant in the National Accuracy Clearinghouse (NAC), a federal clearinghouse system which ensures that SNAP applicants and participants do not improperly receive duplicate assistance from multiple states at the same time.

37.    Illinois also already provides certain EBT transaction data to USDA FNS through the Anti-Fraud Locator Using [EBT] Retailer Transactions (ALERT) System. ALERT provides daily transaction records from Illinois' EBT processor to FNS to conduct analysis of patterns in the data which may indicate potential fraudulent activity by stores.

38.    Illinois also screens applicants under a number other systems to comply with existing federal law and regulations that identify potential third party liabilities, disability benefits, child support obligations, self-employment details, previously disqualified or sanctioned recipients, and other information. [1]

39.    The new SNAP ID system of records, however, did not contain the same data protection, privacy and confidentiality restrictions as these other systems.

40.    Following publication of the SORN, on July 9, USDA Secretary Brooke L. Rollins sent IDHS a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

41.    IDHS' understanding of the SNAP laws and regulations is that the law narrowly circumscribes Illinois' ability to disclose applicant and participant records, and even disclosure to USDA FNS, for example, can only happen for specific purposes allowed in the regulations and with appropriate data and security protocol agreed to between IDHS and USDA FNS.

42.    IDHS has issued an administrative directive on its processes for disclosure of data consistent with both state and federal law. IDHS cannot share confidential SNAP participant data with a third party without entering and maintaining a data sharing agreement. The agreement must

---

[1] See IDHS Workers' Action Guide 02-07-01: Clearances which describes the different systems queried for application registration and at redeterminations), available at https://www.dhs.state.il.us/page.aspx?item=12942

define the terms and conditions for the data exchange including, but not limited to, the exact data elements to be shared, the legal authority for the sharing, the precise sharing method and structure requirements, the communication and processing protocol, the duties of IDHS and the third party, time limits, confidentiality of records, statement regarding notices, nondiscrimination and assignment, ownership of data, licensing information, as applicable, and return of data and destruction. None of these requirements have been met here.

43.     IDHS is concerned that disclosing PII of SNAP applicants and participants to USDA could have a significant chilling effect on SNAP participation in Illinois, as individuals who are fearful of having their confidential personal information shared for unknown purposes will likely be deterred from filing SNAP applications.

44.     In my experience, this chilling effect is particularly acute in the case of mixed-status families, where some family members are citizens or noncitizens eligible for SNAP and others ineligible. Currently, federal law provides a means for eligible individuals in mixed status families to obtain benefits without subjecting ineligible members of their families to potential immigration consequences. Given the uncertainty around disclosure of information contained in the new SNAP ID system, eligible individuals in mixed status families may be deterred from applying for SNAP benefits or may even disenroll in order to avoid the possibility of subjecting their household members to negative immigration consequences.

45.     A decline in applications and participation in SNAP will also impact Illinois' ability to access federal support for programs that allow "direct certification", a process where SNAP-eligible individuals can be automatically certified for additional benefits by virtue of their eligibility for SNAP.

46.    One of the largest direct certification programs is the National School Lunch Program and School Breakfast Program. Currently, Illinois currently certifies more than 500,000 children for federally-funded free or reduced-price meals due to their households' participation in SNAP. Any reduction in SNAP enrollment for families with schoolchildren therefore has a negative impact on federal eligibility for free or reduced-price meals.

47.    Illinois has already observed a drop in enrollments this year in the Summer EBT program. The Summer EBT program, which is available through direct certification to all SNAP-eligible children, provides families with a $120 one-time benefit for each eligible school-aged child intended for the household to buy groceries when school is not in session. Based on my experience and observation I believe that this drop in enrollment is correlated with increasing fears about use of benefits data for immigration enforcement purposes. To this end, I am aware that the USDA website used to have a fact sheet about Summer EBT for "immigrant serving Institutions"[2] that stated that applying for or receiving Summer EBT would not result in being "deported, denied entry to the country, or denied permanent status," but that guide was removed in February of 2025, suggesting that USDA may have changed its policy and would use SNAP and Summer EBT records for immigration-enforcement purposes.

48.    Additionally, Illinois' own state-funded food assistance program (the New State Food Program) is tied by state statute to SNAP eligibility. Illinois' state program provides that an applicant must meet all SNAP eligibility requirements (other than nationality or eligible noncitizen status). In order to determine that applicants meet SNAP eligibility, they must apply for and be evaluated through the same integrated application system Illinois uses for benefits, allowing state funds to serve as a supplemental food assistance for certain households. Chilling SNAP

---

[2] https://web.archive.org/web/20250202082329/https://www.fns.usda.gov/sebt/outreach-toolkit/factsheet-immigrant-serving-institutions

applications hinders access to Illinois Food Assistance, discouraging otherwise eligible residents from receiving vital nutrition assistance.

49.    Chilling SNAP applications and enrollment additionally would harm the 9,616 grocers, farmers' markets, and other merchants in Illinois that accept SNAP benefits for food purchases. SNAP benefits generate secondary economic effects that increase overall spending and production; the United States Department of Agriculture estimates that in a slowing economy, every $1 in SNAP benefits generates $1.54 in economic activity. Decisions by families to forgo critical nutritional benefits will also result in loss of economic activity.

50.    IDHS is also obligated to be a good steward of the data entrusted to it, heightening our concerns about the security of a central repository containing so much confidential and sensitive data. Currently, even with the rigorous data security protocols established in existing programs, data breaches are a risk and IDHS has experience with EBT skimming resulting in the theft of benefits from Illinois SNAP participants. These stolen benefits are often irreplaceable, bringing significant hardship on some of our most vulnerable residents. Creating a new centralized SNAP database without assurances that the transfer, storage and subsequent disclosures of data would be protected carries a significant risk of breach in my experience, and a tempting target for fraudsters. During calendar year 2024 more than $15 million in SNAP benefits were stolen in Illinois.

51.    Further, even assuming IDHS were to comply with the new SNAP ID system and its submission requirements, there are many open and unanswered technical questions and significant hurdles to implement such an enormous scheme. USDA has not even provided a data methodology, for starters, which would allow IDHS to understand specifically what data is being

sought, and how it should be formatted and presented. IDHS is not in a position to guess this basic information.

52.     Additionally, USDA's data demand for *denial* data is itself an unprecedented request, and IDHS does not understand how it is related to USDA's stated purposes for the SNAP ID system. USDA has never sought records related to applicants who were denied benefits, particularly because it is unclear what program integrity purpose is served by this data.

53.     There would be substantial costs for implementation, as a new system of this size (representing all snap applicants and participants over a five year period) would create concerns around storage of data, available memory and processing capabilities of our computer systems. Producing this much data would affect our batch schedules for whatever interval we would have to produce this data, potentially interrupting other transmittal of data necessary for delivery of SNAP benefits and existing program integrity processes.

54.     IDHS moreover *already* sends *all* approved-SNAP-participant data to FNS daily through the National Accuracy Clearinghouse (NAC). The NAC is a good comparison here, as that system involves a nearly identical dataset as requested by the SNAP ID demand.[3] Implementation of the NAC was an eight-month project that required not just IDHS staff and other state employees, but also retention of third party contractors. This process cost roughly more than $1.7 million. I anticipate that creation of the infrastructure required to accommodate the SNAP ID database and its requirements would take at least as long, and come at a similar expense.

---

[3] By contrast, however, the NAC has a sophisticated mechanism for protection of confidential personal information. FNS dictates that states are not allowed to share PII through our daily upload process. In 7 CFR 272.18(b)(5) it states we are required to follow the FNS protocol for transmitting data. This protocol requires that we must extract and convert our SNAP participant data to a secure cryptographic hash through a Privacy Preserving Record Linkage (PPRL) process before being shared to the NAC. FNS has specifically told states that PII is not stored in the NAC, and that states should only communicate with other states utilizing the Match ID rather than PII, for the purposes of keeping individual PII secure.

55.     USDA's demand for Illinois' SNAP data also comes as IDHS is engaged in substantial efforts needed to comply with H.R. 1, the "One Big Beautiful Bill Act", and the agency does not currently have the staff or capacity to begin additional large-scale projects. While IDHS is taking significant efforts to ensure compliance with the new law, it is also still waiting on USDA FNS to provide guidance on how to implement certain portions of the law, including certain noncitizen eligibility changes and standard utility allowances. Without guidance, IDHS risks inadvertently running afoul of the new legal framework and creating a higher error rate that will trigger potentially severe penalties. This information is critical for program integrity, and IDHS is forced to expend additional resources in the absence of clear guidance to mitigate risk of error.

56.     In light of these and other concerns about the SNAP ID system, Illinois, joined by several other states, submitted a comment letter on July 18, 2025 outlining objections to the USDA's creation of a vast National SNAP Information Database and the USDA's demand for state data.

57.     On July 23, 2025, the day of the close of the comment period for the SNAP ID SORN, USDA-FNS Senior Policy Advisor for Integrity Brand sent IDHS another letter, reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . .

sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

58.     Two days later, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to IDHS stating that "Failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

59.     Following these renewed demands for Illinois' SNAP records, Illinois, joined by several other states, filed this lawsuit challenging the USDA's actions on July 28, 2025.

60.     IDHS additionally sent USDA a letter on July 30, 2025 expressing its concern with USDA's data demand. IDHS reiterated concerns about the nature of the demand and the practical impossibility of compliance, and requested an extension of the deadline until the litigation had been resolved. USDA did not respond to this request.

61.     Recently, I received a letter sent to Governor J.B. Pritzker from USDA Deputy Under Secretary Penn dated August 12, 2025 claiming that because FNS had not received the participant data "the State of Illinois is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that Illinois could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

62.     The August 12, 2025 letter further states: "In order for FNS to determine that Illinois has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Illinois will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Illinois fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of

Federal funding for State SNAP Administrative expenses and may take any other available legal action."

63.     Currently, Illinois pays all administrative costs of the SNAP program up-front, and is reimbursed from federal funding. Suspension or disallowance of this administrative funding would mean Illinois would have to absorb the entire cost of administration of the SNAP program. This would represent a substantial and sudden increase in administrative overhead that the state would be forced to endure, and would almost certainly lead to difficulties in administration if not diminution in IDHS's ability to administer the program efficiently.

64.     I declare under penalty of perjury that the foregoing is true and correct.


Executed this 18th day of August, 2025, in Springfield, Illinois


Kasey Reagan
Statewide Program Initiatives Administrator
Illinois Division of Human Services

# Exhibit 1



347 Riverside Avenue, Jacksonville, FL 32202
Tel. 877.482.8786 | Fax. 904.357.1105 | fisglobal.com

May 5, 2025                                    **FIS Confidential Pursuant to the Agreement**

**RE: Notice of Communication with United States Department of Agriculture and its assigned Department of Government Efficiency team**

Dear State Partner:

In furtherance of our longstanding partnership, I am notifying you that FIS was recently contacted by the United States Department of Agriculture ("USDA") and its assigned Department of Government Efficiency ("DOGE") team in connection with the March 20, 2025 Executive Order "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos." ([https://www.whitehouse.gov/presidential-actions/2025/03/stopping-waste-fraud-and-abuse-by-eliminating-information-silos/](https://www.whitehouse.gov/presidential-actions/2025/03/stopping-waste-fraud-and-abuse-by-eliminating-information-silos/)).

FIS is committed to abiding by applicable law and the requirements of our contracts. Thus, we have answered general questions about FIS' role as a processor of EBT transactions. However, no proprietary, confidential, or personally identifiable information has been shared with the USDA or DOGE.

We will continue to engage with you as this process evolves. Please let us know if you have any questions.

Sincerely,

*Prashant Gupta*
Prashant Gupta (May 5, 2025 12:21 CDT)

Prashant Gupta

Fidelity Information Services, LLC

SVP, Government Services EBT

# Exhibit 2



May 9, 2025

**<u>VIA EMAIL AND COURIER</u>**

<b><u>FIS Confidential Pursuant to the Agreement</u></b>

**RE: Notification of USDA Request for SNAP Information**

Dear State Partner:

As communicated in the FNS Data Sharing Guidance dated May 6, 2025 (guidance), USDA has made a formal request for records regarding SNAP cardholder and transaction data. Based on this guidance, we understand that USDA is entitled to receive the requested information and that FIS as your "contractor" is required to disclose it.  As such, FIS intends to fully cooperate with the USDA in facilitating its request for information, as required by applicable law and the guidance.

With the approval and support of USDA, I am writing to notify you of USDA's formal request for the above-referenced information and to seek your consent for FIS to disclose this information to USDA.

Please confirm your written consent by responding to this email by May 14th.  Your timely response is appreciated.

We will continue to engage with you as this matter evolves.


Sincerely,

*Prashant Gupta*

Prashant Gupta
Fidelity Information Services, LLC
SVP, Government Services EBT