IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,** | |
| Plaintiffs, | |
| v. | Case No. **3:25-cv-06310-MMC** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,** | |
| Defendants. | |

**DECLARATION OF LESA DENNIS**

## DECLARATION OF LESA DENNIS

**Lesa Dennis**, declares under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am a resident of the Commonwealth of Kentucky. I am over the age of 18 and understand the obligations of an oath.

### Professional and Agency Background

2. I am the Commissioner of the Kentucky Cabinet for Health and Family Services, Department for Community Based Services (DCBS), as appointed by Governor Andy Beshear, a position that I have held since January 16, 2023. Prior to holding this position, I served as Deputy Commissioner of the Kentucky Department for Community Based Services. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

3. Among the programs administered by the Cabinet for Health and Family Services, Department for Community Based Services, is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

### SNAP in Kentucky

4. SNAP is a key part of Kentucky's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In FFY 2024, an average of 600,000 people received SNAP benefits in Kentucky each month, fifty-five percent (55%) of whom were children or elderly individuals. More than $1,252,476,404 in SNAP benefits were issued through federal fiscal year 2024.

5.  Pursuant to federal law, the Cabinet for Health and Family Services is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising the 120 Kentucky counties' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

6.  Kentucky expends approximately $211,476,245 in administrative costs to run its SNAP program each year, approximately $102,778,125 of which is reimbursed by the federal government.

**USDA's Unprecedented Request for States' SNAP data**

7.  As part of the SNAP application process, DCBS collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to: home addresses; dates of birth; Social Security Numbers; citizenship and immigration status; and household income and resource information.

8.  Kentucky strictly protects the confidentiality of its residents' SNAP data pursuant to KRS 205.175, only permitting release in certain circumstances expressly set forth in KRS 205.175(2).

9.  On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent the Cabinet for Health and Family Services a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP." The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal

2

addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present and included a threat of noncompliance procedures for noncompliance.

10. On May 9, 2025, the Cabinet for Health and Family Services was notified by its SNAP data vendor, Fidelity Information Services (FIS), that USDA was seeking to obtain SNAP participant data directly from FIS. The Cabinet for Health and Family Services informed FIS that it did not consent to the disclosure of such data.

11. On June 23, 2025, USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database."[1]

12. The SORN announced that USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

---

[1] 90 Fed. Reg. 26521 (June 23, 2025).

13. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

14. USDA's actions are unprecedented. To my knowledge, USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

15. In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

16. These uses are duplicative of existing systems. The Cabinet for Health and Family Services already conducts these checks, using systems such as the Systematic Alien Verification for Entitlement ("SAVE") program. The Cabinet for Health and Family Services also participates in the National Accuracy Clearinghouse ("NAC"), a federal system established under 7 C.F.R. § 272.18 to prevent individuals from improperly receiving SNAP benefits in more than one state simultaneously.

17. On July 9, 2025, USDA Secretary Brooke L. Rollins sent the Cabinet for Health and Family Services a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

18. Again, KRS 205.175 restricts the disclosure of information related to individuals who receive public assistance. This includes information on individuals who receive assistance from the SNAP program. Per KRS 205.175, the information related to an individual receiving

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

4

public benefits can only be further disclosed for very specific purposes. Those purposes are related to providing benefits to the individual. Under KRS 205,175(3), "[i]nformation regarding a public assistance applicant or recipient may also be released, in the discretion of the secretary or those he may designate, to such individuals or agencies as meet the requirements of regulations promulgated by the secretary and who are supplying or cooperating in securing services, employment, or training for the applicant or recipient of public assistance." The intent of this statute is clear that the client information may only be shared to further assist with providing information for other public assistance programs.

19.     Additionally, KRS 194A.060 protects the confidentiality of Cabinet records and reports. Disclosure is restricted to other agencies that are, "providing services to current or former clients or patients subject to confidentiality agreements as permitted by federal and state law if those agencies demonstrate a direct, tangible, and legitimate interest in the records. In all instances, the individual's right to privacy is to be respected." KRS 194A.060(2). Individuals who apply for public benefits receive a notice of how their information will be used. The above-mentioned statutes reflect the applicable uses. Providing identifiable client information to a federal database is not included in the acceptable uses, nor is that anything that clients have consented to.

20.     Requiring disclosure of PII from SNAP applicants and recipients in Kentucky to the United States Department of Agriculture (USDA) would likely have a substantial chilling effect on program participation. Many SNAP-eligible households include individuals with heightened privacy concerns, such as survivors of domestic violence, immigrants in mixed-status families, and persons with prior experiences of identity theft or data misuse. If these individuals perceive that applying for SNAP necessitates sharing personal information with additional

federal entities, they may decide not to apply or may withdraw from the program despite eligibility and need. Reduced enrollment would deprive vulnerable Kentuckians of essential nutrition assistance, increasing food insecurity and its associated negative health outcomes. Furthermore, because SNAP participation supports other federally funded programs—such as direct certification for the National School Lunch Program and School Breakfast Program— lower enrollment would also diminish related federal funding streams. The cumulative effect would increase reliance on state and local resources, straining Kentucky's public health, education, and social service systems.

21.     Kentucky's school nutrition programs are tightly linked to SNAP via "direct certification," which allows schools to enroll eligible children for federally funded free meals without an application. In School Year 2024–2025, 1,305 Kentucky schools operated the National School Lunch Program (and 1,278 operated the School Breakfast Program), underscoring how broadly these federal programs serve the state's K–12 system. Any decline in SNAP enrollment among families with school-age children therefore directly erodes Kentucky schools' ability to draw down federal meal reimbursements. Through direct certification and the Community Eligibility Provision (CEP), which is a school-meals program that offers eligible children free breakfast and lunch, Kentucky has historically certified roughly two hundred thousand children for free meals based on household SNAP participation (approximately 205,000 were directly certified in 2024-2025). A chilling effect that suppresses SNAP take-up would reduce the pool of directly certifiable students, lower identified student percentages for CEP, and force more families and districts back onto paperwork-heavy applications—ultimately diminishing federal reimbursement streams and increasing administrative burdens for Kentucky schools.

22. Declines in SNAP enrollment in Kentucky would have far-reaching and compounding adverse effects. SNAP benefits are a primary source of nutrition for many low-income households; when participation drops, food insecurity rises. Increased food insecurity is associated with deterioration in public health, including higher incidence of chronic illness, reduced ability to manage medical conditions, and increased reliance on acute care services. As households lose consistent access to food, they are more likely to turn to emergency food pantries, shelters, and faith-based organizations, placing strain on already limited community resources. At the same time, reduced SNAP participation would heighten demand for other components of the public safety net, such as Medicaid, Temporary Assistance for Needy Families (TANF), and local general assistance programs. It would also increase reliance on emergency medical services, law enforcement, and other crisis-response systems, shifting costs from a federally funded nutrition program to state and local governments. The resulting fiscal and operational burdens would be unsustainable for many Kentucky communities, particularly those in rural and economically distressed areas.

23. If PII from Kentucky SNAP applicants or recipients were subject to a data breach or other misuse, the harm would be immediate and severe. Unauthorized access to EBT card numbers, transaction histories, or other sensitive information could enable benefit theft, depriving households of critical resources needed for food and nutrition. For low-income families, the sudden loss of SNAP benefits could mean days or weeks without adequate meals, with no realistic means to replace those resources. Beyond direct financial harm, a breach would erode trust in both state and federal agencies charged with administering the program. This loss of confidence would likely deter eligible households from applying for or maintaining benefits, exacerbating food insecurity and driving increased demand for emergency feeding programs and

other public services. The perception that personal data is unsafe in the SNAP system could also discourage participation in other safety net programs, compounding the adverse effects across multiple public assistance domains. In short, the repercussions of a data breach would extend well beyond the individual victims, undermining the overall effectiveness of Kentucky's social service infrastructure.

24. The Kentucky Office of Application Technology Services ("OATS") would be required to work with DFS to identify the appropriate data elements for the data request to the USDA. This would entail determining what file format to use and how to securely transmit the large amount of data. Additionally, it would take time to simply process a data request this large. The size would likely cause Kentucky's OATS team to run during off hours as it may adversely impact the production environment (causing slowness) across the agency if run during business hours.

25. On July 18, 2025, Kentucky, joined by several other states, submitted a comment letter outlining our objections to the USDA's creation of a vast National SNAP Information Database and the USDA's demand for state data.

26. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent the Cabinet for Health and Family Services another letter, reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter

also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

27.     On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to the Cabinet for Health and Family Services stating that "[f]ailure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

28.     On July 28, 2025, Kentucky, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

29.     On July 30, 2025, the Cabinet for Health and Family Services sent USDA a letter expressing its concern with USDA's data demand. The Cabinet for Health and Family Services requested an extension of the deadline until the litigation had been resolved. To date, USDA has not provided DCBS a direct response to the request of an extension of time until the litigation is resolved.

30.     The Cabinet for Health and Family Services is aware that on August 12, 2025, Deputy Under Secretary Penn sent a letter to several states informing them that because FNS had not received the participant data the state is out of compliance with SNAP requirements. The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that the state could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

31.     The Cabinet for Health and Family Services is also aware that the August 12, 2025 letter threatened to withhold Federal funding for State SNAP Administrative expenses and the potential to take any other available legal action.

32. As a result, the Cabinet for Health and Family Services is concerned that the USDA could make a similar threat against it.

33. This action by the federal government will likely require Kentucky to cut staff and programs that are critical to supporting the SNAP program or divert resources from other important services.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of August, 2025 in Owensboro, KY

Lesa Dennis
Commissioner
Kentucky Department for Community Based Services