IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAIʻI; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**<br><br>Defendants. | Case No. **3:25-cv-06310-MMC** |

**DECLARATION OF DWAYNE HAYWOOD**

## DECLARATION OF DWAYNE HAYWOOD

I, DWAYNE HAYWOOD, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of Michigan. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2. I am the Senior Deputy Director of the Economic Stability Administration (ESA) at the Michigan Department of Health and Human Services (MDHHS). In this role, I oversee the implementation of MDHHS policy and manage operations of the ESA, including more than 5,000 staff across 100 locations throughout Michigan. My responsibilities include program development and oversight with the Business Service Centers, Migrant Programs, Payment Accuracy Unit, Disability Determination Services, Public Assistance Operations, Supportive Adult Services Section, Technology and Cross Enrollment. I also direct strategic programing, quality assurance activities, resource allocation, internal communication strategies, and audit remediation.

3. Among the programs administered by MDHHS, and within the scope of ESA, is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

4. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with MDHHS staff, or from my review of relevant documents and information.

**SNAP in Michigan**

5. SNAP is a key part of Michigan's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In 2024, an average of 1,380,000 people received SNAP benefits in Michigan each month, including over 542,000 children and over 84,000 elderly individuals. More than $2.9 billion [in SNAP benefits were issued in Fiscal Year 2024.

6. Pursuant to federal law, MDHHS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising counties and districts' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

7. For fiscal year 2024, Michigan expended approximately $380 million in administrative costs to run its SNAP program each year, approximately $190 million of which is reimbursed by the federal government.

**Confidentiality of SNAP Data in Michigan**

8. As part of the SNAP application process, MDHHS collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to, home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income and resource information.

9. Michigan protects the confidentiality of its residents' SNAP data. In Michigan Complied Law § 400.35, public assistance records are deemed confidential and are only allowed to be inspected pursuant to Michigan Complied Law § 400.64.

10. Consistent with 7 U.S.C. § 2020(a)(3), which requires a data agreement and security protocols in place before a state may share SNAP data, it is the policy of MDHHS that the use and sharing of MDHHS data externally will be documented in a signed written agreement known as a data use agreement. Data use agreements (DUA) can take many forms and formats, including data sharing agreements, non-disclosure agreements, contracts containing data sharing or data use provisions, and memoranda of understanding. Data use agreements outline what data will be shared, how data will be used, disclosed, and protected. Data use agreements extending beyond a year must be reviewed annually. MDHHS has not entered into a data share agreement or other similar legal document with the USDA and therefore, no data can be transferred at this time.

**USDA's Unprecedented Request for Michigan's SNAP data**

*Initial Demands to MDHHS and MDHHS's EBT Vendor*

11. On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent MDHHS a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP". The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter

benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present.

12. Separately, on May 5, 2025, MDHHS received a letter from its EBT vendor, FIS, indicating that FIS had been contacted by USDA about providing data: "FIS was recently contacted by the [USDA] and its assigned Department of Government Efficiency ('DOGE') team in connection with the March 20, 2025 Executive Order 'Stopping Waste, Fraud, and Abuse by Eliminating Information Silos.'" FIS explained that, pursuant to its contract with the State, FIS had not shared any proprietary, confidential, or personally identifiable information with USDA or DOGE. On May 9, 2025, FIS informed MDHHS that USDA had "made a formal request for records regarding SNAP cardholder and transaction data" and that FIS "intend[ed] to fully cooperate with the USDA in facilitating its request for information." The May 9th letter asked for MDHHS's written consent to disclose the information by May 14, 2025. After seeking more information from FIS about USDA's request, MDHHS formally denied FIS's request for consent on May 15, 2025. Pointing to its contract with FIS, MDHHS also asked for written confirmation by 3:00 p.m. on May 16, 2025, that FIS would not disclose Michigan resident data without MDHHS's consent. FIS provided this written confirmation on May 15, 2025.

*USDA's SORN*

13. On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale ''National Supplemental Nutrition Assistance Program (SNAP) Information Database.''[1]

---

[1] 90 Fed. Reg. 26,521 (June 23, 2025).

14. The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

15. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

16. The USDA's actions are unprecedented. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

17. In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

18. These uses are duplicative of existing systems. MDHHS already conducts these checks, using systems such as the Systematic Alien Verification for Entitlement ("SAVE")

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

5

program. In addition, MDHHS currently uses the Public Assistance Reporting Information System (PARIS) Interstate match, which is a quarterly data matching service used to help determine if a client has received duplicate benefits in two or more states. MDHHS, via its Bridges eligibility system, applies a matching criterion to determine a PARIS match with all active recipients. MDHHS is also slated to implement the National Accuracy Clearinghouse ("NAC"), a federal clearinghouse designed to ensure that individuals do not improperly receive SNAP benefits from multiple states at the same time, 7 C.F.R. § 272.18, in May 2026.

*USDA's Renewed Unprecedent Request for SNAP Data*

19. On July 9, the USDA Secretary Brooke L. Rollins sent MDHHS demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

20. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent MDHHS another letter, reiterating the USDA's demand of information. In the letter, Ms. Brand stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to

calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

21. On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to MDHHS stating that "Failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

22. On July 28, 2025, Michigan, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

23. On July 30, 2025, MDHHS sent USDA a letter expressing its concern with USDA's data demand. Attached hereto as Exhibit 1.

24. On August 12, 2025, Deputy Under Secretary Penn sent a letter directed to Governor Whitmer informing her that because FNS had not received the participant data "the State of Michigan is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that Michigan could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

25. The August 12, 2025 letter further states: "In order for FNS to determine that Michigan has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Michigan will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Michigan fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

**Adverse Impacts of USDA's Demands and Threat to Withhold Administrative Funding**

26. Disclosing PII of SNAP applicants and recipients to USDA may have a chilling effect on SNAP participation in Michigan, as individuals who are fearful of having their personal data shared will likely be deterred from filing applications. This includes vulnerable populations who are eligible for assistance but are concerned about protecting their PII and the PII of other individuals in their household, including those who are not seeking SNAP benefits. This reduced participation will lead to increased food insecurity in Michigan and have a far-reaching negative economic impact.

27. The adverse impacts of food insecurity are well documented from both a health and economic perspective. In July 2019, a study that used data current through 2016 published in the Center for Disease Control and Prevention's Preventing Chronic Disease publication, stated the following about food insecurity:

- 12% of adults and 15.9% of children were food insecure in Michigan
- The cost of food insecurity in Michigan was $1,801,282 (range between $972,763 at the lower bound to $2,629,056 at the upper bound)
- The cost of food insecurity per capita (or per person) in Michigan was $182
- The study also estimated that on average, food insecure adults across the United States had $1,834 higher health care costs per year than food secure adults
- "Food insecurity is associated with numerous chronic health conditions, including diabetes mellitus, hypertension, coronary heart disease, chronic kidney disease, and depression."[3]

28. Likewise, the likely reduction of SNAP beneficiaries due to the chilling effect of USDA's data demands would also likely lead to loss of economic growth in local economies, as fewer SNAP benefits spent in Michigan will impact small business who rely on that revenue.

---

[3] Berkowitz SA, Basu S, Gundersen C, Seligman HK. State-Level and County-Level Estimates of Health Care Costs Associated with Food Insecurity. Prev Chronic Dis 2019;16:180549. DOI: http://dx.doi.org/10.5888/pcd16.180549

29.     In addition, Michigan's SNAP recipients could be placed at great risk in the event of improper sharing of PII and EBT card data and transactions. This population already has a higher risk for fraud and exposure of their data would increase that risk even further. It is imperative that their information is safeguarded by limiting unnecessary transmission and storage outside of the state's system of eligibility.

30.     Moreover, as a practical matter, to meet USDA's unprecedent demand for data, MDHHS, in conjunction with the State's information technology team, the Michigan Department of Technology, Management and Budget, will have to complete extensive analysis and development to identify and transform requested data into the required format.

31.     The withholding of SNAP administrative funds would cause irreparable hardship to the SNAP program in Michigan and to the people of Michigan who rely on SNAP benefits. Administrative cuts would likely require staff reductions to MDHHS's team, which in turn would lead to delays in processing SNAP applications, resolving SNAP eligibility determinations, and generally slowing the distribution of SNAP benefits to residents in Michigan.

32.     In addition, a reduction in administrative funds for MDHHS would delay ongoing and continued technology improvement implementations; and potential cuts to vital state program options, which enhance the SNAP program benefits for Michigan households.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2025, in Lansing, Michigan.

_____
Dwayne Haywood
MDHHS

# Exhibit 1



STATE OF MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN SERVICES
LANSING

GRETCHEN WHITMER
GOVERNOR

ELIZABETH HERTEL
DIRECTOR

July 30, 2025

Vista Fletcher
Regional Administrator
Midwest Regional Office
Food and Nutrition Service
77 W. Jackson Blvd, 20th Floor
Chicago, IL   60604

Administrator Fletcher:

The Michigan Department of Health and Human Services (MDHHS) is currently in receipt of USDA's July 9, 2025, letter and subsequent notices in which USDA has demanded data pertaining to all SNAP recipients from January 2020 to present by today, July 30, including sensitive personally identifiable information.  On Monday, July 28, 2025, the State of Michigan, along with a group of other states, filed suit for declaratory and injunctive relief and to contest the demand for SNAP recipient data.  See *California v. U.S.D.A.*, No. 3:25-cv-06310 (N.D.CA).  Accordingly, MDHHS will not produce SNAP recipient data because the demand is unlawful for the reasons identified in the lawsuit.

Moreover, even if USDA's demand is determined to be lawful, MDHHS is unable to comply with the July 30th deadline given the size of the request and associated technical burdens.  MDHHS will however continue to comply with federal and state law related to the SNAP grants and administration of SNAP benefits and will continue to comply with existing data sharing agreements.

Sincerely,

Dwayne A. Haywood
Senior Deputy Director
Economic Stability Adminstration

DH:bc