IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,** | |
| Plaintiffs, | |
| v. | Case No. **3:25-cv-06310-MMC** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture**; U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,** | |
| Defendants. | |

**DECLARATION OF DR. SHANEEN MOORE**

## DECLARATION OF DR. SHANEEN MOORE

**Dr. Shaneen Moore**, declares under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am a resident of the State of Minnesota. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2. I am the Assistant Commissioner of the Family Wellbeing administration of the Minnesota Department of Children, Youth, and Families. My educational background includes a Bachelor of Business degree, Master of Business Administration degree, and a Doctor of Philosophy in Public Service and Management. I have been employed as the Assistant Commissioner of the Family Wellbeing administration since July 11, 2024. Prior to my role as Assistant Commissioner, I served as a Deputy Assistant Commissioner for the Children and Family Services Administration at the Minnesota Department of Human Services, as Director and Deputy Director of the Child Support Division. My professional experience in this and similar capacities expands almost 12 years working for state government. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

3. The Minnesota Department of Children, Youth, and Families administers programs that keep children safe and provides families with supports to care for their children. Among the programs administered by DCYF is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Minnesota**

4. SNAP is a key part of Minnesota's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In Federal Fiscal Year 2024, an average of 440,000 people received SNAP benefits in Minnesota each month, including 181,980 children and 67,000 elderly individuals. More than $859,591,730.00 in SNAP benefits were issued through 2024. This amount reflects those receiving federal SNAP benefits and state-funded food benefits as part of Minnesota's state-funded Minnesota Family Investment Program ("MFIP") and solely state-funded SNAP benefits.

5. Pursuant to federal law, DCYF is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising 87 counties and 3 Tribal Nations' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

6. Minnesota expends approximately $160 million in administrative costs to run its SNAP program each year, approximately $80 million of which is reimbursed by the federal government.

7. Minnesota combines cash assistance (Temporary Assistance to Needy Families ("TANF")), administered in Minnesota as the Minnesota Family Investment Program ("MFIP"), and SNAP benefits into a single benefit, allocated to eligible recipients via an Electronic Benefit Transfer ("EBT") card. The EBT system issues benefits for MFIP, SNAP, and other state-funded cash assistance programs.

**USDA's Unprecedented Request for Minnesota's SNAP data**

8.      As part of the SNAP application process, Minnesota collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to, home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income and resource information.

9.      Minnesota strictly protects the confidentiality of its residents' SNAP data. The Minnesota Government Data Practice Act ("MGDPA"), Minnesota Statutes, chapter 13, regulates the collection, creation, storage, maintenance, dissemination, and access of government data regardless of its physical form, storage media, or conditions of use.

10.     On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent DCYF a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP". The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present.

11.     On May 9, 2025, Minnesota was notified by its SNAP vendor, Fidelity Information Services ("FIS"), that USDA made a formal request to obtain SNAP cardholder and

3

transaction data directly from FIS. Minnesota informed FIS that it did not consent to the disclosure of such data.

12. On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale ''National Supplemental Nutrition Assistance Program (SNAP) Information Database.''[1]

13. The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

14. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

15. The USDA's actions are unprecedented. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

16. In its privacy impact assessment, USDA states that the purported uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status

---

[1] 90 Fed. Reg. 26,521 (June 23, 2025).

4

eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

17. These purported uses are duplicative of existing systems. Minnesota already follows federal laws, regulations and expectations of states to administer SNAP, using systems such as the Systematic Alien Verification for Entitlement ("SAVE") program. Although SNAP regulations do not mandate it, Minnesota uses the U.S. Department of Health and Human Services Public Assistance Reporting System ("PARIS") to identify individuals who may be current SNAP participants in more than one state. Additionally, Minnesota is preparing to participate in the National Accuracy Clearinghouse ("NAC"), a federal clearinghouse designed to ensure that individuals do not improperly receive SNAP benefits from multiple states at the same time, 7 C.F.R. § 272.18. Minnesota utilizes other data-matching to confirm eligibility factors including interfacing with data systems at Social Security Administration ("SSA"), the Internal Revenue Service ("IRS"), the Minnesota Department of Employment and Economic Development ("DEED"), which maintains unemployment data and wage data, the electronic Disqualified Recipient Subsystem ("eDRS"), Prisoner Verification System ("PVS"), Deceased Matching System, and the National Directory of New Hires ("NDNH").

18. On July 9, the USDA Secretary Brooke L. Rollins sent Minnesota a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

5

19. PII and benefit data are classified as protected nonpublic private or confidential data under the MGDPA. To ensure that data is appropriately protected and shared only as allowed by law, as a best practice DCYF executes Data Sharing Agreements to set provisions, responsibilities, and conditions before sharing of data with another entity. MGDPA restricts the dissemination of the data for any purpose other than those stated to the individual at the time of collection. SNAP applicants provide PII with the understanding that their information will not be used for unrelated purposes. Providing PII to USDA as demanded would place Minnesota in the precarious position of violating its own laws.

20. Federal laws and regulations also prevent DCYF from sharing confidential SNAP participant data with a third party unless an appropriate data sharing agreement or similar document has been executed. For example, specific to SNAP, in order to exchange data via an income and eligibility verification system ("IVES"), the federal regulations require a State Agency to execute data exchange agreements with the Social Security Administration, the Internal Revenue Services, and other State Agencies that maintain wage information or administer certain other programs with similar eligibility requirements. 7 CFR § 272.8(a). Similarly, a data sharing agreement is required between a State Agency and USCIS in order to implement and use the SAVE Program. 7 CFR § 272.11. Such an agreement has not been executed for the sharing contemplated here.

21. Disclosure of PII of SNAP applicants and recipients to USDA may have a chilling effect on SNAP participation in Minnesota, as individuals who will be fearful of having their personal data shared will likely be deterred from filing applications. Deterring eligible applicants from pursuing food assistance would not only harm the state's low-income families in need of nutritious meals but also be at direct odds with the state's SNAP outreach efforts to encourage

eligible low-income families to apply for SNAP, efforts in which the state invests millions of dollars per year.

22.  Through a federal option called "direct certification" for its school lunch program, Minnesota currently certifies an estimate of 250,000 children for federally funded free or reduced-price meals for state fiscal year 2024 due to their households' participation in SNAP. This process is crucial for improving access to the school lunch program without any unnecessary delays and reduces the administrative burden on schools. Any reduction in SNAP enrollment for families with schoolchildren therefore has a negative impact on federal eligibility for free or reduced-price meals.

23.  If SNAP enrollment declines, there will be additional health care expenditures. SNAP enrollment is correlated with other health outcomes in Minnesota. A Minnesota study found that when adult SNAP recipients were able to retain their SNAP benefits, annual Medicaid health care spending was $98.80 lower for each month of SNAP receipt.[3]

24.  SNAP participants, SNAP vendors, DCYF and other government agencies would experience adverse repercussions in the event of a data breach or other misuse of the data. For example, if there is improper sharing of information on EBT cards and transactions, SNAP recipients could be placed as risk of benefit or identity theft and SNAP vendors could be placed at risk for financial loss. SNAP recipients could lose their benefits, resulting in financial hardship. Data breaches or other data misuse also erodes the public trust in DCYF and other government agencies and their ability to administer programs and may deter people in need from applying for programs like SNAP for fear of their data being misused. Additionally,

---

[3] Kollannoor-Samuel, G., Boelcke-Stennes, K.A., Nelson, J., Martin, E., Fertig, A.R., & Schiff, J. (2022). Supplemental Nutrition Assistance Program Participation is Associated with Lower Health Care Spending among Working Age Adults without Dependents. *Journal of Health Care for the Poor and Underserved 33*(2), 737-750. https://dx.doi.org/10.1353/hpu.2022.0060.

investigation of or handling any legal challenges related to data breaches or other data misuse requires expending both state and federal administrative costs and resources.

25. Minnesota combines TANF, administered in Minnesota as MFIP, and SNAP benefits into a single benefit, allocated to eligible recipients via an EBT card. The EBT system issues benefits for MFIP, SNAP, and other state-funded cash assistance programs including General Assistance and Minnesota Supplemental Aid. Data from source systems is aggregated in Minnesota's data systems and would need to be disentangled in order to comply with the USDA demand for SNAP applicant and recipient data. The level of technical effort required to disentangle all of the SNAP funded cases with other program recipient data and the legal analysis of the classification of the data that would be required before transmitting the data to USDA is unprecedented and would require months if not years of work, diverting resources away from other necessary duties.

26. Some of the information requested by USDA would be extraordinarily difficult to produce and would require third parties to consent to the release of the data. For example, USDA is requesting "information derived from and associated with EBT transactions". There is transaction data within FIS, but data on where a participant spends their benefit is retailer information and cannot be shared without their approval. If there is no activity on a case in FIS, after one year, the data is removed from that system. Furthermore, Minnesota only sends head of household information to FIS. To produce the data requested for all individuals receiving SNAP would require producing data from multiple systems again diverting resources away from other necessary duties.

8

27. On July 18, 2025, Minnesota, joined by several other states, submitted a comment letter outlining our objections to the USDA's creation of a vast National SNAP Information Database and the USDA's demand for state data.

28. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent DCYF another letter, reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

29. On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to [State Agency] stating that "Failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

30. On July 28, 2025, Minnesota, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

31. On August 12, 2025, Deputy Under Secretary Penn sent a letter to Governor Walz informing him that because FNS had not received the participant data "the State of Minnesota is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that [State] could be subject to suspension or

9

disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

32. The August 12, 2025, letter further states: "In order for FNS to determine that Minnesota has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Minnesota will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Minnesota fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

33. Minnesota will be irreparably harmed if the federal government withholds the SNAP administrative funds. DCYF would likely have to cut staff and programs that are critical to supporting the SNAP program or divert resources from other important services, which would impact service delivery at the county and Tribal Nation level.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2025, in Minneapolis, Minnesota.

_____
Dr. Shaneen Moore
Assistant Commissioner, Family Wellbeing Administration
Department of Children, Youth, and Families

10