IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>                                              Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture**; U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**<br><br>                                              Defendants. | Case No. **3:25-cv-06310-MMC** |

**DECLARATION OF CLAIRE CARPENTER-SEGUIN**

# DECLARATION OF CLAIRE CARPENTER-SEGUIN

I, Claire Carpenter-Seguin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of Oregon. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2. I am the director of the Oregon Department of Human Services' (ODHS) Self-Sufficiency Programs, which provide resources like cash and food assistance, as well as targeted services, to help people move out of poverty. I have served in this role since 2023. Prior to that, I served as the interim director and deputy director. I also have more than 30 years of experience in community development: I previously led successful community development corporations in southern California; worked to build affordable housing; worked on community revitalization; and have long been an advocate for anti-poverty programs. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

3. ODHS is Oregon's principal agency for helping Oregonians achieve well-being and independence. It administers a variety of human services programs for the state's residents.

4. Among the programs administered by ODHS is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores. As director of ODHS's Self-Sufficiency Programs, I oversee the administration of Oregon's SNAP program.

**SNAP in Oregon**

5. SNAP is a key part of Oregon's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In federal fiscal year

(FFY) 2024, an average of 760,309 people received SNAP benefits in Oregon each month, including 215,239 children and 132,514 elderly individuals. More than $1,666,361,888 in SNAP benefits were issued throughout FFY 2024.

6. Pursuant to federal law, ODHS is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising the day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

7. Oregon spent approximately $473,350,000 in administrative costs during FFY 2024 to run its SNAP program, approximately $236,675,000 of which was reimbursed by the federal government.

**USDA's Unprecedented Request for Oregon's SNAP data**

8. As part of the SNAP application process, ODHS collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income, and resource information.

9. Oregon strictly protects the confidentiality of its residents' SNAP data. Oregon Revised Statute (ORS) 411.320 and Oregon Administrative Rule (OAR) 461-105-0130 restrict the disclosure of records or personal information collected for the SNAP program to purposes directly connected with the administration of SNAP or helping an individual obtain other forms of public assistance.

10. On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent ODHS a letter stating that

the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP." The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through the present.

11.     On May 9, 2025, ODHS was notified by its SNAP data vendor, Fidelity Information Services (FIS), that USDA was seeking to obtain SNAP participant data directly from FIS. ODHS informed FIS that it did not consent to the disclosure of such data. On May 15, 2025 and July 24, 2025, FIS informed ODHS that FIS understands it is not authorized to redisclose Oregon's information unless directed by ODHS to do so.

12.     On June 23, 2025, the USDA published a System of Records Notice (SORN) in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database."[1]

13.     The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other

---

[1] 90 Fed. Reg. 26,521 (June 23, 2025).

identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also stated that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

14. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

15. The USDA's actions are unprecedented. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

16. In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

17. These uses are duplicative of existing systems. ODHS already conducts these checks using systems such as the Systematic Alien Verification for Entitlement ("SAVE") program and the Electronic Disqualified Recipient System (eDRS). Oregon is also scheduled to launch the National Accuracy Clearinghouse ("NAC"), which aims to promote program integrity, reduce improper payments, and ensure the fair and accurate distribution of SNAP benefits to eligible recipients across state lines. ODHS has participated in national meetings, regional meetings, and private USDA-FNS Western Regional Office meetings in order to prepare for this.

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

18. On July 9, the USDA Secretary Brooke L. Rollins sent ODHS a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

19. ODHS does not share confidential SNAP participant data with a third party without executing an appropriate data sharing agreement or Memorandum of Understanding, which has not been offered by USDA. ODHS places a high priority on the proper handling of PII received from applicants for public benefits.

20. Disclosure to USDA of SNAP data at this unprecedented volume will likely have a chilling effect on SNAP participation in Oregon. It may also have a chilling effect on participation in other ODHS programs. Individuals who are fearful of having their PII shared with USDA—and being further redisclosed by USDA to other federal agencies for purposes unrelated to the SNAP program's administration, such as immigration enforcement—will likely be deterred from filing applications. Such deterrence would undermine the purpose of SNAP and other public assistance programs, which is to provide supplemental food benefits for nutritious food and improve the health and well-being of qualifying low-income individuals and families.

21. The chilling effects from this disclosure would likely also negatively impact Oregon's participation in the National School Lunch Program (NSLP). Under federal law, school districts participating in the NSLP may automatically certify children for free school meals without requiring a separate school meal application if their households participate in SNAP. This process, known as "direct certification," streamlines eligibility, reduces administrative burdens, and ensures that eligible children receive meals promptly. In the 2023-2024 school year, Oregon reported 185,806 school-aged children in SNAP households during the months of July,

August and September. If SNAP enrollment declines due to the chilling effects from applicants' fear of federal data-sharing, then fewer children will be matched via direct certification. This would result in fewer children participating in SNAP. Those children's families would then be burdened with unnecessary applications for free school meals and may lose access to those meals due to a failure to apply or application errors.

22. Moreover, when there are enough students who qualify for SNAP within a given school district, the direct certification program helps school districts maintain their district-wide eligibility for the Child Nutrition Program Community Eligibility Provision waiver. That waiver allows the entire school-district to be eligible to receive NSLP funds and provide food to all children in the school. But if the number of students who qualify for SNAP declines within a district, it could threaten that district's eligibility for the waiver. That, in turn, could diminish food security for children throughout Oregon.

23. The disclosure sought by USDA would have other harmful effects in Oregon as well. SNAP is the most effective and efficient way to provide access to nutritious food and improve the health and well-being of qualifying low-income individuals and families. When families and individuals choose not to enroll in SNAP due to privacy concerns, their food needs will drive them to the state's food banks in higher volumes. Oregon food banks already serve record numbers of individuals with limited food resources. Last year, Oregon saw 2.5 million visits to food assistance sites through the statewide food bank network — a 31 percent increase from the previous year. Any chilling effect on SNAP participation will put unsustainable pressure on an already overburdened emergency food support network.

24. Any redisclosure of SNAP participants' PII without proper data security also places participants at an increased risk of identity theft and other financial risks due to misuse of their information.

25. The disclosure sought by USDA would also burden Oregon in other ways. Among other things, ODHS would need to complete substantial additional technical work in order to transmit the data sought by USDA. This would include creating a data dictionary so USDA can understand the meaning of each data point and the terminology ODHS uses. It would also include technical preparations of two separate eligibility systems for data sharing, because Oregon maintains both a legacy system and a more modern, integrated application system (known as the "ONE" system) to which the state has transitioned. Among other things, ODHS would also need to decouple information in the integrated ONE system collected and used for programs other than SNAP; create an ODHS SNAP policy change timeline to support the accuracy of any USDA eligibility review; and contact Oregon's regional Social Security Administration Privacy Act Coordinator.

26. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent ODHS another letter reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting

"transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

27.     On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to ODHS stating that "Failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

28.     On July 28, 2025, Oregon, joined by several other states (the "Plaintiff States"), filed the present action in the Central District of California challenging the USDA's actions.

29.     On July 30, 2025, ODHS sent USDA a letter expressing its concern with USDA's data demand. In the letter, ODHS expressed a commitment to cooperate with efforts to improve program integrity that are consistent with federal and state law. But the agency referred USDA to the serious legal concerns about the data demand outlined in the Plaintiff States' Complaint. ODHS requested any information USDA could provide that might assuage these concerns, such as guarantees about how the requested information will be used and shared. And aside from those legal concerns, ODHS's letter also shared multiple technical and feasibility barriers to its compliance with USDA's data demand on the extremely tight timeline provided by USDA. It also highlighted ambiguities in USDA's demand that would need to be clarified before any data transfer. The letter noted that ODHS requires further guidance from USDA on these issues. ODHS's letter finally requested that USDA withdraw its data demand or stay the deadline to submit data until this litigation is resolved. To date, USDA has not provided a response to the issues highlighted in this letter.

30.     On August 12, 2025, Deputy Under Secretary Penn sent a letter to the Governor of Oregon informing her that, because FNS had not received the participant data requested, "the State Oregon is out of compliance with SNAP requirements." The letter further states that, "[a]s

provided by 7 CFR 276.4, this letter serves as an advance notice that Oregon could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

31.     The August 12, 2025 letter further states: "In order for FNS to determine that Oregon has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Oregon will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Oregon fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

32.     Oregon will be irreparably harmed if the federal government withholds its funding contribution to Oregon's administration of the SNAP program. Among other things, ODHS will likely have to cut staff, cut funds from other programs that are critical to supporting the SNAP program, and/or divert resources from other important services.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of August, 2025 in Eugene, Oregon

CLAIRE CARPENTER-SEGUIN
Self-Sufficiency Programs Director
Oregon Department of Human Services