IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAIʻI; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,** | |
| Plaintiffs, | |
| v. | Case No. **3:25-cv-06310-MMC** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,** | |
| Defendants. | |

**DECLARATION OF KIMBERLY MEROLLA-BRITO**

## **DECLARATION OF KIMBERLY MEROLLA-BRITO, DIRECTOR**
## **RHODE ISLAND DEPARTMENT OF HUMAN SERVICES**

I, Kimberly Merolla-Brito, declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am employed within the State of Rhode Island as Director of the Rhode Island Department of Human Services. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2. I am the Director of the Rhode Island Department of Human Services ("RIDHS" or the "Department") and have held this position since June 2022. My educational background includes a Master of Social Work and a Bachelor of Social Work, both from Rhode Island College. Prior to my current role, I served as the Deputy Director of Policy and Operations at RIDHS from 2017 to 2022, overseeing agency operations, policy initiatives, and staff development. From 2015 to 2017, I was the Associate Director of Policy and Operations, leading policy planning and quality control efforts. Between 2009 and 2015, I served as Administrator of Policy and Research, contributing to the development of the Unified Health Infrastructure Project. I began my state service in 1998 as a social caseworker at the R.I. Department of Children, Youth & Families, where I cultivated my clinical and public service expertise. In addition to my professional experience, I am a Licensed Independent Clinical Social Worker and continue to be engaged in community service through board memberships and leadership development initiatives.

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

4. The R.I. Department of Human Services is a Rhode Island State Executive branch agency that delivers critical benefits, supports and services to more than 300,000 families, adults, children, older adults, individuals with disabilities and veterans every year. These programs include but are not limited to the Supplemental Nutrition Assistance Program ("SNAP"), Temporary Assistance for Needy Families-Rhode Island Works, Child Care Assistance Program, determining eligibility for Medicaid, and Long-Term Support Services. Through these programs, RIDHS strives to ensure families are strong, productive, healthy, and independent, so that adults are healthy and reach their maximum potential, children are safe, healthy, ready to learn and reach their full potential, Child Care providers deliver high quality education services, older adults, seniors and individuals with disabilities receive all necessary services to enhance their quality of life, and Veterans are cared for and honored.

5. RIDHS is the single State agency, within Rhode Island, that administers SNAP, which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Rhode Island**

6. SNAP is a key part of Rhode Island's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In Federal Fiscal Year ("FFY") 2024, an average of 145,000 people received SNAP benefits in Rhode Island each month, including approximately 39,000 children and approximately 56,000 elderly and disabled adults. More than $342 million in SNAP benefits were issued through FFY 2024.

7. Pursuant to federal law, RIDHS is the single State agency responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transfer ("EBT") cards; ensuring program integrity; and responsible for the day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

8. Rhode Island expends approximately $50.4 million in administrative costs to run its SNAP program each year, approximately $25.3 million of which is reimbursed by the federal government.

**USDA's Unprecedented Request for Rhode Island's SNAP data**

9. As part of the SNAP application process, RIDHS collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to, home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income and resource information.

10. Rhode Island strictly protects the confidentiality of its residents' SNAP data in accordance with Federal laws and regulations, as well Rhode Island statutory mandates. R.I. General Laws § 40-6-12 *et seq.* specifically makes it "[u]nlawful for any person to make use of, or cause to be used, any information contained in records for purposes not directly connected with the administration thereof, except with the consent of the individual concerned." The statute further states that "[a]ny person violating any of the provisions of this section, or the lawful rules and regulations made pursuant to this section, shall be guilty of a misdemeanor, and shall be fined not more than two hundred dollars ($200) or shall be imprisoned for not more than six (6) months, or both."

11. On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent RIDHS a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP". The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present.

12. On May 9, 2025, RIDHS was notified by its SNAP data vendor, Fidelity Information Services ("FIS"), that USDA was seeking to obtain SNAP participant data directly from FIS. RIDHS informed FIS that it did not consent to the disclosure of such data, at that time.

13. On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale ''National Supplemental Nutrition Assistance Program (SNAP) Information Database.''[1]

14. The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit

---

[1] 90 Fed. Reg. 26,521 (June 23, 2025).

4

Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

15. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

16. The USDA's actions are unprecedented. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

17. In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

18. These uses are duplicative of existing systems. RIDHS already conducts these checks, using federal agency-maintained systems such as the Systematic Alien Verification for Entitlement ("SAVE") program and the Public Assistance Reporting Information System ("PARIS"). Rhode Island is scheduled to launch its National Accuracy Clearinghouse ("NAC") implementation project with FNS in December 2025 with an implementation date scheduled by FNS for Calendar Year ("CY") 2025. Additionally, Rhode Island maintains and uses other federal

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

data sources to match SNAP data including but not limited to the Electronic Disqualified Recipient System ("eDRS"), the National Directory of New Hires ("NDNH"), the Beneficiary and Earnings Data Exchange ("BENDEX"), the State Wage Information Collection Agency ("SWICA"), the State Verification and Exchange System ("SVES"), the State Online Query ("SOLQ"), Social Security Administration ("SSA") interfaces including those providing retirement, survivors, and disability insurance payments, Supplemental Security Income ("SSI"), death master files, and verification of social security numbers ("SSN") among others. Rhode Island also matches SNAP data against various state interfaces such as workers' compensation insurance, unemployment insurance, death records, child support payments and prisoner database.

19.     On July 9, the USDA Secretary Brooke L. Rollins sent RIDHS a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

20.     Disclosing PII of SNAP applicants and recipients to USDA may have a chilling effect on SNAP participation in Rhode Island, as individuals who are fearful of having their personal data shared will likely be deterred from filing applications. Moreover, it is not only the sharing of PII of SNAP recipients but also the PII of SNAP applicants who may never have received SNAP benefits but merely applied.

21.     RIDHS partners with the Rhode Island Department of Education ("RIDE") to provide direct certification of children for the National School Lunch Program and School Breakfast Program, as well as the Summer Electronic Benefits Transfer Program ("Summer EBT."] Rhode Island currently certifies almost 36,000 children for federally funded free or reduced-price meals due to their households' participation in SNAP. Any reduction in SNAP

enrollment for families with schoolchildren therefore has a negative impact on federal eligibility for free or reduced-price meals.

22. A decline in SNAP enrollment would have far-reaching adverse impacts for Rhode Island beyond food insecurity. Households losing access to SNAP benefits often experience increased reliance on emergency services, such as food pantries, homeless shelters, and crisis intervention programs, straining community resources that are not designed to meet sustained demand. Health outcomes would likely deteriorate, as reduced access to nutritious food exacerbates chronic conditions like diabetes, hypertension, and obesity, leading to higher utilization of costly emergency room care. This can also drive greater dependence on other public safety net programs, such as General Public Assistance, Medicaid, and child welfare services, thereby increasing state and local expenditures. The erosion of household stability caused by food insecurity can also have public health and public safety consequences, including greater incidence of communicable diseases, higher rates of mental health crises, and increased involvement of vulnerable populations with law enforcement. Collectively, these effects would undermine Rhode Island's public health infrastructure and shift costs to state and municipal systems, further compounding the fiscal and social impact of enrollment declines.

23. The movement of such large-scale data could expose Rhode Islanders to adverse repercussions if there is a data breach or other misuse of the data. For example, SNAP recipients and applicants could be placed at risk of benefit theft and identity theft if there is improper sharing of information related to EBT cards, transactions and personal information. Even when at rest, there needs to be vigilance in the security of the data. Even the Federal Government is not immune to cyberattacks, for example, the cyberattack on U.S. Department of Homeland Security, the Department of Health and Human Services, etc.

24. RIDHS would also need to work closely and collaboratively with its state Information Technology ("IT") experts to extract and review the data before submission to ensure its accuracy, security, file layout, among other parameters. The volume of data to query, retrieve and review is significant and would require much time and resources to ready for transmission.

25. On July 18, 2025, Rhode Island, joined by several other states, submitted a comment letter outlining our objections to the USDA's creation of a vast National SNAP Information Database and the USDA's demand for state data.

26. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Branch sent RIDHS another letter, reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

27. On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to RIDHS stating that "[f]ailure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

28. On July 28, 2025, Rhode Island, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

29. On July 30, 2025, RIDHS sent USDA a letter expressing its concern with USDA's data demand. RIDHS requested additional information regarding the standard data security protocols that would be utilized. Additionally, RIDHS also requested an extension of the deadline until the litigation had been resolved. To date, USDA has not provided a response to these and other requests.

30. On August 12, 2025, Deputy Under Secretary Penn sent a letter to Rhode Island Governor Daniel J. McKee informing him that because FNS had not received the participant data "the State of Rhode Island is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that [State] could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

31. The August 12, 2025, letter further states: "[i]n order for FNS to determine that Rhode Island has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Rhode Island will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Rhode Island fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

32. Should the federal government withhold SNAP administrative funds, Rhode Island will be irreparably harmed in that the State will incur a significant budgetary impact. The withholding of SNAP administrative funds will also impact the State's IT infrastructure, staffing

9

and operational supports, among others, in support of the SNAP program. This would also lead to a diversion of resources from other critical supports, services and benefits for Rhode Islanders.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

        Executed this 15th day of August 2025, in Cranston, Rhode Island.

        _____
        Kimberly Merolla-Brito
        Director
        R.I. Department of Human Services