IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**<br><br>　　　　　　　　　　　　　　Defendants. | Case No. **3:25-cv-06310-MMC** |

**DECLARATION OF DEBRA STANDRIDGE**

## DECLARATION OF DEBRA STANDRIDGE

I, Debra Standridge, declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, as follows:

1. I am a resident of the State of Wisconsin. I am over the age of 18 and understand the obligations of an oath.

**Professional and Agency Background**

2. I am the Deputy Secretary of the Wisconsin Department of Health Services (DHS). I am familiar with the information in the statements set forth below either through personal knowledge or in consultation with staff from our Division of Medicaid Services (DMS).

3. Wisconsin DHS exercises multiple roles in the protection and promotion of the health and safety of the people of Wisconsin in an effort to foster economic prosperity and improve residents' quality of life.

4. Among the programs administered by DHS is the Supplemental Nutrition Assistance Program (SNAP), known in Wisconsin as FoodShare, which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Wisconsin**

5. SNAP is a key part of Wisconsin's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In calendar year 2024, an average of 693,600 people received SNAP benefits in Wisconsin each month, including 278,305 children and 76,296 individuals aged 65 and older. More than $1.4 billion in SNAP benefits were issued in 2024

6. Pursuant to federal law, DHS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and

supervising income maintenance agencies' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

7. In Federal Fiscal Year 2024 Wisconsin spent $186,922,793 to administer the SNAP program (including SNAP E&T). Of that, $97,431,908 was reimbursed by the federal government. Costs for the current year are expected to be higher.

**USDA's Unprecedented Request for Wisconsin's SNAP data**

8. As part of the SNAP application process, DHS through income maintenance agencies collects sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to, home addresses, dates of birth, Social Security Numbers, citizenship and immigration status, household income and resource information.

9. Wisconsin strictly protects the confidentiality of its residents' SNAP data. In Wisconsin, the legislature created the "Public assistance recipients' bill of rights" at Wisconsin Statutes s. 49.81, providing for respectful treatment, prompt consideration, access to information, and absolute confidentiality of agency records pertaining to application or receipt of benefits.

10. On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor for Integrity Gina Brand sent DMS a letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP". The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers." USDA also indicated that it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over

time, with the ability to filter benefits received by date ranges." The letter further demanded that the requested data would cover the period beginning January 1, 2020, through present.

11. On May 9, 2025, DHS was notified by its SNAP data vendor, Fidelity Information Services (FIS), that USDA was seeking to obtain SNAP participant data directly from FIS. DHS informed FIS that it did not consent to the disclosure of such data, pending more information about what data USDA was seeking.

12. On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database."[1]

13. The SORN announced that the USDA intended to demand the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients." *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates." *Id.*

14. These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

15. The USDA's actions are unprecedented. To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

---

[1] 90 Fed. Reg. 26,521 (June 23, 2025).

16. In its privacy impact assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[2]

17. These uses are duplicative of existing systems. DHS already conducts these checks, using systems such as the Systematic Alien Verification for Entitlement ("SAVE") program and the ACF's PARIS data match to identify duplicate enrollment. DHS is also in the design phase towards participation in the National Accuracy Clearinghouse ("NAC"), a federal clearinghouse designed to ensure that individuals do not improperly receive SNAP benefits from multiple states at the same time, 7 C.F.R. § 272.18.

18. On July 9, 2025, the USDA Secretary Brooke L. Rollins sent Wisconsin a demand for five years' worth of data on all SNAP applicants and recipients. The July 9 Letter demands the categories of records listed in the SORN and directs states to produce the requested data starting July 24 and no later than July 30, 2025.

19. Given the sensitivity of member information, DHS cannot share confidential SNAP participant data with a third party without executing an appropriate data sharing agreement, which has not been done in this situation.

20. Even the public discussion around disclosure of PII of SNAP applicants and recipients to USDA may have a chilling effect on SNAP participation in Wisconsin, as individuals who are fearful of having their personal data shared will likely be deterred from filing applications. This includes but is not limited to families where parents may be immigrants but have citizen children who qualify for benefits.

---

[2] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal Year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

21. In addition to the direct chilling effect on families with children who may be deterred from applying for or maintaining SNAP benefits, Wisconsin expects a reduction in children's participation in the National School Lunch Program and School Breakfast Program. Wisconsin directly certifies almost 110,000 children for federally funded free or reduced-price meals at school, based on their participation in SNAP. Any reduction in SNAP enrollment for families with school-aged child therefore has a negative impact on federal eligibility for free or reduced-price meals.

22. SNAP benefits serve as a critical source of nutrition for Wisconsin residents. As families are deterred from enrolling due to fear of their data being shared, we expect to see significant stress on the state's limited emergency services, both public and private, and an uptick in families experiencing homelessness as they may have to make choices between paying for rent or buying food. In the long term, we expect to see an increase in costs related to poor health outcomes for families whose food budgets are compromised.

23. In addition to the requirements of confidentiality in the *Public benefits recipients' bill of rights*, Wisconsin's data sharing policies and practices are informed by our duty to protect members from the significant risks of data breaches. If their information is shared improperly, SNAP members are at greater risk of benefit theft and identity theft.

24. Wisconsin would need to engage in a complex effort to identify, validate and export member data. Given our previous assurances to members that their data will not be shared, we would also need to notify members that we have done so. This would require expenditure of limited state resources to support data analysis and production by multiple vendors. It would also involve state and vendor resources to support a mass mailing, and the phone calls and other contacts DHS would receive as a result.

25. On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Gina Brand sent Wisconsin another letter, reiterating the USDA's demand of information. She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date. Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data."

26. On July 25, 2025, USDA-FNS Deputy Under Secretary Patrick A. Penn sent a letter to Wisconsin stating that "Failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures codified in 7 U.S.C. 2020(g)."

27. On July 28, 2025, Wisconsin, joined by several other states, filed the present action in the Northern District of California challenging the USDA's actions.

28. On August 12, 2025, Deputy Under Secretary Penn sent a letter to Governor Evers informing him that because FNS had not received the participant data "the State of Wisconsin is out of compliance with SNAP requirements." The letter further states that, "[a]s provided by 7 CFR 276.4, this letter serves as an advance notice that Wisconsin could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

29. The August 12, 2025, letter further states: "In order for FNS to determine that Wisconsin has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS

must receive a description of the actions Wisconsin will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Wisconsin fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

30. For 2025 – 2026, Wisconsin would expect over $100 million in federal funding for program administration and budgeted an equal amount from state and local funds. If USDA withholds administrative funding, Wisconsin might have to consider changes in how it administers SNAP in Wisconsin to account for the decrease in federal funding, which may impact the effective administration of SNAP in Wisconsin.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14 day of August 2025, in New Berlin, Wiscosnin

*[signature]*
Debra Standridge
Deputy Secretary
Wisconsin Department of Health Services