UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA *et al.* | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) **DECLARATION OF SHIELA CORLEY** ) |
| UNITED STATES DEPARTMENT OF AGRIGULTURE, *et al.* | ) Civil Action No. 3:25-cv-06310 ) ) ) |
| Defendants. | ) ) ) |

Pursuant to 28 U.S.C. § 1746, I Shiela Corley, declare:

1.  I am the Chief of Staff to the Deputy Under Secretary for the Food, Nutrition, and Consumer Services ("FNCS") mission area, which is a component of the United States Department of Agriculture ("USDA"). I have served in this position since February 2025 and have worked for FNCS since 2018. I have worked for USDA in various capacities since 1995.

2.  In my capacity as Chief of Staff, I provide guidance and support to USDA senior leadership on matters pertaining to the administration of 16 domestic nutrition and food security programs and the promotion of the dietary guidelines. I also supervise Gina Brand, the Senior Policy Advisor for Integrity.

3.  I make the statements herein based on personal knowledge, as well as on information I acquired while performing my official duties, including a review of agency files and discussions with colleagues at the Food Nutrition Service ("FNS") who are familiar with the facts at issue in this litigation.

**DECLARATION OF SHIELA CORLEY - 1**

I.        **Administration of the Supplemental Nutrition Assistance Program ("SNAP").**

4.        FNS is an agency within the FNCS mission area.

5.        FNS administers nutrition assistance programs for USDA, including the Supplemental Nutrition Assistance Program ("SNAP"). 7 C.F.R. § 271.3. The mission of FNS is to provide children and needy families with better access to food and a more healthful diet through its food assistance programs and comprehensive nutrition education efforts.

6.        The mission of SNAP is "to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. Assistance is focused on increasing the food purchasing power of eligible households by supplementing the funds those households have to spend on food with SNAP benefits. 7 U.S.C. § 2013. SNAP benefits are fully funded with Federal dollars, and USDA pays 50 percent of a State Agency's administrative costs. 7 U.S.C. §§ 2025, 2027. In fiscal year 2024, USDA funded $94.4 billion in benefits and $5.42 billion in State Agency administrative costs.

7.        SNAP's administration is accomplished through partnerships with State Agencies. "State Agency" refers to the agency of State government, including its local offices, which has "the responsibility for the administration of the federally aided public assistance programs within such State." 7 U.S.C. § 2012(s)(1). For SNAP, the State Agencies conduct eligibility determinations for applicant households and calculate benefit amounts for eligible households.

8.        A household that meets SNAP eligibility requirements, which are predominantly income and asset-focused, is provided an Electronic Benefit Transfer (EBT) card they can then use to access their SNAP benefits. The SNAP benefits, which are 100% federally funded, are loaded onto the EBT card monthly and may only be used similar to a debit card to purchase eligible food at SNAP-authorized retailers.

9.        State Agencies, using federal funding to administer SNAP, contract with private companies, known as EBT Processors, to issue SNAP benefits to households. Based on household and

**DECLARATION OF SHIELA CORLEY - 2**

benefit information transmitted from SNAP State Agencies, EBT Processors provide the digital platform to issue electronic benefits to SNAP households through the EBT system. Because of this role, EBT Processors hold the personal information obtained from SNAP applicants. Multiple States have contract provisions with the EBT Processors providing that applicant data cannot be disclosed absent State consent.

10. At the federal level, FNS is responsible, in part, for administering SNAP for retail food stores and issuing administrative rules. *See* 7 U.S.C. § 2013(a), (c); 7 CFR § 271.3. Additionally, FNS is charged with overseeing the States' administration of SNAP, including reviewing the States' submitted Plans of Operations and their payment accuracy. 7 U.S.C. § 2020(d).

## II. USDA's Data Gathering Initiative

### A. May 6th Letter

11. On May 6, 2025, USDA sent a letter ("May 6 Letter") to all SNAP State Agency Directors, informing them that pursuant to its authority under the Food and Nutrition Act of 2008, USDA will be collecting data from their EBT Processors to ensure program integrity, including verifying the accuracy of eligibility determinations. This letter was signed by Senior Policy Advisor for Integrity Gina Brand and was subsequently published on FNS' public website. *See* https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-DataSharingGuidance072325.pdf. The Letter provides two authorities under the Food and Nutrition Act and implementing regulations that provide for sharing of SNAP applicant data with FNS. First, 7 U.S.C. § 2020(a)(3)(B)(i) requires States to make "available for inspection and audit by the Secretary" all SNAP records "subject to data and security protocols agreed to by the State agency and Secretary." *See also* 7 C.F.R. § 272.1(e). Second, 7 U.S.C. § 2020(e)(8)(A) provides that State "safeguards shall permit – the disclosure of such information to persons directly connected with the administration or enforcement of the provisions of this Act, [and] regulations issued pursuant to this Act… and the subsequent use of the information by [such persons] only for such administration or enforcement." *See also* 7 C.F.R. § 272.1(c)(1).

**DECLARATION OF SHIELA CORLEY - 3**

12. The May 6 Letter explained to State Agencies the purpose of the data gathering initiative so that State Agencies understood that their consent to disclosure, where State Agencies had required such consent in their contracts with EBT Processors, complied with 7 U.S.C. § 2020(a)(3)(B)(i) and 7 U.S.C. § 2020(e)(8)(A) and would not violate statutory requirements to safeguard SNAP applicant data.

13. The May 6 Letter also informed State Agencies that failure to take the steps necessary to provide SNAP data to FNS may trigger noncompliance procedures codified at 7 U.S.C. § 2020(g).

14. Although USDA sent and published the May 6 letter, USDA instructed EBT Processors to refrain from sending any data until USDA completed procedural steps to ensure that data received would be appropriately safeguarded and to satisfy legal requirements.

**B. Nonsubstantive Change to Collection Information Burden**

15. On June 11, 2025, in compliance with the Paperwork Reduction Act, USDA submitted to OMB a Nonsubstantive Change Request to amend USDA's previously approved information collection request for SNAP.

16. The nonsubstantive change reflected the incremental burden increase associated with the data gathering initiative (estimating an additional 20,410 annual burden hours over the previously approved 142,800,634).

17. OMB approved the Nonsubstantive Change Request on July 1, 2025.

**C. Publication of the SORN**

18. On June 23, 2025, USDA published a notice of a new system of records (SORN) in the Federal Register in compliance with the Privacy Act. 90 Fed. Reg. 26521. This notice established the "USDA/FNS-15, "National Supplemental Nutrition Assistance Program (SNAP) Information Database." *Id.* This SORN became effective upon publication in the Federal Register, except for the routine uses, which were open to public comment through July 23, 2025. *Id.* USDA reviewed all comments as they were submitted and is in the final stages of considering whether to amend any routine uses based upon public comment.

**DECLARATION OF SHIELA CORLEY - 4**

19. The SORN provides detailed information on the records the system would contain, how those records would be used, where they would be located, and with whom they would be shared. *Id.* It also provides the list of legal authorities for the system, including 7 U.S.C. § 2020(e)(8). *Id.* at 26521-22.

20. The SORN also explains the purpose of the system—ensuring the integrity of SNAP—and provided that the data it contained would be used "to identify and rectify any ineligible, duplicate, or fraudulent SNAP enrollments or transactions," including "verifying eligibility based on immigration status, identifying and eliminating duplicate enrollments, assisting States in mitigating identity theft, and performing other eligibility and program integrity checks." *Id.* at 26522. Because many Government programs confer automatic or reciprocal eligibility based on SNAP participation, these activities also ensure the integrity of Government programs writ large.

21. USDA received 457 comments on the SORN, of which one was in favor, 433 were in opposition, and 23 were nongermane. Of the 433 that opposed the SORN, most argued the database was a waste of money and/or unnecessary, either because instances of fraud are overstated or because of duplicating State Agency actions. Other opposing comments alleged concerns regarding the sharing of data outside USDA, potential unlawful use of the data, privacy concerns, purported burden on SNAP households and discouragement from participating in SNAP, government overreach, among others.

22. USDA did not find the majority of opposing comments persuasive because the concerns are already addressed by the SORN or were inconsistent with USDA's obligations under federal law. USDA has a responsibility to administer and enforce SNAP in compliance with the Food and Nutrition Act, which includes oversight of the State Agencies and ensuring they follow all program requirements relating to eligibility determinations and benefits calculations. USDA did agree with three comments that suggested removing the reference to "foreign" governments from Routine Use 8, and is working to implement that change.

   D. Privacy Impact Assessment

23. USDA also prepared a Privacy Impact Assessment (PIA) in compliance with the E-

**DECLARATION OF SHIELA CORLEY - 5**

Government Act of 2002. The PIA reflects USDA's full consideration of privacy matters related to the data gathering initiatives and that privacy protections would be incorporated into the system throughout the life cycle of information contained therein.

### E. July 9th Letter

24. On July 9, 2025, Secretary Brooke Rollins sent a letter to all SNAP State Agencies, reminding them of USDA's commitment to effectuating Executive Order 14243, "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos," in all USDA programs, including SNAP. Secretary Rollins informed the States of the publication of the SORN and provided basic information on the system, including that FNS owns, administers, and secures it. She also provided the States with information on when various parts of the notice became or would become effective. *See* https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-database-letter.pdf.

25. This letter informed States that USDA was requiring the collection of SNAP data from EBT Processors or State Agencies "beginning on July 24, 2025, with submissions to USDA no later than the close of business on July 30, 2025."

### F. July 23rd Letter

26. On July 23, 2025, Senior Policy Advisor for Integrity Gina Brand wrote a letter to SNAP State Agency Directors, reminding them of the information being requested and of the July 30, 2025 deadline for completion. *See* https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-DataSharingGuidance072325.pdf.

27. The letter informed State Agencies that "states are welcome to determine the most appropriate and feasible method to share the requested data with FNS," which can include working "through their payment processor, a vendor of their own choosing, or with their State Information Technology team." It also provided detailed instructions on which data elements were and were not being requested, as well as how to transmit the data to FNS.

**DECLARATION OF SHIELA CORLEY - 6**

### G. July 25th Letter

28. On July 25, 2025, Deputy Under Secretary for FNCS Patrick Penn wrote a letter to the SNAP State Directors. This letter reiterated that the SNAP Information Database had been established, that 7 U.S.C. § 2020(e)(8)(A) provides that state data protections must allow for this disclosure, and that failure to take the steps necessary to provide the relevant data to FNS may trigger noncompliance procedures at 7 USC § 2020(g). *See* https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-databaseLetter-072525.pdf.  This letter also reiterated the upcoming July 30, 2025, deadline to submit the requested data.

### H. State Agency Compliance and Evidence of Fraud, Waste, and Abuse

29. As of August 12, 2025, twenty-three State Agencies had fully complied with USDA's request for SNAP data. Those States are Alabama, Alaska, Arkansas, Indiana, Louisiana, Nevada, Ohio, Texas, Vermont, Montana, Missouri, Georgia, South Dakota, Wyoming, Iowa, Nebraska, North Dakota, South Carolina, Utah, Mississippi, New Hampshire, West Virginia, and Virginia.

30. While analysis of State data is ongoing, FNS has conducted a preliminary review of data from a sample of eight states using internal FNS systems.  This review uncovered evidence of fraud, waste, and abuse that had previously gone undetected. USDA's initial analysis, using a conservative analytical method to extrapolate from this sample, indicated that duplicate participation (where an individual is receiving more than the one benefit to which they may be entitled) is costing the Federal Government approximately half a billion dollars in improper SNAP payments.  FNS believes that a less conservative analytical approach, and broader compliance with its data sharing request, will result in finding much larger duplication and fraud is going undetected by states, depriving the Federal Government and its taxpayers and beneficiaries of resources lost due to failures to properly administer and enforce the FNA.

### I. Collection of Additional Integrity-Related Information To Provide To States

31. For states that have complied with USDA's data gathering initiative, FNS will assist

**DECLARATION OF SHIELA CORLEY - 7**

states by conducting additional administrative checks against other available federal databases. For example, USDA will conduct manual checks against the Department of Homeland Security's SAVE database, wich provides immigration status and naturalized/acquired U.S. citizenship information. These additional efforts depend on manual structuring and compiling of data. To illustrate, to date, all interaction with another Department, the Department of Homeland Security, is done manually by humans. There are no direct computer connections between USDA and DHS for processing SNAP data.

32. The technical process is the following: States send USDA raw files containing SNAP recipient data. The raw state data is securely transferred and normalized into a format that is standard across all USDA SNAP data. In a separate, manual process fully contained within FNS's cloud environment by means of a simple script, the normalized SNAP data is formatted into a spreadsheet (.csv) which contains Name, DOB, and SSN. This spreadsheet follows the specific format required by the SAVE Bulk Uploader tool. When manually triggered by a human, this spreadsheet will be generated and saved to the FNS GovCloud file system.

33. The spreadsheet is downloaded by a human and then manually uploaded by a human to the SAVE bulk uploader UI interface, following the steps defined here:

https://www.uscis.gov/sites/default/files/document/brochures/SAVE_Bulk_Uploader_How_To_Guide_0.pdf

34. Once SAVE completes the analysis, the result files are available in the SAVE interface. A human logs in to the interface, downloads the result files and then uploads those result files to the secure FNS cloud. The result files are then manually processed by USDA employees to determine whether there are facts about program integrity to share with the states. FNS does not make any eligibility determinations with this data; eligibility determinations remain the responsibility of the states.

35. There is no automated processing that occurs between USDA and DHS/SAVE. All transfer of information is performed manually, and all analysis is performed manually.

**DECLARATION OF SHIELA CORLEY - 8**

### III. Non-Compliance Procedures

36. As State Agencies were previously advised in the May 6th Letter and the July 25th Letter, State Agencies that do not comply with the data request may be subject to noncompliance procedures under 7 U.S.C. § 2020(g). That section provides, in part, that if the Secretary determines "that in the administration of [SNAP] there is a failure by a State agency without good cause to comply with any of the provisions of this Act, the regulations issued pursuant to this Act, [or] the State plan of operation," the Secretary shall immediately inform the State Agency of the failure and allow "a specified period of time for the correction of such failure." 7 U.S.C. § 2020(g). If the failure is not corrected within that time, the Secretary shall proceed to withhold administrative funds and may refer the matter to the Attorney General to seek injunctive relief to require compliance. Id.

37. Regulations at 7 C.F.R. § 276.4 (suspension/disallowance of administrative funds) and 7 C.F.R. § 276.5 (injunctive relief) implement 7 U.S.C. § 2020(g). Suspension is the temporary withholding of all or a portion of the federal portion of a State Agency's budget to administer SNAP, and disallowance is denial of otherwise reimbursable administrative costs. Both regulatory provisions apply to scenarios where FNS determines that a State Agency has failed to comply with the Food and Nutrition Act of 2008, the regulations issued pursuant to the Act, or the FNS-approved State Plan of Operations. See 7 C.F.R. § 276.4(a)(2); 7 C.F.R. § 276.5(a).

38. The process for suspending or disallowing funds under 7 C.F.R. § 276.4 is a multi-step process that also provides administrative and judicial appeal rights.

39. Immediately upon becoming aware of a deficiency in a State Agency's operation of SNAP, FNS must advise the State agency in writing via an Advance Notification of the deficiency and provide a specific period of time for correction. 7 C.F.R. § 276.4(d)(1). The amount of time provided for correction "will vary according to the nature of the deficiency." Id.

40. If the State Agency fails to correct the deficiency to FNS' satisfaction in the time period provided, FNS shall issue a Formal Warning that includes a specific description of the deficiency and

**DECLARATION OF SHIELA CORLEY - 9**

how the State Agency is out of compliance with requirements; a statement on whether funds will be suspended, disallowed, or both; the amount of funds at issue or an estimate if the actual cost is unavailable; and a statement that FNS is willing to assist in resolving the deficiency. 7 C.F.R. § 276.4(d)(2).

41. State Agencies have 30 days from receipt of the Formal Warning to either submit evidence of compliance or submit a corrective action proposal that includes the date the State Agency will be in compliance. 7 C.F.R. § 276.4(d)(2)(ii). When the deficiency cannot be corrected within 30 days of receipt, but the State Agency submits an acceptable corrective action plan, the formal warning is held in abeyance pending completion of the actions contained in the plan within the specified time period. 7 C.F.R. § 276.4(d)(2)(iii).

42. If the State Agency is still deficient (i.e., the State fails to respond within 30 days of receipt of the Formal Warning, the response to the Formal Warning is unsatisfactory, or the State fails to meet the commitments of its corrective action plan), FNS shall notify the State in writing that administrative funds are being suspended or disallowed.

43. At that time, a State may appeal the decision to the State SNAP Appeals Board in accordance with procedures at 7 C.F.R. § 276.7. The filing of a timely appeal automatically stays enforcement of FNS' claims, except in limited circumstances. See 7 C.F.R. § 276.7(e).

44. State Agencies aggrieved by the final determination of the State SNAP Appeals Board may obtain judicial review by filing a complaint against the United States within 30 days after the date of delivery of the final determination. 7 C.F.R. § 276.7(j).

**IV. Non-Compliance with USDA's Data Gathering Initiative**

45. On August 12, 2025, Deputy Under Secretary Patrick Penn sent Advance Notifications under 7 C.F.R. § 276.4(d)(1) to all non-compliant States, except for the District of Columbia (due to an inadvertent initial oversight, the District was not notified at the same time as all the non-compliant States), that had failed to comply with USDA's request for data by July 30, 2025.

**DECLARATION OF SHIELA CORLEY - 10**

46. The Advance Notifications advised States that "Section 11(e)(8)(A) of the Act requires that [State] permits disclosure of this data 'to persons directly connected with the administration or enforcement of the provisions of [the Act], [and] regulations issued pursuant to' the Act." The letter also informed the States that "FNS has not received this participant data and, as a result, the State [] is out of compliance with SNAP requirements."

47. The Advance Notifications provided the non-compliant States until the close of business on Friday, August 15, 2025, to come into compliance with the requirements of Section 11(e)(8)(A).

48. On August 14, 2025, at the request of Plaintiff States that had received Advance Notifications, USDA extended the deadline for compliance with FNS's data sharing request from Friday, August 15, 2025, to Tuesday, August 19, 2025 for all States that had received Advance Notifications.

49. On August 20, 2025, Deputy Under Secretary Patrick Penn sent Formal Warnings under 7 C.F.R. § 276.4(d)(2) to the 25 States that had failed to comply with USDA's Advance Notification deadline of August 19, 2025.

50. On August 20, 2025, Deputy Under Secretary Patrick Penn also sent the Advance Notification under 7 C.F.R. § 276.4(d)(1) to the District of Columbia, providing it a deadline of Monday, August 25, 2025, to comply.

51. On August 26, 2025, Deputy Under Secretary Patrick Penn sent a Formal Warning under 7 C.F.R. § 276.4(d)(2) to the District of Columbia which had failed to comply with USDA's Advance Notification deadline of August 25, 2025.

**DECLARATION OF SHIELA CORLEY - 11**

Under penalty of perjury, pursuant to 28 U.S.C. § 1746(2), I declare the foregoing to be true and correct to the best of my knowledge.

On this 2nd day of September 2025, in Alexandria, Virginia.

_____
Shiela Corley

**DECLARATION OF SHIELA CORLEY - 12**