IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,**

          Plaintiffs,

          **v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture**; U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**

          Defendants.

Case No. **3:25-cv-06310-MMC**

## DECLARATION OF HOA PHAM

Hoa Pham declares under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct.

**Professional and Agency Background**

1.     I am a resident of the Commonwealth of Pennsylvania and over the age of 18. I am Deputy Secretary for the Pennsylvania Department of Human Services ("DHS").  I am familiar with the information in the statements set forth below either through personal knowledge, in consultation with DHS staff and/or DHS subcontractors, or from documents that have been provided to and reviewed by me.

2.     As Deputy Secretary, I oversee DHS's Office of Income Maintenance ("OIM"), which serves low-income Pennsylvanians through numerous beneficial assistance programs.

3.     Before becoming Deputy Secretary of DHS's OIM, I served as OIM's Director for the Bureau of Employment Programs, where I oversaw education and job training programs designed to help reduce dependencies on DHS' various public assistance programs. Prior to joining the Commonwealth and OIM in 2021, I worked in various social impact-related positions with successive responsibility and leadership throughout the Greater Philadelphia region. These positions have

included direct service delivery and management of various programs serving low-income individuals; managing philanthropic investment portfolios; conducting local, state and federal advocacy; and providing technical assistance to community-based service providers.  I have a Bachelor of Arts from Swarthmore College.

4.      DHS is Pennsylvania's comprehensive social services agency.  Its mission is to assist Pennsylvanians in leading safe, healthy, and productive lives through equitable and outcome-focused services while being an accountable steward of Commonwealth and federal resources.  DHS carries out its mission through collaboration with individuals, families, community and advocacy organizations, and state and federal partners to facilitate the safety and economic security of individuals and families who qualify for DHS benefits and services in the Commonwealth of Pennsylvania.

5.      Among the programs administered by DHS is the Supplemental Nutrition Assistance Program ("SNAP"), which provides eligible households with funds each month on a debit card that can only be used for produce, meat, dairy, and other food at grocery stores, supermarkets, farmers markets, and other food retailers.  By helping families fight food insecurity and meet one of their fundamental needs, they can focus on overcoming barriers to self-sufficiency.

**SNAP in Pennsylvania**

6.      SNAP is a key part of Pennsylvania's efforts to address hunger by supplementing the food budget of eligible low-income households so they can obtain more nutritious diets.  In federal fiscal year 2024, an average of 2,025,387 people received SNAP benefits in Pennsylvania each month, including 713,811 children and 697,001 elderly individuals.  More than $4,374,348,030 in SNAP benefits were issued over the course of state fiscal year 2024.

7.      Pursuant to federal law, DHS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising the day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households.  7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

8.      Pennsylvania expends approximately $435,470,235 on administrative costs to run its SNAP program each year, approximately $219,970,732 of which is reimbursed by the federal government.  Pennsylvania currently covers approximately $215,499,503 in SNAP expenditures, and in-kind match contributions cover the remaining $4,977,803.

**USDA's Data Requests**

9.      As part of the SNAP application process, DHS collects and stores sensitive personally identifiable information ("PII") from applicants and recipients, including but not limited to, home address, dates of birth, Social Security

Numbers, citizenship and immigration status, household income, and resource information.

10.     Pennsylvania law provides for the protection of the confidentiality of PII collected from applicants to programs that DHS administers, which includes SNAP.  *See* 62 P.S. § 404 (providing that DHS "shall have the power to make and enforce regulations (1) to protect the names of applicants for and recipients of public assistance from improper publication, and to restrict the use of information furnished to other agencies or persons to purposes connected with the administration of public benefits . . . [and] (2) [t]o protect the rights and interests of persons about whom personal or confidential information is in its possession.").  In furtherance of this mandate, Pennsylvania developed and issued duly promulgated regulations that protect the confidentiality of these records.  *See* 55 Pa. Code Chapter 105.

11.     On April 25, 2025, DHS was notified by its SNAP EBT contracted payment processor, Conduent, that USDA was seeking to obtain SNAP participant data directly from Conduent.  Conduent requested that the USDA contact DHS to inform it of this request and, to date, Conduent has not provided the requested data to USDA.

12.     On May 6, 2025, U.S. Department of Agriculture/Food and Nutrition Service ("USDA-FNS") Senior Policy Advisor of Integrity Gina Brand sent DHS a

letter stating that the USDA "must retain 'unfettered access to comprehensive data' from federally funded programs like SNAP."  The letter further stated that the USDA "is taking steps to require all States to work through their processors" to obtain "[r]ecords sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security Numbers."  USDA also indicated it would seek "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges."  The letter further stated that the requested data would cover the period beginning January 1, 2020, through present.

13.    On June 23, 2025, the USDA published a System of Records Notice ("SORN") in the Federal Register notifying the public that it sought to create a large-scale "National Supplemental Nutrition Assistance Program (SNAP) Information Database."  90 Fed. Reg. 26,521 (June 23, 2025).

14.    The SORN announced that the USDA intended to collect the following categories of records from "53 State agencies and their designated vendors and/or contractors": "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, Electronic Benefit Transaction (EBT) card number, and case record identifier number or other

identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients. *Id.* The SORN also states that USDA would collect "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts, and benefit available dates." *Id.*

15.     These categories of information will be collected for all "individuals who have received, are currently receiving, or have applied to receive SNAP benefits." *Id.*

16.     To my knowledge, the USDA has never before sought to inspect or audit, let alone retain, this volume of personal and sensitive SNAP data.

17.     In its privacy assessment, USDA states that the uses of the data in the database would be "to detect duplicate enrollments across states, verify immigration status eligibility, and perform other fraud prevention checks against other Federal agencies' datasets, thereby ensuring program integrity, including by verifying the eligibility of benefit recipients."[1]

18.     These uses are duplicative of existing systems. DHS already conducts these checks, using systems such as the Systematic Alien Verification for

---

[1] USDA, Cybersecurity and Priv. Operations Ctr., Priv. Div., USDA Privacy Impact Assessment Fiscal year 2025 (July 23, 2025), https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf.

Entitlement ("SAVE") program.  DHS also relies on other federal datasets to confirm eligibility.  This includes the State Verification and Exchange System (SVAR) and the State Online Query Internet (SOLQI) for social security verification as examples.  Also, in June 2025, Pennsylvania became one of the first states that participates in the National Accuracy Clearinghouse (NAC), a federal clearinghouse designed to ensure that individuals do not improperly receive SNAP benefits from multiple states at the same time.  *See* 7 U.S.C. § 2020(x); 7 C.F.R. § 272.18.

19.    On July 9, the USDA Secretary Brook L. Rollins sent DHS a letter requesting the categories of records listed in the SORN and directing DHS to produce the requested data no later than July 30, 2025.

20.    As prior USDA guidance recognizes, asking for sensitive information from participants threatens to chill participation in SNAP.  *See* FNS Memo to SNAP Regional Directors re: Conforming to the Tri-Agency Guidance Through Online Applications (Feb. 18, 2011), *available at* https://fns-prod.azureedge.us/sites/default/files/Tri-Agency_Guidance_Memo-021811.pdf. For that reason, USDA previously discouraged States from asking for citizenship, immigration status, and SSNs for nonparticipating household members in SNAP applications because these inquiries "may have a chilling effect on the pursuit of the application" and "deterred households from filing applications," and warning

that "[f]ear and misinformation may deter many non-citizens from seeking benefits for which they are eligible – particularly if there are other members in the household who may be ineligible because of their immigration status." *Id.*

21.     Declining SNAP enrollment would have adverse and compounding effects. When participation in SNAP drops, food insecurity rises which then contributes to deteriorating public health. Chronic public health issues in turn require greater demand for other programs administered by DHS, including Medicaid and Temporary Assistance for Needy Families.

22.     Complying with USDA requests imposes substantial technical and administrative burdens. Given the scope and breadth of the request, clarifying and understanding the request and then collecting, validating, and transmitting the data is a time-consuming endeavor.

23.     On July 23, 2025, USDA-FNS Senior Policy Advisor for Integrity Brand sent DHS another letter, reiterating the USDA's data request.  She stated that the USDA was seeking data on "individuals who have received, are currently receiving, or have applied to receive SNAP benefits from January 1, 2020, through present date.  Requested data elements shall include records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to all household group members' names, dates of birth, social security numbers, residential and mailing addresses used or provided, as well as all data

records used to determine eligibility or ineligibility." The letter also noted that USDA is requesting "transactional records from each household . . . sufficient to calculate the total dollar value of SNAP received by recipients over time . . . as well as SNAP usage and retailer data." USDA directed that data be transmitted by July 30, 2025.

24.     USDA's July 23, 2025 letter instructed state agencies to transmit the requested "data to FNS via the platform called Box." Box's Terms and Conditions require that users must agree to indemnify Box.com for any misuse and agree that California law applies, neither of which DHS may agree to under state law.

25.     On July 30, 2025, DHS wrote to USDA to advise that it was continuing to review the request and assess its scope and potential implications, along with evaluating both the legal and technical considerations involved in responding. DHS's letter also informed USDA that, given the volume and sensitivity of the requested data, and the short timeframe outlined in the request, DHS was not in a position to transmit the information by the July 30 deadline. DHS received a limited response from USDA, including only confirmation of receipt of DHS' communication, and no material responses to DHS' concerns.

26.     On August 12, 2025, Deputy Under Secretary Penn sent a letter to Pennsylvania Governor Josh Shapiro informing him that because FNS had not received the participant data "the State of Pennsylvania is out of compliance with

SNAP requirements." The letter further states that, "[a]s provided by 7 C.F.R. 276.4, this letter serves as an advance notice that Pennsylvania could be subject to suspension or disallowance of Federal funding for State SNAP administrative expenses if it does not submit to FNS the requested SNAP participant data."

27.     The August 12, 2025, letter further states: "In order for FNS to determine that Pennsylvania has made adequate progress towards meeting the data collection requirements, by August 13, 2025, FNS must receive a description of the actions Pennsylvania will undertake in order to ensure that it will submit the requested data to FNS no later than close of business Friday, August 15, 2025. If Pennsylvania fails to comply with the requirements outlined in this advance notification, the USDA may proceed with issuing a formal warning to pursue the suspension or disallowance of Federal funding for State SNAP Administrative expenses and may take any other available legal action."

28.     On August 13, 2025, DHS responded indicating that the agency "continues to carefully evaluate the legal, technical, and security considerations involved in responding" and noting that several states had challenged the legality of USDA's request.

29.     On August 20, 2025, USDA wrote Governor Shapiro to say provide a formal warning of its intent to disallow federal funding to DHS unless DHS complied with the data request by September 19 or submitted a corrective action

proposal that USDA approved of by that time. The warning indicated that failure to satisfy USDA would lead to disallowance of $115,304,035.91 in SNAP administrative expenses for each quarter DHS is deemed out of compliance.

30.    Currently, DHS and USDA each contribute 50% toward the administrative costs associated with delivering SNAP benefits in Pennsylvania.  If USDA withholds its share of administrative funds, which was $219,970,732 in FFY2024 from Pennsylvania, service delivery would be severely impacted.  Such a funding loss might require DHS to make significant staff reductions as well as decrease technology investments, which would almost certainly delay SNAP eligibility determinations and benefit delivery, and negatively impact service delivery for all clients.  This funding loss could also jeopardize DHS's ability to mitigate fraud, waste, and abuse of SNAP benefits.

31.    On September 10, 2025, members of DHS met with USDA to ask about USDA's intended uses of any SNAP data received from DHS and security protocols for that data. USDA would not answer DHS's questions about how USDA intended to use the data, how or when the data would be shared with other federal agencies, or what security protocols would apply if the data is shared with other federal agencies.

32.    On September 19, 2025, DHS sent USDA a corrective action proposal. In it, DHS noted that this Court had determined that complying with

USDA's data demand was likely prohibited given two of the uses identified in USDA's June 23, 2025, system of records notification. DHS stated that once USDA committed that it would not use data from DHS in ways that this court determined were likely illegal, DHS would enter a data and security agreement by October 10 and would agree to a schedule within two weeks after that to provide data responsive to USDA's data demand. A copy of DHS's corrective action proposal is attached as Exhibit 1 to this declaration.

33.    Forty-five minutes letter, USDA responded that DHS's corrective action proposal is "unacceptable" because it did not include "the date the State agency will be in compliance." USDA did not in any way acknowledge this court's ruling that states were likely prohibited from complying. A copy of USDA's rejection is attached as Exhibit 2 to this declaration.

34.    On September 20, 2025, USDA sent Governor Shapiro a notice of disallowance stating that, because of DHS's failure to submit what USDA deemed an acceptable corrective action proposal, it is disallowing $115,304,035.91 for DHS's administrative SNAP expenses for each quarter in which DHS is out of compliance.  A copy of USDA's rejection is attached as Exhibit 3 to this declaration.

Executed this 20th day of September, 2025, in Harrisburg, Pennsylvania.

13

_____
Hoa Pham
Deputy Secretary, Office of Income
Maintenance
Pennsylvania Department of Human Services

# Exhibit 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF HUMAN SERVICES**
**OFFICE OF INCOME MAINTENANCE**

**P.O. Box 2675**
**Harrisburg, Pennsylvania 17105-8018**

**Hoa Pham**
**Deputy Secretary**
**Office of Income Maintenance**

**Telephone: 717-783-3063**
**Fax: 717-787-6765**

September 19, 2025

Patrick A. Penn
Deputy Under Secretary
Food, Nutrition, and Consumer Services
United States Department of Agriculture
SNAPDatabase@usda.gov

Subject:    Pennsylvania Department of Human Services Corrective Action Proposal

Dear Deputy Under Secretary Penn,

The Pennsylvania Department of Human Services submits this corrective action proposal in response to the U.S. Department of Agriculture's August 20, 2025, formal warning.

On July 23, USDA demanded that PA DHS provide an extensive data set that includes the sensitive personally identifying information of individuals who have received or applied for SNAP benefits in Pennsylvania since 2020. As stated in both my July 30 and August 13 letters, this demand for information is unprecedented and PA DHS has been closely evaluating the legal, technical, and security considerations involved in responding since receiving the demand.

During a September 10 meeting between PA DHS and USDA to discuss data and security protocols, and to understand USDA's intended use of the data, USDA stated that its use of any SNAP data provided to it by PA DHS would not exceed what is authorized by federal law generally and the Food and Nutrition Act of 2008 specifically. Yesterday, a federal judge ruled that the Food and Nutrition Act likely "***prohibits*** [states] from disclosing to USDA the information demanded in the formal warnings" given the intended uses for the data identified in Routine Use 8 and 11 of the June 23 system of records notification. *See California v. U.S. Department of Agriculture*, No. 3:25-cv-6310.

Upon USDA's confirmation that it will not use any SNAP data provided by PA DHS in the manner described in Routine Uses 8 and 11, PA DHS will provide the data it possesses responsive to the July 23 request consistent with the following schedule:

     1. PA DHS and USDA shall engage in good faith discussions to reach agreement by October 10, 2025, on data and security protocols. As noted during the September 10 meeting, PA DHS cannot use Box.com to transmit data but has identified technically secure and legally permissible alternatives.

     2. Within two weeks of reaching an agreement on data security protocols, PA DHS and USDA shall agree to a schedule for PA DHS to produce data it possesses responsive to the July 23 demand consistent with the agreed upon data and security protocols and consistent with federal law.

PA DHS remains committed to complying with all applicable federal and state requirements and to maintaining an open dialogue with USDA both as this matter progresses and on ways that USDA can support PA DHS's administration of the SNAP program. We share the commitment to following the law that USDA expressed during the September 10 meeting and are happy to remain in touch regarding any future updates or clarifications.


Regards,


Hoa Pham
Deputy Secretary, Office of Income Maintenance
Department of Human Services

cc:    Gina Brand

# Exhibit 2

**U.S. DEPARTMENT OF AGRICULTURE**

Hoa Pham
Deputy Secretary
Office of Income Maintenance
Department of Human Services

Dear Mr. Pham,

As written, this corrective action plan is unacceptable. Please note that 7 CFR 276.4(d)(2)(ii) requires proposed corrective action plans to include "the date the State agency will be in compliance." Pennsylvania's proposed corrective action plan does not contain this. Further, 7 CFR 276.4(d)(2)(iii) requires that corrective action plans contain a plan for correcting the deficiency that provides specific actions and specified timeframes for completing such actions. The deficiency identified by FNS is the failure to transmit requested SNAP enrollment data. As alluded to in Pennsylvania's Item 2, Pennsylvania's proposed corrective action plan does not contain a proposed schedule of actions and timeframes for producing this data—only a timeframe for developing such a schedule.

Thank you,

*Shiela Corley*

Shiela Corley
Chief of Staff
Food, Nutrition, Consumer Services
U.S. Department of Agriculture

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

# Exhibit 3

**U.S. DEPARTMENT OF AGRICULTURE**

September 20, 2025

Governor Josh Shapiro
501 North 3rd Street
Main Capitol Building
Harrisburg, Pennsylvania 17120

## NOTICE OF DISALLOWANCE

Dear Governor Shapiro,

This letter serves as a notice of disallowance under 7 C.F.R. § 276.4(e) to Pennsylvania's Department of Human Services for failure to comply with requirements to provide SNAP enrollment data. This disallowance notice is sent as a follow-up to our August 20, 2025, formal warning letter (FWL) to Pennsylvania's Department of Human Services for non-compliance with the U.S. Department of Agriculture's (USDA) requirement to submit Supplemental Nutrition Assistance Program (SNAP) enrollment data by July 30, 2025.

The FWL informed the Department of Human Services that it was required to demonstrate compliance no later than Friday, September 19, 2025 by either submitting an acceptable corrective action proposal or by submitting evidence it had complied with Federal requirements at 7 U.S.C. 2020(e)(8)(A) by transmitting the requested SNAP enrollment data. As of the date of this letter, Foos and Nutrition Service (FNS) has not received an acceptable corrective action plan proposal or any SNAP enrollment data from the Department of Human Services.

Because Pennsylvania's Department of Human Services has failed to demonstrate compliance with the data sharing requirements at 7 U.S.C. 2020(e)(8)(A) to the satisfaction of FNS, FNS is disallowing $115,304,035.91 for the Department of Human Services' SNAP administrative expenses for each quarter in which it is out of compliance. As previously explained in the FWL, this figure represents 10.76% of the amount Pennsylvania expended in SNAP benefits in Federal Fiscal Year (FFY) 2024, divided by four.

The complete transmission of the required SNAP enrollment data is imperative to ensure FNS and the State agency have full insight into SNAP program integrity. In the absence of data, FNS and the Department of Human Services lack key information necessary to ensure effective stewardship of taxpayer dollars. FNS has already discovered from states that are complying with this statutory data sharing requirement that fraud or duplication in state distribution of federal funds has gone unreported and needs remediation. FNS stands ready to assist the Department of Human Services with technical assistance to ensure its data is transmitted in compliance with Federal requirements.

Pennsylvania's Department of Human Services has ten (10) days in which to file a formal appeal of this disallowance in accordance with 7 CFR 276.7. Appeals must be directed by email to the State SNAP Appeals Board at **SM.FN.StateSNAPAppealsBoard@usda.gov** or by mail to:
Executive Secretary
State SNAP Appeals Board, Food and Nutrition Service
c/o Administrative and Judicial Review Branch
1320 Braddock Pl., 5th Fl.
Alexandria, VA 22314

Please note that filings sent by mail may experience delays reaching the State SNAP Appeals Board.

Sincerely,

Patrick A. Penn
Deputy Under Secretary
Food, Nutrition, and Consumer Services

James C. Miller
Administrator
Food and Nutrition Service