BRETT A. SHUMATE
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BRADLEY P. HUMPHREYS
Senior Trial Counsel
BENJAMIN S. KURLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>                *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>                *Defendants*. | Case No. 3:25-cv-06310-MMC<br><br>**DEFENDANTS' OPPOSITION TO *EX PARTE* MOTION TO EXPAND THE COURT'S SEPTEMBER 18, 2025 TEMPORARY RESTRAINING ORDER** |

**INTRODUCTION**

The Court should deny Pennsylvania Governor Josh Shapiro's motion to expand this Court's September 18, 2025 Temporary Restraining Order ("TRO"), ECF No. 85. Notwithstanding the Court's prior conclusions as to the initial twenty-two Plaintiffs, the Court must consider Governor Shapiro's request to expand the TRO in a manner "consistent with the party-specific principles that permeate [the Supreme Court's] understanding of equity." *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025). And there are at least three reasons why Governor Shapiro should not reap the benefits of the Court's TRO.

First, Governor Shapiro's claims are not ripe. As with all Plaintiffs, the Pennsylvania Department of Human Services ("PA DHS") can avail itself of the administrative process to challenge the disallowance of funding, which would not go into effect while it pursues an administrative appeal. That process is not optional; Congress has mandated that administrative remedies be exhausted before USDA may be sued, *see* 7 U.S.C. § 6912(e); and *de novo* review in federal district court is available at the conclusion of any such appeal, *see* 7 U.S.C. § 2023(a)(15); 7 C.F.R. §264.7(j), undercutting any claim of irreparable harm in the meantime.

Second, by waiting until long after the other Plaintiffs to file a motion based on a data request that PA DHS was aware of for months, Governor Shapiro has undermined assertions that he or Pennsylvania's executive agencies will suffer irreparable injury absent a TRO. Such delay often defeats a request for equitable relief.

Finally, the alleged irreparable harm, if any, is outweighed by the public interest in preventing gamesmanship: Permitting plaintiffs to belatedly join injunctive orders without a good explanation as to why they were unable to join the original motion would invite forum shopping and waste judicial resources. And the imbalance of interests is heightened here given that Governor Shapiro represents only the interests of PA DHS, not the Commonwealth of Pennsylvania as a whole—as demonstrated by Pennsylvania law and the Governor's own materials filed in support of his motion.

**BACKGROUND**

The initial group of twenty-one States and the District of Columbia filed suit on July 28, 2025. Compl., ECF No. 1. They moved for a preliminary injunction on August 18. ECF No. 59. Defendants

opposed that motion on September 9, ECF No. 72, and the Court held a hearing on September 16, ECF No. 79.  On September 18, the Court issued a TRO prohibiting USDA from suspending or disallowing administrative funding from the then twenty-two Plaintiff State Agencies that failed to comply with USDA's request to provide SNAP participant data—the day before USDA's administrative deadline for complying with its data requests.  Order Granting TRO, ECF No. 83.

Days later, on the evening of September 22, 2025, Plaintiffs amended their complaint to add Pennsylvania Governor Josh Shapiro and filed an *ex parte* motion to expand the TRO to prevent USDA from suspending or disallowing SNAP funding for Pennsylvania for failure to comply with USDA's data request.  Am. Compl., ECF Nos. 84, 85.  The Court held a hearing on that motion on September 23 and ordered further briefing.  ECF No. 87.

**STANDARD OF REVIEW**

Plaintiffs' motion to expand the TRO is best understood as a new motion by Governor Shapiro for a TRO to prevent USDA from suspending or disallowing SNAP funding for Pennsylvania's failure to comply with USDA's data request.  A TRO, like a preliminary injunction, "is an extraordinary remedy never awarded as of right."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).  A plaintiff seeking emergency injunctive relief "must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  *Id.* at 20.  When "the Government is the opposing party," the last two factors merge, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and the Court "must balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief."  *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

A TRO is an extraordinary tool that should only be used "to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  It follows from the purposes of such injunctions that a plaintiff must demonstrate "irreparable harm and inadequacy of legal remedies" to obtain one.  *Sampson v. Murray*, 415 U.S. 61, 88 (1974).  To make that showing, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

## ARGUMENT

### I. Exhaustion of Administrative Remedies Is Mandatory, and Therefore Governor Shapiro's Claims Are Not Ripe.

Although the Court rejected Defendants' ripeness arguments in issuing its TRO, *see* TRO at 8–9, Defendants clarify here why exhaustion of administrative remedies is mandatory, meaning that the Court should deny Governor Shapiro's new motion to expand the TRO.

Governor Shapiro's claims—and, indeed, all of Plaintiffs' claims—are not ripe because they have failed to undergo the administrative remedy process outlined in 7 U.S.C. § 2023(a) and 7 C.F.R. § 276.7. *See* Defs.' Opp'n to Pls.' Notice of Mot. and Mot. for Stay or Prelim. Inj. at 9–10, ECF No. 72; *see also* TRO at 8–9. Although, as the Court noted in its TRO, Section 276.4 provides that the States "*may* request an appeal in accordance with the procedures specified in § 276.7[,]" 7 C.F.R. § 276.4(f) (emphasis added), Congress has imposed a strict requirement that administrative remedies be pursued before USDA may be sued. Specifically, 7 U.S.C. § 6912(e) provides that, "notwithstanding any other provision of law," "a person **shall** exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—the Secretary; The Department; or an agency, office, officer, or employee of the Department." 7 U.S.C. § 6912(e) (emphasis added). Congress added that exhaustion requirement in 1994, *see* Pub. L. No. 103-354, seemingly in direct response to the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S. 139 (1993). The mandatory "shall" in Section 6912(e) establishes that exhaustion of administrative remedies is required here. *See Darby*, 509 U.S. at 146–47. That statutory requirement forecloses Governor Shapiro's claim for injunctive relief.[1]

Moreover, even if—despite the clear statutory language in 7 U.S.C. § 6912(e)—the administrative process were optional, neither Governor Shapiro nor PA DHS will be irreparably harmed by proceeding first through an administrative appeal. To start, as Defendants have explained,

---

[1] For the same reason, Defendants respectfully request that the Court revisit its prior finding in the TRO that Plaintiffs' APA claims are ripe for review. *See* TRO at 8–9. Plaintiffs' failure to exhaust mandatory administrative remedies is also an independent reason to deny Plaintiffs' request for a preliminary injunction.

any suspension or disallowance would be automatically stayed upon filing for administrative appeal while the administrative process proceeds. *See* 7 C.F.R. § 276.7(e). Even if Plaintiffs are ultimately dissatisfied with the outcome of the administrative appeal, both the FNA and USDA's regulations explicitly allow for *de novo* review in federal district court upon a final determination of the State SNAP Appeals Board. *See* 7 U.S.C. § 2023(a)(15); 7 C.F.R. § 276.7(j). Plaintiffs could assert all the same legal arguments in such an action as they raise here, and could request a stay in that action of any final administrative determination. *Id.* There is therefore no harm to Plaintiffs in pursuing an appeal of USDA's suspension decision and no basis for preliminary injunctive relief.

## II.  Governor Shapiro Has Inexcusably Delayed, Undermining Any Claim of Irreparable Harm.

The existence of any immediate threatened injury is questionable if there is "unexplained delay" in moving for preliminary relief. *Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (quoting *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n.27 (3d Cir. 1984)). The Ninth Circuit has repeatedly held that delay suggests a "lack of urgency and irreparable harm" that is fatal to such a motion. *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (delay of three months between posting video online and filing a motion for preliminary injunction "undercut [plaintiff's] claim of irreparable harm"); *Int'l Ass'n of Plumbing & Mechanical Officials v. Int'l Conf. of Bldg. Officials*, 79 F.3d 1153 (table), 1996 WL 117447, at *3 (9th Cir. 1996) ("[T]he fact that [plaintiff] waited seven months before seeking injunctive relief undermines its claim of immediate threatened irreparable injury."); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding a delay of 44 days significant in denying a motion for preliminary injunctive relief).

The other twenty-one States and the District of Columbia filed suit on July 28, 2025. Yet, Governor Shapiro waited until September 22, 2025—four days *after* this Court issued its TRO to join the case and seek emergency relief. As Governor Shapiro acknowledges repeatedly, Pennsylvania is "similarly situated" to the other Plaintiff States. Gov. Mot. at 5–6. PA DHS received the same correspondence from USDA as all of the other Plaintiff States regarding USDA's data request, dating back to May 2025. *See* Am. Compl. ¶ 9; *see also id.* ¶ 14 (July 9, 2025 letter); Declaration of Hao Pham ¶ 24 (July 23, 2025 letter), ECF No. 85-2 ("Pham Decl."). Pennsylvania also received a formal

1  warning of disallowance on August 20, 2025. *See* Pham Decl. ¶ 29. And USDA published the
2  relevant SORN in the Federal Register on June 23, 2025. *See* 90 Fed. Reg. 26,521.

3        Governor Shapiro makes little effort to explain the months-long delay, or why he did not join
4  the prior request for injunctive relief, relying instead on a vague reference to "procedural
5  complexities." Gov's Mot. at 3–4. The Governor's motion seems to blame his delay on imagined
6  burdens "on the Court," explaining that "Plaintiff States determined that, having previously notified
7  Defendants of this possible addition, the most efficient course would be to bring *this* Motion after the
8  Court had the opportunity to address the initial motion." *Id.* at 4. Governor Shapiro nowhere explains
9  how it is "more efficient" to require the Court and Defendants to address a separate motion for
10 injunctive relief.

11       Nor can Governor Shapiro explain the delay by reference to PA DHS's purported "Corrective
12 Action Proposal," which PA DHS submitted to USDA by letter dated September 19, 2025—the last
13 possible day to do so under USDA's regulations. *See* ECF No. 85-2; *see also* 7 C.F.R.
14 § 276.4(d)(2)(ii). That submission was facially insufficient. PA DHS's letter did not "submit
15 evidence that [the State agency] is in compliance . . . or include[] the date the State agency will be in
16 compliance[,]" as required by the relevant regulation. *See* 7 C.F.R. § 276.4(d)(2)(ii). Instead, the
17 letter noted this Court's TRO and demanded commitments from USDA before PA DHS would
18 provide "the data it possesses responsive to the July 2023 consistent with" only a timeline for
19 developing a schedule unilaterally set by PA DHS. ECF No. 85-2 at 16–17 (ECF pagination).

20       USDA responded promptly to PA DHS's September 19 letter. ECF No. 85-2 at 22. By letter
21 dated the same day, Shiela Corley, Chief of Staff of USDA's Food, Nutrition, Consumer Services
22 explained that, "[as] written, [PA DHS's] corrective action plan is unacceptable," noting the
23 regulatory requirements for corrective action plans. *Id.* As Ms. Corley explained, PA DHS's letter
24 "does not contain a proposed schedule of actions and timeframes for producing [the] data—only a
25 timeframe for developing such a schedule." *Id.* Given Pennsylvania's failure to adequately respond,
26 on September 20, 2025, USDA issued a notice of disallowance of funds, notifying Governor Shapiro
27 that the PA DHS had ten days from that date in which to file an appeal under 7 C.F.R. § 276.7. *See*
28 ECF No. 85-2 at 21–22.

The purported Corrective Action Proposal—which is deficient on its face—is not an excuse for failing to make a timely request for injunctive relief. Indeed, PA DHS's letter shows months-long awareness of the legal issues involved in this litigation, underscoring that Governor Shapiro could, and should, have brought any request for emergency relief long ago.[2]

### III. The Balance of Equities Shift in USDA's Favor.

The third and fourth preliminary injunction factors, which merge when the federal government is the party against whom an injunction is sought, weigh heavily in USDA's favor. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people," as Defendants currently are with respect to the twenty-two original Plaintiffs in this case, "it suffers a form of irreparable injury." *CASA*, 606 U.S. at 860 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (brackets and quotation marks omitted)). That injury must be outweighed by a strong showing of irreparable harm by Plaintiffs.

Governor Shapiro has not made that showing here. Despite multiple communications from USDA regarding the data request, Governor Shapiro waited until after the Court issued a TRO to seek inclusion in this case. The record also fails to show any reason that Governor Shapiro could not have joined this suit, and the initial preliminary injunction motion, in August (or even earlier) alongside his twenty-two co-Plaintiffs. Indeed, Governor Shapiro admits that Pennsylvania was "similarly situated" to the other Plaintiffs in all respects. Gov's Mot. at 3–4.

As discussed above, Governor Shapiro gestures at unexplained "procedural complexities," Gov's Mot. at 3, but "regardless of what was intended, even the "appear[ance]" of "tactical delay" by the moving party undercuts its assertion of irreparable harm and "provides support" for the argument "that [the non-moving party] would suffer a greater harm by an injunction than [plaintiff] would suffer should the requested injunction be denied." *Hologic, Inc. v. Senorx, Inc.*, No. C-08-00133, 2008 WL 1860035, at *19 (N.D. Cal. Apr. 25, 2008) (denying motion for preliminary injunction brought by party that "appears" to have "waited until it would be most harmful to [defendant] to seek this injunction"); *see Thomson v. Silverman*, No. 25-cv-2925 (MKV), 2025 WL 1078334, at *3 (S.D.N.Y.

---

[2] PA DHS submitted a "Revised Corrective Action Proposal" shortly after 2:00 p.m. Eastern Time on September 26, 2025, the day of this filing. PA DHS's late-breaking submission includes the same demanded commitments from USDA before PA DHS will comply with the data request. It is also untimely under USDA's regulations. *See* 7 C.F.R. § 276.4(d)(2)(ii).

Apr. 10, 2025) (concluding plaintiff had not shown "balance of equities tips in his favor" because it "seems at this stage that [plaintiff] may be engaged in gamesmanship and 'sharp litigation tactics' to prevent the sale of the Property.").

The risk of incentivizing gamesmanship from the sort of delay Governor Shapiro engaged in here is substantial. His claim is, admittedly, similarly situated in terms of the alleged harm. All Plaintiffs are legally sophisticated and frequently collaborate with one another in bringing significant litigation against the federal government to protect their shared interests. Federal law, moreover, typically provides significant flexibility to the states as to where they choose to file suit, *see* 28 U.S.C. § 1391(e)(1)(C), and the Federal Rules of Civil Procedure are similarly generous regarding amending pleadings, *see* Fed. R. Civ. P. 15, and joining parties to a dispute, *see* Fed. R. Civ. P. 20. Governor Shapiro's approach would, in theory, allow a handful of states to file suit in a venue of their choosing, test the Court's willingness to grant preliminary relief, and, if successful, amend their pleadings and extend the benefit of the initial injunction to all similarly situated parties, regardless of when they joined the case or whether they could have filed a case on their own. That wait-and-see strategy could easily be extended to other types of plaintiff groups, as well.

Accordingly, the public interest favors encouraging similarly situated litigants, like all the Plaintiffs here, to bring claims for emergency relief as promptly as possible. Such a policy conserves judicial resources and limits the scope of injury to the federal government arising from an injunction to only those entities who demonstrate, by word and deed, truly irreparable harm that can only be redressed by a preliminary injunction.

The third and fourth injunction factors tip in USDA's favor for other reasons, too. USDA has already uncovered fraud, waste, and abuse from the data it has received from compliant States. In its preliminary findings of the data it has already received from States that are complying with FNS's data request, USDA has identified instances of inter- and intra-State duplicate enrollment that implicate up to an estimated $1.1 billion, annualized, as well as over 300,000 potential instances of deceased individuals actively receiving SNAP benefits that implicate over half a billion dollars *See* Supplemental Declaration of Shiela Corley ¶¶ 5–6 (attached as Exhibit 1). Additionally, USDA has identified 3,994 instances of disqualified households that are still participating in SNAP and 500,000 instances of unexplained placeholder, or "dummy," SSNs. *Id.* ¶ 7. And there is surely more improper spending to be found in the data that PA DHS refuses to provide. Expanding the TRO to cover

Pennsylvania would harm Defendants and the public by impeding USDA's important efforts to root out fraud, waste, and abuse, undermining the overall efficacy of the SNAP program.

Finally, Governor Shapiro's argument that an injunction is in the public interest is suspect, given that he does not represent the Commonwealth of Pennsylvania as a whole. Under Pennsylvania state law, only the Pennsylvania Attorney General—who is not participating in this action—represents the Commonwealth. *See* 71 Pa Stat. § 732-204(c). Governor Shapiro, by contrast, represents only the interests of the executive agencies under his control. *See id.* § 732-303; *see also* ECF No. 88-2 at 4 (email from Senior Counsel to the Pennsylvania Attorney General stating that "OAG shall at all times retain its statutory right to represent the Commonwealth"). Indeed, the Attorney General's decision to "decline[]" the Governor's request to pursue this case suggests that Governor Shapiro's actions are, if anything, *contrary* to Pennsylvania's interests. ECF No. 88-2 at 4.[3] That fact further distinguishes Governor Shapiro's request for emergency injunctive relief from the other Plaintiffs. Taken together with his delay, the fact that Governor Shapiro represents at most the interests of a state agency, and not its citizens, means that the balance of harms and public interests favors USDA, which is responsible for the administration and oversight of the national, federally funded SNAP program.

## CONCLUSION

For the foregoing reasons, the Court should deny Pennsylvania Governor Shapiro's motion to expand the scope of the TRO to include the Commonwealth of Pennsylvania.

Dated: September 26, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

---

[3] If the Court is inclined to grant the Governor's request, Defendants respectfully suggest that the Court consider inviting the views of the Commonwealth of Pennsylvania through its Office of Attorney General before doing so.

          */s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
BENJAMIN S. KURLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0878
bradley.humphreys@usdoj.gov

*Counsel for Defendants*