1  ROB BONTA
   Attorney General of California
2  PAUL STEIN
   Supervising Deputy Attorney General
3  ANDREW Z. EDELSTEIN
   ANNA RICH
4  EDWARD P. WOLFE
   SEBASTIAN BRADY
5  ROBIN GOLDFADEN
   WILLIAM BELLAMY
6  MARIA F. BUXTON
   Deputy Attorneys General
7  State Bar No. 318563
    455 Golden Gate Avenue, Suite 11000
8   San Francisco, CA 94102-7004
    Telephone:  (415) 510-3873
9   Fax:  (415) 703-5480
    E-mail:  Maria.Buxton @doj.ca.gov
10 *Attorneys for Plaintiff State of California*

11 *Additional counsel listed on signature page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; OFFICE OF THE GOVERNOR** ex rel. Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; **STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,** | Case No. **3:25-cv-06310-MMC**<br><br>**PLAINTIFF STATES' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR STAY OR PRELIMINARY INJUNCTION**<br><br>Date: October 9, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**

Defendants.

# INTRODUCTION

At the hearing on Plaintiff States' motion for a preliminary injunction, "USDA argued for the first time that it is entitled to seek information from State agencies solely under [7 U.S.C.] § 2020(e)(8)(A), and, consequently, that the lack of agreed protocols required under [7 U.S.C.] § 2020(a)(3) does not render the demand for SNAP data unlawful under the APA." ECF No. 83 at 11. USDA's interpretation of § 2020(e)(8)(A) is wrong. It does not grant USDA separate, independent authority to demand SNAP records.

Adopting USDA's tortured reading of the statute's plain language would obliterate Congress's express protections over SNAP participant data and lead to absurd results.

*First*, the Court need look no further than the plain text of the statute to see the flaw in USDA's theory: § 2020(e)(8), from its first line, is concerned not with USDA's oversight of State programs, but with States implementing privacy "safeguards which prohibit the use or disclosure of information obtained from applicant households." The provision is not a grant of authority to USDA to demand State data; rather, it restricts States from disclosing "information obtained from applicant households," then lays out a series of exceptions to that prohibition. The exception in question, subsection (e)(8)(A), only specifies that State plans of operation "shall *permit*" the State to disclose household data in certain circumstances. (Emphasis added). In other words, it clarifies that States are not *prohibited* from sharing data in certain circumstances, and requires only that States implement privacy protections that allow such disclosure. It does not require them to disclose anything. Just because States *can* share data does not mean they *must*.

*Second*, USDA's reading of the statute leads to an absurd result whereby each State's most sensitive applicant household data would be broadly available across the federal and state governments, without any required data and security protocols. Under USDA's reading, subsection (e)(8)(A) would authorize hundreds, if not thousands, of state and federal employees, as well as third-party contractors, from potentially hundreds of agencies to demand unfettered access to the most sensitive SNAP participant data from any State. That is the exact opposite of Congress's intent in enacting this provision, which was to *reduce* the number of people with access to sensitive SNAP records, as explained below. Meanwhile, it is undisputed that if USDA

1

1  wishes to obtain the very same applicant household data under § 2020(a)(3), it can do so only
2  pursuant to a mutually agreed upon "data and security protocol" with the States. It defies logic to
3  suggest that Congress would require a data and security protocol under one provision of a statute
4  but not another provision of the same statute, while making the most sensitive type of data
5  equally available under both. By contrast, Plaintiffs' common-sense reading of the statute is
6  consistent with how USDA has previously characterized it.

7  *Finally*, USDA's argument that its recent demand for SNAP data is separately authorized
8  under subsection (e)(8)(A) is undermined by the fact that it has demanded much more than
9  "information obtained from applicant households." Therefore, even under USDA's own reading
10 of the statute, its demand exceeds its lawful authority absent an agreed data and security protocol.

11 In short, USDA's argument is nothing more than a last-ditch attempt to avoid complying
12 with the SNAP Act and the agency's own implementing regulations and should be rejected.

**ARGUMENT**

I. **THE PLAIN TEXT OF § 2020(E)(8)(A) DOES NOT GRANT USDA INDEPENDENT AUTHORITY TO DEMAND SNAP DATA FROM STATES.**

The SNAP Act requires that States develop plans for administering SNAP benefits, called "State plans of operation," which must be approved by USDA. *See* 7 U.S.C. § 2020(e). Recognizing the sensitivity of personal information that States collect from applicant households, the Act requires that these State plans include "safeguards," meaning binding limitations, which "prohibit the use or disclosure of information obtained from applicant households." 7 U.S.C. § 2020(e)(8). This is a broad prohibition; standing alone, it would even prevent States from using applicant household information for the administration of the SNAP program. Accordingly, the statute provides several limited exceptions to this prohibition. Subsection (e)(8)(A), the provision on which USDA now relies, is one of those exceptions. The exception dictates that the plans' safeguards nonetheless "shall permit" the disclosure of SNAP data "to persons directly connected with the administration or enforcement of the provisions of this chapter [of the SNAP Act], regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs." *Id.* § 2020(e)(8)(A); *id.* § 2020 (e)(8)(A)(i).

2

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

1   USDA argues that, by including this exception to the prohibition on disclosure of applicant
2   household data, subsection (e)(8)(A) actually *requires* States to provide such data to any of the
3   "persons" described in the provision, including USDA.  This turns the statute on its head.  The
4   plain text of § 2020(e)(8)(A) grants USDA no authority to demand records.  Instead, it only
5   makes clear that the prohibition on disclosure required by subsection (e)(8) nevertheless *allows*
6   States to disclose this information to certain persons.

7   Congress's use of the word "permit" here is telling.  Subsection (e)(8)(A) provides that a
8   State plan's safeguards "shall permit" the disclosure of household information in certain
9   circumstances.  It does not say that the State plan must *require*, or mandate, the disclosure of
10  household SNAP data to certain persons.  It merely *allows* such disclosure.  *See Permit*, BLACK'S
11  LAW DICTIONARY (12th ed. 2024) ("[T]o allow (something) to happen[.]").  And, to be clear, the
12  provision does not permit *USDA* to do anything; it dictates that State plans must permit *States* to
13  disclose records.  In other words, it clarifies that States may disclose certain SNAP records
14  without violating (e)(8)'s restriction on such disclosure, should such disclosure be warranted or
15  required by some other provision of law.  That is how USDA itself explained it to the States when
16  it first made the demand on May 6, 2025, assuring States (and their vendors) that they would not
17  be *violating* the SNAP Act by consenting to disclosure.  *E.g.*, Corley Decl., ECF No. 72-1, ¶ 12.
18  Similarly, USDA's own regulations confirm this reading of the statute, not as a grant of authority
19  to demand data, but as a narrow exception to a prohibition on sharing.  7 C.F.R. § 272.1(c)(1)
20  ("Use or disclosure of information obtained from SNAP applicant or recipient households *shall*
21  *be restricted to . . . .*" (emphasis added)).  In prior litigation, as well, USDA has stated it "does not
22  collect [or] maintain . . . information obtained from the household and *does not have the authority*
23  *to require States to share such information* with USDA outside of what is specifically required by
24  the Act and corresponding regulations, such as for payment accuracy quality control reviews.
25  *E.g.* 7 U.S.C. § 2025(c); 7 C.F.R. § 275 Subpart C."  Buxton Decl., ECF No. 59-2, Ex. A ¶ 7
26  (ECF No. 101-3, Case No. 3:12-cv-00790-HTW-LGI) (emphasis added).[1]

---

27  [1] In yet another case, USDA similarly characterized the subsection as Plaintiffs do here—
28  as a "limited exception[]" to the SNAP Act's "prohibit[ion]" on disclosure of household
    (continued…)

3

If Congress had intended to mandate disclosure, it would have used different language in subsection (e)(8)(A), as evidenced by other provisions in the SNAP Act. Elsewhere in subsection (e)(8), Congress provided that States are *required* to provide certain information upon request. For example, subsection (e)(8)(E) states, "[n]otwithstanding any other provision of law," certain information such as social security numbers "*shall be made available*, on request, to any Federal, State or local law enforcement officer," if certain conditions are satisfied. (Emphasis added.) Similarly, subsection (x)(2)(B) requires certain disclosures as part of the National Accuracy Clearinghouse (NAC) program: the "Secretary *shall require* that State agencies *make available* to the National Accuracy Clearinghouse" information as is necessary for the stated purpose of the NAC. 7 U.S.C. § 2020(x)(2)(B) (emphasis added). Congress chose not to use this mandatory language in subsection (e)(8)(A)—providing instead that State plans' safeguards "shall permit" disclosure of household data—and that choice cannot be ignored. *See United States v. Lemus*, 93 F.4th 1255, 1261 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 581 (2024) ("[I]t's 'a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.'").

Thus, even if States are permitted to disclose information obtained from SNAP applicant households under certain conditions, they are not required to do so by subsection (e)(8)(A)—USDA must find the authority to require that disclosure somewhere else in the law. As explained in Plaintiffs' preliminary injunction motion, USDA's limited authority to access certain State SNAP records is found in § 2020(a), as well as in the regulations that USDA has promulgated to implement its inspection and auditing authority.[2] *See* 7 U.S.C. § 2020(a); *see also e.g.*, 7 C.F.R. § 275.3.[3] Section 2020(a)(3) specifically governs both "State responsibility" with respect to SNAP "Records" and the USDA's authority to access those records, and requires that the State

---

information, not as a grant of authority expanding USDA's (and others') access to State data. Second Buxton Decl., Ex. A (ECF No. 553, Case No. CV-99-2844 (E.D.N.Y.)).

[2] However, for the reasons set forth in ECF No. 59, § 2020(a)(3) is not sufficient to authorize USDA's unprecedented demand for SNAP data that is the subject of this lawsuit.

[3] 7 C.F.R. § 275.3 dictates how USDA is to conduct the oversight and quality control functions it now cites as the basis for its sweeping data demand. The regulation is additional evidence of an existing policy that USDA is discarding without a rational basis.

4

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

and USDA agree on data and security protocols before USDA accesses this data.  *See* 7 U.S.C. § 2020(a) (titled "State Responsibility"); *id.* § 2020(a)(3) (titled "Records").

## II. USDA'S NEW ARGUMENT WOULD LEAD TO ABSURD RESULTS AND CREATE UNNECESSARY CONFLICTS WITH OTHER PROVISIONS.

### A. USDA's reading would potentially authorize scores of individuals from across myriad agencies to demand States' most sensitive SNAP data.

Beyond conflicting with the plain text of the statute, USDA's reading of subsection (e)(8)(A) as an independent grant of authority makes even less sense when one considers what it would mean in practice.  Unlike § 2020(a)(3), which deals with *USDA*'s access to records, subsection (e)(8)(A)(i) requires that the privacy safeguards set forth in State plans permit disclosure of SNAP data to any "*persons* directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs[.]" 7 U.S.C. § 2020(e)(8)(A)(i) (emphasis added).  Under USDA's reading, this provision grants all those "persons" the authority to demand and receive *all* data that any State receives from SNAP applicant households, and the State cannot limit or set its own terms for disclosure.  Those "persons" would include not only employees in any of the 53 state agencies that administer SNAP, but also employees of any federal agency that administers a *different* federal assistance program or federally assisted State program.  When pressed by the Court at the September 16 hearing, USDA conceded that "persons" here includes state agency administrators, federal agency administrators, and *any "other persons who are running programs*" who could "*find something that [they] need to act on*." Hr'g Tr. at 47:17-48:22 (emphasis added).  Taken to its logical end, USDA's reading would conceivably mean that Dr. Mehmet Oz, the Administrator of the Centers for Medicare & Medicaid Services, would have the authority to demand all household SNAP data from any State; so, too, a U.S. Fish and Wildlife Service employee administering the federally funded Sport Fish Restoration Program; or a Vermont State Housing Authority employee, administering the federally funded Section 8 Housing Choice Voucher Program.[4]  By the same token, an employee

---

[4] *See also Assistance Listings,* SAM.GOV*,* https://sam.gov/content/assistance-listings (last visited Sept. 25, 2025) (list of federal assistance programs maintained by the General Services Administration pursuant to 2 C.F.R. § 200.203(a)(1))

5

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

of *Oregon*'s SNAP-administering agency could conceivably demand all of *Texas*'s SNAP applicant information. Or, stranger still, private, third-party vendors that are directly involved in the administration of federal and state programs would be authorized to demand sensitive SNAP data from state agencies. According to the USDA's logic, States would be required to respond to these demands, without the need for any data and security protocols.

This cannot be what Congress intended by enacting subsection (e)(8)(A). USDA's proffered interpretation is clearly in tension with Congress's desire to strictly limit the disclosure of sensitive household SNAP data, as evidenced by subsection (e)(8). *See* 7 U.S.C. § 2020(e)(8) (requiring "safeguards which prohibit the use or disclosure of information obtained from applicant households").

### B. USDA's reading creates unnecessary conflicts with other provisions or renders them superfluous.

Such an expansive (and illogical) reading of the provision would also put it in direct conflict with subsection (a)(3)(B). That provision requires that "such records as may be necessary to determine whether the program is being conducted in compliance with this chapter" "shall . . . be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary." This logically may include "information obtained from applicant households," 7 U.S.C. § 2020(e)(8), as USDA's counsel conceded at the hearing. *See* Hr'g Tr. at 54:11-25, 55:15-25.[5] Thus, under USDA's reading, USDA must obtain an agreement from States on data and security protocols when it seeks applicant household data under subsection (a)(3), but not when it seeks the very same data under subsection (e)(8). That makes no sense. However, this conflict disappears when one reads subsection (e)(8)(A) correctly, as an exception to a prohibition on States' disclosure of applicant household data to third parties.

Similarly, USDA's reading creates a conflict with regulations like 7 C.F.R. § 272.8, which requires States to exchange certain SNAP data with other agencies for the purpose of verifying

---

[5] Indeed, subsection (e)(8)(A)(ii) recognizes that one of the only appropriate uses for "information obtained from applicant households" is for "enforcement of the provisions of this chapter[, the SNAP Act]," suggesting that it is the type of information that may be "necessary to determine" compliance with the Act.

6

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

income and eligibility of SNAP applicants. That regulation expressly requires that State agencies "execute data exchange agreements" with those agencies to protect that data. *Id.* § 272.8(a)(4). If this disclosure was already mandated by 7 U.S.C. § 2020(e)(8)(A), without any "data exchange agreements" protecting the data, the two provisions would be in conflict.

USDA's reading would also render other provisions of the same statute superfluous. *City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). For example, § 2020(x)(2)(B) provides that USDA "shall require that State agencies make available" "information as is necessary" for the purpose of establishing the NAC database aimed at preventing individuals from obtaining SNAP benefits in more than one State. If, as USDA argues, subsection (e)(8)(A) already authorizes USDA to demand all SNAP household data from States, there would be no need for subsection (x)(2)(B).

### III. THE LEGISLATIVE HISTORY OF § 2020(E)(8) CONFIRMS CONGRESS INTENDED TO RESTRICT DISCLOSURE OF HOUSEHOLD DATA, NOT TO EXPAND ITS AVAILABILITY.

The legislative history confirms the plain language reading that subsection (e)(8) merely clarifies the scope of the statute's privacy obligations that limit a State's ability to disclose SNAP data, and does not grant USDA separate, independent authority to demand SNAP records.

The "shall permit" language on which USDA relies was added to subsection (e)(8) in 2008. Prior to this amendment, subsection (e)(8) similarly required States to include in their State plans privacy safeguards "which limit the use or disclosure of information obtained from applicant households to persons directly connected with the administration or enforcement of" SNAP, other federal programs, and federally assisted state programs (with some exceptions not relevant here).[6] By its plain terms, this prior statutory language did not provide USDA an independent grant of authority to require States to disclose SNAP data. USDA has not asserted in this litigation that the pre-2008 version of subsection (e)(8) required States to disclose information to USDA, nor could it reasonably argue that it did.

---

[6] The prior version of 7 U.S.C. § 2020, which was in effect from 2005 to 2008, is available at https://tinyurl.com/ycy5u59x. In addition, the relevant statutory language is attached as Exhibit B to the Second Buxton Declaration filed herewith.

7

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

The 2008 Farm Bill added the current language in a section of the bill titled "Privacy Protections."[7] The amendment was intended to strengthen protections on SNAP applicant household data by, *inter alia*, placing new restrictions on the "subsequent use" of such data by those who receive it through an authorized disclosure. To that end, it added an additional provision under subsection (e)(8), requiring that State plans dictate that any household data disclosed to "persons directly connected with the administration" of SNAP and other programs may only be subsequently used "for such administration or enforcement." *See* 7 U.S.C. § 2020(e)(8)(A)(ii) ("The [privacy] safeguards shall permit . . . the subsequent use of the information by persons described in clause (i) *only for such administration or enforcement*." (emphasis added)). To add that new limitation, the amendment reworded subsection (e)(8) slightly so that it now reads: "[the State plan must include] safeguards which prohibit the use or disclosure of information obtained from applicant households, except that— (i) the safeguards shall permit" the same disclosures to "persons directly connected with the administration or enforcement of" SNAP and other benefit programs, subject to this new "subsequent use" restriction in subpart (ii). 7 U.S.C. § 2020(e)(8)(A).

The legislative record further confirms that Congress amended subsection (e)(8) to strengthen the privacy protections afforded to SNAP participant data, not to provide USDA and others sweeping new access to sensitive SNAP data. Congressman Joe Baca, who in 2008 was Chairman of the Agricultural Subcommittee and a drafter of this legislation,[8] explained in a floor speech introducing the amended subsection (e)(8) that: "in light of all of the modernization changes and the potential access to sensitive information that new players may have, we strengthened the [SNAP Act's] privacy protections to ensure that anyone receiving confidential

---

[7] *See* H.R.2419 - 110th Congress (2007-2008): Food, Conservation, and Energy Act of 2008, H.R.2419, 110th Cong. (2008), https://www.congress.gov/bill/110th-congress/house-bill/2419/text/pl (§ 4120 entitled "Privacy Protections"). The portion of the bill setting forth the 2008 amendments to subsection (e)(8) is attached as Exhibit C to the Second Buxton Declaration filed herewith.

[8] *See* PRESS RELEASE, "BACA SPONSORS LEGISLATION TO GIVE NUTRITION BENEFITS TO WORKERS ON STRIKE," (Feb. 8, 2011), available at https://justfacts.votesmart.org/public-statement/587570/baca-sponsors-legislation-to-give-nutrition-benefits-to-workers-on-strike ("From 2007–2010, Rep. Baca served as Chairman of the Agriculture Subcommittee with jurisdiction over nutrition issues. In this capacity, he played a vital role in authoring the 2008 farm bill, H.R. 2419.")

8

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

information for appropriate program purposes cannot then share that information with a third party."[9]  Congressman Baca explained that these strengthened privacy protections were intended to respond to Congress' "fears that too many people may have access to private food stamp information as a result of new technology[.]"[10]

By USDA's logic, subsection (e)(8), as amended, vastly *increases* the number of people that would have access to "private food stamp information," and without the protection of data and security protocols.  *See*, supra, § II.  But, as Congressman Baca's comments make clear, Congress's intent was precisely the opposite.  Congress did not amend subsection (e)(8) to create any new statutory authority for USDA or others to require states to disclose SNAP data, but rather to ensure that persons who are authorized to receive confidential SNAP data do not use or disclose it for unauthorized purposes.  *See* 7 U.S.C. § 2020(e)(8)(A) ("The [privacy] safeguards shall permit . . . the subsequent use of the information by persons described in clause (i) *only for such administration or enforcement*." (emphasis added)).

Thus, USDA's argument that subsection (e)(8)(A) authorizes the agency to demand SNAP applicant data is not only contradicted by both the text, structure, and logic of the statute, but also by its legislative history.

### IV. USDA'S ARGUMENT IS NOT CREDIBLE, BECAUSE USDA'S DEMAND EXCEEDS THE SCOPE OF § 2020(E)(8).

The credibility of USDA's position that it has always considered its demand for SNAP data authorized by subsection (e)(8)(A) is further undermined by the fact that its demand far exceeds the type of data addressed by subsection (e)(8)—"information obtained from applicant households."  In its July 23 letter, the agency demanded "transaction records," as well as "SNAP usage and retailer data," which could include data on how SNAP benefits were used at retailers—more than just information provided to States by applicants.  USDA also seeks "[r]ecords sufficient to calculate the total dollar value of SNAP benefits received by participants over time,"

---

[9] 154 CONG. REC. H4469-01, 2008 WL 2150991, Proceedings and Debates of the 110th Congress, Second Session (Thursday, May 22, 2008), at *H4653, available at https://tinyurl.com/4y62ehxh.
[10] *Id.*

9

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

1  which would come from the State agency that calculates and administers those benefits, not from
2  the applicant household.  Thus, even if subsection (e)(8)(A) authorizes USDA to demand
3  "information obtained from applicant households," which it does not, USDA's demand would
4  *still* be unlawful, because it seeks data far beyond the scope of that provision.  If USDA credibly
5  believed that subsection (e)(8)(A) authorized its demand, it might have, at the very least,
6  demanded only "information obtained from applicant households."  Instead, the agency
7  demanded everything under the sun, and is only now scrambling to come up with authority for its
8  unauthorized demand *post hoc*.  This Court should not entertain its attempt.

## CONCLUSION

10      For these reasons, Plaintiff States respectfully request that the Court reject USDA's
11  unfounded claim that 7 U.S.C. § 2020(e)(8)(A) separately authorizes its unprecedented demand
12  for Plaintiff States' SNAP data, and find that Plaintiffs have shown a likelihood of success on the
13  merits of their claim that USDA's demand for SNAP data, without executing an agreed-upon data
14  and security protocol, is unlawful.

16  Dated: September 26, 2025                      Respectfully submitted,

17                                                                 ROB BONTA
                                                               Attorney General of California
18                                                                 PAUL STEIN
                                                               Supervising Deputy Attorney General
19                                                                 ANDREW Z. EDELSTEIN
                                                               ANNA RICH
20                                                                 EDWARD P. WOLFE
                                                               SEBASTIAN BRADY
21                                                                 ROBIN GOLDFADEN
                                                               WILLIAM BELLAMY
22

23                                                                 */s/ Maria F. Buxton*
                                                               MARIA F. BUXTON
24                                                                 DEPUTY ATTORNEYS GENERAL
                                                               *Attorneys for Plaintiff State of California*
25

10

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

| | |
|---|---|
| LETITIA JAMES<br>Attorney General of New York<br><br>*/s/ Mark Ladov*<br>MARK LADOV<br>Special Counsel<br>JULIE DONA<br>Special Counsel<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8240<br>mark.ladov@ag.ny.gov<br>*Attorneys for Plaintiff State of New York* | KRISTIN MAYES<br>Attorney General of Arizona<br><br>*/s/ Hayleigh S. Crawford*<br>HAYLEIGH S. CRAWFORD (AZ NO. 032326)<br>LUCI D. DAVIS (AZ NO. 035347)<br>2005 N. Central Ave. Phoenix, AZ 85004<br>(602) 542-3333<br>Hayleigh.Crawford@azag.gov<br>Luci.Davis@azag.gov<br>ACL@azag.gov<br>*Attorneys for Plaintiff State of Arizona* |
| PHILIP J. WEISER<br>Attorney General of Colorado<br><br>*/s/ David Moskowitz*<br>DAVID MOSKOWITZ<br>Deputy Solicitor General<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>david.moskowitz@coag.gov<br>*Attorneys for Plaintiff State of Colorado* | WILLIAM TONG<br>Attorney General of Connecticut<br><br>*/s/ Janelle R. Medeiros*<br>JANELLE R. MEDEIROS<br>Special Counsel for Civil Rights<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5020<br>Janelle.Medeiros@ct.gov<br>*Attorneys for Plaintiff State of Connecticut* |
| KATHLEEN JENNINGS<br>Attorney General of Delaware<br><br>*/s/ Vanessa L. Kassab*<br>IAN R. LISTON<br>Director of Impact Litigation<br>VANESSA L. KASSAB*<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br>*Attorneys for Plaintiff State of Delaware* | BRIAN L. SCHWALB<br>Attorney General for the District of Columbia<br><br>*/s/ Nicole S. Hill*<br>NICOLE S. HILL<br>Assistant Attorney General<br>Office of the Attorney General for the District of Columbia<br>400 Sixth Street, NW<br>Washington, D.C. 20001<br>(202) 727-4171<br>nicole.hill@dc.gov<br>*Attorneys for Plaintiff District of Columbia* |

11

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

ANNE E. LOPEZ
Attorney General of Hawaiʻi

/s/ Kalikoʻonālani D. Fernandes
DAVID D. DAY
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

OFFICE OF THE GOVERNOR *ex rel*. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky

/s/ S. Travis Mayo
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors' Office*

ANTHONY G. BROWN
Attorney General of Maryland

/s/ James C. Luh
JAMES C. LUH
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

KWAME RAOUL
Attorney General of Illinois

/s/ Sherief Gaber
HARPREET K. KHERA
Bureau Chief, Special Litigation
SHERIEF GABER
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
Harpreet.Khera@ilag.gov
*Attorneys for Plaintiff State of Illinois*

AARON M. FREY
Attorney General of Maine

/s/ Brendan Kreckel
BRENDAN KRECKEL
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

/s/ Katherine Dirks
KATHERINE DIRKS
Chief State Trial Counsel
CASSANDRA THOMSON
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

12

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

| | |
|---|---|
| DANA NESSEL<br>Attorney General of Michigan<br><br>*/s/ Neil Giovanatti*<br>NEIL GIOVANATTI<br>BRYAN BEACH<br>Assistant Attorneys General<br>Michigan Department of Attorney General<br>525 W. Ottawa<br>Lansing, MI 48909<br>(517) 335-7603<br>giovanattin@michigan.gov<br>beachb@michigan.gov<br>*Attorneys for Plaintiff State of Michigan* | KEITH ELLISON<br>Attorney General of Minnesota<br><br>*/s/ Joseph R. Richie*<br>JOSEPH R. RICHIE<br>Special Counsel<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota, 55101<br>(651) 300-0921<br>joseph.richie@ag.state.mn.us<br>*Attorneys for Plaintiff State of Minnesota* |
| AARON D. FORD<br>Attorney General of Nevada<br><br>*/s/ Heidi Parry Stern*<br>HEIDI PARRY STERN (Bar. No. 8873)<br>Solicitor General<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>HStern@ag.nv.gov<br>*Attorneys for Plaintiff State of Nevada* | MATTHEW J. PLATKIN<br>Attorney General of New Jersey<br><br>*/s/ Kashif T. Chand*<br>KASHIF T. CHAND (NJ BAR NO. 016752008)<br>Assistant Attorney General<br>New Jersey Office of the Attorney General,<br>Division of Law<br>124 Halsey Street, 5th Floor<br>Newark, NJ 07101<br>Tel: (973) 648-2052<br>kashif.chand@law.njoag.gov<br>*Attorneys for Plaintiff State of New Jersey* |
| RAÚL TORREZ<br>Attorney General of the State of New Mexico<br><br>*/s/ Steven Perfrement*<br>STEVEN PERFREMENT*<br>Senior Litigation Counsel<br>New Mexico Department of Justice<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>SPerfrement@nmdoj.gov<br>505-601-7727<br>*Attorneys for the State of New Mexico* | DAN RAYFIELD<br>Attorney General of Oregon<br><br>*/s/ Scott P. Kennedy*<br>SCOTT P. KENNEDY<br>Senior Assistant Attorney General<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>Tel (971) 453-9050<br>Fax (971) 673-5000<br>Scott.Kennedy@doj.oregon.gov<br>*Attorneys for Plaintiff State of Oregon* |

13

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

| | |
|---|---|
| JOSH SHAPIRO, in his official capacity as Governor of the Commonwealth of Pennsylvania | PETER F. NERONHA<br>Attorney General of Rhode Island |
| JENNIFER SELBER<br>General Counsel | /s/ *Madeline R. Becker*<br>MADELINE R. BECKER (RI BAR NO. 10034)<br>Special Assistant Attorney General<br>150 South Main Street |
| /s/ *Jacob B. Boyer*<br>Jacob B. Boyer*<br>Deputy General Counsel<br>Pennsylvania Office of the Governor<br>30 N. 3rd St., Suite 200<br>Harrisburg, PA 17101<br>(717) 460-6786<br>jacobboyer@pa.gov<br>*Counsel for Governor Josh Shapiro* | Providence, RI 02903<br>(401) 274-4400, Ext. 2151<br>mbecker@riag.ri.gov<br>*Attorneys for Plaintiff State of Rhode Island* |
| NICHOLAS W. BROWN<br>Attorney General of Washington | JOSHUA L. KAUL<br>Attorney General of Wisconsin |
| /s/ *Jennifer K. Chung*<br>JENNIFER K. CHUNG, WSBA #51583<br>WILLIAM MCGINTY, WSBA #41868<br>Assistant Attorneys General<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>206-464-7744<br>jennifer.chung@atg.wa.gov<br>william.mcginty@atg.wa.gov<br>*Attorneys for Plaintiff State of Washington* | /s/ *Karla Z. Keckhaver*<br>KARLA Z. KECKHAVER<br>Assistant Attorney General<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>608-264-6365<br>karla.keckhaver@wisdoj.gov<br>*Attorneys for Plaintiff State of Wisconsin*<br><br>* *pro hac vice forthcoming* |

SA2025302238
44760991.docx

14

Plaintiff States' Supplemental Reply in Support of Motion for Stay or Preliminary Injunction
(Case No. 3:25-cv-06310-MMC)

# CERTIFICATE OF SERVICE

Case Name: ***California, et al. v. U.S. Department of Agriculture***   Case No. **3:25-cv-06310-MMC**

I hereby certify that on <u>September 26, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **PLAINTIFF STATES' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR STAY OR PRELIMINARY INJUNCTION**
2. **SECOND DECLARATION OF MARIA F. BUXTON IN SUPPORT OF PLAINTIFF STATES' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR STAY OR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>September 26, 2025</u>, at San Francisco, California.

M. Mendiola
Declarant

/s/ M. Mendiola
Signature

SA2025302238
44813191.docx