1  ROB BONTA
   Attorney General of California
2  PAUL STEIN
   Supervising Deputy Attorney General
3  ANDREW Z. EDELSTEIN
   ANNA RICH
4  EDWARD P. WOLFE
   ROBIN GOLDFADEN
5  SEBASTIAN BRADY
   WILLIAM BELLAMY
6  MARIA F. BUXTON
   Deputy Attorneys General
7  State Bar No. 318563
    455 Golden Gate Avenue, Suite 11000
8   San Francisco, CA 94102-7004
    Telephone: (415) 510-3873
9   Fax: (415) 703-5480
    E-mail: Maria.Buxton@doj.ca.gov
10 *Attorneys for Plaintiff State of California*

11

12                IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15

16
   **STATE OF CALIFORNIA; STATE OF**           Case No. **3:25-cv-06310-MMC**
17 **NEW YORK; STATE OF ARIZONA;**
   **STATE OF COLORADO; STATE OF**             **SECOND DECLARATION OF MARIA F.**
18 **CONNECTICUT; STATE OF**                   **BUXTON IN SUPPORT OF PLAINTIFF**
   **DELAWARE; DISTRICT OF**                   **STATES' SUPPLEMENTAL REPLY IN**
19 **COLUMBIA; STATE OF HAWAI'I;**             **SUPPORT OF MOTION FOR STAY OR**
   **STATE OF ILLINOIS; OFFICE OF THE**        **PRELIMINARY INJUNCTION**
20 **GOVERNOR** ex rel. Andy Beshear, in his
   official capacity as Governor of the        Date: October 9, 2025
21 Commonwealth of Kentucky; **STATE OF**      Time: 10:00 a.m.
   **MAINE; STATE OF MARYLAND;**               Courtroom: 7
22 **COMMONWEALTH OF**                         Judge: Maxine M. Chesney
   **MASSACHUSETTS; STATE OF**                 Trial Date: None set
23 **MICHIGAN; STATE OF MINNESOTA;**           Action Filed: July 28, 2025
   **STATE OF NEVADA; STATE OF NEW**
24 **JERSEY; STATE OF NEW MEXICO;**
   **STATE OF OREGON; OFFICE OF THE**
25 **GOVERNOR** ex rel. Josh Shapiro, in his
   official capacity as Governor of the
26 Commonwealth of Pennsylvania; **STATE OF**
   **RHODE ISLAND; STATE OF**
27 **WASHINGTON; STATE OF WISCONSIN,**

28                                 Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**

                                        Defendants.

**SECOND DECLARATION OF MARIA F. BUXTON IN SUPPORT OF PLAINTIFF STATES' SUPPLEMENTAL REPLY**

I, Maria F. Buxton, declare as follows:

1.     I am a Deputy Attorney General in the Office of the Attorney General of California and one of the attorneys responsible for representing the Plaintiffs in the above-captioned case.  I have personal knowledge of the facts stated herein and could competently testify thereto if called upon to do so.

2.     A true and correct copy of the Motion to Intervene filed by Defendant U.S. Department of Agriculture (USDA) and U.S. Health and Human Services (HHS), submitted at ECF No. 553 in *In re Nassau County Strip Search Cases*, No. CV-99-2844 (E.D.N.Y.), on June 29, 2017, is attached here to as **Exhibit A**.

3.     A true and correct copy of 7 U.S.C. § 2020, available on the United States House of Representative's Office of the Law Revision Counsel's website at: https://uscode.house.gov/view.xhtml?req=granuleid:USC-2007-title7-section2020&num=0&edition=2007, which I am informed and believe reflects the law as it appeared on January 8, 2008, prior to the 2008 amendment of the law, is attached here as **Exhibit B**.

4.     A true and correct copy of 122 Stat. 1112, Public Law 110-234 (May 22, 2008), available on the Library of Congress' website at: https://www.congress.gov/bill/110th-congress/house-bill/2419/text/pl, which I am informed and believe reflects the 2008 amendment of 7 U.S.C. § 2020(e)(8), is attached here to as **Exhibit C**.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on September 26, 2025, in San Francisco, California.

Maria F. Buxton

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X


In re NASSAU COUNTY STRIP                    CV-99-2844
SEARCH CASES                                 (Hurley, J.)


--------------------------------------------------X



## NOTICE OF MOTION
## OF THE UNITED STATES DEPARTMENTS OF AGRICULTURE
## AND HEALTH AND HUMAN SERVICES
## TO INTERVENE PURSUANT TO FED. R. CIV. P. 24
## AND FOR AN ORDER VACATING THE COURT'S ORDER
## ENTERED APRIL 10, 2017, INSOFAR AS IT DIRECTS NASSAU COUNTY
## TO SEARCH THE NEW YORK WELFARE MANAGEMENT SYSTEM DATABASE
## FOR NAMES AND ADDRESSES OF MEMBERS OF THE PLAINTIFF CLASS


**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law and the

Orders previously entered herein, the U.S. Departments of Agriculture ("USDA") and Health

and Human Services ("HHS"), by their attorney, Bridget M. Rohde, Acting United States

Attorney for the Eastern District of New York, Mary M. Dickman, Assistant United States

Attorney, of counsel, will move this Court before the Honorable Denis R. Hurley, at the United

States Courthouse, 100 Federal Plaza, Central Islip, New York, on July 10, 2017, or such other

time as is set by the Court, for an order:  (1) granting the motion of the USDA and HHS to

intervene in the above-referenced matter, pursuant to Fed. R. Civ. P. 24; (2) vacating the Order

entered on April 10, 2017 (Dkt. # 516), insofar as it directs Nassau County to search New York

State's electronic Welfare Management System ("WMS") database for the names and

addresses of the Plaintiff class members; and (3) such further relief as the Court deems to be just and proper.

Dated:    Central Islip, New York
           June 29, 2017

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, New York 11722

BY:    ___/s/_____
       Mary M. Dickman
       Assistant U.S. Attorney
       (631) 715-7871

*Attorney for USDA and HHS*

To:    ALL COUNSEL OF RECORD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X


In re NASSAU COUNTY STRIP                    CV-99-2844
SEARCH CASES                                 (Hurley, J.)


-------------------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
OF THE UNITED STATES DEPARTMENTS OF AGRICULTURE
AND HEALTH AND HUMAN SERVICES
TO INTERVENE PURSUANT TO FED. R. CIV. P. 24
AND FOR AN ORDER VACATING THE COURT'S ORDER
ENTERED APRIL 10, 2017, INSOFAR AS IT DIRECTS NASSAU COUNTY
TO SEARCH THE NEW YORK WELFARE MANAGEMENT SYSTEM DATABASE
FOR NAMES AND ADDRESSES OF MEMBERS OF THE PLAINTIFF CLASS**




BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Mary M. Dickman
Assistant U.S. Attorney
   (Of Counsel)

## PRELIMINARY STATEMENT

The United States Departments of Agriculture ("USDA") and Health and Human Services ("HHS") respectfully submit this memorandum of law in support of their motion for an order: (1) granting the motion of the USDA and HHS to intervene in the above-captioned matter, pursuant to Fed. R. Civ. P. 24; (2) vacating the Order entered on April 10, 2017 (Dkt. # 516), insofar as it directs Nassau County to search New York State's electronic Welfare Management System ("WMS") database for the names and addresses of the Plaintiff class members; and (3) such further relief as the Court deems to be just and proper.

## STATEMENT OF FACTS

The WMS database exists for the purpose of "receiving maintaining and processing information relating to persons who have applied for or been determined eligible for benefits" under several public assistance programs administered by the State of New York, including federally funded programs. NY Soc. Serv. Law § 21(1). The intended purpose of the database is to provide local social services districts with "individual and aggregate data . . . to assist them in making eligibility determination[s] and basic management decision[s]" and to assist state agencies "in supervising the local administration of such programs." Id.

The WMS database contains information for applicants and beneficiaries of the following programs: (1) the Supplemental Nutrition Assistance Program ("SNAP"); (2) Medicaid; (3) domestic violence programs and (4) Public Assistance and care programs, including family assistance, safety net assistance, institutional care for adults, and child care.

The instant action concerns the constitutional claims of the Plaintiff class that they were strip searched upon their admission to the Nassau County Correctional Center ("NCCC") for misdemeanor or lesser offenses, absent reasonable suspicion that they harbored contraband. See Order entered on April 10, 2017 (Dkt. # 516). The Plaintiff class consists of approximately 17,000 individuals who were strip searched during the period from May 20, 1996, through June 1, 1999. Id. The Court awarded damages to each Plaintiff in the amount of $500. Id. Approximately 12.5 percent of the class members have filed claims for the payment. Id.

The Plaintiffs apparently believe that more class members have not come forward because notice of the award has not been communicated successfully to all class members. Mailings have been sent to class members at the addresses maintained by the Nassau County Sheriff's Department. Id. The address information was provided by inmates upon their admission to the NCCC; some addresses have not been updated since 1996. Id.

The Plaintiffs believe that some class members may be individuals who have, in more recent years, applied for and/or received benefits under public assistance programs. Accordingly, the Plaintiffs requested that the Court direct Nassau County to search the WMS database for names of the class members. Id. By Order entered on April 10, 2017 (Dkt. # 516), the Court directed Nassau County to search the WMS database for updated address information for the class members, and provide the most recent address associated with these names to the Claims Administrator.

Nassau County thereafter informed the Court that it had learned that the State of New York and the USDA had concerns about the disclosure of information contained in the WMS

database.  See Order entered May 2, 2017 (Dkt. # 521).  By Order entered May 2, 2017 (Dkt. # 521), the Court offered New York State and the USDA the opportunity to file motions to intervene.  By letter-motion dated June 23, 2017 (Dkt. # 531), the USDA and HHS informed the Court that they wished to file such motions, and requested additional time to do so.

## STATUTORY BACKGROUND

I.  The Supplemental Nutrition Assistance Program

The USDA oversees and regulates the Supplemental Nutrition Assistance Program ("SNAP"), which provides eligible households with an allotment to purchase nutritious food, pursuant to Section 4(a) of the Food and Nutrition Assistance Act ("FNA"), 7 U.S.C. § 2013(a).[1]  States that choose to participate in SNAP must provide a plan of operation for approval to the Food and Nutrition Service ("FNS"), an agency of the USDA.  7 U.S.C. § 2020(d), 7 C.F.R. 272.2(a) – (d).  The plan of operation contract requires the participating state to administer SNAP in compliance with the FNA and regulations promulgated by the Secretary of Agriculture.  7 U.S.C. § 2020(a)(3) and (e); 7 C.F.R. 272.2(b); see 7 U.S.C. § 2025(c); 7 C.F.R. 275.1 – 4, 10.

The FNA expressly prohibits disclosure of "information obtained from applicant households," including personally identifiable information ("PII") of the members of the household.  7 U.S.C. § 2020(e)(8)(A) – (D); 7 C.F.R. 272.1.

---

[1] Until 2008, the FNA was known as the Food Stamp Act.

3

The FNA carves out limited exceptions, primarily to assist SNAP in its operations. Id. The FNA permits disclosure of PII as may be necessary for administration and enforcement of SNAP, for audits of the Comptroller General of the United States, for the collection of overpayments, to prevent simultaneous payments to the same individual from more than one jurisdiction within the state, and to determine whether payments should be discontinued upon an individual's detention or incarceration. 7 U.S.C. § 2020(e)(8)(A), (B), (D), § 2020(e)(18). The FNA also permits disclosure of PII to federal, state or local law enforcement officers seeking to investigate alleged violations of the FNA. 7 U.S.C. § 2020(e)(8)(C).

Other than the administration of SNAP itself, disclosure of applicants' PII is authorized for only the following situations: (1) PII may be disclosed to the United States Immigration and Naturalization Service where the state has determined that a member of the household is ineligible for SNAP because he or she is present in the United States in violation of the Immigration and Nationality Act, pursuant to 7 U.S.C. § 2020(e)(15); and (2) PII may be disclosed to federal, state or local law enforcement officers lawfully seeking to locate or apprehend a specific, named person, so long as that individual is "fleeing to avoid prosecution, or custody or confinement after conviction, for a crime (or attempt to commit a crime) that, under the law of the place the member is fleeing, is a felony (or, in the case of New Jersey, a high misdemeanor), or is violating a condition of probation or parole imposed under Federal or State law," pursuant to 7 U.S.C. § 2020(e)(8)(E).

4

II.    <u>The Medicaid Program</u>

Title XIX of the Social Security Act provides for grants to states for medical assistance programs for needy populations, known as Medicaid.  42 U.S.C. §§ 1396, <u>et</u> <u>seq.</u> Federal funds are made available to states that have submitted plans for medical assistance, and such plans have been approved by the Secretary of HHS.  42 U.S.C. § 1396-1.

State plans for medical assistance must, among other things, provide "safeguards which restrict the use or disclosure of information concerning applicants and recipients." 42 U.S.C. § 1396a(a)(7)(A); <u>see</u> 42 C.F.R. 431.301.  Disclosure may be made for purposes "directly connected" with the administration of the program, and verification of the eligibility of children, based upon their family income, for free or reduced price meals under the Richard B. Russell National School Lunch Act, 42 U.S.C. § 1771, <u>et</u> <u>seq.</u>, and the Child Nutrition Act, 42 U.S.C. § 1773.  42 U.S.C. § 1396a(a)(7)(A); <u>see</u> 42 C.F.R. 431.302.  HHS regulations make clear that the information to be safeguarded includes the names and addresses of Medicaid applicants and beneficiaries.  42 C.F.R. 431.305.

The regulations also provide that HHS must, whenever possible, obtain permission from a family or individual before providing its or his PII to an outside source, including governmental bodies, the courts and law enforcement officials.  42 C.F.R. 431.306.

# ARGUMENT

## I. THE USDA AND HHS SHOULD BE PERMITTED TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(a)(2) OR 24(b)(2)(B)

The USDA and HHS should be permitted to intervene in this matter pursuant to either

Fed. R. Civ. P. 24(a)(2) (Intervention of Right) or 24(b)(2)(B) (Permissive Intervention).

Indeed, pursuant to Fed. R. Civ. P. 24(a)(2), on timely motion, the court must permit a party

to intervene who:

> [C]laims an interest relating to the property or transaction that is the subject
> of the action, and is so situated that disposing of the action may as a practical
> matter impair or impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest.

See also United States v. City of New York, 198 F.3d 360, 364 - 65 (2d Cir. 1999).

The USDA and HHS satisfy the criteria for intervention of right.  USDA and HHS

have an interest in the property at issue – the PII contained in the WMS database – that

Congress, by statute, has required that they protect.  7 U.S.C. § 2020(e)(8)(A) – (D); 42

U.S.C. § 1396a(a)(7)(A); see 7 C.F.R. 272.1, 42 C.F.R. 431.301.

Additionally, Fed. R. Civ. P. 24(b)(2)(B) authorizes intervention by a federal or state

governmental officer or agency, on timely motion, where a party's claim or defense is based

on "any regulation, order, requirement, or agreement issued or made under" "a statute or

executive order administered by the officer or agency."  Fed. R. Civ. P. 24(b)(2)(A) and (B).

See New Orleans Public Service, Inc., v. United Gas Pipe Line Co., 732 F. 2d 452, 471 -73

(5th Cir. 1984).  "In acting on a request for permissive intervention, it is proper to consider,

among other things, 'whether the intervenors' interests are adequately represented by other

parties' and whether they 'will significantly contribute to full development of the underlying

factual issues in the suit.'" New Orleans Public Service, Inc., 732 F.2d at 472, quoting

Spangler v. Pasadena City Bd. Of Ed., 552 F.2d 1326, 1329 (9th Cir. 1977).

The Court should permit USDA and HHS to intervene because the Orders at issue

involve disclosure of PII in the WMS database, which includes information of applicants and

beneficiaries of SNAP and Medicaid, the disclosure of which is protected by federal statutes

and regulations. 7 U.S.C. § 2020(e)(8)(A) - (D); 42 U.S.C. § 1396a(a)(7)(A); see 7 C.F.R.

272.1, 42 C.F.R. 431.301. Although the State of New York, which administers SNAP and

Medicaid benefits to its residents, already has moved to intervene, intervention by the federal

agencies themselves is necessary because the programs are a creation of federal law.

Moreover, the federal laws and regulations establishing and governing SNAP and Medicaid

contain specific directives regarding the disclosure of the PII of applicants and beneficiaries.

7 U.S.C. § 2020(e)(8)(A) – (D); 42 U.S.C. § 1396a(a)(7)(A); see 7 C.F.R. 272.1, 42 C.F.R.

431.301. The safeguarding of the PII is one requirement of the plan of operation that a state

must submit to USDA and HHS to participate in SNAP and Medicaid, respectively. 7

U.S.C. § 2020(a)(3) and (e); 7 C.F.R. 272.2(b); see 7 U.S.C. § 2025(c); 7 C.F.R. 275.1 – 4,

10; 42 U.S.C. § 1396a(a)(7)(A); see 42 C.F.R. 431.301.

Accordingly, under either of these alternative grounds, the Court should permit

USDA and HHS to intervene in this matter with respect to the Order entered on April 10,

2017 (Dkt. # 516), directing the disclosure of PII in the WMS database for the purpose of

locating putative members of the Plaintiff class.

## II. THE COURT SHOULD VACATE THE ORDER ENTERED ON APRIL 10, 2017, INSOFAR AS IT DIRECTS NASSAU COUNTY TO SEARCH THE WMS DATABASE FOR ADDRESS INFORMATION OF PLAINTIFF CLASS MEMBERS.

USDA and HHS oppose the Order entered on April 10, 2017 (Dkt. # 516), insofar as it directs Nassau County to search the WMS database for the names of class members and provide addresses associated with these class members to the Claims Administrator. As set forth above, the federal statutes and regulations governing SNAP and Medicaid require states that participate in these programs to protect PII from this type of disclosure.[2] 7 U.S.C. § 2020(e)(8)(A) – (D); 42 U.S.C. § 1396a(a)(7)(A); see 7 C.F.R. 272.1, 42 C.F.R. 431.301.

The statutes and regulations provide for limited disclosure of PII of SNAP and Medicaid applicants and beneficiaries. Disclosure is permitted to assist the programs in their operations, and to counteract fraud. 7 U.S.C. § 2020(e)(8)(A) (disclosure for administration and enforcement of SNAP), (B) (disclosure for audits of Comptroller General), (C) (disclosure to law enforcement investigating alleged violations of FNA), (D) (disclosure for collection of overpayments), § 2020(e)(18) (disclosure to prevent simultaneous duplicate payments and to determine whether payments should be discontinued based upon individual's detention or incarceration); 42 U.S.C. § 1396a(a)(7)(A) (disclosure for administration of Medicaid and verification of eligibility of children for free or reduced price

---

[2] As the New York Attorney General notes it his motion to intervene, New York state law also restricts disclosure of PII of applicants and beneficiaries of public assistance. To the extent that the Plaintiffs' claims invoke federal law, including the U.S. Constitution, questions concerning discovery of information is governed by federal law. Steinberg v. Mount Sinai Med. Ctr., Inc., No. 12 Civ. 51 (SLT) (VMS), 2014 U.S. Dist. LEXIS 44033, *7 - 8 (E.D.N.Y. Mar. 31, 2014) (Scanlon, J.).

meals).  Disclosure of PII of SNAP applicants and beneficiaries also is authorized under the following limited circumstances:  (1)  disclosure to INS where an applicant or beneficiary is present in the United States in violation of the Immigration and Nationality Act, as provided under 7 U.S.C. § 2020(e)(15); and (2) disclosure to law enforcement officers seeking to locate or apprehend a specific, named person fleeing to avoid prosecution, custody or conditions of probation or parole, as provided under 7 U.S.C. § 2020(e)(8)(E).

Courts analyzing the federal statutes and regulations governing SNAP and Medicaid have authorized disclosure only in the most limited of circumstances.  See Roberts v. Austin, 632 F.2d 1202, 1214 (5ᵗʰ Cir. 1980), cert. denied, 454 U.S. 975 (1981) (granting preliminary injunction barring blanket disclosure of personal information of food stamp recipients to prosecutor); Hassan v. United States, No. C05-1066C, 2006 WL 681038 (W.D. Wash. Mar. 15, 2006) (granting motion of merchants challenging disqualification under the Food Stamp Act on grounds of unlawful food stamp trafficking to compel disclosure of identities of individuals who allegedly trafficked with them); see, e.g., In re Zyprexa Prods. Liab. Litig., 254 F.R.D. 50, 78, 88-89 (E.D.N.Y. 2008) (Mann, M.J.) (finding Health Insurance Portability and Accountability Act does not bar disclosure of de-identified medical records of Medicaid patients prescribed drug at issue in litigation seeking damages for unlawful marketing).  Even a narrowly tailored request for disclosure of PII of a mere five beneficiaries in a database of public assistance programs has been barred where the purpose of the disclosure falls outside those specifically authorized in the statutes and regulations.  In re Grand Jury Subpoena Dated Nov. 14, 1989, 728 F. Supp. 368, 369, 374 (W.D. Pa. 1990); but see Protection & Advocacy System, Inc., v. Freudenthal, 412 F. Supp. 2d 1211, (D. Wyo.

2006) (authorizing disclosure of personal information of Medicaid recipients living in state institutions to corporation designated by state to assure protection of civil rights of individuals with mental illness).

In In re Grand Jury Subpoena Dated Nov., 14, 1989, the United States sought disclosure of PII as part of an investigation of a heroin and cocaine distribution ring. Id., at 369. The United States District Court for the Western District of Pennsylvania, denied the Government's motion to enforce the subpoena, finding that the restrictions contained in the Food Stamp Act, the predecessor to the FNA, restricted disclosure to law enforcement officials only for the purpose of investigating violations of the Food Stamp Act itself. Id. at 373. The court noted that the language of the Act and its accompanying regulations indicated that Congress had determined that maintaining the privacy of food stamp recipients would not unduly hinder federal prosecutions. Id. at 373 (citing 7 C.F.R. 272.1). In reaching its decision, the court relied on the balancing test set forth in the federal tax code for disclosure of personal information for use in criminal investigations. Id. at 374. The pertinent statute, 26 U.S.C. § 6103(i)(1), permitted disclosure of PII from tax returns and return information for use in criminal investigations where the prosecutor could demonstrate to a federal judge or magistrate that (1) reasonable cause exists to believe a crime has been committed, (2) reasonable cause exists to believe the information sought is relevant to the commission of the crime, and (3) the same information cannot reasonably be obtained elsewhere. Id., citing 26 U.S.C. § 6103(i)(1).[3]

---

[3] The United States District Court for the Western District of Virginia ordered compliance with a grand jury subpoena seeking disclosure of information in a public assistance database, where the subpoena sought information relating only to one specific individual. In re: Grand

Here, the Plaintiffs seek disclosure from the WMS database of personal information of up to 17,000 individuals, including applicants and recipients of SNAP and Medicaid benefits, for the purpose of finding their current addresses, so claim forms may be mailed to them.  The Plaintiffs' request is unduly broad and has no relationship to the benefit programs for which the database is maintained, nor any law enforcement purpose recognized by Congress.  The information Plaintiffs seek may be obtained elsewhere (although perhaps not from one single database), but the fact remains these public assistance programs are not general repositories of information, and Congress has specifically mandated that these programs be governed by federal statutes and regulations mandating their confidentiality.

---

Jury Subpoena Duces Tecum, No. 101MC00005, 2001 WL 896479 (W.D. Va. Jun. 12, 2001).  The court nevertheless recognized that, under other circumstances, a balancing test would be appropriate.  Id. at * 5.

11

## **CONCLUSION**

For the reasons set forth above, the USDA and HHS respectfully request that the

Court:  (1) grant their motion to intervene in the above-referenced matter, pursuant to Fed. R.

Civ. P. 24; (2) vacate the Order entered on April 10, 2017 (Dkt. # 516), insofar as it directs

Nassau County to search the WMS database for the names of class members and provide

addresses associated with these class members to the Claims Administrator; and (3) grant

any further relief as the Court deems to be just and proper.

Dated: Central Islip, New York
        June 29, 2012

                                        Respectfully submitted,

                                        BRIDGET M. ROHDE
                                        Acting United States Attorney
                                        Eastern District of New York
                                        610 Federal Plaza, 5th Floor
                                        Central Islip, New York 11722

                            By:    /s/
                                        Mary M. Dickman
                                        Assistant U.S. Attorney
                                        (631) 715-7863

                                        *Attorney for USDA and HHS*

12

# EXHIBIT B

**7 USC 2020: Administration**
Text contains those laws in effect on January 8, 2008

**From Title 7-AGRICULTURE**
CHAPTER 51-FOOD STAMP PROGRAM
**Jump To:**
**Source Credit**
**References In Text**
**Amendments**
**Effective Date**
**Regulations**
**Miscellaneous**
**Executive Documents**

## §2020. Administration

### (a) State responsibility; records, inspection, and audit

The State agency of each participating State shall assume responsibility for the certification of applicant households and for the issuance of coupons and the control and accountability thereof. There shall be kept such records as may be necessary to ascertain whether the program is being conducted in compliance with the provisions of this chapter and the regulations issued pursuant to this chapter. Such records shall be available for inspection and audit at any reasonable time and shall be preserved for such period of time, not less than three years, as may be specified in the regulations issued pursuant to this chapter.

### (b) Correction of improper denials and underissuances

When a State agency learns, through its own reviews under section 2025 of this title or other reviews, or through other sources, that it has improperly denied, terminated, or underissued benefits to an eligible household, the State agency shall promptly restore any improperly denied benefits to the extent required by subsection (e)(11) of this section and section 2023(b) of this title, and shall take other steps to prevent a recurrence of such errors where such error was caused by the application of State agency practices, rules or procedures inconsistent with the requirements of this chapter or with regulations or policies of the Secretary issued under the authority of this chapter.

### (c) Discrimination prohibited

In the certification of applicant households for the food stamp program, there shall be no discrimination by reason of race, sex, religious creed, national origin, or political beliefs.

### (d) Plan of operation by State agency; approval by Secretary; Indians

The State agency (as defined in section 2012(n)(1) of this title) of each State desiring to participate in the food stamp program shall submit for approval a plan of operation specifying the manner in which such program will be conducted within the State in every political subdivision. The Secretary may not, as a part of the approval process for a plan of operation, require a State to submit for prior approval by the Secretary the State agency instructions to staff, interpretations of existing policy, State agency methods of administration, forms used by the State agency, or any materials, documents, memoranda, bulletins, or other matter, unless the State determines that the materials, documents, memoranda, bulletins, or other matter alter or amend the State plan of operation or conflict with the rights and levels of benefits to which a household is entitled. In the case of all or part of an Indian reservation, the State agency as defined in section 2012(n)(1) of this title shall be responsible for conducting such program on such reservation unless the Secretary determines that the State agency (as defined in section 2012(n)(1) of this title) is failing, subsequent to August 31, 1964, properly to administer such program on such reservation in accordance with the purposes of this chapter and further determines that the State agency as defined in section 2012(n)(2) of this title is capable of effectively and efficiently conducting such program, in light of the distance of the reservation from State agency-operated certification and issuance centers, the previous experience of such tribal organization in the operation of programs authorized under the Indian Self-Determination Act (25 U.S.C. 450) and similar Acts of Congress, the tribal organization's management and fiscal capabilities, and the adequacy of measures taken by the tribal organization to ensure that there shall be no discrimination in the operation of the program on the basis of race, color, sex, or national origin, in which event such State agency shall be responsible for conducting such program and submitting for approval a plan of operation specifying the manner in which such program will be conducted. The Secretary, upon the request of a tribal organization, shall provide the designees of such organization with appropriate training and technical assistance to enable them to qualify as expeditiously as possible as a State agency pursuant to section 2012(n)(2) of this title. A State agency, as defined in section 2012(n)(1) of this title, before it submits its plan of operation to the Secretary for the administration of the food stamp program on all or part of an Indian reservation, shall consult in good faith with the tribal organization about that portion of the State's plan of operation pertaining to the implementation of the program for members of the tribe, and shall implement the program in a manner that is responsive to the needs of the Indians on the reservation as determined by ongoing consultation with the tribal organization.

**(e) Requisites of State plan of operation**

The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation–

(1) that the State agency shall (A) at the option of the State agency, inform low-income households about the availability, eligibility requirements, application procedures, and benefits of the food stamp program; and (B) use appropriate bilingual personnel and printed material in the administration of the program in those portions of political subdivisions in the State in which a substantial number of members of low-income households speak a language other than English;

(2)(A) that the State agency shall establish procedures governing the operation of food stamp offices that the State agency determines best serve households in the State, including households with special needs, such as households with elderly or disabled members, households in rural areas with low-income members, homeless individuals, households residing on reservations, and households in areas in which a substantial number of members of low-income households speak a language other than English.

(B) In carrying out subparagraph (A), a State agency–

(i) shall provide timely, accurate, and fair service to applicants for, and participants in, the food stamp program;

(ii)(I) shall develop an application containing the information necessary to comply with this chapter; and

(II) if the State agency maintains a website for the State agency, shall make the application available on the website in each language in which the State agency makes a printed application available;

(iii) shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a food stamp office in person during office hours;

(iv) shall consider an application that contains the name, address, and signature of the applicant to be filed on the date the applicant submits the application;

(v) shall require that an adult representative of each applicant household certify in writing, under penalty of perjury, that–

(I) the information contained in the application is true; and

(II) all members of the household are citizens or are aliens eligible to receive food stamps under section 2015(f) of this title;

(vi) shall provide a method of certifying and issuing coupons to eligible homeless individuals, to ensure that participation in the food stamp program is limited to eligible households; and

(vii) may establish operating procedures that vary for local food stamp offices to reflect regional and local differences within the State.

(C) Nothing in this chapter shall prohibit the use of signatures provided and maintained electronically, storage of records using automated retrieval systems only, or any other feature of a State agency's application system that does not rely exclusively on the collection and retention of paper applications or other records.

(D) The signature of any adult under this paragraph shall be considered sufficient to comply with any provision of Federal law requiring a household member to sign an application or statement;

(3) that the State agency shall thereafter promptly determine the eligibility of each applicant household by way of verification of income other than that determined to be excluded by section 2014(d) of this title (in part through the use of the information, if any, obtained under section 2025(e) of this title), household size (in any case such size is questionable), and such other eligibility factors as the Secretary determines to be necessary to implement sections 2014 and 2015 of this title, although the State agency may verify prior to certification, whether questionable or not, the size of any applicant household and such other eligibility factors as the State agency determines are necessary, so as to complete certification of and provide an allotment retroactive to the period of application to any eligible household not later than thirty days following its filing of an application, and that the State agency shall provide each applicant household, at the time of application, a clear written statement explaining what acts the household must perform to cooperate in obtaining verification and otherwise completing the application process;

(4) that the State agency shall insure that each participating household receive a notice of expiration of its certification prior to the start of the last month of its certification period advising the household that it must submit a new application in order to renew its eligibility for a new certification period and, further, that each such household which seeks to be certified another time or more times thereafter by filing an application for such recertification no later than fifteen days prior to the day upon which its existing certification period expires shall, if found to be still eligible, receive its allotment no later than one month after the receipt of the last allotment issued to it pursuant to its prior certification, but if such household is found to be ineligible or to be eligible for a smaller allotment during the new certification period it shall not continue to participate and receive benefits on the basis authorized for the preceding certification period even if it makes a timely request for a fair hearing pursuant to paragraph (10) of this subsection: *Provided*, That the timeliness standards for submitting the notice of expiration and filing an application for recertification may be modified by the Secretary in light of sections 2014(f)(2) and 2015(c) of this title if administratively necessary;

(5) the specific standards to be used in determining the eligibility of applicant households which shall be in accordance with sections 2014 and 2015 of this title and shall include no additional requirements imposed by the State agency;

(6) that–

(A) the State agency shall undertake the certification of applicant households in accordance with the general procedures prescribed by the Secretary in the regulations issued pursuant to this chapter; and

(B) the State agency personnel utilized in undertaking such certification shall be employed in accordance with the current standards for a Merit System of Personnel Administration or any standards later prescribed by the Office of Personnel Management pursuant to section 4728 of title 42 modifying or superseding such standards relating to the establishment and maintenance of personnel standards on a merit basis;

(7) that an applicant household may be represented in the certification process and that an eligible household may be represented in coupon issuance or food purchase by a person other than a member of the household so long as that person has been clearly designated as the representative of that household for that purpose by the head of the household or the spouse of the head, and, where the certification process is concerned, the representative is an adult who is sufficiently aware of relevant household circumstances, except that the Secretary may restrict the number of households which may be represented by an individual and otherwise establish criteria and verification standards for representation under this paragraph;

(8) safeguards which limit the use or disclosure of information obtained from applicant households to persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally assisted State programs, except that–

(A) the safeguards shall not prevent the use or disclosure of such information to the Comptroller General of the United States for audit and examination authorized by any other provision of law;

(B) notwithstanding any other provision of law, all information obtained under this chapter from an applicant household shall be made available, upon request, to local, State or Federal law enforcement officials for the purpose of investigating an alleged violation of this chapter or any regulation issued under this chapter;

(C) the safeguards shall not prevent the use by, or disclosure of such information, to agencies of the Federal Government (including the United States Postal Service) for purposes of collecting the amount of an overissuance of coupons, as determined under section 2022(b) of this title, from Federal pay (including salaries and pensions) as authorized pursuant to section 5514 of title 5 or a Federal income tax refund as authorized by section 3720A of title 31;

(D) notwithstanding any other provision of law, the address, social security number, and, if available, photograph of any member of a household shall be made available, on request, to any Federal, State, or local law enforcement officer if the officer furnishes the State agency with the name of the member and notifies the agency that–

(i) the member–

(I) is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime (or attempt to commit a crime) that, under the law of the place the member is fleeing, is a felony (or, in the case of New Jersey, a high misdemeanor), or is violating a condition of probation or parole imposed under Federal or State law; or

(II) has information that is necessary for the officer to conduct an official duty related to subclause (I);

(ii) locating or apprehending the member is an official duty; and
(iii) the request is being made in the proper exercise of an official duty; and

(E) the safeguards shall not prevent compliance with paragraph (16) or (20)(B);

(9) that the State agency shall–
(A) provide coupons no later than 7 days after the date of application to any household which–
(i)(I) has gross income that is less than $150 per month; or
(II) is a destitute migrant or a seasonal farmworker household in accordance with the regulations governing such households in effect July 1, 1982; and
(ii) has liquid resources that do not exceed $100;

(B) provide coupons no later than 7 days after the date of application to any household that has a combined gross income and liquid resources that is less than the monthly rent, or mortgage, and utilities of the household; and

(C) to the extent practicable, verify the income and liquid resources of a household referred to in subparagraph (A) or (B) prior to issuance of coupons to the household;

(10) for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program or by a claim against the household for an overissuance: *Provided*, That any household which timely requests such a fair hearing after receiving individual notice of agency action reducing or terminating its benefits within the household's certification period shall continue to participate and receive benefits on the basis authorized immediately prior to the notice of adverse action until such time as the fair hearing is completed and an adverse decision rendered or until such time as the household's certification period terminates, whichever occurs earlier, except that in any case in which the State agency receives from the household a written statement

containing information that clearly requires a reduction or termination of the household's benefits, the State agency may act immediately to reduce or terminate the household's benefits and may provide notice of its action to the household as late as the date on which the action becomes effective. At the option of a State, at any time prior to a fair hearing determination under this paragraph, a household may withdraw, orally or in writing, a request by the household for the fair hearing. If the withdrawal request is an oral request, the State agency shall provide a written notice to the household confirming the withdrawal request and providing the household with an opportunity to request a hearing;

(11) upon receipt of a request from a household, for the prompt restoration in the form of coupons to a household of any allotment or portion thereof which has been wrongfully denied or terminated, except that allotments shall not be restored for any period of time more than one year prior to the date the State agency receives a request for such restoration from a household or the State agency is notified or otherwise discovers that a loss to a household has occurred;

(12) for the submission of such reports and other information as from time to time may be required by the Secretary;

(13) for indicators of expected performance in the administration of the program;

(14) that the State agency shall specify a plan of operation for providing food stamps for households that are victims of a disaster; that such plan shall include, but not be limited to, procedures for informing the public about the disaster program and how to apply for its benefits, coordination with Federal and private disaster relief agencies and local government officials, application procedures to reduce hardship and inconvenience and deter fraud, and instruction of caseworkers in procedures for implementing and operating the disaster program;

(15) that the State agency shall require each household certified as eligible to participate by methods other than the out-of-office methods specified in the fourth sentence of paragraph (2) of this subsection in those project areas or parts of project areas in which the Secretary, in consultation with the Department's Inspector General, finds that it would be useful to protect the program's integrity and would be cost effective, to present a photographic identification card when using its authorization card in order to receive its coupons. The State agency may permit a member of a household to comply with this paragraph by presenting a photographic identification card used to receive assistance under a welfare or public assistance program;

(16) notwithstanding paragraph (8) of this subsection, for the immediate reporting to the Immigration and Naturalization Service by the State agency of a determination by personnel responsible for the certification or recertification of households that any member of a household is ineligible to receive food stamps because that member is present in the United States in violation of the Immigration and Nationality Act [8 U.S.C. 1101 et seq.];

(17) at the option of the State agency, for the establishment and operation of an automatic data processing and information retrieval system that meets such conditions as the Secretary may prescribe and that is designed to provide efficient and effective administration of the food stamp program;

(18) at the option of the State agency, that information may be requested and exchanged for purposes of income and eligibility verification in accordance with a State system which meets the requirements of section 1320b-7 of title 42 and that any additional information available from agencies administering State unemployment compensation laws under the provisions of section 503(d) of title 42 may be requested and utilized by the State agency (described in section 2012(n)(1) of this title) to the extent permitted under the provisions of section 503(d) of title 42;

(19) that, in project areas or parts thereof where authorization cards are used, and eligible households are required to present photographic identification cards in order to receive their coupons, the State agency shall include, in any agreement or contract with a coupon issuer, a provision that (A) the issuer shall (i) require the presenter to furnish a photographic identification card at the time the authorization card is presented, and (ii) record on the authorization card the identification number shown on the photographic identification card; and (B) if the State agency determines that the authorization card has been stolen or otherwise was not received by a household certified as eligible, the issuer shall be liable to the State agency for the face value of any coupons issued in the transaction in which such card is used and the issuer fails to comply with the requirements of clause (A) of this paragraph;

(20) that the State agency shall establish a system and take action on a periodic basis-

(A) to verify and otherwise ensure that an individual does not receive coupons in more than 1 jurisdiction within the State; and

(B) to verify and otherwise ensure that an individual who is placed under detention in a Federal, State, or local penal, correctional, or other detention facility for more than 30 days shall not be eligible to participate in the food stamp program as a member of any household, except that-

(i) the Secretary may determine that extraordinary circumstances make it impracticable for the State agency to obtain information necessary to discontinue inclusion of the individual; and

(ii) a State agency that obtains information collected under section 1382(e)(1)(I)(i)(I) of title 42 pursuant to section 1382(e)(1)(I)(ii)(II) of title 42, or under another program determined by the Secretary to be comparable to the program carried out under that section, shall be considered in compliance with this subparagraph.

(21) the plans of the State agency for carrying out employment and training programs under section 2015(d)(4) of this title, including the nature and extent of such programs, the geographic areas and households to be covered under such program, and the basis, including any cost information, for exemptions of categories and individuals and for the choice of employment and training program components reflected in the plans;

(22) in a project area in which 5,000 or more households participate in the food stamp program, for the establishment and operation of a unit for the detection of fraud in the food stamp program, including the investigation, and assistance in the prosecution, of such fraud;

(23) at the option of the State, for procedures necessary to obtain payment of uncollected overissuance of coupons from unemployment compensation pursuant to section 2022(c) of this title;

(24) the guidelines the State agency uses in carrying out section 2015(i) of this title; and

(25) if a State elects to carry out a Simplified Food Stamp Program under section 2035 of this title, the plans of the State agency for operating the program, including-

(A) the rules and procedures to be followed by the State agency to determine food stamp benefits;

(B) how the State agency will address the needs of households that experience high shelter costs in relation to the incomes of the households; and

(C) a description of the method by which the State agency will carry out a quality control system under section 2025(c) of this title.

## (f) Nutrition education

### (1) In general

To encourage the purchase, preparation, and consumption of nutritious foods, the Secretary is authorized to assign responsibility for the nutrition education of individuals eligible for food stamps, or the program for the distribution of commodities on reservations, to the Cooperative Extension Service, in cooperation with the Food and Nutrition Service. State agencies shall encourage food stamp program participants to participate in the expanded food and nutrition education program conducted under section 343(d) of this title, and any program established under sections 3175a through 3175e of this title. At the request of personnel of such education program, State agencies, wherever practicable, shall allow personnel and information materials of such education program to be placed in food stamp offices.

### (2) Grants

#### (A) In general

The Secretary shall make available not more than $600,000 for each of fiscal years 1998 through 2001 to pay the Federal share of grants made to eligible private nonprofit organizations and State agencies to carry out subparagraph (B).

#### (B) Eligibility

A private nonprofit organization or State agency shall be eligible to receive a grant under subparagraph (A) if the organization or agency agrees-

(i) to use the funds to direct a collaborative effort to coordinate and integrate nutrition education into health, nutrition, social service, and food distribution programs for food stamp participants and other low-income households; and

(ii) to design the collaborative effort to reach large numbers of food stamp participants and other low-income households through a network of organizations, including schools, child care centers, farmers' markets, health clinics, and outpatient education services.

#### (C) Preference

In deciding between 2 or more private nonprofit organizations or State agencies that are eligible to receive a grant under subparagraph (B), the Secretary shall give a preference to an organization or agency that conducted a collaborative effort described in subparagraph (B) and received funding for the collaborative effort from the Secretary before August 5, 1997.

#### (D) Federal share

##### (i) In general

Subject to subparagraph (E), the Federal share of a grant under this paragraph shall be 50 percent.

##### (ii) No in-kind contributions

The non-Federal share of a grant under this paragraph shall be in cash.

##### (iii) Private funds

The non-Federal share of a grant under this paragraph may include amounts from private nongovernmental sources.

#### (E) Limit on individual grant

The Federal share of a grant under subparagraph (A) may not exceed $200,000 for a fiscal year.

## (g) State noncompliance; correction of failures

If the Secretary determines, upon information received by the Secretary, investigation initiated by the Secretary, or investigation that the Secretary shall initiate upon receiving sufficient information evidencing a pattern of lack of compliance by a State agency of a type specified in this subsection, that in the administration of the food stamp program there is a failure by a State agency without good cause to comply with any of the provisions of this chapter, the regulations issued pursuant to this chapter, the State plan of operation submitted pursuant to subsection (d) of this

section, the State plan for automated data processing submitted pursuant to subsection (o)(2) of this section, or the requirements established pursuant to section 2032 of this title the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure. If the State agency does not correct such failure within that specified period, the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and, upon suit by the Attorney General in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located and a showing that noncompliance has occurred, appropriate injunctive relief shall issue, and, whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g) of this title as the Secretary determines to be appropriate, subject to administrative and judicial review under section 2023 of this title.

**(h) Deposit by State to cover fraudulently or negligently issued coupons**

If the Secretary determines that there has been negligence or fraud on the part of the State agency in the certification of applicant households, the State shall, upon request of the Secretary, deposit into the Treasury of the United States, a sum equal to the face value of any coupon or coupons issued as a result of such negligence or fraud.

**(i) Application and denial procedures**

**(1) Application procedures**

Notwithstanding any other provision of law, households in which all members are applicants for or recipients of supplemental security income shall be informed of the availability of benefits under the food stamp program and be assisted in making a simple application to participate in such program at the social security office and be certified for eligibility utilizing information contained in files of the Social Security Administration.

**(2) Denial and termination**

Except in a case of disqualification as a penalty for failure to comply with a public assistance program rule or regulation, no household shall have its application to participate in the food stamp program denied nor its benefits under the food stamp program terminated solely on the basis that its application to participate has been denied or its benefits have been terminated under any of the programs carried out under the statutes specified in the second sentence of section 2014(a) of this title and without a separate determination by the State agency that the household fails to satisfy the eligibility requirements for participation in the food stamp program.

**(j) Notice of availability of benefits and applications; revision of memorandum of understanding**

(1) Any individual who is an applicant for or recipient of supplemental security income or social security benefits (under regulations prescribed by the Secretary in conjunction with the Commissioner of Social Security) shall be informed of the availability of benefits under the food stamp program and informed of the availability of a simple application to participate in such program at the social security office.

(2) The Secretary and the Commissioner of Social Security shall revise the memorandum of understanding in effect on December 23, 1985, regarding services to be provided in social security offices under this subsection and subsection (i) of this section, in a manner to ensure that-

(A) applicants for and recipients of social security benefits are adequately notified in social security offices that assistance may be available to them under this chapter;

(B) applications for assistance under this chapter from households in which all members are applicants for or recipients of supplemental security income will be forwarded immediately to the State agency in an efficient and timely manner; and

(C) the Commissioner of Social Security receives from the Secretary reimbursement for costs incurred to provide such services.

**(k) Use of post offices**

Subject to the approval of the President, post offices in all or part of the State may issue, upon request by the State agency, food stamps to eligible households.

**(l) Special financial audit review of high participation States**

Whenever the ratio of a State's average food stamp participation in any quarter of a fiscal year to the State's total population in that quarter (estimated on the basis of the latest available population estimates as provided by the Department of Commerce, Bureau of the Census, Series P–25, Current Population Reports (or its successor series)) exceeds 60 per centum, the Office of the Inspector General of the Department of Agriculture shall immediately schedule a financial audit review of a sample of project areas within that State. Any financial audit review subsequent to the first such review, required under the preceding sentence, shall be conducted at the option of the Office of the Inspector General.

**(m) Alaskan fee agents; use and services**

The Secretary shall provide for the use of fee agents in rural Alaska. As used in this subsection "fee agent" means a paid agent who, although not a State employee, is authorized by the State to make applications available to low-income households, assist in the completion of applications, conduct required interviews, secure required verification, forward completed applications and supporting documentation to the State agency, and provide other services as

required by the State agency. Such services shall not include making final decisions on household eligibility or benefit levels.

**(n) Verification by State agencies**

The Secretary shall require State agencies to conduct verification and implement other measures where necessary, but no less often than annually, to assure that an individual does not receive both coupons and benefits or payments referred to in section 2015(g) of this title or both coupons and assistance provided in lieu of coupons under section 2026(b)(1) of this title.

**(o) Data processing systems; model plan; comprehensive automation and computerization; State plans; evaluation and report to Congress; corrective measures by State; time for implementation**

(1) The Secretary shall develop, after consultation with, and with the assistance of, an advisory group of State agencies appointed by the Secretary without regard to the provisions of the Federal Advisory Committee Act, a model plan for the comprehensive automation of data processing and computerization of information systems under the food stamp program. The plan shall be developed and made available for public comment through publication of the proposed plan in the Federal Register not later than October 1, 1986. The Secretary shall complete the plan, taking into consideration public comments received, not later than February 1, 1987. The elements of the plan may include intake procedures, eligibility determinations and calculation of benefits, verification procedures, coordination with related Federal and State programs, the issuance of benefits, reconciliation procedures, the generation of notices, and program reporting. In developing the plan, the Secretary shall take into account automated data processing and information systems already in existence in States and shall provide for consistency with such systems.

(2) Not later than October 1, 1987, each State agency shall develop and submit to the Secretary for approval a plan for the use of an automated data processing and information retrieval system to administer the food stamp program in such State. The State plan shall take into consideration the model plan developed by the Secretary under paragraph (1) and shall provide time frames for completion of various phases of the State plan. If a State agency already has a sufficient automated data processing and information retrieval system, the State plan may, subject to the Secretary's approval, reflect the existing State system.

(3) Not later than April 1, 1988, the Secretary shall prepare and submit to Congress an evaluation of the degree and sufficiency of each State's automated data processing and computerized information systems for the administration of the food stamp program, including State plans submitted under paragraph (2). Such report shall include an analysis of additional steps needed for States to achieve effective and cost-efficient data processing and information systems. The Secretary, thereafter, shall periodically update such report.

(4) Based on the Secretary's findings in such report submitted under paragraph (3), the Secretary may require a State agency, as necessary to rectify identified shortcomings in the administration of the food stamp program in the State, except where such direction would displace State initiatives already under way, to take specified steps to automate data processing systems or computerize information systems for the administration of the food stamp program in the State if the Secretary finds that, in the absence of such systems, there will be program accountability or integrity problems that will substantially affect the administration of the food stamp program in the State.

(5)(A) Subject to subparagraph (B), in the case of a plan for an automated data processing and information retrieval system submitted by a State agency to the Secretary under paragraph (2), such State agency shall-

(i) commence implementation of its plan not later than October 1, 1988; and

(ii) meet the time frames set forth in the plan.


(B) The Secretary shall extend a deadline imposed under subparagraph (A) to the extent the Secretary deems appropriate based on the Secretary's finding of a good faith effort of a State agency to implement its plan in accordance with subparagraph (A).

**(p) State verification option**

Notwithstanding any other provision of law, in carrying out the food stamp program, a State agency shall not be required to use an income and eligibility or an immigration status verification system established under section 1320b–7 of title 42.

**(q) Denial of food stamps for prisoners**

The Secretary shall assist States, to the maximum extent practicable, in implementing a system to conduct computer matches or other systems to prevent prisoners described in subsection (e)(20)(B) of this section from participating in the food stamp program as a member of any household.

**(r) Denial of food stamps for deceased individuals**

Each State agency shall-

(1) enter into a cooperative arrangement with the Commissioner of Social Security, pursuant to the authority of the Commissioner under section 405(r)(3) of title 42, to obtain information on individuals who are deceased; and

(2) use the information to verify and otherwise ensure that benefits are not issued to individuals who are deceased.

**(s) Transitional benefits option**

**(1) In general**

A State agency may provide transitional food stamp benefits to a household that ceases to receive cash assistance under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.).

**(2) Transitional benefits period**

Under paragraph (1), a household may receive transitional food stamp benefits for a period of not more than 5 months after the date on which cash assistance is terminated.

**(3) Amount of benefits**

During the transitional benefits period under paragraph (2), a household shall receive an amount of food stamp benefits equal to the allotment received in the month immediately preceding the date on which cash assistance was terminated, adjusted for the change in household income as a result of-

(A) the termination of cash assistance; and

(B) at the option of the State agency, information from another program in which the household participates.

**(4) Determination of future eligibility**

In the final month of the transitional benefits period under paragraph (2), the State agency may-

(A) require the household to cooperate in a recertification of eligibility; and

(B) initiate a new certification period for the household without regard to whether the preceding certification period has expired.

**(5) Limitation**

A household shall not be eligible for transitional benefits under this subsection if the household-

(A) loses eligibility under section 2015 of this title;

(B) is sanctioned for a failure to perform an action required by Federal, State, or local law relating to a cash assistance program described in paragraph (1); or

(C) is a member of any other category of households designated by the State agency as ineligible for transitional benefits.

**(6) Applications for recertification**

**(A) In general**

A household receiving transitional benefits under this subsection may apply for recertification at any time during the transitional benefits period under paragraph (2).

**(B) Determination of allotment**

If a household applies for recertification under subparagraph (A), the allotment of the household for all subsequent months shall be determined without regard to this subsection.

**(t) Grants for simple application and eligibility determination systems and improved access to benefits**

**(1) In general**

For each of fiscal years 2003 through 2007, the Secretary shall use not more than $5,000,000 of funds made available under section 2027(a)(1) of this title to make grants to pay 100 percent of the costs of eligible entities approved by the Secretary to carry out projects to develop and implement-

(A) simple food stamp application and eligibility determination systems; or

(B) measures to improve access to food stamp benefits by eligible households.

**(2) Types of projects**

A project under paragraph (1) may consist of-

(A) coordinating application and eligibility determination processes, including verification practices, under the food stamp program and other Federal, State, and local assistance programs;

(B) establishing methods for applying for benefits and determining eligibility that-

(i) more extensively use-

(I) communications by telephone; and

(II) electronic alternatives such as the Internet; or

(ii) otherwise improve the administrative infrastructure used in processing applications and determining eligibility;

(C) developing procedures, training materials, and other resources aimed at reducing barriers to participation and reaching eligible households;

(D) improving methods for informing and enrolling eligible households; or

(E) carrying out such other activities as the Secretary determines to be appropriate.

**(3) Limitation**

A grant under this subsection shall not be made for the ongoing cost of carrying out any project.

**(4) Eligible entities**

To be eligible to receive a grant under this subsection, an entity shall be-

(A) a State agency administering the food stamp program;

(B) a State or local government;

(C) an agency providing health or welfare services;

(D) a public health or educational entity; or

(E) a private nonprofit entity such as a community-based organization, food bank, or other emergency feeding organization.

**(5) Selection of eligible entities**

The Secretary–

(A) shall develop criteria for the selection of eligible entities to receive grants under this subsection; and

(B) may give preference to any eligible entity that consists of a partnership between a governmental entity and a nongovernmental entity.

## (u) Agreement for direct certification and cooperation

**(1) In general**

Each State agency shall enter into an agreement with the State agency administering the school lunch program established under the Richard B. Russell National School Lunch Act (42 U.S.C. 1751 et seq.).

**(2) Contents**

The agreement shall establish procedures that ensure that–

(A) any child receiving benefits under this chapter shall be certified as eligible for free lunches under the Richard B. Russell National School Lunch Act (42 U.S.C. 1751 et seq.) and free breakfasts under the Child Nutrition Act of 1966 (42 U.S.C. 1771 et seq.), without further application; and

(B) each State agency shall cooperate in carrying out paragraphs (3)(F) and (4) of section 9(b) of the Richard B. Russell National School Lunch Act (42 U.S.C. 1758(b)).

( Pub. L. 88–525, §11, Aug. 31, 1964, 78 Stat. 707 ; Pub. L. 95–113, title XIII, §1301, Sept. 29, 1977, 91 Stat. 969 ; Pub. L. 96–249, title I, §§113, 116–120, 122, 123, May 26, 1980, 94 Stat. 361–363 ; Pub. L. 97–35, title I, §111(a), Aug. 13, 1981, 95 Stat. 362 ; Pub. L. 97–98, title XIII, §§1316–1320(a), 1321–1323, Dec. 22, 1981, 95 Stat. 1286 , 1287; Pub. L. 97–253, title I, §§166–174, 180(b)(1), 189(b)(2), 190(c)(1), Sept. 8, 1982, 96 Stat. 779 , 780, 783, 787; Pub. L. 98–204, §7, Dec. 2, 1983, 97 Stat. 1386 ; Pub. L. 98–369, div. B, title VI, §2651(i), July 18, 1984, 98 Stat. 1150 ; Pub. L. 99–198, title XV, §§1507(b), 1517(b), 1525–1531(a), (b), 1535(b)(1), 1537(b), (c), Dec. 23, 1985, 99 Stat. 1568 , 1576, 1580–1582, 1584, 1586, 1587; Pub. L. 100–77, title VIII, §§808(a), 809(a), July 22, 1987, 101 Stat. 536 ; Pub. L. 100–435, title II, §204(a), title III, §§310, 311, 320, 321(a), 322, 323, 330, 352, Sept. 19, 1988, 102 Stat. 1657 , 1660–1662, 1665; Pub. L. 101–624, title XVII, §§1736–1741, 1763(b), Nov. 28, 1990, 104 Stat. 3793 , 3794, 3806; Pub. L. 102–237, title IX, §941(5), (6), Dec. 13, 1991, 105 Stat. 1892 ; Pub. L. 103–66, title XIII, §13941(a), Aug. 10, 1993, 107 Stat. 676 ; Pub. L. 103–296, title I, §108(f)(2), (3), Aug. 15, 1994, 108 Stat. 1487 ; Pub. L. 104–66, title I, §1011(x), Dec. 21, 1995, 109 Stat. 711 ; Pub. L. 104–193, title VIII, §§809(b), 819(b), 835–840, 844(b), 848(b)(1), 854(b), Aug. 22, 1996, 110 Stat. 2313 , 2320, 2329–2331, 2333, 2334, 2342; Pub. L. 105–33, title I, §§1003(a)(1), (2), (b), 1004, Aug. 5, 1997, 111 Stat. 255 , 256; Pub. L. 105–379, §1(a), Nov. 12, 1998, 112 Stat. 3399 ; Pub. L. 107–171, title IV, §§4114(a), 4115(a), 4116(a), May 13, 2002, 116 Stat. 314 , 315; Pub. L. 108–265, title I, §104(b)(2), June 30, 2004, 118 Stat. 737 .)

## References in Text

The Indian Self-Determination Act (25 U.S.C. 450), referred to in subsec. (d), is title I of Pub. L. 93–638, Jan. 4, 1975, 88 Stat. 2203 , as amended, which is classified principally to part A (§450f et seq.) of subchapter II of chapter 14 of Title 25, Indians. For complete classification of this Act to the Code, see Short Title note set out under section 450 of Title 25 and Tables.

The Immigration and Nationality Act, referred to in subsec. (e)(16), is act June 27, 1952, ch. 477, 66 Stat. 163 , as amended, which is classified principally to chapter 12 (§1101 et seq.) of Title 8, Aliens and Nationality. For complete classification of this Act to the Code, see Short Title note set out under section 1101 of Title 8 and Tables.

The Federal Advisory Committee Act, referred to in subsec. (o)(1), is Pub. L. 92–463, Oct. 6, 1972, 86 Stat. 770 , as amended, which is set out in the Appendix to Title 5, Government Organization and Employees.

The Social Security Act, referred to in subsec. (s)(1), is act Aug. 14, 1935, ch. 531, 49 Stat. 620 , as amended. Part A of title IV of the Act is classified generally to part A (§601 et seq.) of subchapter IV of chapter 7 of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see section 1305 of Title 42 and Tables.

The Richard B. Russell National School Lunch Act, referred to in subsec. (u), is act June 4, 1946, ch. 281, 60 Stat. 230 , as amended, which is classified generally to chapter 13 (§1751 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 1751 of Title 42 and Tables.

The Child Nutrition Act of 1966, referred to in subsec. (u)(2)(A), is Pub. L. 89–642, Oct. 11, 1966, 80 Stat. 885 , as amended, which is classified generally to chapter 13A (§1771 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 1771 of Title 42 and Tables.

## AMENDMENTS

**2004**-Subsec. (u). Pub. L. 108–265 added subsec. (u).

**2002**-Subsec. (e)(2)(B)(ii). Pub. L. 107–171, §4114(a), designated existing provisions as subcl. (I) and added subcl. (II).

Subsec. (s). Pub. L. 107–171, §4115(a), added subsec. (s).

Subsec. (t). Pub. L. 107–171, §4116(a), added subsec. (t).

**1998**-Subsec. (r). Pub. L. 105–379 added subsec. (r).

**1997**-Subsec. (e)(8)(E). Pub. L. 105–33, §1003(a)(2), substituted "paragraph (16) or (20)(B)" for "paragraph (16)".

Subsec. (e)(20). Pub. L. 105–33, §1003(a)(1), added par. (20) and struck out former par. (20) which read as follows: "that the State agency shall establish a system and take action on a periodic basis to verify and otherwise assure that an individual does not receive coupons in more than one jurisdiction within the State;".

Subsec. (f). Pub. L. 105–33, §1004, inserted subsec. heading, designated existing provisions as par. (1), inserted par. heading, and added par. (2).

Subsec. (q). Pub. L. 105–33, §1003(b), added subsec. (q).

**1996**-Subsec. (e)(2). Pub. L. 104–193, §835(1)(A), added par. (2) and struck out former par. (2) which required that each State plan of operation was to provide that each household which contacted food stamp office in person during office hours to make what could reasonably be interpreted as oral or written request for food stamp assistance was to receive and be permitted to file, on same day that such contact was first made, simplified, uniform national application form for participation in food stamp program.

Subsec. (e)(3). Pub. L. 104–193, §§809(b), 835(1)(B), substituted "shall" for "shall-" after "and that the State agency", struck out "(A)" before "provide each applicant household" and struck out subpars. (B) to (E) and concluding provisions which provided that State agency was to assist each applicant household in obtaining appropriate verification and completing application process, not require any household to submit additional proof of matter on which State agency already had current verification, not deny any application for participation solely because of failure of person outside household to cooperate, process applications if household complied with requirements of first sentence of section 2015(c) of this title by taking appropriate steps to verify information otherwise required to be verified under this chapter, provide household, at time of each certification and recertification, with statement describing reporting responsibilities of household under this chapter, and provide toll-free or local telephone number, or telephone number at which collect calls would be accepted by State agency, at which household could reach appropriate representative of State agency.

Subsec. (e)(6). Pub. L. 104–193, §836, substituted "(6) that-" for "(6) that", realigned margins of subpars. (A) and (B), in subpar. (B) substituted "Office of Personnel Management" for "United States Civil Service Commission", and struck out subpars. (C) to (E) which read as follows: "(C) the State agency shall provide a continuing, comprehensive program of training for all personnel undertaking such certification so that eligible households are promptly and accurately certified to receive the allotments for which they are eligible under this chapter; (D) the State agency, at its option, may undertake intensive training to ensure that State agency personnel who undertake the certification of households that include a member who engages in farming are qualified to perform such certification; and (E) at its option, the State agency may provide, or contract for the provision, of training and assistance to persons working with volunteer or nonprofit organizations that provide program information activities or eligibility screening to persons potentially eligible for food stamps;".

Subsec. (e)(8). Pub. L. 104–193, §§837, 844(b), in introductory provisions, substituted "except that-" for "except that", in subpar. (A), realigned margin, substituted "the safeguards" for "such safeguards" and semicolon for comma at end, in subpar. (B), realigned margin and substituted "chapter;" for "chapter, and", in subpar. (C), realigned margin, substituted "the safeguards" for "such safeguards", struck out "and excluding claims arising from an error of the State agency, that has not been recovered pursuant to such section" before ", from Federal pay", and inserted before semicolon at end "or a Federal income tax refund as authorized by section 3720A of title 31", and added subpars. (D) and (E).

Subsec. (e)(9). Pub. L. 104–193, §838, in subpar. (A), substituted "7 days" for "five days", redesignated subpar. (C) as (B), substituted "7 days" for "five days", and struck out former subpar. (B) which read as follows: "provide coupons no later than five days after the date of application to any household in which all members are homeless individuals and that meets the income and resource criteria for coupons under this chapter;", and redesignated subpar. (D) as (C) and substituted "or (B)" for ", (B), or (C)".

Subsec. (e)(10). Pub. L. 104–193, §839, inserted before semicolon at end a period and "At the option of a State, at any time prior to a fair hearing determination under this paragraph, a household may withdraw, orally or in writing, a request by the household for the fair hearing. If the withdrawal request is an oral request, the State agency shall provide a written notice to the household confirming the withdrawal request and providing the household with an opportunity to request a hearing".

Subsec. (e)(14). Pub. L. 104–193, §835(1)(C), (D)(i), redesignated par. (15) as (14) and struck out former par. (14) which read as follows: "that the State agency shall prominently display in all food stamp and public assistance offices posters prepared or obtained by the Secretary describing the information contained in subparagraphs (A) through (D) of this paragraph and shall make available in such offices for home use pamphlets prepared or obtained by the Secretary listing (A) foods that contain substantial amounts of recommended daily allowances of vitamins, minerals, and protein for children and adults; (B) menus that combine such foods into meals; (C) details on eligibility for other programs administered by the Secretary that provide nutrition benefits; and (D) general information on the relationship between health and diet;".

Subsec. (e)(15) to (17). Pub. L. 104–193, §835(1)(D)(i), redesignated pars. (16) to (18) as (15) to (17), respectively. Former par. (15) redesignated (14).

Subsec. (e)(18). Pub. L. 104–193, §840, substituted "at the option of the State agency, that information may be" for "that information is" and "may be requested" for "shall be requested".

Pub. L. 104–193, §835(1)(D)(i), redesignated par. (19) as (18). Former par. (18) redesignated (17).

Subsec. (e)(19) to (22). Pub. L. 104–193, §835(1)(D)(i), redesignated pars. (20) to (23) as (19) to (22), respectively. Former par. (19) redesignated (18).

Subsec. (e)(23). Pub. L. 104–193, §§819(b)(1), 835(1)(D)(i), redesignated par. (24) as (23) and struck out "and" at end. Former par. (23) redesignated (22).

Subsec. (e)(24). Pub. L. 104–193, §835(1)(D)(ii), redesignated par. (26) as (24). Former par. (24) redesignated (23).

Subsec. (e)(25). Pub. L. 104–193, §854(b), added par. (25).

Pub. L. 104–193, §§819(b)(2), 835(1)(C), substituted semicolon for concluding period and struck out par. (25) which read as follows: "a procedure for designating project areas or parts of project areas that are rural and in which low-income persons face substantial difficulties in obtaining transportation. The State agency shall designate the areas according to procedures approved by the Secretary. In each area so designated, the State agency shall provide for the issuance of coupons by mail to all eligible households in the area, except that any household with mail losses exceeding levels established by the Secretary shall not be entitled to such a mailing and the State agency shall not be required to issue coupons by mail in those localities within such area where the mail loss rates exceed standards set by the Secretary."

Subsec. (e)(26). Pub. L. 104–193, §835(1)(D)(ii), redesignated par. (26) as (24).

Pub. L. 104–193, §819(b)(3), added par. (26).

Subsec. (g). Pub. L. 104–193, §848(b)(1), in first sentence, struck out "the Secretary's standards for the efficient and effective administration of the program established under section 2025(b)(1) of this title or" before "the requirements established pursuant to section 2032".

Subsec. (i). Pub. L. 104–193, §835(2)(A), inserted subsec. heading.

Subsec. (i)(1). Pub. L. 104–193, §835(2)(A), designated portion of existing provisions as par. (1), inserted heading, and substituted "Notwithstanding any other provision of law," for "Notwithstanding any other provision of law, the Secretary, the Commissioner of Social Security and the Secretary of Health and Human Services shall develop a system by which (1) a single interview shall be conducted to determine eligibility for the food stamp program and the aid to families with dependent children program under part A of title IV of the Social Security Act; (2)".

Subsec. (i)(2). Pub. L. 104–193, §835(2)(B), substituted a period, par. (2) designation, heading, and "Except in a case of disqualification as a penalty for failure to comply with a public assistance program rule or regulation, no" for "; (3) households in which all members are included in a federally aided public assistance or State or local general assistance grant in a State that has a single State-wide general assistance application form shall have their application for participation in the food stamp program contained in the public assistance or general assistance application form, and households applying for a local general assistance grant in a local jurisdiction in which the agency administering the general assistance program also administers the food stamp program shall be provided an application for participation in the food stamp program at the time of their application for general assistance, along with information concerning how to apply for the food stamp program; and (4) new applicants, as well as households which have recently lost or been denied eligibility for public assistance or general assistance, shall be certified for participation in the food stamp program based on information in the public assistance or general assistance case file to the extent that reasonably verified information is available in such case file. In addition to implementing paragraphs (1) through (4), the State agency shall inform applicants for benefits under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) that such applicants may

file, along with their application for such benefits, an application for benefits under this chapter, and that if such applicants file, they shall have a single interview for food stamps and for benefits under part A of title IV of the Social Security Act. No".

Subsec. (p). Pub. L. 104–193, §840(2), added subsec. (p).

**1995**—Subsec. (l). Pub. L. 104–66 struck out ", and shall, upon completion of the audit, provide a report to Congress of its findings and recommendations within one hundred and eighty days" after "within that State" in first sentence.

**1994**—Subsec. (i). Pub. L. 103–296, §108(f)(3), inserted ", the Commissioner of Social Security" after "the Secretary" in first sentence.

Subsec. (j). Pub. L. 103–296, §108(f)(2), substituted "Commissioner of Social Security" for "Secretary of Health and Human Services" wherever appearing.

**1993**—Subsec. (e)(8)(C). Pub. L. 103–66 added cl. (C).

**1991**—Subsec. (b). Pub. L. 102–237, §941(6), redesignated subsec. (p) as (b) and transferred it to follow subsec. (a).

Subsec. (e)(2). Pub. L. 102–237, §941(5)(A), substituted a semicolon for period at end.

Subsec. (e)(3)(D). Pub. L. 102–237, §941(5)(B)(i), substituted "section 2015 of this title)" for "section 2015 of this title".

Subsec. (e)(3)(E). Pub. L. 102–237, §941(5)(B)(ii), made technical amendment to clarify alignment of margin of concluding provisions.

Subsec. (e)(15). Pub. L. 102–237, §941(5)(C), substituted a semicolon for period at end.

Subsec. (p). Pub. L. 102–237, §941(6), redesignated subsec. (p) as (b) and transferred it to follow subsec. (a).

**1990**—Subsec. (e)(2). Pub. L. 101–624, §1736(1), substituted "on or near its front cover) explanations" for "instructions" in third sentence.

Pub. L. 101–624, §1736(2), substituted "The State agency shall require that an adult representative of each household that is applying for food stamp benefits shall certify in writing, under penalty of perjury, that the information contained in the application is true and that all members of the household are either citizens or are aliens eligible to receive food stamps under section 2015(f) of this title. The signature of the adult under this section shall be deemed sufficient to comply with any provision of Federal law requiring household members to sign the application or statements in connection with the application process." for "One adult member of a household that is applying for a coupon allotment shall be required to certify in writing, under penalty of perjury, the truth of the information contained in the application for the allotment."

Subsec. (e)(3)(E). Pub. L. 101–624, §1737, inserted before semicolon at end a period followed by "Under rules prescribed by the Secretary, a State agency shall develop standard estimates of the shelter expenses that may reasonably be expected to be incurred by households in which all members are homeless but that are not receiving free shelter throughout the month. The Secretary may issue regulations to preclude the use of the estimates for households with extremely low shelter costs for whom the following sentence shall not apply. A State agency shall use the estimates in determining the allotments of the households, unless a household verifies higher expenses".

Subsec. (e)(21). Pub. L. 101–624, §1738(1), struck out "and" after "within the State;".

Subsec. (e)(22). Pub. L. 101–624, §1738(2), substituted semicolon for period at end.

Subsec. (e)(25). Pub. L. 101–624, §1738(3)–(5), added par. (25).

Subsec. (f). Pub. L. 101–624, §1739, inserted first sentence and struck out former first sentence which read as follows: "To encourage the purchase of nutritious foods, the Secretary is authorized to extend food and nutrition education to reach food stamp program participants, using the methods and techniques developed in the expanded food and nutrition education and other programs."

Subsec. (g). Pub. L. 101–624, §1763(b), inserted "or the requirements established pursuant to section 2032 of this title" after "section 2025(b)(1) of this title" in first sentence.

Subsec. (i)(3). Pub. L. 101–624, §1740, inserted "in a State that has a single State-wide general assistance application form" after "grant" and inserted before semicolon at end ", and households applying for a local general assistance grant in a local jurisdiction in which the agency administering the general assistance program also administers the food stamp program shall be provided an application for participation in the food stamp program at the time of their application for general assistance, along with information concerning how to apply for the food stamp program".

Subsec. (j)(1). Pub. L. 101–624, §1741, inserted "supplemental security income or" after "recipient of".

**1988**—Subsec. (e)(1)(A). Pub. L. 100–435, §204(a), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "not conduct food stamp outreach activities with funds provided under this chapter except, at the option of the State agency, food stamp informational activities directed at homeless individuals; and".

Subsec. (e)(2). Pub. L. 100–435, §310, inserted provisions relating to brief, simply-written, and readable application forms.

Pub. L. 100–435, §330, substituted "The State agency shall waive in-office interviews, on a household's request, if a household is unable to appoint an authorized representative pursuant to paragraph (7) and has no adult household members able to come to the appropriate State agency office because such members are elderly, are mentally or physically handicapped, live in a location not served by a certification office, or have transportation difficulties or similar hardships as determined by the State agency (including hardships due to residing in a rural area, illness, care of a household member, prolonged severe weather, or work or training hours). If an in-office interview is waived, the State agency may conduct a telephone interview or a home visit. The State agency shall provide for telephone contact by, mail delivery of forms to, and mail return of forms by, households that have transportation difficulties or similar hardships." for "The State agency shall comply with the standards established by the Secretary for telephone contact by, mail delivery of forms to and mail return of forms by, and subsequent home or telephone interview with, the elderly, physically or mentally handicapped, and persons otherwise unable, solely because of transportation difficulties and similar hardships, to appear in person at a certification office or through a representative pursuant to paragraph (7) of this subsection, so that such persons may have an adequate opportunity to be certified properly;".

Subsec. (e)(3). Pub. L. 100–435, §323, inserted provisions at end relating to dissemination of statements describing reporting responsibilities and telephone number to call State agency.

Pub. L. 100–435, §311, inserted cls. (A) to (E).

Subsec. (e)(6)(C). Pub. L. 100–435, §322(a), substituted "shall provide" for "shall undertake to provide" and inserted "so that eligible households are promptly and accurately certified to receive the allotments for which they are eligible under this chapter" after "such certification".

Subsec. (e)(6)(D). Pub. L. 100–435, §321(a), added cl. (D).

Subsec. (e)(6)(E). Pub. L. 100–435, §322(b), added cl. (E).

Subsec. (i). Pub. L. 100–435, §352, amended second sentence generally. Prior to amendment, second sentence read as follows: "Each State agency shall implement clauses (1) and (2) and may implement clause (3) or (4), or both such clauses."

Subsec. (p). Pub. L. 100–435, §320, added subsec. (p).

**1987**–Subsec. (e)(1)(A). Pub. L. 100–77, §808(a), inserted "except, at the option of the State agency, food stamp informational activities directed at homeless individuals" after "this chapter".

Subsec. (e)(9). Pub. L. 100–77, §809(a), added subpars. (B) and (C), redesignated former subpar. (B) as (D), and directed the substitution of "a household referred to in subparagraph (A), (B), or (C)" for "the household" which was executed by making the substitution for the first reference to "the household" as the probable intent of Congress.

**1985**–Subsec. (e)(2). Pub. L. 99–198, §1529, inserted provision directing the State agency to provide a method of certifying and issuing coupons to eligible households that do not reside in permanent dwellings or who do not have fixed mailing addresses and to take such steps as are necessary to ensure that participation in the food stamp program is limited to eligible households.

Pub. L. 99–198, §1525, inserted requirement that one adult member of a household that is applying for a coupon allotment certify in writing, under penalty of perjury, the truth of the information contained in the application for the allotment.

Subsec. (e)(3). Pub. L. 99–198, §1527, struck out "only" after "verification", inserted ", household size (in any case such size is questionable,", and substituted "such other eligibility factors as the State agency determines are necessary" for "any factors of eligibility involving households that fall within the State agency's error-prone household profiles as developed by the State agency from the error rate reduction system conducted under section 2025 of this title and as approved by the Secretary".

Subsec. (e)(16). Pub. L. 99–198, §1528, substituted "fourth sentence" for "last sentence", inserted "and would be cost effective" after "integrity", and inserted provision authorizing the State agency to permit a member of a household to comply with this paragraph by presenting a photographic identification card used to receive assistance under a welfare or public assistance program.

Subsec. (e)(22). Pub. L. 99–198, §1517(b), added par. (22).

Subsec. (e)(23). Pub. L. 99–198, §1526, added par. (23).

Subsec. (e)(24). Pub. L. 99–198, §1535(b)(1), added par. (24).

Subsec. (f). Pub. L. 99–198, §1530, inserted provisions directing State agencies to encourage food stamp program participants to participate in the expanded food and nutrition education program conducted under section 343(d) of this title and any program established under sections 3175a through 3175e of this title and, at the request of personnel of such education program, allow personnel and information materials of such education program to be placed in food stamp offices.

Subsec. (g). Pub. L. 99–198, §1537(c), inserted "the State plan for automated data processing submitted pursuant to subsection (o)(2) of this section," and substituted "sections 2025(a), 2025(c), and 2025(g) of this title" for "sections 2025(a) and 2025(c) of this title".

Subsec. (i). Pub. L. 99–198, §1531(a), in cl. (2) of first sentence, inserted "applicants for or" after "members are" and substituted "informed of the availability of benefits under the food stamp program and be assisted in making a simple application to participate in such program" for "permitted to apply for participation in the food stamp program by executing a simple application", effective Oct. 1, 1986.

Pub. L. 99–198, §1507(b), inserted sentence directing that no household shall have its application to participate in the food stamp program denied nor its benefits under the food stamp program terminated solely on the basis that its application to participate has been denied or its benefits have been terminated under any of the programs carried out under the statutes specified in the second sentence of section 2014(a) of this title and without a separate determination by the State agency that the household fails to satisfy the eligibility requirements for participation in the food stamp program.

Subsec. (j). Pub. L. 99–198, §1531(b), amended subsec. (j) generally, effective Oct. 1, 1986. Prior to amendment, subsec. (j) read as follows: "The Secretary, in conjunction with the Secretary of Health and Human Services, is authorized to prescribe regulations permitting applicants for and recipients of social security benefits to apply for food stamps at social security offices and be certified for food stamp eligibility in such offices in order that the application and certification for food stamp assistance may be accomplished as efficiently and conveniently as possible."

Subsec. (o). Pub. L. 99–198, §1537(b), added subsec. (o).

**1984**-Subsec. (e)(19). Pub. L. 98–369 amended par. (19) generally. Prior to amendment, par. (19) read as follows: "that-

"(A) in any case in which information is available from agencies administering State unemployment compensation laws under section 303(d) of the Social Security Act (42 U.S.C. 503(d)), the information shall be requested and utilized by the State agency to the extent permitted under such section; or

"(B) in any case in which information is not available from agencies administering State unemployment compensation laws under section 303(d) of the Social Security Act-

"(i) information available from the Social Security Administration under section 6103(l)(7) of title 26 shall be requested and utilized by the State agency to the extent permitted under such section; or

"(ii) similar information available from other sources shall be requested and utilized by the State agency to the extent approved by the Secretary and permitted by any law controlling access to the information;".

**1983**-Subsec. (e)(19). Pub. L. 98–204 amended par. (19) generally. Prior to amendment, par. (19) read as follows: "that information available from the Social Security Administration under the provisions of section 6103(i)(7) of title 26, and information available from agencies administering State unemployment compensation laws under the provisions of section 303(d) of the Social Security Act, shall be requested and utilized by the State agency (described in section 2012(n)(1) of this title), to the extent permitted under the provisions of such sections, except that the State agency shall not be required to request such information from the Social Security Administration if such information is available from the agency administering the State unemployment compensation laws;".

**1982**-Subsec. (d). Pub. L. 97–253, §166, inserted provision that the Secretary may not, as a part of the approval process for a plan of operation, require a State to submit for prior approval by the Secretary the State agency instructions to staff, interpretations of existing policy, State agency methods of administration, forms used by the State agency, or any materials, documents, memoranda, bulletins, or other matter, unless the State determines that the materials, documents, memoranda, bulletins, or other matter alter or amend the State plan of operation or conflict with the rights and levels of benefits to which a household is entitled.

Subsec. (e)(2). Pub. L. 97–253, §167(a), struck out "points and hours of certification, and for" after "Secretary for" in last sentence.

Subsec. (e)(3). Pub. L. 97–253, §180(b)(1), substituted "section 2025(e) of this title" for "subsections (h) and (i) of section 2025 of this title" and "error rate reduction system" for "quality control program", respectively.

Subsec. (e)(7). Pub. L. 97–253, §168, substituted "an" for "any" wherever appearing and inserted provision that the Secretary may restrict the number of households which may be represented by an individual and otherwise establish criteria and verification standards for representation under this paragraph.

Subsec. (e)(8). Pub. L. 97–253, §169, substituted ", regulations issued pursuant to this chapter, Federal assistance programs, or federally assisted State programs" for "or the regulations issued pursuant to this chapter".

Subsec. (e)(9). Pub. L. 97–253, §170, added par. (9). Former par. (9), which required that the State plan of operation provide that households in immediate need because of no income as defined in section 2014(d) and (e) of this title would receive coupons on an expedited basis, was struck out.

Subsec. (e)(10). Pub. L. 97–253, §171, inserted provision that in any case in which the State agency receives from the household a written statement containing information that clearly requires a reduction or termination of the household's benefits, the State agency may act immediately to reduce or terminate

the household's benefits and may provide notice of its action to the household as late as the date on which the action becomes effective.

Subsec. (e)(13). Pub. L. 97–253, §§167(b), 190(c)(1), redesignated par. (14) as (13) and struck out former par. (13) which provided that the State plan of operation provide for compliance with standards set by the Secretary with respect to points and hours of coupon issuance.

Subsec. (e)(14) to (21). Pub. L. 97–253, §190(c)(1), redesignated pars. (14) to (22) as (13) to (21), respectively.

Subsec. (e)(22). Pub. L. 97–253, §§172, 190(c)(1), added par. (22) and redesignated it as par. (21).

Subsec. (i). Pub. L. 97–253, §§173, 189(b)(2)(A), inserted provision requiring each State agency to implement pars. (1) and (2), and permitting each such agency to implement either par. (3) or (4), or both, and substituted reference to the Secretary of Health and Human Services for former reference to the Secretary of Health, Education, and Welfare.

Subsec. (j). Pub. L. 97–253, §189(b)(2)(B), substituted reference to the Secretary of Health and Human Services for former reference to the Secretary of Health, Education, and Welfare.

Subsec. (n). Pub. L. 97–253, §174, added subsec. (n).

**1981**–Subsec. (b). Pub. L. 97–98, §1316, struck out subsec. (b) which provided that certification of a household as eligible in any political subdivision, in the event of removal of such household to another political subdivision in which the food stamp program is operating, remains valid for participation in the food stamp program for a period of sixty days from the date of such removal.

Subsec. (e)(1). Pub. L. 97–35 added cl. (A) and redesignated cl. (C) as (B). Former cls. (A) and (B), relating to informing low-income households about the program, and conducting other outreach activities, respectively, were struck out.

Subsec. (e)(2). Pub. L. 97–98, §1317, inserted provision that the application contain in understandable terms and in prominent and boldface lettering a statement that the information provided by the applicant is subject to verification and if incorrect the applicant may be subject to denial of food stamps and criminal prosecution.

Subsec. (e)(4). Pub. L. 97–98, §1318, substituted "prior to" for "immediately prior to or at" and "advising the household" for "advising it".

Subsec. (e)(8). Pub. L. 97–98, §1319, inserted provision that such safeguards not prevent the use or disclosure of such information to the Comptroller General of the United States for audit and examination authorized by any other provision of law and that, notwithstanding any other provision of law, all information obtained under this chapter from an applicant household be available to local, State, or Federal law enforcement officials for the purpose of investigating an alleged violation of this chapter or any regulation issued under this chapter.

Subsec. (e)(11). Pub. L. 97–98, §1320(a), inserted provision that allotments not be restored for any period of time more than one year prior to the date the State agency receives a request for such restoration from a household or the State agency is notified or otherwise discovers that a loss to a household has occurred.

Subsec. (e)(20), (21). Pub. L. 97–98, §1321, added pars. (20) and (21).

Subsec. (f). Pub. L. 97–98, §1322, substituted "is authorized to extend food and nutrition education to reach food stamp participants, using methods and techniques developed in the expanded food and nutrition education and other programs" for "shall extend the expanded food and nutrition education program to the greatest extent possible to reach food stamp program participants" and struck out provision that the program be supplemented by the development of single concept printed materials, specifically designed for persons with low reading and comprehension levels, on how to buy and prepare more nutritious and economical meals and on the relationship between food and good health.

Subsec. (m). Pub. L. 97–98, §1323, added subsec. (m).

**1980**–Subsec. (e)(3). Pub. L. 96–249, §116, inserted "(in part through the use of the information, if any, obtained under subsections (h) and (i) of section 2025 of this title)" after "section 2014(d) of this title" and "although the State agency may verify prior to certification, whether questionable or not, the size of any applicant household and any factors of eligibility involving households that fall within the State agency's error-prone household profiles as developed by the State agency from the quality control program conducted under section 2025 of this title and as approved by the Secretary" after "sections 2014 and 2015 of this title,".

Subsec. (e)(4). Pub. L. 96–249, §113, inserted proviso that the timeliness standards for submitting the notice of expiration and filing an application for recertification may be modified by the Secretary in light of sections 2014(f)(2) and 2015(c) of this title if administratively necessary.

Subsec. (e)(17) to (19). Pub. L. 96–249, §§117–119, added pars. (17) to (19).

Subsec. (g). Pub. L. 96–249, §120, inserted ", upon information received by the Secretary, investigation initiated by the Secretary, or investigation that the Secretary shall initiate upon receiving sufficient information evidencing a pattern of lack of compliance by a State agency of a type specified in this

subsection," after "the Secretary determines", "without good cause" after "to comply", "or the Secretary's standards for the efficient and effective administration of the program established under section 2025(b)(1) of this title" after "subsection (d) of this section,", and ", and whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds authorized under sections 2025(a) and (c) of this title as the Secretary determines to be appropriate, subject to administrative and judicial review under section 2023 of this title" after "relief shall issue".

Subsec. (i)(2). Pub. L. 96–249, §122, substituted "simple application" for "simplified affidavit".

Subsec. (l). Pub. L. 96–249, §123, added subsec. (l).

**1977**-Pub. L. 95–113 substituted revised provisions relating to the administration of the program for provisions relating to the disqualification of retail stores and wholesale concerns which are now covered by section 2021 of this title.

### EFFECTIVE DATE OF 2004 AMENDMENT

Amendment by Pub. L. 108–265 effective July 1, 2005, see section 502(b)(4) of Pub. L. 108–265, set out as an Effective Date note under section 1754 of Title 42, The Public Health and Welfare.

### EFFECTIVE DATE OF 2002 AMENDMENT

Pub. L. 107–171, title IV, §4114(b), May 13, 2002, 116 Stat. 314 , provided that: "The amendments made by this section [amending this section] take effect 18 months after the date of enactment of this Act [May 13, 2002]."

Amendment by sections 4115(a) and 4116(a) of Pub. L. 107–171 effective Oct. 1, 2002, except as otherwise provided, see section 4405 of Pub. L. 107–171, set out as an Effective Date note under section 1161 of Title 2, The Congress.

### EFFECTIVE DATE OF 1998 AMENDMENT

Pub. L. 105–379, §1(c), Nov. 12, 1998, 112 Stat. 3399 , provided that: "This section [amending this section and enacting provisions set out as a note below] and the amendments made by this section take effect on June 1, 2000."

### EFFECTIVE DATE OF 1997 AMENDMENT

Section 1003(a)(3) of Pub. L. 105–33 provided that:

"(A) IN GENERAL.-Except as provided in subparagraph (B), the amendments made by this subsection [amending this section] shall take effect on the date that is 1 year after the date of enactment of this Act [Aug. 5, 1997].

"(B) EXTENSION.-The Secretary of Agriculture may grant a State an extension of time to comply with the amendments made by this subsection, not to exceed beyond the date that is 2 years after the date of enactment of this Act, if the chief executive officer of the State submits a request for the extension to the Secretary-

"(i) stating the reasons why the State is not able to comply with the amendments made by this subsection by the date that is 1 year after the date of enactment of this Act;

"(ii) providing evidence that the State is making a good faith effort to comply with the amendments made by this subsection as soon as practicable; and

"(iii) detailing a plan to bring the State into compliance with the amendments made by this subsection as soon as practicable but not later than the date of the requested extension."

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–296 effective Mar. 31, 1995, see section 110(a) of Pub. L. 103–296, set out as a note under section 401 of Title 42, The Public Health and Welfare.

### EFFECTIVE DATE OF 1993 AMENDMENT

Amendment by Pub. L. 103–66 effective, and to be implemented beginning on, Oct. 1, 1993, see section 13971(a) of Pub. L. 103–66, set out as a note under section 2025 of this title.

### EFFECTIVE DATE OF 1991 AMENDMENT

Amendment by Pub. L. 102–237 effective and to be implemented no later than Feb. 1, 1992, see section 1101(d)(1) of Pub. L. 102–237, set out as a note under section 1421 of this title.

### EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by sections 1736(1), 1737, 1738, 1740, and 1741 of Pub. L. 101–624 effective and implemented first day of month beginning 120 days after publication of implementing regulations to be

promulgated not later than Oct. 1, 1991, amendment by section 1736(2) of Pub. L. 101–624 effective and implemented first day of month beginning 120 days after promulgation of implementing regulations to be promulgated not later than Apr. 1, 1991, and amendment by sections 1739 and 1763(b) of Pub. L. 101–624 effective Nov. 28, 1990, see section 1781(a), (b)(2), (3) of Pub. L. 101–624, set out as a note under section 2012 of this title.

### Effective Date of 1988 Amendment

Amendment by Pub. L. 100–435 to be effective and implemented on July 1, 1989, except that amendment by sections 204(a), 310, 311, 321(a), 322, 323, and 352 of Pub. L. 100–435 to become effective and implemented on Oct. 1, 1989, if final order is issued under section 902(b) of Title 2, The Congress, for fiscal year 1989 making reductions and sequestrations specified in the report required under section 901(a)(3)(A) of Title 2, see section 701(b)(4), (c)(2) of Pub. L. 100–435, set out as a note under section 2012 of this title.

### Effective Date of 1987 Amendment

Section 809(b) of Pub. L. 100–77 provided that: "The amendments made by this section [amending this section] shall become effective and be implemented as soon as the Secretary of Agriculture determines is practicable after the date of enactment of this Act [July 22, 1987], but not later than 160 days after the date of enactment of this Act."

### Effective Date of 1985 Amendment

Section 1531(a), (b) of Pub. L. 99–198 provided that the amendments made by that section are effective Oct. 1, 1986.

### Effective Date of 1984 Amendment

Amendment by Pub. L. 98–369 effective Apr. 1, 1985, unless a waiver has been granted to a State to delay effective date but in no event beyond Sept. 30, 1986, see section 2651(l)(2) of Pub. L. 98–369, set out as a note under section 1320b–7 of Title 42, The Public Health and Welfare.

### Effective Date of 1982 Amendment

Amendments by sections 166 to 174, 189(b)(2), and 190(c)(1) of Pub. L. 97–253 effective Sept. 8, 1982, see section 193(a) of Pub. L. 97–253, set out as a note under section 2012 of this title.

Amendment by section 180(b)(1) of Pub. L. 97–253 effective Oct. 1, 1982, see section 193(b) of Pub. L. 97–253, set out as a note under section 2012 of this title.

### Effective Date of 1981 Amendments

Amendment by Pub. L. 97–35 effective on earlier of Sept. 8, 1982, or date such amendment became effective pursuant to section 117 of Pub. L. 97–35, set out as a note under section 2012 of this title, see section 192(a) of Pub. L. 97–253, set out as a note under section 2012 of this title.

Amendment by Pub. L. 97–98 effective on earlier of Sept. 8, 1982, or date such amendment became effective pursuant to section 1338 of Pub. L. 97–98, set out as a note under section 2012 of this title, see section 192(b) of Pub. L. 97–253, set out as a note under section 2012 of this title.

Amendment by Pub. L. 97–98 effective upon such date as Secretary of Agriculture may prescribe, taking into account need for orderly implementation, see section 1338 of Pub. L. 97–98, set out as a note under section 2012 of this title.

Amendment by Pub. L. 97–35 effective and implemented upon such dates as Secretary of Agriculture may prescribe, taking into account need for orderly implementation, see section 117 of Pub. L. 97–35, set out as a note under section 2012 of this title.

### Effective Date of 1977 Amendment

Section 1301 of Pub. L. 95–113 provided that the amendment made by that section is effective Oct. 1, 1977.

### Regulations

Secretary of Agriculture to promulgate regulations necessary to implement amendment of this section by Pub. L. 105–33, not later than one year after Aug. 5, 1997, see §1005(a) of Pub. L. 105–33 set out as a note under section 2015 of this title.

### Abolition of Immigration and Naturalization Service and Transfer of Functions

For abolition of Immigration and Naturalization Service, transfer of functions, and treatment of related references, see note set out under section 1551 of Title 8, Aliens and Nationality.

## REPORT

Pub. L. 105–379, §1(b), Nov. 12, 1998, 112 Stat. 3399 , provided that: "Not later than September 1, 2000, the Secretary of Agriculture shall submit a report regarding the progress and effectiveness of the cooperative arrangements entered into by State agencies under section 11(r) of the Food Stamp Act of 1977 (7 U.S.C. 2020(r)) (as added by subsection (a)) to-

"(1) the Committee on Agriculture of the House of Representatives;

"(2) the Committee on Agriculture, Nutrition, and Forestry of the Senate;

"(3) the Committee on Ways and Means of the House of Representatives;

"(4) the Committee on Finance of the Senate; and

"(5) the Secretary of the Treasury."

## AUDIT OF SIMPLIFIED FOOD STAMP APPLICATION AT SOCIAL SECURITY ADMINISTRATION OFFICES

Section 1742 of Pub. L. 101–624 directed Comptroller General to conduct an audit of programs established under 7 U.S.C. 2020(i) and (j) under which an applicant for or recipient of social security benefits may make or be provided a simple application to participate in the food stamp program at social security offices, and, not later than Dec. 31, 1991, deliver a report on results of study to Committee on Agriculture of House of Representatives, Committee on Agriculture, Nutrition, and Forestry of Senate, and Special Committee on Aging of Senate.

## EX. ORD. NO. 12116. ISSUANCE OF FOOD STAMPS BY POSTAL SERVICE

Ex. Ord. No. 12116, Jan. 19, 1979, 44 F.R. 4647, provided:

By the authority vested in me as President of the United States of America by Section 11(k) of the Food Stamp Act of 1977 (91 Stat. 974; 7 U.S.C. 2020(k)), the United States Postal Service is hereby granted approval for post offices in all or part of any State to issue food stamps to eligible households, upon request by the appropriate State agency, as defined in Section 3(n) of the Food Stamp Act of 1977 (91 Stat. 960; 7 U.S.C. 2012(n)).

JIMMY CARTER.

# EXHIBIT C

(2) by striking "and (B) use" and inserting "and

"(B) comply with regulations of the Secretary requiring the use of".

### SEC. 4119. STATE OPTION FOR TELEPHONIC SIGNATURE.

Section 11(e)(2)(C) of the Food and Nutrition Act of 2008 (7 U.S.C. 2020(e)(2)(C)) is amended—

(1) by striking "(C) Nothing in this Act" and inserting the following:

"(C) ELECTRONIC AND AUTOMATED SYSTEMS.—

"(i) IN GENERAL.—Nothing in this Act"; and

(2) by adding at the end the following:

"(ii) STATE OPTION FOR TELEPHONIC SIGNATURE.— A State agency may establish a system by which an applicant household may sign an application through a recorded verbal assent over the telephone.

"(iii) REQUIREMENTS.—A system established under clause (ii) shall—

"(I) record for future reference the verbal assent of the household member and the information to which assent was given;

"(II) include effective safeguards against impersonation, identity theft, and invasions of privacy;

"(III) not deny or interfere with the right of the household to apply in writing;

"(IV) promptly provide to the household member a written copy of the completed application, with instructions for a simple procedure for correcting any errors or omissions;

"(V) comply with paragraph (1)(B);

"(VI) satisfy all requirements for a signature on an application under this Act and other laws applicable to the supplemental nutrition assistance program, with the date on which the household member provides verbal assent considered as the date of application for all purposes; and

"(VII) comply with such other standards as the Secretary may establish.".

### SEC. 4120. PRIVACY PROTECTIONS.

Section 11(e)(8) of the Food and Nutrition Act of 2008 (7 U.S.C. 2020(e)(8)) is amended—

(1) in the matter preceding subparagraph (A)—

(A) by striking "limit" and inserting "prohibit"; and

(B) by striking "to persons" and all that follows through "State programs";

(2) by redesignating subparagraphs (A) through (E) as subparagraphs (B) through (F), respectively;

(3) by inserting before subparagraph (B) (as so redesignated) the following:

"(A) the safeguards shall permit—

"(i) the disclosure of such information to persons directly connected with the administration or enforcement of the provisions of this Act, regulations issued pursuant to this Act, Federal assistance programs, or federally-assisted State programs; and

"(ii) the subsequent use of the information by persons described in clause (i) only for such administration or enforcement;"; and

(4) in subparagraph (F) (as so redesignated) by inserting "or subsection (u)" before the semicolon at the end.

**SEC. 4121. PRESERVATION OF ACCESS AND PAYMENT ACCURACY.**

Section 16 of the Food and Nutrition Act of 2008 (7 U.S.C. 2025) is amended by striking subsection (g) and inserting the following:

"(g) COST SHARING FOR COMPUTERIZATION.—

"(1) IN GENERAL.—Except as provided in paragraphs (2) and (3), the Secretary is authorized to pay to each State agency the amount provided under subsection (a)(6) for the costs incurred by the State agency in the planning, design, development, or installation of 1 or more automatic data processing and information retrieval systems that the Secretary determines—

"(A) would assist in meeting the requirements of this Act;

"(B) meet such conditions as the Secretary prescribes;

"(C) are likely to provide more efficient and effective administration of the supplemental nutrition assistance program;

"(D) would be compatible with other systems used in the administration of State programs, including the program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.);

"(E) would be tested adequately before and after implementation, including through pilot projects in limited areas for major systems changes as determined under rules promulgated by the Secretary, data from which shall be thoroughly evaluated before the Secretary approves the system to be implemented more broadly; and

"(F) would be operated in accordance with an adequate plan for—

"(i) continuous updating to reflect changed policy and circumstances; and

"(ii) testing the effect of the system on access for eligible households and on payment accuracy.

"(2) LIMITATION.—The Secretary shall not make payments to a State agency under paragraph (1) to the extent that the State agency—

"(A) is reimbursed for the costs under any other Federal program; or

"(B) uses the systems for purposes not connected with the supplemental nutrition assistance program.".

**SEC. 4122. FUNDING OF EMPLOYMENT AND TRAINING PROGRAMS.**

Section 16(h)(1)(A) of the Food and Nutrition Act of 2008 (7 U.S.C. 2025(h)(1)(A)) is amended in subparagraph (A), by striking "to remain available until expended" and inserting "to remain available for 15 months".