ROB BONTA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
ANDREW Z. EDELSTEIN
ANNA RICH
EDWARD P. WOLFE
SEBASTIAN BRADY
ROBIN GOLDFADEN
WILLIAM BELLAMY
MARIA F. BUXTON
Deputy Attorneys General
State Bar No. 318563
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3873
Fax: (415) 703-5480
E-mail: Maria.Buxton @doj.ca.gov
*Attorneys for Plaintiff State of California*

*Additional counsel listed on signature page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; **STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; OFFICE OF THE GOVERNOR** ex rel. Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; **STATE OF RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN,** | Case No. **3:25-cv-06310-MMC**<br><br>**PLAINTIFF STATES' RESPONSE TO USDA'S SUPPLEMENTAL OPPOSITION PURSUANT TO COURT ORDER, ECF NO. 83**<br><br>Date: October 9, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

Plaintiffs,

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**

Defendants.

## INTRODUCTION

The Court's Order permitted USDA "to address, in the event a preliminary injunction is granted, any form of relief as an alternative to that granted in the Temporary Restraining Order." ECF No. 83 (TRO) at 18. USDA devotes less than three pages of its brief to that issue. The remainder is spent arguing that no preliminary injunction ("PI") should issue, based, yet again, on new arguments that it has effectively waived by failing to include them in its original opposition. USDA's arguments are unconvincing in any event.

The narrower injunction USDA proposes, focusing only on Routine Uses 8 and 11 in its System of Records Notice ("SORN"), does not fit the wrong or the injury that the Court has identified. While Routine Uses 8 and 11 do go beyond the limits of the SNAP Act, such a narrow injunction would not, by itself, adequately maintain the status quo between the parties. Nor would it provide Plaintiffs complete and meaningful relief, not least because such a limited injunction would permit USDA to continue pressing its demand for Plaintiffs' SNAP data and disallow over a billion dollars in federal funds. It would also be unworkable, as it would give USDA blanket discretion to determine, behind closed doors, what the SNAP Act permits—a legal dispute at the heart of this litigation. Instead, the Court should issue the PI that Plaintiffs proposed in their motion, which, consistent with the Court's TRO, would enjoin USDA from enforcing its demand against Plaintiffs, including by disallowing funds, and would keep the sensitive SNAP data at issue in Plaintiffs' possession during this litigation.

USDA's new arguments that no PI should issue, should the Court consider them, also fail. They rely primarily on vague assurances that USDA intends to follow the law. These assurances are inconsistent with USDA's initial statements, in the SORN and elsewhere, that it intends to use the data in ways barred by statute. Moreover, such assurances have little weight when a central dispute between the parties is what uses of the data are permitted under the SNAP Act. USDA further argues that the injunction *it proposed* would be improper, because Plaintiffs lack statutory standing under the Privacy Act, but Plaintiffs' PI motion did not rely on their Privacy Act claim. Lastly, USDA submits another declaration describing potential fraud it claims to have identified by analyzing SNAP data received from other States. The vague and conclusory

statements in USDA's declaration raise more questions than they answer and should have no bearing on the Court's analysis. The Court should reject USDA's attempts to relitigate issues already decided at the TRO stage, and enter a preliminary injunction that, like the TRO, bars USDA from acting on its formal warning letters and punishing Plaintiff States that have not complied with the demand.

## ARGUMENT

### I. THE COURT SHOULD NOT LIMIT ITS INJUNCTION AS USDA PROPOSES.

#### A. A PI barring enforcement of the underlying demand for data is necessary to preserve the status quo and fits both the wrong and the injury at issue.

"[D]istrict courts enjoy 'broad latitude' when determining the scope of an injunction," and a court does "not breach that broad latitude" where it issues a PI that is crafted to "preserv[e] the status quo and prevent[] irreparable loss of rights before judgment," even if that means issuing an injunction that is not the narrowest possible form of relief. *SEC v. Liu*, 851 F. App'x 665, 669 (9th Cir. 2021) (holding PI freezing all of defendant's assets, even those not at issue in litigation, was permissible, because it preserved the status quo, and the court was not required to "tailor a narrower freeze" prior to adjudication of the merits) (quoting *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641–42 (9th Cir. 2004)). USDA ignores these basic principles in arguing that any PI must be limited to prohibiting "disclosures pursuant to SORN Routine Uses 8 and 11 for purposes other than those permitted by statute," "but not limit data gathering or prevent USDA from . . . disallowing federal funds in response to the States' failure to comply," ECF 90 (Suppl. Opp'n) at 3.

First, Plaintiffs' proposed PI (and the Court's TRO), which temporarily bar USDA from enforcing its unlawful demand, is necessary to remedy both the wrong *and* the injury that Plaintiffs have established. As for the wrong, this Court found that because States are, "in effect, prohibited from disclosing [SNAP applicant data] where the recipient announces in advance an intent to use it for some [] purpose" other than what the SNAP Act allows, and because USDA announced precisely such an intent, including in the SORN, Plaintiffs "have shown a likelihood of success on their claim that USDA, in making such demand, acted in a manner contrary to law."

ECF No. 83 (TRO) at 12. In other words, it is the *demand* that is likely contrary to law, not just the enforcement of that demand, or the use of the data as described in Routine Uses 8 and 11. Merely enjoining Routine Uses 8 and 11 would not sufficiently right that wrong, including because it would allow USDA to proceed with its draconian punishment of States that rightly refused its original, unlawful demand. And because, as explained further below, it would do nothing to assure that USDA does not disclose the demanded data in ways that violate the SNAP Act. *See, infra*, § II.A. Indeed, the SORN merely reveals USDA's intent to share data in ways prohibited by the SNAP Act, and it is hardly the only evidence of that intent.[1]

As for the injury at issue, as the Court found in its TRO, "USDA has formally warned it will disallow" "substantial" SNAP funding, which will force Plaintiffs "to cut staffing and otherwise greatly reduce their ability to comply with their obligations under the SNAP Act to administer benefits." TRO at 14. The Court's TRO (and Plaintiffs' proposed PI) are tailored to prevent that injury, by narrowly enjoining USDA from "acting on its formal warning letters" and punishing Plaintiffs for refusing to comply with its unlawful demand, including by "disallowing SNAP funding." *Id.* at 17–18. USDA's proposal, in sharp contrast, would "allow suspension or disallowance of federal funds" and therefore do nothing to prevent Plaintiffs' irreparable harm. Suppl. Opp. at 4. Such an injunction would be patently inequitable; Plaintiff States should not have their SNAP programs decimated because they did not comply with an unlawful demand for data, when such compliance likely would have violated the SNAP Act, as this Court found.[2]

Second, barring enforcement of the demand itself is necessary to preserve the status quo—the fundamental "purpose of a preliminary injunction." *Lackey v. Stinnie*, 604 U.S. 192, 200–01 (2025) (citation omitted); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). As the Court rightly decided, preserving the status quo here requires keeping the data in

[1] For example, USDA has repeatedly made clear that it is trying to effectuate the Information Silos Executive Order, *see, e.g.* ECF No. 59-7 (Gillette Decl.) Exs. B–E, which directs agency heads to "authoriz[e] and facilitat[e] both the intra- and *inter-agency* sharing" of "unclassified agency records" and to ensure "the Federal Government" writ large "has unfettered access to comprehensive data from all State programs that receive Federal funding." Exec. Order No. 14243, 90 Fed. Reg. 13,681, 13,681 (March 20, 2025) (emphasis added).

[2] The Court, of course, may also still find that an agreed upon data and security protocol is required by 7 U.S.C. § 2020(a)(3)—an issue it has yet to decide—in which case USDA's limited injunction certainly wouldn't fit the wrong or the injury established by Plaintiffs.

Plaintiff States' hands and preventing any disallowance of federal funds while the litigation is pending. USDA's proposal would force Plaintiffs to either turn over the SNAP data or suffer the disallowance of over a billion dollars in federal funding, either of which would be a dramatic change in the status quo and have irreversible effects.[3]

**B. USDA's proposal would not preserve the status quo and is unworkable.**

In addition to upending the status quo and exposing States to draconian penalties, USDA's proposal would be unworkable, because it would give USDA—not the Court—the discretion to decide what "administrative and enforcement purposes" are "permitted by" the SNAP Act without any need to inform Plaintiffs how their data is being used. Suppl. Opp'n at 3; *cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). USDA is not suggesting that the Court enjoin the Routine Uses in their entirety (which would alone be inadequate relief), but rather only enjoin "those disclosures for purposes *other than* those permitted by the [SNAP Act]." *Id.* (emphasis added).

In other words, USDA asks the Court to issue a "follow the law" injunction, and simply trust that USDA will interpret the law correctly when handling Plaintiffs' most sensitive SNAP data, even though the very question of what data uses are permitted under the SNAP Act is disputed in this litigation. Injunctions that simply refer to other laws are not sufficiently definite and are disfavored. *See* Fed. R. Civ. P. 65(d)(1); *Del Webb Communities Inc. v. Partington*, 652 F.3d 1145, 1149–50 (9th Cir. 2011). And such an injunction would be especially inappropriate here. USDA has given this Court no reason to believe that its interpretation of the law will be correct. The very fact that USDA drafted its Routine Uses so broadly in the first place is evidence it believes such broad uses *are* "authorized" by the SNAP Act. Indeed, USDA doubles down on this belief in its brief, saying it "disagrees with" the Court's reading of the Routine Uses

[3] Lest there be any doubt that, should the Court issue a more limited injunction, USDA will proceed with the draconian disallowances it has threatened, one need only look at the experience of Plaintiff State Pennsylvania. When Pennsylvania offered to "provide USDA with the data it demanded on a defined schedule once USDA confirmed that it would not use the data as described in Routine Uses 8 and 11 and once the parties agreed on data security protocols," USDA immediately rejected the proposal and, the following day, issued a formal Notice of Disallowance of over $115 million in federal funding for every quarter until Pennsylvania complied with USDA's demand. *See* ECF No. 88 (PA Suppl. Br. iso Mot. to Amend TRO) at 4–5 (citing ECF No. 88-1 (Pham Decl.) ¶¶ 32–34).

as including "certain possible disclosures" that would be contrary to § 2020(e)(8)(A). *Id.* at 3. If the agency does not believe *any* of the uses described in Routine Uses 8 and 11 violate the SNAP Act, it is effectively suggesting the Court enjoin it from nothing. *Id.*[4]

## II. USDA'S NEW ARGUMENTS AND EVIDENCE SHOULD BE STRICKEN OR REJECTED.

Defendants' arguments that "the Court should not enter any injunction in this matter," Suppl. Opp'n at 4–8, and the supporting Supplemental Declaration of Shiela Corley, are outside the scope of this Court's order permitting supplemental briefing on USDA's last-minute proposal for a narrowed injunction. *See* TRO at 18. The Court should therefore strike them from the record. *See Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1074 n.7 (N.D. Cal. 2012) (granting motion to strike "plaintiff's declarations and related portions of plaintiff's supplemental brief as outside of the scope of this Court's order directing further briefing"); *see also Ferguson v. Schwarzenegger*, No. C 04-2565 SI, 2007 WL 120840 at *1 n.1 (N.D. Cal. Jan. 11, 2007) (declining to consider "supplemental brief [that] raised a number of contentions outside the scope of the Court's order directing further briefing"). In any case, the arguments are meritless for the reasons below.

### A. USDA's assurances about its intended uses of the SNAP data are woefully inadequate.

The Court properly concluded that the SORN (including Routine Uses 8 and 11) evidenced USDA's intent to use the Plaintiff States' SNAP data in a manner prohibited by the SNAP Act. TRO at 11–12. USDA's new assertion that it only intends to "utilize Routine Uses 8 and 11 for the purpose of 'ensur[ing] the integrity of Government programs'" provides no basis for revising this conclusion. Suppl. Opp'n at 5. USDA's argument runs afoul of the basic proposition that

[4] Moreover, other agencies in the federal government that, like USDA, have been tasked with implementing the President's Information Silos Executive Order, have wrongly interpreted, and exceeded the bounds of, the law when it comes to sensitive state data. *See* ECF No. 59 (Prelim. Inj. Mot.) at 9, 12–13. For example, the U.S. Health and Human Services Agency, when entrusted with troves of state Medicaid data, secretly provided Immigration and Customs Enforcement ("ICE") with unfettered access to that data for the purpose of immigration enforcement, a move that was later enjoined. *Id.*; *California v. HHS*, No. 25-cv-5536-VC, 2025 WL 2356224, at *2 (N.D. Cal. Aug. 12, 2025). Here, USDA's assurances provide no insight into what USDA would do if presented with a similar request for SNAP data from ICE.

"judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Migrant Clinicians Network v. EPA*, 88 F.4th 830, 845 (9th Cir. 2023) (cleaned up). USDA's argument is also seriously flawed on many levels.

***First***, as a matter of law, a defendant cannot simply moot a claim by voluntarily ceasing the unlawful conduct, unless it can show "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). USDA has not even attempted to make that showing here, nor could it.

***Second***, and more fundamentally, USDA's equivocal assurances fall short of addressing the Court's concerns. USDA's counsel's statement that the agency intends to disclose SNAP data as described in Routine Uses 8 and 11 but "only to the extent authorized by the [SNAP Act]," is exceedingly vague. Suppl. Opp'n at 5. Even more telling is what USDA does *not* say: Its counsel claims the agency will use the data as described in Routine Uses 8 and 11 "only for administrative and enforcement purposes" but avoids saying *what*, exactly, it would be administering and *which* laws it intends to enforce, aside from SNAP and the SNAP Act. *Id.* at 3. The agency claims it plans to amend its SORN in 30 days[5] to clarify that it intends to comply with the SNAP Act,[6] but provides no specifics about that amendment, except to say that it will remove "foreign governments" from Routine Use 8. ECF No. 90-1 (Suppl. Corley Decl.) ¶¶ 11–12. And nowhere does USDA disavow its intent to use States' SNAP data for immigration enforcement, including against parents who sought SNAP only for their U.S.-citizen children, nor its intent to disclose this data to the Department of Government Efficiency ("DOGE"), both of which were raised in Plaintiffs' preliminary injunction motion and would violate 7 U.S.C. § 2020(e)(8)(A)(ii) in Plaintiffs' view, but perhaps not USDA's. *See* Prelim. Inj. Mot. at 12–15.

USDA's promises to amend the SORN, and use SNAP data only in compliance with the law, are particularly insufficient given its pattern of "act first, ask questions later" behavior.

[5] If the Court is persuaded that this amendment changes anything (it does not), it should, at the very least, convert its TRO to a PI while that amendment is pending.

[6] USDA concedes in its declaration that this clarification was prompted by multiple public comments raising alarm that the SORN authorizes disclosures not permitted by the SNAP Act—comments which the agency appears to have ignored until now, instead demanding that States provide the demanded data the day after those comments were due and punishing noncompliance. *See* Suppl. Corley Decl. ¶ 10.

USDA began its campaign to take States' data by going around the States and reaching out to third-party payment processors. USDA tried to compel States' consent to this demand without following procedures required by law, including publishing a SORN. When sued by private plaintiffs, USDA recanted its initial demand and promulgated its SORN, conceding it had failed to meet that requirement. *See* Decl. of Shiela Corley ¶ 14, *Pallek v. Rollins*, No. 1:25-cv-1650 (ECF No. 11-1) (D.D.C. May 30, 2025). Now, after the PI motion in this case has been fully briefed, USDA argues the SORN cannot be taken at face value and claims it will amend it in a month or so, but argues it should nonetheless be permitted to punish States for not complying with the demand it made in conjunction with that SORN. The Court should not entertain these tactics.

***Finally***, even if the Court ignores the myriad problems with USDA's position and concludes that USDA no longer intends to use Plaintiff States' SNAP data for impermissible purposes, a PI extending the Court's TRO would still be warranted. What USDA *now* claims it intends to do with the data (which remains unclear) does nothing to change the Court's finding that, when USDA demanded SNAP data from Plaintiff States, the available evidence indicated that USDA intended to use the data in violation of the SNAP Act. *See* TRO at 12 ("As Plaintiff States are . . . permitted to disclose such information only for the limited purposes discussed above, they are, in effect, prohibited from disclosing it where the recipient announces in advance an intent to use it for some other purpose."). Plaintiff States were therefore justified in refusing to comply with USDA's demand, as this Court found. *Id.* Nor does it change the fact that Plaintiff States face serious irreparable injury if the Court does not issue a preliminary injunction. USDA has made it clear it intends to decimate the administrative funding of Plaintiff States for not complying with a demand this Court has found was likely unlawful.[7] And, if Plaintiffs are forced to turn over their SNAP data without a full adjudication of USDA's legal authority to demand,

[7] For the same reasons, if the Court declines to enter a preliminary injunction, it should, at the very least, enter an order under 7 U.S.C. § 705 resetting the deadlines that USDA set for compliance with its demand, and prohibit USDA from disallowing funds until Plaintiffs have been given a reasonable time to comply. Otherwise, USDA will likely proceed with disallowing federal funds, without giving Plaintiffs a chance to comply with their demand, as demonstrated by the agency's actions taken against Plaintiff Pennsylvania. That result would be inequitable.

use, and share that data, Plaintiffs' SNAP programs would still suffer from the irreparable chilling effect described in their PI motion. *See* Prelim. Inj. Mot. at 23–24. Similarly, it would be virtually impossible for the Court to undo USDA's possession of the data once Plaintiffs are forced to turn it over, should the Court ultimately find USDA is not authorized to collect the data.

### B. USDA's argument about statutory standing under the Privacy Act is unrelated to Plaintiffs' PI motion.

Next, USDA argues that the Court should not enter a PI because Plaintiffs lack standing under the Privacy Act, 5 U.S.C. § 552a, another argument it failed to raise in their PI opposition. Suppl. Opp'n at 6. USDA's new argument about the Privacy Act is a red herring. Plaintiffs' PI motion (and the Court's TRO) were based in relevant part on Plaintiffs' claim, brought under the APA, that USDA's actions were contrary to "the SNAP Act and its implementing regulations" (not the Privacy Act). *See* Prelim. Inj. Mot. at 24; TRO at 12 ("Plaintiff States are likely to show *the SNAP Act* prohibits them from disclosing to USDA the information demanded [and] consequently, that they have shown a likelihood of success on their claim that USDA, in making such demand, acted in a manner contrary to law." (emphasis added)).

Moreover, whether the plaintiffs have statutory "standing" under the Privacy Act is unrelated to the jurisdictional requirement of standing under Article III. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). Plaintiffs unquestionably have Article III standing. *See, e.g.*, *Larson v. Valente*, 456 U.S. 228, 241 (1982) (reporting requirements backed by penalties amount to Article III injury). Absent an injunction, Plaintiffs face irreparable injury from USDA's actions taken in violation of the SNAP Act, including a chilling effect on SNAP participation in their States and cuts to federal funding for their SNAP programs. *See* Prelim. Inj. Mot. at 21–24; *see also* TRO at 14–15. This imminent irreparable harm is more than sufficient to afford Plaintiffs Article III standing to pursue their APA claims.[8]

[8] Nevertheless, Plaintiffs do have statutory standing to pursue their APA claim based on violations of the Privacy Act and will demonstrate this at the appropriate juncture. *See* ECF No. 84 (Am. Compl.) ¶¶ 313–19 (APA claim citing Privacy Act), ¶¶ 247, 295, 341, 253–62 (describing trust in government that will be destroyed by disclosure of SNAP data for non-SNAP purposes, in violation of the Privacy Act); *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987) (test for APA prudential standing is "not meant to be especially demanding").

## III. USDA's New "Findings" About Errors in SNAP Administration Lack Any Context and Should Not Affect the Court's Balancing of the Harms.

In its TRO, the Court rightly held that the substantial and irreparable harms faced by the Plaintiff States far outweigh any purported harm to "the Executive Branch's desire to enact a policy." TRO at 16 (quoting *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 985 (9th Cir. 2025)). To challenge that conclusion, USDA submits another declaration with a "preliminary snapshot" of its "findings" based on data received from other States. *See* Suppl. Corley Decl. ¶¶ 4–8. Nothing in USDA's declaration should affect the Court's finding.[9]

For starters, USDA's new declaration does not suggest that the public interest will be harmed by delaying USDA's review of Plaintiff States' SNAP data until after this lawsuit is concluded and the parties' rights have been determined. Much of the data USDA demands is already years' old. Gillette Decl. Ex. D (July 23, 2025, letter demanding data "from January 1, 2020, through present date"). If USDA's goal is merely to identify problems in that data, it will be equally able to do so after this lawsuit, should it prevail on the merits; in the meantime, it can analyze the substantial data already available to it.[10]

Moreover, USDA's purported "evidence" of potential errors or fraud is so vague that it cannot fairly be used to determine the equities on Plaintiffs' motion. For example, the Supplemental Corley Declaration states that USDA's analysis of non-Plaintiff States' data has identified "300,000 potential instances of *deceased* individuals" enrolled in SNAP. Suppl. Corley Decl. ¶ 6. USDA provides no context for this number, not even a total number of SNAP participants included in the analysis. The statement also ignores legitimate reasons why a SNAP recipient may match a death record entry, such as the fact that federal regulations *require* that States independently verify every death record match to determine their accuracy, including by providing the recipient household with notice and an opportunity to respond prior to terminating benefits on this basis. *See* Suppl. Garcia Decl. ¶ 14 (citing 7 C.F.R. § 272.14(c)(3) and (4)). This

[9] If the Court is inclined to credit this new "evidence," which it should not, it should at the very least afford Plaintiffs expedited discovery into USDA's assertions before ruling on the PI.

[10] This lack of urgency is even more salient now that funding for USDA has lapsed, presumably preventing any further analysis of the SNAP data USDA hopes to obtain from Plaintiff States. *See* ECF No. 95 (USDA's Mot. for Stay) ¶ 1.

mandatory process causes a delay between a death being recorded and SNAP benefits being terminated. *Id.* ¶¶ 13–15. Thus, USDA's suggestion that this data point alone is evidence of lax State administration of SNAP or fraud is unfounded. *See id.*; *see also id.* ¶¶ 8–11, 17–18 (describing legitimate reasons why duplicate benefits and SNAP participant records without SSNs may occur); Suppl. Reagan Decl. ¶¶ 19–20 (explaining why disqualified individuals receiving benefits may appear without error or fraud). Notably, the agency's analysis has only found 3,994 disqualified individuals who are still receiving SNAP benefits—a very low number, that, if anything, demonstrates the superfluity of USDA's efforts. Suppl. Corley Decl. ¶ 7; Suppl. Garcia Decl. ¶ 16 (estimating roughly 18 million SNAP participants in non-Plaintiff states).

At base, USDA suggests a false choice between forcing Plaintiffs to comply with its data demands and doing nothing to protect the integrity of the SNAP program. But Plaintiffs have long worked with USDA to conduct quality control checks and root out potential sources of fraud, pursuant to the SNAP Act, and subject to data sharing agreements and protocols. For example, Plaintiffs have worked with USDA to implement the National Accuracy Clearinghouse ("NAC") to protect against duplicate payments, and use existing data sharing systems such as the Electronic Disqualified Recipient System ("eDRS") to prevent disqualified applicants from receiving SNAP benefits. *See* Suppl. Reagan Decl. ¶¶ 6–10, 19. Preserving this status quo is in the public interest and would not harm USDA in any meaningful way. By contrast, allowing USDA to force Plaintiffs to turn over troves of sensitive data that USDA will share across the federal government, or decimate Plaintiffs' SNAP funding as punishment, would irreparably harm Plaintiffs and the public interest. The balance of the equities thus strongly favors converting the Court's TRO into a PI.

**CONCLUSION**

USDA's proposal that the Court enter a narrow injunction focused only on impermissible uses of the States' data, or no injunction at all, should be rejected. The Court should enter a more fitting PI that preserves the status quo by preventing USDA from enforcing its underlying demand for data pending final adjudication of the case.

Dated: October 3, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
ANDREW Z. EDELSTEIN
ANNA RICH
EDWARD P. WOLFE
SEBASTIAN BRADY
ROBIN GOLDFADEN
WILLIAM BELLAMY

*/s/ Maria F. Buxton*
MARIA F. BUXTON
DEPUTY ATTORNEYS GENERAL
*Attorneys for Plaintiff State of California*

LETITIA JAMES
Attorney General of New York

*/s/ Mark Ladov*
MARK LADOV
Special Counsel
JULIE DONA
Special Counsel
28 Liberty St.
New York, NY 10005
(212) 416-8240
mark.ladov@ag.ny.gov
*Attorneys for Plaintiff State of New York*

KRISTIN MAYES
Attorney General of Arizona

*/s/ Hayleigh S. Crawford*
HAYLEIGH S. CRAWFORD (AZ NO. 032326)
LUCI D. DAVIS (AZ NO. 035347)
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Hayleigh.Crawford@azag.gov
Luci.Davis@azag.gov
ACL@azag.gov
*Attorneys for Plaintiff State of Arizona*

PHILIP J. WEISER
Attorney General of Colorado

*/s/ David Moskowitz*
DAVID MOSKOWITZ
Deputy Solicitor General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
david.moskowitz@coag.gov
*Attorneys for Plaintiff State of Colorado*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Janelle R. Medeiros*
JANELLE R. MEDEIROS
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Janelle.Medeiros@ct.gov
*Attorneys for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

/s/ Vanessa L. Kassab
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*

BRIAN L. SCHWALB
Attorney General for the District of Columbia

/s/ Nicole S. Hill
NICOLE S. HILL
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

ANNE E. LOPEZ
Attorney General of Hawai‘i

/s/ Kaliko‘onālani D. Fernandes
DAVID D. DAY
Special Assistant to the Attorney General
KALIKO‘ONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawai‘i*

KWAME RAOUL
Attorney General of Illinois

/s/ Sherief Gaber
HARPREET K. KHERA
Bureau Chief, Special Litigation
SHERIEF GABER
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
Harpreet.Khera@ilag.gov
*Attorneys for Plaintiff State of Illinois*

OFFICE OF THE GOVERNOR *ex rel*. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky

/s/ S. Travis Mayo
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors' Office*

AARON M. FREY
Attorney General of Maine

/s/ Brendan Kreckel
BRENDAN KRECKEL
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

_/s/ James C. Luh_
JAMES C. LUH
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

_/s/ Katherine Dirks_
KATHERINE DIRKS
Chief State Trial Counsel
CASSANDRA THOMSON
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

DANA NESSEL
Attorney General of Michigan

_/s/ Neil Giovanatti_
NEIL GIOVANATTI
BRYAN BEACH
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
beachb@michigan.gov
*Attorneys for Plaintiff State of Michigan*

KEITH ELLISON
Attorney General of Minnesota

_/s/ Joseph R. Richie_
JOSEPH R. RICHIE
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

_/s/ Heidi Parry Stern_
HEIDI PARRY STERN (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

MATTHEW J. PLATKIN
Attorney General of New Jersey

_/s/ Kashif T. Chand_
KASHIF T. CHAND (NJ BAR NO. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of the State of New Mexico

*/s/ Steven Perfrement*
STEVEN PERFREMENT*
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

DAN RAYFIELD
Attorney General of Oregon

*/s/ Scott P. Kennedy*
SCOTT P. KENNEDY
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

JOSH SHAPIRO, in his official capacity as Governor of the Commonwealth of Pennsylvania

JENNIFER SELBER
General Counsel

*/s/ Michael J. Fischer*
Michael J. Fischer*
Executive Deputy General Counsel
Jacob B. Boyer*
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
mjfischer@pa.gov
*Counsel for Governor Josh Shapiro*

PETER F. NERONHA
Attorney General of Rhode Island

/S/ *Madeline R. Becker*
MADELINE R. BECKER (RI BAR NO. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Jennifer K. Chung*
JENNIFER K. CHUNG, WSBA #51583
WILLIAM MCGINTY, WSBA #41868
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Karla Z. Keckhaver*
KARLA Z. KECKHAVER
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

* *pro hac vice forthcoming*

SA2025302238
Plaintiff States' Response to USDA's Supplemental Opposition Pursuant to Court Order ECF No. 83 (003).docx

# CERTIFICATE OF SERVICE

Case Name: ***California, et al. v. U.S. Department of Agriculture*** Case No. **3:25-cv-06310-MMC**

I hereby certify that on October 3, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **PLAINTIFF STATES' RESPONSE TO USDA'S SUPPLEMENTAL OPPOSITION PURSUANT TO COURT ORDER, ECF NO. 83**
2. **SUPPLEMENTAL DECLARATION OF ALEXIS FERNÁNDEZ GARCIA IN SUPPORT OF PLAINTIFF STATES' MOTION FOR STAY OR PRELIMINARY INJUNCTION**
3. **SUPPLEMENTAL DECLARATION OF KASEY REAGAN IN SUPPORT OF PLAINTIFF STATES' MOTION FOR STAY OR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 3, 2025, at San Francisco, California.

| M. Mendiola | M. Mendiola |
| --- | --- |
| Declarant | Signature |

SA2025302238