1 | ROB BONTA
Attorney General of California
2 | PAUL STEIN
Supervising Deputy Attorney General
3 | ANDREW Z. EDELSTEIN
ANNA RICH
4 | EDWARD P. WOLFE
SEBASTIAN BRADY
5 | ROBIN GOLDFADEN
WILLIAM BELLAMY
6 | MARIA F. BUXTON
Deputy Attorneys General
7 | State Bar No. 318563
  455 Golden Gate Avenue, Suite 11000
8 |   San Francisco, CA 94102-7004
  Telephone:  (415) 510-3873
9 |   Fax:  (415) 703-5480
  E-mail:  Maria.Buxton @doj.ca.gov
10 | *Attorneys for Plaintiff State of California*

11 | *Additional counsel listed on signature page*

12

IN THE UNITED STATES DISTRICT COURT

13

FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

SAN FRANCISCO DIVISION

15

16

17 | **STATE OF CALIFORNIA; STATE OF NEW YORK; STATE OF ARIZONA;**

Case No. **3:25-cv-06310-MMC**

18 | **STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF**

**SUPPLEMENTAL DECLARATION OF KASEY REAGAN IN SUPPORT OF PLAINTIFF STATES' MOTION FOR STAY OR PRELIMINARY INJUNCTION**

19 | **DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAIʻI;**
20 | **STATE OF ILLINOIS; OFFICE OF THE GOVERNOR** ex rel. Andy Beshear, in his
21 | official capacity as Governor of the Commonwealth of Kentucky; **STATE OF**
22 | **MAINE; STATE OF MARYLAND; COMMONWEALTH OF**
23 | **MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA;**
24 | **STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO;**
25 | **STATE OF OREGON; OFFICE OF THE GOVERNOR** ex rel. Josh Shapiro, in his
26 | official capacity as Governor of the Commonwealth of Pennsylvania; **STATE OF**
27 | **RHODE ISLAND; STATE OF WASHINGTON; STATE OF**
28 | **WISCONSIN,**

1

                      Plaintiffs,

2

3

      v.

4

5    **UNITED STATES DEPARTMENT OF
AGRICULTURE; BROOKE ROLLINS,** in

6    her official capacity as U.S. Secretary of
Agriculture; **U.S. DEPARTMENT OF**

7    **AGRICULTURE'S OFFICE OF
INSPECTOR GENERAL,**

8
                      Defendants.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KASEY REAGAN

**Kasey Reagan**, declares under penalty of perjury, under 28 U.S.C. § 1746, as follows:

1.      I am a resident of the State of Illinois. I am over the age of 18 and understand the obligations of an oath.

2.      I am the Statewide Program Initiatives Administrator Division of Family and Community Services (FCS) for the Illinois Department of Human Services (IDHS or Agency), which includes directing Illinois Supplemental Nutrition Assistance Program (SNAP). I have held this position since May, 2019 and have otherwise worked at IDHS on related issues since 2001.

3.      I submit this declaration to respond to new facts alleged by the United States Department of Agriculture in a supplemental declaration of Shiela Corley, dated September 26, 2025 (ECF No. 90-1) and to supplement the declaration filed on August 18, 2025 in support of plaintiff states' motion for a preliminary injunction. *See* Reagan Decl. (ECF No. 59-12)

4.      While the Corley declaration's allegations about USDA's analysis and "preliminary snapshot review" of data received from States that have already submitted their SNAP data to USDA does not include enough information to fully verify, review and independently address these finding, I have several reactions to these purported findings.

5.      In the first instance, I have no doubt that any significantly large sample size of SNAP data would fine some instances of duplicate issuances, deceased persons and disqualified persons. However, the declaration does not take into account how existing quality control, verification and program integrity systems operate.

i.    *Duplicate issuance*

6.      As I have previously described, Illinois has implemented the National Accuracy Clearinghouse that was passed into law under the 2018 Farm Bill. The NAC has created an instantaneous process for checking for duplicate assistance among NAC-participating states. A

secure check is run against the NAC for potential duplicate issuance before any applicant is approved for SNAP benefits, and IDHS also detects duplicates through a monthly bulk match process.

7.        In addition to the NAC, which will not be fully implemented by all states until 2027, IDHS has throughout my entire tenure at the agency participated in the PARIS match process. PARIS is the Public Assistance Reporting Information System, run by the Administration for Children and Families.[1] States submit data (covered by a number of privacy protective agreements and memoranda[2]) on a quarterly basis to identify potential duplicate participation.

8.        Following states' submission of data to PARIS, which also identifies potential duplicate benefits in Medicaid and TANF, ACF staff generate a report to states identifying any recipients of benefits that were also identified in another state's files.

9.        On obtaining a PARIS match report from ACF, IDHS first checks whether or not the matched case still receives benefits in Illinois. If a matched duplicate case is still receiving benefits in Illinois, IDHS issues a notice to the household requesting that they provide verification or documentation sufficient to provide proof that benefits from the other state have ended and the date on which they ended. If the household does not respond we terminate their benefits, and where

---

[1] *See* PARIS Frequently Asked Questions *https://acf.gov/paris/faq/frequently-asked-questions*
[2] This privacy protections covering this submission include an interstate memorandum of understanding, a computer matching agreement between Department of Defense, Defense Manpower Data Center, State Public Assistance Agencies, and Department of Health and Human Services, Administration for Children and Families, and a computer matching agreement Among Department Of Veterans Affairs (VA), State Public Assistance Agencies (SPAAs), and Department of Health and Human Services, Administration for Children and Families (HHS/ACF). *See* Memorandum of Agreements | The Administration for Children and Families https://acf.gov/paris/memorandum

a household responds we conduct appropriate review to ensure that either no duplicate benefits are being received or that benefits are terminated if appropriate.

10.    The PARIS matching process is a quarterly process that may take as long as a month from submission before we receive a response. The delay and potential for outdated information to match makes it difficult to take correct action. The NAC does not suffer from this problem, as is queried at the point at which any individual applies for benefits, as well as a more regular periodic bulk data check.

*ii.    Deceased persons*

11.    The Supplemental Corley Declaration makes reference to deceased individuals "actively enrolled in the program" and suggests that "at best, this indicates lax administration" and at worst possible fraud and abuse. While I do not know what data USDA has used to determine whether an individual is deceased in its review, in my experience it is completely reasonable to expect that any significant sample of benefits cases will turn over some deceased individuals, because of the inevitable delays in reporting and subsequent verification.

12.    Notification of a death of a recipient of benefits can come from a household directly, but IDHS has a monthly process where we cross check benefits recipients against records kept by the Illinois Department of Public Health (IDPH), our long-term care system in Illinois, and the federal Social Security Administration's State On-Line Query (SOLQ) system, which allows state agencies real-time online access to real-time access to SSA's Social Security Number (SSN) verification service and retrieval of Title 2 and/or Title 16 data.[3]

---

[3] The available data elements of that system, which include death date, are available at https://www.ssa.gov/dataexchange/documents/SOLQ-SOLQI%20record.pdf

13.     Beyond any discrepancy between a reported death and the date of our monthly query, in my experience it is not uncommon that there may be delays in reporting of deaths to the systems that we query, including the SOLQ.

14.     However, once we have been made aware of a death (whether through our monthly query or through a household reporting) we take immediate action. When the source of the notification of death is not considered verified upon receipt, a notification is sent to the household prior to cancellation to verify the death has occurred. If no response is received, the benefits are cancelled.

15.     When the source of the notification of death is not considered verified upon receipt, a notification is sent to the household prior to cancellation to verify the death has occurred. If no response is received, the benefits are cancelled.

16.     Finally, IDHS will expunge any unused benefits from a household's account when we are notified of and have verified the death of all SNAP household members.

17.     Very recently, the federal government has afforded IDHS access to a new tool that will allow IDHS, once the appropriate data use and security agreements have been executed, to use PARIS to query a number of additional sources of Death Data maintained by the Department of the Treasury, including the Death Master File. I anticipate that the ability to query these additional sources, instead of just SSA data, will increase our ability to detect deceased individuals' benefits and take prompt appropriate action on them.

*iii.     Dummy or Placeholder Social Security Numbers*

18.     Illinois does not allow the use of dummy or placeholder SSNs. Our systems are set up to return a validation error if any SSN even beginning with a '9' is entered. In cases where a SSN field is null (having no value) it is stored in our database as '0', but for any null SSN, Illinois'

benefits application system additionally has a workflow for eligible applicants who have applied

for and not received a SSN (most commonly infants) that does not involve use of a dummy SSN.

*iv.    Disqualified Individuals*

19.    If a person is disqualified from the SNAP Program for an Intentional Program

Violation (IPV) that information will be submitted to the Electronic Disqualified Recipient system

(eDRS). Disqualifications can be for periods of months, years or in perpetuity.

20.    We do not, as a matter of business practice, approve someone for SNAP if they have

been disqualified. However, there are sometimes delays between issuance of benefits and

notification of disqualification, as well as cases where a disqualification was handed down after

Administrative Hearing for a month(s) where benefits had already been issued. In these limited

cases we take appropriate action as guided by federal regulation and IDHS policy.

21.    I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of October, 2025, in Springfield, Illinois

**Kasey Reagan** Digitally signed by Kasey Reagan
Date: 2025.10.03 15:59:35 -05'00'

_____

Kasey Reagan
Statewide Program Initiatives Administrator
Illinois Division of Human Services