1   ROB BONTA
    Attorney General of California
2   PAUL STEIN
    Supervising Deputy Attorney General
3   ANDREW Z. EDELSTEIN
    ANNA RICH
4   EDWARD P. WOLFE
    SEBASTIAN BRADY
5   ROBIN GOLDFADEN
    WILLIAM BELLAMY
6   MARIA F. BUXTON
    Deputy Attorneys General
7   State Bar No. 318563
    455 Golden Gate Avenue, Suite 11000
8   San Francisco, CA 94102-7004
    Telephone:  (415) 510-3873
9   Fax:  (415) 703-5480
    E-mail:  Maria.Buxton @doj.ca.gov
10  *Attorneys for Plaintiff State of California*

11  *Additional counsel listed on signature page*

12

13                    IN THE UNITED STATES DISTRICT COURT

14                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                            SAN FRANCISCO DIVISION

16

17  | **STATE OF CALIFORNIA; STATE OF** | Case No. **3:25-cv-06310-MMC** |
    | **NEW YORK; STATE OF ARIZONA;** | |
18  | **STATE OF COLORADO; STATE OF** | **JOINT STATUS REPORT** |
    | **CONNECTICUT; STATE OF** | |
19  | **DELAWARE; DISTRICT OF** | |
    | **COLUMBIA; STATE OF HAWAI'I;** | |
20  | **STATE OF ILLINOIS; OFFICE OF THE** | |
    | **GOVERNOR** ex rel. Andy Beshear, in his | |
21  | official capacity as Governor of the | |
    | Commonwealth of Kentucky; **STATE OF** | |
22  | **MAINE; STATE OF MARYLAND;** | |
    | **COMMONWEALTH OF** | |
23  | **MASSACHUSETTS; STATE OF** | |
    | **MICHIGAN; STATE OF MINNESOTA;** | |
24  | **STATE OF NEVADA; STATE OF NEW** | |
    | **JERSEY; STATE OF NEW MEXICO;** | |
25  | **STATE OF OREGON; OFFICE OF THE** | |
    | **GOVERNOR** ex rel. Josh Shapiro, in his | |
26  | official capacity as Governor of the | |
    | Commonwealth of Pennsylvania; **STATE OF** | |
27  | **RHODE ISLAND; STATE OF** | |
    | **WASHINGTON; STATE OF** | |
28  | **WISCONSIN,** | |

                                       1

Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS,** in her official capacity as U.S. Secretary of Agriculture; **U.S. DEPARTMENT OF AGRICULTURE'S OFFICE OF INSPECTOR GENERAL,**

Defendants.

2

Pursuant to the Court's October 1, 2025, Order, ECF No. 97, the Parties have met and conferred and now hereby provide the following joint status report:

1.      On October 1, 2025, the Court granted Defendants' Administrative Motion for a Stay in Light of the Lapse of Appropriations.  ECF No. 97.  According to that Order, "all . . . deadlines in this matter," with the exception of the preliminary injunction hearing and related briefing were "stayed during the lapse of appropriations."  Further, the Government was "directed to promptly notify the Court as soon as the government shutdown has ended and, if necessary given the circumstances of this case, confer with opposing counsel and submit within two weeks a joint proposed schedule for the remainder of litigation."  *Id.* at 2.

2.      On October 15, 2025, the Court granted Plaintiff States' Motion for a Preliminary Injunction.  ECF No. 106.

3.      On November 13, 2025, Defendants filed a Notice stating that "the federal government's lapse in appropriations has ended, and counsel for Defendants is fully authorized to continue normal work.  Pursuant to the Court's [October 1, 2025] order, Defendants will confer with Plaintiffs regarding further scheduling in this matter."  ECF No. 108.

4.      The Parties met and conferred via email between November 21, 2025 and November 25, 2025.

5.      During that meet and confer, counsel for Defendants informed counsel for Plaintiffs that he is on a pre-planned leave, with limited access to e-mail, from November 24, 2025 until December 3, 2025.

6.      On November 24, 2025, USDA sent a new letter to the Plaintiff States.  (See Attachment A).  Plaintiffs requested additional time to consider the letter, to which USDA agreed.

7.      In light of Defendants' counsel's leave, the holiday week, and the approaching December 15 deadline by which the Solicitor General will decide whether to appeal the Court's

1  October 15, 2025 order, the Parties have agreed to further meet and confer next week.

2  Defendants have also agreed that Plaintiffs' deadline to respond to USDA's most recent letter is

3  extended until noon, December 8, 2025.

4

5

6  Dated:  November 28, 2025                    Respectfully submitted,

7                                              ROB BONTA
                                               Attorney General of California
8                                              PAUL STEIN
                                               Supervising Deputy Attorney General
9                                              ANDREW Z. EDELSTEIN
                                               ANNA RICH
10                                             EDWARD P. WOLFE
                                               ROBIN GOLDFADEN
11                                             SEBASTIAN BRADY
                                               WILLIAM BELLAMY
12
                                               */s/ Maria F. Buxton*
13                                             MARIA F. BUXTON
                                               DEPUTY ATTORNEYS GENERAL
14                                             *Attorneys for Plaintiff State of California*

15

16  LETITIA JAMES                              KRISTIN MAYES
    Attorney General of New York               Attorney General of Arizona

17  */s/ Mark Ladov*                           */s/ Hayleigh S. Crawford*
    MARK LADOV                                 HAYLEIGH S. CRAWFORD (AZ No. 032326)
18  Special Counsel                            LUCI D. DAVIS (AZ No. 035347)
    JULIE DONA                                 2005 N. Central Ave. Phoenix, AZ 85004
19  Special Counsel                            (602) 542-3333
    28 Liberty St.                             Hayleigh.Crawford@azag.gov
20  New York, NY 10005                         Luci.Davis@azag.gov
    (212) 416-8240                             ACL@azag.gov
21  mark.ladov@ag.ny.gov                       *Attorneys for Plaintiff State of Arizona*
    *Attorneys for Plaintiff State of New York*
22

23

24  PHILIP J. WEISER                           WILLIAM TONG
    Attorney General of Colorado               Attorney General of Connecticut
25
    */s/ David Moskowitz*                      */s/ Janelle R. Medeiros*
26  DAVID MOSKOWITZ                            JANELLE R. MEDEIROS
    Deputy Solicitor General                   Special Counsel for Civil Rights
27  Colorado Department of Law                 165 Capitol Ave
    1300 Broadway, 10th Floor                  Hartford, CT 06106
28  Denver, CO 80203                           (860) 808-5020

                                       4

Phone: (720) 508-6000
david.moskowitz@coag.gov
*Attorneys for Plaintiff State of Colorado*

KATHLEEN JENNINGS
Attorney General of Delaware

*/s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*

ANNE E. LOPEZ
Attorney General of Hawaiʻi

*/s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

OFFICE OF THE GOVERNOR *ex rel.* Andy
Beshear, in his official capacity as
Governor of the Commonwealth of
Kentucky

*/s/ S. Travis Mayo*
S. TRAVIS MAYO
General Counsel
TAYLOR PAYNE
Chief Deputy General Counsel
LAURA C. TIPTON
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

Janelle.Medeiros@ct.gov
*Attorneys for Plaintiff State of Connecticut*

BRIAN L. SCHWALB
Attorney General for the District of
Columbia

*/s/ Nicole S. Hill*
NICOLE S. HILL
Assistant Attorney General
Office of the Attorney General for the
District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

KWAME RAOUL
Attorney General of Illinois

*/s/ Sherief Gaber*
HARPREET K. KHERA
Bureau Chief, Special Litigation
SHERIEF GABER
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
Harpreet.Khera@ilag.gov
*Attorneys for Plaintiff State of Illinois*

AARON M. FREY
Attorney General of Maine

*/s/ Brendan Kreckel*
BRENDAN KRECKEL
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

5

*Attorneys for Plaintiff Kentucky Governors'
Office*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ James C. Luh*
JAMES C. LUH
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine Dirks*
KATHERINE DIRKS
Chief State Trial Counsel
CASSANDRA THOMSON
Assistant Attorney General
Office of the Massachusetts Attorney
General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

DANA NESSEL
Attorney General of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI
BRYAN BEACH
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
beachb@michigan.gov
*Attorneys for Plaintiff State of Michigan*

KEITH ELLISON
Attorney General of Minnesota

*/s/ Joseph R. Richie*
JOSEPH R. RICHIE
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

MATTHEW J. PLATKIN
Attorney General of New Jersey

/s/ *Kashif T. Chand*
KASHIF T. CHAND (NJ BAR NO. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of the State of New

DAN RAYFIELD
Attorney General of Oregon

6

Mexico

/s/ Steven Perfrement
STEVEN PERFREMENT*
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

JOSH SHAPIRO, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

JENNIFER SELBER
General Counsel

/s/ Jacob B. Boyer
Jacob B. Boyer*
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

NICHOLAS W. BROWN
Attorney General of Washington

/s/ Jennifer K. Chung
JENNIFER K. CHUNG, WSBA #51583
WILLIAM MCGINTY, WSBA #41868
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

/s/ Scott P. Kennedy
SCOTT P. KENNEDY
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

PETER F. NERONHA
Attorney General of Rhode Island

/s/ Madeline R. Becker
MADELINE R. BECKER (RI BAR NO. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

/s/ Karla Z. Keckhaver
KARLA Z. KECKHAVER
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

*\* pro hac vice forthcoming*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

/s/ Elizabeth J. Shapiro
ELIZABETH J. SHAPIRO
BENJAMIN S. KURLAND

7

Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 598-7755
ben.kurland@usdoj.gov

*Counsel for Defendants*

# ATTACHMENT A



**Food and Nutrition Service**
U.S. DEPARTMENT OF AGRICULTURE

November 24, 2025

Governor ████████████
████████████████
███████████████████████

Dear Governor ████████,

Pursuant to 7 U.S.C. § 2020(a)(3), the United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), directs that your State provide to FNS records including the Supplemental Nutrition Assistance Program (SNAP) Eligibility Data Elements for the period of January 1, 2020, to present, listed in Attachment A to this letter. The federal government provided funds to assist your State in collecting these records, and FNS needs the records to determine whether SNAP is being conducted in compliance with law.

Since last summer, 28 States have complied with FNS's request for this same type of data. FNS's preliminary review of this data indicates that billions of dollars in federal funds may have been lost due to fraud or other errors undetected by States in their administration of SNAP. Your State, however, has not yet provided FNS the data it seeks, citing the absence of agreed-upon "data and security protocols" specified in 7 U.S.C. § 2020(a)(3). Attachment B to this letter provides a set of data and security protocols that FNS observes with the 28 complying States. This set of protocols, which include FedRAMP High data security, provides a higher level of security than that which States, including your State, historically have accepted in releasing similar data to FNS—including social security numbers and addresses. FNS will inspect and audit the data provided pursuant to this request, and maintain it under the applicable System Of Records Notice, solely for the purposes of "determin[ing] whether the program is being conducted in compliance with [the Food and Nutrition Act of 2008 (FNA)] (including regulations issued under [the FNA]." *See* 7 U.S.C. § 2020(a)(3).

In view of the facts that 28 other States have produced their records to FNS, operating under FNS's data and security protocols, and that your State previously delivered the same type of data to FNS under *less stringent* protocols than those we set forth in Attachment B, there can be no good faith objection to the attached protocols. In *California, et al v. USDA, et al*, 3:25-cv-06310 (N.D. Calif., July 28, 2025), the Court acknowledged that the plain language of the FNA at 7 U.S.C. § 2020(a)(3) entitles USDA to obtain all the requested records, subject to data and security protocols agreed to by the States and USDA:

> "Congress, in the 'Records' section of § 2020, did use clear, **mandatory** language, specifically 'shall … be made available for inspection and audit,' thereby **giving USDA the right to obtain**, subject to data and security protocols, all records necessary to determine whether the program is being conducted in accordance with the SNAP Act. See 7 U.S.C. § 2020(a)(3)(B)."

Order Granting Plaintiff States' Motion for Preliminary Injunction, Oct. 15, 2025, 15: 2-6 (emphasis added).[1]

Because FNS is operating under a higher level of data security than has proven acceptable to States, including yours, when producing to FNS the same type of information it requests here, we anticipate your State will now join the others in complying with Congress's mandate that  USDA be able to obtain records to ensure that its federally-funded programs are being operated in compliance with law.

Our preliminary review of data provided to FNS by States complying with FNS's data requests indicates an estimated average of $24 million dollars per day of federal funds is lost to fraud and errors undetected by States in their administration of SNAP. That estimated loss will likely increase when data withheld by non-complying States factors into the analysis. Preventing such losses could save approximately $9 billion or more per year.

We respectfully request that your State respond in writing within seven days of the date of this letter with confirmation of your agreement to produce the requested data to FNS subject to the attached security and data protocols. Because the protection afforded by our data and security protocols exceeds that which your State historically has required before producing the same type of data to FNS, your State should have no difficulty nor reservations agreeing to these protocols. Based on our experience with States complying with FNS data requests, about which we provided notice last summer, your State should be able to produce its records no later than 30 days after the date of this letter. Your State's timely compliance with this letter is essential to safeguarding the public interest in securing federal SNAP funds from loss due to fraud, waste and abuse. If, for some reason, your State declines to  produce the requested data subject to the attached protocols, we request that you inform us in writing within seven days of the date of this letter of: (1) the basis for your lack of agreement and (2) any proposed edits to the protocols that you deem necessary to produce the requested data.

In addition, please take all steps necessary to preserve all records covered by this request, whether possessed by your State or your vendors. We expect to be able to review historical data in its native, unaltered form, from January 1, 2020, to the present. It is imperative the Federal Government obtains unaltered data reflecting the actual performance of States in administering this federally-funded program for all time periods covered by this request.

---

[1] Specifically, 7 U.S.C. § 2020(a)(3)(B) requires that "***such records as may be necessary*** to determine whether the program is being conducted in compliance with this [SNAP Act] (including regulations issued under this [SNAP Act)]" "**shall be made available**" to USDA (emphasis added).  The question presented and ruled upon by the Court in *California* was whether to preliminarily enjoin FNS from disallowing SNAP funding "based on Plaintiff States' failure to comply with the demands set forth in the above-discussed formal warning letters or otherwise acting thereon." *Id.* at 25:10–13.  Those formal warning letters relied only on 7 U.S.C. § 2020(e)(8)(a), as to which the Court opined that "shall permit" in 7 U.S.C. § 2020(e)(8)(A) is permissive, as contrasted with the "clear, mandatory language" of 7 U.S.C. § 2020(a)(3)(B) "giving USDA the right to obtain" the requested data. *Id.* at 13:25–17:13. USDA respectfully disagrees with an interpretation that "shall permit" allows states to elect to withhold data requested under 7 U.S.C. § 2020(e)(8)(A), and maintains all rights to appeal and otherwise contest such an interpretation.

Thank you for your continued work to help address the needs of vulnerable Americans and safeguard taxpayer dollars.

Sincerely,

Patrick A. Penn
Acting Administrator, Food and Nutrition Service
Deputy Under Secretary, Food, Nutrition, and Consumer Services
U.S. Department of Agriculture

**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program
Information SNAP Database**

***SNAP Eligibility Data Elements***
The following elements should be included in the data sharing file from each State agency on all household members that are listed in the SNAP case. Please provide a data dictionary if one is available to reduce the burden to both the State agency and USDA.

***Case Number:*** The case number is a unique identifier, typically 7 to 10 digits long, assigned to a household when they apply and/or are approved for SNAP.

***First, Middle, Last Names:*** The full name of all household members.

***Known Alias:*** Assumed or alternative name(s) used by any of the household members.

***Authorized Representative(s):*** Provide any identified authorized representative for the household, and their corresponding information such as full name, means of verbal and written communication.

***Date of Birth:*** The specific month, day and year the household member was born.

***Individual Recipient Identification Number:*** The unique identifier assigned to that specific household member within the case by the State agency.

***Social Security Number:*** The unique 9-digit identifier issued by the Social Security Administration and provided by the household member.

***Status on SNAP*** *(recipient/individual level)***:** Identify if the household member in the case is actively receiving SNAP, disqualified, sanctioned, or excluded.

***Application and/or Recertification Date:*** The date the household applied for SNAP (this can be the first application date, or most recent recertification date).

***Reporting Status:*** Following initial certification, or recertification, households are determined to be a simplified or change reporting household. This data element should indicate the reporting status the household has been designated to be.

***Relationship:*** The relationship identifies who all household group members are to one another and assists with determining mandatory group members. The data should reflect who each household member is to one another.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Absent Parent** (as applicable)**:** This identifies the parent of a minor child who resides in a separate household.

**Citizenship and/or Immigration Status:** This identifies if the individual is a U.S. citizen or immigrant.

**Sponsorship:** This identifies if an individual applying or receiving SNAP has been sponsored to enter the U.S. Data should identify the name or organization of the sponsor.

**Residential Address:** The address the household has provided as to where they reside.

**Mailing Address:** The address the household has provided as to where they would like all correspondence sent to (if different than residential).

**Homeless Status:** Please include if the household is identified as homeless.

**Phone Number(s):** The contact number(s) provided by the household as a means of contact.

**Email Address(es):** The email address(es) provided by the household as a means of contact.

**Unearned Income:** The unearned income (RSDI, unemployment, child support, etc.) identifies the unearned income source, pay frequency, the household member receiving the pay, and the total amount of income budgeted to determine the SNAP allotment.

**Earned Income:** The earned income identifies the earned income source, pay frequency, the household member receiving the pay, and the total amount of income budgeted to determine the SNAP allotment.

**Self-Employment Income:** Self-employment should be identified as to what the self-employment is (type or business name), pay frequency, the household member who is self-employed, and the total amount of income budgeted as well as the amount of allowed expenses.

**Shelter Expenses:** The shelter expenses should be identified as to shelter type (i.e. rent), and the budgeted dollar amount. Shelter expenses may be separated out as various expenses are taken into consideration for eligibility and those should be included if used in the SNAP allotment determination (i.e. telephone, heating, cooling). If the household is active with Section 8, which pays a portion of the rental expenses, please ensure that is included.

**Assets/Resources:** Any known assets (i.e. bank accounts, boat, collector vehicle) or resources used to determine SNAP eligibility and must identify the asset type, amount and what household member the asset belongs to.

***Sanctions/Disqualifications:*** Identify any household members who are serving a sanction and/or disqualification that is impacting their eligibility to participate in SNAP. The sanction and/or disqualification type and any applicable time periods should be identified (i.e. IPV, 10/1/2024-9/30/2025). This field should correspond to the data provided in the status on SNAP if the household member is currently serving a disqualification, as well as any income field(s) that may pertain to the disqualified member due to income proration.

***SNAP EBT Card Number:*** The unique set of digits on the household's issued SNAP EBT card that connects the case to the associated transactions.



**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program (SNAP) Information Database
Fraud, Waste and Abuse Detection Protocol**

## 1. OVERVIEW

1.1. U.S. Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) will use the Supplemental Nutrition Assistance Program (SNAP) recipient data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying duplicate enrollments for elimination, and performing additional eligibility and program integrity checks specified herein.

1.2. This protocol establishes a framework for State SNAP agencies to share data with the USDA/FNS for detection of fraud, waste, and abuse and program integrity purposes.

1.3. The protocol balances federal data access requirements under Executive Order 14243 and the Food and Nutrition Act of 2008 (FNA) with privacy protections, minimizes unnecessary data collection, and incorporates security standards while maintaining public trust and compliance with applicable law.

## 2. FRAMEWORK AND AUTHORITY

2.1. <u>Authority</u>

2.1.1. Executive Order 14243 (March 20, 2025): "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" directs agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure federal government has "unfettered access to comprehensive data" from state programs receiving federal funding, including data maintained in third-party databases.

2.1.2. 7 U.S.C. § 2020(a)(3) that requires that each State agency shall keep records as may be necessary to determine whether the program is being conducted in compliance with this chapter, and all records shall be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary.

2.1.3. 7 CFR 272 stipulates use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to persons directly connected with the administration or enforcement of the provisions of the FNA or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or general assistance programs which are subject to joint processing requirements.

2.2. <u>Prohibited Purposes</u>

2.2.1. USDA shall NOT use the provided data for:

- Tax administration or tax compliance
- Law enforcement investigations beyond coordination regarding criminal and administrative SNAP violations
- Administration of non-SNAP federal assistance programs (*e.g.*, Medicaid, TANF, housing assistance)
- Sharing with foreign governments or international organizations
- Commercial use or transfer to private entities

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**U.S. DEPARTMENT OF AGRICULTURE**

2.2.2. USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (*i.e.*, the collection of data elements spelled out in the Privacy Impact Assessment).

## 3. DATA CATEGORIES

3.1. <u>Data Definition</u>

3.1.1. All data obtained by States or their vendors in administering SNAP or that otherwise may be necessary to determine whether the program is being conducted in accordance with the FNA or regulations issued under the FNA.

3.1.2. Data derived from third-party sources (employment verification databases, financial institution records, property records) that States use for verification but are not part of applicant-reported information are excluded.

3.2. <u>Permitted Data</u>

- Information that the applicant household reported on application/recertification forms including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers.

- Direct verifications that the State conducted to confirm applicant-reported information Records that the State maintains of SNAP applications, approvals, denials, certifications, and benefits issued.

- Household composition and income exactly as reported by the applicant (not third-party verified amounts).

- Transactional data necessary for fraud detection

## 4. LIMITED ACCESS

4.1. The SNAP Information Database is accessed and used ONLY by employees of the USDA who are:

4.1.1. Designated by the Chief of Staff at Food, Nutrition, Consumer Services (FNCS)

4.1.2. Trained in SNAP Act, Privacy Act, and this protocol

4.1.3. In compliance with all information security annual recertifications

4.2. No Access to the SNAP Information Database may be provided to:

4.2.1. Other USDA agencies (APHIS, ERS, NASS, etc.)

4.2.2. Divisions within FNS without an explicit need-to-know

4.2.3. OIG employees, unless in direct support of a law enforcement investigation related to SNAP fraud, waste, or abuse

4.2.4. Any other federal agency

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

**5. SYSTEM OF RECORDS NOTICE (SORN) AND PRIVACY IMPACT ASSESSMENT (PIA)**

5.1. <u>SORN</u>

The applicable SORN for this protocol is USDA/FNS-15 "National Supplemental Nutrition Assistance Program (SNAP) Information Database," 90 FR 26521.

The SORN location can be found here: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-system-of-records

5.2. <u>Privacy Impact Assessment (PIA)</u>

The applicable Privacy Impact Assessment for the SNAP Information Database can be found here: https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

**6. FRAUD, WASTE, AND ABUSE DETECTION FRAMEWORK**

6.1. <u>Core Fraud Detection Functions</u>

6.1.1. USDA will employ a foundational fraud, waste, and abuse verification similar to the SNAP Quality Control program that focuses on:

- identity verification
- income and eligibility verification
- immigration status
- verification against disqualified recipients

6.2. <u>Enhanced Fraud, Waste, and Abuse Detection Techniques</u>

6.2.1. In addition to the core fraud detection functions, USDA will employ additional techniques including, but not limited to:

- Intrastate and interstate duplicate detection
- Deceased individuals' detection
- Synthetic identity patterns (new SSNs with inconsistent biographical data)
- Geographic anomalies

6.2.2. New data mining techniques will be limited to identifying recipient and retailer fraud with a direct nexus to SNAP.

**7. DATA OUTPUT**

7.1. <u>States</u>

7.1.1. USDA will provide flagged data back to the State agency for review. States are encouraged to verify the accuracy of fraud detection flags and provide feedback to USDA to refine detection logic and reduce false positives. Collaborative processes will be established to ensure accurate identification of fraud and appropriate corrective actions.

7.2. <u>Law Enforcement</u>

7.2.1. The USDA may refer fraud detection leads to USDA OIG and other law enforcement agencies where a criminal nexus has been drawn specifically to SNAP.

7.3. <u>USDA SNAP Retailer Operations Center (ROC)</u>

7.3.1. The USDA may refer fraud detection leads to the ROC where, during fraud detection analysis, a compromised EBT card or terminal ID may have been identified.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender



**U.S. DEPARTMENT OF AGRICULTURE**

8. **DATA MINIMIZATION AND RETENTION**

8.1. <u>Retention Period</u>

8.1.1. Until a record schedule is approved, data will be retained only as long as necessary for purposes set forth in the SORN and this protocol, and in no case longer than 3 years per the SORN.

8.2. <u>Automatic Deletion</u>

8.2.1. Data shall be retained for no longer than three years, consistent with the USDA/FNS-15 SORN. An automated process will be implemented to delete data upon expiration of the retention period, except for records related to ongoing audits, investigations, or litigation.

8.3. <u>Ongoing Cases</u>

8.3.1. Data pertaining to ongoing audit, investigation, or potential litigation retained only as long as necessary, then deleted.

9. **DATA SECURITY AND TECHNICAL REQUIREMENTS**

9.1. <u>Infrastructure and Location</u>

9.1.1. Primary storage location: AWS GovCloud (US) region

9.1.2. Backup/disaster recovery: Secondary AWS region

9.1.3. No storage, processing, or backup outside GovCloud or federal secure environments

9.1.4. All infrastructure must meet or exceed FedRAMP High baseline standards

9.1.5. AWS Personnel Access: Data is encrypted such that AWS personnel cannot access unencrypted data. Encryption keys are managed exclusively by federal USDA personnel and are not accessible to AWS or third-party vendors.

9.2. <u>Access Controls</u>

9.2.1. Multi-factor authentication required for all access

9.2.2. Role-based access control (RBAC) with principle of least privilege

9.2.3. Access is limited to specifically designated USDA employees engaged to assist in determining whether the program is being conducted in accordance with the FNA.

9.2.4. Access logging and audit trail maintenance (minimum period equal to data retention period, see Section V.E).

9.2.5. Quarterly access reviews by USDA

9.2.6. Immediate revocation of access upon employee termination or assignment change

9.3. <u>Encryption Standards</u>

9.3.1. Encrypted data at rest and in transit

9.3.2. Encryption keys managed solely by USDA federal personnel

9.3.3. No encryption keys held by commercial vendors

9.4. <u>Data Segregation and Compartmentalization</u>

9.4.1. SNAP data isolated in separate, dedicated AWS GovCloud environment

9.4.2. SNAP data not directly integrated with other USDA systems

9.4.3. Limiting access to individuals with specialized training and oversight

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**U.S. DEPARTMENT OF AGRICULTURE**

9.5. Data Transfer

    9.5.1. All data transfers shall utilize secure tools that meet or exceed FedRAMP High baseline standards.

**10. INCIDENT RESPONSE AND BREACH NOTIFICATION**

10.1. Incident Response

    10.1.1. Incident response procedures are aligned with FNS Handbook Chapter 10 security incident and breach notification requirements that USDA already follows internally. This protocol extends equivalent procedures to State notification.

10.2. Incident Definition

    10.1.2. Unauthorized access, use, or disclosure of data

    10.1.3. Security vulnerability or control failure affecting data

    10.1.4. Data loss, corruption, or destruction

    10.1.5. Encryption failure or key compromise

    10.1.6. Failed access control or authentication mechanism

    10.1.7. Any event that may reasonably be expected to compromise data security or confidentiality

10.3. Incident Notification Timeline

    10.3.1. Initial Notification within 12 hours

        10.3.1.1. Within 12 hours of discovery (by phone + email to State security/privacy contact and Director).

    10.3.2. Preliminary Report within 24 hours

        10.3.2.1. Description of incident and timeline

        10.3.2.2. Data elements affected (specific fields and estimated number of records)

        10.3.2.3. Estimated number of individuals affected

        10.3.2.4. Preliminary assessment of whether unencrypted sensitive data may have been exposed

        10.3.2.5. Preliminary remedial actions taken

        10.3.2.6. Root cause analysis plan and timeline

**APPENDIX A - SOURCES**

- Privacy Impact Assessment: https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf
- SORN: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-system-of-records
- SNAP Act: https://www.law.cornell.edu/uscode/text/7/2020
- SNAP QC Handbook
- Executive Order 14243 (March 20, 2025) "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos: https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender