ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
JANE REILLEY
SEBASTIAN BRADY
WILLIAM BELLAMY
MARIA F. BUXTON
LIAM E. O'CONNOR
Deputy Attorneys General
State Bar No. 318563
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone:  (415) 510-3915
 Fax:  (415) 703-5480
 E-mail:  Liam.OConnor@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| STATE OF CALIFORNIA, ET AL. | Case No. **3:25-cv-06310-MMC** |
|---|---|
| Plaintiffs, | **DECLARATION OF JOSEPH R. RICHIE IN SUPPORT OF PLAINTIFF STATES' REPLY IN SUPPORT OF MOTION TO ENFORCE OR EXPAND THE PRELIMINARY INJUNCTION** |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL. | Date: February 13, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |
| Defendants. | |

Richie Decl. ISO Pl. States' Reply ISO Mot. to Enforce or Expand the Prelim. Inj. (Case No. 3:25-cv-06310-MMC)

I, Joseph R. Richie, declare:

1. I am a Special Counsel at the Office of the Minnesota Attorney General and counsel for the State of Minnesota in this action.

2. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

3. On December 16, 2025, U.S. Agriculture Secretary Brooke Rollins sent a letter ("Recertification Letter") to Minnesota Governor Tim Walz, demanding that the Minnesota Department of Children, Youth, and Families (MDCYF) recertify all Supplemental Nutrition Assistance Program (SNAP) households in Hennepin, Ramsey, Washington, and Wright counties, including with "in-person interviews," "within 30 days," i.e., by January 15, 2026. The December 16 Recertification Letter is filed as ECF No. 1-1 in *State of Minnesota v. USDA*, No. 25-cv-4767 (LMP/JFD) (D. Minn.) and is attached as Exhibit A.[1]

4. Defendants' purported factual basis for the Recertification Letter was the "Feeding Our Future fraud scheme," which did not involve Minnesota's SNAP program. Ex. A at 1. Defendants' purported legal authority for the Recertification Letter was 7 U.S.C. § 2026(b)(1)(A), which governs SNAP "pilot or experimental projects designed to test program changes that might increase the efficiency of the supplemental nutrition assistance program and improve the delivery of supplemental nutrition assistance program benefits to eligible households." *See* Ex. A at 1. The Recertification Letter stated that Minnesota's "[f]ailure to participate in this pilot project as

---

[1] Unless otherwise specified, all ECF citations are to the docket in *Minnesota*, No. 25-cv-4767.

1

specified by USDA [would] trigger noncompliance procedures codified in 7 U.S.C. § 2020(g). It may also affect Minnesota's continued participation in SNAP." *Id.* at 3.

5. On December 23, the State of Minnesota filed *State of Minnesota v. USDA*, No. 25-cv-4767 (LMP/JFD) (D. Minn.), against USDA and Secretary Rollins, asserting claims that the Recertification Letter is unlawful, including because it violates the Administrative Procedure Act as contrary to law and arbitrary and capricious. *See* ECF No. 1. I also serve as counsel for the State of Minnesota that action.

6. On December 29, Minnesota filed a motion for a temporary restraining order or expedited preliminary injunction to prohibit Defendants from enforcing the Recertification Letter and from carrying out the threats stated therein. *See* ECF Nos. 5-12. For context, the recertification process is governed by statute and regulation, pursuant to which households are recertified on a rolling basis throughout the year. *See* 7 U.S.C. § 2020; 7 C.F.R. §§ 273.1, *et seq.*; *see also State of Minnesota v. USDA*, No. 25-cv-4767 (LMP/JFD), 2026 WL 125180, at *1 (D. Minn. Jan. 16, 2026) (observing that "[t]o date, no one disputes that Minnesota's recertification process has—by all accounts—complied with all relevant statutes and regulations"). And, as the evidence Minnesota submitted in support of its motion showed, it would have been impossible for Minnesota to comply with the Recertification Letter, which purported to require Minnesota to recertify approximately 106,000 households (including approximately 191,000 recipients) within a month. *See Minnesota*, 2026 WL 125180, at *5-6 (summarizing the evidence and explaining that "it [was] impossible for [the subject counties] to comply with the Recertification Letter's demands").

7. On December 31, the court set a status conference for January 5, 2026, and set a hearing on the motion for January 14. ECF No. 18.

2

Richie Decl. ISO Pl. States' Reply ISO Mot. to Enforce or Expand the Prelim. Inj. (Case No. 3:25-cv-06310-MMC)

8.     During the January 5 status conference, the court ordered the parties to meet and confer regarding Minnesota's then-pending motion. ECF No. 19.

9.     On January 6, 2026, I participated in a meet and confer with counsel for Defendants, who suggested that Defendants might be willing to negotiate the terms of the Recertification Letter if Minnesota agreed to comply with Defendants' November 24 renewed data demand, which is the subject of the present motion in this case, *California v. USDA*, 3:25-cv-06310-MMC (N.D. Cal.).

10.    Defendants' counsel claimed that this data request was not precluded by this Court's preliminary injunction on the ground that the Defendants' November 24 renewed data demand relies on 7 U.S.C § 2020(a)(3) as its source of authority, and was therefore different than the original data request and not subject to this Court's preliminary injunction.

11.    On January 14, minutes before the hearing on Minnesota's motion to enjoin Defendants' Recertification Letter, the Deputy General Counsel for USDA handed me a second letter ("Enforcement Letter") "immediately withholding administrative funding" pursuant to 7 U.S.C. § 2020(g). The January 14 Enforcement Letter is filed as ECF No. 40-1 in *Minnesota*, No. 25-cv-4767, and is attached as Exhibit B.

12.    As noted above, the Recertification Letter had threatened "noncompliance procedures codified in 7 U.S.C. § 2020(g)" if Minnesota did not comply with the USDA's demands by January 15. The Court had scheduled the hearing for January 14 so it could decide Minnesota's motion for a preliminary injunction before that deadline. But Defendants withheld administrative funding under § 2020(g) on January 14, before the deadline they had set and before the court had a chance to decide the motion.

13.    The Enforcement Letter acknowledged that § 2020(g) requires formal notice and an opportunity to correct purported failures before administrative funds can be withheld. But the

letter purported to create a new pilot project designed specifically to create "accelerated corrective action" by waiving formal notice and the administrative hearing process in situations where the Secretary determines a "pattern of lack of compliance" with "safeguards against fraud". Ex. B at 1.

14. The letter explicitly referenced Minnesota's purported failure to "provide[] [USDA] with" the data demanded in the present case (alongside Minnesota's refusal to participate in the earlier recertification "pilot" project) as a basis for the summary disallowance of Minnesota's administrative funding under this new pilot. *Id.*

15. Prior to Defendants' counsel handing me the Recertification Letter, the State of Minnesota had never received any advanced notification or any final warning as required by the regulations that govern the process for USDA to disallow a State's administrative funding, 7 C.F.R. § 276.4(d).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 30, 2026, at Minneapolis, Minnesota.

*/s/ Joseph R. Richie*

Joseph R. Richie
Special Counsel
Office of the Minnesota Attorney General

4

Richie Decl. ISO Pl. States' Reply ISO Mot. to Enforce or Expand the Prelim. Inj. (Case No. 3:25-cv-06310-MMC)

# Exhibit A

*Secretary Brooke L. Rollins*

Washington, D.C. 20250

December 16, 2025

GOVERNOR TIM WALZ
*130 State Capitol*
*75 Rev Dr. Martin Luther King Jr. Blvd.*
*St. Paul, MN 55155*

Dear Governor Walz,

Amid highly publicized and ongoing fraud affecting federally funded benefits in the State of Minnesota, including the multi-million-dollar Feeding Our Future fraud scheme that exploited the United States Department of Agriculture's (USDA) Food and Nutrition Service's (FNS) Child Nutrition Programs, USDA is hereby requiring Minnesota to participate in a Supplemental Nutrition Assistance Program (SNAP) pilot project, conducted pursuant to 7 U.S.C. 2026 (b)(1)(A), to increase the efficiency of SNAP and improve the delivery of SNAP benefits to eligible households. More accurate certifications of eligibility for SNAP benefits will ensure that those in need receive assistance, raising levels of nutrition among low-income individuals.

Pursuant to this pilot project, which will be run on a trial basis, the Minnesota Department of Children, Youth, and Families (MDCYF) is hereby required to perform the following actions:

1. Conduct recertifications, within 30 days of receipt of this letter, of all SNAP households in Hennepin, Ramsey, Washington, and Wright counties.

2. As part of the recertification process, ensure SNAP households in Hennepin, Ramsey, Washington, and Wright counties meet all eligibility requirements for SNAP, including by accounting for the income and resources of any excluded household members, conducting in-person interviews, and using federal eligibility tools like the improved, cost-free Systematic Alien Verification for Entitlements (SAVE) Program database.

3. Upon review of the information obtained during the recertification process, make determinations as to eligibility of SNAP benefits for each SNAP household in Hennepin, Ramsey, Washington, and Wright counties and unenroll any ineligible households.

4. Document and preserve all information relied upon to demonstrate compliance with this pilot project and completion of accurate recertifications of eligibility. This includes but is not limited to all documentation pertaining to any excluded household members and recertification determinations. MDCYF must also preserve all

documentation it relied upon for the immediately prior certification related to the SNAP households in question.

Failure to participate in this pilot project as specified by USDA will trigger noncompliance procedures codified in 7 U.S.C. 2020(g). It may also affect Minnesota's continued participation in SNAP.

Thank you for your continued work to help address the needs of vulnerable Americans, safeguard the generosity of the American taxpayer, and make certain fraud, waste, and abuse are eradicated. If you or your staff have any questions, please have your staff contact the FNS Governmental Affairs Team at fnsgovaffairs@usda.gov.

Sincerely,

*[signature]*

Brooke L. Rollins
Secretary
U.S. Department of Agriculture

# Exhibit B



*Secretary Brooke L. Rollins*

Washington, D.C. 20250

January 14, 2026

THE HONORABLE TIM WALZ
*Governor of Minnesota*
*130 State Capitol*
*75 Rev Dr. Martin Luther King Jr. Blvd*
*St. Paul, MN 55155*

Dear Governor Walz,

As allegations regarding the highly publicized, substantial, and ongoing fraud concerning Federally funded benefit programs in the State of Minnesota continue to mount, the United States Department of Agriculture's (USDA) Food and Nutrition Service (FNS) will take additional, immediate steps to protect American taxpayer dollars. FNS regularly analyzes all available data, including data received from States, in its efforts to eliminate fraud. Though Minnesota has not provided FNS with requested State-level data, FNS has undertaken a review of available reporting, data, and other open-source information to assess fraud indicia related to the Supplemental Nutrition Assistance Program (SNAP). This review's findings will inform prompt action under a new pilot project, which the Secretary establishes pursuant to 7 U.S.C. 2026(b)(1)(A). This pilot project aims to improve program administration by States, increase the efficiency of SNAP, address deficiencies in program integrity, and enhance the delivery of SNAP benefits to eligible households.

Under 7 U.S.C. 2020(g), upon finding "a pattern of lack of compliance by a State agency," the Secretary "shall…withhold from the State" the Federal government's share of the State's administrative costs. Minnesota's persistent and public indifference to ongoing fraud and an unwillingness to comply with safeguards against fraud constitute a pattern for purposes of 7 U.S.C. 2020(g). In previous, less severe instances of noncompliance, States typically have a longer opportunity for corrective action after formal notice and an administrative process to contest a suspension of payments for administrative costs. However, pursuant to the Secretary's authority in 7 U.S.C. 2026(b)(1)(A), and with particular attention to the policy objective codified in 7 U.S.C. 2020(g), this pilot project modifies these administrative procedures to accelerate corrective action and more promptly address the significant fraud concerns in Minnesota, as well as to improve the integrity, efficiency, and delivery of SNAP to eligible households. The Secretary evaluated and will continue to evaluate all available information to determine if States' administration of SNAP exhibits "a pattern of lack of compliance" and thereby merits similarly accelerated corrective action.

Here, the Secretary determines such a pattern exists, and consequently, FNS immediately withholds the Federal government's portion of Minnesota's administrative costs for the first quarter of calendar year 2026 and concurrently seeks immediate corrective action.

If you or your staff have any questions, please have your staff contact the FNS Governmental Affairs Team at fnsgovaffairs@usda.gov.

Sincerely,

Brooke L. Rollins
Secretary of Agriculture