1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5        FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7  STATE OF CALIFORNIA, et al.,          Case No.  25-cv-06310-MMC
8              Plaintiffs,
                                         **ORDER GRANTING IN PART
9        v.                              PLAINTIFF STATES' MOTION TO
                                         ENFORCE OR EXPAND
10  UNITED STATES DEPARTMENT OF          PRELIMINARY INJUNCTION**
    AGRICULTURE, et al.,
11
             Defendants.
12

13         The Supplemental Nutrition Assistance Program ("SNAP") provides to eligible

14  households monthly benefits that can be used to purchase food.  Under the provisions of

15  the SNAP Act, see 7 U.S.C. §§ 2011-2036, the program is overseen by the Food and

16  Nutrition Service ("FNS"), a division within the Department of Agriculture ("USDA").  Each

17  participating State determines eligibility, however, and retains all SNAP applications as

18  well as other information regarding persons who qualify.

19         In May 2025, USDA sent letters to all plaintiffs, consisting of twenty-one States

20  and the District of Columbia (hereinafter, "Plaintiff States"),[1] demanding each provide to

21  USDA information from their SNAP records, including personal information about

22

23         ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
              [1] Plaintiff States, in the order set forth in the caption of the Amended Complaint,
24  are the State of California, the State of New York, the State of Arizona, the State of
    Colorado, the State of Connecticut, the State of Delaware, the District of Columbia, the
25  State of Hawai'i, the State of Illinois, the Office of the Governor ex rel. Andy Beshear, in
    his official capacity as Governor of the Commonwealth of Kentucky, the State of Maine,
26  the State of Maryland, the Commonwealth of Massachusetts, the State of Michigan, the
    State of Minnesota, the State of Nevada, the State of New Jersey, the State of New
27  Mexico, the State of Oregon, plaintiff the Office of the Governor ex rel. Josh Shapiro, in
    his official capacity as Governor of the Commonwealth of Pennsylvania, the State of
28  Rhode Island, the State of Washington, and the State of Wisconsin.

1    applicants and recipients, and, by letters dated July 25, 2025, gave notice that it would

2    withhold a significant amount of SNAP funding from any State failing to comply with such

3    demand.

4         On August 18, 2025, Plaintiff States filed a "Motion for Stay or Preliminary

5    Injunction." (See Doc. No. 59.) On September 16, 2025, the Court conducted a hearing

6    on the motion, at which time certain issues were raised for the first time. In light of the

7    new issues, the Court, on September 18, 2025, issued a Temporary Restraining Order,

8    afforded the parties leave to address the new issues, and continued the matter for

9    hearing on the question of whether a preliminary injunction should be issued.[2]

10        On October 9, 2025, after the parties had filed supplemental briefing to address

11   the new issues, the Court conducted the hearing. On October 15, 2025, having read and

12   considered the parties' respective written submissions, and having considered the

13   arguments of counsel made at both the hearing conducted September 16, 2025, and the

14   hearing conducted October 9, 2025, the Court issued a Preliminary Injunction, enjoining

15   USDA from disallowing SNAP funding based on Plaintiff States' failure to comply with the

16   demands set forth in the above-referenced letters or otherwise acting thereon. (See Doc.

17   No. 106 (hereinafter, "PI Order").)[3]

18        On November 24, 2025, USDA renewed its demand that Plaintiff States provide to

19   USDA the same, previously requested information from their SNAP records, including

20   personal information about applicants and recipients, and, on December 23, 2025, again,

21   gave notice that it would withhold a significant amount of SNAP funding from any State

22

23   _____

24   [2] In the same order, the Court denied the motion to the extent brought on behalf of
     the State of Nevada, undisputed evidence having been submitted that the State of
     Nevada "had fully complied with USDA's request for SNAP data" (see Corley Decl. ¶ 29),
25   with the result that no showing was made that USDA would withhold any SNAP funding
     from said State.  All further references to "Plaintiff States" in the instant Order refer to all
26   Plaintiffs States other than the State of Nevada.

27   [3] The Court acknowledges that a number of the sections in the instant Order
     include essentially the same language as set forth in its PI Order, but, for ease of
28   reference, finds it preferable to repeat that material herein.

United States District Court
Northern District of California

failing to comply with such demand.

On January 9, 2026, Plaintiff States filed a "Motion to Enforce or Expand the Preliminary Injunction" (see Doc. No. 116 (hereinafter, "Renewed Mot.")), whereby Plaintiff States seek, under the PI Order, an order prohibiting USDA from disallowing SNAP funding based on a failure to comply with the November 24 and December 23 letters, or, alternatively, to the extent such demands are found to exceed the scope of the existing preliminary injunction, an order preliminarily enjoining USDA from making such demands.

On February 13, 2026, the Court conducted a hearing on the Renewed Motion. Liam O'Connor, Sebastian Brady, and Paul Stein of the Office of the Attorney General of California appeared on behalf of Plaintiff States. Benjamin Kurland and Tyler Becker of the United States Department of Justice, accompanied by Brian Mizoguchi of USDA's Office of the General Counsel, appeared on behalf of USDA. Having read and considered the parties' respective written submissions, and having considered the arguments made at the hearing conducted February 13, 2026, the Court rules as follows.

## BACKGROUND

"Congress created SNAP—formerly known as the food stamp program—to alleviate hunger and malnutrition by increasing the food purchasing power of low-income households." Hall v. U.S. Dep't of Agriculture, 984 F.3d 825, 831 (9th Cir. 2020) (internal quotation, citation, and alterations omitted).  As noted, each participating State determines eligibility and retains all SNAP applications, see 7 U.S.C. § 2020(a)(1) (providing "[t]he state agency of each participating State shall have responsibility for certifying applicant households and issuing EBT [Electronic Benefit Transfer] cards"), and the USDA, through FNS, oversees the States' compliance with SNAP requirements, see 7 C.F.R. § 276.4(a) (providing "FNS shall make determinations of the efficiency and effectiveness of State agencies' administration of SNAP").

On March 20, 2025, President Donald J. Trump issued Executive Order 14243, titled "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos," wherein

1   "Agency Heads," e.g., the Secretary of Agriculture Brooke L. Rollins ("Secretary Rollins"),

2   are directed to "ensure the Federal Government has unfettered access to comprehensive

3   data from all State programs that receive Federal funding, including, as appropriate, data

4   generated by those programs but maintained in third-party databases."  <u>See</u> 90 FR

5   13681 § 3(c) (March 20, 2025).  The Executive Order states that "all necessary steps"

6   are to be taken "for the purposes of pursuing Administration priorities related to the

7   identification and elimination of waste, fraud, and abuse," and that such priorities

8   "include[ ] authorizing and facilitating both the intra- and inter- agency sharing and

9   consolidation of unclassified agency records."  <u>See id.</u> § 3(a).

10      In light thereof, USDA demanded each State agency provide certain of its SNAP

11  records to USDA.  In particular, on May 6, 2025, FNS wrote to the State agencies to

12  inform them USDA was "taking steps to require all States to work through their

13  processors to submit to the USDA the following data," for "the period beginning January

14  1, 2020, through present":

> 1.  Records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers.
>
> 2.  Records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges.

20  (<u>See</u> Doc. No. 59-7 Ex. B ("May 6 letter").)  As support for such request, FNS cited to two

21  provisions in the SNAP Act, namely, 7 U.S.C. § 2020(a)(3) and § 2020(e)(8)(A).  (<u>See</u>

22  <u>id.</u>)[4]  Although the letter did not include a deadline, it stated "[f]ailure to grant processor

23  authorizations or to take the steps necessary to provide SNAP data to FNS may trigger

24  noncompliance procedures codified at 7 U.S.C. § 2020(g)."  (<u>See id.</u>)

25      Next, on June 23, 2025, USDA published in the Federal Register a "System of

---

27      [4] Sections 2020(a)(3) and 2020(e)(8)(A) are discussed below.  The letter also cited 7 C.F.R. § 272.1(c)(1), which regulation, in essence, restates provisions set forth in § 2020(e)(8)(A) in more specific detail.

Records Notice" ("SORN"), in which USDA gave notice it would "create a new system of records," which system would be used "to validate the accuracy of eligibility determinations and strengthen SNAP and government program integrity," see 90 FR 26521-01, at 26521 (June 23, 2025), and that the "[i]nformation in this system" would be "provided by the 53 State agencies that administer SNAP and their designated vendors and/or contractors," see id. at 26522.[5]  As in the May 6 letter, the SORN asserts that the legal authority for requiring the State agencies to provide such information is 7 U.S.C. § 2020(a)(3) and § 2020(e)(8)(A).  See id. at 26521.

On July 9, 2025, Secretary Rollins wrote to all State agencies, citing Executive Order 14243 and the SORN, to inform them USDA was "requiring" them to submit to USDA, no later than the close of business on July 30, 2025, the "SNAP data" identified in the SORN.  (See Doc. No. 59-7 Ex. C.)  Thereafter, on July 23, 2025, FNS sent a letter to all State agencies, citing the May 6 letter and again requiring the agencies to transmit the SNAP data no later than July 30, 2025 (see id. Ex. D), after which, on July 25, 2025, FNS sent an additional letter reminding State agencies of the July 30 deadline and reiterating that a failure to comply "may trigger noncompliance procedures codified in 7 U.S.C. § 2020(g)" (see id. Ex. E).

On July 28, 2025, Plaintiff States filed the instant action, alleging "the federal government's unprecedented demands are unlawful" (see Compl. ¶ 21), and asserting claims under the Administrative Procedure Act ("APA"), as well as under a claim titled "Ultra Vires" and a claim brought under the Spending Clause of the Constitution.[6]

---

[5] The SORN describes the information to be provided as "records containing personally identifying information, including but not limited to SNAP participant name, Social Security Number (SSN), date of birth (DOB), residential address, [EBT] card number, and case record identifier number or other identifiers or data elements maintained by States, vendors, or contractors to identify SNAP recipients," as well as "information derived from and associated with EBT transactions, including but not limited to records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, such as applied amounts and benefit available dates."  See id.

[6] For purposes of the instant motion, Plaintiff States rely on their APA claims.

United States District Court
Northern District of California

1    On August 18, 2025, as noted, Plaintiff States filed a "Motion for Stay or

2  Preliminary Injunction," seeking an order "preliminarily enjoining both: (1) USDA's

3  demand for SNAP applicant and recipient data from Plaintiffs; and (2) USDA's institution

4  of noncompliance procedures against Plaintiffs, which USDA [had] threatened could lead

5  to significant funding cuts for States that refuse[d] to comply with the data demand." (See

6  Doc. No. 59 at 1:17-20.)

7    Shortly thereafter, on August 20, 2025, FNS sent a "formal warning" to the

8  Governor of each Plaintiff State, in which FNS asserted it would "initiate a disallowance of

9  Federal funding" if such Plaintiff State did not "transmit SNAP enrollment data" to USDA

10  within 30 days, i.e., by September 19, 2025. (See Doc No. 75-1 ("Brady Decl.") Exs. A-

11  C.)[7] [8]  The formal warning cited to 7 U.S.C. § 2020(e)(8)(A) as support for the demand.

12  The formal warning also set forth the amount FNS would disallow, which amount varied

13  from Plaintiff State to Plaintiff State, e.g., "up to $338,326,748.10" in funding to California

14  for each quarter of noncompliance and "up to $133,800,507.01" in funding to Illinois for

15  each said quarter. (See Brady Decl. Exs. A-C.)

16    On October 15, 2025, the Court preliminarily enjoined USDA "from disallowing

17  SNAP funding based on Plaintiff States' failure to comply with the demands set forth in

18  the above-discussed formal warning letters or otherwise acting thereon." (PI Order at

19  25:11-13.)

20    As also noted, USDA, on November 24, 2025, sent a new letter to Plaintiff States,

21  in which letter USDA renewed its demand for SNAP records from Plaintiff States "for the

22  period of January 1, 2020, to present." (See Doc. No. 116-2 ("Ladov Decl.") Ex. A at 5

23  ("November 24 letter").)[9]  In particular, USDA demanded such personally identifiable

24

25    [7] The letter states that,"[i]n response to State requests," the July 30 deadline had
26  been extended to August 19, 2025 (See id.)

27    [8] On August 26, 2025, the same formal warning was sent to the Mayor of the
  District of Columbia. (See Corley Decl. ¶ 51; Doc. No. 75-3 ("Campbell Decl.") ¶¶ 23-24.)

28    [9] With respect to exhibits, the Court's citations herein are to the page numbers

United States District Court
Northern District of California

United States District Court
Northern District of California

1   information regarding SNAP records as a household member's name, date of birth,

2   Social Security number, citizenship and/or immigration status, residential address,

3   income, and assets. (See id. at 8-9.) As authority for such request, USDA cited 7 U.S.C.

4   § 2020(a)(3). (See id. at 5-6)

5        Along with its demand, USDA provided what it described as "a set of data and

6   security protocols that FNS observes" with the States that have complied with USDA's

7   request for SNAP data, and asserted that, in light thereof, "there c[ould] be no good faith

8   objection to the attached protocols." (See id. at 5.) The letter essentially concluded with

9   the admonition that Plaintiff States "should be able to produce [their] records no later than

10  30 days after the date of this letter," and requested that, in the event Plaintiff States

11  "decline[d] to produce the requested data subject to the attached protocols," they "inform

12  [USDA] in writing" of "the basis for [their] lack of agreement" as well as "any proposed

13  edits to the protocols that [they] deem[ed] necessary to produce the requested data."

14  (See id. at 6.)

15       On December 8, 2025, Plaintiff States sent a letter in response to USDA's

16  November 24 letter, identifying and objecting to deficiencies in USDA's proposed

17  protocols; in particular, Plaintiff States singled out, inter alia, §§ 2.2.1 and 4.2 as allowing

18  for USDA's improper use and disclosure of data and stated "any attempt" to seek a

19  financial penalty or initiate an administrative noncompliance proceeding based on

20  USDA's new letter would "constitute a violation" of the PI Order. (See Ladov Decl. Ex. B

21  at 17 ("December 8 letter").)

22       On December 23, 2025, USDA sent a letter in response to Plaintiff States'

23  December 8 letter, with which it provided a revised protocol that included revisions to

24  §§ 2.2.1 and 4.2 (see Ladov Decl. Ex. C ("December 23 letter")) and, citing 7 C.F.R.

25  § 276.4(d)(1), informed Plaintiff States they should "construe [the] letter as [their]

26  Advance Notification" of disallowance or suspension of funds and that they had two

27  _____

28  assigned at the top of each page by this district's electronic filing system.

1    weeks to agree to its November 24 data demand. (See id. at 39-40.)

2    On January 9, 2026, Plaintiff States responded, reiterating their "significant

3    concerns with USDA's renewed data demand and proposed security protocol," and

4    asserted that, "[b]ecause USDA ha[d] terminated negotiations and initiated the

5    disallowance process," Plaintiff States "[were] again forced to return to the Court to seek

6    emergency relief to prevent USDA from cutting off the[ir] fund[ing]." (See Ladov Decl. Ex.

7    F ("January 9 letter").)

**DISCUSSION**

8

9    By the instant motion, Plaintiff States seek, under the existing preliminary

10   injunction, an order prohibiting USDA from disallowing SNAP funding based on a failure

11   to comply with the demands set forth in the November 24 and December 23 letters, or,

12   alternatively, to the extent such demands are deemed to exceed the scope of the existing

13   preliminary injunction, an order preliminarily enjoining USDA from making said demands.

14   **I.    Enforcing the Existing Preliminary Injunction**

15   A district court "has the authority to make an enforcement order to secure

16   compliance with its earlier orders and governing law." See Armstrong v. Brown, 939

17   F.Supp.2d 1012, 1018 (N.D. Cal. 2013); see also National Law Center on Homelessness

18   and Poverty v. U.S. Veterans Admin., 765 F.Supp. 1, 6 (D.D.C. 1991) (noting court has

19   "authority to issue further orders to enforce its prior injunction") (internal quotation and

20   citation omitted).

21   Plaintiff States argue USDA's renewed demand for SNAP data, as set forth in the

22   November 24 letter, constitutes a violation of the existing PI Order (see Renewed Mot. at

23   6:21-7:8), which order enjoined USDA "from disallowing SNAP funding based on Plaintiff

24   States' failure to comply with the demands set forth in the…formal warning letters or

25   otherwise acting thereon." (See PI Order at 25:11-13). The "formal warning letters"

26   referenced therein are the letters sent to Plaintiff States on August 20, 2025, i.e., the

27   warning letters that were before the Court at the time of said order (See id. at 5:17-20.)

28   The PI Order did not preliminarily enjoin USDA from requesting SNAP records

1   from Plaintiff States under all circumstances. Consequently, USDA's renewed demand

2   was not encompassed in the PI Order.

3   **II.**    **Expanding the Scope of Preliminary Relief**

4        Having found USDA's renewed demand does not fall within the scope of the PI

5   Order, the Court next addresses Plaintiff States' alternative argument that the Court

6   "should expand its preliminary injunction to bar the renewed demand." (See Renewed

7   Mot. at 11:21-23.)

8   **A. Legal Standard**

9   **1. Preliminary Injunction**

10   "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to

11   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

12   preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

13   injunction is in the public interest," Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20

14   (2008), or, alternatively, that there are "[1] serious questions going to the merits, and

15   [2] a balance of hardships that tips sharply toward the plaintiff," provided there also is a

16   "[3] likelihood of irreparable injury and [4] that the injunction is in the public interest," see

17   Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

18   **2. APA**

19        Under the APA, "[a] person suffering legal wrong because of agency action, or

20   adversely affected or aggrieved by agency action . . . is entitled to judicial review

21   thereof," see 5 U.S.C. § 702,[10] and, "[o]n such conditions as may be required and to the

22   extent necessary to prevent irreparable injury, the reviewing court . . . may issue all

23   necessary and appropriate process to postpone the effective date of an agency action or

24   to preserve status or rights pending conclusion of the review proceedings," see 5 U.S.C.

25

26        [10] The APA defines "person" to include a "public or private organization," see 5 U.S.C. § 511(2), and courts have found States are public organizations, see, e.g.,

27   Maryland Dep't of Human Resources v. Department of Health & Human Services, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985) (holding "a state is a person within the meaning of

28   the APA").

9

§ 705. "[T]he factors used to determine whether to issue a § 705 stay under the APA are the same equitable factors used to consider whether to issue a preliminary injunction." Immigrant Defenders Law Center v. Noem, 145 F.4th 972, 995 (2025).

### B. Need for Preliminary Relief

The Court addresses, in turn, the requisite factors.

#### 1. Likelihood of Success on the Merits

As noted, Plaintiff States base the instant motion on their claims brought under the APA. (See Renewed Mot. at 1:11.)

Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." See 5 U.S.C. § 706. To be reviewable under the APA, an agency action, unless otherwise "made reviewable by statute," must constitute "final agency action." See 5 U.S.C. § 704.

##### a. Final Agency Action

"As a general matter, two conditions must be satisfied for agency action to be 'final.'" Bennett v. Spear, 520 U.S. 154, 177 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." Id. at 177-78 (internal quotation and citation omitted). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. at 178 (internal quotation and citation omitted).

Here, Plaintiff States assert the demand for SNAP data constitutes final agency action. The Court agrees. On November 24, 2025, USDA, as noted, wrote the State agencies, directing them to provide the requested SNAP data "no later than 30 days after the date of [said] letter" (see Ladov Decl. Ex. A at 6), after which, in its December 23

United States District Court
Northern District of California

1   letter, USDA made clear its determination that the concerns Plaintiff States raised in their

2   December 8 letter "provided no basis for [the] continued withholding of data" (see Ladov

3   Decl. Ex. C. at 34), and that Plaintiff States should "construe [said] letter as [their]

4   Advance Notification pursuant to 7 C.F.R. 276.4(d)(1)", i.e., the warning required prior to

5   the suspension or disallowance of federal funding (see id. at 39-40). There is nothing

6   tentative nor, as a practical matter, interlocutory about USDA's stated position, and,

7   clearly, serious legal consequences are expected to flow.

8                  **b. Whether USDA's Renewed Demand is Contrary to Law**

9          Plaintiff States first argue the renewed demand is contrary to law.

10         In response, USDA, at the outset, contends Plaintiff States lack Article III standing

11  because the claimed injury, the unlawful sharing of data, is not "sufficiently concrete or

12  imminent" to establish an "injury-in-fact" (see Doc. No. 118 ("Opp.") at 12:23-13:4), a

13  required element of Article III standing, see TransUnion LLC v. Ramirez, 594 U.S. 413,

14  423 (2021) (listing elements of Article III standing). The Court is not persuaded. As

15  discussed above, Plaintiff States face a loss of federal funding (see Ladov Decl. Ex. C. at

16  39), an injury sufficient for purposes of standing. See City and County of San Francisco v.

17  Trump, 897 F.3d 1225, 1236 (9th Cir. 2018) (holding "likely" loss of federal funding

18  "satisfies Article III's standing requirement") (internal quotation and citation omitted);

19  National Urban League v. Ross, 508 F.Supp.3d 663, 688 (N.D. Cal. 2020) (holding "the

20  possible loss of federal funds is a sufficient injury to establish Article III standing"). The

21  Court next turns to the parties' respective arguments as to whether USDA's renewed

22  demand is contrary to law.

23         In support of their position, Plaintiff States first point to the absence of "an agreed-

24  upon data and security protocol, as required by § 2020(a)(3)." (See Renewed Mot. at 7:7-

25  8); see also 7 U.S.C. § 2020(a)(3) (providing "records…necessary to determine whether

26  the program is being conducted in compliance with this chapter…shall…be made

27  available for inspection and audit by the Secretary, subject to data and security protocols

28  agreed to by the State agency and Secretary"). In response, defendants contend the

words "subject to," as used in § 2020(a)(3), should be construed to mean that the "terms of sharing will be governed by or controlled by the terms of any protocols on which the State and USDA agree" (see Opp. at 10:21-22) (emphasis omitted), not that an agreement on protocols is a "condition precedent" to USDA's entitlement to the data (see Opp. at 11:5-6).

The Court, again, is not persuaded. As the Supreme Court has noted, "identical words and phrases within the same statute should normally be given the same meaning," FCC v. AT&T Inc., 562 U.S. 397, 408 (2011) (internal quotation and citation omitted), and here, in other subsections of 7 U.S.C. § 2020, the phrase "subject to" is clearly used to indicate a condition precedent. See, e.g., § 2020(k) ("subject to the approval of the President . . ."); § 2020(o)(2) ("subject to the Secretary's approval . . ."); § 2020(t)(1) ("[s]ubject to the availability of appropriations . . .")[11]

USDA next contends Plaintiff States have "refuse[d] to agree to reasonable data and security protocols as a means to avoid providing the data," and that "nothing in the statute empowers [them]" to do so. (See Opp. at 11:6-7.) The Court concurs that a State is not entitled to unreasonably decline to agree to a protocol. The question thus presented is whether Plaintiff States have acted reasonably in refusing to agree to USDA's proposed protocols.

In that regard, Plaintiff States assert they cannot agree to the proposed protocols because said protocols would require them to violate 7 U.S.C. § 2020(e)(8). In response, USDA argues, the constraints set forth in § 2020(e)(8)(A) "appl[y] to a different set of information" than that demanded under § 2020(a)(3) and thus are inapplicable to its renewed demand. (See Opp. at 9:13-14.)

7 U.S.C. § 2020(a)(3), the subsection on which USDA relies, provides:

(3) Records

---

[11] The notable exception is § 2020(g) ("subject to administrative and judicial review"). Needless to say, there cannot be review of something that has not yet happened.

> (A) In general
>
> Each State agency shall keep such records as may be necessary to determine whether the program is being conducted in compliance with [the SNAP Act] (including regulations issued under [the SNAP Act).
>
> (B) Inspection and audit
>
> All records, and the entire information systems in which records are contained, that are covered in subparagraph (A) shall—
>
>> (i) be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary . . . .

See 7 U.S.C. § 2020(a)(3).

7 U.S.C. § 2020(e), the subsection on which Plaintiff States rely, requires each State agency to have a "plan of operation" that "shall provide":

> (8) safeguards which prohibit the use or disclosure of information obtained from applicant households, except that—
>
>> (A) the safeguards shall permit—
>>
>>> (i) the disclosure of such information to persons directly connected with the administration or enforcement of the provisions of this chapter,[12] regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs; and
>>>
>>> (ii) the subsequent use of the information by persons described in clause (i) only for such administration or enforcement[.]

See 7 U.S.C. § 2020(e)(8).

"A bedrock principle of statutory interpretation is that statutes should be interpreted so as to give effect to all of its provisions." U.S. v. Malley, 307 F.3d 1032, 1034 (9th Cir. 2002). Courts "must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." See Boise Cascade Corp. v. U.S. E.P.A., 942 F.2d 1427, 1432 (9th Cir. 1991); see also U.S. v.

---

[12] The referenced "chapter" is the SNAP Act.

13

United States District Court
Northern District of California

1   Firestone Tire & Rubber Co., 455 F.Supp. 1072, 1079 (D.D.C. 1978) ("It is a well-

2   accepted tenet of statutory construction that, whenever possible, a statute should

3   be interpreted as a harmonious whole.")

4          Here, the two provisions, § 2020(a)(3) and § 2020(e)(8), while differing to a certain

5   extent as to coverage, also overlap to a considerable extent, in that the data referenced

6   in § 2020(a)(3) (essentially all records) encompasses the data referenced in

7   § 2020(e)(8)(A) (information obtained from applicant households), and the approved

8   recipients referenced in § 2020(e)(8)(A) (persons directly connected with the

9   administration or enforcement of SNAP and other federally-assisted programs)

10  encompass the approved recipient referenced in § 2020(a)(3) (the Secretary of the

11  United States Department of Agriculture). Moreover, both clearly provide for mandatory

12  restrictions on disclosure,[13] and, if those subsections are viewed as two completely

13  disconnected and independent provisions as USDA suggests, a State could simply

14  ignore the protections provided in the latter by agreeing, under the former, to protocols

15  providing for distribution far beyond those limitations, a result it is unlikely Congress

16  intended. Indeed, the SNAP Act expressly contemplates disciplinary consequences if a

17  State were to violate its plan of operation, which plan, as noted, is subject to the strictures

18  imposed by § 2020(e)(8). See 7 U.S.C. 2020(g) (providing for loss of funding where State

19  "fail[s]…without good cause to comply with…the State plan of operation"). The Court thus

20  turns to the question of whether acceptance of the proposed protocols would have the

21  potential of putting Plaintiff States in the position of violating § 2020(e)(8).

22         As noted, Plaintiff States' primary concern is with §§ 2.2.1 and 4.2. The Court,

23

24         [13] As set forth above, § 2020(a)(3) allows disclosure only upon the adoption of
    "data and security protocols" to which the State agrees, and § 2020(e) requires each
25  States' plan of operation to provide for "safeguards" that "prohibit the use or disclosure of
    information obtained from applicant households," the one limited exception allowing
26  disclosure "to persons directly connected with the administration or enforcement of the
    provisions of [the SNAP Act], regulations issued pursuant to [the SNAP Act], Federal
27  assistance programs, or federally-assisted state programs" (see 7 U.S.C §
    2020(e)(8)(A)(i)), and "only" for the purpose of "such administration or enforcement" (see
28  7 U.S.C. § 2020(e)(8)(A)(ii).

United States District Court
Northern District of California

having considered §§ 2.2.1 and 4.2, both separately and in the context of the protocols as a whole, agrees with Plaintiff States that those sections, as presently written, would allow USDA to share the requested data with entities other than those covered by § 2020(e)(8)(A)(i), thereby effectively serving as a conduit between Plaintiff States and prohibited entities. Although USDA states it does not intend to use the data other than for authorized purposes, the proposed protocol, as Plaintiff States note, relies on the same SORN (see Ladov Decl. Ex. D. § 5.1) in which the Court, as set forth in its prior order, found USDA "announced its intent to use [the collected data] in ways well beyond those permitted under § 2020(e)(8)(A)(ii)." (See PI Order at 18:14-16.)[14] Although USDA further states it is "working on amending the SORN" (see Opp. at 9 n.2), USDA, as Plaintiff States point out, made similar representations "months ago" without any published change to date (see Renewed Mot. at 7:21).

Next, citing 5 U.S.C. § 552a(o)(1), Plaintiff States argue they cannot agree to USDA's proposed protocols because, according to Plaintiff States, the Computer Matching Act prohibits them "from disclosing the demanded records without a necessarily detailed computer matching agreement", and that, to date, no such agreement has been reached between Plaintiff States and USDA. (See Renewed Mot. at 13:14-14:2.)[15]

The Computer Matching Act is part of the Privacy Act and provides, in relevant part, that "[n]o record which is contained in a system of records may be disclosed to a

---

[14] To the extent Plaintiff States argue § 2020(a)(3)'s use of "inspect and audit" does not entitle USDA to *possession of the data*" (see Renewed Mot. at 15:27-16:1) (emphasis in original), the Court is not persuaded. As USDA points out, the interpretation proposed by Plaintiff States would make USDA's access to the data of little practical value.

[15] To the extent USDA argues Plaintiff States lack Article III standing to rely on the Computer Matching Act as a basis not to comply with the demand because, according to USDA, the Privacy Act "protects the information of only individuals" and "provides individuals with a cause of action, not States" (see Opp. at 14:11-22), the Court disagrees. Plaintiff States have not brought a cause of action under the Computer Matching Act, and, in any event, are obligated under its provisions to comply with its terms. See Calumet Industries, Inc. v. Brock, 807 F.2d 225, 228-29 (D.C. Cir. 1986) (explaining parties fall within statute's zone of interest if they "show they are directly, even if only minimally, regulated by the agency action they challenge").

1  recipient [Federal] agency or non-Federal agency for use in a computer matching

2  program except pursuant to a written agreement between the source agency and the

3  recipient agency or non-Federal agency." See 5 U.S.C. § 552a(o)(1). A "source agency"

4  is defined as "any agency which discloses records contained in a system of records to be

5  used in a matching program, or any State or local government, or agency thereof, which

6  discloses records to be used in a matching program," see id. § 552a(a)(11), and a

7  "recipient agency" is defined as "any agency, or contractor thereof, receiving records

8  contained in a system of records from a source agency for use in a matching program,"

9  see id. § 552a(a)(9).[16]

10       Plaintiff States assert "USDA has already expressed its intent to use the demand

11  records in a computer matching program." (See Renewed Mot. at 13:13-14.)

12       In response, USDA, while acknowledging it intends to use the SNAP records in

13  computerized comparisons with data from other federal entities, argues the data it seeks

14  from Plaintiff States does not fall within the scope of the Computer Matching Act because

15  "there is no comparison being run between State and USDA databases" (see Opp. at

16  16:3), in that USDA will be creating a database with the information it receives from

17  Plaintiff States, not matching an existing database with it.

18       Neither party has offered, and the Court has not independently found, any case

19  addressing the application of 5 U.S.C. § 552a(o)(1). The Court, thus considering the

20  matter as one of first impression, finds USDA has the stronger argument. Although, in

21  this particular instance, USDA's plans for the requested data are known, there is no

22

23  _____

24  [16] The required written agreement must specify, inter alia, the following: (1) "the
     purpose and legal authority for conducting the program"; (2) "the justification for the
25  program and the anticipated results, including a specific estimate of any savings"; (3) "a
     description of the records that will be matched, including each data element that will be
     used, the approximate number of records that will be matched, and the projected starting
26  and completion dates of the matching program"; (4) "procedures for the retention and
     timely destruction of identifiable records"; (5) "procedures governing the use by a
27  recipient agency or non-Federal agency of records provided in a matching program by a
     source agency, including procedures governing return of the records to the source
28  agency or destruction of records in such program." (See 5 U.S.C. § 552a(o)(1).)

indication in the statute that it is intended to apply to matching agreements an initial

receiver of unmatched data decides to enter at a later time, perhaps years later, with

another entity. Rather, when and if those two entities later engage in a matching program

covered by the Computer Matching Act, those two entities will need to comply with its

requirements.[17]

### c. Whether USDA's Renewed Demand is Arbitrary and Capricious under the APA

The Court addresses, in turn, the grounds on which Plaintiff States assert the

renewed demand is arbitrary and capricious.

### (1) Failure to Consider Important Issues

Ordinarily, agency action is deemed "arbitrary and capricious" when it "entirely

fail[s] to consider an important aspect of the problem." See Motor Vehicle Mfrs. Ass'n of

the U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Here, Plaintiff States assert USDA's renewed demand is arbitrary and capricious

because, according to Plaintiff States, USDA failed to consider: (a) its proposed

protocol's asserted "fail[ure] to comply with statutory restrictions on data disclosure and

use contained within the SNAP Act…and the Computer Matching Act" (see Renewed

Mot. at 14:13-15); (b) the proposed protocol's "lack[] [of] enforcement mechanisms" (see

id. at 14:16-18); (c) cybersecurity risks, such as "illegal use, disclosure, and hacking,"

posed by the scope of the demand (see id. at 15:4-5); (d) Plaintiff State's asserted

inability to "produce the demanded records 'no later than 30 days' after receipt of the

demand" (see id. at 15:16-19).

---

[17] The evidence offered by Plaintiff States regarding prior matching agreements entered between the States and USDA does not support a finding to the contrary, as those agreements pertain to established programs in which USDA and the signatory State(s) make their respective records available to each other for computerized comparison. (See, e.g., Doc. No. 116-5 ("Reyes Decl.") Ex. A at 8-9 (agreement between States and USDA governing program for matching data between State agencies and FNS database to which each State agency has access); Doc. No. 116-4 ("Reagan Decl.") Ex. A at 7-8 (agreement between State agency and USDA governing use of State's SNAP data for purpose of measuring "accuracy of State eligibility and benefit determinations" as reported to FNS).)

1    Although, in negotiating a protocol, the parties were not in accord as to any of the

2    above issues, and although the Court has not agreed with every position taken by USDA

3    thereon, those positions were set forth in the above-referenced exchange of letters (see

4    Ladov Decl. Exs. A, C), and, consequently, there is an insufficient showing that the

5    above-referenced concerns were not considered.

### (2) Changed Agency Practice

7    An agency action is deemed arbitrary and capricious if the agency fails to provide

8    "a satisfactory explanation" therefor, see F.C.C. v. Fox Television Stations, Inc., 556 U.S.

9    502, 513 (2009), and "the requirement that an agency provide reasoned explanation for

10    its action would ordinarily demand that it display awareness that it *is* changing position,

11    see id. at 515 (emphasis in original) (noting "agency may not, for example, depart from a

12    prior policy *sub silentio*").

13    Here, Plaintiff States assert "USDA has failed to acknowledge and explain its

14    departure from its long-standing practice of collecting only limited sample datasets to

15    review." (See Renewed Mot. at 18:12-14.) In the above-referenced exchange of letters,

16    however, USDA expressly acknowledged its departure from prior practice and the

17    reasons therefor. (See Ladov Decl. Ex. C ¶ 3 (stating "FNS wishes now to examine a

18    *complete* dataset, instead of the self-selected samples States collect"; "conclud[ing] that it

19    must make a more complete use of its authority to review the States' administration and

20    enforcement of SNAP") (emphasis in original); see also id. ¶ 1 (setting forth data obtained

21    as to funds "erroneously spent or lost to fraud").)

### (3) Circumvention of Existing Privacy Protections

23    Plaintiff States contend the renewed demand is arbitrary and capricious because

24    USDA, having "previously found that it lacks authority" for such action, "intends to initiate

25    a one-tier quality control process" (see Renewed Mot. at 21:12-13) (emphasis omitted),

26    i.e., one "by which only USDA would review SNAP cases," in place of "the current two-

27    tiered process," i.e., one "by which States review SNAP cases…followed by Federal re-

28    reviews of a subset" (see Opp. at 21:6-13). As USDA points out, however, "[n]owhere in

18

USDA's actions has it suggested disestablishing [the current two-tiered process]." (See id. at 21:11-12.)

Next, Plaintiff States contend the renewed demand is arbitrary and capricious because, according to Plaintiff States, it allows USDA to "circumvent privacy protections that Congress has established for pooling of participant data" for "longitudinal databases" (see Renewed Mot. at 22:9-14). As USDA points out, however, the statute on which Plaintiff States rely governs "longitudinal studies conducted by State agencies, not USDA" (see Opp. at 21:20-22), and, as USDA explained in the above-referenced exchange of letters, if USDA received the data in the form governed by said statute, "it would be akin…to providing USDA hundreds of thousands of combination locks without any of the codes" (see Ladov Decl. Ex. C ¶ 4(b)(i)).

Lastly, Plaintiff States contend the renewed demand is arbitrary and capricious because, according to Plaintiff States, USDA's data demands allow it to "circumvent privacy protections built into existing systems that address its purported goals." (See Renewed Mot. at 23:8-9.) As USDA explained in the above referenced exchange of letters, however, "[s]imply because other mechanisms exist to detect fraud does not preclude USDA from consistently striving for better, more efficient methods of detecting waste, fraud, and abuse." (See Ladov Decl. Ex. C ¶ 4; see also id. ¶ 1(setting forth statistics reflecting waste and fraud under existing systems).

### (4) Summary: Likelihood of Success on the Merits

The Court finds Plaintiff States have shown a likelihood of success on the merits as to their claim that USDA's demand and threatened disallowance of funding are contrary to the SNAP Act, and, consequently, the first factor weighs in favor of the relief sought. In all other respects, Plaintiff States have failed to make the requisite showing.

### 2. Likelihood of Irreparable Harm

The amount of SNAP funds subject to disallowance for lack of compliance with the renewed demand is substantial. (See Doc. No. 75-1 ("Second Brady Decl.") Ex. C; Doc. No. 85-2 ("Pham Decl.") ¶¶ 30, 34.)

United States District Court
Northern District of California

1    Additionally, Plaintiff States have submitted evidence that the threatened funding

2  cuts likely would require them "to cut staffing and otherwise greatly reduce their ability to

3  comply with their obligations under the SNAP Act to administer benefits." (See Renewed

4  Mot. at 25:8-11 (internal quotation and citation omitted); see also, e.g., Doc. 59-6

5  ("Fernandez-Garcia Decl.") ¶ 22.)

6    Although USDA argues the claimed injuries can be remedied by a monetary

7  award, namely, recovery of the withheld funds, and, consequently, do not constitute the

8  irreparable harm required for preliminary injunctive relief, the "denial of reimbursements"

9  by the federal government can constitute "irreparable" injury, as such denial can cause

10  "economic injuries for which monetary damages are not available."  See Washington v.

11  Trump, 145 F.4th 1013, 1036-37 (9th Cir. 2025); see also East Bay Sanctuary Covenant

12  v. Biden, 993 F.3d 640, 677 (9th Cir. 2021) (holding "significant change[s] in

13  [organization's] programs" constitute irreparable "intangible injury").

14    USDA next argues Plaintiff States have no need for preliminary relief because they

15  can "avoid their allegedly imminent irreparable harms through, continued negotiation," or,

16  ultimately, by "administrative appeal under 7 C.F.R. § 276.7" (see Opp. at 23:12-13),

17  whereby Plaintiff States would be entitled to a stay of the imposition of disallowances until

18  such time as their administrative remedies are exhausted (see 7 C.F.R. § 276.7(e)). As

19  discussed above, however, negotiations have ended, and, as explained in the PI Order,

20  the availability of an administrative appeal does not preclude a finding of irreparable

21  harm. In particular, the cited administrative review procedures do not use mandatory

22  language, see 7 U.S.C. §§  2023(a)(1), (a)(3) (providing State agency aggrieved by

23  USDA action "may" seek administrative review); see also 7 C.F.R. § 276.7(a) (providing

24  State agency "may" appeal claim asserted by FNS), and the Supreme Court has held the

25  failure to avail oneself of an administrative review procedure does not bar an APA claim

26  where the review is "optional," see Darby v. Cisneros, 509 U.S. 137, 146-47 (1993)

27  (holding, under APA, exhaustion of administrative remedies required only where "statute

28  or rule clearly mandates").

1    Accordingly, the Court finds Plaintiff States have shown they are likely to incur

2    irreparable harm, and, consequently, the second factor weighs in favor of the relief

3    sought.

4              **3.  Balance of Hardships/Public Interest**

5    Where, as here, the federal government is the defendant, the two remaining

6    factors, the balance of hardships and the public interest, "merge." See Immigrant

7    Defenders Law Center, 145 F.4th at 994.  A district court thus balances "the public's

8    interest" as asserted by the federal government "with [the] potential harms" to the plaintiff.

9    See id.

10    The hardships to Plaintiff States are set forth above.  The public interest asserted

11    by USDA is the public's interest in eliminating waste, fraud, and abuse in government

12    assistance programs. Although USDA argues a "[p]reliminary review of data provided by

13    States complying with USDA's request has uncovered potentially millions in waste, fraud,

14    and abuse in the SNAP program" (see Opp. at 24:10-13), USDA has not made clear

15    whether its preliminary observations pertain to records submitted by all, or at least a

16    significant number of, compliant States, or whether they represent an aberrant situation

17    involving one or only a few compliant States, thereby substantially reducing their potential

18    relevance as to the circumstances existing in Plaintiff States.

19    Accordingly, the Court finds the balance tips in favor of Plaintiff States, and,

20    consequently, the third and fourth factors weigh in favor of the relief sought.

21              **4.  Conclusion: Need for Preliminary Relief**

22    The Court finds all relevant factors weigh in favor of the Court's expanding the

23    preliminary injunctive relief previously ordered.

24    **C. Remaining Issues**

25    USDA, again, requests, in the event the Court enters a preliminary injunction, it

26    issue an order imposing a bond as well as an order staying the injunction during the

27    pendency of any appeal or, alternatively, administratively staying the injunction for seven

28    days to afford USDA an opportunity to request a stay from a higher court. (See Opp. at

United States District Court
Northern District of California

24:21-25:5.)

At the outset, the Court, again, declines to impose a bond, as no showing has been made that a "realistic likelihood of harm" to USDA will occur if, during the pendency of the preliminary injunction, it cannot disallow SNAP funding to Plaintiff States. See Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (holding "district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [its] conduct") (internal quotation and citation omitted). In particular, if Plaintiff States ultimately are unable to show judgment should be entered in their favor, USDA could, at that time, impose any amount of disallowance it finds appropriate, see 7 U.S.C. § 2020(g), and can withhold those funds from future disbursements once such funding is reinstated.

Next, a stay pending appeal is appropriate only where, inter alia, the appellant "has made a strong showing that [it] is likely to succeed on the merits." See Nken v. Holder, 556 U.S. 418, 434 (2009).  Here, as set forth above, USDA has not made such showing.  Although the Court, in some instances, might be amenable to an administrative stay, in this instance, if such a stay were granted, USDA could forthwith issue the formal warnings necessary to proceed with the threatened disallowances. Under such circumstances, the Court declines to enter an administrative stay.

## CONCLUSION

For the reasons stated above, Plaintiff States' motion is hereby GRANTED IN PART, and USDA is PRELIMINARILY ENJOINED from disallowing SNAP funding based on Plaintiff States' failure to comply with the demands set forth in the November 24 and December 23 letters or otherwise acting thereon.

    IT IS SO ORDERED.

Dated: February 26, 2026

MAXINE M. CHESNEY
United States District Judge