BRETT A. SHUMATE
Assistant Attorney General
TYLER BECKER
Counsel to the Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BENJAMIN S. KURLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>              *Plaintiffs*,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>              *Defendants*. | Case No. 3:25-cv-06310-MMC<br><br>**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST USDA'S OFFICE OF INSPECTOR GENERAL**<br><br>Date: June 26, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................ 1

INTRODUCTION ............................................................................................................... 2

BACKGROUND ................................................................................................................. 3

    A.  The Supplemental Nutrition Assistance Program ................................................ 3

    B.  The Inspector General Act ................................................................................... 4

    C.  OIG's data requests ............................................................................................. 5

    D.  Procedural history ............................................................................................... 6

LEGAL STANDARD .......................................................................................................... 6

    A.  Lack of subject matter jurisdiction ...................................................................... 6

    B.  Failure to state a claim ........................................................................................ 7

ARGUMENT ...................................................................................................................... 8

I.  California and Michigan's claims against OIG fail to challenge final agency action ............. 8

    A.  Final agency action .............................................................................................. 8

    B.  OIG's data requests are not final agency action ................................................... 8

II.  California and Michigan fail to plead a cognizable *Ultra Vires* claim ................................ 10

III. California and Michigan fail to plead a cognizable Spending Clause claim ........................ 13

CONCLUSION .................................................................................................................. 14

<strong>TABLE OF AUTHORITIES</strong>

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 7, 8

*Ass'n of Am. Med. Colls. v. United States*,
  217 F.3d 770 (9th Cir. 2000) ......................................................................................... 9

*Bd. of Governors, Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
  502 U.S. 32 (1991) ........................................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 7, 8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ....................................................................................................... 8

*Bhd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emps. v. Ass'n for Benefit of Non-Cont. Emps.*,
  380 U.S. 650 (1965) ..................................................................................................... 12

*Boire v. Greyhound Corp.*,
  376 U.S. 473 (1964) ..................................................................................................... 12

*Chicago & S. Air Lines v. Waterman S. S. Corp.*,
  333 U.S. 103 (1948) ....................................................................................................... 9

*Cook v. Brewer*,
  637 F.3d 1002 (9th Cir. 2011) ....................................................................................... 7

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
  543 F.3d 586 (9th Cir. 2008) ..................................................................................... 2, 8

*Fed. Express Corp. v. U.S. Dep't of Com.*,
  39 F.4th 756 (D.C. Cir. 2022) ................................................................................ 11, 12

*Gold Club SF, LLC v. U.S. Small Bus. Admin.*,

   No. 24-CV-04241-LJC, 2025 WL 2798917 (N.D. Cal. Sep. 30, 2025) ..................................... 9

*Hain Celestial Grp., Inc. v. Palmquist*,

   607 U.S. 421 (2026) ..................................................................................................................... 6

*Jobs, Training & Services, Inc. v. East Tex. Council*,

   50 F.3d 1318 (5th Cir. 1995) ....................................................................................................... 9

*Keith v. Soc. Sec. Admin. Off. of Inspector Gen.*,

   No. CV 3:23-MC-5-JMV, 2023 WL 3184013 (N.D. Miss. May 1, 2023) ................................ 9

*Kempe's Lessee v. Kennedy*,

   9 U.S. (5 Cranch) 173 (1809) ...................................................................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

   511 U.S. 375 (1994) ..................................................................................................................... 7

*Las Americas Immigrant Advoc. Ctr. v. Biden*,

   571 F. Supp. 3d 1173 (D. Or. 2021) ......................................................................................... 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,

   519 F.3d 1025 (9th Cir. 2008) ..................................................................................................... 8

*Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*,

   180 F.3d 1192 (10th Cir. 1999) .............................................................................................. 9, 10

*Navarro v. Block*,

   250 F.3d 729 (9th Cir. 2001) ....................................................................................................... 7

*Norton v. S. Utah Wilderness All.*,

   542 U.S. 55 (2004) ....................................................................................................................... 8

*Nuclear Regul. Comm'n v. Texas*,

   605 U.S. 665 (2025) ............................................................................................................... 11, 12

*Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11, Cheyenne*,

   393 U.S. 233 (1968) ................................................................................................................... 11

*Pac. Mar. Ass'n v. NLRB*,

827 F.3d 1203 (9th Cir. 2016) .................................................................................................. 11

*R.I. Dep't of Env't Mgmt. v. United States*,

304 F.3d 31 (1st Cir. 2002) ...................................................................................................... 11

*Rattlesnake Coal. v. EPA*,

509 F.3d 1095 (9th Cir. 2007) .................................................................................................... 8

*Royal Canin U.S.A., Inc. v. Wullschleger*,

604 U.S. 22 (2025) ...................................................................................................................... 7

*Somers v. Apple, Inc.*,

729 F.3d 953 (9th Cir. 2013) ...................................................................................................... 7

*South Dakota v. Dole*,

483 U.S. 203 (1987) .................................................................................................................. 13

*TransUnion LLC v. Ramirez*,

594 U.S. 413 (2021) .................................................................................................................... 7

*U.S. News & World Rep., L.P. v. Chiu*,

No. 24-CV-00395-WHO, 2024 WL 2031635 (N.D. Cal. May 7, 2024) .................................... 9

*United States v. Westinghouse Elec. Corp.*,

788 F.2d 164 (3d Cir. 1986) ....................................................................................................... 9

*Univ. of Med. & Dentistry of N.J. v. Corrigan*,

347 F.3d 57 (3d Cir. 2003) ......................................................................................................... 9

*Walker v. Arizona*,

158 F.4th 971 (9th Cir. 2025) ..................................................................................................... 7

**Constitutional Provisions**

U.S. Const., art. I, § 8, cl. 1 ...................................................................................................... 13

**Statutes**

5 U.S.C. § 402 .............................................................................................................................. 4

5 U.S.C. § 404 .............................................................................................................................. 4

5 U.S.C. § 405 ............................................................................................................. 4

5 U.S.C. § 406 ............................................................................................. 4, 5, 10, 13

5 U.S.C. § 704 ............................................................................................................. 8

5 U.S.C. §§ 401–424 .................................................................................................... 4

7 U.S.C. § 2020 ...................................................................................................... 3, 13

7 U.S.C. § 2025 ........................................................................................................... 3

7 U.S.C. §§ 2011–2036d ............................................................................................. 3

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 7

Fed. R. Civ. P. 12 .................................................................................................... 1, 7

Local Rules 7-1 ........................................................................................................... 1

Local Rules 7-2 ........................................................................................................... 1

**Regulations**

7 C.F.R. § 276.4 ........................................................................................................ 13

**Other Authorities**

U.S. Dep't of Agric., Supplemental Nutrition Assistance Program (updated March 12, 2026), https://www.fns.usda.gov/snap/supplemental-nutrition-assistance-program ............................ 3

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST USDA'S OFFICE OF INSPECTOR GENERAL**

PLEASE TAKE NOTICE that on June 26, 2026, at 9:00 a.m., in Courtroom 7 of the above-entitled court, located at 455 Golden Gate Avenue, San Francisco, California, Defendants the U.S. Department of Agriculture ("USDA"), Secretary Brooke Rollins, and the U.S. Department of Agriculture's Office of Inspector General (collectively, "Defendants"), will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 12 and Local Rules 7-1 and 7-2 to dismiss Plaintiff States' claims against USDA's Office of Inspector General articulated in Plaintiffs' Second Amended Complaint, ECF No. 146.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the proposed order and declaration supporting this Motion; the pleadings on file in this action; and any other matters properly before the Court.

## INTRODUCTION

While the Court has extensively addressed Plaintiffs' claims against the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), it has yet to address Plaintiffs' claims against the Office of Inspector General ("OIG"), a distinct and statutorily independent unit within USDA. These claims—which only Plaintiff States California and Michigan advance—include Administrative Procedure Act ("APA") claims to enjoin OIG's separate data requests pursuant to different authorities than those cited by FNS. California and Michigan also allege a non-statutory *ultra vires* claim and a claim under the Spending Clause of the U.S. Constitution. Plaintiff States have not previously sought to preliminarily enjoin OIG's data requests pursuant to these claims, nor has OIG formally sought to enforce compliance with its requests.

The Court should dismiss all of California and Michigan's claims against OIG.[1] First, the Court should dismiss those States' APA claims against OIG because Inspector General inspections are not final agency action, which is required to bring suit under the APA. In fact, in the Ninth Circuit, final agency action is a jurisdictional prerequisite to bringing an APA suit. *See Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008). Rather, inspector general inspections are iterative processes in which OIG seeks information, and they do not impose legal consequences on request recipients without additional action. Indeed, as reflected in Plaintiffs' complaint, these requests evolve based on back-and-forth between OIG and the recipient entity. Moreover, absent a subpoena, OIG cannot independently enforce its requests under the Inspector General Act authorities it invoked. For these, and other reasons, the Court should find that OIG's data requests are not final agency actions and dismiss those claims for lack of subject matter jurisdiction.

Second, as the Court has already recognized in relation to FNS, Plaintiffs cannot advance an *ultra vires* claim where the APA provides the relevant statutory review scheme. *See* Order Granting Pl. States' Mot. for Prelim. Inj. at 7, ECF No. 106 ("First PI"). This is true, even where a plaintiff fails to establish their APA claim based on lack of final agency action. Nor, in any event, do

---

[1] Defendants bring this motion to dismiss only the claims against OIG. Defendants reserve the right to answer, move to dismiss, or otherwise bring other threshold challenges to Plaintiffs' claims against FNS, including jurisdictional challenges.

California and Michigan alleged an *ultra vires* act that clears the extraordinarily high bar necessary to adequately plead a non-statutory review claim.

Finally, California and Michigan fail to state a claim based on the Spending Clause of the U.S. Constitution for two reasons. First, States have long had notice that participation in the Supplemental Nutrition Assistance Program, also known as "SNAP", comes with the condition that OIG may request information related to the program. Second, that condition in no way alters California and Michigan's ability to receive federal funding, since OIG cannot itself condition funding, or impose any penalty, for failing to comply with its requests.

The Court should, therefore, dismiss California and Michigan's claims against OIG.

## BACKGROUND

The Court is familiar with the background of this matter and proceedings to date as it relates to Plaintiffs' claims against FNS, having three times summarized them. *See* Order Granting TRO at 2–5, ECF No. 83; First PI at 2–6; Order Granting in Part and Denying in Part Pl. States' Mot. to Enforce or Expand Prelim. Inj. ("Second PI") at 3–8, ECF No. 134. The three data requests OIG made to three of the Plaintiff States are separate from FNS's requests and seek separate data pursuant to separate statutory authorities. These requests have not yet been the focus of this litigation.

### A. The Supplemental Nutrition Assistance Program

SNAP is the successor to the Food Stamp Program and is the nation's largest nutrition assistance program. *See* Food and Nutrition Act of 2008, 7 U.S.C. §§ 2011–2036d ("SNAP Act"); *see also* U.S. Dep't of Agric., Supplemental Nutrition Assistance Program (updated March 12, 2026), https://www.fns.usda.gov/snap/supplemental-nutrition-assistance-program. Under the scheme established by Congress, the Program is run as a partnership between the federal government and the States, a term which includes the District of Columbia, Guam, and the United States Virgin Islands. At the federal level, FNS is responsible for overseeing the States' administration of SNAP, including reviewing the States' Plans of Operation and their payment accuracy. 7 U.S.C. § 2020(d). Meanwhile, States run the day-to-day operations of the Program through their designated State Agencies. *See id.* § 2020(a). USDA pays half the cost of the States' administrative expenses and the full cost of all SNAP benefits. *See Id.* § 2025.

3

## B.  The Inspector General Act

The Inspector General Act, 5 U.S.C. §§ 401–424, defines the duties and powers of agency inspectors general, including USDA's OIG.  Specifically, agency inspectors general are authorized to coordinate audits and investigations[2] related to the programs and operations of their agency, take steps to promote economy and efficiency in the administration of programs and operations, prevent and detect fraud and abuse in such programs and operations, and inform their agency head about problems and deficiencies relating to the administration of programs and operations.  5 U.S.C. § 404(a); *see also id.* § 402(b).  To fulfill these duties and powers, the Inspector General Act established OIGs as "independent and objective units" separate from their respective agencies, *id*. § 402(b), and authorized the agency inspectors general to determine independently which "investigations and reports relating to the administration of the agency's programs and operations" are "necessary and desirable."  *Id*. § 406(a)(2).

Section 406 of the Inspector General Act provides inspectors general with several authorities under which they can request records related to their duties.  First, Section 406(a)(1) provides that inspectors general are authorized "to have timely access" to "all records, reports, audits, reviews, documents, papers, recommendations, or other materials" available to their agency "which relate to the programs and operations with respect to which that Inspector General has responsibilities."  5 U.S.C. § 406(a)(1)(A).  This provision also dictates that inspectors general are to have access to this information "notwithstanding any other provision of law, except pursuant to any provision of law enacted by Congress that expressly—(i) refers to the Inspector General; and (ii) limits the right of access of the Inspector General[.]"  *Id.* § 406(a)(1)(B).  Second, the Act also provides inspectors general with the authority to "request such information or assistance as may be necessary for carrying out [the inspector general's] duties and responsibilities" from a State agency, among other entities.  *Id.* § 406(a)(3).

But neither Section 406(a)(1) nor Section 406(a)(3) includes an enforcement mechanism where a request recipient fails or refuses to provide requested information.  To obtain information

---

[2] The Inspector Geneal Act also authorizes OIG to conduct inspections, evaluations, and other reviews.  *See, e.g.*, 5 U.S.C. § 405(b) (applying semiannual reporting requirements for OIG to inspection and evaluation reports) and § 406(j) (exempting any OIG "audit, investigation, *inspection, evaluation, or other review*" from the certain Privacy Act requirements) (emphasis added).

4

3:25-cv-06310-MMC        DEFS.' PARTIAL MOT. TO DISMISS PLS.' CLAIMS AGAINST USDA-OIG

under those circumstances, inspectors general must issue a subpoena pursuant to Section 406(a)(4). *Id.* § 406(a)(4). That provision authorizes Inspectors General to "require by subpoena the production of all information," including a series of enumerated records and tangible things, which "in the case of contumacy or refusal to obey, shall be enforceable by order of any appropriate United States district court[.]" *Id.*

### C. OIG's data requests

OIG's data requests relevant to this action are made up of three separate engagements with three separate States: California, Illinois, and Michigan. [3]

OIG's Office of Audit began its inspection relating to California—and the California Department of Social Services ("CDSS")—on March 5, 2025, with the issuance of an engagement letter, which announced an inspection to determine whether California had used FNS SNAP administrative funding to improperly provide benefits to participants. Second Am. Compl. ("SAC") ¶ 251, ECF No. 146. OIG issued an updated engagement letter on April 2, 2025, to include an additional objective to evaluate the quality and integrity of SNAP participant data maintained by the State. *Id.* ¶ 252.

Initially, OIG and CDSS worked collaboratively to conduct the inspection and identify and provide relevant documents. *Id.* ¶¶ 252–54. OIG updated its data request based on initial findings from the data provided by California. *Id.* ¶ 254. OIG also explained several aspects of its data request in response to questions posed by California. *Id.* ¶¶ 254–62. California has not yet provided the full data set requested by OIG.

OIG also requested information from Michigan and Michigan's Department of Health and Human Services. *Id.* ¶ 267. After Michigan provided an initial submission of data, *id.* ¶ 270, OIG

---

[3] Plaintiffs' Second Amended Complaint brings claims only against OIG's data requests to California and Michigan. *See* SAC at Claims One, Two, Four, and Five (stating that the claims are brought against "Defendant OIG (by Plaintiffs California and Michigan)."). Therefore, Defendants do not further address OIG's request to Illinois. *See* SAC ¶¶ 263–66. To the extent California and Michigan are attempting to bring claims regarding OIG's request to Illinois, they fail for all the reasons addressed herein, plus that California and Michigan lack standing to bring claims on behalf of Illinois.

clarified that, like California (and Illinois), it required a full SNAP participant data set for fiscal year 2024, *id.* ¶ 271.  Michigan has not yet provided the full data set requested by OIG.

### D.  Procedural history

Plaintiff States filed this lawsuit on July 28, 2025.  *See* Compl., ECF No. 1.  Several weeks later, Plaintiffs filed their first motion seeking preliminary relief, but only sought to enjoin FNS, not OIG.  *See* Pl. States' Motion for Stay or Prelim. Inj., ECF No. 59.  The Court initially issued a temporary restraining order, ECF No. 83, and then a preliminary injunction, ECF No. 106, but neither order addressed OIG.  After FNS issued a second data request in November, Plaintiffs moved for a second preliminary injunction, ECF No. 116, which again only sought to enjoin FNS, not OIG.  On February 26, the Court issued a preliminary injunction, ECF No. 134, but, again, this only addressed Plaintiffs' claims against FNS, not OIG.

On April 3, 2026, Plaintiffs filed their now operative Second Amended Complaint.  *See* SAC, ECF No. 146.  The Second Amended Complaint advances five causes of action, alleging that:

(1) FNS and OIG's[4] data requests are contrary to law and without observance of procedure required by law, in violation of the APA;

(2) FNS and OIG's data requests are arbitrary and capricious, in violation of the APA;

(3) FNS's data requests required public notice and comment, pursuant to the APA;

(4) FNS and OIG's data requests are *ultra vires*; and

(5) FNS and OIG's data requests violate the Spending Clause the U.S. Constitution.

SAC ¶¶ 323–94.

Defendants bring this motion seeking to dismiss each claim against OIG for lack of subject matter jurisdiction and failure to state a claim.

### LEGAL STANDARD

### A.  Lack of subject matter jurisdiction

"Federal courts 'are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them.'"  *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 428

---

[4] As noted previously, the Second Amended Complaint's claims against OIG only challenge its data requests to California and Michigan.

3:25-cv-06310-MMC        DEFS.' PARTIAL MOT. TO DISMISS PLS.' CLAIMS AGAINST USDA-OIG

(2026) (quoting *Kempe's Lessee v. Kennedy*, 9 U.S. (5 Cranch) 173, 185 (1809)). Federal courts are thus limited, "by the Constitution, to only the kinds of 'Cases' and 'Controversies' listed in Article III." *Walker v. Arizona*, 158 F.4th 971, 978 (9th Cir. 2025) (quoting *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025)). "[S]tanding is not dispensed in gross," so "plaintiffs must demonstrate standing for each claim that they press[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Defendants may bring a motion to dismiss a plaintiff's claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12. Fed. R. Civ. P. 12(b)(1). As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## B. Failure to state a claim

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standard under Rule 12(b)(6) is a familiar one, in which a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). At the same time, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. California and Michigan's claims against OIG fail to challenge final agency action

#### A. Final agency action

APA review is limited to "final agency action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004) (quoting 5 U.S.C. § 704). The Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the 'consummation' of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704. Ninth Circuit precedent holds that lack of final agency action deprives the district court of subject matter jurisdiction. *See Fairbanks*, 543 F.3d at 591 ("finality is a jurisdictional requirement to obtaining judicial review under the APA"); *see also Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007) ("Absent final agency action, there was no jurisdiction in the district court.").

#### B. OIG's data requests are not final agency action

This Court should dismiss California and Michigan's APA claims against OIG for lack of jurisdiction because OIG's data requests are not final agency action reviewable under the APA.[5] California and Michigan challenge OIG's decision to initiate inspections into their State Agencies' management of their SNAP programs, and to request data to further their inspections.

---

[5] Plaintiffs APA claims against OIG are their First Claim (contrary to law and without observance of procedural requirements), SAC ¶¶ 323–59 and Second Claim (arbitrary and capricious), *id.* ¶¶ 360–74.

8

"An investigation [or inspection conducted by an Office of the Inspector General], even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) (listing cases); *accord Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 68–71 (3d Cir. 2003); *Gold Club SF, LLC v. U.S. Small Bus. Admin.*, No. 24-CV-04241-LJC, 2025 WL 2798917, at *17 (N.D. Cal. Sep. 30, 2025) (finding audits non-reviewable); *U.S. News & World Rep., L.P. v. Chiu*, No. 24-CV-00395-WHO, 2024 WL 2031635, at *13–*15 (N.D. Cal. May 7, 2024) (finding non-self-executing subpoena non-reviewable). This is because both investigations and inspections themselves "do not 'impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *Ass'n of Am. Med. Colleges*, 217 F.3d at 781 (quoting *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948)). Investigations and inspections by their very nature are not final because there is "an open question whether [they] will actually result in findings of abuse or fraud." *Id.* And judicial intervention into investigations or inspections would "deter rather than foster effective administration of the [relevant] statute." *Id.* (quoting *Jobs, Training & Services, Inc. v. East Tex. Council*, 50 F.3d 1318, 1324–25 (5th Cir. 1995)).

Nor could a data request pursuant to an inspector general's inspections be itself a separate final agency action apart from the inspection. *See Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1197–1201 (10th Cir. 1999) (finding that document request letter was not final agency action); *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 171 (3d Cir. 1986) ("Congress intended that the courts accept the Inspector General's determination of what information is 'necessary to carry out the functions assigned by this Act' so long as the information is relevant to an Inspector General function." (no internal citation in original)); *accord Keith v. Soc. Sec. Admin. Off. of Inspector Gen.*, No. CV 3:23-MC-5-JMV, 2023 WL 3184013, at *2 (N.D. Miss. May 1, 2023) ("Congress intended that the courts accept the Inspector General's determination of what information is needed, so long as the information is relevant to an OIG function."). As OIG in this very case demonstrated, requests may change as the inspectors conduct their inspection, determine the nature of the underlying conduct, and seek out additional information based on what they find. *See* SAC ¶¶ 252, 254, 256, 263–64, 266, 267–71.

A closer look at OIG's data requests in this case under the *Bennet* factors confirms this conclusion.  As an initial matter, OIG's inspections did not mark the consummation of the agency's process.  OIG's data requests relate to ongoing inspections.  Further, OIG did not determine that California or Michigan violated any of their responsibilities and could not have made such a determination without further steps even if the States had complied with the requests.  And, as OIG's conduct shows, the requests were iterative because OIG adjusted the data elements requested as needed based on its initial review of sample data.

Nor did any consequences flow from OIG's data requests.  In fact, none could.  The Inspector General Act gives OIG four means of collecting data it needs to conduct its duties.  *See* 5 U.S.C. § 406(a).  Here, OIG requested records pursuant to Sections 406(a)(1) and 406(a)(3), neither of which has an enforcement mechanism.  *See* 5 U.S.C. §§ 406(a)(1), (3).  If OIG wants to issue an enforceable data request, it must issue a subpoena under Section 406(a)(4).  *See id.* § 406(a)(4).  And, if a subpoena were to issue, that subpoena—but not the underlying request antecedent to the subpoena—would be subject to judicial review in the form of a motion to quash or enforcement proceeding, not an APA action.  *See, e.g. Mobil Expl. & Producing U.S.*, 180 F.3d at 1199.  As the Tenth Circuit explained in *Mobile Exploration*, in a situation where

> [a] request for information [is] followed by a subpoena . . . [s]ubpoena recipients may then obtain judicial review by simply refusing to comply with the subpoenas and forcing the [agency] to bring subpoena enforcement actions.  Should Defendants file a proper enforcement action, we think the law provides Plaintiffs with every opportunity to contest the validity of the underlying audit and of the document request letter as they pertain to the enforcement of the administrative subpoena.

*Id.* (internal citations omitted).

Thus, OIG's inspections do not represent final agency actions that California and Michigan may challenge under the APA, depriving the Court of subject matter jurisdiction over these claims.

## II.     California and Michigan fail to plead a cognizable *Ultra Vires* claim

California and Michigan's *ultra vires* claims fail to state a claim both because such review is unavailable where the APA establishes review of an agency action and because they fail to plead conduct which clears the high bar of *ultra vires* review.

First, non-statutory *ultra vires* review is "unavailable if . . . a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review[.]'" *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) ("NRC") (quoting *Bd. of Governors, Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). For example, courts in the Ninth Circuit have looked to two factors to determine when *ultra vires* review is available after the passage of the APA: "(1) that the agency's nonfinal action must wholly deprive the party of a meaningful and adequate means of vindicating its rights and (2) that Congress must not have clearly intended to preclude review of the agency's particular determination." *Las Americas Immigrant Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1185 (D. Or. 2021) (citations modified) (quoting *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 42–43 (1st Cir. 2002)); *see also id.* ("The Ninth Circuit has explained that on top of the party being deprived of a way to vindicate its rights, 'the challenged . . . action must be ultra vires, *i.e.*, it must contravene clear and mandatory statutory language.'" (quoting *Pac. Mar. Ass'n v. NLRB*, 827 F.3d 1203, 1208 (9th Cir. 2016))).

Here, neither benchmark is met. While the APA forecloses California and Michigan's challenge to OIG's non-final agency action, they will still have a meaningful and adequate means of vindicating their rights if OIG takes an action that determines their rights and obligations. Indeed, even if OIG simply issues a subpoena to attempt to compel such information, that itself would be reviewable through a motion to quash or enforcement action. *See supra* at 10. *Ultra vires* review does not allow California and Michigan to avoid that process.

Even if available, *ultra vires* review requires a plaintiff to satisfy among the most demanding standards in the law. An *ultra vires* claim is "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *NRC*, 605 U.S. at 681–82. Under an *ultra vires* theory, "[t]he agency overstep must be 'plain on the record and on the face of the [statute].'" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) (quoting *Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11, Cheyenne*, 393 U.S. 233, 238 n.7 (1968)) (second alteration supplied by D.C. Circuit). That overstep must amount to a "clear departure by the [agency] from its statutory mandate" or be "blatantly lawless" agency action. *Oestereich*, 393 U.S. at 238. A plaintiff seeking to challenge agency action via nonstatutory *ultra vires* review "must show more than the type of routine error in

11

statutory interpretation or challenged findings of fact that would apply if Congress had allowed APA review." *Fed. Express Corp.*, 39 F.4th at 765 (citation omitted). "In other words, ultra vires claimants must demonstrate that the agency has plainly and openly crossed a congressionally drawn line in the sand." *Id.* As the Supreme Court recently pronounced, *ultra vires* review "'is a narrow one' and it does not apply simply because an agency has arguably reached 'a conclusion which does not comport with the law.' Rather, it applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a specific prohibition.'" *NRC*, 605 U.S. at 681 (first quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964), then quoting *Bhd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emps. v. Ass'n for Benefit of Non-Cont. Emps.*, 380 U.S. 650, 660 (1965)).

Here, Plaintiffs' Second Amended Complaint fails to plead any action taken by OIG which clears the bar. *See* SAC ¶¶ 380–84. Instead, California and Michigan lump together FNS and OIG for the purpose of their *ultra vires* claim and, in doing so, proclaim that "[n]o statute authorizes" FNS and OIG's data requests and that "Defendants have acted in excess of their legal authority contrary to specific prohibitions present in law and regulations governing the treatment and protection of Plaintiff States' SNAP data." *Id.* ¶¶ 382–84. But this fails to state an *ultra vires* claim because even California and Michigan admit that OIG is authorized by the Inspector General Act to request data. *See id.* ¶¶ 121–25 (Section entitled "The Authority of OIG to Request Documents" outlining OIG's authority under the Inspector General Act to request documents). As outlined above, both Sections 406(a)(1) and 406(a)(3) of the Inspector General Act authorize OIG to issue the requests it did. *See supra* at Background § B. Thus, even if OIG's requests were challengeable final agency action—they are not—and even if California and Michigan could advance their *ultra vires* claims—they cannot— requesting data where authorized by an act of Congress is not the "extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Fed. Express. Corp.*, 39 F.4th at 764 (citation modified). California and Michigan's *ultra vires* claim identifies no other statute which OIG plainly or blatantly overstepped. As such, California and Michigan's *ultra vires* claims are also dismissible because they "basically dress up a typical statutory-authority argument as an ultra vires claim." *NRC*, 605 U.S. at 682.

**III.    California and Michigan fail to plead a cognizable Spending Clause claim**

California and Michigan's final claim suggests that OIG has violated the Constitution's Spending Clause, which grants Congress the power "to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const., art. I, § 8, cl. 1. Specifically, they claim that only Congress may place conditions on the receipt of federal funds, and that those conditions must be unambiguous. SAC ¶ 388 (citing *South Dakota v. Dole*, 483 U.S. 203, 206 (1987)). California and Michigan claim that "[t]here is no statute that clearly states that SNAP funds provided by [USDA] are conditioned on consent to unfettered transfer of SNAP data to agencies outside USDA, for purposes . . . unrelated to the SNAP Program[.]" *Id.* ¶ 389.

This argument, however, fails on the face of OIG's actual actions. First, the Inspector General Act gives OIG clear authority to request the information it has here. *See* 5 U.S.C. § 406(a)(1), (3). While California and Michigan complain that the States did not have "clear notice" that their SNAP participation and receipt of federal funds would be "conditioned on consent to the unfettered transfer of SNAP data to agencies outside USDA," SAC ¶ 389, OIG is not bound by Section 2020(e)(8)(A). While OIG is conducting its own inspection and has no intention of sharing the data it has requested outside of USDA, the Inspector General Act specifically provides that OIG shall have access to relevant records "notwithstanding any other provision of law" except where Congress expressly "refers to the Inspector General" and "limits the right of access of the Inspector General" in a provision. 5 U.S.C. § 406(a)(1)(B). Section 2020(e)(8)(A)'s requirement that State plans of operation must include safeguards which "shall permit" the disclosure of data so long as the "subsequent use of the information [is used] only for [] administration or enforcement" of the SNAP Act *does not mention OIG at all.* 7 U.S.C. § 2020(e)(8)(A). Accordingly, the States have had clear notice since the passage of these provisions of the SNAP and Inspector General Acts that OIG may request the information it has without the restrictions of Section 2020(e)(8)(A) as a condition of their participation in the SNAP program.

California and Michigan's Spending Clause claim fails for a second reason. OIG has conditioned no funds on the States providing the data requested. FNS previously initiated disallowance proceedings pursuant to 7 C.F.R. § 276.4 for failure to respond to its data requests

submitted pursuant to its own authorities.  But OIG has never threatened disallowance, or any other penalty, as part of its independent data requests.  Nor could it.  As outlined above, OIG has no means to compel compliance with a request for data under Sections 406(a)(1) and (a)(3) absent a subpoena issued pursuant to Section 406(a)(4).  And even then, the appropriate means for a State to challenge such a subpoena would be through a motion to quash and the appropriate remedy for OIG to receive the data would be obtaining a court order enforcing the subpoena, not a withholding of SNAP funds. California and Michigan have, therefore, failed to plead a condition on federal funding.

The Court should dismiss California and Michigan's Spending Act claim against OIG because Plaintiffs States have had clear notice that OIG data requests would be a condition of participation in SNAP and because that condition is in no way related to the States' ability to receive federal funding.

<b>CONCLUSION</b>

For the reasons outlined above, the Court should grant Defendants' motion and dismiss Plaintiffs' Second Amended Complaint as to OIG.

Dated: May 15, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TYLER BECKER
Counsel to the Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

_____
BENJAMIN S. KURLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 598-7755
ben.kurland@usdoj.gov

*Counsel for Defendants*