ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
LIAM E. O'CONNOR
MARIA F. BUXTON
WILLIAM BELLAMY
SEBASTIAN BRADY
JULIA HEMING SEGAL
Deputy Attorneys General
State Bar No. 363672
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone:  (415) 229-0128
 Fax:  (415) 703-5480
 E-mail:  Julia.HemingSegal@doj.ca.gov
*Attorneys for Plaintiff State of California*

*Additional counsel listed on signature page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,**<br><br>Defendants. | Case No. **3:25-cv-06310-MMC**<br><br>**PLAINTIFF STATES' MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD**<br><br>Hearing Date: July 10, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 2

BACKGROUND ..................................................................................................................... 3

    I.     USDA's Unprecedented Data Demands and Shifting Justifications ..................... 3

    II.    USDA's Inadequate Administrative Record ........................................................ 7

ARGUMENT .......................................................................................................................... 8

    I.     USDA Has Failed to Produce a Complete Record ................................................. 8

    II.    Plaintiffs' Proposed Discovery Is Necessary for a Complete Record ................. 16

    III.   Discovery Is Necessary to Evaluate the Equitable Relief Sought ....................... 18

    IV.   USDA Should be Required to Log Withheld and Redacted Materials ................ 19

CONCLUSION ...................................................................................................................... 21

**TABLE OF AUTHORITIES**

**Page**

CASES

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*
155 F.4th 1082 (9th Cir. 2025) .......................................................................... 21

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*
799 F. Supp. 3d 967 (N.D. Cal. 2025) ........................................................... 9, 16

*Authors Guild v. NEH*
No. 25-cv-3923 (CM), 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025) ........................... 14, 17

*Blue Mountains Biodiversity Project v. Jeffries*
99 F.4th 438 (9th Cir. 2024) ........................................................................ 19, 20

*Cal. Ex rel. Lockyer v. U.S. Dep't of Agric.*
Nos. 05-cv-3508-EDL & 05-cv-4038-EDL, 2006 WL 708914 (N.D. Cal. Mar.
16, 2006) ......................................................................................................... 8

*CASA, Inc. v. Noem*
No. CV 25-1484-TDC, 2025 WL 3514378 (D. Md. Dec. 8, 2025) ..................................... 21

*Ctr. for Taxpayer Rights v. IRS*
-- F.Supp.3d --, 2025 WL 3251044, *5 (D.D.C. 2025) ............................................. 5

*Dep't of Com. v. New York*
588 U.S. 752 (2019) ............................................................................................. 8

*Doe I v. United States Dep't of Homeland Sec.*
No. 20-CV-07517-BLF, 2021 WL 3402311 (N.D. Cal. Aug. 4, 2021) .................. 9, 11, 12, 13

*Doe v. Trump*
No. 3:19-CV-1743-SI, 2020 WL 1853657 (D. Or. Apr. 13, 2020) ........................... 9, 15, 16

*E. Bay Sanctuary Covenant v. Trump*
354 F. Supp. 3d 1094 (N.D. Cal. 2018) ............................................................. 18

*Eco Tour Adventures, Inc. v. Zinke*
249 F. Supp. 3d 360 (D.D.C. 2017) .................................................................... 18

*Familias Unidas por la Justicia, AFL-CIO v. U.S. Dep't of Lab.*
No. 2:24-CV-00637-JHC, 2024 WL 4858287 (W.D. Wash. Nov. 21, 2024) .................... 15

*FTC v. Warner Comm'n, Inc.*
742 F.2d 1156 (9th Cir. 1984) ...................................................................... 19, 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Hall v. U.S.D.A.*
 984 F.3d 825 (9th Cir. 2020) ................................................................................. 3

*Jiahao Kuang v. U.S. Dep't of Def.*
 No. 18-CV-03698-JST, 2019 WL 293379 (N.D. Cal. Jan. 23, 2019) ................................... 18

*Lands Council v. Powell*
 395 F.3d 1019 (9th Cir. 2005) ................................................................................. 16

*Michigan v. E.P.A.*
 576 U.S. 743 (2015) ............................................................................................ 2

*Minnesota v. U.S.D.A.*
 No. 25-CV-4767, 2026 WL 125180 (D. Minn. Jan. 16, 2026) .......................................... 20

*Nat'l TPS All. v. Noem*
 No. 25-CV-01766-EMC, 2025 WL 1276229 (N.D. Cal. May 2, 2025) ................................. 16

*Nat'l TPS All. v. Noem*
 No. 25-cv-05687-TLT (SK), 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025) .............16, 20, 21

*New York v. McMahon*
 2026 WL 622484 (D. Mass. Feb. 11, 2026) ............................................................... 9

*Portland Audubon Soc. v. Endangered Species Comm.*
 984 F.2d 1534 (1993) ..................................................................................... 8, 17

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*
 No. C 17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) ............................ 8, 12

*Roshandel v. Chertoff*
 No. C07-1739MJP, 2008 WL 1969646 (W.D. Wash. May 5, 2008) ................................... 18

*San Luis & Delta-Mendota Water Auth. v. Locke*
 776 F.3d 971 (9th Cir. 2014) ................................................................................ 17

*Scalia v. Int'l Longshore & Warehouse Union*
 336 F.R.D. 603 (N.D. Cal. 2020) ............................................................................ 19

*Thompson v. U.S. Dep't of Labor*
 885 F.2d 551 (9th Cir. 1989) .................................................................................. 8

*Transgender L. Ctr. v. Immigr. & Customs Enf't*
 46 F.4th 771 (9th Cir. 2022) .................................................................................. 19

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States v. Weber*
  816 F. Supp. 3d 1168 (C.D. Cal. 2026) ............................................................. 5

*Washington v. U.S. Dep't of Homeland Sec.*
  No. 4:19-CV-5210-RMP, 2020 WL 4667543 (E.D. Wash. Apr. 17, 2020) ..................... 17-18

**STATUTES**

5 U.S.C.
  § 701, et seq. ............................................................................................ 1

7 U.S.C.
  § 2020 .................................................................................................... 3
  § 2020(x)(2)(A), (B) ................................................................................. 3
  § 2020(a)(3) ............................................................................................ 8
  § 2020(a)(3)(B)(iii) ................................................................................ 13
  § 2020(e)(8) ........................................................................................ 3, 7
  § 2025(a) ................................................................................................ 3

Consolidated Appropriations Act, Pub. L. No. 117-328, § 501, 136 Stat. 4459,
  5994 (2022) ............................................................................................ 4

**COURT RULES**

Civil L.R.
  7-2(a) ..................................................................................................... 1
  16-5 ....................................................................................................... 1

**OTHER AUTHORITIES**

7 C.F.R.
  § 272.1(c) ............................................................................................... 3
  § 272.1(f) .............................................................................................. 13
  § 272.18 ................................................................................................. 3
  § 273.2(b), (f)(1)(i), (ii) and (v) ................................................................ 3

Associated Press, *JD Vance delivers remarks in Minneapolis* (Jan. 22, 2026) .......................... 6

Brooke Rollins (@SecRollins), X, (Apr. 28, 2026 7:20 a.m. PST) ............................................ 11

Brooke Rollins (@SecRollins), X (Dec. 2, 2025 11:11 a.m. PST) .............................................. 11

Congressional Research Service, Supplemental Nutrition Assistance Program:
  Errors and Fraud (April 7, 2025) ................................................................. 10

iv

**TABLE OF AUTHORITIES**
(continued)

Page

Executive Order 14243, "Stopping Waste, Fraud, and Abuse by Eliminating
Information Silos" (March 20, 2025)......................................................................... 4

FGA, *From Luxury Vehicles to Fake Emails: Why Food Stamp Program Integrity
is More Important Now Than Ever* (Apr. 2, 2026) ................................................... 11

Fox News, *"CORRUPT SYSTEM": Illegal immigrants' use of SNAP benefits
revealed* (YouTube Nov. 2, 2025) .................................................................4, 10, 11

Joseph Cox, *ICE Agents Have List of 20 Million People on Their iPhones Thanks
to Palantir* (May 12, 2026), https://www.404media.co/ice-agents-have-list-of-
20-million-people-on-their-iphones-thanks-to-palantir/ ......................................... 6

Josh Richman, *Report: ICE Using Palantir Tool That Feeds on Medicaid Data*,
Electronic Frontier Foundation (Jan. 15, 2026)..................................................... 6

Meryl Kornfield *et al.*, *Whistleblower claims ex-DOGE member says he took
Social Security data to new job*, Wash. Post (March 10, 2026) ............................. 12

N.Y. Times, *Letter from A.G. Bondi to Gov. Walz* (Jan. 24, 2026)............................... 6

*Notice of Medicaid Information Sharing Between the Centers for Medicare &
Medicaid Services and the Department of Homeland Security*, 90 Fed. Reg.
53324 (Nov. 25, 2025) ........................................................................................... 5

Rapid Response 47 (@RapidResponse47), X (Jan. 20, 2026 4:58 p.m. PST)............... 4

SNAP Eligibility Frequently Asked Questions, USDA (Sept. 30, 2025)...................... 5

SNAP Emergency Allotments are Ending, USDA (Feb. 8, 2023)............................... 4

SNAP Fraud Prevention, USDA ............................................................................ 10

SNAP Quality Control, USDA................................................................................ 10

U.S. Immigration and Customs Enforcement, Policy Memo 11066.2 (Oct. 27,
2025) ...................................................................................................................... 5

USASpending.gov ...................................................................................................... 6

USDA SNAP Program Integrity Data Team: Preliminary Report (May 13, 2026)................. 5, 15

White House, *President Trump Hosts a Cabinet Meeting*, Dec. 2, 2025 (YouTube
Dec. 2, 2025) ........................................................................................................ 11

v

**NOTICE OF MOTION AND MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD**

**PLEASE TAKE NOTICE** that on July 10, 2026, at 9:00 a.m., in Courtroom 7 of the above-entitled court, located at 455 Golden Gate Avenue, San Francisco, California, Plaintiffs the States of California, New York, Arizona, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Washington, Wisconsin, the District of Columbia, the Commonwealth of Massachusetts, the Office of The Governor ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky, and the Office of The Governor ex rel. Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania (collectively, Plaintiffs or Plaintiff States) will and hereby do move this Court pursuant to the Administrative Procedure Act (5 U.S.C. § 701, et seq.) and Local Rule 16-5 for an order requiring Defendants United States Department of Agriculture (USDA) and Secretary Brooke Rollins to complete and supplement the administrative record, including by responding to Plaintiffs' proposed discovery requests, by identifying on a privilege log any responsive materials withheld on grounds of privilege (both when producing the administrative record and when responding to Plaintiffs' discovery requests), and by producing such documents to the Court for *in camera* review.

Plaintiffs note that during the status conference on April 15, 2026, the Court stated that she would assign the present Motion to a magistrate judge. *See* ECF No. 162 at 17:15-25. Because a magistrate judge has not yet been assigned to this case, Plaintiffs respectfully notice this Motion for hearing before Judge Chesney, consistent with Local Rule 7-2(a). In the event the Motion is referred to a magistrate judge, Plaintiffs respectfully request that the Motion be heard at the magistrate judge's earliest convenience.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the supporting declaration filed herewith; the Second Amended Complaint for Declaratory and Injunctive Relief (ECF No. 146); all supporting briefing and evidence; this Court's file; and any other matters properly before the Court.

1

**INTRODUCTION**

In early 2025, the United States Department of Agriculture Food and Nutrition Service (USDA) demanded—for the first time ever and with no justification beyond an executive order directing federal agencies to amass States' records—that States provide USDA with vast amounts of sensitive personal information on all Americans who have sought SNAP benefits over the past several years, as well as all their household members. Ever since, USDA has veered between different justifications for these demands, ranging from enabling inter-agency data sharing, to investigating certain types of fraud, waste, and abuse that Congress already created mechanisms to detect, to Secretary Rollins' fictitious justification of a nonexistent SNAP benefits-for-Democratic-votes "bribery" scheme.

USDA has produced an administrative record in this litigation that does nothing to explain why or how it decided to demand all this data and use it to create a new, amorphous national database (the "SNAP Database" or "SNAP Information Database"). Indeed, if the Court evaluated only the administrative record produced by USDA so far, it would appear that the unprecedented demand suddenly materialized, fully formed, without the support of any analysis, discussion, or other decisionmaking process. When Plaintiffs identified these defects in the record, the agency maintained its position that the Court is only entitled to review generic background and procedural documents that postdate USDA's decision to seek States' SNAP data—a decision that Secretary Rollins herself has repeatedly said began in February of 2025 when she assembled "DOGE and a war room" to take and review States' data. Such a threadbare record prevents the Court from effectively evaluating whether USDA "engage[d] in 'reasoned decisionmaking.'" *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015). Recently, USDA supplemented its administrative record—but only to pad it with news reports that postdate the agency decisions at issue and other documents that were assembled months after this litigation began, and that still shed no light on why USDA embarked on this unprecedented project in the first place.

In light of such obfuscation, this Court should order USDA to complete and supplement the existing record, including by responding to targeted discovery (and identifying any responsive materials withheld on grounds of privilege), as set forth in the accompanying requests for

2

production and interrogatories. This will provide the Court with the actual record needed to resolve Plaintiffs' claims fully on the merits and to address the equitable factors relevant to Plaintiffs' claims for injunctive relief.

**BACKGROUND**

The Supplemental Nutrition Assistance Program (SNAP) "'alleviate[s] . . . hunger and malnutrition' by 'increasing [the] food purchasing power' of low-income households." *Hall v. U.S.D.A.*, 984 F.3d 825, 831 (9th Cir. 2020) (quoting 7 U.S.C. § 2011). While SNAP benefits are currently funded fully by the federal government, States administer SNAP on the ground, processing applications and issuing benefits to eligible recipients. *See* 7 U.S.C. § 2020 (establishing State responsibility for SNAP administration). The federal government shares the costs of States' administration of SNAP, *see id.* § 2025(a); given the size of SNAP, the federal share of these administrative costs is billions of dollars each year. Through their administration of SNAP, States collect and retain sensitive personal information on millions of SNAP applicants, recipients, and their household members—including their names, addresses, incomes, immigration statuses, and Social Security Numbers. 7 C.F.R. § 273.2(b), (f)(1)(i), (ii) and (v). Recognizing the sensitivity of this data, Congress has subjected it to strict confidentiality protections with limited, specific exceptions for data use and disclosure. *See* 7 U.S.C. § 2020(e)(8); *see also* 7 C.F.R. § 272.1(c). Congress has also enshrined confidentiality protections into fraud, waste, and abuse detection systems such as the National Accuracy Clearinghouse, which "prevent[s] multiple instances of [SNAP] benefits to an individual by more than [one] state agency simultaneously." 7 U.S.C. § 2020(x)(2)(A), (B); *see also* 7 C.F.R. § 272.18.

I.     **USDA'S UNPRECEDENTED DATA DEMANDS AND SHIFTING JUSTIFICATIONS**

Soon after the second Trump Administration took office, and without regard for the legal restrictions on the federal government's collection, use, or disclosure of this sensitive personal data, USDA set out to collect PII on SNAP applicants and their household members going back to January 2020, regardless of whether the households were receiving—or had ever received— benefits. USDA first tried, without notifying States, to take this data from States' third-party

3

SNAP benefits processors—the entities that load credits onto electronic benefit transfer (EBT) cards for use by SNAP recipients. ECF No. 59-7 at 55. When USDA was sued by private parties over this backdoor effort, it changed tack and demanded the data from the States directly, threatening to cut off all the federal administrative funding USDA is required to provide States to operate their SNAP programs. *Id.*; ECF No. 59-7 at 58, 60-61; ECF No. 75-1 at 49-50. Plaintiff States sued, and this Court has twice preliminarily enjoined USDA's efforts to cut off federal administrative funding, finding that these efforts were likely contrary to law. ECF No. 106, ECF No. 134. Nonetheless, USDA once again reissued its data demand most recently on May 15, 2026. *See* Ladov Decl., Ex. F.

Since initiating this data pooling project, USDA has been backfilling justifications. First, the project was part of an initiative to implement an executive order (the Information Silos EO) directing federal agencies to gain "unfettered access" to State data and break down so-called "information silos" within the federal government. ECF No. 59-7 at 55.[1] Later, USDA's demand was to research why the size of the SNAP program had grown over the past several years[2]—an increase that was obviously explained by the law that Congress passed with that exact purpose during the pandemic.[3] USDA has also claimed this data was needed to expose a supposed Democratic scheme to use food stamps to "buy" votes that apparently predated the Information Silos EO.[4] All the while, USDA has tossed in generic references to fraud, waste, and abuse, such

---

[1] *See* Executive Order 14243, "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" (March 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/stopping-waste-fraud-and-abuse-by-eliminating-information-silos/.

[2] Fox News, *"CORRUPT SYSTEM": Illegal immigrants' use of SNAP benefits revealed*, at 3:09-3:34 (YouTube Nov. 2, 2025), https://youtu.be/piXXRqJQdKs?si=I7JBRPghWdhARKty&t=188 (comments by Secretary Rollins).

[3] *SNAP Emergency Allotments are Ending*, USDA (Feb. 8, 2023), https://www.usda.gov/about-usda/news/blog/snap-emergency-allotments-are-ending; Consolidated Appropriations Act, Pub. L. No. 117-328, § 501, 136 Stat. 4459, 5994 (2022).

[4] Rapid Response 47 (@RapidResponse47), X (Jan. 20, 2026 4:58 p.m. PST), https://x.com/RapidResponse47/status/2013778212594069598 (Secretary Rollins claiming that "Biden increased [SNAP] 40 percent in his four years—of course, trying to buy reelection for the Democrats," that the "fraud is insane," and that therefore USDA is "going to stop funding a lot of [SNAP]" and is "suing a lot of the blue states to give [USDA] the data").

as misleading claims that "dummy SSNs" (which Plaintiffs have explained may reflect eligible applicants such as newborn infants who have not yet received a SSN) are evidence of nearly $1 billion in "estimated annual risk."[5]

In fact, the evidence reveals that from the very beginning a driving force behind these demands has been a desire to share SNAP applicant and household member data with other agencies for immigration enforcement.[6] Since President Trump took office again, the Department of Homeland Security (DHS) has been aggressively mining data held by other federal agencies, including the Internal Revenue Service and the Center for Medicaid and Medicaid Services, to locate deportation targets.[7] It has also tried to seize sensitive, personal data held by States to fuel its deportation agenda under the guise of administering other federal programs. *See, e.g.*, *United States v. Weber*, 816 F. Supp. 3d 1168, 1185 (C.D. Cal. 2026) (finding that the U.S. Department of Justice had sought state voter roll data under pretense of voter roll maintenance while "screening" its "different purpose" of collecting data for immigration enforcement), *appeal filed*, No. 26-1232 (9th Cir. Mar. 3, 2026).

USDA's demand for SNAP data is plainly part of the same effort. Around the time USDA first made these demands, it quietly removed from its website a statement that parents who are not U.S. citizens may apply for SNAP benefits for their citizen children "without immigration

---

[5] *Compare* USDA SNAP Program Integrity Data Team: Preliminary Report (May 13, 2026), https://www.fns.usda.gov/research/snap/program-integrity-data-preliminary, *with* ECF No. 99-2 (Reagan Decl.) ¶ 18 (explaining "workflow for eligible applicants who have applied for and not received a SSN (most commonly infants)").

[6] While those lacking lawful immigration status are ineligible for SNAP benefits, they may lawfully apply for and receive SNAP benefits to feed their U.S. citizen children—meaning their information, including their name, immigration information, and home address, may legitimately be in States' SNAP records. *See* SNAP Eligibility Frequently Asked Questions, USDA (updated Sept. 30, 2025), https://www.fns.usda.gov/snap/recipient/eligibility#ArenoncitizenseligibleforSNAP.

[7] *Ctr. for Taxpayer Rights v. IRS*, -- F.Supp.3d --, 2025 WL 3251044, *5 (D.D.C. 2025) (emphasis added), *appeal filed*, No. 26-5006 (D.C. Cir. Jan. 13, 2026) (describing DHS's requests of IRS, including its initial request that IRS disclose "confidential information for ICE's 'full alien population' of over 7 million individuals"); U.S. Immigration and Customs Enforcement, Policy Memo 11066.2 (Oct. 27, 2025), https://www.ice.gov/doclib/memos/11066.2.pdf (announcing ICE policy that it will "request, receive, and use HHS information" for immigration enforcement activities); Centers for Medicare & Medicaid Services, *Notice of Medicaid Information Sharing Between the Centers for Medicare & Medicaid Services and the Department of Homeland Security*, 90 Fed. Reg. 53324 (Nov. 25, 2025).

consequences." ECF No. 59-2 at 124. Meanwhile, from the start, USDA has been demanding that States turn over particular data elements (such as residential street addresses) that are useful for immigration enforcement but not for SNAP quality control. *See* ECF No. 116-3 at 7-10 (detailing this mismatch). Removing any doubt about USDA's plans, Vice President Vance traveled to Minnesota during the violent immigration crackdown there and openly stated that the Administration wants SNAP applicant data to help locate and deport undocumented persons.[8] Shortly after that, then-Attorney General Pam Bondi demanded that Minnesota officials help "end the chaos" in their state by turning SNAP data over to USDA.[9]

Thus, no less than two of the highest-ranking officials in the Administration have made clear that the Administration plans to use SNAP data, along with data from other federal benefits programs, to fuel its mass deportation agenda. And USDA is now openly working with Palantir— the company providing software used by DHS and U.S. Immigration and Customs Enforcement (ICE) for immigration enforcement, using information from public benefit applications[10] and reportedly supplying ICE agents with access to more than 20 million deportation targets[11]—on its analysis of alleged waste, fraud, and abuse in the SNAP program.[12] Despite all this, USDA has steadfastly refused to produce an administrative record that illuminates its actions and decisionmaking—pretending, despite compelling evidence to the contrary, that it has never even considered sharing States' SNAP data with DHS and ICE.

---

[8] Associated Press, *JD Vance delivers remarks in Minneapolis* (Jan. 22, 2026), at 7:20-8:10, https://www.youtube.com/live/xHOWRMk-MFU?t=439s (emphasis added).

[9] Letter from A.G. Bondi to Gov. Walz (Jan. 24, 2026) at 2-3, https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

[10] Josh Richman, *Report: ICE Using Palantir Tool That Feeds on Medicaid Data*, Electronic Frontier Foundation (Jan. 15, 2026), https://www.eff.org/deeplinks/2026/01/report-ice-using-palantir-tool-feeds-medicaid-data.

[11] Joseph Cox, *ICE Agents Have List of 20 Million People on Their iPhones Thanks to Palantir* (May 12, 2026), https://www.404media.co/ice-agents-have-list-of-20-million-people-on-their-iphones-thanks-to-palantir/ (reporting on ICE official's public comments that "Palantir gives the agency access to between 30 and 40 datasets" and ICE to more than "20 million targets, or potential people to detain, on [the ICE agents'] iPhones").

[12] A summary of the contract with Palantir is available on USASpending.gov: https://www.usaspending.gov/award/CONT_AWD_12314426F0120_1205_12314426A0009_1205.

6

## II.   USDA'S INADEQUATE ADMINISTRATIVE RECORD

On January 8, 2026, USDA produced its administrative record, the contents of which were described in the certification of Chief of Staff of Food, Nutrition, and Consumer Services Shiela Corley and the attached tables of contents. ECF No. 115-1. This administrative record contained almost exclusively publicly available documents, or correspondence between the parties, with the exception of a cursory one-page summary of the 457 comments that USDA had received about its System of Records Notice (SORN) setting out the routine uses for the data sought. USDA certified that its administrative record contained all non-privileged materials "directly or indirectly considered in connection with the promulgation of the June 23, 2025 Notice of a new System of Records (SORN) . . . and FNS's collection of SNAP recipient data from January 1, 2020 through the present." *Id.*

Because this record was facially incomplete, Plaintiff States sought to have USDA complete the administrative record. In correspondence on January 16, 2026, Plaintiffs noted that the record was missing documents, including pre-decisional records and documents reflecting inter-agency discussions and USDA's data analysis, and requested a privilege log. *See* Ladov Decl., Ex. A. On February 11, 2026, after additional correspondence between the parties (*see* Ladov Decl., Ex. B), USDA supplemented its administrative record to add three Office of Management and Budget (OMB) Notices of Action regarding SNAP data collection, and certified that the supplemental administrative record contained all non-privileged documents considered "in connection with data collection pursuant to 7 U.S.C. § 2020(e)(8)." ECF No. 125-1 at 1. Following the filing of Plaintiffs' Second Amended Complaint and additional correspondence from the Plaintiffs on April 8, 2026, *see* Ladov Decl., Ex. C, USDA produced to Plaintiffs a second supplemental administrative record on May 1, 2026, containing correspondence between the parties throughout the course of the litigation as well as a section labeled "rationale" containing documents, some of which are dated as late as April 2026, without any indication of when or how these documents were considered or created by USDA. *See* ECF No. 161; Ladov Decl., Ex. D. In subsequent correspondence on May 7, 2026, Plaintiffs continued to point to the administrative record's deficiencies. *See* Ladov Decl., Ex. E.

7

USDA requested additional time to respond to Plaintiffs' May 7 letter, and Plaintiffs agreed. USDA formally supplemented its record on May 19, 2026, certifying that it was a "true, correct, and complete copy of the documents that were directly or indirectly considered in connection with USDA's decision to seek SNAP data pursuant to 7 U.S.C. § 2020(a)(3)." *See* ECF No. 169; ECF No. 170 at 1. Despite the omissions previously identified by Plaintiffs, the only document added to the record was a copy of the "USDA SNAP Program Integrity Data Team: Preliminary Report" published on USDA's website on May 13, 2026,[13] and referenced in USDA's May 15, 2026 re-stated data demand. *See* ECF No. 170 at 10; Ladov Decl. Ex. F at 5.

## ARGUMENT

### I.    USDA HAS FAILED TO PRODUCE A COMPLETE RECORD

As judicial review of APA claims is typically limited to review of the record, it is integral that the Court have a complete record before it. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534 (1993) ("An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.' . . . If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless."). "The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). The "whole" record consists of all "documents that literally passed before the eyes of the final agency decision maker as well as those considered and relied upon by subordinates who provided recommendations." *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017). Notably, an agency is not permitted to exclude information it considered on the grounds that it did not rely on it. *Cal. Ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. 05-cv-3508-EDL & 05-cv-4038-EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006). Although Plaintiffs must present "clear evidence" that an administrative record is incomplete to

---

[13] *See* https://www.fns.usda.gov/research/snap/program-integrity-data-preliminary (copy produced at CALIFORNIA_FNS_003121).

8

obtain further production, they "need not show bad faith or improper motive to rebut the presumption of completeness." *Doe I v. United States Dep't of Homeland Sec.*, No. 20-CV-07517-BLF, 2021 WL 3402311, at *1 (N.D. Cal. Aug. 4, 2021), *objections overruled,* 2021 WL 5121169 (N.D. Cal. Nov. 2, 2021).

By any reasonable measure, USDA's certified administrative record is not just incomplete—it is a "sham." *See, e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 799 F. Supp. 3d 967, 979 (N.D. Cal. 2025) (describing administrative record as a "sham," including because it relied on "post hoc statements" and "pages of irrelevant documents" but was "silent" on the "calls, discussions, documents, and decisions that underpin" the government's actions). It omits almost *any* internal or inter-agency materials directly or indirectly considered by Secretary Rollins or any other USDA staff in connection with the decisions at issue in this case, namely, USDA's creation of the SNAP Database and USDA's data demands made to the Plaintiff States. Nor does the record provide any contemporaneous documentation to explain or justify these decisions. *See, e.g., New York v. McMahon*, 2026 WL 622484, at *6 (D. Mass. Feb. 11, 2026) (ordering supplementation of record where "[a]s the AR currently stands, there is virtually no reasoning backing the agency's decision-making process reflected in the record"). These glaring omissions rebut any presumption that USDA's submissions constitute the "whole administrative record," including "everything that was before the agency pertaining to the merits of its decision," as required for the Court to adjudicate Plaintiffs' claims. *Doe v. Trump*, No. 3:19-CV-1743-SI, 2020 WL 1853657, at *2 (D. Or. Apr. 13, 2020) (quoting *Portland Audubon Soc'y* 984 F.2d at 1548).

For example, the record entirely omits the following documents:

**Pre-decisional materials:** Secretary Rollins has acknowledged publicly that she decided to demand States' SNAP data in February 2025 in coordination with the Administration's Department of Government Efficiency (DOGE).[14] And prior to May 6, 2025, when USDA issued

---

[14] Secretary Rollins said, "We asked every state for the first time in history, and this was in February, to send us their data and let us with DOGE and a war room actually start going through this data to better understand how this explosion of SNAP benefits happened under Joe
(continued…)

its first set of data demands to the States, USDA had already attempted to obtain the same data from States' third-party EBT payment processors.[15] Yet the administrative record contains no materials that predate USDA's May 6, 2025 letter other than the Information Silos EO, a copy of the statute authorizing SNAP, and some OMB approval documents.[16] Indeed, there are no documents analyzing the extensive systems already in place to address SNAP fraud, waste, and abuse;[17] no reference to any pre-decisional research or reports proposing or addressing additional systems; and no indication of what types of SNAP fraud, waste, or abuse the SNAP Database is intended to address, let alone how the SNAP Database is designed to address them or why the existing systems are insufficient.[18] The only agency document in the record even referencing these issues is a cursory one-page dismissal of public comments on the SORN creating the SNAP Database,[19] but that document postdates the decision to create the Database, and was created only after the agency acknowledged in separate litigation that it had failed to comply with its obligation to issue a new SORN before attempting to collect this data.[20] This categorical absence of documents considered by USDA prior to its unprecedented data demands constitutes reasonable, non-speculative grounds for the Court to find that the administrative record is

---

Biden[.]" Fox News, *"CORRUPT SYSTEM": Illegal immigrants' use of SNAP benefits revealed*, at 3:09-3:24 (YouTube Nov. 2, 2025), https://youtu.be/piXXRqJQdKs?si=I7JBRPghWdhARKty&t=188.

[15] *See* ECF No. 59-12, ¶¶21-28; *id.* Exs. 1, 2.

[16] *See* CALIFORNIA_FNS_000001-000459.

[17] *See* Congressional Research Service, Supplemental Nutrition Assistance Program: Errors and Fraud, at 1 (April 7, 2025), https://www.congress.gov/crs_external_products/IF/PDF/IF10860/IF10860.7.pdf ("4/7/25 CRS Report") (describing anti-fraud measures); *see also*, *e.g.*, SNAP Quality Control, USDA (last visited May 25, 2026), https://www.fns.usda.gov/snap/qc ("SNAP has one of the most rigorous quality control systems in the federal government . . . ."); SNAP Fraud Prevention, USDA (last visited May 25, 2026), https://www.fns.usda.gov/snap/fraud (describing anti-fraud efforts).

[18] SNAP errors and fraud are generally categorized into several types: (1) trafficking SNAP benefits; (2) SNAP retailer application fraud; (3) errors and fraud by households applying for SNAP; (4) errors and fraud by SNAP state agencies; and (5) SNAP scams. *See* 4/7/25 CRS Report at 1. These different categories are addressed through "different types of interventions involving different program actors." *Id.* at 2.

[19] *See* CALIFORNIA_FNS_000573.

[20] *See Pallek v. Rollins*, No. 1:25-cv-01650-JMC, ECF No. 11, at 6, 10 (D.D.C. May 30, 2025) (Defs.' Mem. in Opp. to Plfs' Mot. for a TRO), https://storage.courtlistener.com/recap/gov.uscourts.dcd.280863/gov.uscourts.dcd.280863.11.0.pdf.

incomplete. *See, e.g., Doe I*, 2021 WL 3402311, at *2-3. And to the extent that Defendants are withholding these documents on claims of privilege, they should be required to produce a privilege log and submit those documents for *in camera* review. *See* Section IV, *infra*.

**Materials considered by Secretary Rollins and other agency decisionmakers:** Secretary Rollins has, on multiple occasions, publicly acknowledged her personal involvement in ordering the issuance and enforcement of the data demands. Yet USDA's administrative record does not contain any documents or other materials reflecting her extensive involvement.

For example, as noted above, she has claimed that she decided to issue the data demands in coordination with DOGE in February 2025.[21] In addition, during a December 2, 2025 cabinet meeting, Secretary Rollins announced that "as of next week we have begun and will begin to stop moving federal funds into those states until they comply" with USDA's data demands.[22] She then publicly accused Plaintiff States of "protecting their bribery schemes" by not immediately providing the data.[23] More recently, Secretary Rollins justified USDA's data demands by citing outside analyses of states' SNAP data, and claimed that "14,000 individuals receiving SNAP benefits were driving LUXURY VEHICLES!"[24]

A complete administrative record must therefore include all materials that the Secretary and other agency decisionmakers considered when participating in the creation of the SNAP Database

---

[21] Fox News, *"CORRUPT SYSTEM": Illegal immigrants' use of SNAP benefits revealed*, at 3:09-3:24 (YouTube Nov. 2, 2025), https://youtu.be/piXXRqJQdKs?si=I7JBRPghWdhARKty&t=188.

[22] The White House, *President Trump Hosts a Cabinet Meeting*, Dec. 2, 2025, at 59:45-1:00:33 (YouTube Dec. 2, 2025), https://www.youtube.com/watch?v=pZSd7jn9CSc.

[23] Brooke Rollins (@SecRollins), X (Dec. 2, 2025 11:11 a.m. PST), https://x.com/SecRollins/status/1995933975211397454?s=20.

[24] Brooke Rollins (@SecRollins), X, (Apr. 28, 2026 7:20 a.m. PST), https://x.com/SecRollins/status/2049131612835586505?s=20 (emphasis in original). This statistic appears to be based on a report from the Foundation for Government Accountability (FGA), which itself relies purportedly on "de-identified data from an anonymous state provided by a leading program integrity consultant." *See* FGA, *From Luxury Vehicles to Fake Emails: Why Food Stamp Program Integrity is More Important Now Than Ever*, at 5 & n.19 (Apr. 2, 2026), https://thefga.org/wp-content/uploads/2026/03/from-luxury-vehicles-to-fake-emails-food-stamp-program-integrity.pdf.

11

and the issuance and enforcement of the data demands.[25]

In similar circumstances, courts in this district have repeatedly found administrative records incomplete and ordered their completion. Where plaintiffs challenged DHS's recission of the DACA program, for example, and DHS included "not a single document from one of [the DHS Secretary's] subordinates," the court concluded that "[i]t strains credulity to suggest that the Acting Secretary of DHS decided to rescind a program covering 800,000 enrollees without consulting one advisor or subordinate within DHS." *Regents of Univ. of California*, 2017 WL 4642324, at *4. Based on this glaring hole (and others), the court found that "plaintiffs have clearly shown that defendants excluded highly relevant materials from the administrative record and in doing so have rebutted the presumption that the record is complete." *Id.* at *5; *see also Doe I*, 2021 WL 3402311, at *3 (similar).

**Materials considered to define the scope of the data demands:** USDA has repeatedly made the conclusory assertion that it "has determined that each data element requested is necessary to complete its audit."[26] The agency has also repeatedly claimed that "USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (i.e., the collection of data elements spelled out in the Privacy Impact Assessment)."[27] And yet, USDA has produced no documents to explain its decision to seek six years' worth of unredacted PII on millions of SNAP households, despite the obvious risks to privacy and data security,[28] and the

---

[25] The administrative record similarly fails to include any records considered by other agency decisionmakers (or their subordinates) when taking the challenged agency actions. The administrative record includes externally disseminated documents signed by FNS Acting Administrator Patrick Penn; Food, Nutrition and Consumer Services (FNCS) Senior Policy Advisor for Integrity Gina Brand; FNCS Chief of Staff Shiela Corley; FNS Administrator James Miller; and FNS Deputy Administrator for Evidence, Analysis and Regulatory Affairs Richard Lucas. It should therefore include materials reviewed by these agency leaders or their subordinates.

[26] Ladov Decl., Ex. F at 8 (May 15, 2026 Data Demand Letter).

[27] Ladov Decl., Ex. F at 15 (USDA Proposed Protocol § 2.2.1).

[28] *See, e.g.*, Meryl Kornfield *et al.*, *Whistleblower claims ex-DOGE member says he took Social Security data to new job*, Wash. Post (March 10, 2026), https://wapo.st/4bAFCQZ

12

three-year retention period for most records under the FNA and regulations issued pursuant to the FNA. *See* 7 U.S.C. § 2020(a)(3)(B)(iii); 7 C.F.R. § 272.1(f). Nor has USDA produced any documents to explain how it identified the specific data elements that it claims are necessary for "legally permissible" work, even though (as Plaintiffs have repeatedly objected) it is seeking numerous data elements that do not appear necessary to investigate fraud, waste, and abuse, especially at an aggregate level.[29]

The record also fails to explain how USDA decided to reject the privacy protections required by federal statutes and its own regulations in pooling this data. For example, throughout this litigation, USDA has claimed that the National Accuracy Clearinghouse—which was designed by Congress and USDA to protect Americans' privacy and data security while preventing duplicate benefits—is no longer sufficient for the agency's purposes.[30] USDA has also rejected existing privacy-protective data-sharing agreements, such as its 2025 agreement with the State of Illinois in which USDA committed that "[a]ny release or re-disclosure of information must be pre-approved, in writing" by the State agency.[31] But the administrative record shows no trace of USDA's actual consideration of these issues relating to privacy protections. Where an agency deviates from its historical approach to an issue, "it is reasonable, and non-speculative, for Plaintiffs to believe that there are documents in the record that shed light on why [the agency]" changed course. *Doe I*, 2021 WL 3402311, at *3. Therefore, the complete administrative record must illuminate USDA's consideration of these issues and the evidence it considered (or its failure to do so properly), so that the Court can fully evaluate USDA's decision to collect all the demanded PII.

**Inter-agency materials concerning DOGE and other partners:** USDA has consistently represented that its SNAP data collection is intended to effectuate the Information Silos EO, the

---

[29] ECF No. 146, Ex. G (Pls.' Dec. 8 Ltr.) at 3-4; *see also* ECF No. 116-3 (Tomasky Decl.) ¶¶ 18-23 (explaining why several demanded data elements "do not seem to be useful or necessary for accomplishing USDA's stated purposes").

[30] *See, e.g.*, ECF No. 146, Ex. H (USDA's Dec. 23, 2025 Ltr.) at 145-46.

[31] *See* ECF No. 116-4 at 15.

13

purpose of which includes "promoting inter-agency data sharing."[32] Secretary Rollins has acknowledged that USDA has partnered with DOGE in this effort. And, as discussed above, the evidence strongly suggests that a driving force for these data demands was (and still is) the Trump Administration's desire to use SNAP benefit applications to fuel its immigration enforcement agenda. This gives Plaintiffs a non-speculative basis to conclude that the administrative record produced to date is incomplete; the complete administrative record must include internal and inter-agency documents reflecting inter-agency collaboration on this project, including any potential "inter-agency data sharing" (for immigration enforcement or other purposes) that USDA has considered.[33] Likewise any instructions, direction, or guidance on the implementation of the EO, whether internal to USDA, between USDA and its Office of the Inspector General, or between other agencies and USDA, should be part of the administrative record.

**Analyses of purported "fraud, waste and abuse" that informed the agency's actions:** USDA has attempted to justify its continued data demands to Plaintiff States by pointing to conclusions from undisclosed analyses of data collected from non-plaintiff States (now contained within the SNAP Database) that purportedly demonstrate widespread "fraud, waste and abuse" in SNAP.[34] Most recently, USDA published a "preliminary report" that repeats these opaque and

---

[32] Available at https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

[33] The DOGE materials, as well as any other records that USDA considered from other governmental agencies, are part of USDA's administrative record regardless of where they are currently housed. The relevant inquiry is not custodial location, but whether the materials were considered—directly or indirectly—by agency decisionmakers. *See Authors Guild v. NEH*, No. 25-cv-3923 (CM), 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025) ("If [agency] officials relied on analyses, directives, spreadsheets, or recommendations generated by other agencies, offices, or officials in deciding to terminate grants, which appears to be the case here, those materials fall squarely within the scope of the administrative record regardless of where they are housed.").

[34] *See, e.g.*, ECF No. 89-1 (Corley Suppl. Decl.) (summarizing USDA's findings); ECF No. 146, Ex. F (USDA's Nov. 24, 2025 Demand) at 2 ("Our preliminary review of data provided to FNS by States complying with FNS's data requests indicates an estimated average of $24 million dollars per day of federal funds is lost to fraud and errors undetected by States in their administration of SNAP."); *id.*, Ex. H (USDA's Dec. 23, 2025 Demand) at 2 ("Data received from the 28 States that complied with USDA's request indicate that an estimated average of $24 million per day of SNAP funds are being erroneously spent or lost to fraud. Examples of fraud
(continued…)

14

misleading conclusions, while hedging with words like "potential" and ignoring all the apparent defects that Plaintiff States previously identified.[35] In USDA's most recent production volume, the agency has included this May 2026 "preliminary report," but *none* of the underlying data, drafts, or analyses that went into this publication nor any feedback on USDA's analysis from non-plaintiff states.[36] The documentation underlying all of USDA's purported findings—including materials sufficient to permit the Court to evaluate their accuracy, and to consider whether they justify USDA's continued data demands and related claims—must be part of a complete administrative record in this litigation. *See, e.g., Doe*, 2020 WL 1853657, at *8 (factual materials cited by agency as basis for its action must be produced as part of administrative record); *see also Familias Unidas por la Justicia, AFL-CIO v. U.S. Dep't of Lab.*, No. 2:24-CV-00637-JHC, 2024 WL 4858287, at *2 (W.D. Wash. Nov. 21, 2024), *reconsideration denied*, No. 2:24-CV-00637-JHC, 2025 WL 19037 (W.D. Wash. Jan. 2, 2025) (granting extra-record discovery into agency's data and methodology where "necessary" to "evaluate the integrity of the agency's analysis").

Moreover, in its latest production volume, USDA has included a hodgepodge of press releases and news reports dating between November 2025 and April 2026, as well as several USDA documents detailing the results of various quality control reviews for Plaintiff States over the past several years, but without any emails or internal documents indicating when and how these materials were considered by the agency in deciding to create the SNAP Database and to issue and enforce the data demands.[37] Along with the "preliminary report," these materials smack of litigation-focused record-padding, as USDA had previously sworn under penalty of perjury (twice) that it had not considered these documents when it decided to collect all States' data. *See*

---

indicators included allowing hundreds of thousands of deceased and other ineligible people to remain on State SNAP benefit rolls.").

[35] USDA SNAP Program Integrity Data Team: Preliminary Report (May 13, 2026), https://www.fns.usda.gov/research/snap/program-integrity-data-preliminary. *See, e.g., id.* at 2 ("[T]he team identified at least $3 billion a year of *potential* fraud, waste, and abuse.") (emphasis added); *id.* at 4 (describing data "used to flag *possible* immigration status discrepancies") (emphasis added); *id.* at 7 (review "identified several categories of discrepancies that *could* signal improper or erroneous benefit issuance") (emphasis added); ECF No. 99-1 (Garcia Decl.) (identifying defects in USDA's summary findings); ECF No. 99-2 (Reagan Decl.) (same).
[36] *See* CALIFORNIA_FNS_003121.
[37] *See* CALIFORNIA_FNS_001367-003120.

15

ECF No. 115-1 (not including these documents); ECF No. 125-1 (also not including these documents). This is plainly not the actual record of information considered by the agency in reaching its decision to issue or renew its demands for Plaintiffs' data. *See, e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO*, 799 F. Supp. 3d at 979 (describing administrative record as a "sham," including because it relied on "post hoc statements" and "pages of irrelevant documents" but was "silent" on the "calls, discussions, documents, and decisions that underpin" the government's actions).

## II.   PLAINTIFFS' PROPOSED DISCOVERY IS NECESSARY FOR A COMPLETE RECORD

The substantial gaps in the administrative record, as well as the evidence that USDA was motivated by considerations not in the record and that its stated justifications are pretextual, warrant extra-record discovery in this matter to allow for meaningful judicial review.

Under well-established Ninth Circuit standards, extra-record evidence may be considered in APA challenges "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotations omitted); *see also Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 1276229, at *2 (N.D. Cal. May 2, 2025) (holding that extra-record discovery should be permitted under the same circumstances). Similarly, extra-record discovery can be "justified by evidence that the agency decision was pretextual," such as when an agency acts based on a decisionmaker's "preordained determination" rather than an "objective review" of materials before the agency. *Nat'l TPS All. v. Noem*, No. 25-cv-05687-TLT (SK), 2025 WL 2419266, at *2 (N.D. Cal. Aug. 21, 2025) ("*National TPS Alliance II*") (internal quotation marks omitted) (citing *Dep't of Com.*, 588 U.S. 752). Such discovery is warranted and necessary here.

First, USDA has failed to provide a record that demonstrates the agency has "considered all relevant matters." *Doe*, 2020 WL 1853657, at *5 (quoting *Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980)). As established in Section I(A), *supra*, the existing

16

administrative record contains next to no documents demonstrating how USDA considered relevant factors prior to issuing its data demands, and the administrative record presently fails to explain USDA's decisions to issue these demands. Plaintiffs have pointed out these deficiencies to USDA on multiple occasions to no avail. Indeed, not content to omit the documents that were actually considered in the agency's decisionmaking processes, USDA has also padded the record with later news reports and preexisting documents that appear to have been assembled for litigation purposes, without any attempt to show how or when they were considered by the agency. As one district court has recently explained, "where the administrative record reveals gaps, inconsistencies, or omissions that prevent a court from assessing the 'whole record' that was before the agency decisionmakers at the time the challenged action was taken, limited extra-record discovery is warranted to permit meaningful judicial review." *Authors Guild*, 2025 WL 3678097, at \*14 (citing *Dep't of Com.*, 588 U.S. at 780-81); *see also San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (district court may "consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis").

Second, there is significant evidence that USDA's conduct is motivated by considerations "not in the record," and that USDA's stated justifications for the demands are, at least in part, pretextual. In particular, the Administration's desire to use the sensitive PII in SNAP applications for immigration enforcement purposes is manifest, but the administrative record is silent about that. The Ninth Circuit has held that when, as here, "it appears the agency has relied on documents or materials not included in the record," such as undisclosed communications, further inquiry and supplementation of the administrative record is appropriate. *Portland Audubon Soc.*, 984 F.2d at 1548 (citing *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982)). Targeted extra-record discovery to determine whether USDA has relied on undisclosed instructions from or discussions with or about outside agencies is needed here. It is also evident that USDA seeks to collect PII that it does not need for legally permitted purposes, and that the collected data will be used or disclosed for purposes not permitted by the FNA. Such bad faith justifies further discovery. *See, e.g.*, *Washington v. U.S. Dep't of Homeland Sec.*, No. 4:19-CV-

17

5210-RMP, 2020 WL 4667543, at *8 (E.D. Wash. Apr. 17, 2020) (finding that allegations that Administration officials' animus influenced agency actions "in a manner not readily verifiable through the administrative record qualify as bad faith or improper behavior that supports discovery to supplement the administrative record").

### III.    DISCOVERY IS NECESSARY TO EVALUATE THE EQUITABLE RELIEF SOUGHT

Courts have recognized that even in APA cases, Plaintiffs are entitled to discovery when such evidence is related to "equitable factors relevant to potential relief." *Jiahao Kuang v. U.S. Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 293379, at *4 (N.D. Cal. Jan. 23, 2019). It is well established that courts are "not limited to the administrative record when assessing how the issuance of an injunction may harm the public interest." *Id.* at *3 (quotation marks omitted); *see also*, *e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1107-08 (N.D. Cal. 2018) (denying motion to strike extra-record evidence submitted in support of motion for preliminary injunction, where evidence was relevant to assessing the balance of hardships between the parties). Indeed, "it will often be necessary for a court to take new evidence to fully evaluate claims of irreparable harm . . . and claims that the issuance of the injunction is in the public interest." *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 370, n.7 (D.D.C. 2017) (quotation marks omitted); *see also*, *e.g.*, *Roshandel v. Chertoff*, No. C07-1739MJP, 2008 WL 1969646, at *9 (W.D. Wash. May 5, 2008) (denying motion to dismiss a claim for injunctive relief because "the last two elements—balance of hardship and public interest implications— require the benefits of discovery").

Plaintiffs are entitled to discovery relevant to the equitable factors for a permanent injunction. *See, e.g.*, *Kuang*, 2019 WL 293379, at *4.  USDA has repeatedly claimed "the Government would be harmed by an injunction" because injunctive relief "would limit . . . the President's ability to identify fraud, waste, and abuse." ECF No. 72 at 24. USDA has also claimed the balance of equities is in its favor because, without the data sought, "USDA cannot adequately carry out its statutory responsibilities to oversee the SNAP program." ECF No. 118 at 30. And USDA has announced its intent to file a counterclaim for injunctive relief, presumably to require that Plaintiffs produce all of the demanded data. Plaintiffs are entitled to discovery to test

18

Plaintiff States' Motion to Complete and Supplement the Administrative Record (Case No. 3:25-cv-06310-MMC)

USDA's arguments bearing on the balance of equities and public interest factors relevant to Plaintiffs' request for permanent injunctive relief.

## IV.    USDA SHOULD BE REQUIRED TO LOG WITHHELD AND REDACTED MATERIALS

USDA limited its initial administrative record to only "non-privileged" documents, and it appears to be claiming privilege to withhold every other document that was "directly or indirectly considered."[38] But the deliberative process privilege extends to only certain types of documents. It does not blanket the entirety of USDA's activities until the public announcement of its policy. The privilege only covers documents that are both "predecisional" (i.e., preceding adoption of the agency's policy) and "deliberative" (i.e., reflecting advisory opinions, recommendations, and deliberations about agency policies). *Transgender L. Ctr. v. Immigr. & Customs Enf't,* 46 F.4th 771, 783 (9th Cir. 2022) (collecting cases). The privilege is intended to limit disclosure of "documents that would 'inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position.'" *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 612 (N.D. Cal. 2020) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Like other privileges, the deliberative process privilege "does not apply . . . to any factual information upon which the agency has relied." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445, n.4 (9th Cir. 2024). And the deliberative process privilege is a qualified privilege, which allows a litigant to obtain the deliberative materials if the need for the materials overrides the government's interest in non-disclosure. *FTC v. Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussions regarding contemplated policies and decisions.").

The Ninth Circuit recently held that "deliberative materials are generally not part of the [administrative record] *absent* impropriety or bad faith by the agency." *Blue Mountains Biodiversity Project*, 99 F.4th at 444 (emphasis added). But while a court will ordinarily "assess

---

[38] *See* ECF No. 115-1 at 1, 3.

19

the lawfulness of agency action based on the reasons offered by the agency," that explanation may be insufficient when there is a "showing of bad faith or improper behavior" by the agency. *Id.* at 445 (citing *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)). In such circumstances, courts may order production of a privilege log in order to determine whether withheld materials are in fact deliberative, *id.*, as well as to consider whether plaintiffs can overcome privilege claims and require agency defendants to produce deliberative materials. *National TPS Alliance II*, 2025 WL 2419266, at *4 (citing *Jeffries*, 99 F.4th at 445). This is just such a case, as the evidence of USDA's bad faith or improper behavior (such as the agency's shifting and factually unsupported rationales) warrant a deeper dive into the agency's decisionmaking process. *See* Section I(C), *supra.*

Indeed, a Minnesota federal court recently found bad faith when USDA attempted to withhold SNAP funding from the State of Minnesota due to spurious fraud claims—including claims based on USDA's purported "review of data gathered from the SNAP Information Database." *Minnesota v. U.S.D.A.*, No. 25-CV-4767 (LMP/JFD), 2026 WL 125180, at *14 n.11 (D. Minn. Jan. 16, 2026). The court rejected USDA's "conclusory" analysis as failing to provide any evidence of "fraud, waste, and abuse" in Minnesota, and criticized USDA for ignoring the contrary evidence known to the agency. *Id.* As the court explained, "USDA evidently believes that it may make sweeping, nonspecific, and unsupported accusations of 'fraud, waste, and abuse' and threaten to withhold administrative funding from Minnesota when, if anything, the evidence before this Court—*including from the USDA itself*—undermines those allegations." *Id.* (emphasis in original). So too here, where, in many cases, without actual evidence of fraud, USDA has threatened to disallow funding in amounts that greatly exceed a State's total administrative funding—a plainly coercive and punitive move.[39]

Accordingly, if USDA continues to withhold any documents based on claims of deliberative process or other privileges, it should identify those documents on a privilege log (and submit those documents for *in camera* review) so the Court can determine whether such materials have been improperly categorized as deliberative, and whether properly categorized deliberative

---

[39] ECF No. 75-1, Ex. C.

20

materials should nonetheless be produced due to USDA's impropriety or because Plaintiffs' need for the materials overrides USDA's interest in non-disclosure. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1092 (9th Cir. 2025) (affirming discovery order to require *in camera* review of agency documents where the documents were potentially not "predecisional" or "deliberative," and where any presumed deliberative privilege was overridden based on the four-factor *Warner* test and the "need for accurate fact-finding") (citing *FTC v. Warner Comm'n, Inc.*, 742 F.2d at 1161)); *Nat'l TPS Alliance II*, 2025 WL 2419266, at *4 (requiring privilege log and *in camera* review); *see also CASA, Inc. v. Noem*, No. CV 25-1484-TDC, 2025 WL 3514378, at *11-13 (D. Md. Dec. 8, 2025) (requiring *in camera* review).

## CONCLUSION

For these reasons, the Court should order USDA to complete and supplement the administrative record by responding to Plaintiffs' attached requests for production and Interrogatories within 30 days of the Court's order, and to identify on a privilege log and provide to the Court for *in camera* review any materials that USDA believes should be withheld on grounds of deliberative process or any other privilege, within 45 days of the Court's order.

Dated:  May 29, 2026                              Respectfully submitted,

ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
LIAM E. O'CONNOR
MARIA F. BUXTON
WILLIAM BELLAMY
SEBASTIAN BRADY


*/s/ Julia Heming Segal*
JULIA HEMING SEGAL
Deputy Attorneys General
*Attorneys for Plaintiff State of California*

21

| ADDITIONAL COUNSEL FOR PLAINTIFFS | |
|---|---|
| Letitia James<br>Attorney General of New York<br><br>*/s/ Mark Ladov*<br>Mark Ladov<br>Special Counsel<br>Julie Dona<br>Special Counsel<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8240<br>mark.ladov@ag.ny.gov<br>*Attorneys for Plaintiff State of New York* | Kwame Raoul<br>Attorney General of Illinois<br><br>*/s/ Sherief Gaber*<br>Harpreet K. Khera<br>Bureau Chief, Special Litigation<br>Sherief Gaber<br>Assistant Attorney General<br>115 S. LaSalle St., 35th Flr.<br>Chicago, Illinois 60603<br>(773) 590-7127<br>sherief.gaber@ilag.gov<br>*Attorneys for Plaintiff State of Illinois* |
| Kristin Mayes<br>Attorney General of Arizona<br><br>*/s/ Luci D. Davis*<br>Luci D. Davis (AZ No. 035347)<br>Hayleigh S. Crawford (AZ No. 032326)<br>2005 N. Central Ave. Phoenix, AZ 85004<br>(602) 542-3333<br>Luci.Davis@azag.gov<br>Hayleigh.Crawford@azag.gov<br>ACL@azag.gov<br>*Attorneys for Plaintiff State of Arizona* | Philip J. Weiser<br>Attorney General of Colorado<br><br>*/s/ David Moskowitz*<br>David Moskowitz<br>Deputy Solicitor General<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>david.moskowitz@coag.gov<br>*Attorneys for Plaintiff State of Colorado* |
| William Tong<br>Attorney General of Connecticut<br><br>*/s/ Janelle R. Medeiros*<br>Janelle R. Medeiros<br>Special Counsel for Civil Rights<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5020<br>Janelle.Medeiros@ct.gov<br>*Attorneys for Plaintiff State of Connecticut* | Kathleen Jennings<br>Attorney General of Delaware<br><br>*/s/ Vanessa L. Kassab*<br>Ian R. Liston<br>Director of Impact Litigation<br>Vanessa L. Kassab<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br>*Attorneys for Plaintiff State of Delaware* |

Brian L. Schwalb
Attorney General for the District of Columbia

/s/ Nicole S. Hill
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
Attorneys for Plaintiff District of Columbia

Anne E. Lopez
Attorney General of Hawai'i

/s/ Kaliko'onālani D. Fernandes
David D. Day
Special Assistant to the Attorney General
Kaliko'onālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
Attorneys for Plaintiff State of Hawai'i

Office of The Governor ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky

/s/ S. Travis Mayo
S. Travis Mayo
General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
Attorneys for Plaintiff Kentucky Governors' Office

Aaron M. Frey
Attorney General of Maine

/s/ Brendan Kreckel
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.:  207-626-8800
Fax:  207-287-3145
brendan.kreckel@maine.gov
Attorneys for Plaintiff State of Maine

Anthony G. Brown
Attorney General of Maryland

/s/ James C. Luh
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
Attorneys for Plaintiff State of Maryland

Andrea Joy Campbell
Attorney General of Massachusetts

/s/ Katherine Dirks
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
Attorneys for Plaintiff Commonwealth of Massachusetts

23

| | |
|---|---|
| Dana Nessel<br>Attorney General of Michigan<br><br>*/s/ Neil Giovanatti*<br>Neil Giovanatti<br>Assistant Attorney General<br>Michigan Department of Attorney General<br>525 W. Ottawa<br>Lansing, MI 48909<br>(517) 335-7603<br>giovanattin@michigan.gov<br>beachb@michigan.gov<br>*Attorneys for Plaintiff State of Michigan* | Keith Ellison<br>Attorney General of Minnesota<br><br>*/s/ Joseph R. Richie*<br>Joseph R. Richie<br>Special Counsel<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota, 55101<br>(651) 300-0921<br>joseph.richie@ag.state.mn.us<br>*Attorneys for Plaintiff State of Minnesota* |
| Jennifer Davenport<br>Attorney General of New Jersey<br><br>/s/ *Kashif T. Chand*<br>Kashif T. Chand (NJ Bar No. 016752008)<br>Assistant Attorney General<br>New Jersey Office of the Attorney General,<br>Division of Law<br>124 Halsey Street, 5th Floor<br>Newark, NJ 07101<br>Tel: (973) 648-2052<br>kashif.chand@law.njoag.gov<br>*Attorneys for Plaintiff State of New Jersey* | Raúl Torrez<br>Attorney General of the State of New Mexico<br><br>*/s/ Steven Prefrement*<br>Steven Perfrement<br>Senior Litigation Counsel<br>New Mexico Department of Justice<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>SPerfrement@nmdoj.gov<br>505-601-7727<br>*Attorneys for the State of New Mexico* |
| Dan Rayfield<br>Attorney General of Oregon<br><br>*/s/ Scott P. Kennedy*<br>Scott P. Kennedy<br>Senior Assistant Attorney General<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>Tel (971) 453-9050<br>Fax (971) 673-5000<br>Scott.Kennedy@doj.oregon.gov<br>*Attorneys for Plaintiff State of Oregon* | Josh Shapiro, in his official capacity as<br>Governor of the Commonwealth of<br>Pennsylvania<br><br>*/s/ Jacob B. Boyer*<br>Jennifer Selber<br>General Counsel<br>Jacob B. Boyer<br>Deputy General Counsel<br>Pennsylvania Office of the Governor<br>30 N. 3rd St., Suite 200<br>Harrisburg, PA 17101<br>(717) 460-6786<br>jacobboyer@pa.gov<br>*Counsel for Governor Josh Shapiro* |

| | |
|---|---|
| Peter F. Neronha<br>Attorney General of Rhode Island<br><br>/s/ *Madeline R. Becker*<br>Madeline R. Becker (RI Bar No. 10034)<br>Special Assistant Attorney General<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400, Ext. 2151<br>mbecker@riag.ri.gov<br>*Attorneys for Plaintiff State of Rhode Island* | Nicholas W. Brown<br>Attorney General of Washington<br><br>/s/ *Jennifer K. Chung*<br>Jennifer K. Chung, WSBA #51583<br>William Mcginty, WSBA #41868<br>Julie Moroney, WSBA #59017<br>Assistant Attorneys General<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>206-464-7744<br>jennifer.chung@atg.wa.gov<br>william.mcginty@atg.wa.gov<br>julie.moroney@atg.wa.gov<br>*Attorneys for Plaintiff State of Washington* |
| Joshua L. Kaul<br>Attorney General of Wisconsin<br><br>/s/ *Karla Z. Keckhaver*<br>Karla Z. Keckhaver<br>Assistant Attorney General<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>608-264-6365<br>karla.keckhaver@wisdoj.gov<br>*Attorneys for Plaintiff State of Wisconsin* | Aaron D. Ford<br>Attorney General of Nevada<br><br>/s/ *Heidi Parry Stern*<br>Heidi Parry Stern (Bar. No. 8873)<br>Solicitor General<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>HStern@ag.nv.gov<br>*Attorneys for Plaintiff State of Nevada* |

25