ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
LIAM E. O'CONNOR
MARIA F. BUXTON
WILLIAM BELLAMY
SEBASTIAN BRADY
JULIA HEMING SEGAL
Deputy Attorneys General
State Bar No. 363672
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone:  (415) 229-0128
 Fax:  (415) 703-5480
 E-mail:  Julia.HemingSegal@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, ET AL.**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.**<br><br>Defendants. | Case No. **3:25-cv-06310-MMC**<br><br>**DECLARATION OF MARK LADOV IN SUPPORT OF PLAINTIFF STATES' MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD**<br><br>Hearing Date: July 10, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

I, Mark Ladov, declare that the following is true and correct:

1. I am an attorney licensed to practice law in the State of New York and admitted *pro hac vice* in this litigation. I am Special Counsel in the Office of the New York State Attorney General, and counsel to Plaintiff the State of New York. I make this declaration in support of Plaintiffs' motion to complete and supplement the administrative record.

2. I am over the age of 18 and have personal knowledge of all the facts stated herein, except those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

3. Attached as Exhibit A is a copy of a letter that was sent by Plaintiffs' counsel to Defendants' counsel on January 16, 2026, objecting to insufficiencies in the administrative record produced to that date.

4. Attached as Exhibit B is a copy of an email that was sent by Defendants' counsel on January 30, 2026, responding to Plaintiffs' January 16 letter.

5. Attached as Exhibit C is a copy of a letter that was sent by Plaintiffs' counsel to Defendants' counsel on April 8, 2026, further objecting to insufficiencies in the administrative record produced to that date.

6. Attached as Exhibit D is a copy of the "Second Supplemental Administrative Record" outline produced by Defendants to Plaintiffs on May 1, 2026.

7. Attached as Exhibit E is a copy of a letter that was sent by Plaintiffs' counsel to Defendants' counsel on May 7, 2026, further objecting to insufficiencies in the supplemental administrative record produced to that date.

8. Attached as Exhibit F is a copy of a data demand letter sent by USDA to State agencies in at least some of the Plaintiff States on May 15, 2026, along with copies of an Attachment A (labeled "Requested Data Elements") and an Attachment B (labeled "Fourth Protocol") attached to that letter. This letter and the attachments restate USDA's preexisting demand and proposed protocol language.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1

Executed on May 29, 2026, at New York, NY.


*/s/ Mark Ladov*

Mark Ladov

Ladov Decl. ISO Pl. States' Mot. to Complete and Suppl. the Admin. Record (Case No. 3:25-cv-06310-MMC)

# Exhibit A

January 16, 2026

*Via E-mail*
Elizabeth J. Shapiro
Benjamin S. Kurland
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-7755
Ben.kurland@usdoj.gov
*Counsel for Defendants*

Re: Incomplete Administrative Records

Dear Counsel:

On behalf of the Plaintiff States in *California v. USDA*, No. 3:25-cv-06310-MMC (N.D. Cal. Oct. 15, 2025), we write in response to the administrative records that the U.S. Department of Agriculture (USDA) Food and Nutrition Services (FNS) and USDA Office of Inspector General (OIG) produced on January 8, 2026. The records you have produced to Plaintiffs are plainly incomplete. We write to request that you produce a full and complete administrative record (including a privilege log identifying any documents that are redacted or withheld on grounds of privilege) as required by law.

As judicial review of APA claims is often limited to review of the record, it is integral that the court have a complete record before it. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Accordingly, courts routinely order agencies to complete the administrative record where the agency's submitted record is incomplete. *See Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019) ("'Completing the record' refers to including 'materials which were actually considered by the agency, yet omitted from the administrative record[.]'"). The "whole" record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555. Such a record should contain "documents that literally passed before the eyes of the final agency decision maker as well as those considered and relied upon by subordinates who provided recommendations." *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017). An agency is not permitted to exclude information it considered on the grounds that it did not rely on it. *Cal. Ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. 05-cv-3508-EDL & 05-cv-4038-EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006). Additionally, courts may require production of deliberative materials (or identification of those materials on a privilege log) when there is evidence of impropriety or bad faith by the agency, or to determine whether documents were properly identified as deliberative.

1

*See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444-45 (9th Cir. 2024); *National TPS Alliance v. Noem*, No. 25-cv-01766-EMC, 2025 WL 1276229, at *2 (N.D. Cal. May 2, 2025).

Based on these standards, the administrative records produced by Defendants are plainly incomplete.  For example, FNS has not produced any internal documents that were "directly or indirectly considered in connection with the promulgation of the June 23, 2025 Notice of a new System of Records (SORN), 90 Fed. Reg. 26521, and FNS's collection of SNAP recipient data from January 1, 2020 through the present," *see* ECF 115-1 at 1, other than a cursory one-page summary of public comments on the SORN, *see* CALIFORNIA_FNS_000573.

Defendants must comply with applicable legal standards and produce a complete administrative record.  Plaintiffs have identified that, at a minimum, the following records are improperly absent from the administrative records produced by Defendants to date, and which are necessary for the court to determine whether USDA's actions were arbitrary and capricious or contrary to law:

1. Documents considered by the agency when demanding SNAP data: The FNS administrative record contains no materials that pre-date USDA's initial May 6, 2025 data sharing guidance other than Executive Order 14243, a copy of the statute authorizing SNAP, and materials relating to OMB's prior data collection approval that has now been modified by USDA.  This does not satisfy the agency's obligation to produce a record of all materials considered in this agency action.  Similarly, the OIG administrative record contains minimal records considered by the OIG before initiating the investigations of California, Illinois, and Michigan.

2. Documents considered by the agency when promulgating the SORN: The FNS administrative record produced to date similarly contains minimal records that pre-date USDA's June 11, 2025 submission of a "nonsubstantive change request" to OMB and June 23, 2025 SORN.  USDA has provided no records to illuminate how the agency complied with its legal obligations under the SNAP Act, the Privacy Act, the Paperwork Reduction Act and other applicable laws when taking the actions memorialized in these documents.

3. Documents reflecting USDA's discussions or data sharing with SNAP payment processors: The May 6, 2025 data sharing guidance states that USDA is "working with several SNAP payment processors to consolidate SNAP data." The FNS administrative record contains no materials reflecting USDA's communications with the SNAP payment processors; however, any materials that the SNAP payment processors provided would have been considered when USDA prepared the May 6, 2025 request and therefore must be produced.

2

4. <u>Documents reflecting USDA's collaboration with DOGE</u>: USDA Secretary Rollins has acknowledged that the impetus for Defendants' data demand included discussions with the Administration's Department of Government Efficiency (DOGE).[1] The complete administrative record must therefore include communications and documents reflecting how USDA and Secretary Rollins collaborated with DOGE, and what role DOGE played in the issuance of the SNAP Database SORN and FNS's demand for SNAP recipient data from January 1, 2020 through the present.

5. <u>Documents reflecting other interagency discussions or data sharing</u>: USDA has consistently acknowledged that its SNAP data collection is intended to effectuate Executive Order 14243, whose purpose includes "promoting inter-agency data sharing." Furthermore, the permissible scope of inter-agency information sharing—and specifically whether USDA will share SNAP data with the Department of Homeland Security for use in immigration enforcement—has been at the forefront of the current litigation and the parties' communications over USDA's data demand and proposed protocol.  Therefore, the complete administrative record must include internal and inter-agency documents reflecting any potential "inter-agency data sharing," including any potential use of SNAP data for immigration enforcement.

6. <u>Documents reflecting USDA's compliance demands and enforcement process</u>: The FNS record includes copies of notifications and formal warning letters sent to the governors of Plaintiff States in August 2025.  But the record includes no documents considered by the agency when it decided to send these letters.  Nor does the record demonstrate how USDA calculated the proposed disallowance amount included in each formal warning letter.  Such materials are required for a complete administrative record.

7. <u>Documents reflecting USDA's renewal of the data demand in November 2025</u>: The FNS administrative record purports to be a "complete" set of documents "directly or indirectly considered in connection with . . . FNS's collection of SNAP recipient data from January 1, 2020 through the present."  ECF 115-1 at 1.  Yet it contains no documents dated later than September 26, 2025.  The complete administrative record in this case must also include a full record of materials considered by the agency when it renewed its demand for collection of data from Plaintiff States on November 24, 2025, and December 23, 2025, including all materials considered when the agency drafted its proposed data and security protocol and revised set of data elements and when the agency drafted its response to Plaintiffs' December 8, 2025 letter.

---

[1] *See, e.g.,* Fox News, "CORRUPT SYSTEM": Illegal immigrants' use of SNAP benefits revealed, at 3:09-3:24 (YouTube Nov. 2, 2025), available at https://youtu.be/piXXRqJQdKs?si=I7JBRPghWdhARKty&t=188 ("We asked every state for the first time in history, and this was in February, to send us their data and let us with DOGE and a war room actually start going through this data to better understand how this explosion of SNAP benefits happened under Joe Biden[.]").

8.  Documents reflecting USDA's analysis of data produced by other states: In attempting to justify the renewed request for SNAP Eligibility Data Elements for the period of January 1, 2020, to present, FNS Acting Administrator Patrick Penn's November 24, 2025 correspondence to the governors of Plaintiff States points to USDA's "preliminary review of data provided to FNS by States complying with FNS's data requests" which Penn represents indicates that "an estimated average of $24 million dollars [sic] per day of federal funds is lost to fraud and errors undetected by States in their administration of SNAP." ECF 116-2 at 6. However, neither this analysis nor the underlying documents relied upon in making this renewed request for SNAP data can be found in the FNS administrative record produced to date.

9.  Documents considered by USDA when reviewing alternatives suggested by Plaintiff States: FNS Acting Administrator Patrick Penn's December 23, 2025 correspondence to the governors of Plaintiff States rejects alternative methods for evaluating SNAP data without such large disclosures of PII. ECF 116-2 at 37-38. But the documents considered by the agency when analyzing these alternatives (and the requests and suggestions offered by Plaintiff States more generally) are also notably absent from the USDA FNS administrative record.

10. Documents considered by Secretary Rollins: Secretary Rollins has made repeated public comments concerning the agency's decision to demand SNAP data, and its efforts to penalize Plaintiff States for raising objections to that demand. For example, during a December 2, 2025 cabinet meeting, Secretary Rollins announced that "as of next week we have begun and will begin to stop moving federal funds into those states until they comply" with USDA's data demand.[2] She then publicly accused Plaintiff States of "protecting their bribery schemes" by not immediately providing the data.[3] Secretary Rollins has also publicly claimed that "[u]p until now the federal government had never asked states for data, for ensuring that dead people are not receiving [SNAP] or people using dead people's social security numbers, that people aren't getting it twice."[4] Such statements demonstrate that Secretary Rollins has been repeatedly briefed on this agency action, and has presumably participated in the agency's decision making process. A complete administrative record must include all materials that the Secretary considered when participating in the agency actions.

---

[2] The White House, *President Trump Hosts a Cabinet Meeting*, Dec. 2, 2025, at 59:45-1:00:33 (YouTube Dec. 2, 2025), https://www.youtube.com/watch?v=pZSd7jn9CSc.

[3] Brooke Rollins (@SecRollins), X (Dec. 2, 2025 11:11 a.m. PST), https://x.com/SecRollins/status/1995933975211397454?s=20.

[4] C-SPAN, *Agriculture Secretary Rollins Speaks to White House Reporters* (Dec. 8, 2025) (clip beginning at 5:48), https://www.c-span.org/program/white-house-event/agriculture-secretary-rollins-speaks-to-white-house-reporters/670147.

4

11. <u>Documents considered by other agency leaders</u>: The FNS administrative record includes documents signed by Food, Nutrition and Consumer Services (FNCS) Deputy Under Secretary and FNS Acting Administrator Patrick Penn; FNCS Senior Policy Advisor for Integrity Gina Brand; FNCS Chief of Staff Shiela Corley; FNS Administrator James Miller; and FNS Deputy Administrator for Evidence, Analysis and Regulatory Affairs Richard Lucas.  But as with Secretary Rollins, the record includes no materials that these individuals or other agency leaders considered (or any of the materials considered by their subordinates) when taking these actions.

Plaintiffs are troubled by Defendants' apparent bad faith, as evidenced by the public statements of USDA officials, the timeline in which USDA took these actions, and the mismatch between the stated rationale behind USDA's data demands and the proposed methods of collecting and uses for that data.  Such behavior justifies a closer look at the agency decisions in this matter.  *See Jeffries*, 99 F.4th at 444.  The gaps discussed above also suggest that documents may have improperly been withheld as deliberative when they do not qualify as such.  Therefore, Defendants should identify and log any documents withheld on grounds of privilege.  Plaintiffs also reserve their right to seek discovery outside of the administrative record.  *See Love v. Thomas*, 858 F.2d 1347, 1356 (9th Cir. 1988); *Nat'l TPS Alliance v. Noem*, No. 25-cv-01766-EMC, 2025 WL 1276229, at *2 (N.D. Cal. May 2, 2025).

By January 23, 2026, please confirm that Defendants will correct these deficiencies to ensure that the court has a complete record to review by February 6, 2026.  The Plaintiff States will not oppose a motion to complete the administrative record. Should Defendants be unwilling to affirmatively complete the administrative record and to produce a privilege log, the Plaintiff States intend to seek relief from the court.

Respectfully submitted,

**Rob Bonta**
**Attorney General of California**

Paul Stein
Robin Goldfaden
Supervising Deputy Attorneys General
Andrew Z. Edelstein
Anna Rich
Jane Reilley
Edward P. Wolfe
Sebastian Brady
William Bellamy
Maria F. Buxton
Liam E. O'Connor
Deputy Attorneys General

*/s/ Liam E. O'Connor*
Liam E. O'Connor
Deputy Attorney General
*Attorneys for Plaintiff State of California*

| | |
|---|---|
| **Letitia James** | **Kwame Raoul** |
| **Attorney General of New York** | **Attorney General of Illinois** |
| | |
| */s/ Mark Ladov* | */s/ Sherief Gaber* |
| Mark Ladov | Harpreet K. Khera |
| Special Counsel | Bureau Chief, Special Litigation |
| Julie Dona | Sherief Gaber |
| Special Counsel | Assistant Attorney General |
| 28 Liberty St. | 115 S. LaSalle St., 35th Flr. |
| New York, NY 10005 | Chicago, Illinois 60603 |
| (212) 416-8240 | (773) 590-7127 |
| mark.ladov@ag.ny.gov | Harpreet.Khera@ilag.gov |
| *Attorneys for Plaintiff State of New York* | *Attorneys for Plaintiff State of Illinois* |

**Kristin Mayes**
**Attorney General of Arizona**

*/s/ Hayleigh S. Crawford*
Hayleigh S. Crawford (AZ No. 032326)
Luci D. Davis (AZ No. 035347)
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Hayleigh.Crawford@azag.gov
Luci.Davis@azag.gov
ACL@azag.gov
*Attorneys for Plaintiff State of Arizona*

**William Tong**
**Attorney General of Connecticut**

*/s/ Janelle R. Medeiros*
Janelle R. Medeiros
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Janelle.Medeiros@ct.gov
*Attorneys for Plaintiff State of Connecticut*

**Brian L. Schwalb**
**Attorney General for the District of Columbia**

*/s/ Nicole S. Hill*
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

**Philip J. Weiser**
**Attorney General of Colorado**

*/s/ David Moskowitz*
David Moskowitz
Deputy Solicitor General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
david.moskowitz@coag.gov
*Attorneys for Plaintiff State of Colorado*

**Kathleen Jennings**
**Attorney General of Delaware**

*/s/ Vanessa L. Kassab*
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*

**Anne E. Lopez**
**Attorney General of Hawai'i**

*/s/ Kaliko'onālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kaliko'onālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawai'i*

7

**Office of The Governor *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky**

*/s/ S. Travis Mayo*
S. Travis Mayo
General Counsel
Taylor Payne
Chief Deputy General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors' Office*

**Anthony G. Brown**
**Attorney General of Maryland**

*/s/ James C. Luh*
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

**Aaron M. Frey**
**Attorney General of Maine**

*/s/ Brendan Kreckel*
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.:  207-626-8800
Fax:  207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

**Andrea Joy Campbell**
**Attorney General of Massachusetts**

*/s/ Katherine Dirks*
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

8

**Dana Nessel**
**Attorney General of Michigan**

*/s/ Neil Giovanatti*
Neil Giovanatti
Bryan Beach
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
beachb@michigan.gov
*Attorneys for Plaintiff State of Michigan*

**Keith Ellison**
**Attorney General of Minnesota**

*/s/ Joseph R. Richie*
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

**Matthew J. Platkin**
**Attorney General of New Jersey**

/s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

**Raúl Torrez**
**Attorney General of New Mexico**

*/s/ Steven Prefrement*
Steven Perfrement
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

**Aaron D. Ford**
**Attorney General of Nevada**

*/s/ Heidi Parry Stern*
Heidi Parry Stern
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

**Dan Rayfield**
**Attorney General of Oregon**

*/s/ Scott P. Kennedy*
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

9

**Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania**

/s/ *Jacob B. Boyer*
Jennifer Selber
General Counsel
Jacob B. Boyer
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

**Nicholas W. Brown**
**Attorney General of Washington**

*/s/ Jennifer K. Chung*
Jennifer K. Chung, WSBA #51583
William Mcginty, WSBA #41868
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

**Peter F. Neronha**
**Attorney General of Rhode Island**

/s/ *Madeline R. Becker*
Madeline R. Becker (RI Bar No. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

**Joshua L. Kaul**
**Attorney General of Wisconsin**

*/s/ Karla Z. Keckhaver*
Karla Z. Keckhaver
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

# Exhibit B

| | |
|---|---|
| **From:** | Kurland, Benjamin S (CIV) |
| **To:** | Liam O"Connor |
| **Cc:** | Paul Stein; Jane Reilley; Levine, Jesse; Ladov, Mark; Gaber, Sherief; Shapiro, Elizabeth (CIV) |
| **Subject:** | RE: California v. USDA - file sharing |
| **Date:** | Friday, January 30, 2026 7:35:39 PM |

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Dear Liam

Thank you for your letter and your extension of the deadline to respond. We write to confirm that FNS will supplement their Administrative Record, but OIG will stand on the record it has produced. FNS intends to provide its supplement by February 11. At the moment, we are still completing a thorough review of your letter and potentially responsive documents, so cannot give you a specific list.

Additionally, we have confirmed with both FNS and OIG that they do not have anything to place on a privilege log. Indeed, much of what you have asked for constitutes pre-decisional, deliberative materials, which Ninth Circuit precedent establishes are not part of the administrative record, thus agencies do not have to produce the materials, nor do they have to produce a privilege log identifying materials withheld as pre-decisional and deliberative. *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–45 (9th Cir. 2024).

Finally, much of what Plaintiffs have requested represents post-decisional materials—as USDA's initiation of a new data request in November represents a separate administrative action—which, therefore, are not part of the administrative record regarding the previous request. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018); *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012). As the Court established in its preliminary injunction order, the final agency action being challenged in this matter is FNS's May request for data, backed by the noncompliance procedures, which culminated in Formal Warning Letters in August of 2025. At the very least, this remains a live issue in the current preliminary injunction briefing and is therefore likely best held until the Judge can rule on the pending motion.

Thank you,
Ben

Ben Kurland
Trial Attorney | Federal Programs Branch
202.598.7755

**From:** Liam O'Connor <Liam.OConnor@doj.ca.gov>

**Sent:** Friday, January 23, 2026 3:35 PM
**To:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>
**Cc:** Paul Stein <Paul.Stein@doj.ca.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse <Jesse.Levine1@ag.ny.gov>; Ladov, Mark <Mark.Ladov@ag.ny.gov>; Gaber, Sherief <sherief.gaber@ilag.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>
**Subject:** [EXTERNAL] RE: California v. USDA - file sharing

Hi Ben,

Plaintiffs would like to move this case forward as expeditiously as possible, especially given USDA's continued threats to disallow funding and the parties' February 6 deadline to submit a proposed schedule for cross-motions for summary judgment.

So, we agree to your request, provided that Defendants' response by next Friday will specifically describe which documents Defendants agree to produce by February 11 and whether Defendants will provide a privilege log by February 11.  If Defendants do not commit to timely remedy these issues, Plaintiffs intend to promptly seek judicial relief.

Thanks,
Liam

---

**From:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>
**Sent:** Friday, January 23, 2026 7:36 AM
**To:** Liam O'Connor <Liam.OConnor@doj.ca.gov>
**Cc:** Paul Stein <Paul.Stein@doj.ca.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse <Jesse.Levine1@ag.ny.gov>; Ladov, Mark <Mark.Ladov@ag.ny.gov>; Gaber, Sherief <sherief.gaber@ilag.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>
**Subject:** RE: California v. USDA - file sharing

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Dear Liam,

Thank you for your letter. Both FNS and OIG are thoroughly reviewing your comments but require additional time to investigate the matter. We would like to ask for additional time to respond, as USDA has granted the States on several occasions. Would the States agree to postpone their deadline an additional week?

Thank you,
Ben

Ben Kurland

Trial Attorney | Federal Programs Branch

202.598.7755

---

**From:** Liam O'Connor <Liam.OConnor@doj.ca.gov>
**Sent:** Friday, January 16, 2026 7:39 PM
**To:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>
**Cc:** Paul Stein <Paul.Stein@doj.ca.gov>; Gaber, Sherief <sherief.gaber@ilag.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse <Jesse.Levine1@ag.ny.gov>; Ladov, Mark <Mark.Ladov@ag.ny.gov>
**Subject:** [EXTERNAL] RE: California v. USDA - file sharing

Hi Ben,

Please see the attached letter regarding the administrative records.

Thanks,
Liam

_____

**Liam E. O'Connor** | Deputy Attorney General

California Department of Justice | Government Law Section

455 Golden Gate Ave, 11th Fl., San Francisco, CA 94102

(415) 510-3915 | liam.oconnor@doj.ca.gov

---

**From:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>
**Sent:** Thursday, January 8, 2026 11:58 AM
**To:** Ladov, Mark <Mark.Ladov@ag.ny.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>
**Cc:** Liam O'Connor <Liam.OConnor@doj.ca.gov>; Paul Stein <Paul.Stein@doj.ca.gov>; Gaber, Sherief <sherief.gaber@ilag.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse <Jesse.Levine1@ag.ny.gov>
**Subject:** RE: California v. USDA - file sharing

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi Mark,

Thank you for confirming. I should also note that the OIG AR contains some redactions, but they are only to protect the PII and contact information of government officials. Nothing else was redacted.

Thank you,

Ben

Ben Kurland
Trial Attorney | Federal Programs Branch
202.598.7755

---

**From:** Ladov, Mark <Mark.Ladov@ag.ny.gov>
**Sent:** Thursday, January 8, 2026 2:21 PM
**To:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>; Shapiro, Elizabeth (CIV)
<Elizabeth.Shapiro@usdoj.gov>
**Cc:** Liam O'Connor <liam.oconnor@doj.ca.gov>; Paul Stein <paul.stein@doj.ca.gov>; Gaber, Sherief
<sherief.gaber@ilag.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse
<Jesse.Levine1@ag.ny.gov>
**Subject:** [EXTERNAL] RE: California v. USDA - file sharing

Ben,

Confirming receipt, and that we were able to extract PDFs from the uploaded zip files.

Thanks,
Mark

---

**From:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>
**Sent:** Thursday, January 8, 2026 2:11 PM
**To:** Ladov, Mark <Mark.Ladov@ag.ny.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>
**Cc:** Liam O'Connor <liam.oconnor@doj.ca.gov>; Paul Stein <paul.stein@doj.ca.gov>; Gaber, Sherief
<sherief.gaber@ilag.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse
<Jesse.Levine1@ag.ny.gov>
**Subject:** RE: California v. USDA - file sharing

Hi Mark,

I've uploaded the ARs to the link you provided. FNS and OIG compiled separate records. Can
you confirm you have received?

Thanks,
Ben

Ben Kurland
Trial Attorney | Federal Programs Branch
202.598.7755

**From:** Ladov, Mark <Mark.Ladov@ag.ny.gov>
**Sent:** Wednesday, January 7, 2026 2:25 PM
**To:** Kurland, Benjamin S (CIV) <Ben.Kurland@usdoj.gov>; Shapiro, Elizabeth (CIV) <Elizabeth.Shapiro@usdoj.gov>
**Cc:** Liam O'Connor <liam.oconnor@doj.ca.gov>; Paul Stein <paul.stein@doj.ca.gov>; Gaber, Sherief <sherief.gaber@ilag.gov>; Jane Reilley <Jane.Reilley@doj.ca.gov>; Levine, Jesse <Jesse.Levine1@ag.ny.gov>
**Subject:** [EXTERNAL] California v. USDA - file sharing

Ben,

Per your earlier email about sharing the administrative record files, the NYAG's IT Department has set up a secure cloud folder for that purpose.  The link is below, and I'll send you the password separately.

Link: https://oagcloud.ag.ny.gov/s/tkNEic9RNBawnqX

If you have any technical problems, please email Jesse Levine (cc'd here) and me, and we can get that sorted out.

Thanks,
Mark

**Mark Ladov**
**Special Counsel**
New York State Office of the Attorney General
28 Liberty Street | New York, New York 10005
Office: (212) 416-8240
Cell: (347) 814-9434
Email: mark.ladov@ag.ny.gov

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s).

Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# Exhibit C

April 8, 2026

*Via E-mail*
Elizabeth J. Shapiro
Tyler Becker
Benjamin S. Kurland
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-7755
Ben.kurland@usdoj.gov
*Counsel for Defendants*

   Re: Incomplete Administrative Record

Dear Counsel:

We write in advance of Defendants' production of an administrative record (AR) responsive to the Second Amended Complaint (SAC).[1] Given that Defendants' previously produced ARs remain incomplete, and that the improperly omitted materials remain relevant to USDA's actions challenged in the Second Amended Complaint, we again request that Defendants complete the previously produced ARs by April 17, 2026 to avoid the need for motion practice.

We previously wrote to Defendants on January 16, 2026, raising objections regarding the insufficiency of the ARs produced by USDA-FNS and USDA-OIG. In your January 30, 2026 response, Defendants stated that FNS would agree to supplement its record. The supplemental AR produced by FNS on February 11, 2026, however, added only three OMB approval documents that do nothing to explain the agency's actions. *See* ECF 125; CALIFORNIA_FNS_000671-676.

The complete absence of *any* internal or inter-agency materials directly or indirectly considered by Secretary Rollins, USDA-OIG, and other USDA staff in connection with the challenged agency actions—other than a cursory one-page summary of public comments on the SORN—demonstrates that Defendants have produced an incomplete AR. For example, the AR produced

---

[1] Plaintiffs filed their original Complaint on July 28, 2025, and their Second Amended Complaint on April 3, 2026. *See* ECF 146. Federal Rule of Civil Procedure 15(a)(3) states that "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Under Civil Local Rule 16-5, the required response to a Complaint raising APA claims is an answer and certified administrative record, and these were originally due "within 90 days of the receipt of service of the summons and complaint." Although the Court extended Defendants' time to answer until after resolution of the parties' anticipated cross-motions for summary judgment, the time remaining to file the administrative record has passed. *See* ECF 112. Therefore, Plaintiffs understand the deadline for Defendants to produce an AR responsive to the Second Amended Complaint to be April 17, 2026.

1

by USDA-FNS fails to include USDA-FNS's communications requesting data from Plaintiff States' vendors (FIS and Conduent), even though these preceded and informed the original data demands; any communications or materials concerning DOGE, despite Secretary Rollins' public acknowledgements that USDA has partnered with DOGE on this effort; or any materials reviewed by Secretary Rollins, other agency decision-makers, or their staff when issuing and enforcing the data demands. Similarly, the AR produced by USDA-OIG contains no documents connected to its decision to demand vast amounts of PII from Plaintiff States. These glaring absences provide reasonable and non-speculative grounds for determining that the existing record is incomplete.

Your letter also stated that FNS and OIG would not produce a privilege log, and argued that much of what Plaintiffs sought represents "post-decisional materials" as to USDA's May 2025 data demand and subsequent enforcement actions. We address these last two points below.

**Post-Decisional Materials:** We disagree that "much of what Plaintiffs have requested represents post-decisional materials" that were properly excluded from the ARs for Plaintiffs' First Amended Complaint (FAC). *First*, as you noted, the challenged agency action includes FNS's May 2025 request for data and its ensuing noncompliance procedures. Therefore, Defendants must produce any materials considered by the agency when enforcing its original data demands up to and including its formal warning letters.[2] This would include, for example, any materials considered by USDA when setting its proposed disallowance amounts. *Second*, Defendants also must produce materials that were adopted by the agency as justifications for its data demands and noncompliance procedures. For example, during the preliminary injunction proceedings, Defendants claimed that their data demands and noncompliance procedures were warranted because FNS' data analysis had uncovered instances of duplicate enrollment implicating "anywhere from an estimated $570 million to $1.1 billion annualized" and "over 300,000 potential instances of *deceased* individuals actively enrolled in" SNAP. ECF 90-1 at ¶¶ 5-6 (emphasis in original). These representations to the court indicate that the agency relied on these factual analyses as justification for their actions, and therefore they should have been included in the AR.

Nonetheless, we believe that the SAC moots Defendants' objections to producing these materials. While Defendants' position has been that "USDA's initiation of a new data request in November represents a separate administrative action" not covered by the FAC, the renewed data demands beginning with USDA's November 24, 2025 letter and its subsequent attempts to enforce those demands are expressly challenged in the SAC (*see* ¶¶ 225-242). Therefore, the Defendants' AR in response to the SAC should include the documents omitted from the prior ARs as "post-decisional."

**Deliberative Process Privilege:** Although deliberative materials are generally not part of the administrative record, courts may require production of such materials (or identification of those materials on a privilege log) when there is evidence of impropriety or bad faith by the agency, or where it is otherwise necessary to determine whether documents were properly identified as

---

[2] USDA sent formal warning letters to most Plaintiff States on August 20, 2025, *see* CALIFORNIA_FNS_000619-663, but engaged in enforcement activity aimed at Pennsylvania after that date, *see* CALIFORNIA_FNS_000664-670.

2

deliberative. *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444-45 (9th Cir. 2024); *Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 WL 1276229, at *2 (N.D. Cal. May 2, 2025). Furthermore, the deliberative process privilege is only a qualified privilege extended to certain types of documents, and cannot be used to blanket the entirety of USDA's activities until the public announcement of their policy. The privilege is intended to limit disclosure of "documents that would 'inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position.'" *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 612 (N.D. Cal. 2020) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The existing evidence of Defendants' bad faith or improper behavior warrants a deeper dive into the agency's decision-making process. *See Jeffries*, 99 F.4th at 445. For example, according to Secretary Rollins' recent public statements, the impetus for the data demands was her false claims about SNAP program integrity, including that a temporary 40% increase in SNAP benefits (which was implemented during the first Trump administration to assist households weather the COVID-19 pandemic) was a Biden administration effort "to buy the election." *See* Second Amended Complaint ¶¶ 242-45. These and other persistent misstatements concerning USDA's data demands, and the agency's lack of transparency around these issues, justify a greater inquiry than the current administrative record provides, and warrant a privilege log for any withheld materials under controlling precedent.

\* \* \* \* \*

Given that the improperly omitted materials should be included in any record for the renewed data demands challenged in the SAC, Defendants should at the same time supplement and complete the prior incomplete ARs—including, for any materials withheld or redacted based on assertions of privilege, a privilege log. Before Plaintiffs seek judicial intervention to resolve this discovery dispute, we request that Defendants produce that complete record (including the full AR for the SAC) by April 17, 2026. The complete supplemented AR should include (in addition to any other materials that should properly be part of the complete record):

- Communications between USDA and Plaintiff States' vendors (FIS and Conduent) concerning requests for SNAP data.
- Communications between USDA and DOGE, or any other federal agency, concerning the collection, use or disclosure of SNAP data.
- Intra-agency communications and materials received or considered by USDA staff concerning the implementation of Executive Order 14243 or inter-agency data sharing.
- All analyses of SNAP data, including all materials considered by USDA staff (whether or not relied upon) when making and enforcing USDA's initial and renewed data demands.
- Materials considered by USDA when determining the scope of its demand for unredacted PII dating back to January 2020.
- Materials considered by USDA when issuing the system of records notice for the SNAP Information Database.
- All materials reviewed by Secretary Rollins and other USDA leadership and staff concerning the collection, use and disclosure of SNAP data, including (but not limited to)

3

all materials considered by Secretary Rollins as the basis for her assertions about SNAP administration and Plaintiff States cited in the Second Amended Complaint.

Please let us know if you would like to meet and confer on any of these issues prior to Defendants' production of a complete administrative record.


Dated: April 8, 2026

Letitia James
Attorney General of New York

*/s/ Mark Ladov*
Mark Ladov
Special Counsel
Julie Dona
Special Counsel
28 Liberty St.
New York, NY 10005
(212) 416-8240
mark.ladov@ag.ny.gov
*Attorneys for Plaintiff State of New York*


Rob Bonta
Attorney General of California

*/s/ Liam E. O'Connor*
Liam E. O'Connor

Paul Stein
Robin Goldfaden
Supervising Deputy Attorneys General
Julia Heming Segal
Sebastian Brady
William Bellamy
Maria F. Buxton
Liam E. O'Connor
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3915
Liam.OConnor@doj.ca.gov
*Attorneys for Plaintiff State of California*

Kwame Raoul
Attorney General of Illinois

*/s/ Sherief Gaber*
Harpreet K. Khera
Bureau Chief, Special Litigation
Sherief Gaber
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
sherief.gaber@ilag.gov
*Attorneys for Plaintiff State of Illinois*

4

Kristin Mayes
Attorney General of Arizona

*/s/ Luci D. Davis*
Luci D. Davis (AZ No. 035347)
Hayleigh S. Crawford (AZ No. 032326)
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Luci.Davis@azag.gov
Hayleigh.Crawford@azag.gov
ACL@azag.gov
*Attorneys for Plaintiff State of Arizona*


William Tong
Attorney General of Connecticut

*/s/ Janelle R. Medeiros*
Janelle R. Medeiros
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Janelle.Medeiros@ct.gov
*Attorneys for Plaintiff State of Connecticut*


Brian L. Schwalb
Attorney General for the District of Columbia

*/s/ Nicole S. Hill*
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

Philip J. Weiser
Attorney General of Colorado

*/s/ David Moskowitz*
David Moskowitz
Deputy Solicitor General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
david.moskowitz@coag.gov
*Attorneys for Plaintiff State of Colorado*


Kathleen Jennings
Attorney General of Delaware

*/s/ Vanessa L. Kassab*
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*


Anne E. Lopez
Attorney General of Hawaiʻi

*/s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

5

Office of The Governor *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. Travis Mayo
General Counsel
Chief Deputy General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors' Office*

Aaron M. Frey
Attorney General of Maine

*/s/ Brendan Kreckel*
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.:  207-626-8800
Fax:  207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

Anthony G. Brown
Attorney General of Maryland

*/s/ James C. Luh*
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

Andrea Joy Campbell
Attorney General of Massachusetts

*/s/ Katherine Dirks*
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

Dana Nessel
Attorney General of Michigan

*/s/ Neil Giovanatti*
Neil Giovanatti
Bryan Beach
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
beachb@michigan.gov
*Attorneys for Plaintiff State of Michigan*

Keith Ellison
Attorney General of Minnesota

*/s/ Joseph R. Richie*
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

6

Jennifer Davenport
Attorney General of New Jersey

/s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

Raúl Torrez
Attorney General of the State of New Mexico

/s/ *Steven Prefrement*
Steven Perfrement
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

Dan Rayfield
Attorney General of Oregon

/s/ *Scott P. Kennedy*
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

Josh Shapiro, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

/s/ *Jacob B. Boyer*
Jennifer Selber
General Counsel
Jacob B. Boyer
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

Peter F. Neronha
Attorney General of Rhode Island

/s/ *Madeline R. Becker*
Madeline R. Becker (RI Bar No. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

Nicholas W. Brown
Attorney General of Washington

/s/ *Jennifer K. Chung*
Jennifer K. Chung, WSBA #51583
William Mcginty, WSBA #41868
Julie Moroney, DC WSBA #59017
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
julie.moroney@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

7

Joshua L. Kaul
Attorney General of Wisconsin

/s/ Karla Z. Keckhaver
Karla Z. Keckhaver
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
Attorneys for Plaintiff State of Wisconsin

Aaron D. Ford
Attorney General of Nevada

/s/ Heidi Parry Stern
Heidi Parry Stern
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov
Attorneys for Plaintiff State of Nevada

# Exhibit D

| Second Supplemental Administrative Record for *California, et al. v. USDA, et al.* | Date | Bates Number Range |
|---|---|---|
| 1. Excel Sheet with disallowance calculations* | 08-20-2025 | |
| 2. FNS's November 24 Renewed Data Request and First Proposed Protocol | | |
|     a. Letters to each Plaintiff State, except Nevada | 11-24-2025 | |
|     b. Copy of Letter Attachments | | |
| 3. Plaintiff States' December 8 Letter | 12-08-2025 | |
| 4. FNS's December 23 Letter and Second Proposed Protocol | | |
|     a. Letters to each Plaintiff State, except Nevada | 12-23-2025 | |
|     b. Copy of Letter Attachments | | |
| 5. February 13 Preliminary Injunction Hearing Transcript | 02-13-2026 | |
| 6. FNS's February 17 Letter and Third Proposed Protocol | | |
|     a. Letters to each Plaintiff State, except Nevada | 02-17-2026 | |
|     b. Copy of Letter Attachments | | |
| 7. Plaintiff States' February 25 Letter | 02-25-2026 | |
| 8. FNS's March 10 Letter, Fourth Proposed Protocol, and Attachments | | |
|     a. Letters to each Plaintiff State, except Nevada | 03-10-2025 | |
|     b. Copy of Letter Attachments | | |
| 9. March 11 to 25 Correspondence Between Counsel | 03-11-2026–03-25-2026 | |
| 10. Plaintiff States' March 25 Letter | 03-25-2025 | |
| 11. FNS's March 27 Letter and Amended Fourth Proposed Protocol | | |
|     a. Letters to each Plaintiff State, except Nevada | 03-27-2025 | |
|     b. Copy of Letter Attachments | | |
| 12. Plaintiff States' March 30 Letter | 03-30-2025 | |
| 13. State of Illinois' response to Fourth Proposed Protocol* | 03-16-2026 | |
| 14. FNS' Response to Illinois* | 03-20-2026 | |
| 15. Plaintiff States' April 14 Letter | 04-14-2026 | |
| 16. Illinois' Response to FNS* | 04-20-2026 | |
| 17. Rationale (State Administration Issues) | | |
|     a. General/multi-state: | | |
|         i. Summary of State QC Liabilities* | | |

| | | | |
|---|---|---|---|
| ii. | Compilation document of FFY 2023-2025 ME Findings for California, Colorado, Illinois, Minnesota, and New York* | 01-08-2026 | |
| iii. | Compilation document of SNAP Oversight ME Findings for Minnesota, Pennsylvania, and Kentucky* | 04-21-2026 | |
| b.  Arizona: | | | |
| i. | SNAP E&T Claim Letter and Bill | 03-02-2026 | |
| ii. | FFY 2024 PER CAP | | |
| iii. | FFY 2023 PER CAP | | |
| iv. | FFY 2022 PER CAP | | |
| c.  California: | | | |
| i. | California High Risk Audit | 12-11-2025 | |
| ii. | DOJ Press Release on Madera County Employee Arrested* | 12-12-2025 | |
| iii. | FFY 2024 PER CAP | | |
| iv. | FFY 2023 PER CAP | | |
| v. | FFY 2022 PER CAP | | |
| d.  Colorado: | | | |
| i. | Colorado Pilot Letter | 12-17-2025 | |
| ii. | FNS letter requiring RPT CAP | 05-11-2025 | |
| iii. | Escalation timeline for Application Timeliness Issues* | 12-06-2024 | |
| iv. | September 2024 Recipient Claims & TOP ME Report | 09-2024 | |
| v. | FFY 2024 PER CAP | | |
| vi. | FFY 2023 PER CAP | | |
| vii. | February 2023 Recipient Integrity and Claims Review ME Report | 02-2023 | |
| viii. | FFY 2022 PER CAP | | |
| e.  Connecticut: | | | |
| i. | Reconciliation Billing for FFY 2024 | 02-05-2026 | |
| ii. | FFY 2024 PER CAP | | |
| iii. | FFY 2023 PER CAP | | |
| iv. | Reconciliation Billing for FFY 2022 | 02-26-2024 | |
| v. | FFY 2022 PER CAP | | |
| vi. | Reconciliation Billing for FFY 2020 | 03-03-2023 | |
| f.  DC: | | | |
| i. | FNS SSAB filing for matter concerning $30+ million claim | 08-28-2024 | |

| | | | |
|---|---|---|---|
| ii. | FFY 2024 PER CAP | | |
| iii. | April 2023 Advance Notification Letter | 04-28-2023 | |
| iv. | Associated Billing | 05-14-2024 | |
| v. | FFY 2023 PER CAP | | |
| vi. | FFY 2022 PER CAP | | |
| g. | Delaware: | | |
| i. | FFY 2024 PER CAP | | |
| ii. | FFY 2023 liability status and billing | 06-28-2024 | |
| iii. | Notice of assigned PERs for FFY 2023 due to sampling insufficiencies | 06-14-2024 | |
| iv. | Final Warning for sampling insufficiencies | 09-12-2024 | |
| v. | Advance Notification for sampling insufficiencies | 04-13-2023 | |
| vi. | FFY 2022 PER CAP | | |
| vii. | Notice of assigned PERs for FFY 2022 due to sampling insufficiencies | 05-26-2023 | |
| h. | Hawaii: | | |
| i. | FFY 2024 PER CAP | | |
| ii. | FFY 2023 PER CAP | | |
| iii. | FFY 2022 PER CAP | | |
| i. | Illinois: | | |
| i. | FFY 2025 Recipient Claims ME Report | 10-2024 | |
| ii. | FFY 2024 EBT ME Report | 04-2024 | |
| iii. | FFY 2024 PER CAP | | |
| iv. | FFY 2023 PER CAP | | |
| v. | FFY 2022 PER CAP | | |
| j. | Kentucky: | | |
| i. | FFY 2024 PER CAP | | |
| ii. | FFY 2023 PER CAP | | |
| k. | Maine: | | |
| i. | FFY 2019 QC settlement | 05-23-2021 | |
| ii. | FFY 2023 PER CAP | | |
| iii. | FFY 2022 PER CAP | | |
| l. | Maryland: | | |
| i. | News Report on "scheme" prompting investigation* | 01-16-2026 | |
| ii. | House of Delegates letter* | 01-09-2026 | |
| iii. | News Report on Whistleblower: Intentionally Inflating PER* | 01-08-2026 | |

| | | | |
|---|---|---|---|
| iv. | FFY 2023 QC Decision and Order | 04-01-2026 | |
| v. | FFY 2024 QC liability assessment | 06-30-2025 | |
| vi. | FFY 2022 PER CAP | | |
| m. | Massachusetts: | | |
| i. | DOJ press releases re: fraud crackdown* | 03-26-2026 | |
| ii. | Local news story on fraud* | 03-12-2026 | |
| iii. | DOJ press releases re: multi-state SNAP fraud* | 02-03-2026 | |
| iv. | DOJ press releases re: SNAP trafficking* | 12-17-2025 | |
| v. | FFY 2024 PER CAP | | |
| vi. | FFY 2023 PER CAP | | |
| vii. | FFY 2022 PER CAP | | |
| n. | Michigan: | | |
| i. | FFY 2025 RPT CAP | | |
| ii. | FFY 2024 APT CAP | | |
| iii. | FFY 2024 PER CAP | | |
| iv. | FFY 2024 Recipient Claims ME Report | 11-2024 | |
| v. | FFY 2023 PER CAP | | |
| vi. | FFY 2022 PER CAP | | |
| o. | Minnesota: | | |
| i. | OIG press release* | 04-16-2026 | |
| ii. | News Article on inaccurate Agency reporting* | 12-15-2025 | |
| iii. | Fair Hearing Decision | 11-25-2025 | |
| iv. | DOJ press release; Feeding Our Future* | 11-24-2025 | |
| v. | Fraud Training Video | | |
| vi. | FFY 2025 APT CAP | | |
| vii. | FFY 2025 Recertification PAR Report | 07-2025 | |
| viii. | FFY 2024 ABAWD ME Report | 2024 | |
| ix. | FFY 2024 QC ME Report | 08-2024 | |
| x. | FFY 2024 PER CAP | | |
| xi. | FFY 2023 PER CAP | | |
| xii. | FFY 2022 PER CAP | | |
| p. | New Jersey: | | |
| i. | News report on SNAP fraud* | 03-09-2026 | |
| ii. | FFY 2024 CAP Response | 12-06-2023 | |
| iii. | FFY 2024 CAP Action statistics | | |
| iv. | CAP progress reports for FFY 2024 | | |
| v. | FFYs 2023 CAP Action statistics | | |
| vi. | FFY 2023 PER CAP | | |

| | | |
|---|---|---|
| vii.      CAP progress reports for FFY 2023 | | |
| viii.     FFY 2022 PER CAP | | |
| q.   New Mexico: | | |
| i.       FFY 2024 SNAP QC liability amount bill | 06-30-2025 | |
| ii.      FFY 2023 PER CAP | | |
| iii.     FFY 2022 PER CAP | | |
| iv.      SSAB settlement agreement | 06-25-2022 | |
| r.   New York: | | |
| i.       FFY 2024 PER CAP | | |
| ii.      FFY 2023 PER CAP | | |
| iii.     FFY 2022 PER CAP | | |
| iv.      FFY 2021 QCIR report and corrective action response | | |
| v.       Various updates and original CAP for state systems access | | |
| s.   Ohio: | | |
| i.       FFY 2025 CAP Progress report outlining all open ME findings since 2021 | 11-2025 | |
| ii.      FFY 2024 PER CAP | | |
| iii.     FFY 2023 PER CAP | | |
| iv.      FFY 2022 PER CAP | | |
| t.   Oregon: | | |
| i.       Settlement Agreement for QC for FFY 2023 | 06-28-2026 | |
| ii.      Bill for Collection for at risk amount | 01-12-2026 | |
| iii.     FFY 2022 PER CAP | | |
| iv.      Settlement Agreement for QC for FFY 2019 | 08-20-2021 | |
| u.   Pennsylvania: | | |
| i.       FFY 2024 PER CAP | | |
| ii.      FFY 2023 QC Decision and Order | 06-02-2025 | |
| iii.     FFY 2022 PER CAP | | |
| v.   Rhode Island: | | |
| i.       Billing and claims letter | 05-15-2024 | |
| ii.      Billing | 09-28-2023 | |
| iii.     FFY 2024 PER CAP | | |
| iv.      FFY 2023 PER CAP | | |
| v.       FFY 2022 PER CAP | | |
| w.  Washington: | | |
| i.       FFY 2024 PER CAP | | |
| ii.      FFY 2023 PER CAP | | |
| iii.     2023 ABAWD settlement bill | 06-23-2023 | |

| | | | |
|---|---|---|---|
| iv. | FFY 2022 PER CAP | | |
| x. | Wisconsin: | | |
| i. | FFY 2025 ABAWD ME Report | 2025 | |
| ii. | FFY 2025 CAP Progress Report | 10-29-2025 | |
| iii. | FFY 2025 QC Statistical Report | 07-2025 | |
| iv. | FFY 2025 Recertification PAR Report | 05-2025 | |
| v. | FFY 2024 Recipient Integrity and Claims TOP ME Report | 06-2024 | |
| vi. | FFY 2024 QC ME Report | 08-2024 | |
| vii. | FFY 2024 State ME Report | 08-2024 | |
| viii. | FFY 2022 bill of collection | 06-30-2022 | |

* Denotes items not already in Plaintiffs' possession and which are provided as attachments to this list

# Exhibit E

May 7, 2026

***Via E-mail***
Elizabeth J. Shapiro
Tyler Becker
Benjamin S. Kurland
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-7755
Ben.kurland@usdoj.gov
*Counsel for Defendants*

Re: Incomplete Administrative Record

Dear Counsel:

We are in receipt of FNS's partial production and outline of its "Second Supplemental Administrative Record." This latest production is deficient for substantially the same reasons as Defendants' prior productions. We write this letter to afford Defendants a final opportunity to cure these deficiencies before we seek relief from the Court.

You have asked Plaintiffs to identify materials missing from this record by May 8. We have *already* provided two letters (on January 16, 2026 and April 8, 2026) detailing numerous documents and communications that are missing from the administrative records and remain unaddressed here. Additionally, we continue to maintain that a privilege log describing any withheld materials is needed given the failure of your existing record to explain the agency's actions.

Defendants have added no new documents to the USDA OIG administrative record. And what Defendants have added to the USDA FNS administrative record consists overwhelmingly of correspondence between the parties or other litigation documents (*see* Outline Nos. 2-16), and a series of documents lumped under the heading of "Rationale" (Outline No. 17). This last series of documents are presented in partial or incomplete form, seemingly cherry-picked for purposes of this litigation. Without other supporting documents, emails or metadata showing when and how these new documents were considered by the agency, this record looks like a post-hoc sham marshaled for litigation and not the actual record that was before the agency. *See, e.g., Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 799 F. Supp. 3d 967, 979 (N.D. Cal. 2025) (describing administrative record as a "sham," including because it relied on "post hoc statements" and "pages of irrelevant documents" but was "silent" on the "calls, discussions, documents, and decisions that underpin" the government's actions).

Additionally, USDA has taken numerous recent actions concerning the SNAP Information Database that indicate the existence of materials that are not reflected in this record, including:

1

- USDA's announcement (in an April 23, 2026 letter to non-Plaintiff States) that it is demanding production of SNAP data on a monthly basis "with the knowledge that this will develop into a daily data exchange."
- USDA's April 6, 2026 contract with Palantir Technologies, Inc. for a "SNAP Fraud Identification and Case Workflow Platform Pilot Program."[1]
- Secretary Rollins' recent statements justifying these data demands by citing outside analyses of SNAP data (and suggesting USDA may have shared data from the SNAP Information Database with third party organizations), such as her recent claim that "14,000 individuals receiving SNAP benefits were driving LUXURY VEHICLES!"[2]

These actions and public statements are directly relevant to "FNS's collection of SNAP recipient data from January 1, 2020 through the present," *see* ECF No. 115-1, and should be reflected in the documents before the Court when it is adjudicating Plaintiffs' APA claims.

Finally, as to OIG in particular, in addition to the deficiencies noted in Plaintiffs' January 16, 2026 correspondence, the administrative record also lacks *any* contemporaneous documents connected to USDA-OIG's decision to, in the middle of preexisting inspections, change course and demand an unprecedented amount of participant-level data from States.  *See, e.g.*, *New York v. McMahon*, 2026 WL 622484, at *6 (D. Mass. Feb. 11, 2026) (ordering supplementation of record where "[a]s the AR currently stands, there is virtually *no* reasoning backing the agency's decision-making process reflected in the record").

Accordingly, we request that Defendants produce a complete administrative record—including all of the documents listed in your Second Supplemental Administrative Record outline, as well as all of the other missing documents and communications identified in Plaintiffs' January 16, 2026 and April 8, 2026 letters, and a privilege log for any withheld materials—along with a certification that the AR is complete by May 11, 2026 so that we may evaluate and discuss a schedule for next litigation steps in advance of our May 15, 2026 deadline for a joint status report.

---

[1]    *See* USDA Contract Summary, available at https://www.usaspending.gov/award/CONT_AWD_12314426F0120_1205_12314426A0009_1205 (last visited May 7, 2026).

[2]    Secretary Brooke Rollins, April 28, 2026 post on X.com, https://x.com/SecRollins/status/2049131612835586505?s=20 (emphasis in original). This statistic appears to be based on a report from the Foundation for Government Accountability (FGA), which itself relies purportedly on "de-identified data from an anonymous state provided by a leading program integrity consultant." *See* FGA, *From Luxury Vehicles to Fake Emails: Why Food Stamp Program Integrity is More Important Now Than Ever* (Apr. 2, 2026), available at https://thefga.org/wp-content/uploads/2026/03/from-luxury-vehicles-to-fake-emails-food-stamp-program-integrity.pdf, at 5 & n. 19. However, in a section of the Fox News interview that was edited out of the clip shared by Secretary Rollins on x.com, Secretary Rollins appears to acknowledge that USDA has been "sharing" data from the SNAP Information Database. *See* A New Wave Right, "Over 14,000 Individuals on SNAP Benefits Have Been Exposed in Just ONE State," at 0:06-0:08, https://www.youtube.com/watch?v=vpmYdh7ziUo (April 29, 2026).

2

Sincerely,

Letitia James
Attorney General of New York

*/s/ Mark Ladov*
Mark Ladov
Special Counsel
Julie Dona
Special Counsel
28 Liberty St.
New York, NY 10005
(212) 416-8240
mark.ladov@ag.ny.gov
*Attorneys for Plaintiff State of New York*

Rob Bonta
Attorney General of California

*/s/ Liam E. O'Connor*
Liam E. O'Connor

Paul Stein
Robin Goldfaden
Supervising Deputy Attorneys General
Julia Heming Segal
Sebastian Brady
William Bellamy
Maria F. Buxton
Liam E. O'Connor
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3915
Liam.OConnor@doj.ca.gov
*Attorneys for Plaintiff State of California*

Kwame Raoul
Attorney General of Illinois

*/s/ Sherief Gaber*
Harpreet K. Khera
Bureau Chief, Special Litigation
Sherief Gaber
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
sherief.gaber@ilag.gov
*Attorneys for Plaintiff State of Illinois*

3

Kristin Mayes
Attorney General of Arizona

/s/ Luci D. Davis
Luci D. Davis (AZ No. 035347)
Hayleigh S. Crawford (AZ No. 032326)
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Luci.Davis@azag.gov
Hayleigh.Crawford@azag.gov
ACL@azag.gov
Attorneys for Plaintiff State of Arizona


William Tong
Attorney General of Connecticut

/s/ Janelle R. Medeiros
Janelle R. Medeiros
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Janelle.Medeiros@ct.gov
Attorneys for Plaintiff State of Connecticut


Brian L. Schwalb
Attorney General for the District of Columbia

/s/ Nicole S. Hill
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
Attorneys for Plaintiff District of Columbia

Philip J. Weiser
Attorney General of Colorado

/s/ David Moskowitz
David Moskowitz
Deputy Solicitor General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
david.moskowitz@coag.gov
Attorneys for Plaintiff State of Colorado


Kathleen Jennings
Attorney General of Delaware

/s/ Vanessa L. Kassab
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
Attorneys for Plaintiff State of Delaware


Anne E. Lopez
Attorney General of Hawaiʻi

/s/ Kalikoʻonālani D. Fernandes
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
Attorneys for Plaintiff State of Hawaiʻi

4

Office of The Governor *ex rel*. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. Travis Mayo
General Counsel
Chief Deputy General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors' Office*

Aaron M. Frey
Attorney General of Maine

*/s/ Brendan Kreckel*
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

Anthony G. Brown
Attorney General of Maryland

*/s/ James C. Luh*
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

Andrea Joy Campbell
Attorney General of Massachusetts

*/s/ Katherine Dirks*
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

Dana Nessel
Attorney General of Michigan

*/s/ Neil Giovanatti*
Neil Giovanatti
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
*Attorneys for Plaintiff State of Michigan*

Keith Ellison
Attorney General of Minnesota

*/s/ Joseph R. Richie*
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

5

Jennifer Davenport
Attorney General of New Jersey

/s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

Raúl Torrez
Attorney General of the State of New Mexico

/s/ *Steven Prefrement*
Steven Perfrement
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

Dan Rayfield
Attorney General of Oregon

/s/ *Scott P. Kennedy*
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

Josh Shapiro, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

/s/ *Jacob B. Boyer*
Jennifer Selber
General Counsel
Jacob B. Boyer
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

Peter F. Neronha
Attorney General of Rhode Island

/s/ *Madeline R. Becker*
Madeline R. Becker (RI Bar No. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

Nicholas W. Brown
Attorney General of Washington

/s/ *Jennifer K. Chung*
Jennifer K. Chung, WSBA #51583
William Mcginty, WSBA #41868
Julie Moroney, DC WSBA #59017
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
julie.moroney@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

6

Joshua L. Kaul
Attorney General of Wisconsin

*/s/ Karla Z. Keckhaver*
Karla Z. Keckhaver
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

Aaron D. Ford
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov
Attorneys for Plaintiff State of Nevada

7

# Exhibit F



# Food and Nutrition Service

U.S. DEPARTMENT OF AGRICULTURE

May 15, 2026

Sara Gagne-Holmes
Commissioner
Department of Health and Human Services
109 Capitol St, 11 State House Station
Augusta, Maine 04333

Dear Commissioner Gagne-Holmes,

Pursuant to 7 U.S.C. § 2020(a)(3), the United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), directs that your State provide to FNS the Supplemental Nutrition Assistance Program (SNAP) Eligibility Data Elements for the period of January 1, 2020, to present, listed in Attachment A to this letter. The data will be used to ensure compliance with the requirements of the Food and Nutrition Act of 2008, as amended[1] (FNA), and it will be used only in ways permissible under the FNA.

The Federal Government provides your State with 100 percent of the funds for SNAP benefits and reimburses 50 percent of the State expenses associated with administering SNAP. This past fiscal year, USDA provided Maine with $194,994,254 for benefits and $9,086,524 in reimbursements for State administrative expenses. This data initiative protects these vast sums of taxpayer dollars from errors, fraud, waste and abuse. Because your State already possesses and is familiar with this data, USDA directs that your State produce the data to FNS within 21 days of the date of this letter. Based on FNS' experience with all complying States, Maine can realistically produce this data within one to three weeks.

FNS made two different requests for this data, on May 6, 2025 (First Data Request), and then on November 24, 2025 (Second Data Request).  This request (Third Data Request) supersedes FNS' First and Second Data Requests, which are hereby withdrawn.

USDA is conducting an inspection and audit of SNAP to ensure that it is being conducted in full compliance with the law and to identify program errors, fraud, waste and abuse. This data request is necessary for FNS to carry out its statutory obligations, and FNS' subsequent use and disclosure of this information will be strictly limited to that permitted by law. FNS has, in addition, considered the following bases for this request:

1. **Federal statute mandates that States produce the data FNS requests to inspect, audit, administer, and enforce SNAP.** Congress mandated that States provide the data they collect to USDA pursuant to 7 U.S.C. § 2020(a)(3). In *California, et al v. USDA, et al*, 3:25-cv-06310 (N.D. Calif., July 28, 2025), the Court acknowledged that the plain language of the FNA at 7 U.S.C. § 2020(a)(3) entitles USDA to obtain all the requested records:

---

[1] *See* 7 U.S.C. §§ 2011-2036.

Congress, in the 'Records' section of § 2020, did use clear, ***mandatory*** language, specifically 'shall … be made available for inspection and audit,' thereby ***giving USDA the right to obtain***, subject to data and security protocols, all records necessary to determine whether the program is being conducted in accordance with the SNAP Act. <u>See</u> 7 U.S.C. § 2020(a)(3)(B).[2]

2. **Evidence of fraud and other intentional noncompliance by State SNAP Agencies support this data request.** Evidence of intentional noncompliance by certain States warrants an audit of State practice through requesting these records. Representative examples of such issues with the State administration and enforcement of SNAP within Plaintiff States include, but are not limited to:

- In June 2021, via a Quality Control Integrity Management Evaluation Report, FNS formally notified **New York** that it "has not provided Federal access to all State SNAP information systems as required per regulation."[3] FNS notified New York that this violated Section 4013(a) of the Agriculture Improvement Act of 2018 and 7 CFR § 275.2(d) and ran afoul of QC Policy Memorandum 17-01. FNS also provided the required corrective action:

  > The State must provide Federal access to all State QC records for QC review. The State QC Unit has agreed to advocate for approval with State Agency leadership. Per Federal regulations, the State must take steps to provide FNS with their plan to provide access to all State SNAP records; and to provide those records for both State and Federal QC reviews for SNAP eligibility determinations.[4]

  Four years later, in its May 2025 semi-annual update to its corrective actions, New York informed FNS that FNS reviewer access could be provided by "Q3 2028." In other words, New York has never been in compliance with this statutory and regulatory requirement, and it estimates it will take a decade from the passage of the statute for it to comply.

- In **California**, a former Madera County eligibility worker pleaded guilty to aggravated identity theft for stealing identities and fraudulently obtaining SNAP benefits in their names.[5] According to the Department of Justice, "between July 2022 and June 2025, [the employee] improperly used county databases to which

---

[2] *California,* 3:25-cv-06310, ECF No. 106 at 15 (emphasis added). Specifically, 7 U.S.C. § 2020(a)(3)(B) requires that "***such records as may be necessary*** to determine whether the program is being conducted in compliance with this [SNAP Act] (including regulations issued under this [SNAP Act])]" "**shall be made available**" to USDA (emphasis added).

[3] *New York Supplemental Nutrition Assistance Program, Quality Control Integrity Management Evaluation Report*, USDA FNS (June 2021) at 14.

[4] *Id.*

[5] *See Former Madera County Welfare Benefits Employee Pleads Guilty to Stealing Identities and Benefits in Years-Long Scheme*, United States Attorney's Office Eastern District of California (Jan. 20, 2026), https://www.justice.gov/usao-edca/pr/former-madera-county-welfare-benefits-employee-pleads-guilty-stealing-identities-and.

she had access through her job to obtain identifying information for individuals who either were not United States citizens, were elderly, or were deceased. She then secretly approved these individuals to receive or continue receiving CalFresh benefits, printed EBT cards in their names with the benefits deposited thereon and spent the money on herself and her family members."[6]

- In January 2026, local news outlets in **Maryland** began covering whistleblower allegations that two senior officials within Maryland's Department of Human Services plotted to leave "correctable [payment] errors as uncorrected" to intentionally maintain a high payment error rate.[7] At the time of these reports, Maryland was in its third consecutive year of exceedingly high payment error rates. Maryland's most recent payment error rate was 13.64% for Federal Fiscal Year (FFY) 2024,[8] for which it was assessed a liability amount of $11,370,128.00. In FFY 2023, its rate was 18.98%,[9] for which it was assessed a liability amount of $16,587,692.00.

- In a recorded training for its SNAP eligibility workers, **Minnesota**'s SNAP Program Manager admitted that "fraud has never been a big focus for me" while also acknowledging that fraud "[e]xists in government from top to bottom."[10] The training instructed State officials responsible for SNAP eligibility determinations and fraud referrals to consider "why" someone has violated SNAP.[11] Minnesota urged its SNAP eligibility workers to dig for ways to avoid adverse outcomes, disparaging as "punishment" income limits on eligibility for receiving public assistance.[12]

3. **A nationwide record of errors, fraud, and other failures by States, including yours, to administer and enforce SNAP supports this request**. FNS through its oversight of SNAP, has observed widespread errors across the States' administration of SNAP, which warrants inspecting SNAP data. Representative examples of such issues with the State administration and enforcement of SNAP within Plaintiff States include, but are not limited to:

---

[6] *Id.*

[7] *See* Brooke Conrad, *'Wrong and Corrupt': Whistleblowers allege Md. Scheme to avoid federal SNAP penalties*, WBFF (Jan. 9, 2026, 10:01 PM), https://foxbaltimore.com/spotlight-on-maryland/wrong-and-corrupt-whistleblowers-allege-md-scheme-to-avoid-federal-snap-penalties; Brooke Conrad, Maryland SNAP scheme allegations prompt investigations, WBFF (Jan. 16, 2026, 10:00 PM), https://foxbaltimore.com/spotlight-on-maryland/maryland-snap-scheme-allegations-prompt-investigations.

[8] *SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM: PAYMENT ERROR RATES FISCAL YEAR 2024*, Food and Nutrition Service (June 30, 2025), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-fy24QC-PER.pdf.

[9] *SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM: PAYMENT ERROR RATES FISCAL YEAR 2023*, Food and Nutrition Service (June 28, 2024), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-fy23-qc-payment-error-rate.pdf.

[10] Fraud Prevention and Investigations: The Impact on Children Living In Poverty, Minn. Dep't Hum. Servs. at 47:46-47:57

[11] *Id.* at 51:55-51:57.

[12] *Id.* at 57:00-57:10.

3

- In December 2025, a Minnesota news agency reported that **Minnesota** "repeatedly reported incorrect information about [SNAP] to the federal government."[13] According to the report, MDCYF, which took over SNAP administration in 2024, then continued to rely on the flawed data to respond to questions about SNAP.[14] According to the MDCYF Commissioner, the agency "just learned about that fairly recently, when folks started reaching out to us."[15] In an interview with the news agency, Minnesota's SNAP Commissioner answered questions about the prevalence of fraud in SNAP in Minnesota.[16] She responded that less than 1% of SNAP recipients are found to have committed fraud, with only 143 intentional program violations committed.[17] However, "[t]he department later confirmed that the SNAP issuance data and fraud numbers in the last three USDA State Activity Reports were incorrect."[18]

- For FFYs 2022, 2023, and 2024, Plaintiff States **Arizona**, **California**, **Colorado**, **Connecticut**, **Delaware**, **DC**, **Hawaii**, **Illinois**, **Maine**, **Maryland**, **Massachusetts**, **Michigan**, **Minnesota**, **New Jersey**, **New Mexico**, **New York**, **Ohio**, **Oregon**, **Pennsylvania**, **Rhode Island**, and **Washington** exceeded the 6% tolerance threshold for SNAP payment errors and were required by the FNA to enter into Corrective Action Plans for their Payment Error Rates.[19] **Kentucky** and **Nevada** exceeded the tolerance threshold for two of those three years.[20] Some States had payment error rates so egregious that liability amounts[21] were established—in **Pennsylvania's** case for FFY 2023, in the amount of over $39.5 million.[22]

- In May 2024, FNS notified **Rhode Island** that the overpayments that occurred within the State from September 2016 through December 2019, due to problems with its State eligibility system were the result of a major systemic failure. As such, FNS filed a claim against Rhode Island for overpayments in the amount of $37,343,809.68 and prohibited it from establishing claims against households.

---

[13] Kristen Swanson, *Minnesota Repeatedly Reported Inaccurate data on SNAP to the Federal Government*, KTSP.COM (Dec. 15, 2025), https://kstp.com/kstp-news/top-news/minnesota-repeatedly-reported-inaccurate-data-on-snap-to-the-federal-government/.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *See*, 7 U.S.C. § 2025(c)(1)(C); *Payment Error Rates by Fiscal Year*, USDA FNS, https://www.fns.usda.gov/snap/qc/per.

[20] *Id.*

[21] Liability amounts are required by the FNA when, for the second consecutive year, a State's payment error rate exceeds the national performance measure by 105 percent with a 95 percent statistical certainty. 7 U.S.C. § 2025(c)(1)(C).

[22] *Pa. Dep't of Hum. Serv.*, FNA Docket No. 24-J-0076 (June 2, 2025), https://usda-nad-local1.entellitrak.com/etk-usda-nad-prod-temp/page.request.do?page=page.highlightedFile&id=174132&query_text=FNA&query_text2=&citation=.

4

- Further, FNS' review of the data it has gathered in the SNAP Information Database so far from States that are complying with FNS' data request, indicates that States with a county-administered program, such as **California**, **Colorado**, **Minnesota**, **New Jersey**, **New York**, **Ohio**, and **Wisconsin**, are more likely to have higher rates of fraud, waste, and abuse than States that do not delegate administration of SNAP to the county level.[23]

4. **A review of the data from the 29 complying States showed at least $3 billion a year of potential fraud, waste, and abuse in those States alone.**[24] By volume, the largest issues identified by USDA were cases with dummy or missing SSNs and intrastate duplication. Records with those issues numbered in the hundreds of thousands. "Dummy SSNs and intrastate duplication together account for more than $1.5 billion in estimated annual risk. Overall, the findings indicate that even small error rates can translate into substantial fiscal impact when applied across large caseloads, underscoring the importance of strengthened data-matching and eligibility verification controls."[25]

The chart[26] below displays the various issues identified by USDA in the available data, the counts of those various issues, the median percentages, and the implicated amount of dollars, annually.

---

[23] *California*, 3:25-cv-06310, ECF No. 89-1 ¶ 8.
[24] USDA SNAP Program Integrity Data Team: Preliminary Report, USDA (May 13, 2026), at 2, https://fns-prod.azureedge.us/sites/default/files/resource-files/usda-snap-programIntegrityDataTeamPreliminary-051326.pdf.
[25] *Id.* at 7.
[26] *Id.*

5

*Table 2: SNAP Eligibility Data Discrepancies for 29 State Agencies – Data as of July 1, 2025*

| Issue | Total Count 29 State Agencies | Median State Count[1] | Median State Percent[2] | Annual Implied Dollars[3] |
|---|---|---|---|---|
| Intrastate Duplication | 247,575 | 467 | 0.10% | 558,529,200 |
| Interstate Duplication | 108,670 | 2,057 | 0.50% | 245,159,520 |
| Deceased (per SSA record) | 185,986 | 2,005 | 0.60% | 419,584,416 |
| Dummy SSN | 441,572 | 2,462 | 1.20% | 996,186,432 |
| No SSN Found | 26,333 | 254 | 0.10% | 59,407,248 |
| Disqualified but Active | 4,442 | 56 | 0.03% | 10,021,152 |

[1] Median count of each item for 29 State agencies supplying data.
[2] Median percent of records per state for each item in 29 State agencies supplying data.
[3] Calculated as $2256 per recipient annually ($188 per month).

**Intrastate Duplication**: Recipients with same identifiers (SSN) that show up multiple times within a State.

**Interstate Duplication**: Recipients with same identifiers (SSN) that show up in multiple States.

**Deceased (per SSA Record)**: Based on SSA lookup, the recipient is deceased.

**Dummy SSN**: Recipient has a non-normal SSN (i.e. 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 or 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).

**No SSN Found**: Recipient does not have an SSN in data provided.

**Disqualified but Active**: Recipient has been identified as a disqualified participant but is still active on State agency rolls.

> The $3 billion estimate will likely, at a minimum, double when factoring in data from the 22 noncomplying States, as those noncompliant States historically have higher participation numbers and rates,[27] as well as higher percentages of the population receiving SNAP benefits.[28] For example, "[i]n both 2020 and 2022, the **District of Columbia**, **Illinois**, **Massachusetts**, **New Mexico**, **Oregon**, **Pennsylvania**, and **Wisconsin** had significantly higher participation rates *than two-thirds of the States*[ ] [and] **Connecticut**, **Rhode Island**, Vermont, and **Washington** had significantly higher rates *than half of the States*."[29] And, in FFY 2024, "the share of residents receiving SNAP benefits in each State ranged from as high as 21.2 percent in **New Mexico** to as low as 4.8 percent in Utah."[30]

Your State continues to withhold the data that would permit a comprehensive examination of your State's administration of SNAP and stewardship of Federal dollars. USDA recognizes that Maine contends a data and security protocol under 7 U.S.C. § 2020(a)(3) is required for this initiative. We are therefore offering the attached protocols which were constructed over the

---

[27] *See* Karen Cunnyngham, *Estimates of State Supplemental Nutrition Assistance Program Participation Rates in 2022*, USDA (Feb. 2023).
[28] *See* Jordan W. Jones, *SNAP participation varied across States in fiscal year 2024*, USDA ERS (Aug. 14, 2025).
[29] *Supra* note 25 at 3. (emphasis added)
[30] *Supra* note 26. (emphasis added)

6

course of negotiation with Plaintiff States in *California v. USDA*, and therefore, address all of Plaintiff States' previously elaborated concerns.

**FNS' New Request Is Accompanied By A New Protocol Offer That Aligns Exactly With The Statutory Text of 7 U.S.C. § 2020(a)(3) and 7 U.S.C. § 2020(e)(8)(A)**

Section 2020(a)(3)(b)(i) does not require FNS and the States to enter a data and security protocol prior to the transfer of data requested by FNS. Such an agreement will govern the terms of transfer and storage when agreed to by the States.

Accordingly, FNS offers the States a protocol that aligns exactly with the text of USDA's statutory authority to inspect and audit States' SNAP data and to use and disclose household applicant data for purposes of administering and enforcing the FNA. Attachment B to this letter provides a set of data and security protocols that FNS will observe. This set of protocols, which include FedRAMP High data security, provides a higher level of security than your State has historically accepted in releasing similar data to FNS—including Social Security Numbers and addresses.

FNS will inspect and audit the data provided pursuant to this request, and maintain it under the applicable System Of Records, solely for the purposes of "determin[ing] whether the program is being conducted in compliance with [the Food and Nutrition Act of 2008 (FNA)] (including regulations issued under [the FNA]."[31,32]

We note that the Court in *California* has explicitly recognized that "a State is not entitled to unreasonably decline to agree to a protocol."[33] As these proposed protocols were constructed with the States' concerns in mind, we look forward to your prompt adoption of these protocols.

**Your State Has A Long History Of Producing Quality Control Samples With The Same Information As FNS Is Requesting Without Requiring A Data And Security Protocol**

The following chart identifies the required data elements already submitted by State agencies to USDA FNS for Quality Control (QC) purposes.[34] Of those fields, the ones shaded in green and identified with a * symbol are those USDA is requesting pursuant to this data request. The only distinction between this request and the State QC submission of these particular data elements is that only a sample of cases are submitted for QC purposes. This data request, however, is for the entire caseload of the State, which is required to complete a full inspection and audit of SNAP.

| Case Number* | Case Address* | Phone Number* |
|---|---|---|
| SNAP Household Names* | SNAP Household DOBs* | SNAP Household SSN* |
| SNAP Household Relationships* | Citizen/Non-Citizen Status * | Homeless Status* |

---

[31] *See* 7 U.S.C. § 2020(a)(3)

[32] USDA will amend this SORN in 2026 along the lines the *California* court indicated, *e.g.*, to secure data from disclosure to a foreign government and narrow the permissible disclosure under Routine Uses 8 and 11.

[33] *California*, 3:25-cv-06310, ECF No. 134 at 12.

[34] The QC submissions are made without a data and security protocol.

7

| All Household Earned Income* | All Household Unearned Income* | All Household Self-Employment Income* |
|---|---|---|
| Authorized Representative* | Indicator if SNAP Household Member is active* | Reporting Status* |
| Recipient Disqualification* | Certification Period* | Assets/Resources* |
| Categorial Eligibility | Directions to Home | Shelter Expenses* |
| Date of Interview | Household Composition | Expedited Service |
| Most Recent Action | Student Status | Amount of Allotment |
| Allotment Adjustments | Demonstration Projects | Residency |
| Earned Income Deductions | Dependent Care | Shelter Deductions |
| Other Government Benefits | Contributions | Deemed Income |
| Standard Utility Allowance | Child Support Deductions | Medical Deduction |
| Income from loans, scholarships, grants | Arithmetic Computation | SNAP Simplification Project |
| Significant Persons NOT living in home phone number | Significant Persons NOT living in the home relationship | Significant Persons NOT living in the home SSNs |
| Significant Persons Not living in the DOBs | Significant Persons NOT living in the home address | Significant Persons NOT living in the home financial support |
| All data related to work requirements – E&T programs, time limited participation, work registration, etc. | States must verify all elements with supporting documentation and upload those to SNAP-QCS | |

Given there is no substantive difference between the data FNS is currently requesting and data your State already provides to FNS, we anticipate your State will now join the others in complying with Congress' mandate that USDA obtain records to ensure that its federally-funded programs are operated in accordance with law. As stated previously, the draft protocols are attached as Attachment B, and the requested data elements are attached as Attachment A.

USDA drafted Attachment B (and left Attachment A unchanged) after considering each of the issues raised previously by Plaintiff States with respect to earlier, different protocols offered by USDA. For example:

| PLAINTIFF STATE CONCERN | USDA RESPONSE |
|---|---|
| The necessity of all requested data elements and why deidentified versions are not sufficient to inspect and audit State compliance with the FNA. | USDA has determined that each data element requested is necessary to complete its audit. Further, Deidentification is not possible. The hashing of data (and other forms of de-identification) would be akin to providing USDA hundreds of thousands of combination locks without any of the combinations. |
| The burden of compliance on the State. | States already possess the data, and experience with complying States has shown compliance can be accomplished within weeks. Additionally, as noted by the nonsubstantive change request submitted to OMB, the extra burden hours are minimal. |

8

| Concerns that the data will be used for immigration enforcement. | In Section 1.4, the protocols contain a statement aligned with the text of 7 U.S.C. § 2020(e)(8)(A). Further, it explicitly states that "Section 2020(e)(8)(A) does not provide USDA with authority to respond to a request from DHS for data for purpose(s) of civil immigration enforcement." |
|---|---|
| The need for data security and protections both in storage and transfer. | USDA is offering the strictest level of security available—FedRAMP High. This is a higher security level than for other FNS databases, such as SNAP-QCS. Further, the data is encrypted both in transit and at rest, with encryption keys managed solely by USDA federal personnel.[35] |
| Sufficiency of data breach notification procedures | USDA has proposed procedures consistent with those generally accepted throughout the Federal Government. |
| Why the NAC, QC, and Electronic Disqualified Recipient System are different and insufficient | These systems are not a substitute for USDA's 7 U.S.C. § 2020(a)(3)(B) inspection and audit authority. Further, they examine isolated issues, and USDA seeks a comprehensive review of States' administration and enforcement. |
| Computer Matching Act | USDA is not required to enter into CMA agreements with States for the SNAP Information Database, as there is no matching between USDA and the States. |
| Concerns over USDA's methodology for data analysis | USDA will evaluate all data received for compliance with the FNA. |
| Reliance on former policy | There has been no former policy that differs from 7 U.S.C. § 2020(a)(3)(B) or otherwise would induce reliance by States on an incorrect reading of statute. |

We respectfully request that your State respond in writing within seven days of the date of this letter with confirmation of your agreement to produce the requested data subject to the attached data and security protocols or the bases for your refusal. Based on our experience with compliant States, your State should be able to fully produce the requested records within 21 days after the date of this letter.

In addition, please take all steps necessary to preserve the records covered by this request, whether possessed by your State or your vendors. We expect to review historical data in its native, unaltered form, from January 1, 2020, to the present. It is imperative the Federal Government obtains unaltered data reflecting the actual performance of States in administering this federally-funded program for all time periods covered by this request.

---

[35] *See supra* note 22 at 4; *USDA Privacy Impact Assessment: Fiscal Year 2025*, PD, CPOC, USDA at 27.

9

Thank you for your continued work to help address the needs of vulnerable Americans and safeguard taxpayer dollars. Your State's timely compliance is essential to safeguarding SNAP funds from fraud, waste, and abuse.

Sincerely,

Patrick A. Penn
Acting Administrator, Food and Nutrition Service
Deputy Under Secretary, Food, Nutrition, and Consumer Services
U.S. Department of Agriculture

10

![USDA] **U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program
Information SNAP Database**

**SNAP Eligibility Data Elements**
The following elements should be included in the data sharing file from each State agency on all household members that are listed in the SNAP case. Please provide a data dictionary if one is available to reduce the burden to both the State agency and USDA.

**Case Number:** The case number is a unique identifier, typically 7 to 10 digits long, assigned to a household when they apply and/or are approved for SNAP.

**First, Middle, Last Names:** The full name of all household members.

**Known Alias:** Assumed or alternative name(s) used by any of the household members.

**Authorized Representative(s):** Provide any identified authorized representative for the household, and their corresponding information such as full name, means of verbal and written communication.

**Date of Birth:** The specific month, day and year the household member was born.

**Individual Recipient Identification Number:** The unique identifier assigned to that specific household member within the case by the State agency.

**Social Security Number:** The unique 9-digit identifier issued by the Social Security Administration and provided by the household member.

**Status on SNAP** *(recipient/individual level)***:** Identify if the household member in the case is actively receiving SNAP, disqualified, sanctioned, or excluded.

**Application and/or Recertification Date:** The date the household applied for SNAP (this can be the first application date, or most recent recertification date).

**Reporting Status:** Following initial certification, or recertification, households are determined to be a simplified or change reporting household. This data element should indicate the reporting status the household has been designated to be.

**Relationship:** The relationship identifies who all household group members are to one another and assists with determining mandatory group members. The data should reflect who each household member is to one another.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

***Absent Parent*** (as applicable)**:** This identifies the parent of a minor child who resides in a separate household.

***Citizenship and/or Immigration Status:*** This identifies if the individual is a U.S. citizen or immigrant.

***Residential Address:*** The address the household has provided as to where they reside.

***Mailing Address:*** The address the household has provided as to where they would like all correspondence sent to (if different than residential).

***Homeless Status:*** Please include if the household is identified as homeless.

***Phone Number(s):*** The contact number(s) provided by the household as a means of contact.

***Email Address(es):*** The email address(es) provided by the household as a means of contact.

***Unearned Income:*** The unearned income (RSDI, unemployment, child support, etc.) identifies the unearned income source, pay frequency, the household member receiving the pay, and the total amount of income budgeted to determine the SNAP allotment.

***Earned Income:*** The earned income identifies the earned income source, pay frequency, the household member receiving the pay, and the total amount of income budgeted to determine the SNAP allotment.

***Self-Employment Income:*** Self-employment should be identified as to what the self-employment is (type or business name), pay frequency, the household member who is self-employed, and the total amount of income budgeted as well as the amount of allowed expenses.

***Shelter Expenses:*** The shelter expenses should be identified as to shelter type (i.e. rent), and the budgeted dollar amount. Shelter expenses may be separated out as various expenses are taken into consideration for eligibility and those should be included if used in the SNAP allotment determination (i.e. telephone, heating, cooling). If the household is active with Section 8 which pays a portion of the rental expenses, please ensure that is included.

***Assets/Resources:*** Any known assets (i.e. bank accounts, boat, collector vehicle) or resources used to determine SNAP eligibility and must identify the asset type, amount and what household member the asset belongs to.

***Sanctions/Disqualifications:*** Identify any household members who are serving a sanction and/or disqualification that is impacting their eligibility to participate in SNAP. The sanction and/or disqualification type and any applicable time periods should be identified (i.e. IPV,

10/1/2024-9/30/2025). This field should correspond to the data provided in the status on SNAP if the household member is currently serving a disqualification, as well as any income field(s) that may pertain to the disqualified member due to income proration.

***SNAP EBT Card Number*:** The unique set of digits on the household's issued SNAP EBT card that connects the case to the associated transactions.



## U.S. DEPARTMENT OF AGRICULTURE

**Supplemental Nutrition Assistance Program (SNAP) Information Database
Fraud, Waste and Abuse Detection Protocol**

### 1. OVERVIEW

1.1. U.S. Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) will use the Supplemental Nutrition Assistance Program (SNAP) recipient data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying duplicate enrollments for elimination, and performing additional eligibility and program integrity checks specified herein.

1.2. This protocol establishes a framework for State SNAP agencies to share data with the USDA/FNS for detection of fraud, waste, and abuse and program integrity purposes.

1.3. USDA represents that the protocol balances federal data access requirements under Executive Order 14243 and the Food and Nutrition Act of 2008 (FNA, also referred to here as the "SNAP Act") with privacy protections, minimizes unnecessary data collection, and incorporates security standards while maintaining public trust and compliance with applicable law.

1.4. Notwithstanding any other provision of this protocol, or any System of Record Notice, USDA and FNS:

(a) shall not use or disclose data received under this protocol except as specified in 7 U.S.C. §§ 2020(a)(3) and (e)(8) and 7 C.F.R. § 272.1(c)(1) and (2).  For the avoidance of doubt, this means that USDA and FNS (and any person or entity to whom the data is disclosed) shall not:

(i)    use the data, except for administration or enforcement of the provisions of Chapter 51 of Title 7 of the U.S. Code, regulations issued pursuant to that chapter, Federal assistance programs, or federally-assisted State programs; and

(ii)   disclose the data, except to persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs.

Section 2020(e)(8)(A) does not provide USDA with authority to respond to a request from DHS for data for purpose(s) of civil immigration enforcement.

1.5   USDA acknowledges that the data shared under this Protocol is subject to existing confidentiality, privacy, and information security laws and regulations. Notwithstanding the foregoing, this provision does not create any new rights or liabilities or waive any applicable immunities.

### 2. FRAMEWORK AND AUTHORITY

2.1. <u>Authority</u>

2.1.1. Executive Order 14243 (March 20, 2025): "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" directs agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure federal government has "unfettered access to comprehensive data" from state programs receiving federal funding, including data maintained in third-party databases.

2.1.2. 7 U.S.C. § 2020(a)(3) requires that each State agency shall keep records as may be necessary to determine whether the program is being conducted in compliance with this chapter, and all records shall be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

2.1.3. 7 CFR 272 stipulates use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to persons directly connected with the administration or enforcement of the provisions of the FNA or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or general assistance programs which are subject to joint processing requirements.

2.2. Prohibited Purposes

2.2.1. USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (*i.e.*, the collection of data elements spelled out in the Privacy Impact Assessment).

## 3. DATA CATEGORIES

3.1. Data Definition

3.1.1. All data obtained by States or their vendors in administering SNAP or that otherwise may be necessary to determine whether the program is being conducted in accordance with the FNA or regulations issued under the FNA, in accordance with Attachment A of this protocol.

3.1.2. Data derived from third-party sources (employment verification databases, financial institution records, property records) that States use for verification but are not part of applicant-reported information are excluded.

## 4. LIMITED ACCESS

4.1. The SNAP Information Database and all data collected therein is accessed and used ONLY by employees of the USDA who are:

4.1.1. Designated by the Chief of Staff at Food, Nutrition, Consumer Services (FNCS)

4.1.2. Trained in SNAP Act, Privacy Act, and this protocol

4.1.3. In compliance with all information security annual recertifications

4.2. Except to the extent permitted by law, no access to, or disclosures of data from, the SNAP Information Database may be provided to:

4.2.1. Other USDA agencies (APHIS, ERS, NASS, etc.)

4.2.2. Divisions within FNS without an explicit need-to-know

4.2.3. Any other federal agency

4.2.4. Any FOIA, administrative subpoena or like external requester

4.3. Notwithstanding section 4.1, this protocol does not limit access to the SNAP Information Database and all data contained therein by USDA's Office of the Inspector General as authorized by the Inspector General's Act, 5 USC 401-424.

## 5. SYSTEM OF RECORDS NOTICE (SORN) AND PRIVACY IMPACT ASSESSMENT (PIA)

5.1. SORN

The applicable SORN for this protocol is USDA/FNS-15 "National Supplemental Nutrition Assistance Program (SNAP) Information Database," 90 FR 26521.

The SORN location can be found here:
https://www.federalregister.gov/documents/2025/06/23/202511463/privacy-act-of-1974-system-of-records

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender



**U.S. DEPARTMENT OF AGRICULTURE**

For the avoidance of doubt, this protocol controls notwithstanding any provision of the applicable SORN.

5.2. Privacy Impact Assessment (PIA)

The applicable Privacy Impact Assessment for the SNAP Information Database is Version 1.1 created 02/12/2025, which can be found here:
https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

For the avoidance of doubt, this protocol controls notwithstanding any provision of the PIA.

## 6. FRAUD, WASTE, AND ABUSE DETECTION FRAMEWORK

6.1. Core Fraud Detection Functions

6.1.1. USDA will employ a foundational fraud, waste, and abuse verification similar to the SNAP Quality Control program that focuses on:

- identity verification

- income and eligibility verification

- immigration status

- verification against disqualified recipients

6.2. Enhanced Fraud, Waste, and Abuse Detection Techniques

6.2.1. In addition to the core fraud detection functions, USDA will employ additional techniques including, but not limited to:

- Intrastate and interstate duplicate detection

- Deceased individuals' detection

- Synthetic identity patterns (new SSNs with inconsistent biographical data)

- Geographic anomalies

6.2.2. New data mining techniques will be limited to identifying data anomalies with a direct nexus to SNAP.

## 7. DATA OUTPUT

7.1. States

7.1.1. USDA will provide flagged data back to the State agency for review, including the specific data elements flagged. States are encouraged to provide feedback to USDA to refine detection logic and reduce false positives. Collaborative processes will be established to ensure accurate identification of fraud and appropriate corrective actions. No presumptive results will be made public by FNS until 30 days from the initial date that USDA provided flagged data; during that 30 days States can provide additional information related to the accuracy of the detection flags.

7.2. Law Enforcement

7.2.1. The USDA may refer fraud detection leads to USDA OIG and other law enforcement agencies where a criminal nexus has been drawn specifically to SNAP.

7.3. USDA SNAP Retailer Operations Center (ROC)

7.3.1. The USDA may refer fraud detection leads to the ROC where, during fraud detection analysis, a compromised EBT card or terminal ID may have been identified in accordance with 7 U.S.C § 2020(e)(8)(A) and USDA's regulation implementing that provision, 7 C.F.R. § 272.1(c)(1).

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

**8. DATA MINIMIZATION AND RETENTION**

8.1. Retention Period

8.1.1. Until a record schedule is approved, data will be retained only as long as necessary for purposes set forth in the SORN and this protocol, and in no case longer than 3 years per the SORN.

8.2. Automatic Deletion

8.2.1. Data shall be retained for no longer than three years, consistent with the USDA/FNS-15 SORN. An automated process will be implemented to delete data upon expiration of the retention period, except for records related to ongoing audits, investigations, or litigation.

8.3. Ongoing Cases

8.3.1. Data pertaining to ongoing audit, investigation, or potential litigation retained only as long as necessary, then deleted.

**9. DATA SECURITY AND TECHNICAL REQUIREMENTS**

9.1. Infrastructure and Location

9.1.1. Primary storage location: AWS GovCloud (US) region

9.1.2. Backup/disaster recovery: Secondary AWS region

9.1.3. No storage, processing, or backup outside GovCloud or federal secure environments

9.1.4. All infrastructure must meet or exceed FedRAMP High baseline standards

9.1.5. AWS Personnel Access: Data is encrypted such that AWS personnel cannot access unencrypted data. Encryption keys are managed exclusively by federal USDA personnel and are not accessible to AWS or third-party vendors.

9.2. Access Controls

9.2.1. Multi-factor authentication required for all access

9.2.2. Role-based access control (RBAC) with principle of least privilege

9.2.3. Access is limited to specifically designated USDA employees engaged to assist in determining whether the program is being conducted in accordance with the FNA.

9.2.4. Access logging and audit trail maintenance (minimum period equal to data retention period, see Section V.E).

9.2.5. Quarterly access reviews by USDA

9.2.6. Immediate revocation of access upon employee termination or assignment change

9.3. Encryption Standards

9.3.1. Encrypted data at rest and in transit

9.3.2. Encryption keys managed solely by USDA federal personnel

9.3.3. No encryption keys held by commercial vendors

9.4. Data Segregation and Compartmentalization

9.4.1. SNAP data isolated in separate, dedicated AWS GovCloud environment

9.4.2. SNAP data not directly integrated with other USDA systems

9.4.3. Limiting access to individuals with specialized training and oversight

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender



**U.S. DEPARTMENT OF AGRICULTURE**

9.5. <u>Data Transfer</u>

9.5.1. All data transfers shall utilize secure tools that meet or exceed FedRAMP High baseline standards.

## 10. INCIDENT RESPONSE AND BREACH NOTIFICATION

10.1. <u>Incident Response</u>

10.1.1. Incident response procedures are aligned with FNS Handbook Chapter 10 security incident and breach notification requirements that USDA already follows internally. This protocol extends equivalent procedures to State notification.

10.2. <u>Incident Definition</u>

10.2.2. Unauthorized access, use, or disclosure of data

10.2.3. Security vulnerability or control failure affecting data

10.2.4. Data loss, corruption, or destruction

10.2.5. Encryption failure or key compromise

10.2.6. Failed access control or authentication mechanism

10.2.7. Any event that may reasonably be expected to compromise data security or confidentiality.

10.3. <u>Incident Notification Timeline</u>

10.3.1. Initial Notification within 12 hours

10.3.1.1.    Within 12 hours of discovery (by phone + email to State security/privacy contact and Director).

10.3.2. Preliminary Report within 24 hours

10.3.2.1.    Description of incident and timeline

10.3.2.2.    Data elements affected (specific fields and estimated number of records)

10.3.2.3.    Estimated number of individuals affected

10.3.2.4.     Preliminary assessment of whether unencrypted sensitive data may have been exposed

10.3.2.5.    Preliminary remedial actions taken

10.3.2.6.    Root cause analysis plan and timeline

10.3.3 Progress Reports and Incident Close-out

10.3.3.1    USDA shall provide notice to affected individuals in compliance with all applicable federal breach response and notification requirements. Nothing in this protocol shall be construed to shift responsibility for individual breach notification to the state agency.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender



**U.S. DEPARTMENT OF AGRICULTURE**

**APPENDIX A - SOURCES**

- 7 U.S.C. §§ 2020(a)(3) and (e)(8).

- Privacy Impact Assessment: https://www.usda.gov/sites/default/files/documents/fns-snap-informationdatabase-pia.pdf

- SORN: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-systemof-records

- SNAP Act: https://www.law.cornell.edu/uscode/text/7/2020

- SNAP QC Handbook

- Executive Order 14243 (March 20, 2025) "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos: https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender