IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, ET AL.**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.**<br><br>Defendants. | Case No. **3:25-cv-06310-MMC-KAW**<br><br>**PARTIES' JOINT LETTER CONCERNING UNRESOLVED DISCOVERY DISPUTES** |

Pursuant to the Court's June 2, 2026 Order (ECF No. 174), the Court's June 8, 2026 Order (ECF No. 175), Civil Local Rule 37-1, and the Standing Order for Civil Cases Before Magistrate Judge Kandis A. Westmore, the parties attest that they have met and conferred regarding this dispute, most recently by videoconference on June 11, 2026. The parties further attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery. The parties are at an impasse and seek the Court's assistance to resolve the dispute.

As instructed by the June 8, 2026 Order, the parties provide the attached joint letter explaining this dispute, as well as a stipulation and proposed order seeking additional pages for the joint submission. Pursuant to Judge Westmore's Standing Order for Civil Cases ¶ 14(b), the parties are also providing two additional joint letters regarding each discovery device currently in dispute (Requests for Production and Interrogatories).

For the reasons summarized below and in the other letters, Plaintiffs ask the Court to order Defendants to complete and supplement the administrative record; respond to Plaintiffs' proposed Requests for Production (ECF No. 173-1) and Interrogatories (ECF No. 173-2); log all documents withheld on the basis of privilege; and produce withheld documents to the Court for potential *in camera* review.

For the reasons expressed below, Defendants ask the Court to deny Plaintiffs' motion to complete and supplement the administrative record and set a briefing schedule for summary judgment.

**Plaintiffs' Position:** In early 2025, the United States Department of Agriculture Food and Nutrition Service (USDA) demanded—for the first time ever and with no justification beyond an executive order directing federal agencies to amass States' records—that States provide USDA with highly sensitive personal information on tens of millions of low-income families who have sought SNAP benefits to supplement their grocery budgets over the past six years. When the Plaintiff States sued to enjoin these demands under the Administrative Procedure Act, USDA produced a facially incomplete administrative record ("AR") without any contemporaneous documents to explain why or how USDA decided to create the SNAP Information Database or demand States' SNAP data.

Since initiating this data-pooling project, USDA has been backfilling justifications. First, in May 2025, USDA was implementing the "Information Silos" executive order that directs federal agencies to gain "unfettered access" to State data and to "authoriz[e] and facilitat[e] both the intra- and inter-agency sharing" of such data. Exec. Order No. 14243, 90 Fed.Reg. 13681, § 3 (Mar. 20, 2025); *see* ECF No. 59-7, Ex. B. Agriculture Secretary Rollins has recently claimed that she personally decided to issue the data demands on her first day in office in February 2025 so "[USDA], with DOGE" could investigate a "40 percent" increase in benefits "under the Biden administration"—an increase that Rollins said she "know[s]" is attributable to an attempt by Democrats "to buy the election" through a benefits-for-votes bribery scheme. ECF No. 146 (SAC) ¶ 244. For his part, Vice President Vance has called on Plaintiff States to hand over SNAP data so DHS and ICE can use the household addresses to locate deportation targets of their mass deportation campaign. *Id.* ¶ 139. And USDA most recently published "preliminary findings" of data collected from non-plaintiff states that falsely and misleadingly claims billions of dollars are being lost to fraud, waste, and abuse in those states.[1]

As initially produced (*see* ECF Nos. 115-1, 125-1 (attached as Ex. A)), the record addressed none of those justifications. It contained almost exclusively publicly available documents and correspondence between the parties, with no contemporaneous documentation to explain Defendants' decisions, and no acknowledgement of publicly known and relevant facts (such as DOGE's role in these data demands and the Administration's intent to use SNAP household data for immigration enforcement). Defendants' supplemental production following the Second Amended Complaint (SAC, ECF No. 146) failed to address those omissions and instead larded up the record with nearly 2,000 pages of press clippings and Quality Control documents that are unrelated to the challenged agency decisions. *See* ECF 170 (attached as Ex. B).

Despite Plaintiffs' repeated and detailed objections (*see, e.g.*, ECF No. 173-3, Exs. A, C, E), Defendants continue to stand on a "sham" AR that is filled with generic background materials, "post hoc statements," and "pages of irrelevant documents," and that is "silent" on the "calls, discussions, documents, and decisions that underpin" the government's actions. *Am.*

---

[1] For example, the report claims that "dummy SSNs" are evidence of nearly $1 billion in "estimated annual risk," even though Plaintiffs have already explained in this litigation that SNAP files include many eligible applicants (such as newborn infants) who have not yet received a social security number. *Compare* USDA SNAP Program Integrity Data Team: Preliminary Report (May 13, 2026), https://www.fns.usda.gov/research/snap/program-integrity-data-preliminary, *with* ECF No. 99-2 ¶ 18 (explaining "workflow for eligible applicants who have applied for and not received a SSN (most commonly infants)").

*Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 799 F. Supp. 3d 967, 979-81 (N.D. Cal. 2025). Such a threadbare record prevents the Court from effectively evaluating whether USDA "engage[d] in 'reasoned decisionmaking,'" as required by the APA. *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015) (citation omitted).

Plaintiffs therefore ask the Court to order Defendants to complete and supplement the administrative record and respond to discovery requests, which are targeted to ensure production of the *actual* record of the agency's decisions to create the SNAP Information Database and demand years' of personally identifiable information (PII) from all SNAP household members. Likewise, Plaintiffs' targeted discovery requests seek to address critical gaps in the record surrounding USDA and Agriculture Secretary Brooke Rollins' intent, and their pretextual, shifting justifications for the data demands.

Plaintiffs have provided clear evidence to rebut any presumption that the produced AR "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."[2] For example:

- The record includes no intra-agency or inter-agency documents directly or indirectly considered by decisionmakers and their subordinates that pre-date USDA's first data demand to States on May 6, 2025, even though Secretary Rollins has acknowledged coordinating with DOGE during that period, and USDA had originally attempted to seek these records from Plaintiff States' EBT vendors. *See, e.g.*, SAC ¶¶ 165-77, 243-46.
- The record includes no documents to explain the vast scope of data requested and USDA's decision to bypass existing, congressionally approved auditing systems and procedures with robust privacy protections. Where an agency deviates from its historical approach to an issue, "it is reasonable, and non-speculative, for Plaintiffs to believe that there are documents in the record that shed light on why[.]"[3]
- USDA has produced a "preliminary" analysis of SNAP data from non-plaintiff states purporting to demonstrate rampant potential "fraud, waste and abuse," and is using it to justify its continued demands for Plaintiff States' data. But that report relies on demonstrably false assertions and misleading statistics, as explained above. Therefore, Plaintiffs seek the agency's underlying factual analyses, including materials sufficient to permit the Court to evaluate the accuracy of USDA's analyses, and to consider whether these analyses justify Defendants' continued data demands.[4]
- The record remains entirely silent about the Administration's consideration of using the demanded data for immigration enforcement, despite public statements by Administration officials such as Vice President Vance identifying this goal, SAC ¶ 139; the Agency's decision to remove assurances from its website that "[y]ou can apply for or receive SNAP without immigration consequences," *id.* ¶¶ 159-160; and its continued refusal to state that it will not share SNAP data for immigration enforcement purposes upon request (as DHS and ICE have already done for other benefit records, *see* ECF No. 154).

These and other glaring omissions demonstrate that USDA's submissions do not constitute the "whole administrative record," including "everything that was before the agency pertaining to

---

[2] *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989);
[3] *Doe I*, 2021 WL 3402311, at *3.
[4] *See, e.g.*, *Doe v. Trump*, No. 3:19-CV-1743-SI, 2020 WL 1853657, at *8 (D. Or. Apr. 13, 2020) (factual materials cited by agency as basis for its action must be produced).

the merits of its decision[s]," and Plaintiffs' proposed discovery devices are targeted to fill these and other gaps in the record.[5]

In response, Defendants repeatedly invoke the "presumption of regularity" and argue that "[t]o complete a record, a plaintiff must demonstrate 'a strong showing of bad faith or improper behavior[.]" *Infra,* p. 6. But "[w]here the record omits materials that were before the agency decisionmakers, the presumption of regularity gives way." *Authors Guild v. NEH*, No. 25-cv-3923 (CM), 2025 WL 3678097, *12 (S.D.N.Y. Dec. 18, 2025). And Plaintiffs "need not show bad faith or improper motive to rebut the presumption of completeness." *Doe I v. D.H.S.*, No. 20-CV-07517-BLF, 2021 WL 3402311, at *1 (N.D. Cal. Aug. 4, 2021), *objections overruled,* 2021 WL 5121169 (N.D. Cal. Nov. 2, 2021).

Plaintiffs also ask the Court to order Defendants to supplement the record by responding to targeted discovery requests. Discovery is warranted in APA challenges when "necessary to determine whether the agency has considered all relevant factors and has explained its decision; . . . if the agency has relied on documents not in the record; . . . or [] when plaintiffs make a showing of agency bad faith."[6] The glaring omissions from Defendants' record are not "nuanced points" but rather fundamental questions of how Defendants determined how they would use and share the data demanded. And the evidence of Defendants' pretext and impropriety in making these demands—including the evidence that the PII will be used or disclosed for purposes not permitted by law—meet these standards and necessitate Plaintiffs' proposed discovery requests here.

Plaintiffs' proposed discovery requests are also warranted because, even in APA cases, Plaintiffs are entitled to discovery of evidence concerning "equitable factors relevant to potential relief."[7] Here, Defendants themselves have relied on evidence outside the AR—including the Corley Declaration and the underlying, undisclosed materials—to contest the propriety of injunctive relief. The targeted discovery requested by Plaintiffs is needed to evaluate Defendants' claims that injunctive relief "would limit . . . the President's ability to identify fraud, waste, and abuse," ECF No. 72 at 24, or impede USDA's ability to "adequately carry out its statutory responsibilities to oversee the SNAP program," ECF No. 118 at 30.

The Court should order Defendants to produce a privilege log for any documents withheld based on privilege, and to produce withheld or redacted materials to the Court for potential *in camera* review.[8] The Ninth Circuit recently held that "deliberative materials are generally not part of the AR *absent* impropriety or bad faith by the agency." *Blue Mountains Biodiversity Proj. v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024) (emphasis added). But while a

---

[5] *Doe v. Trump*, 2020 WL 1853657, at *2 (citation omitted).

[6] *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (describing four categories of extra-record evidence that may be considered in APA challenges); *see also Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 1276229, at *2 (N.D. Cal. May 2, 2025) (ordering discovery when needed to produce such extra-record evidence).

[7] *Kuang v. U.S. Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 293379, at *3-4 (N.D. Cal. Jan. 23, 2019); *see also E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1107-08 (N.D. Cal. 2018) (denying motion to strike extra-record evidence submitted in support of motion for preliminary injunction, where evidence was relevant to assessing the balance of hardships between the parties).

[8] Defendants claim that FNS "has not withheld any documents from its record for privilege." But Defendants previously invoked deliberative process privilege (ECF No. 173-3, Ex. B) and again invoke it in their responses to Plaintiffs' proposed discovery requests here.

4

court will ordinarily "assess the lawfulness of agency action based on the reasons offered by the agency," that explanation may be insufficient when there is a "showing of bad faith or improper behavior" by the agency. *Id.* at 445. Here, Plaintiffs can show that USDA sought this data based on unsupported claims of widespread fraud, waste, and abuse, and that it intends to use the data for immigration enforcement. Such evidence of bad faith and improper behavior includes:

- Secretary Rollins has asserted she made the decision to demand States' data to hunt for evidence that SNAP increased "almost 40%" because the Biden Administration was offering increased benefits for votes, even though the temporary increase in benefits was authorized by Congress during the first Trump Administration to help low income families put food on the table during the COVID 19 pandemic. SAC at ¶¶ 244-246.
- USDA's obfuscations concerning the potential use of SNAP data for immigration enforcement, despite the clear representations of Vice President Vance and others that it will be used for that purpose.
- The District of Minnesota recently found that USDA attempted to withhold funding from Minnesota based on "sweeping, nonspecific, and unsupported accusations of 'fraud, waste, and abuse.'"[9] Similar bad faith is demonstrated here by, *inter alia*, USDA's coercive threats to disallow funding in amounts that greatly exceed States' total federal administrative funding (*see* ECF No. 75-1, Ex. C).

In such circumstances, courts may order production of a privilege log (and production of withheld documents for *in camera* review) to determine whether withheld materials are in fact deliberative, as well as to consider whether plaintiffs can overcome privilege claims and require agency defendants to produce deliberative materials.[10]

Finally, the Court should disregard Defendants' suggestion that Plaintiffs are not entitled to a full record on *all* APA claims, including those that were not the basis for earlier emergency relief. For example, the Court found at a preliminary juncture that Plaintiffs had "made an insufficient showing that USDA's decision lacked the requisite rational connection," but this ruling was based on the agency's "stated reason." *See* ECF 106 at 19. Plaintiffs are entitled to a complete record to determine whether those stated reasons are true or pretextual, and to adjudicate fully their claims of arbitrary and capricious agency conduct.[11]

**Defendants' Position:** This case has only ever been an attempt by Plaintiff States to skirt their statutory obligation to provide FNS data so that FNS can inspect and audit the SNAP program for waste, fraud, and abuse.[12] To that end, FNS prepared a complete and duly certified administrative record to support its data requests as required by the APA, which is exactly what

---

[9] *Minnesota v. U.S.D.A.*, No. 25-CV-4767 (LMP/JFD), 2026 WL 125180, at *14 n.11 (D. Minn. Jan. 16, 2026).

[10] *See Nat'l TPS All. v. Noem*, No. 25-CV-05687-TLT (SK), 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025), at *4 (citations omitted).

[11] As the Court recently observed, "[Plaintiffs] have a number of claims that I haven't found in issuing the injunction were necessarily shown to be likely to prevail. I mean, you might. It isn't like they're dead. It's just not a strong enough showing of probability. Is that what you want the administrative record for?" ECF 162 at 12; *see also id.* at 32 ("summary judgment's based on evidence, not just on the face of the complaint").

[12] *See* 7 U.S.C. § 2020(a)(3)(B); *see also* ECF 106 at 12 (Court finding the Section 2020(a)(3) is mandatory and gives "USDA the right to obtain . . . all records necessary to determine whether the program is being conducted in compliance with the SNAP Act.").

Plaintiffs are entitled to. Plaintiffs' request for discovery to "complete and supplement" the record fundamentally misunderstands the nature of APA litigation, the role of administrative records, and even the applicable standard. They fail to specify a single document that FNS failed to properly include, allege conduct to overcome the presumption of regularity afforded agencies in certifying records, or demonstrate that the record is so insufficient so as to frustrate Court review of Plaintiffs' APA claims, especially given that the Court has *three times* reviewed and rejected Plaintiffs' arbitrary and capricious claims based on this record. Instead, their discovery requests are based on bald assertions and misguided notions that they are entitled to discovery because they do not believe the assembled record. That is not a basis for extra-record discovery nor how APA review is conducted.

To understand why extra-record discovery is inappropriate, it is necessary to address the role of administrative records and the presumption of regularity in APA litigation. In APA cases, courts are limited to reviewing the administrative record.[13] This limitation is not a prudential concern, but one based on the role of the court, which is confined to "determin[ing] whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."[14]

Administrative records consist of "all documents and materials directly or indirectly considered by agency decision-makers."[15] But, records do not include "every scrap of paper that could or might have been created on a subject."[16] Further, pre-decisional, deliberative materials are not considered part of the administrative record.[17] Nor are other privileged documents.[18] Agencies are afforded a presumption of regularity, meaning that "courts must 'presume that the agency properly designated the Administrative Record absent clear evidence to the contrary.'"[19] A record is complete and "allow[s] for meaningful judicial review" if it "delineates the path by which [the agency] reached its decision."[20]

Supplementation or completion of an administrative record is rarely appropriate.[21] Generally, there are only two circumstances: "First, a plaintiff may seek to include extra-judicial evidence that was not initially before the agency but that the plaintiff believes should nonetheless be included in the administrative record. Second, a plaintiff may seek to include evidence that should have been properly a part of the administrative record but was excluded by the agency."[22]

---

[13] *See* 5 U.S.C. § 706; *see also Judulang v. Holder*, 565 U.S. 42, 53 (2011) (scope of APA review "is narrow; as [the Supreme Court has] often recognized, a court is not to substitute its judgment for that of the agency.") (citation modified).

[14] *Occidental Eng'g Co. v. Immigr. Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).

[15] *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (citation modified).

[16] *Golden Gate Salmon Ass'n v. Ross*, 2018 WL 3129849, at *4 (E.D. Cal. June 22, 2018) (cleaned up).

[17] *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–45 (9th Cir. 2024).

[18] *See Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 122 (D.D.C. 2014) ("in APA cases, privileged and deliberative documents reflecting internal agency deliberations are 'immaterial as a matter of law—unless there is a showing of bad faith or improper behavior,' since the 'reasonableness of the agency's action is judged in accordance with its stated reasons.) (citation modified).

[19] *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1177 (9th Cir. 2022).

[20] *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989).

[21] *See Goffney v. Becerra*, 995 F.3d 737, 747–48 (9th Cir. 2021) ("[A] court reviewing an agency's action may examine extra-record evidence only in limited circumstances that are narrowly construed and applied.") (citation modified).

[22] *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018) (citation modified).

Thus, "[c]ompleting the record refers to including materials which were actually considered by the agency, yet omitted from the administrative record, whereas supplementing the record refers to including materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry."[23]

To complete a record, a plaintiff must demonstrate "a strong showing of bad faith or improper behavior[.]"[24] "[C]onclusory statements fall far short of the 'strong showing' of bad faith required[.]"[25] Bad faith is extreme: "An agency acts in bad faith when it engages in willful misconduct."[26] To complete an administrative record, the plaintiff must identify "specific documents that [it] believes to be missing."[27] Courts require the moving party to "'set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context,' but this showing is not sufficient unless the party can also prove the documents were considered by the agency, directly or indirectly."[28]

To supplement a record, a plaintiff must "demonstrat[e] that the administrative record is so inadequate that judicial review would be 'effectively frustrated.'"[29] Again, agencies are afforded a presumption of regularity in the supplementation context.[30] There are four circumstances where supplementation may be appropriate: (1) if necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) when the agency has relied on documents not in the record, (3) to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of bad faith.[31]

It should be fatal to Plaintiffs' request for discovery that they have not identified a single document with which the record should be supplemented or completed. Instead, their entire argument relies on speculation, "merely proffering broad categories of documents and data that are likely to exist."[32] Equally as fatal is that the Court has *three times* reviewed and rejected Plaintiffs' arbitrary and capricious claims based on a subset of the documents provided in the record.[33] Thus, APA review is clearly not frustrated by this record. The rest of Plaintiffs' arguments fall equally flat.

- FNS has not displayed "shifting justifications" for its data requests (which Plaintiffs mischaracterize as "data-pooling"). The aim has always been to audit the SNAP Program, which is demonstrated by FNS' recent initial results report.[34] Further, Plaintiffs claim

---

[23] *WildEarth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219, 1222 n.3 (C.D. Cal. 2020) (citation modified).

[24] *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 789 F.2d 26, 44 (D.C. Cir. 1986) (citation omitted).

[25] *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citation omitted).

[26] *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1250, 1260–61 (E.D. Cal. 1997).

[27] *Goffney*, 995 F.3d at 747.

[28] *Mission Creek Band of Mission Indians v. Zinke*, 2017 WL 10562667, at *2 (C.D. Cal. Nov. 1, 2017) (citation omitted).

[29] *Univ. of Washington v. Sebelius*, 2011 WL 6447806, at *2 (W.D. Wash. Dec. 22, 2011) (citation omitted).

[30] *See Goffney*, 995 F.3d at 748.

[31] *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012).

[32] *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 17 (D.D.C. 2013), *decision vacated in part on reconsideration*, 2013 WL 11241368 (D.D.C. July 30, 2013).

[33] *See* ECF No. 83 at 12–14; ECF No. 106 at 19–21; ECF No. 134 at 17–19.

[34] USDA, SNAP Program Integrity Data Team: Preliminary Report (May 13, 2026)

FNS is "backfilling justifications," this fails to recognize that the SNAP Act gives FNS the authority to seek these records without justifications (even though FNS has provided good justification).[35]

- Plaintiffs allege discovery is necessary to uncover FNS's intent to use or disclose the data for immigration enforcement purposes. But only Plaintiffs have ever raised the specter that the data will be used for such purposes. FNS has unwaveringly committed not to share data where doing so would violate SNAP Act, 7 U.S.C. § 2020(e)(8)(A).[36] Thus, the specter of improper disclosure is both speculative and spoken to by this record.

- Plaintiffs claim entitlement to a host of deliberative materials, which are explicitly not part of a record under Ninth Circuit precedent. Plaintiffs have presented no evidence to show that FNS improperly excluded anything as deliberative. For example, Plaintiffs claim entitlement to pre-data request "intra-agency or inter-agency documents." But Plaintiffs have done nothing to show that the materials they seek would not constitute deliberative materials and, thus, would not be a part of the record.

- Plaintiffs claim the right to troves of raw data and methodological tools to double-check FNS's work. But raw data and related materials are irrelevant to Plaintiffs' APA claims, which challenge whether FNS properly relied on its findings to continue seeking records and enforce its data requests through disallowment,[37] not the agencies' math. Thus, raw data will not aid the Court's review, is unnecessarily burdensome for the Court and Defendants, and contains sensitive PII from other States' residents that FNS is prohibited from disclosing under the SNAP and Privacy Acts.

- In terms of scope of the data requests and the data elements requested, Plaintiffs have already received FNS's justification for its requests, and the Court has already rejected these claims without the need for additional discovery.[38]

- Reference to equitable factors is unavailing. Only Plaintiffs have sought equitable relief, and the Court has already ruled on preliminary equitable relief without additional discovery.[39] Plaintiffs have also failed to demonstrate which of their discovery requests would advance this claim, demonstrating that it is simply a baseless attempt to skirt the APA's limitations.

- Finally, Plaintiffs fail to address, let alone meet, the actual standards of the "all relevant factors"[40] or "documents not in the record"[41] exceptions, both of which are exceedingly high.

---

https://perma.cc/3UAV-KVNS, AR 48.

[35] See 7 U.S.C. § 2020(a)(3); see also ECF No. 165 (explaining that audits are not final agency action).

[36] See Ex. B to Ex. F to Ladov Decl., ECF No. 173-3 (Proposed Protocol § 1.4).

[37] Again, merely issuing a data request pursuant to an audit is not reviewable final agency action. See supra n. 34.

[38] See ECF No. 116 at 19–20 (Plaintiffs arguing selection of data elements was arbitrary and capricious); ECF No. 134 at 18 (Court finding that FNS adequately explained its reasons for collecting the relevant data set).

[39] See ECF No. 83 at 14–16; ECF No. 106 at 21–24; ECF No. 134 at 19–21.

[40] To satisfy the "all relevant factors" exception, "the document in question must do more than raise 'nuanced points' about a particular issue; it must point out an 'entirely new' general subject matter that the defendant agency failed to consider." Pinnacle Armor, Inc. v. United States, 923 F. Supp. 2d 1226, 1234 (E.D. Cal. 2013).

[41] To rely on the "documents not in the record" exception, a plaintiff must present "clear evidence that [the agency] relied on materials not in the record[.]" Yan v. U.S.C.I.S., 2020 WL 7978225, at *2 (C.D.

Plaintiffs' attempts to establish bad faith by quoting Vice President Vance and Secretary Rollins out-of-context, but these attempts fail. In the clip Plaintiffs reference regarding the Vice President, he is clearly talking about efforts to promote cooperation between the States and federal law enforcement unrelated to FNS and its data sharing requests. Secretary Rollins' comments demonstrate that the FNS's goal is to determine if there is waste, fraud, and abuse improperly sapping SNAP of resources and, therefore, demonstrates no bad faith in certification of the record. Finally, the footnote from *Minnesota v. USDA* on which Plaintiffs rely made no finding of bad faith and had nothing to do with FNS's construction of an administrative record or privilege log.[42] Instead that court was evaluating separate claims, regarding an unrelated administrative action, and spoke to the merits evaluation in that case, lending no support for the circumstance here.

Finally, Plaintiffs claim they are entitled to a privilege log, but there is no log to produce nor are they entitled to one in APA litigation. Plaintiffs' privilege log claim again misunderstands APA litigation. "[R]equests for privilege logs of documents that may have been withheld from an administrative record on grounds of privilege or deliberative process are routinely denied."[43] This is because "in APA cases, privileged and deliberative documents reflecting internal agency deliberations are 'immaterial as a matter of law—unless there is a showing of bad faith or improper behavior,' since the 'reasonableness of the agency's action is judged in accordance with its stated reasons.'"[44] Thus, "the general rule is that when 'documents are not part of the administrative record'—having been omitted on privilege grounds—'an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld.'"[45]

Plaintiffs fail to establish the bad faith necessary to overcome the presumption of regularity that FNS improperly withheld a document for privilege.[46] Plaintiffs merely speculate that FNS withheld documents for privileged reasons—or imply that FNS does not understand the qualifications of deliberative documents—and assert that their general arguments for bad faith warrant sweeping aside the presumption of regularity. But Plaintiffs have failed to establish bad faith in withholding a document for privilege. As such, the Court should deny Plaintiffs' inappropriate request for a privilege log along with the entirety of their discovery requests.

---

Cal. June 4, 2020).

[42] 2026 WL 125180, *14 n.11 (D. Minn. Jan. 16, 2026).

[43] *Stand Up for California!*, 71 F. Supp. 3d at 122 (listing cases).

[44] *Id.* (quoting *In re: Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998)); *see also California v. U.S. Dep't of Labor*, 2014 WL 1665290, at *13–14 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log.").

[45] *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 317 (D.D.C. 2016) (quoting *Nat'l Ass'n of Chain Drug Stores v. HHS*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009)).

[46] *See Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 33 (D.D.C. 2013) ("Absent a rebuttal of the presumption of regularity, the Secretary's determination of which documents are privileged, and thus excluded from the administrative record, is conclusive.").

Dated:  June 18, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
JULIA HEMING SEGAL
SEBASTIAN BRADY
MARIA F. BUXTON
WILLIAM BELLAMY
LIAM E. O'CONNOR


/s/ *Julia Heming Segal*
JULIA HEMING SEGAL
Deputy Attorneys General
*Attorneys for Plaintiff State of California*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TYLER BECKER
Counsel to the Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch


/s/ *Benjamin S. Kurland*
BENJAMIN S. KURLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 598-7755
ben.kurland@usdoj.gov

*Counsel for Defendants*

| ADDITIONAL COUNSEL FOR PLAINTIFFS | |
|---|---|
| Letitia James<br>Attorney General of New York<br><br>*/s/ Mark Ladov*<br>Mark Ladov<br>Special Counsel<br>Julie Dona<br>Special Counsel<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8240<br>mark.ladov@ag.ny.gov<br>*Attorneys for Plaintiff State of New York* | Kwame Raoul<br>Attorney General of Illinois<br><br>*/s/ Sherief Gaber*<br>Harpreet K. Khera<br>Bureau Chief, Special Litigation<br>Sherief Gaber<br>Assistant Attorney General<br>115 S. LaSalle St., 35th Flr.<br>Chicago, Illinois 60603<br>(773) 590-7127<br>sherief.gaber@ilag.gov<br>*Attorneys for Plaintiff State of Illinois* |
| Kristin Mayes<br>Attorney General of Arizona<br><br>*/s/ Luci D. Davis*<br>Luci D. Davis (AZ No. 035347)<br>Hayleigh S. Crawford (AZ No. 032326)<br>2005 N. Central Ave. Phoenix, AZ 85004<br>(602) 542-3333<br>Luci.Davis@azag.gov<br>Hayleigh.Crawford@azag.gov<br>ACL@azag.gov<br>*Attorneys for Plaintiff State of Arizona* | Philip J. Weiser<br>Attorney General of Colorado<br><br>*/s/ David Moskowitz*<br>David Moskowitz<br>Deputy Solicitor General<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>david.moskowitz@coag.gov<br>*Attorneys for Plaintiff State of Colorado* |
| William Tong<br>Attorney General of Connecticut<br><br>*/s/ Janelle R. Medeiros*<br>Janelle R. Medeiros<br>Special Counsel for Civil Rights<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5020<br>Janelle.Medeiros@ct.gov<br>*Attorneys for Plaintiff State of Connecticut* | Kathleen Jennings<br>Attorney General of Delaware<br><br>*/s/ Vanessa L. Kassab*<br>Ian R. Liston<br>Director of Impact Litigation<br>Vanessa L. Kassab<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br>*Attorneys for Plaintiff State of Delaware* |

11

Brian L. Schwalb
Attorney General for the District of Columbia

*/s/ Nicole S. Hill*
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

Anne E. Lopez
Attorney General of Hawaiʻi

*/s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

Office of The Governor *ex rel*. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. Travis Mayo
General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors' Office*

Aaron M. Frey
Attorney General of Maine

*/s/ Brendan Kreckel*
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

Anthony G. Brown
Attorney General of Maryland

*/s/ James C. Luh*
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

Andrea Joy Campbell
Attorney General of Massachusetts

*/s/ Katherine Dirks*
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

Dana Nessel
Attorney General of Michigan

/s/ Neil Giovanatti
Neil Giovanatti
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
*Attorneys for Plaintiff State of Michigan*

Keith Ellison
Attorney General of Minnesota

/s/ Joseph R. Richie
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

Jennifer Davenport
Attorney General of New Jersey

/s/ Kashif T. Chand
Kashif T. Chand (NJ Bar No. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

Raúl Torrez
Attorney General of the State of New Mexico

/s/ Steven Prefrement
Steven Perfrement
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

Dan Rayfield
Attorney General of Oregon

/s/ Scott P. Kennedy
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

Josh Shapiro, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

/s/ Jacob B. Boyer
Jennifer Selber
General Counsel
Jacob B. Boyer
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

13

| | |
|---|---|
| Peter F. Neronha<br>Attorney General of Rhode Island<br><br>/s/ *Madeline R. Becker*<br>Madeline R. Becker (RI Bar No. 10034)<br>Special Assistant Attorney General<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400, Ext. 2151<br>mbecker@riag.ri.gov<br>*Attorneys for Plaintiff State of Rhode Island* | Nicholas W. Brown<br>Attorney General of Washington<br><br>/s/ *Jennifer K. Chung*<br>Jennifer K. Chung, WSBA #51583<br>William Mcginty, WSBA #41868<br>Julie Maroney, WSBA #59017<br>Assistant Attorneys General<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>206-464-7744<br>jennifer.chung@atg.wa.gov<br>william.mcginty@atg.wa.gov<br>julie.moroney@atg.wa.gov<br>*Attorneys for Plaintiff State of Washington* |
| Joshua L. Kaul<br>Attorney General of Wisconsin<br><br>/s/ *Karla Z. Keckhaver*<br>Karla Z. Keckhaver<br>Assistant Attorney General<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>608-264-6365<br>karla.keckhaver@wisdoj.gov<br>*Attorneys for Plaintiff State of Wisconsin* | Aaron D. Ford<br>Attorney General of Nevada<br><br>/s/ *Heidi Parry Stern*<br>Heidi Parry Stern (Bar. No. 8873)<br>Solicitor General<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>HStern@ag.nv.gov<br>*Attorneys for Plaintiff State of Nevada* |

14