ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
SEBASTIAN BRADY
WILLIAM BELLAMY
MARIA F. BUXTON
JULIA HEMING SEGAL
LIAM E. O'CONNOR
Deputy Attorneys General
State Bar No. 330050
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone:  (415) 510-3915
 Fax:  (415) 703-5480
 E-mail:  Liam.OConnor@doj.ca.gov
*Attorneys for Plaintiff State of California*

*Additional counsel listed on signature pages*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, ET AL.**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.**<br><br>Defendants. | Case No. **3:25-cv-06310-MMC-KAW**<br><br>**PLAINTIFF STATES' MOTION TO ENJOIN PROSECUTION OF RELATED CASES**<br><br>Date: August 14, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

**NOTICE OF MOTION TO ENJOIN PROSECUTION OF RELATED CASES**

**PLEASE TAKE NOTICE** that on August 14, 2026, at 9:00 a.m., in Courtroom 7 of the above-entitled court, located at 455 Golden Gate Avenue, San Francisco, California, Plaintiffs the States of California, New York, Arizona, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Washington, Wisconsin, the District of Columbia, the Commonwealth of Massachusetts, and the Office of The Governor ex rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky, and the Office of The Governor ex rel. Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania (collectively, Plaintiffs or Plaintiff States) will and hereby do move this Court, pursuant to the first-to-file rule and Federal Rule of Civil Procedure 65, to enjoin Defendants and their officers, agents, servants, employees, and attorneys, together with all other entities or persons acting in concert or participation with Defendants, including the United States Department of Justice, from prosecuting cases against Plaintiff States and/or their agencies based on the same or similar demands for Supplemental Nutrition Assistance Program (SNAP) data being adjudicated in this action.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the supporting Declaration of Liam E. O'Connor; this Court's file; and any other matters properly before the Court.

**TABLE OF CONTENTS**

**Page**

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 2

    I.      Plaintiffs Challenge USDA's Data Demands, and the Court Enjoins Them .......... 2

    II.     USDA Issues Renewed Data Demands, and the Court Enjoins Them ................... 4

    III.    The Court Declines to Lift the Second Preliminary Injunction, and the Case Proceeds Towards Summary Judgment ................................................................... 5

    IV.    USDA Initiates Duplicative Suits Against Plaintiff States in Other Forums .......... 7

Legal Standards ............................................................................................................. 8

Argument ....................................................................................................................... 9

    I.      The First-to-File Rule Squarely Applies to the Later-Filed Suits ......................... 10

        A.     The Later-Filed Suits Were Filed Long After This Case .......................... 10

        B.     The Later-Filed Suits Involve Similar Parties ........................................... 10

        C.     The Later-Filed Suits Involve Similar Issues ............................................ 12

        D.     The Federal Agencies' "Exclusive Venue" Arguments Do Not Change the Analysis ............................................................................... 14

    II.     The Court Should Enjoin USDA and Those in Privity with USDA, Including U.S. DOJ, from Prosecuting Any Later-Filed Suits .............................. 15

        A.     Injunctive Relief Is Warranted .................................................................. 15

        B.     The Injunctive Relief Against USDA Should Apply Equally to USDA's Agents, Attorneys, and Those Acting on USDA's Behalf or in Concert with USDA, Including U.S. DOJ ........................................ 17

Conclusion ................................................................................................................... 18

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Al Otro Lado v. Wolf*
497 F. Supp. 3d 914 (S.D. Cal. 2020) ................................................................................. 18

*Alltrade, Inc. v. Uniweld Prods., Inc.*
946 F.2d 622 (9th Cir. 1991) ................................................................................... 8, 9, 12

*Aqua Connect, Inc. v. SHI Int'l Corp.*, No. CV 19-05662-AB (JPR), 2019 WL
8883452 (C.D. Cal. Dec. 16, 2019)..................................................................................... 9, 10

*AXIS Reinsurance Co. v. Northrop Grumman Corp.*, No. 2:17-cv-08660-AB, 2018
WL 4808540 (C.D. Cal. June 21, 2018) ................................................................................. 15

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486
(N.D. Cal. July 5, 2012) ........................................................................................ 12, 16, 17

*Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468-JVS(MLGx), 2005 WL
5925585 (C.D. Cal. Sept. 26, 2005)..................................................................................... 8

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-
05784-JST, 2021 WL 11714904 (N.D. Cal. Dec. 13, 2021)..................................................... 15

*Church of Scientology of Cal. v. U.S. Dep't of Army*
611 F.2d 738 (9th Cir. 1979)..................................................................................... 8

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992)..................................................................................... 17

*Dang v. Pontier*, No. 19CV1519-GPC(AHG), 2020 WL 7481312 (S.D. Cal. Dec.
18, 2020) ................................................................................................................. 9, 15

*Decker Coal Co. v. Commonwealth Edison Co.*
805 F.2d 834 (9th Cir. 1986)..................................................................................... 9, 15

*Del Mar Avionics v. Quinton Instruments Co.*
645 F.2d 832 (9th Cir. 1981)..................................................................................... 15

*Fremont Emergency Servs. (Scherr), LTD v. UnitedHealthcare Ins Co.*, No. 2:22-
cv-01118-CDS-BNW, 2023 WL 8556229 (D. Nev. Dec. 8, 2023) ........................... 11, 13, 14

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*
787 F.3d 1237 (9th Cir. 2015)..................................................................................... 9, 11, 12

*Ma Chuck Moon v. Dulles*
237 F.2d 241 (9th Cir. 1956)..................................................................................... 11

Plaintiff States' Motion to Enjoin Prosecution of Related Cases (Case No. 3:25-cv-06310-MMC-KAW)

**TABLE OF AUTHORITIES**
(continued)

Page

*Meeropol v. Nizer*
    505 F.2d 232 (2d Cir. 1974)..................................................................................... 9

*Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL
    2669627 (N.D. Cal. July 7, 2011) ......................................................................... 10

*Nat. Res. Def. Council v. E.P.A.*
    38 F.4th 34 (9th Cir. 2022)............................................................................... 11, 17

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-11-
    1892 EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ............................... 10, 13

*Pacesetter Sys., Inc. v. Medtronic, Inc.*
    678 F.2d 93 (9th Cir. 1982)............................................................................... 9, 13

*Regal Knitwear Co. v. N.L.R.B.*
    324 U.S. 9 (1945)............................................................................................... 9, 18

*Rittman v. Amazon.com, Inc.*, No. C16-1554-JCC, 2024 WL 4253191 (W.D.
    Wash. Sep. 20, 2024) ............................................................................................ 16

*Supervalu, Inc. v. Exec. Dev. Sys., Inc.*, No. CV-06-329-S-BLW, 2007 WL 129039
    (D. Idaho Jan. 12, 2007)....................................................................................... 12

**STATUTES**

7 United States Code
    § 2020(a)(3).................................................................................................. *passim*
    § 2020(a)(3)(B)(i)..................................................................................................... 3
    § 2020(e)(8).................................................................................................. 1, 4, 5, 13
    § 2020(e)(8)(A) .................................................................................................. 3, 4, 5
    § 2020(g) ...................................................................................................... *passim*

**RULES AND REGULATIONS**

7 C.F.R. § 276.4 ............................................................................................................ 3, 4

**COURT RULES**

Federal Rules of Civil Procedure
    65(d)(2)(B)-(C) ...................................................................................................... 17

Local Rule
    Rule 3-13(a) .............................................................................................................. 8

Plaintiff States' Opposition to Defendants' Motion for Preliminary Injunction (Case No. 3:25-cv-06310-MMC)

**TABLE OF AUTHORITIES**
(continued)

Page

**OTHER AUTHORITIES**

90 Fed. Reg. 26521 (June 23, 2025) ................................................................................. 3

Martinez-Ochoa, et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (Aug. 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information................................................................. 16

U.S. Dept. of Justice, Justice Department Sues States for Failing to Provide SNAP Data to the U.S. Department of Agriculture (June 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-states-failing-provide-snap-data-us-department-agriculture................................................................. 7

**INTRODUCTION**

Since the spring of 2025, the U.S. Department of Agriculture (USDA) has been demanding that Plaintiff States produce troves of sensitive, personally identifying data on tens of millions of individuals—everyone who has applied for Supplemental Nutrition Assistance Program (SNAP) benefits since January 1, 2020, as well as their household members. After USDA threatened to cut off Plaintiff States' funding to administer the program if they did not immediately comply with USDA's demands, the Court issued a temporary restraining order in September 2025 and then a preliminary injunction in October 2025. ECF No. 83 (TRO) at 9-12; ECF No. 106 (First PI Order) at 13-19. As the Court held, 7 U.S.C. § 2020(e)(8)—USDA's cited authority for its original demands—does not authorize USDA to demand Plaintiff States' data. Moreover, § 2020(e)(8) prohibited the Plaintiff States from complying with the demands, because USDA had indicated that it intended to redisclose the demanded data beyond the circumstances permitted by that section. After USDA renewed its demands, the Court issued a second preliminary injunction in February 2026. ECF No. 134 (Second PI Order) at 11-15. Although USDA purported to rely on a different section of the Food and Nutrition Act (SNAP Act), 7 U.S.C. § 2020(a)(3), the Court held that that section does not permit USDA to compel Plaintiff States to share any data with USDA absent Plaintiff States' agreement to data and security protocols, and Plaintiff States had appropriately declined to agree to USDA's proposed protocols because they would have permitted USDA to redisclose the demanded data beyond the circumstances permitted by § 2020(e)(8). Then, after USDA tweaked its proposed protocols, the Court declined to lift the second preliminary injunction at a status conference in April 2026, explaining that the Court could revisit the parties' disagreement over protocol language at summary judgment. ECF No. 162 (Status Conf. Tr.).

Seemingly frustrated with this Court and its rulings, USDA has now gone on a shopping spree for new forums. Citing 7 U.S.C. § 2020(g), USDA has referred four of the 23 Plaintiff States to the U.S. Department of Justice (U.S. DOJ), and together the federal agencies have filed four new lawsuits (hereinafter the "Later-Filed Suits") in Kentucky, Michigan, Minnesota, and

Pennsylvania, asking four different district courts to compel those States' agencies to comply with USDA's demands.

These Later-Filed Suits present obvious risks of inconsistent rulings. Indeed, contrary to the Court's second preliminary injunction order and on the eve of summary judgment in this case, the Later-Filed Suits ask other district courts to hold that § 2020(a)(3) does *not* require agreed-upon data and security protocols and that Plaintiff States have unreasonably declined to agree to USDA's proposed protocols.

Moreover, the Later-Filed Suits would clearly waste judicial resources. The Court has already preliminarily considered the merits of the parties' claims three times (in the temporary restraining order and two preliminary injunctions), and this case will proceed to summary judgment as soon as the parties' disputes over the administrative record and discovery are resolved. *See* ECF Nos. 172, 179-81. It makes no sense for four new district courts in the Later-Filed Suits to bring themselves up to speed on the lengthy procedural history of the parties' dispute and the merits of their claims when the Court is close to resolving them.

The first-to-file rule bars subsequent proceedings in precisely these circumstances: to avoid inconsistent rulings and to preserve judicial resources. The Court should enjoin Defendants and those in privity with them from prosecuting any duplicative cases during the pendency of this litigation, including the four they have already filed.

## BACKGROUND

**I.   PLAINTIFFS CHALLENGE USDA'S DATA DEMANDS, AND THE COURT ENJOINS THEM**

In May 2025, USDA sent letters to State SNAP agencies, informing them that USDA was attempting to collect—directly from the State agencies' Electronic Benefit Transfer ("EBT") vendors—sensitive, personally identifying information (PII) on all individuals who had applied for or received SNAP benefits since January 1, 2020. ECF No. 59-7, Ex. B. In its letters, USDA threatened that the State agencies' failure "to take the steps necessary to provide SNAP data" could result in "noncompliance procedures codified at 7 U.S.C. 2020(g)." *Id.* at 2.

After private plaintiffs sued USDA for failing to follow the Privacy Act, among other laws, the agency published a System of Records Notice (SORN), which described a new "National

Supplemental Nutrition Assistance Program (SNAP) Information Database" (SNAP Information Database) containing SNAP applicants' and recipients' PII, including their names, Social Security Numbers, dates of birth, and addresses. 90 Fed. Reg. 26521 (June 23, 2025); *see Pallek v. Rollins*, No. 1:25-cv-1650, ECF No. 11-1, ¶¶ 13-14 (D.D.C. May 30, 2025). USDA then sent new letters to State SNAP agencies, demanding that they immediately produce the data or face the "noncompliance procedures codified in 7 U.S.C. 2020(g)." ECF No. 59-7, Ex. E; *see id.*, Exs. C, D.

In July 2025, Plaintiff States filed this case, challenging USDA's data demands and the creation of the SNAP Information Database. ECF No. 1. In response, USDA sent letters to Plaintiff States' governors, providing an "advance noti[fication]" under 7 C.F.R. § 276.4 (one of the regulations that implements 7 U.S.C. § 2020(g)) that USDA "may proceed" with disallowing administrative funding. ECF No. 59-7, Ex. G at 1. After Plaintiff States filed a motion for a preliminary injunction to prohibit USDA from enforcing its data demands, USDA issued "formal warnings" to Plaintiff States' governors under 7 C.F.R. § 276.4, again threatening to cut off Plaintiff States' funding to administer SNAP. ECF No. 67-1, ¶ 6 & Exs. A-P; ECF No. 75-1, Exs. B-C.

In support of its data demands, USDA "cited to two provisions in the SNAP Act, namely, 7 U.S.C. § 2020(a)(3) and § 2020(e)(8)(A)." TRO at 3 (citing ECF No. 59-7, Ex. B). But § 2020(a)(3) provides that State agencies shall "ma[ke]" specified records "available for inspection and audit by the [USDA], *subject to data and security protocols agreed to by the State agency and [USDA]*," 7 U.S.C. § 2020(a)(3)(B)(i) (emphasis added), and USDA had not proposed any such protocols, TRO at 10; *see* PI Order at 12 n.14. In light of this deficiency, "USDA argued for the first time" at the hearing on Plaintiffs' motion that the agency was "entitled to seek information from State agencies solely under § 2020(e)(8)(A), and, consequently, that the lack of agreed protocols required under § 2020(a)(3) [did] not render the demand for SNAP data unlawful under the APA." TRO at 11.

After issuing a temporary restraining order to preserve the status quo while the parties briefed Defendants' new arguments, the Court issued a preliminary injunction in October 2025,

3

holding that Plaintiffs are likely to prevail on their claim that Defendants' original demands are contrary to law. First PI Order at 13-19. First, the Court rejected USDA's argument that 7 U.S.C. § 2020(e)(8) grants USDA the authority to require State agencies to produce applicant data upon demand, explaining that the section merely allows State agencies to produce applicant data in specified circumstances—generally, only to "persons directly connected with the administration or enforcement" of federal benefits programs and "only for such administration or enforcement." *Id.* at 13-18. Second, the Court held that § 2020(e)(8) *prohibited* Plaintiff States from complying with USDA's demands because in the governing SORN, USDA had "announced its intent" to redisclose the data in "ways well beyond those permitted under § 2020(e)(8)(A)(ii)." *Id.* at 18.

## II.    USDA ISSUES RENEWED DATA DEMANDS, AND THE COURT ENJOINS THEM

In November 2025, USDA renewed its data demands in letters to Plaintiff States' governors. This time, it relied on 7 U.S.C. § 2020(a)(3) as the source of its authority to demand the data. Although USDA included "proposed" data and security protocols with the renewed demands, USDA declared "there [could] be no good faith objection" to them. ECF No. 116-2, Ex. A at 1. In response, Plaintiff States raised concerns regarding the proposed protocols. ECF. No. 116-2, Ex. B. But USDA replied with another advance notification under 7 C.F.R. § 276.4, again initiating noncompliance proceedings to withhold Plaintiffs' administrative funding, ECF No. 116-2, Ex. C at 6-7.

Accordingly, Plaintiff States were again forced to seek preliminary injunctive relief, ECF No. 116, and the Court issued a second preliminary injunction in February 2026, holding that Plaintiff States are likely to prevail on their claim that USDA's renewed demands are contrary to law, Second PI Order at 11-15. First, the Court rejected USDA's argument that USDA does not need to agree to data and security protocols with State agencies in order to collect their records under § 2020(a)(3). *Id.* at 11-12. Second, the Court held that Plaintiff States had acted reasonably in declining to agree to USDA's proposed protocols because they would have permitted USDA to share the demanded data in ways prohibited by § 2020(e)(8). *Id*. at 12-15. Specifically, the protocols would have "allow[ed] USDA to share the requested data with entities other than those

4

covered by § 2020(e)(8)(A)(i), thereby effectively serving as a conduit between Plaintiff States and prohibited entities." *Id.* at 15.

## III.    THE COURT DECLINES TO LIFT THE SECOND PRELIMINARY INJUNCTION, AND THE CASE PROCEEDS TOWARDS SUMMARY JUDGMENT

In the following months, Plaintiff States attempted to reach agreement with USDA on data and security protocols that would impose necessary limits on USDA's unlawful data demands. In particular, Plaintiff States proposed provisions to ensure that the demanded data would not be redisclosed or used in violation of 7 U.S.C. § 2020(e)(8)—including to ensure that the data would not be redisclosed and used for immigration enforcement purposes, given that Vice President JD Vance has publicly stated that the Administration wants to use SNAP applicant data to locate deportation targets, ECF No. 146 (SAC) ¶ 139; that USDA has removed past assurances from its website that "[y]ou can apply for or receive SNAP without immigration consequences," *id.* ¶¶ 159-160; and that the U.S. Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) have requested millions of individuals' PII from other federal agencies for immigration enforcement purposes, *see* ECF No. 154. USDA rejected all of Plaintiffs' proposals to safeguard the data, steadfastly refusing to agree not to redisclose the data for immigration enforcement purposes upon request by DHS or ICE. *See* ECF No. 154. Worse yet, USDA weakened its own proposed protocols by striking a provision intended to ensure that other recipients of Plaintiffs' data would comply with § 2020(e)(8). *See id.*; *see also* First PI Order at 18 ("[W]hen a State agency provides information under § 2020(e)(8)(A), the recipient is subject to strict limitations placed on the use of the information so obtained.").

In a joint status report that was supposed to propose a schedule for summary judgment, USDA instead effectively requested that the Court dissolve the second preliminary injunction by "resolv[ing] the narrow differences between the parties on [USDA's] proposed protocol" at a status conference. ECF No. 143 at 8. At the April 15, status conference that followed, the Court explained that it had not "preapproved" any protocol language and declined to "hear argument" from USDA regarding the merits of the parties' claims at a status conference, rather than at a

5

hearing upon a duly noticed motion. Status Conf. Tr. at 9:11-17.[1] USDA then announced for the first time—after the case had been pending for nine months—that the agency intended to bring a counterclaim against Plaintiff States and to file a motion seeking an injunction to compel Plaintiff States to comply with USDA's demands. *See id.* at 19:14-18 (Defense Counsel: "[W]e will file a counterclaim" and seek "affirmative relief of our own."). USDA also confirmed that the counterclaim would be the flip side" of Plaintiffs' existing claims. *Id.* at 23:18-25 (Court: "Now, in this counterclaim, is this just going to be the flip side of essentially [Plaintiffs' claims] . . . ?" Defense Counsel: "Precisely."); *id.* at 24:18-25 (Court: "[Plaintiffs'] claim [is] 'we don't have to give [the data] to you, and you can't punish us for not doing it,' and your counterclaim is, 'You have to give [the data] to us, and if you don't give it to us, we're entitled to do whatever the law says we can do'?" Defense counsel: "Yes, your Honor.") (cleaned up)). In response, the Court observed that there was no need for USDA to tee up yet another round of preliminary injunction motion practice—either to obtain affirmative relief or dissolve the second preliminary injunction. *See id*. at 34:12-22 (Court: "[I]sn't that really what the summary judgment motions are going to be all about? . . . . [H]ow many different ways [d]o you need to put the same issue before the Court?").

On May 15, USDA sent a letter to Plaintiff States' SNAP agencies that described itself as a "Third Data Request" that "supersedes [USDA's] First and Second Data Requests," which were purportedly "withdrawn." O'Connor Decl., Ex. 2 at 1. But the letter merely restates USDA's renewed data demands—demanding the same set of data under the same section of the SNAP Act, 7 U.S.C. § 2020(a)(3). *Compare* O'Connor Decl., Ex. 2, Attachment A, *with* ECF No. 116-2, Ex. A. And it proposes the same protocol terms presented to the Court in the joint status report. *Compare* O'Connor Decl., Ex. 2, Attachment B, *with* ECF No. 143 at 7 & Ex. J. Accordingly, on May 22, Plaintiff States reiterated their previously expressed concerns, which USDA did not address. O'Connor Decl., Ex. 3; *see* ECF No. 154. Plaintiff States also explained that the "most efficient path forward remains to move toward a final resolution of this case on the merits alongside any further discussions on the data and security protocol, in order to ensure that our

---

[1] A copy of the transcript is attached to the supporting declaration. O'Connor Decl., Ex. 1.

State agencies use and disclose the personally identifiable information of our residents in a fully lawful manner." O'Connor Decl., Ex. 3. USDA never responded to Plaintiffs' States' May 22 letter.

On May 29, the Court adopted the parties' proposed case schedule, which provides that this case will proceed to summary judgment 28 days after resolution of Plaintiffs States' motion to complete and supplement the administrative record, including completion of any document productions or discovery ordered. ECF No. 172. That motion, which has been re-briefed in the format of joint discovery letter briefs, is currently pending before Magistrate Judge Westmore. ECF Nos. 179-81.

**IV.    USDA INITIATES DUPLICATIVE SUITS AGAINST PLAINTIFF STATES IN OTHER FORUMS**

On June 26, acting on referrals from USDA, U.S. DOJ sued four of the Plaintiff States' SNAP agencies—Kentucky, Michigan, Minnesota and Pennsylvania (hereinafter "Later-Sued States")—in the name of the United States, seeking to compel them to comply with USDA's data demands. *See* ECF No. 183. When announcing the new lawsuits, Defendant Secretary Rollins claimed that she personally "asked the Acting Attorney General to compel Kentucky, Pennsylvania, Minnesota, and Michigan to comply with federal law," because "[f]or nearly 365 days" those States had "shamelessly defied federal law and withheld data to which the U.S. Department of Agriculture is entitled"[2]—as if the Court had not repeatedly enjoined USDA's demands as likely contrary to law.

The federal agencies filed their Later-Filed Suits in four different district courts: the Eastern District of Kentucky, the Western District of Michigan, the District of Minnesota, and the Middle District of Pennsylvania. But the complaints are substantively identical, each seeking declaratory and injunctive relief against the respective State agency under 7 U.S.C. § 2020(g) on the grounds that the State agency has "unlawfully withheld the records by (1) making their agreement to data and security protocols a condition precedent to producing the records, and (2) avoiding an

---

[2] Press Release, U.S. Dept. of Justice, Justice Department Sues States for Failing to Provide SNAP Data to the U.S. Department of Agriculture (June 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-states-failing-provide-snap-data-us-department-agriculture.

agreement altogether by unreasonably rejecting USDA's proposed data and security protocols," ECF No 183, Ex. A (Ky. Compl.), ¶ 9; Ex. B (Mich. Compl.), ¶ 9; Ex. C (Minn. Compl.), ¶ 9; Ex. D (Pa. Compl.), ¶ 9. The complaints try to sidestep the fact that the Court's second preliminary injunction order *rejected* these same arguments. *See* Second PI Order at 11-15. Moreover, they allege that the United States was "[l]eft with no other recourse" than to bring the Later-Filed Suits, Ky. Compl., ¶ 9; Mich. Compl., ¶ 9; Minn. Compl., ¶ 9; Pa. Compl., ¶ 9, despite the fact that the Court has already explained to USDA's counsel of record (who overlap with the counsel of record in the Later-Filed Suits) that if USDA wants the Court to reconsider its second preliminary injunction order there is already "a vehicle to put that in front of [the Court]": the parties' forthcoming cross-motions for summary judgment in this case. Status Conf. Tr. at 35:3-9.

Because USDA failed to inform the Court of the Later-Filed Suits, *see* L.R. 3-13(a), Plaintiffs filed a Notice of Pendency of Other Actions or Proceedings on June 29. ECF No. 183. USDA has not responded.

Three of the Later-Sued States have been served: Michigan on June 29 and Minnesota and Pennsylvania on July 1. Accordingly, those States' responses are currently due July 20 and July 22, respectively. As of the time of this filing, Kentucky has not been served.

**LEGAL STANDARDS**

The first-to-file rule is an equitable doctrine that provides when similar cases are filed in different courts, the first-filed case should be allowed to proceed, and the later-filed cases should be stayed, transferred, dismissed, or enjoined. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991); *Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468-JVS(MLGx), 2005 WL 5925585, *2 (C.D. Cal. Sept. 26, 2005) ("Absent special circumstances, the first case should proceed while the second case is enjoined."). This rule serves the important purposes of avoiding "conflicting judgments" and "an unnecessary burden on the federal judiciary." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc). It is not a "rigid or inflexible rule to be mechanically applied, but rather is to

be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

In determining whether the rule applies, courts consider three factors: (1) the chronology of the lawsuits, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake. *Alltrade*, 946 F.2d at 625. The issues and parties in the first and second actions need not be identical, but only "substantially similar." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). This avoids "'gamesmanship'" and "'maximize[s] judicial economy, consistency, and comity.'" *Aqua Connect, Inc. v. SHI Int'l Corp.*, No. CV 19-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019) (citation omitted).

Further, although the second court may stay the subsequently filed proceedings under the first-to-file rule, *see Alltrade*, 946 F.2d at 623, the first court may also enjoin the parties from prosecuting the subsequently filed action. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). That is true "even where the parties in the two actions are not identical." *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *see Dang v. Pontier*, No. 19CV1519-GPC(AHG), 2020 WL 7481312, *4 (S.D. Cal. Dec. 18, 2020), *aff'd sub. nom. Dang v. TEOCO Corp. Grp. Benefit Plan*, 2023 WL 5925890 (9th Cir. Sept. 12, 2023). An injunction entered by the first court may extend to parties not named in that action but who are nonetheless in privity with the named parties, because "a decree of injunction not only binds the parties defendant but also those identified with them in interest." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945).

## ARGUMENT

Like USDA's threatened counterclaim, the Later-Filed Suits are just "the flip side" of Plaintiff States' claims against USDA in this case. Here, Plaintiff States contend that USDA's data demands are unlawful; conversely, the Later-Filed Suits contend that the data demands are lawful and therefore the Plaintiff States' agencies are violating the SNAP Act by refusing to comply with them. Thus, the "first-to-file" rule plainly applies. Indeed, the Later-Filed Suits are a perfect example of why the rule exists: they are blatant attempts at forum shopping that serve no purpose other than for USDA to waste judicial resources by taking second, third, fourth, and fifth

9

bites of the apple with the hope of creating inconsistent rulings. The Court should therefore enjoin the federal agencies from prosecuting the Later-Filed Suits and from initiating even more cookie-cutter lawsuits against individual Plaintiff States or their agencies.

## I.    THE FIRST-TO-FILE RULE SQUARELY APPLIES TO THE LATER-FILED SUITS

As explained below, each of the relevant factors weighs in favor of applying the first-to-file rule and enjoining the Later-Filed Suits, as well as any more suits against Plaintiff States or their agencies.

### A.    The Later-Filed Suits Were Filed Long After This Case

As for the chronology of the lawsuits, courts consider which case was filed first and whether the gap in filings has caused the cases to progress to different stages. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *3 (N.D. Cal. Aug. 9, 2012) (collecting cases). The present case was filed *nearly a year* before the Later-Filed Suits, and this case has already been thoroughly litigated through three rounds of preliminary motions practice and will proceed to summary judgment as soon as the pending disputes over the administrative record and discovery are resolved. ECF No. 172; *see* ECF Nos. 179-81.[3] By contrast, the Later-Filed Suits have not progressed whatsoever. Thus, the chronology of the lawsuits clearly supports application of the first-to-file rule.

### B.    The Later-Filed Suits Involve Similar Parties

The similarity-of-the-parties factor is satisfied where the parties in the two suits "represent the same interests." *Aqua Connect*, 2019 WL 8883452, at *3 (citation omitted). Accordingly, this factor may "include a number of plaintiff-defendant configurations that are not identical across the two actions." *Nat'l Union Fire Ins. Co.*, 2012 WL 3277222, at *3. Examples include cases where a party to the second action was a subsidiary of a party to the first action, *see Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal.

---

[3] As explained in Plaintiffs' portions of the joint discovery briefs, *see* ECF Nos. 179-81, Plaintiffs seek a complete record regarding USDA's decisions to create the SNAP Information Database and to demand States' data while also refusing to agree to basic protections to safeguard the data from unauthorized disclosure and misuse. This record is equally relevant to the parties' claims and defenses in the Later-Filed Suits, although the federal agencies have apparently filed those cases in the hopes of quickly relitigating this Court's rulings on the merits without waiting for the administrative record and discovery disputes to be resolved in this case.

July 7, 2011); where one of the defendants to the initial action was not named in the subsequent action, *Kohn*, 787 F.3d at 1240; and where the non-party to the subsequent suit is an affiliate that would secure a legal advantage if its co-affiliate prevailed in that suit, *see Fremont Emergency Servs. (Scherr), LTD v. UnitedHealthcare Ins Co.*, No. 2:22-cv-01118-CDS-BNW, 2023 WL 8556229, at *3 (D. Nev. Dec. 8, 2023).

The similarity-of-the-parties factor is satisfied here. Although the named defendants in this case are USDA and Secretary of Agriculture Brooke Rollins and the named plaintiff in the Later-Filed Suits is the United States, that is a distinction without a difference for purposes of the first-to-file rule. USDA is an agency of the United States, and federal agencies are deemed to be in privity with the United States government. *See Nat. Res. Def. Council v. E.P.A.*, 38 F.4th 34, 57 n.18 (9th Cir. 2022). In other words, federal agencies are presumed to be "identified with [each other] in interest." *Id.* (quoting *Regal Knitwear*, 324 U.S. at 14 (1945)); *see also Ma Chuck Moon v. Dulles*, 237 F.2d 241, 243 (9th Cir. 1956) (finding privity between the U.S. Secretary of State and the Attorney General for res judicata purposes because the actions at issue were "in effect suits against the United States").

Indeed, there is more than just "privity" between USDA and the United States here: the Later-Filed Suits were filed *at the request of and on behalf of* USDA. By statute, the United States only has a cause of action upon "refer[ral]" of "the matter to the Attorney General" by "the Secretary" of Agriculture to seek "injunctive relief" on behalf of the Secretary, 7 U.S.C. § 2020(g), and that is what happened here: USDA referred the matter of the Plaintiff States' supposed non-compliance with the SNAP Act to U.S. DOJ under § 2020(g). *See* Ky. Compl., ¶¶ 3-4, 38; *accord* Mich. Compl., ¶¶ 3-4, 78; Minn. Compl., ¶¶ 3-4, 79; Pa. Compl., ¶¶ 3-4, 78. Also, the ultimate aim of the Later-Filed Suits is to make Michigan, Minnesota, Kentucky, and Pennsylvania comply with USDA's demands. *See* Ky. Compl., ¶ 44; *accord* Mich. Compl., ¶ 84; Minn. Compl., ¶ 85; Pa. Compl., ¶ 84. Thus, for all intents and purposes, the real party in interest in the Later-Filed Suits is USDA. Tellingly, the complaints themselves expressly conflate steps completed by "Plaintiff" with actions taken by the "Secretary of Agriculture." *See* Ky. Compl., *accord* ¶ 51; Mich. Compl., ¶ 91; Minn. Compl., ¶ 92; Pa. Compl., ¶ 91.

11

Similarly, on the other side of the "v," the state agencies named as defendants in the Later-Filed Suits have the same interests as their parent Plaintiff States who are plaintiffs in this case. The federal agencies brought their Later-Filed Suits against the state agencies that administer each State's SNAP program, as well as the secretaries of those agencies in their official capacities, rather than against each State's Governor or the State itself. But that distinction is immaterial. USDA itself has treated the Plaintiff States' governors and their SNAP agencies as one and the same, sending data demands to both interchangeably.[4] And just as the United States brought the Later-Filed Suits in the interest of USDA, so, too, the Plaintiff States brought the present case in the interests of their respective state SNAP agencies. They did so precisely so that those agencies would not be compelled to disclose SNAP data in a manner contrary to federal law.

Further, it is irrelevant that only one Plaintiff State's agency is a defendant in each of the four Later-Filed Suits. The first-to-file rule applies even if some parties to the first suit are absent from the second. After all, a contrary rule would allow parties "to skirt the first-to-file rule merely by omitting one party from a second lawsuit." *Kohn*, 787 F.3d at 1240; *see also Alltrade*, 946 F.2d at 624. Here, it is sufficient that four Plaintiff States in this case share the same interests as the state agency defendants named in the Later-Filed Suits.

C.    **The Later-Filed Suits Involve Similar Issues**

Finally, the issues in both sets of litigation are substantially similar. In determining whether the claims and issues in overlapping cases are sufficiently similar to enjoin the later-filed action, "it is enough that the overall content of each suit is not very capable of independent development, and will be likely to overlap to a substantial degree." *Supervalu, Inc. v. Exec. Dev. Sys., Inc.*, No. CV-06-329-S-BLW, 2007 WL 129039, at *1 (D. Idaho Jan. 12, 2007) (citation omitted). Stated slightly differently, courts consider whether the actions involve "the same core issues," *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486, at *10 (N.D. Cal. July 5, 2012), or whether "the judgment of one case will inextricably bear on the resolution

---

[4] *See, e.g.*, ECF No. 59-7, Ex. B; ECF No. 59-7, Ex. E; ECF No. 116-2, Ex. A; ECF No. 116-2, Ex. C; O'Connor Decl., Ex. 2.

of the other," *Fremont Emergency Servs.*, 2023 WL 8556229, at *3. Although the specific causes of action and relief sought in each action are relevant to the analysis, they are not dispositive; more important is whether the "key dispute" in each action is the same. *Nat'l Union Fire Ins. Co.*, 2012 WL 3277222, at *3; *see also Pacesetter Sys.*, 678 F.2d at 95 (finding similarity of issues in two cases where "[t]he central questions in each are the validity and enforceability of three specific patents").

This case and the Later-Filed Suits involve the same core issues and turn on the same key disputes. At bottom, both sets of litigation seek to resolve whether Plaintiff States must comply with USDA's data demands, whether USDA must obtain the State agencies' agreement to data and security protocols to collect data under § 2020(a)(3), and whether the State agencies' objections to USDA's proposed protocols are reasonable. *Compare* Second PI Order at 11-15, *with* Ky. Compl., ¶¶ 9, 30, 47, 49; Mich. Compl., ¶¶ 9, 30, 87, 89; Minn. Compl., ¶¶ 9, 30, 87, 90; Pa. Compl., ¶¶ 9, 30, 87, 89. As the Court and USDA's counsel already observed when USDA announced its plan to file its § 2020(g) claims as a counterclaim in the present case, the Later-Filed Suits present "essentially the same issue" as this case, "[j]ust put in the opposite direction." Status Conf. Tr. at 25:4-5; *see id.* at 23:18-25, 24:18-25.

The Court has already ruled that an agreed-upon set of data and security protocols is a "condition precedent" to USDA obtaining Plaintiff States' SNAP data, Second PI Order at 11-12; that Plaintiff States are not required to disclose the requested data when the data may be re-disclosed or used beyond the circumstances permitted by § 2020(e)(8), First PI Order at 18-19; Second PI Order at 11-15; or when Plaintiff States have reasonable objections to USDA's proposed protocols under § 2020(a)(3), Second PI Order at 14-15. In the face of those rulings, USDA contends in the Later-Filed Suits that it need not obtain Plaintiff States' agreement to data and security protocols and that Plaintiff States' objections to its proposed protocols are unreasonable (despite the fact those protocols still allow for re-disclosure and uses prohibited by § 2020(e)(8)), *see, e.g.*, ECF No. 154, Ex. A at 2). *See* Ky. Compl., ¶¶ 9, 30, 47, 49; Mich. Compl., ¶¶ 9, 30, 87, 89; Minn. Compl., ¶¶ 9, 30, 87, 90; Pa. Compl., ¶¶ 9, 30, 87, 89. The federal agencies may not pursue their Later-Filed Suits in new forums to invite those courts to disagree

13

with this Court's holdings.[5] That is precisely the gamesmanship and wastefulness that the first-to-file rule is intended to prevent.

### D. The Federal Agencies' "Exclusive Venue" Arguments Do Not Change the Analysis

7 U.S.C. § 2020(g) states that after a referral by the Secretary of Agriculture, the Attorney General may seek injunctive relief "in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located[.]" In the Later-Filed Suits, the federal agencies allege this provides for "exclusive venue" for their claims in the other district courts. *See* Ky Compl. ¶¶ 7, 11, 33; Mich. Compl. ¶¶ 7, 11, 33; Minn. Compl. ¶¶ 7, 11, 33; ; Pa. Compl. ¶¶ 7, 11, 33. But these arguments are beside the point. Plaintiff States are not seeking to *transfer* the federal agencies' claims to this Court; instead, Plaintiff States are asking this Court to enjoin the federal agencies' prosecution of their brand-new, duplicative claims in the other courts pending resolution of Plaintiff States' year-old claims in this case. The first-to-file rule applies because all three of the factors are satisfied here: this case was filed well before and has progressed much further than the Later-Filed Suits; the parties are identical in everything but name; and the cases turn on the same disputed issues.

On top of that, an injunction would cause the federal agencies no harm, because the issues they ask the other courts to decide will soon be finally resolved by this Court, which will leave little or nothing to be decided in the other cases. *See* Ky. Compl., ¶¶ 9, 30, 47, 49; Mich. Compl., ¶¶ 9, 30, 87, 89; Minn. Compl., ¶¶ 9, 30, 87, 90; Pa. Compl., ¶¶ 9, 30, 87, 89; *see also* Status Conf. Tr. at 35:6-9 (explaining that USDA's plan to file a counterclaim and an affirmative motion in this case would just require "extra work" of everyone, "to no productive end"). In the interim, the Court should not permit the federal agencies to proliferate these proceedings in district courts across the country in an attempt to circumvent the discovery process in this case and to relitigate

---

[5] Because the Later-Filed Suits turn on the same key legal issues as this case, it is irrelevant that the Later-Filed Suits "involve[] different claims, venue, and relief," as USDA contends. *See* KY. Compl., ¶¶ 9, 30, 47, 49; Mich. Compl., ¶¶ 9, 30, 87, 90; Minn. Compl. ¶¶ 9, 30, 87, 90; Pa. Compl. ¶¶ 9, 30, 87, 89. Regardless of the specific claims asserted and relief sought, it is inarguable that this Court's decisions on the Plaintiff States' claims will "inextricably bear on the resolution of" the Later-Filed Suits. *See Fremont Emergency Servs.*, 2023 WL 8556229, at *3.

14

the Court's rulings in other forums in the hopes of obtaining a quick win elsewhere before the Court can decide the parties' cross-motions for summary judgment on a complete record in this case.

## II.    THE COURT SHOULD ENJOIN USDA AND THOSE IN PRIVITY WITH USDA, INCLUDING U.S. DOJ, FROM PROSECUTING ANY LATER-FILED SUITS

Because the first-to-file rule applies to the Later-Filed Suits, the Court can, and should, enjoin USDA from prosecuting its Later-Filed Suits during the pendency of this litigation. The injunctive relief issued should also make clear that it binds U.S. DOJ from acting in concert with UDSA and prosecuting the suits on USDA's behalf.

### A.    Injunctive Relief Is Warranted

As discussed above, a district court may enjoin the parties to a suit (and those in privity with them) from prosecuting a duplicative lawsuit in another court. *See Decker Coal*, 805 F.2d at 843. Thus, whether to enjoin USDA "relate[s] to the Court's exercise of its discretion, not to its authority." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 11714904, at *4 (N.D. Cal. Dec. 13, 2021).

In contexts outside of the first-to-file rule, the Ninth Circuit has advised that courts should exercise caution in enjoining parties from proceeding in another court. *See Del Mar Avionics v. Quinton Instruments Co.*, 645 F.2d 832, 835-36 (9th Cir. 1981) (discussing request to enjoin contempt proceedings in suits brought to harass a party). To that end, some district have determined that to enjoin parties from proceeding in another court under the first-to-file rule, the party seeking the injunction must make a specific showing of why that relief is warranted or why the party seeking an injunction did not first seek a stay in the second-filed case. *See AXIS Reinsurance Co. v. Northrop Grumman Corp.*, No. 2:17-cv-08660-AB (JCx), 2018 WL 4808540, *2-3 (C.D. Cal. June 21, 2018) (citation omitted). Even assuming that standard applies here, it is clearly met. *See Dang*, 2020 WL 7481312, *4 ("[j]udicial economy, consistency and comity require[d]" applying the first-to-file rule and granting an injunction of a single subsequent case where the first case "ha[d] been litigated for over a year" and the subsequent case was "only in the beginning stages"). The federal agencies have already filed *four duplicative suits* immediately

15

before summary judgment in this case, and unless the Court intervenes, the federal agencies may soon file up to *19 more duplicative suits* against the remaining Plaintiff States. *See* Martinez-Ochoa, et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (Aug. 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information (tracking the status of the *31 cases* U.S. DOJ has filed against States over its voter roll data demands).

First, it would conserve judicial resources for the Court to enjoin the federal agencies from prosecuting closely related suits under the first-to-file rule rather than to have at least four new district courts across the country simultaneously consider and decide four motions to stay, dismiss, or transfer the Later-Filed Suits. *See Rittman v. Amazon.com, Inc.*, No. C16-1554-JCC, 2024 WL 4253191, at *2 (W.D. Wash. Sep. 20, 2024) (granting injunction where "it would be uneconomical for the parties and the courts to adjudicate similar motions . . . in district courts other than this one"). Second, injunctive relief would reduce the risk of inconsistent rulings on the threshold first-to-file issues, including whether the Later-Filed Suits should be stayed, dismissed, or transferred.

Third, injunctive relief is needed to reduce the risk of inconsistent rulings on the substantive issues in this case, especially because the federal agencies "baldly seek to relitigate past rulings of this Court." *Beauperthuy*, 2012 WL 3757486, at *12. If the federal government is permitted to proceed with the Later-Filed Suits, it is possible that a district court will reach a different answer on a question that this Court has already decided. This heightened risk of inconsistent rulings "demonstrates why the federal policy of comity embodied in the first-to-file rule requires this Court to enjoin [USDA's] further prosecution of out-of-district [suits]." *Id.* at *14. Fourth, as explained above, the federal agencies would not be harmed by injunctive relief because the Court will soon finally resolve all the issues that USDA wants the other courts to decide on summary judgment in this case. *See supra* Argument § I(D).

The Court should therefore grant injunctive relief because it eliminates the risk of inconsistent rulings on both the first-to-file issues and the substantive issues surrounding the legality of USDA's data demands, affords this Court the deference it is due as the first-filed

16

forum without causing any cognizable harm to the federal agencies, and reduces the burden that the federal agencies' duplicative suits impose on the judiciary. *See Beauperthuy*, 2012 WL 3757486, at *13-14 (as a matter of comity, extending injunctive relief to bar prosecution of future subsequently filed cases as well as already pending subsequently filed cases).

**B.      The Injunctive Relief Against USDA Should Apply Equally to USDA's Agents, Attorneys, and Those Acting on USDA's Behalf or in Concert with USDA, Including U.S. DOJ**

Finally, as noted in the accompanying Proposed Order, Plaintiffs request that the Court's injunction bind not only Defendants but that it also explicitly extend to their officers, agents, servants, employees, and attorneys, together with all other entities or persons acting in concert or participation with Defendants. As a practical matter, this means that U.S. DOJ, which is prosecuting the Later-Filed Suits in the name of the United States but on USDA's behalf and in concert with USDA, would be equally enjoined.

"[I]njunctive court orders may 'bind[] the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control.'" *Nat. Res. Def. Council*, 38 F.4th at 57 n.18 (quoting *Regal Knitwear*, 324 U.S. at 14); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992) ("[A] judgment can bind persons not parties to the litigation in question and not subject *in personam* to the jurisdiction of the court if the persons are in privity with parties to the litigation."). The Federal Rules of Civil Procedure codify this principle, providing that injunctions are binding not only on the parties to the action but also "the parties' officers, agents, servants, employees, and attorneys," as well as "other persons who are in active concert or participation with" the parties and their agents. Fed. R. Civ. P. 65(d)(2)(B)-(C); *see Class Plaintiffs*, 955 F.2d at 1280.

Therefore, the fact that U.S. DOJ is prosecuting the Later-Filed Suits in the name of the United States does not prevent this Court's injunction from reaching U.S. DOJ's prosecution of those cases. As explained above, USDA and U.S. DOJ are parties in privity and represent the same interests in all of these actions. *See supra* Argument § I(B). The connections between them in this case go far beyond the fact that they are both federal agencies. U.S. DOJ acknowledges that it is bringing the Later-Filed Suits at USDA's behest, following a formal request from the

17

Secretary of Agriculture. Ky. Compl., ¶¶ 9, 13, 44; Mich. Compl., ¶¶ 9, 13, 84; Minn. Compl., ¶¶ 9, 13, 85; Pa. Compl., ¶¶ 9, 13, 84. And USDA and U.S. DOJ are, through their collaborative efforts in both sets of actions, seeking to enforce the same statutory and regulatory scheme. Indeed, U.S. DOJ is seeking this data specifically *for USDA* and seeks relief requiring Kentucky, Michigan, Minnesota, and Pennsylvania to comply with *USDA's* data requests. Ky. Compl., ¶ 53; Mich. Compl., ¶ 93; Minn. Compl., ¶ 94; Pa. Compl., ¶ 93. Therefore, because U.S. DOJ is acting on behalf of and in concert with USDA in prosecuting the Later-Filed Suits, any injunction enjoining USDA from pursuing the Later-Filed Suits can and must also enjoin U.S. DOJ's actions to prosecute the same suits. *See Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 930 (S.D. Cal. 2020) (clarifying that an injunction against defendant DHS also applied to nonparty U.S. DOJ Executive Office of Immigration Review (EOIR) because "the statutory and regulatory scheme make clear that DHS and EOIR are essential parts of the same enforcement mechanism" of immigration laws), *stay denied*, No. 20-56287, ECF No. 30 (9th Cir. Jan. 14, 2021), *appeal dismissed as moot*, No. 20-56287, ECF No. 94 (9th Cir. Sep. 20, 2022). Any conclusion to the contrary would allow U.S. DOJ to "nullify a decree [against USDA] by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear*, 324 U.S. at 14.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and enjoin USDA and U.S. DOJ from prosecuting their Later-Filed Suits and any additional duplicative suits against Plaintiff States and/or their agencies based on the same or similar demands for SNAP data.

18

Dated: July 10, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
ANDREW Z. EDELSTEIN
ANNA RICH
SEBASTIAN BRADY
WILLIAM BELLAMY
MARIA F. BUXTON
JULIA HEMING SEGAL

*Liam E. O'Connor*
LIAM E. O'CONNOR
DEPUTY ATTORNEY GENERAL
*Attorneys for Plaintiff State of California*

19

| ADDITIONAL COUNSEL FOR PLAINTIFFS | |
|---|---|
| Letitia James<br>Attorney General of New York<br><br>*/s/ Mark Ladov*<br>Mark Ladov<br>Special Counsel<br>Julie Dona<br>Special Counsel<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8240<br>mark.ladov@ag.ny.gov<br>*Attorneys for Plaintiff State of New York* | Kwame Raoul<br>Attorney General of Illinois<br><br>*/s/ Sherief Gaber*<br>Harpreet K. Khera<br>Bureau Chief, Special Litigation<br>Sherief Gaber<br>Assistant Attorney General<br>115 S. LaSalle St., 35th Flr.<br>Chicago, Illinois 60603<br>(773) 590-7127<br>sherief.gaber@ilag.gov<br>*Attorneys for Plaintiff State of Illinois* |
| Kristin Mayes<br>Attorney General of Arizona<br><br>*/s/ Luci D. Davis*<br>Luci D. Davis (AZ No. 035347)<br>Hayleigh S. Crawford (AZ No. 032326)<br>2005 N. Central Ave. Phoenix, AZ 85004<br>(602) 542-3333<br>Luci.Davis@azag.gov<br>Hayleigh.Crawford@azag.gov<br>ACL@azag.gov<br>*Attorneys for Plaintiff State of Arizona* | Philip J. Weiser<br>Attorney General of Colorado<br><br>*/s/ David Moskowitz*<br>David Moskowitz<br>Deputy Solicitor General<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>david.moskowitz@coag.gov<br>*Attorneys for Plaintiff State of Colorado* |
| William Tong<br>Attorney General of Connecticut<br><br>*/s/ Janelle R. Medeiros*<br>Janelle R. Medeiros<br>Special Counsel for Civil Rights<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5020<br>Janelle.Medeiros@ct.gov<br>*Attorneys for Plaintiff State of Connecticut* | Kathleen Jennings<br>Attorney General of Delaware<br><br>*/s/ Vanessa L. Kassab*<br>Ian R. Liston<br>Director of Impact Litigation<br>Vanessa L. Kassab<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br>*Attorneys for Plaintiff State of Delaware* |

20

Brian L. Schwalb
Attorney General for the District of Columbia

/s/ Nicole S. Hill
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

Office of The Governor *ex rel*. Andy Beshear,
in his official capacity as Governor of the
Commonwealth of Kentucky

/s/ S. Travis Mayo
S. Travis Mayo
General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Kentucky Governors'
Office*

Anthony G. Brown
Attorney General of Maryland

/s/ James C. Luh
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

Anne E. Lopez
Attorney General of Hawaiʻi

/s/ Kalikoʻonālani D. Fernandes
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

Aaron M. Frey
Attorney General of Maine

/s/ Brendan Kreckel
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.: 207-626-8800
Fax: 207-287-3145
brendan.kreckel@maine.gov
*Attorneys for Plaintiff State of Maine*

Andrea Joy Campbell
Attorney General of Massachusetts

/s/ Katherine Dirks
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

21

Dana Nessel
Attorney General of Michigan

/s/ Neil Giovanatti
Neil Giovanatti
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
beachb@michigan.gov
Attorneys for Plaintiff State of Michigan

Keith Ellison
Attorney General of Minnesota

/s/ Joseph R. Richie
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
Attorneys for Plaintiff State of Minnesota

Jennifer Davenport
Attorney General of New Jersey

/s/ Kashif T. Chand
Kashif T. Chand (NJ Bar No. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
Attorneys for Plaintiff State of New Jersey

Raúl Torrez
Attorney General of the State of New Mexico

/s/ Steven Prefrement
Steven Perfrement
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
Attorneys for the State of New Mexico

Dan Rayfield
Attorney General of Oregon

/s/ Scott P. Kennedy
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
Attorneys for Plaintiff State of Oregon

Josh Shapiro, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

/s/ Jacob B. Boyer
Jennifer Selber
General Counsel
Jacob B. Boyer
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
Counsel for Governor Josh Shapiro

Plaintiff States' Motion to Enjoin Prosecution of Related Cases (Case No. 3:25-cv-06310-MMC-KAW)

Peter F. Neronha
Attorney General of Rhode Island

/s/ *Madeline R. Becker*
Madeline R. Becker (RI Bar No. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

Nicholas W. Brown
Attorney General of Washington

/s/ *Jennifer K. Chung*
Jennifer K. Chung, WSBA #51583
William Mcginty, WSBA #41868
Julie Moroney, WSBA #59017
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
julie.moroney@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

Joshua L. Kaul
Attorney General of Wisconsin

/s/ *Karla Z. Keckhaver*
Karla Z. Keckhaver
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

Aaron D. Ford
Attorney General of Nevada

/s/ *Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

23