# EXHIBIT 1

**AMENDED TRANSCRIPT**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, District Judge

STATE OF CALIFORNIA, et al.,      )
                                  )
          Plaintiffs,             )
                                  )
vs.                               )   No. C 25-06310-MMC
                                  )
UNITED STATES DEPARTMENT OF       )
AGRICULTURE, et al.,              )
                                  )
          Defendants.             )
_____   )

                           San Francisco, California
                           Wednesday, April 15, 2026


TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
         RECORDING 10:03 - 10:54 = 51 MINUTES

APPEARANCES:

For Plaintiffs:
                           California Department of
                             Justice
                           Government Law Section
                           455 Golden Gate Avenue
                           11th Floor
                           San Francisco, California
                             94102
                    BY:  LIAM E. O'CONNOR, ESQ.




          (APPEARANCES CONTINUED ON NEXT PAGE)


*Echo Reporting, Inc.*

2

For Plaintiffs:

New York State
Office of the Attorney General
28 Liberty Street
23rd Floor
New York, New York 10005
BY:  MARK H. LADOV, ESQ.

For Defendants:

United States Department of
Agriculture
United States Department of
   Justice
1100 L Street, N.W.
Washington, D.C. 20530
BY:  ELIZABETH J. SHAPIRO, ESQ.

United States Department of
   Justice
1100 L Street, N.W.
Room 12018
Washington, D.C. 20005
BY:  BENJAMIN KURLAND, ESQ.

United States Department of
   Justice
Office of the Assistant
   Attorney General, Civilian
   Division
950 Pennsylvania Avenue, N.W.
Room 3632
Washington, D.C. 20530
BY:  TYLER J. BECKER, ESQ.

Transcribed by:

Echo Reporting, Inc
Contracted Court Reporter/
Transcriber
echoreporting@yahoo.com

3

Wednesday, April 15, 2026                              10:03 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Calling Civil Case Number 25-6310, State of California, et al. versus United States Department of Agriculture, et al.

Will counsel please state your appearances, starting with Plaintiffs' counsel.

MR. O'CONNOR (via Zoom):  Yes.  Thank you.  Liam O'Connor, on behalf of Plaintiff, the State of California.

THE COURT:  Thank you.

MR. LADOV (via Zoom):  Good morning, your Honor. Mark Ladov on behalf of the People of the State of New York. And, for your awareness, my colleague Julie Dona, is in the room here as well.

THE COURT:  All right.  Just a moment.

(Pause.)

THE COURT:  Okay.  And I guess we're over to the Defendants.

MR. KURLAND (via Zoom):  Good afternoon, your Honor.  Benjamin Kurland for the United States, and I'm joined in the room on my left with Tyler Becker from the Department of Justice and on my right Brian Mizoguchi from the U.S. Department of Agriculture.

THE COURT:  Who's from the Department of

4

Agriculture again?  It's a little hard to follow.  I don't know.  The sound is not perfect from where you're recording from.

MR. KURLAND:  Brian Mizoguchi.

THE COURT:  How do you spell the last name?

MR. MIZOGUCHI (via Zoom):  M as in Mike Z as in Zebra, O, G as in George, U, C as in Charlie, H as in Harry, I.

THE COURT:  Mizoguchi, is that it?

MR. MIZOGUCHI:  Yes, your Honor.

THE COURT:  All right.  Thank you.  From the Department of Agriculture.  We've had a different person I think every time.

THE COURT:  Okay.

MR. KURLAND:  And Betsy -- or Elizabeth Shapiro is also joining me from the U.S. Department of Justice.

THE COURT:  Okay.  Thank you.

All right.  Why am I having this conference?  Now I'll answer that question.  Not specifically because the Defendant asked for one and the Plaintiff didn't want to have it and, thus, ruling in some way in favor of the Defendant.  Rather, I want to clear some things up about what people are operating under as the assumptions concerning the Court's position regarding whatever disputes you've been having most recently about proposed protocol.

5

The Defendant seems to think that I in some way have approved essentially in advance a protocol that just essentially cuts out 2020 E8 and pastes it in -- into some heading called protocol.

I did not do that.  I inquired at the hearing as to whether that might be a solution, and then I also inquired of the Plaintiff whether that would satisfy them, and at the time it appeared that the Plaintiff was saying it would.

Now, they may have had further concerns about it in retrospect, having thought about it further, what have you.  But I have not preapproved any protocol.  I just want to get that very clear.  So, that's out -- out at the beginning.

I also want to complain about the fact that you didn't give me a chambers copy of the joint status report or the -- I don't know -- 80 some -- whatever number of pages of exhibits that went along with it.  And somebody in my chambers printed it all out apparently on the thought that if it was joint, that we couldn't figure out who to tell to submit chambers copies.  Wrong.  I would simply have ordered you both to do it, and you can pick one, flipping a coin or otherwise, to get it to me.

So, no tabs on this thing.  You know, the Exhibits A through L, I got to print them out, tab it up, figure out what's in there.  Big waste of time, which I'm now just conveying for your information.  Don't do that again.

6

All right.  So, that's where we are at the moment.  I haven't approved everything that the Defendants said or maybe not even some major part of it.  My understanding, just kind of reading between the lines here, is the Plaintiff is concerned that the Defendant under I guess a heading of disclosure to an agency that could help us with enforcing our program would be okay, and then the Plaintiff's afraid that that would in some way allow a disclosure to ICE because people obtaining these benefits aren't supposed to be, you know, here unlawfully.

I was looking at the most recent proposal from the Defendant that I think is Exhibit J to this massive submission you gave me in connection with the joint statement, and it says in item (a) -- 1.4(a)(iii), being three little i's:

"Section 2020(e)(8)(a) does not provide USDA with authority to respond to a request from DHS for data for purposes of civil immigration enforcement."

That may be something to reassure the Plaintiff that at some earlier time the Defendant seemed to be taking the position in one document or another that -- I'm not sure where it was now -- that if they got a request from an agency for help, any kind of agency, they could just give

7

the material at that request, if it was lawful for the other side to request it.  And, so, this seems to be, Okay.  We understand.  We wouldn't do that, if you're worried about that.

But, it -- it looks like 1.4(a) -- I guess 1.4(a), just the first heading of it, that says that the Plaintiff essentially -- and they're reading it as shall not directly or indirectly basically -- use or disclose data received under the protocol except under 2020(a)(3) and (e)(8).

Okay.  And then let me go on.  And one more in read -- and then says "or any other applicable law."

Now, that's not the language of the statute essentially.  So, let me just go to the statute for a second.  Oh, where is it.  There we go.

Question is whether the statute is helping.  All right. (e)(8)(A), if we go to that, allows the agency to permit disclosure to persons directly connected with the administration or enforcement of the provisions of this chapter, the regulations under it and then federal assistant programs or federally assisted state programs.

So, if the -- obviously, the Secretary of the Department, Mr. Mizoguchi's, you know, boss so to speak, wanted the information.  Then it suggests that it could be passed on to the Secretary of the Department of Agriculture for the purpose of assisting the Department of Agriculture

8

in making sure that there were no unlawful, you know, residents here who are getting benefits.

And I don't know how one gets around, you know, that sort of open avenue in the discussion.  So -- or how you would describe it in a protocol if, in fact, the Plaintiff is afraid that's going to happen, and if the Defendant feels it's legitimate.  And then the Court would have to decide the matter one way or the other.

So, if anybody wants to weigh in on this, it's fine.  Are you actually in a room with a podium or is that just fake --

MR. KURLAND:  I am.  It's -- it's me.  I'm a little short, but, yeah, your Honor, I'm more than happy to -- to address this point, and I think this is exactly what we were requesting when we requested the status hearing is we think that our protocol as it is put together, substantially, if not completely, addresses all of Plaintiffs' concerns and that if there's some tweaks we can make to make this work, we're happy to do it and -- and explore those options because, you know, we're here to negotiate in good faith.

And, you know, just to address your point is that we thought by importing this language and importing directly the words of Section (e)(8)(A) into the protocol and committing to following those words, that we would be in

9

compliance with the Act in a way that you had previously determined in --

THE COURT:  All right.

MR. KURLAND:  -- an injunction --

THE COURT:  That's what you thought?  I'm disabusing you of that notion now, all right.  I did not say if you did this it would all be fine.  What I understood is that the Plaintiffs thought it would be acceptable, and if the Plaintiff now doesn't think it's acceptable, I can't force them to accept it.

So, that's where you are, and I want to make that clear again, and I don't want to hear you're arguing the way that you believe that this protocol complies with the law because then I have to hear from the Plaintiff about why they think it doesn't, and I'm not here to hear argument at this time. That can be reserved for any motion anybody makes on the merits.

So, I perceive that this is where the Plaintiff is concerned and why there remains an avenue of disclosure that the don't want to happen, and whether that avenue should or shouldn't be legally blockaded is another question.

So, let me go to Plaintiffs' counsel, whoever's going to speak -- if it's going to be Mr. O'Connor, that's fine, and/or Mr. Ladov -- on the -- where you see the problem to lie at this point.

10

MR. O'CONNOR:  Yes, your Honor.  And I think you summarized our concerns, which is that we are still concerned that the parties don't have a meeting of the minds as to what Section 2020(e)(8) does and does not permit.  We tried to lay out our concerns in a relatively long letter that we filed yesterday.  I'm not sure if the Court had a chance to review it, but we would hope that our letter could continue our discussions with Defendants to see if we can, in fact, reach an agreed upon protocol.

THE COURT:  Okay.  The real question I think is should we be setting any schedule for -- let me take a look at the letter for a minute.  This is an Exhibit A to your response to the Defendants' March 31 statement, in other words, their part of the joint statement.  I sort of clarified that for my own purposes on the title.

All right.  So, I think really that the Defendant, no matter how much they'd like to resolve this -- and I have heard from, you know, the various representatives in the Department as you've come in and out of these proceedings, and they always appear to me sincere in wanting to try and resolve it, but I believe there's going to be a point that they simply are not going to be allowed to declare something that you want them to declare, which is they will never turn over any of this information to ICE or DHS.  And if the law gives them a hook, even if it turns out that that could be

11

used for counter -- for purpose -- two different purposes, if you will, in other words, at least on its face that the Department is trying to make sure that there aren't improper recipients, and if they could justify that, they would have to do that, you know, to show why if they at some point do disclose on their own -- nobody asked them for it.  They just decided to give it to them -- whether that would at least on its face run afoul of any particular provision that the law contains.  And then the question would be, Well, and then it has this benefit that maybe the Department of Agriculture doesn't care about but somebody over them does and it turns out to be a benefit to the Immigration authorities because they now have this information and can run it against their data.

I don't know if it can be prevented or not, and I'm certainly happy to hear all of this in the context of a -- a motion.  But I'm concerned that at least as of now, that it doesn't look like you are going to get to a workable protocol, that at some point, for whatever reason, Agriculture's hands are going to be tied, and they are going to be tied in a way that doesn't satisfy the Plaintiff.  And if that happens, then you've just spent a lot of time trying to accomplish something that maybe is not capable of being accomplished on an agreed upon procedure.  And then the Court will have the hard decision of trying to figure out

12

who -- who has the better position on it.

As far as wanting the record, since this is an APA claim or many of the claims are, that I guess there's an administrative record or some sort, but I don't know what it is. In other words, it's mostly that they've made a demand and then you have responded, Sorry, we don't have to give it to you. Yes, you do. No, we don't. Yes, you do. No, we don't, et cetera, for a while, and then, you know, we're back here now.

And maybe there's something in -- because the administrative record, does it include any kind of off -- off the record things that happened in the Agency or just the public record? Yo know, you have a number of claims that I haven't found in issuing the injunction were necessarily shown to be likely to prevail. I mean, you might. It isn't like they're dead. It's just not a strong enough showing of probability.

Is that what you want the administrative record for? You got comments? You didn't care about them, that kind of thing or what?

MR. O'CONNOR: Yes, your Honor. I think we want the administrative record in part because we'd like to continue to drive this case towards a final judgment. At this point, we think the most expeditious way to resolve the case is if we could get our proposed case schedule entered.

13

Then we could get the administrative record.  To the extent we have disputes with Defendants over the completeness of the record, we can try to work those out, and if we're unable to, we can visit you again.

But, ultimately, I think the goal is that we can continue to move this case towards summary judgment.  At the same time, we can continue to try to reach an agreed upon protocol with Defendants.  And if it turns out that we're at an impasse and are unable to reach an agreed upon protocol, that we'd be able to present whatever outstanding dispute the parties have over the protocol in -- in the summary judgment motion.  And then the Court could rule on that with a full complete administrative record.

THE COURT:  Let me check with New York counsel, Mr. Ladov.  Anything you want to add or change with respect to what Mr. O'Connor just stated?

MR. LADOV:  No.  I think that Mr. O'Connor stated it exactly right, and certainly is speaking for the Plaintiffs on this.

THE COURT:  Okay.  So, what we're really looking at then, Mr. Kurland, et al, is I think a schedule -- and it doesn't have to be immediately -- on what the Plaintiff -- first of all, dates have already gone by.  I mean, we're not looking at the exact schedule that the Plaintiff has proposed.  I would have no problem with you meeting and

14

conferring and giving me a proposed joint -- I mean, something really joint, not called joint with Plaintiffs' position and Defendants' position, but, you know, a joint schedule that work -- you know, I don't know what you folks are doing.  Summer will be coming up.  Are people going away.  Do you have conflicts with, you know, your calendars, anything like that that may bear on, you know, just sitting down and talking about something that's workable, how long the Government thinks it would take to put an administrative record together?  Are you really going to fight over what goes into it?  Yeah, stuff.

Okay.  Let's see --

MR. KURLAND:  Your Honor --

THE COURT:  -- back to the Defendant.

MR. KURLAND:  Sorry, your Honor.  I apologize.  I thought you had --

THE COURT:  Oh, no.  That's fine.  Go ahead.

MR. KURLAND:  No.  I -- I'll just note for ourselves that Plaintiffs' letter to us from the gate indicated that the believe the administrative record would be due two days from now.  We don't read that to be how the Local Rules are put together.  So --

THE COURT:  They --

MR. KURLAND:  Pardon?

THE COURT:  Sorry.  I mean, that's okay.  As I

15

said, you don't -- I think you just may be -- unless you can say right now everything else he agreed to is fine except for we can't get it to you by a certain date, then relative to that date, all the dates they want is fine or do you want to talk to Mr. O'Connor about it and Mr. Ladov?

MR. KURLAND:  I -- I -- sorry, your Honor.  I just -- I merely meant the fact that like we're happy to negotiate or attempt to negotiate a schedule with Plaintiffs but that they ostensibly are prepared to believe that we have pleadings due this Friday, which we disagree that argues.  So, as long as the Court doesn't expect or doesn't have a deadline for us to submit, for example, and answer administrative record by Friday, we're happy to go back and do that, but there just wouldn't be time for -- for us to do that.

THE COURT:  No.  that -- that's fine.  What I would say is that I would put the matter over for you to meet and confer regarding a schedule, a briefing schedule and hearing, and don't, you know, give yourself months and give me one day after the reply or whatever.  Okay.  But, other than that, okay, to just agree on whatever works best, you know, under the circumstances, and I'll give you a deadline to submit that to me so somebody -- do you want a couple of weeks?  You know, what do you want here?

MR. O'CONNOR:  Your Honor, just to address Mr.

16

Kurland's concern, I think we're perfectly amenable to pushing the proposed deadlines we proposed by a week or two if that would accommodate Defendants.  I think, otherwise, that schedule is in pretty good shape, and hopefully we could just sort of shift everything a couple of weeks over. That might not take very long to work out with Defendants if that sounds good to them.  But if they have other concerns, maybe we'd need a little more time to work it out.

THE COURT:  And you want 10 --

(Simultaneous speaking.)

THE COURT:  -- days?  I don't care.

MR. KURLAND:  Yeah, your Honor, I'll just briefly state because this is obviously something we can discuss with -- with Plaintiffs in proposing a schedule, but that is premature really to be discussing an exact schedule for summary judgment moment because Plaintiffs have announced that they are intending to fund discovery disputes.  So, we would have to work that out before being able to set a specific schedule for summary judgment because we may be briefing discovery disputes.

THE COURT:  Oh, all right.  Now, nothing's been filed yet, right?

MR. KURLAND:  We filed a letter.

THE COURT:  All right.  And what did it say essentially?

17

MR. KURLAND:  We interpreted it to be that no matter what administrative record we are yet to file, they are going to find some sort of error with it.

THE COURT:  All right.  Not complete enough in their view?

MR. KURLAND:  Either not complete enough in their view that it's -- that they would like to supplement the record or seek extra record discovery.  A lot of the things that they are asking for in that letter don't qualify as administrative record materials.  But, again, we haven't even submitted our administrative record.  So, we would say it's premature to finding discovery dispute, but that, you know, we would have to build in time for a discovery dispute before summary judgment date.

THE COURT:  All right.  Well, my thought on that is -- have you been referred yet to a discovery magistrate judge or not?

MR. KURLAND:  No.

THE COURT:  No.  I didn't think so.  So, per my, you know, standing orders, with very rare exception, not applicable here as far as I can tell.

I'm going to refer whatever dispute is called to my attention, not to a named Magistrate Judge but to just generically, and then it goes off their wheel to a Magistrate Judge to resolve.  And usually they -- they have

18

a different procedure than a motion, but if it's a motion to compel, for example, coming from the Plaintiffs' side, then they would file that, and then it would probably get referred to a Magistrate Judge, and from that point, you'd have to build in, you know, some time.

Now, rather than just slap something into the record by a deadline provided for putting something in the record, Mr Kurland, I think what you ought to do is tell the Plaintiff or give them off the record what you consider the administrative record to be.  If they look at it and say, Oh, wait a minute.  It's not complete or would you guys go along with adding X, Y, and Z and you say yes or no to that and you end up either with a resolution as to the administrative record or you don't.  And if you don't, then there's going to have to be a motion filed if the Plaintiff -- assuming the Plaintiff thinks it's not complete, then -- or is subject to supplement for some reason that you don't agree with Mr. Kurland, then it's going to have a delay until we get an agreed upon record.

So, my suggestion is we put it over not at the outset for a schedule -- a briefing schedule on a motion for summary judgment but a date for you to determine whether there is or is not a -- a dispute as to the content of the administrative record.  And once -- and if the answer is there's no dispute within whatever, a week or 10 days or two

19

weeks of that date, you then either file a -- you file a schedule or say we'd like to push it back for a determination after we get a ruling from the MJ or whatever that's going to be.  In other words, but you give me something, either an agreed upon schedule knowing you're going to have to deal with the discovery matter or request to have further time to submit and agree to --

MR. KURLAND:  Your Honor, that's --

THE COURT:  -- that schedule.

MR. KURLAND:  I'm sorry.  If I may, that was precisely what I was suggesting is that any discovery disputes and -- and process could take time for -- you know, move things forward for specific summary judgment.

I'll also add that along with our answer, we're seek -- we're going to file a -- we will file a counterclaim and relief of our own -- affirmative relief of our own so that any schedule would likely have to take into account our own affirmative filings.

THE COURT:  Okay.  In other words, right now, the case really isn't at issue to the extent that you have an amended complaint but no response to it.

MR. KURLAND:  Exactly, your Honor.  We have not filed an answer yet.  We also will be seeking affirmative relief as well in the case as well as --

(Simultaneous speaking.)

20

THE COURT: Okay. So, let me ask you a question. Are you asking me then to stay your deadline to respond to the amended complaint to a particular either specific date or relative date, you know, tied to something?

MR. KURLAND: I -- I understood our previous conversation to be that you would say the -- say whatever the deadline is currently even though we have date about when it would be due, until we could set a time with Plaintiffs to say this is when our answer and counterclaim would be due and this is when our motion would be due. This is when our administrative record would be due. And if we can't agree on those dates, then we would come back to you to -- in another JSR with a JSR due in however many days or weeks, probably closer to days than weeks, but that there would be no deadlines for like example this Friday to produce an answer or counterclaim, affirmative motion and administrative record.

THE COURT: The short form of that statement is that you understood that the deadline to respond to the amended complaint would be wrapped up in whatever stipulation you would be giving me as to a schedule?

MR. KURLAND: Yes, your Honor.

THE COURT: Fine.

MR. O'CONNOR: Your Honor, if I may?

THE COURT: Yes.

MR. O'CONNOR:  This is the first that we're hearing of a potential counterclaim.  Our understanding to date was that the parties were interested in trying to expeditiously resolve this matter and get it to a final judgment.

The Court's prior orders asked us to meet and confer about the case schedule, and we, you know, proposed our schedule, and that schedule does build in time for resolution of discovery disputes and then to get to summary judgment.

So, I think it sounds like we will need to meet and confer on a case schedule that I guess accounts for this counterclaim.  But just on the date of when Defendants must respond to our amended complaint, I think that's set forth in the Federal Rules of Civil Procedure in 15(a)(3).  So, even -- I think the current answer date to respond to our complaint is this Friday, which is 14 days after service so the pleading, but we are amenable to pushing the deadline to produce administrative record for a short amount of time, but I think our hope is that we can continue to move this case forward and that we can try to drive it towards a final judgment so that we don't need to keep coming back and bothering you with rounds of preliminary motions practice.

THE COURT:  Well, let's go back for a minute.  Is your position then they should get no extra time to file an

22

answer because it's really not dependent on anything else that's going on or what was -- what was the import of your last comment?

MR. O'CONNOR:  I -- to be honest, your Honor, I think we -- I was just surprised to hear that we're going to see a counterclaim.  I thought the parties were working to get this case to a final judgment.  I can confer with our co-counsel, and we can get back to you and the defense counsel on a proposed case schedule.  But I think our primary goal is that we would like to get an administrative record soon for a second amended complaint, and we'll need to confer about additional case deadlines once we see the counterclaim.

THE COURT:  All right.  So, you would say that there's no need then to delay by any significant length the answer date, answer/counterclaim date?

MR. O'CONNOR:  I'm not aware of any -- any need for a significant delay for Defendants to respond.  We shared our proposed amended complaint before we filed it, and they stipulated to us filing it.  So, I would hope we could keep moving this matter forward.

THE COURT:  Yeah.  What does that boil down to?

(Simultaneous speaking.)

MR. KURLAND:  -- your Honor --

THE COURT:  Are you asking me to set a date now

23

for them to respond, and we can play whether it's answer, motion to dismiss, counterclaim, whatever?

MR. O'CONNOR:  I think the most important date, your Honor, is a date for them to produce an administrative record and response to our second amended complaint.  I think we can work with them to try to come to agreement on other dates for the case schedule.

THE COURT:  All right.  So, you're not asking me at the moment to set a deadline for them to respond?

MR. O'CONNOR:  Well, if the production of an administrative record is part of their response, then yes.  But as far as the deadline for them to file an answer and a counterclaim, I think we're most concerned with getting the administrative record first.

THE COURT:  Fine.  Okay.  Now, let me get back to you, Mr. Kurland.

MR. KURLAND:  All right.

THE COURT:  All right.  Now, in this counterclaim, is this just going to be the flip side of essentially you're trying to cut off -- you know, in other words, the Plaintiff was asking not just for dec relief of we don't have to give it to you but you can't, you know, cut off our benefits?  That's their claim.  Would your counterclaim be you have to give me the data?

MR. KURLAND:  Precisely --

24

THE COURT:  Or --

MR. KURLAND:  -- your Honor.

THE COURT:  -- something else that you say they've done wrong?

MR. KURLAND:  No.  Precisely, your Honor, it's the -- the general grounds of it -- of the counterclaim is that (a)(3) is a mandatory provision that requires the production of records, and --

THE COURT:  Okay.

MR. KURLAND:  -- they have --

THE COURT:  That's what --

MR. KURLAND:  -- had --

THE COURT:  -- they just said.

(Simultaneous speaking.)

THE COURT:  -- answer is yes, you --

MR. KURLAND:  Yes.

THE COURT:  -- your counterclaim is -- their counterclaim -- their --

(Simultaneous speaking.)

THE COURT:  -- claim and we don't have to give it to you, and you can't punish us for not doing it, and your counterclaim is, You have to give it to us, and if you don't give it to us, we're entitled to do whatever the law says we can do.

MR. KURLAND:  Yes, your Honor.  I was affirming

25

your answer with more words which was not helpful.

THE COURT:  Okay.  Easy to say yes.

All right.  So, if -- if that's it, there's -- it's no surprise.  It is essentially the same issue.  Just put in the opposite direction.  And, so -- in case there's any question about it.  It doesn't sound like they've got some whole other thing where some new law's going to come in, And, by the way, and then there's this other law that you're in violation of.  I think we're -- we're just looking at the case as it stands.

And, of course, as long as the Court's order remains in place, the Plaintiffs are not suffering any harm.  So, in the -- in the sense of this rush to get a final judgment, it's not like something is going to happen in the interim that is going to change to the Plaintiffs' detriment.  So, I think, you know, everybody should just kind of slow down a little, catch your breath.  Yes, we'd all like to get this case off our respective desk.  Unfortunately, that is not going to happen immediately.  Okay.

And, so, I'm going to set two deadlines, one for you to determine whether there is a dispute over the sufficiency or the -- over the -- what is encompassed, you know, a dispute over what is encompassed in the administrative record.

All right.  So, Ms. Geiger, you're somewhere there behind a big seal or something.  Just so that -- in doing

26

your minutes, the first deadline will be for the parties to determine whether there is a dispute as to what the administrative record encompasses.  Okay.

Now, for that, Counsel, I want to get just a date proposed by Mr. O'Connor, and if I don't hear any, you know, demurrer by Mr. Ladov, that's the Plaintiffs' side, and then I want to hear from Mr. Kurland and his crew here.

MR. O'CONNOR:  Sorry, your Honor.  I think that that date would be determined in part based upon when Defendants will produce the administrative record for the second amended complaint so we can ensure that we first have their production in the record, and then we can let you know --

THE COURT:  Okay.

MR. O'CONNOR:  -- whether the --

THE COURT:  Good point.  All right.  Good point.

All right.  Mr. Kurland, propose a date by which you could give the Plaintiff what you think is what the administrative record contains.  This is all -- you know, this is not a filing in court, just -- because I'm not going to resolve whether you're right, wrong or otherwise.  I just want you to give it to him.  He'll then say yes, no, or here's a proposal to add or do something, and then you'll look at that and say, yes, no.  And then at that point you'll see where you have a real dispute.

27

MR. KURLAND:  Your Honor, I would propose two weeks.  We could give them, you know, a table of what we intend to include.  Much of the material is probably stuff they've already seen before.  And then as long as we can get to some sort of agreement or if they have specific --

THE COURT:  Just tell me a date.  Mr. Kurland, you go all over the place here.

(Simultaneous speaking.)

THE COURT:  Just tell me.  Think about it.  Talk to, you know, the other people at your table if you need to.  I need a date that you think would be reasonable for you to give to Plaintiffs' counsel what you think the administrative record is.

MR. KURLAND:  Counsel just handed me a date circled of May 1.  So, that would be our proposal.

THE COURT:  All right.  That's not that far off.  Can you live with that, Mr. O'Connor?

MR. O'CONNOR:  Yes, your Honor.

THE COURT:  Mr. Ladov?

MR. LADOV:  Yes.

THE COURT:  All right.  So, backing up a little bit then, the first date you would have, Ms. Geiger, is the -- the deadline if you will or the date by which Defendant is to provide to Plaintiff's counsel what Defendant states is the administrative record.  Okay.

28

     Now, from that point on, do you want to build in any Plaintiff gets back to Defendant or do you -- how do you want to deal with it?  It may be a little bit of, I don't know, horse trading back and forth or at least discussion. So, maybe we just say, what, you may take a week to go back and forth on that one way or the other, again, just off the record, though?

          MR. O'CONNOR:  Perhaps a couple of weeks, your Honor.

          THE COURT:  Couple of weeks.  Okay.  And then -- then that date is the date by which I would think that you would then know whether you have an actual dispute as to the record.  Does it give you enough time or do you want to put any more time into it?  There's going to be a deadline to inform the Court as to whether there's a dispute, and then included within that, a proposed schedule in light of the dispute or a request to put the matter over until you know more.

          MR. O'CONNOR:  I think that makes sense, your Honor.  But if I could defer to Mr. Ladov who's been the lead for us on these issues.

          THE COURT:  Oh, okay.

          MR. LADOV:  Sure.  No, I -- I think that that's reasonable, your Honor.  That would give us until May 15th to meet and confer, and then we could come back to you by

29

that date.

THE COURT:  That date would be --

(Simultaneous speaking.)

MR. LADOV:  -- schedule --

THE COURT:  -- which you don't need any more days on top of the 15th?

MR. LADOV:  I think that's right, and we can let you know on May 15th if we --

THE COURT:  Okay.  Mr. Kurland, does that work for you and your crew?

(Pause.)

THE COURT:  Yes, no?

MR. KURLAND:  Yes, your Honor.

THE COURT:  Okay.  One word.  Those are the choices.  Not yes, no, other.

All right.  So, then, Ms. Geiger, for your minutes then, the next deadline would be the date for counsel to submit a joint statement advising the Court as to whether there's a dispute as to the content of the administrative record and then either to give me a proposed briefing -- and then either to provide a proposed briefing schedule on response to the -- I'm sorry -- a proposed schedule as to the response to the amended complaint and the briefing on -- is it going to be then kind of counter-motions for summary judgment or, you know, cross-motions essentially for summary

30

judgment?

MR. O'CONNOR:  Yes, your Honor.  I believe the Local Rules provide for cross-motions in APA cases like this.

THE COURT:  Okay.  All right.  So, then, Ms. Geiger, just as kind of a preliminary trying to put your minutes together, it would be then a proposed -- let's see -- joint proposed deadline for Defendants' response to the amended complaint and briefing schedule on cross-motions for summary judgment.

Now -- and then that would be one.  And then or, alternatively, a request to extend the deadline to provide one or both of those schedules or -- yeah -- to the Court.

So, it may be you agree that, Okay, we -- even with this dispute, we can get, you know, some response to the complaint, but we're going to have to push back giving you a briefing schedule till we know what the Magistrate Judge is going to do or how this is going to work out.

All this could be done later, but if we could get something in place now, it may save you having to do, you know, interstitial kind of finding.  And if these don't work, you can give me a joint request to change them.  All right.  They're not fixed in stone if something affects them that you both think affects it.  I'm hoping I don't get unilateral disputed requests to do stuff regarding the

31

schedule.

All right.  So, yeah, Mr. O'Connor?

MR. O'CONNOR:  Sorry, your Honor.  I just wanted to mention that it sounds like this counterclaim is essentially just duplicative and would just be the same claim that we brought in --

THE COURT:  Um-hmm.

MR. O'CONNOR:  -- in Embers (phonetic).  So, I assume that the administrative record and the record for that claim would be the same, but it's a little hard for me to predict how that claim might affect the schedule, but we'll, of course, let you know if -- if that claim affects the schedule in any way.

THE COURT:  Well, if you think -- you know, if Mr. Kurland reassures you there's nothing else out there, then maybe it just gets wrapped into your schedule or maybe you just say you -- you just answer and say that, you know, how much time do you need to say that, and you can, you know, convey that thought to Mr. Kurland, whatever your view is. I don't really care.  At some point that's not going to be a hard matter for me to resolve if you can't.

All right.  The other issues are more complex.  Okay. And if you're relying on potential rues to use the material for a ground not really covered by, you know, 2020(e)(8), you're going to need some pretty good evidence on that, all

32

right.  I just, you know, want to put that out there because that's been a concern all along that there have been instances that have put you either on notice or at least made you concerned about how things might go.  And, so, you know, summary judgment's based on evidence, not just on the face of the complaint.  So, you'll be marshaling whatever you're going to do in that regard for both of you, both of you.

All right.  Okay.  So --

MR. LADOV:  Your Honor?  Sorry.  Can I ask one clarifying question?

For the May 1st deadline, I think we just wanted to confirm that Defendants would be producing not just a table of contents for their proposed AR but that they would be producing any documents that we don't have already.  I just wanted to make sure of that.

THE COURT:  Just, you know, say, Here is the record.  And if you say, We don't really have to copy all this stuff again that you already have, then say, It's what you've got plus, here.  Okay.  And give it to them rather than describe it.  All right.  Just as if you were filing it but you're not filing it.  You're just giving it to him saying this is what we would file and then he can say, It's not good enough.  All right.  What's wrong with it?  Blah, blah, blah.  Okay.  We don't agree.  We think it's fine the

33

way it is or, Okay.  We can modify it a bit.  Well, that's -- no.

Okay.  Then we get to wherever we are.  It will probably end with a no, but just in case, I'm thinking optimistically, you know, because -- I know all of you would like to get this resolved if you can without an order for a variety of reasons on both sides.  If you can do that, I'm all for it.  Otherwise, as you know, you know where to find me.

Okay.  Now, anything further from either counsel?  On behalf of the Plaintiffs?

MR. O'CONNOR:  I have nothing, your Honor.

MR. LADOV:  No, your Honor.

THE COURT:  Okay.  How about over here on the Defense side?

MR. KURLAND:  Yes, your Honor.  I -- I just wanted to confirm that the expectation is that the parties will meet and confer about an answer deadline and counterclaim deadline and any affirmative motion deadline as well because you haven't set a specific date for a JSR regarding those things.

THE COURT:  Wait a minute.  I think it's pretty clear that you're meeting and conferring about a response to the -- the new pleading, the new operative complaint, which is pretty much the old operative complaint with a lot more

34

just detail thrown in.  But what -- what was the additional kind of motion?  I mean, were you planning on moving to dismiss?  What -- what -- you know --

(Simultaneous speaking.)

THE COURT:  -- what's the idea there?

MR. KURLAND:  Sorry.  Apologies.  I was contemplating we are thinking about moving to dissolve the second preliminary injunction and issue a preliminary injunction of our own, which we could brief along side of the AR separately if --

THE COURT:  Well isn't -- okay.  I'm sorry.  I didn't mean to interrupt you, but isn't that really what the summary judgment motions are going to be all about?  I mean, it sounds like the same issue, you know, just to say, Okay, you've got your injunction.  Now we're going to ask for our injunction that mandates you to give us the information and the -- you know, if the -- if you don't give it, then our rules say we have to yank your benefit, et cetera.  I think it's just spinning your wheels because it's just one more vehicle.  You already have a vehicle.  You know, how many -- how many different ways to you need to put the same issue before the Court?  It just seems -- if you are bound and determined or you feel that someone is going to criticize you for not filing the motion, advise Plaintiffs' counsel, and see if you can find a way that that can be heard in

35

conjunction with the summary judgment.  Okay.  But --

MR. KURLAND:  Okay, your Honor.

THE COURT:  -- I'm not going to dissolve whatever's there without finding that there is a current situation that makes it different than at the time that I issued, you know, the injunctive relief, and you -- there's already going to be a vehicle to put that in front of me. So, you know, I -- yeah.  I mean, you'll just be doing extra work to no productive end.

Okay.  But if -- you may want to feel you have to put something on file.  If you do, maybe you can file it but not have to have it heard on separate briefing with -- from what you're going to be briefing.

Anyway.  I don't know.

MR. KURLAND:  I'm happy to explain the thinking, but if you want to move on, I'm happy to as well.

THE COURT:  Yeah, I think I want to move on.  If you --

MR. KURLAND:  Okay.

THE COURT:  If you want to have a whole other motion and I get it and I think it's the same as the other, I'll put it over.  All right.  Nothing makes me hear anything at any particular schedule.

Okie doke.  Now, where are we?  We have, I don't know, clarified the record a bit and got a schedule of sorts, and

36

I -- that maybe is all we can do.

So, any last words before -- my understanding is that the Plaintiffs still don't have anything further they ant to say, and the Defendant doesn't either.  Is that correct?

MR. KURLAND:  Yes, your Honor.  We will do our best.

THE COURT:  Fine.  All right.  I'm giving Ms. Geiger the last word.

THE CLERK:  Court is in recess.

(Proceedings adjourned at 10:54 a.m.)

37

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Saturday, April 18, 2026

*Echo Reporting, Inc.*