# EXHIBIT 2

 **Food and Nutrition Service**

U.S. DEPARTMENT OF AGRICULTURE

May 15, 2026

Jennifer Troia
California Department of Social Services
744 P St
Sacramento, CA 95814

Dear Jennifer,

Pursuant to 7 U.S.C. § 2020(a)(3), the United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), directs that your State provide to FNS the Supplemental Nutrition Assistance Program (SNAP) Eligibility Data Elements for the period of January 1, 2020, to present, listed in Attachment A to this letter. The data will be used to ensure compliance with the requirements of the Food and Nutrition Act of 2008, as amended[1] (FNA), and it will be used only in ways permissible under the FNA.

The Federal Government provides your State with 100 percent of the funds for SNAP benefits and reimburses 50 percent of the State expenses associated with administering SNAP. This past fiscal year, USDA provided California with $7,024,415,773 for benefits and $809,835,235 in reimbursements for State administrative expenses. This data initiative protects these vast sums of taxpayer dollars from errors, fraud, waste and abuse. Because your State already possesses and is familiar with this data, USDA directs that your State produce the data to FNS within 21 days of the date of this letter. Based on FNS' experience with all complying States, California can realistically produce this data within one to three weeks.

FNS made two different requests for this data, on May 6, 2025 (First Data Request), and then on November 24, 2025 (Second Data Request). This request (Third Data Request) supersedes FNS' First and Second Data Requests, which are hereby withdrawn.

USDA is conducting an inspection and audit of SNAP to ensure that it is being conducted in full compliance with the law and to identify program errors, fraud, waste and abuse. This data request is necessary for FNS to carry out its statutory obligations, and FNS' subsequent use and disclosure of this information will be strictly limited to that permitted by law. FNS has, in addition, considered the following bases for this request:

1. **Federal statute mandates that States produce the data FNS requests to inspect, audit, administer, and enforce SNAP.** Congress mandated that States provide the data they collect to USDA pursuant to 7 U.S.C. § 2020(a)(3). In *California, et al v. USDA, et al*, 3:25-cv-06310 (N.D. Calif., July 28, 2025), the Court acknowledged that the plain language of the FNA at 7 U.S.C. § 2020(a)(3) entitles USDA to obtain all the requested records:

---

[1] *See* 7 U.S.C. §§ 2011-2036.

Congress, in the 'Records' section of § 2020, did use clear, ***mandatory*** language, specifically 'shall … be made available for inspection and audit,' thereby ***giving USDA the right to obtain***, subject to data and security protocols, all records necessary to determine whether the program is being conducted in accordance with the SNAP Act. See 7 U.S.C. § 2020(a)(3)(B).[2]

2. **Evidence of fraud and other intentional noncompliance by State SNAP Agencies support this data request.** Evidence of intentional noncompliance by certain States warrants an audit of State practice through requesting these records. Representative examples of such issues with the State administration and enforcement of SNAP within Plaintiff States include, but are not limited to:

- In June 2021, via a Quality Control Integrity Management Evaluation Report, FNS formally notified **New York** that it "has not provided Federal access to all State SNAP information systems as required per regulation."[3] FNS notified New York that this violated Section 4013(a) of the Agriculture Improvement Act of 2018 and 7 CFR § 275.2(d) and ran afoul of QC Policy Memorandum 17-01. FNS also provided the required corrective action:

  > The State must provide Federal access to all State QC records for QC review. The State QC Unit has agreed to advocate for approval with State Agency leadership. Per Federal regulations, the State must take steps to provide FNS with their plan to provide access to all State SNAP records; and to provide those records for both State and Federal QC reviews for SNAP eligibility determinations.[4]

  Four years later, in its May 2025 semi-annual update to its corrective actions, New York informed FNS that FNS reviewer access could be provided by "Q3 2028." In other words, New York has never been in compliance with this statutory and regulatory requirement, and it estimates it will take a decade from the passage of the statute for it to comply.

- In **California**, a former Madera County eligibility worker pleaded guilty to aggravated identity theft for stealing identities and fraudulently obtaining SNAP benefits in their names.[5] According to the Department of Justice, "between July 2022 and June 2025, [the employee] improperly used county databases to which

---

[2] *California,* 3:25-cv-06310, ECF No. 106 at 15 (emphasis added). Specifically, 7 U.S.C. § 2020(a)(3)(B) requires that "***such records as may be necessary*** to determine whether the program is being conducted in compliance with this [SNAP Act] (including regulations issued under this [SNAP Act])]" "**shall be made available**" to USDA (emphasis added).

[3] *New York Supplemental Nutrition Assistance Program, Quality Control Integrity Management Evaluation Report*, USDA FNS (June 2021) at 14.

[4] *Id.*

[5] *See Former Madera County Welfare Benefits Employee Pleads Guilty to Stealing Identities and Benefits in Years-Long Scheme*, United States Attorney's Office Eastern District of California (Jan. 20, 2026), https://www.justice.gov/usao-edca/pr/former-madera-county-welfare-benefits-employee-pleads-guilty-stealing-identities-and.

she had access through her job to obtain identifying information for individuals who either were not United States citizens, were elderly, or were deceased. She then secretly approved these individuals to receive or continue receiving CalFresh benefits, printed EBT cards in their names with the benefits deposited thereon and spent the money on herself and her family members."[6]

- In January 2026, local news outlets in **Maryland** began covering whistleblower allegations that two senior officials within Maryland's Department of Human Services plotted to leave "correctable [payment] errors as uncorrected" to intentionally maintain a high payment error rate.[7] At the time of these reports, Maryland was in its third consecutive year of exceedingly high payment error rates. Maryland's most recent payment error rate was 13.64% for Federal Fiscal Year (FFY) 2024,[8] for which it was assessed a liability amount of $11,370,128.00. In FFY 2023, its rate was 18.98%,[9] for which it was assessed a liability amount of $16,587,692.00.

- In a recorded training for its SNAP eligibility workers, **Minnesota**'s SNAP Program Manager admitted that "fraud has never been a big focus for me" while also acknowledging that fraud "[e]xists in government from top to bottom."[10] The training instructed State officials responsible for SNAP eligibility determinations and fraud referrals to consider "why" someone has violated SNAP.[11] Minnesota urged its SNAP eligibility workers to dig for ways to avoid adverse outcomes, disparaging as "punishment" income limits on eligibility for receiving public assistance.[12]

3. **A nationwide record of errors, fraud, and other failures by States, including yours, to administer and enforce SNAP supports this request**. FNS through its oversight of SNAP, has observed widespread errors across the States' administration of SNAP, which warrants inspecting SNAP data. Representative examples of such issues with the State administration and enforcement of SNAP within Plaintiff States include, but are not limited to:

---

[6] *Id.*

[7] *See* Brooke Conrad, *'Wrong and Corrupt': Whistleblowers allege Md. Scheme to avoid federal SNAP penalties*, WBFF (Jan. 9, 2026, 10:01 PM), https://foxbaltimore.com/spotlight-on-maryland/wrong-and-corrupt-whistleblowers-allege-md-scheme-to-avoid-federal-snap-penalties; Brooke Conrad, Maryland SNAP scheme allegations prompt investigations, WBFF (Jan. 16, 2026, 10:00 PM), https://foxbaltimore.com/spotlight-on-maryland/maryland-snap-scheme-allegations-prompt-investigations.

[8] *SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM: PAYMENT ERROR RATES FISCAL YEAR 2024*, Food and Nutrition Service (June 30, 2025), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-fy24QC-PER.pdf.

[9] *SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM: PAYMENT ERROR RATES FISCAL YEAR 2023*, Food and Nutrition Service (June 28, 2024), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-fy23-qc-payment-error-rate.pdf.

[10] Fraud Prevention and Investigations: The Impact on Children Living In Poverty, Minn. Dep't Hum. Servs. at 47:46-47:57

[11] *Id.* at 51:55-51:57.

[12] *Id.* at 57:00-57:10.

3

- In December 2025, a Minnesota news agency reported that **Minnesota** "repeatedly reported incorrect information about [SNAP] to the federal government."[13] According to the report, MDCYF, which took over SNAP administration in 2024, then continued to rely on the flawed data to respond to questions about SNAP.[14] According to the MDCYF Commissioner, the agency "just learned about that fairly recently, when folks started reaching out to us."[15] In an interview with the news agency, Minnesota's SNAP Commissioner answered questions about the prevalence of fraud in SNAP in Minnesota.[16] She responded that less than 1% of SNAP recipients are found to have committed fraud, with only 143 intentional program violations committed.[17] However, "[t]he department later confirmed that the SNAP issuance data and fraud numbers in the last three USDA State Activity Reports were incorrect."[18]

- For FFYs 2022, 2023, and 2024, Plaintiff States **Arizona**, **California**, **Colorado**, **Connecticut**, **Delaware**, **DC**, **Hawaii**, **Illinois**, **Maine**, **Maryland**, **Massachusetts**, **Michigan**, **Minnesota**, **New Jersey**, **New Mexico**, **New York**, **Ohio**, **Oregon**, **Pennsylvania**, **Rhode Island**, and **Washington** exceeded the 6% tolerance threshold for SNAP payment errors and were required by the FNA to enter into Corrective Action Plans for their Payment Error Rates.[19] **Kentucky** and **Nevada** exceeded the tolerance threshold for two of those three years.[20] Some States had payment error rates so egregious that liability amounts[21] were established—in **Pennsylvania's** case for FFY 2023, in the amount of over $39.5 million.[22]

- In May 2024, FNS notified **Rhode Island** that the overpayments that occurred within the State from September 2016 through December 2019, due to problems with its State eligibility system were the result of a major systemic failure. As such, FNS filed a claim against Rhode Island for overpayments in the amount of $37,343,809.68 and prohibited it from establishing claims against households.

---

[13] Kristen Swanson, *Minnesota Repeatedly Reported Inaccurate data on SNAP to the Federal Government*, KTSP.COM (Dec. 15, 2025), https://kstp.com/kstp-news/top-news/minnesota-repeatedly-reported-inaccurate-data-on-snap-to-the-federal-government/.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *See*, 7 U.S.C. § 2025(c)(1)(C); *Payment Error Rates by Fiscal Year*, USDA FNS, https://www.fns.usda.gov/snap/qc/per.

[20] *Id.*

[21] Liability amounts are required by the FNA when, for the second consecutive year, a State's payment error rate exceeds the national performance measure by 105 percent with a 95 percent statistical certainty. 7 U.S.C. § 2025(c)(1)(C).

[22] *Pa. Dep't of Hum. Serv.*, FNA Docket No. 24-J-0076 (June 2, 2025), https://usda-nad-local1.entellitrak.com/etk-usda-nad-prod-temp/page.request.do?page=page.highlightedFile&id=174132&query_text=FNA&query_text2=&citation=.

- Further, FNS' review of the data it has gathered in the SNAP Information Database so far from States that are complying with FNS' data request, indicates that States with a county-administered program, such as **California**, **Colorado**, **Minnesota**, **New Jersey**, **New York**, **Ohio**, and **Wisconsin**, are more likely to have higher rates of fraud, waste, and abuse than States that do not delegate administration of SNAP to the county level.[23]

4. **A review of the data from the 29 complying States showed at least $3 billion a year of potential fraud, waste, and abuse in those States alone.**[24] By volume, the largest issues identified by USDA were cases with dummy or missing SSNs and intrastate duplication. Records with those issues numbered in the hundreds of thousands. "Dummy SSNs and intrastate duplication together account for more than $1.5 billion in estimated annual risk. Overall, the findings indicate that even small error rates can translate into substantial fiscal impact when applied across large caseloads, underscoring the importance of strengthened data-matching and eligibility verification controls."[25]

The chart[26] below displays the various issues identified by USDA in the available data, the counts of those various issues, the median percentages, and the implicated amount of dollars, annually.

---

[23] *California*, 3:25-cv-06310, ECF No. 89-1 ¶ 8.
[24] USDA SNAP Program Integrity Data Team: Preliminary Report, USDA (May 13, 2026), at 2, https://fns-prod.azureedge.us/sites/default/files/resource-files/usda-snap-programIntegrityDataTeamPreliminary-051326.pdf.
[25] *Id.* at 7.
[26] *Id.*

Table 2: SNAP Eligibility Data Discrepancies for 29 State Agencies – Data as of July 1, 2025

| Issue | Total Count 29 State Agencies | Median State Count[1] | Median State Percent[2] | Annual Implied Dollars[3] |
|---|---|---|---|---|
| Intrastate Duplication | 247,575 | 467 | 0.10% | 558,529,200 |
| Interstate Duplication | 108,670 | 2,057 | 0.50% | 245,159,520 |
| Deceased (per SSA record) | 185,986 | 2,005 | 0.60% | 419,584,416 |
| Dummy SSN | 441,572 | 2,462 | 1.20% | 996,186,432 |
| No SSN Found | 26,333 | 254 | 0.10% | 59,407,248 |
| Disqualified but Active | 4,442 | 56 | 0.03% | 10,021,152 |

[1] Median count of each item for 29 State agencies supplying data.
[2] Median percent of records per state for each item in 29 State agencies supplying data.
[3] Calculated as $2256 per recipient annually ($188 per month).

**Intrastate Duplication**: Recipients with same identifiers (SSN) that show up multiple times within a State.

**Interstate Duplication**: Recipients with same identifiers (SSN) that show up in multiple States.

**Deceased (per SSA Record)**: Based on SSA lookup, the recipient is deceased.

**Dummy SSN**: Recipient has a non-normal SSN (i.e. 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 or 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).

**No SSN Found**: Recipient does not have an SSN in data provided.

**Disqualified but Active**: Recipient has been identified as a disqualified participant but is still active on State agency rolls.

The $3 billion estimate will likely, at a minimum, double when factoring in data from the 22 noncomplying States, as those noncompliant States historically have higher participation numbers and rates,[27] as well as higher percentages of the population receiving SNAP benefits.[28] For example, "[i]n both 2020 and 2022, the **District of Columbia**, **Illinois**, **Massachusetts**, **New Mexico**, **Oregon**, **Pennsylvania**, and **Wisconsin** had significantly higher participation rates *than two-thirds of the States*[ ] [and] **Connecticut**, **Rhode Island**, Vermont, and **Washington** had significantly higher rates *than half of the States*."[29] And, in FFY 2024, "the share of residents receiving SNAP benefits in each State ranged from as high as 21.2 percent in **New Mexico** to as low as 4.8 percent in Utah."[30]

Your State continues to withhold the data that would permit a comprehensive examination of your State's administration of SNAP and stewardship of Federal dollars. USDA recognizes that California contends a data and security protocol under 7 U.S.C. § 2020(a)(3) is required for this initiative. We are therefore offering the attached protocols which were constructed over the

---

[27] *See* Karen Cunnyngham, *Estimates of State Supplemental Nutrition Assistance Program Participation Rates in 2022*, USDA (Feb. 2023).
[28] *See* Jordan W. Jones, *SNAP participation varied across States in fiscal year 2024*, USDA ERS (Aug. 14, 2025).
[29] *Supra* note 25 at 3. (emphasis added)
[30] *Supra* note 26. (emphasis added)

6

course of negotiation with Plaintiff States in *California v. USDA*, and therefore, address all of Plaintiff States' previously elaborated concerns.

**FNS' New Request Is Accompanied By A New Protocol Offer That Aligns Exactly With The Statutory Text of 7 U.S.C. § 2020(a)(3) and 7 U.S.C. § 2020(e)(8)(A)**

Section 2020(a)(3)(b)(i) does not require FNS and the States to enter a data and security protocol prior to the transfer of data requested by FNS. Such an agreement will govern the terms of transfer and storage when agreed to by the States.

Accordingly, FNS offers the States a protocol that aligns exactly with the text of USDA's statutory authority to inspect and audit States' SNAP data and to use and disclose household applicant data for purposes of administering and enforcing the FNA. Attachment B to this letter provides a set of data and security protocols that FNS will observe. This set of protocols, which include FedRAMP High data security, provides a higher level of security than your State has historically accepted in releasing similar data to FNS—including Social Security Numbers and addresses.

FNS will inspect and audit the data provided pursuant to this request, and maintain it under the applicable System Of Records, solely for the purposes of "determin[ing] whether the program is being conducted in compliance with [the Food and Nutrition Act of 2008 (FNA)] (including regulations issued under [the FNA]."[31,32]

We note that the Court in *California* has explicitly recognized that "a State is not entitled to unreasonably decline to agree to a protocol."[33] As these proposed protocols were constructed with the States' concerns in mind, we look forward to your prompt adoption of these protocols.

**Your State Has A Long History Of Producing Quality Control Samples With The Same Information As FNS Is Requesting Without Requiring A Data And Security Protocol**

The following chart identifies the required data elements already submitted by State agencies to USDA FNS for Quality Control (QC) purposes.[34] Of those fields, the ones shaded in green and identified with a * symbol are those USDA is requesting pursuant to this data request. The only distinction between this request and the State QC submission of these particular data elements is that only a sample of cases are submitted for QC purposes. This data request, however, is for the entire caseload of the State, which is required to complete a full inspection and audit of SNAP.

| Case Number* | Case Address* | Phone Number* |
|---|---|---|
| SNAP Household Names* | SNAP Household DOBs* | SNAP Household SSN* |
| SNAP Household Relationships* | Citizen/Non-Citizen Status * | Homeless Status* |

---

[31] *See* 7 U.S.C. § 2020(a)(3)

[32] USDA will amend this SORN in 2026 along the lines the *California* court indicated, *e.g.*, to secure data from disclosure to a foreign government and narrow the permissible disclosure under Routine Uses 8 and 11.

[33] *California*, 3:25-cv-06310, ECF No. 134 at 12.

[34] The QC submissions are made without a data and security protocol.

7

| All Household Earned Income* | All Household Unearned Income* | All Household Self-Employment Income* |
|---|---|---|
| Authorized Representative* | Indicator if SNAP Household Member is active* | Reporting Status* |
| Recipient Disqualification* | Certification Period* | Assets/Resources* |
| Categorial Eligibility | Directions to Home | Shelter Expenses* |
| Date of Interview | Household Composition | Expedited Service |
| Most Recent Action | Student Status | Amount of Allotment |
| Allotment Adjustments | Demonstration Projects | Residency |
| Earned Income Deductions | Dependent Care | Shelter Deductions |
| Other Government Benefits | Contributions | Deemed Income |
| Standard Utility Allowance | Child Support Deductions | Medical Deduction |
| Income from loans, scholarships, grants | Arithmetic Computation | SNAP Simplification Project |
| Significant Persons NOT living in home phone number | Significant Persons NOT living in the home relationship | Significant Persons NOT living in the home SSNs |
| Significant Persons Not living in the DOBs | Significant Persons NOT living in the home address | Significant Persons NOT living in the home financial support |
| All data related to work requirements – E&T programs, time limited participation, work registration, etc. | States must verify all elements with supporting documentation and upload those to SNAP-QCS | |

Given there is no substantive difference between the data FNS is currently requesting and data your State already provides to FNS, we anticipate your State will now join the others in complying with Congress' mandate that USDA obtain records to ensure that its federally-funded programs are operated in accordance with law. As stated previously, the draft protocols are attached as Attachment B, and the requested data elements are attached as Attachment A.

USDA drafted Attachment B (and left Attachment A unchanged) after considering each of the issues raised previously by Plaintiff States with respect to earlier, different protocols offered by USDA. For example:

| PLAINTIFF STATE CONCERN | USDA RESPONSE |
|---|---|
| The necessity of all requested data elements and why deidentified versions are not sufficient to inspect and audit State compliance with the FNA. | USDA has determined that each data element requested is necessary to complete its audit. Further, Deidentification is not possible. The hashing of data (and other forms of de-identification) would be akin to providing USDA hundreds of thousands of combination locks without any of the combinations. |
| The burden of compliance on the State. | States already possess the data, and experience with complying States has shown compliance can be accomplished within weeks. Additionally, as noted by the nonsubstantive change request submitted to OMB, the extra burden hours are minimal. |

8

| Concerns that the data will be used for immigration enforcement. | In Section 1.4, the protocols contain a statement aligned with the text of 7 U.S.C. § 2020(e)(8)(A). Further, it explicitly states that "Section 2020(e)(8)(A) does not provide USDA with authority to respond to a request from DHS for data for purpose(s) of civil immigration enforcement." |
| --- | --- |
| The need for data security and protections both in storage and transfer. | USDA is offering the strictest level of security available— FedRAMP High. This is a higher security level than for other FNS databases, such as SNAP-QCS. Further, the data is encrypted both in transit and at rest, with encryption keys managed solely by USDA federal personnel.[35] |
| Sufficiency of data breach notification procedures | USDA has proposed procedures consistent with those generally accepted throughout the Federal Government. |
| Why the NAC, QC, and Electronic Disqualified Recipient System are different and insufficient | These systems are not a substitute for USDA's 7 U.S.C. § 2020(a)(3)(B) inspection and audit authority. Further, they examine isolated issues, and USDA seeks a comprehensive review of States' administration and enforcement. |
| Computer Matching Act | USDA is not required to enter into CMA agreements with States for the SNAP Information Database, as there is no matching between USDA and the States. |
| Concerns over USDA's methodology for data analysis | USDA will evaluate all data received for compliance with the FNA. |
| Reliance on former policy | There has been no former policy that differs from 7 U.S.C. § 2020(a)(3)(B) or otherwise would induce reliance by States on an incorrect reading of statute. |

We respectfully request that your State respond in writing within seven days of the date of this letter with confirmation of your agreement to produce the requested data subject to the attached data and security protocols or the bases for your refusal. Based on our experience with compliant States, your State should be able to fully produce the requested records within 21 days after the date of this letter.

In addition, please take all steps necessary to preserve the records covered by this request, whether possessed by your State or your vendors. We expect to review historical data in its native, unaltered form, from January 1, 2020, to the present. It is imperative the Federal Government obtains unaltered data reflecting the actual performance of States in administering this federally-funded program for all time periods covered by this request.

---

[35] *See supra* note 22 at 4; *USDA Privacy Impact Assessment: Fiscal Year 2025*, PD, CPOC, USDA at 27.

9

Thank you for your continued work to help address the needs of vulnerable Americans and safeguard taxpayer dollars. Your State's timely compliance is essential to safeguarding SNAP funds from fraud, waste, and abuse.

Sincerely,

Patrick A. Penn
Acting Administrator, Food and Nutrition Service
Deputy Under Secretary, Food, Nutrition, and Consumer Services
U.S. Department of Agriculture

10

# EXHIBIT 2, ATTACHMENT A

**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program**
**Information SNAP Database**

### SNAP Eligibility Data Elements

The following elements should be included in the data sharing file from each State agency on all household members that are listed in the SNAP case. Please provide a data dictionary if one is available to reduce the burden to both the State agency and USDA.

**Case Number:** The case number is a unique identifier, typically 7 to 10 digits long, assigned to a household when they apply and/or are approved for SNAP.

**First, Middle, Last Names:** The full name of all household members.

**Known Alias:** Assumed or alternative name(s) used by any of the household members.

**Authorized Representative(s):** Provide any identified authorized representative for the household, and their corresponding information such as full name, means of verbal and written communication.

**Date of Birth:** The specific month, day and year the household member was born.

**Individual Recipient Identification Number:** The unique identifier assigned to that specific household member within the case by the State agency.

**Social Security Number:** The unique 9-digit identifier issued by the Social Security Administration and provided by the household member.

**Status on SNAP** *(recipient/individual level):* Identify if the household member in the case is actively receiving SNAP, disqualified, sanctioned, or excluded.

**Application and/or Recertification Date:** The date the household applied for SNAP (this can be the first application date, or most recent recertification date).

**Reporting Status:** Following initial certification, or recertification, households are determined to be a simplified or change reporting household. This data element should indicate the reporting status the household has been designated to be.

**Relationship:** The relationship identifies who all household group members are to one another and assists with determining mandatory group members. The data should reflect who each household member is to one another.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

*Absent Parent* (as applicable)**:** This identifies the parent of a minor child who resides in a separate household.

*Citizenship and/or Immigration Status*: This identifies if the individual is a U.S. citizen or immigrant.

*Residential Address*: The address the household has provided as to where they reside.

*Mailing Address*: The address the household has provided as to where they would like all correspondence sent to (if different than residential).

*Homeless Status*: Please include if the household is identified as homeless.

*Phone Number(s)*: The contact number(s) provided by the household as a means of contact.

*Email Address(es)*: The email address(es) provided by the household as a means of contact.

*Unearned Income*: The unearned income (RSDI, unemployment, child support, etc.) identifies the unearned income source, pay frequency, the household member receiving the pay, and the total amount of income budgeted to determine the SNAP allotment.

*Earned Income*: The earned income identifies the earned income source, pay frequency, the household member receiving the pay, and the total amount of income budgeted to determine the SNAP allotment.

*Self-Employment Income*: Self-employment should be identified as to what the self-employment is (type or business name), pay frequency, the household member who is self-employed, and the total amount of income budgeted as well as the amount of allowed expenses.

*Shelter Expenses*: The shelter expenses should be identified as to shelter type (i.e. rent), and the budgeted dollar amount. Shelter expenses may be separated out as various expenses are taken into consideration for eligibility and those should be included if used in the SNAP allotment determination (i.e. telephone, heating, cooling). If the household is active with Section 8 which pays a portion of the rental expenses, please ensure that is included.

*Assets/Resources*: Any known assets (i.e. bank accounts, boat, collector vehicle) or resources used to determine SNAP eligibility and must identify the asset type, amount and what household member the asset belongs to.

*Sanctions/Disqualifications*: Identify any household members who are serving a sanction and/or disqualification that is impacting their eligibility to participate in SNAP. The sanction and/or disqualification type and any applicable time periods should be identified (i.e. IPV,

10/1/2024-9/30/2025). This field should correspond to the data provided in the status on SNAP if the household member is currently serving a disqualification, as well as any income field(s) that may pertain to the disqualified member due to income proration.

***SNAP EBT Card Number:*** The unique set of digits on the household's issued SNAP EBT card that connects the case to the associated transactions.

# EXHIBIT 2, ATTACHMENT B



**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program (SNAP) Information Database
Fraud, Waste and Abuse Detection Protocol**

## 1. OVERVIEW

1.1. U.S. Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) will use the Supplemental Nutrition Assistance Program (SNAP) recipient data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying duplicate enrollments for elimination, and performing additional eligibility and program integrity checks specified herein.

1.2. This protocol establishes a framework for State SNAP agencies to share data with the USDA/FNS for detection of fraud, waste, and abuse and program integrity purposes.

1.3. USDA represents that the protocol balances federal data access requirements under Executive Order 14243 and the Food and Nutrition Act of 2008 (FNA, also referred to here as the "SNAP Act") with privacy protections, minimizes unnecessary data collection, and incorporates security standards while maintaining public trust and compliance with applicable law.

1.4. Notwithstanding any other provision of this protocol, or any System of Record Notice, USDA and FNS:

(a) shall not use or disclose data received under this protocol except as specified in 7 U.S.C. §§ 2020(a)(3) and (e)(8) and 7 C.F.R. § 272.1(c)(1) and (2).  For the avoidance of doubt, this means that USDA and FNS (and any person or entity to whom the data is disclosed) shall not:

(i)    use the data, except for administration or enforcement of the provisions of Chapter 51 of Title 7 of the U.S. Code, regulations issued pursuant to that chapter, Federal assistance programs, or federally-assisted State programs; and

(ii)   disclose the data, except to persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs.

Section 2020(e)(8)(A) does not provide USDA with authority to respond to a request from DHS for data for purpose(s) of civil immigration enforcement.

1.5   USDA acknowledges that the data shared under this Protocol is subject to existing confidentiality, privacy, and information security laws and regulations. Notwithstanding the foregoing, this provision does not create any new rights or liabilities or waive any applicable immunities.

## 2. FRAMEWORK AND AUTHORITY

2.1. <u>Authority</u>

2.1.1. Executive Order 14243 (March 20, 2025): "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" directs agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure federal government has "unfettered access to comprehensive data" from state programs receiving federal funding, including data maintained in third-party databases.

2.1.2. 7 U.S.C. § 2020(a)(3) requires that each State agency shall keep records as may be necessary to determine whether the program is being conducted in compliance with this chapter, and all records shall be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender



**U.S. DEPARTMENT OF AGRICULTURE**

2.1.3. 7 CFR 272 stipulates use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to persons directly connected with the administration or enforcement of the provisions of the FNA or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or general assistance programs which are subject to joint processing requirements.

2.2. Prohibited Purposes

2.2.1. USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (*i.e.*, the collection of data elements spelled out in the Privacy Impact Assessment).

## 3. DATA CATEGORIES

3.1. Data Definition

3.1.1. All data obtained by States or their vendors in administering SNAP or that otherwise may be necessary to determine whether the program is being conducted in accordance with the FNA or regulations issued under the FNA, in accordance with Attachment A of this protocol.

3.1.2. Data derived from third-party sources (employment verification databases, financial institution records, property records) that States use for verification but are not part of applicant-reported information are excluded.

## 4. LIMITED ACCESS

4.1. The SNAP Information Database and all data collected therein is accessed and used ONLY by employees of the USDA who are:

4.1.1. Designated by the Chief of Staff at Food, Nutrition, Consumer Services (FNCS)

4.1.2. Trained in SNAP Act, Privacy Act, and this protocol

4.1.3. In compliance with all information security annual recertifications

4.2. Except to the extent permitted by law, no access to, or disclosures of data from, the SNAP Information Database may be provided to:

4.2.1. Other USDA agencies (APHIS, ERS, NASS, etc.)

4.2.2. Divisions within FNS without an explicit need-to-know

4.2.3. Any other federal agency

4.2.4. Any FOIA, administrative subpoena or like external requester

4.3. Notwithstanding section 4.1, this protocol does not limit access to the SNAP Information Database and all data contained therein by USDA's Office of the Inspector General as authorized by the Inspector General's Act, 5 USC 401-424.

## 5. SYSTEM OF RECORDS NOTICE (SORN) AND PRIVACY IMPACT ASSESSMENT (PIA)

5.1. SORN

The applicable SORN for this protocol is USDA/FNS-15 "National Supplemental Nutrition Assistance Program (SNAP) Information Database," 90 FR 26521.

The SORN location can be found here:
https://www.federalregister.gov/documents/2025/06/23/202511463/privacy-act-of-1974-system-of-records

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

For the avoidance of doubt, this protocol controls notwithstanding any provision of the applicable SORN.

5.2. Privacy Impact Assessment (PIA)

The applicable Privacy Impact Assessment for the SNAP Information Database is Version 1.1 created 02/12/2025, which can be found here:
https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

For the avoidance of doubt, this protocol controls notwithstanding any provision of the PIA.

## 6. FRAUD, WASTE, AND ABUSE DETECTION FRAMEWORK

6.1. Core Fraud Detection Functions

6.1.1. USDA will employ a foundational fraud, waste, and abuse verification similar to the SNAP Quality Control program that focuses on:

- identity verification

- income and eligibility verification

- immigration status

- verification against disqualified recipients

6.2. Enhanced Fraud, Waste, and Abuse Detection Techniques

6.2.1. In addition to the core fraud detection functions, USDA will employ additional techniques including, but not limited to:

- Intrastate and interstate duplicate detection

- Deceased individuals' detection

- Synthetic identity patterns (new SSNs with inconsistent biographical data)

- Geographic anomalies

6.2.2. New data mining techniques will be limited to identifying data anomalies with a direct nexus to SNAP.

## 7. DATA OUTPUT

7.1. States

7.1.1. USDA will provide flagged data back to the State agency for review, including the specific data elements flagged. States are encouraged to provide feedback to USDA to refine detection logic and reduce false positives. Collaborative processes will be established to ensure accurate identification of fraud and appropriate corrective actions. No presumptive results will be made public by FNS until 30 days from the initial date that USDA provided flagged data; during that 30 days States can provide additional information related to the accuracy of the detection flags.

7.2. Law Enforcement

7.2.1. The USDA may refer fraud detection leads to USDA OIG and other law enforcement agencies where a criminal nexus has been drawn specifically to SNAP.

7.3. USDA SNAP Retailer Operations Center (ROC)

7.3.1. The USDA may refer fraud detection leads to the ROC where, during fraud detection analysis, a compromised EBT card or terminal ID may have been identified in accordance with 7 U.S.C § 2020(e)(8)(A) and USDA's regulation implementing that provision, 7 C.F.R. § 272.1(c)(1).

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

**8. DATA MINIMIZATION AND RETENTION**

  8.1. <u>Retention Period</u>

    8.1.1. Until a record schedule is approved, data will be retained only as long as necessary for purposes set forth in the SORN and this protocol, and in no case longer than 3 years per the SORN.

  8.2. <u>Automatic Deletion</u>

    8.2.1. Data shall be retained for no longer than three years, consistent with the USDA/FNS-15 SORN. An automated process will be implemented to delete data upon expiration of the retention period, except for records related to ongoing audits, investigations, or litigation.

  8.3. <u>Ongoing Cases</u>

    8.3.1. Data pertaining to ongoing audit, investigation, or potential litigation retained only as long as necessary, then deleted.

**9. DATA SECURITY AND TECHNICAL REQUIREMENTS**

  9.1. <u>Infrastructure and Location</u>

    9.1.1. Primary storage location: AWS GovCloud (US) region

    9.1.2. Backup/disaster recovery: Secondary AWS region

    9.1.3. No storage, processing, or backup outside GovCloud or federal secure environments

    9.1.4. All infrastructure must meet or exceed FedRAMP High baseline standards

    9.1.5. AWS Personnel Access: Data is encrypted such that AWS personnel cannot access unencrypted data. Encryption keys are managed exclusively by federal USDA personnel and are not accessible to AWS or third-party vendors.

  9.2. <u>Access Controls</u>

    9.2.1. Multi-factor authentication required for all access

    9.2.2. Role-based access control (RBAC) with principle of least privilege

    9.2.3. Access is limited to specifically designated USDA employees engaged to assist in determining whether the program is being conducted in accordance with the FNA.

    9.2.4. Access logging and audit trail maintenance (minimum period equal to data retention period, see Section V.E).

    9.2.5. Quarterly access reviews by USDA

    9.2.6. Immediate revocation of access upon employee termination or assignment change

  9.3. <u>Encryption Standards</u>

    9.3.1. Encrypted data at rest and in transit

    9.3.2. Encryption keys managed solely by USDA federal personnel

    9.3.3. No encryption keys held by commercial vendors

  9.4. <u>Data Segregation and Compartmentalization</u>

    9.4.1. SNAP data isolated in separate, dedicated AWS GovCloud environment

    9.4.2. SNAP data not directly integrated with other USDA systems

    9.4.3. Limiting access to individuals with specialized training and oversight

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

9.5. Data Transfer

9.5.1. All data transfers shall utilize secure tools that meet or exceed FedRAMP High baseline standards.

## 10. INCIDENT RESPONSE AND BREACH NOTIFICATION

10.1. Incident Response

10.1.1. Incident response procedures are aligned with FNS Handbook Chapter 10 security incident and breach notification requirements that USDA already follows internally. This protocol extends equivalent procedures to State notification.

10.2. Incident Definition

10.2.2. Unauthorized access, use, or disclosure of data

10.2.3. Security vulnerability or control failure affecting data

10.2.4. Data loss, corruption, or destruction

10.2.5. Encryption failure or key compromise

10.2.6. Failed access control or authentication mechanism

10.2.7. Any event that may reasonably be expected to compromise data security or confidentiality.

10.3. Incident Notification Timeline

10.3.1. Initial Notification within 12 hours

10.3.1.1.    Within 12 hours of discovery (by phone + email to State security/privacy contact and Director).

10.3.2. Preliminary Report within 24 hours

10.3.2.1.    Description of incident and timeline

10.3.2.2.    Data elements affected (specific fields and estimated number of records)

10.3.2.3.    Estimated number of individuals affected

10.3.2.4.    Preliminary assessment of whether unencrypted sensitive data may have been exposed

10.3.2.5.    Preliminary remedial actions taken

10.3.2.6.    Root cause analysis plan and timeline

10.3.3 Progress Reports and Incident Close-out

10.3.3.1    USDA shall provide notice to affected individuals in compliance with all applicable federal breach response and notification requirements. Nothing in this protocol shall be construed to shift responsibility for individual breach notification to the state agency.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

 **U.S. DEPARTMENT OF AGRICULTURE**

**APPENDIX A - SOURCES**

- 7 U.S.C. §§ 2020(a)(3) and (e)(8).

- Privacy Impact Assessment: https://www.usda.gov/sites/default/files/documents/fns-snap-informationdatabase-pia.pdf

- SORN: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-systemof-records

- SNAP Act: https://www.law.cornell.edu/uscode/text/7/2020

- SNAP QC Handbook

- Executive Order 14243 (March 20, 2025) "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos: https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender