BRETT A. SHUMATE
Assistant Attorney General
TYLER BECKER
Counsel to the Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BENJAMIN S. KURLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>                   *Plaintiffs*,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE, *et al.*,<br><br>                *Defendants*. | Case No. 3:25-cv-06310-MMC<br><br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENJOIN PROSECTION OF ENFORCEMENT ACTIONS** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 1

LEGAL STANDARD............................................................................................................ 3

ARGUMENT ....................................................................................................................... 5

I.   This Action and the Enforcement Actions are Administratively Distinct ............................... 5

   A.  The Scope of FNA's Actions............................................................................... 5
       1.   The significance of separate agency actions......................................................... 5
       2.   The significance of the Third Data Request ........................................................ 7
   B.  The Scope of the Court's Second Preliminary Injunction ...................................... 8
II.  The Court Should Deny Plaintiffs' Motion ...................................................................... 9

   A.  The Enforcement Actions are not Duplicative....................................................... 9
   B.  Other Equitable Factors ................................................................................... 15
       1.   Irreparable Injury .......................................................................................... 17
       2.   Balance of Equities ........................................................................................ 17
CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991) ........................................................................*passim*

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,
    No. 22-CV-08958-CRB, 2024 WL 3748332 (N.D. Cal. Aug. 8, 2024) ...................... 12, 15, 16

*Anunciato v. Trump*,
    No. 20-CV-07869-RS, 2020 WL 13547186 (N.D. Cal. Dec. 23, 2020).................................. 19

*Arizona Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ......................................................................... 18

*Arizona v. Evans*,
    514 U.S. 1 (1995)............................................................................................ 19

*Ass'n of Am. Med. Colls. v. United States*,
    217 F.3d 770 (9th Cir. 2000) ............................................................................5-6

*AXIS Reinsurance Co. v. Northrop Grumman Corp.*,
    No. 2:17-CV-08660-AB (JCx), 2018 WL 4808540 (C.D. Cal. June 21, 2018) ................... 4, 12

*Bennett v. Spear*,
    520 U.S. 154 (1997)......................................................................................... 5

*Bergh v. Washington*,
    535 F.2d 505 (9th Cir. 1976) ........................................................................4-5, 10, 12

*Biden v. Texas*,
    597 U.S. 785 (2022)......................................................................................... 8

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) ............................................................................ 19

*Cedars-Sinai Med. Ctr. v. Shalala*,
    125 F.3d 765 (9th Cir. 1997) ........................................................................... 4, 12

*Chicago & S. Air Lines v. Waterman S. S. Corp.*,
    333 U.S. 103 (1948)......................................................................................... 6

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979) ............................................................................ 4, 9

*City of Oakland v. Holder*,
    901 F. Supp. 2d 1188 (N.D. Cal. 2013), *aff'd*, 798 F.3d 1159 (9th Cir. 2015) ...................... 7

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ................................................................................................ 4

*Del Mar Avionics v. Quinton Instruments Co.*,
    645 F.2d 832 (9th Cir. 1981) ........................................................................................... 5, 12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1, (2020) ................................................................................................................. 8

*FTC v. Standard Oil of Cal.*,
    449 U.S. 232 (1980) ......................................................................................................... 7, 17

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) ............................................................................................ 14

*Hoyt v. Amazon.com, Inc.*,
    No. 19-CV-00218-JSC, 2019 WL 1411222 (N.D. Cal. Mar. 28, 2019) ................................. 15

*In re Bozic*,
    888 F.3d 1048 (9th Cir. 2018) .............................................................................................. 4

*Intra-Nat'l Home Care, LLC v. U.S. DOL*,
    No. 22-2628, 2024 WL 4100245 (3d Cir. Sep. 6, 2024),
    *remanded*, 2025 WL 3484650 (W.D. Pa. Dec. 4, 2025) ...................................................... 7

*Jhangmen Kinwai Furniture Decoration Co. Ltd, Kinwai USA Inc. v. Int'l Mkt. Centers, Inc.*,
    No. 215CV1419JCMPAL, 2016 WL 697112 (D. Nev. Feb. 18, 2016) .............................. 15-16

*John Doe Co. v. CFPB*,
    849 F.3d 1129 (D.C. Cir. 2017) ........................................................................................... 17

*Jones v. PGA TOUR, Inc.*,
    668 F. Supp. 3d 907 (N.D. Cal. 2023) ................................................................................. 14

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ........................................................................................................ 9, 19

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) ..................................................................................... 3, 4, 9

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ................................................................................................ 17

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) .............................................................................................................. 11

*NAACP v. Meese*,
    615 F. Supp. 200 (D.D.C. 1985) ........................................................................................... 7

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
    112 F.4th 1088 (D.C. Cir. 2024) ................................................................................. 14

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .................................................................... 3, 4, 9, 16

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
    263 F. Supp. 3d 293 (D.D.C. 2017) ........................................................................ 18

*Rampersad v. Rentex Inc.*,
    No. 3:16-CV-01710, 2017 WL 2876783 (S.D. Cal. Mar. 13, 2017) ......................... 4

*Rise Econ. v. Vought*,
    823 F. Supp. 3d 1013 (N.D. Cal. 2026) .............................................................. 11-12

*Sec. & Exch. Comm'n v. Chenery Corp.*,
    332 U.S. 194 (1947)................................................................................................. 8

*Subbaiah v. GEICO Gen. Ins. Co.*,
    No. 219CV06717ABJPRX, 2019 WL 9904278 (C.D. Cal. Dec. 11, 2019)............... 16

*Torres v. Segway, Inc.*,
    No. 25-CV-05005-BLF, 2026 WL 311504 (N.D. Cal. Feb. 5, 2026)................... 4, 16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................................................... 18

*United States v. Goodwin*,
    457 U.S. 368 (1982)............................................................................................... 18

*United States v. Mendoza*,
    464 U.S. 154 (1984)............................................................................................... 19

*United States v. Texas*,
    599 U.S. 670 (2023)............................................................................................... 18

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................................... 18

*Wayte v. United States*,
    470 U.S. 598 (1985)............................................................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)................................................................................................... 16

*World Professional Association for Transgender Health v. FTC*,
    No. CV 26-532 (JEB), 2026 WL 1999008 (D.D.C. July 10, 2026) ...................... 14, 15, 16, 17

*Young v. L'Oreal USA, Inc.*,
526 F. Supp. 3d 700 (N.D. Cal. 2021) ................................................................ 16

**U.S. Constitution**

U.S. Const. art. I, § 8, cl. 1 ................................................................................ 10

U.S. Const. art. II, § 3 ........................................................................................ 18

**Statutes**

5 U.S.C. § 551 ...................................................................................................... 7

5 U.S.C. § 701 ...................................................................................................... 7

5 U.S.C. § 704 .................................................................................................. 5, 7

7 U.S.C. §§ 2011–2036 ........................................................................................ 1

7 U.S.C. § 2020 ............................................................................................ *passim*

**Regulations**

7 C.F.R. § 276.4 ........................................................................................ 2, 6, 7, 11

Food and Nutrition Admin., Privacy Act of 1974; System of Records,
91 Fed. Reg. 35,948 (June 15, 2026) ................................................................ 8

**Other Authorities**

CDSS, *About CDSS*,
https://www.cdss.ca.gov/home/about-cdss ...................................................... 11

USDA, *Reorganization*,
https://www.fna.usda.gov/about/reorganization .............................................. 1

USDA, *Supplemental Nutrition Assistance Program: Number of Households Participating*
(July 10, 2026),
https://perma.cc/5G88-UE3J ............................................................................ 18

USDA, *USDA SNAP Program Integrity Data Team: Preliminary Report* (May 13, 2026),
https://perma.cc/3UAV-KVNS ...................................................................... 8, 17

## INTRODUCTION

Just like their motion to complete and supplement the record, *see* Parties' Joint Letter Concerning Unresolved Disc. Disputes at 2–5, ECF No. 179, Plaintiffs have once again plowed through critical administrative law principles and downplayed the relevant standard in their motion to enjoin the prosecution of the so-called "related cases," Pl. States' Mot. to Enjoin Prosecution of Related Cases ECF No. 186 ("Mot."). Those cases—which consist of four enforcement actions brought by the Department of Justice on behalf of the U.S. Department of Agriculture's ("USDA") Food and Nutrition Administration ("FNA")[1] in Kentucky, Michigan, Minnesota, and Pennsylvania—address different agency action and seek different statutorily-authorized relief in FNA's efforts to ensure the SNAP Act's terms are properly observed. Quite simply, those cases are distinct and do not warrant the extraordinary remedy Plaintiffs seek; that this Court enjoin proceedings in four of its sister District Courts with no hint that those Courts cannot handle the relevant law or that the Defendants in those cases cannot ably defend themselves.

The Court should, therefore, exercise the discretion emphasized in the relevant jurisprudence to decline to issue what would amount to a nationwide injunction undercutting its fellow Article III courts and invading the Executive Branch's constitutional and statutory authority to ensure that the country's laws be faithfully executed.

## BACKGROUND

The Court is familiar with the background of this matter and proceedings to date, having three times summarized them. *See* Order Granting TRO as to all Pl. States other than State of Nevada; Setting Further Briefing Schedule and Hr'g Date at 2–5, ECF No. 83 ("TRO"); Order Granting Pl. States' Mot. for Prelim. Inj. at 2–6, ECF No. 106 ("First PI"); Order Granting in Part Pl. States' Mot. to Enforce or Expand Prelim. Inj. at 3–8, ECF No. 134 ("Second PI"). To recap briefly:

---

[1] The FNA recently changed its name from the Food and Nutrition Service, or FNS as the parties and Court have referred to it in this litigation, as part of a broader USDA reorganization. *See* USDA, *Reorganization*, https://www.fna.usda.gov/about/reorganization (last updated June 3, 2026). As the parties and Court have sometimes previously referred to the relevant statute, the Food and Nutrition Act, 7 U.S.C. §§ 2011–2036, as the "FNA," Defendants highlight that they will refer to the agency as the "FNA" and the statute as the "SNAP Act."

1

Starting in May of 2025, FNA issued three data requests, the first to all State Agencies which administer the daily operations of the SNAP Program and the second two to the Plaintiff States, which are those who refused to comply with the first request. *See* Ex. B to Decl. of Ryan Gillette, ECF No. 59-7 ("First Data Request"); Ex. A to March 31, 2026, Joint Status Report, ECF No. 143-1 ("Second Data Request"); Ex. 2 to Decl. of Liam E. O'Connor, ECF No. 186-3 ("Third Data Request"). The first two data requests were issued on May 6, 2025, and November 24, 2025, respectively. To enforce the First Data Request, FNA issued both advanced and formal warning letters that FNA would disallow administrative funding pursuant to 7 C.F.R. § 276.4 (which implements authority in 7 U.S.C § 2020(g)) to States which failed to comply with the requests. *See* Ex. G to Decl. of Ryan Gillette, ECF No. 59-7 (advanced warning); Exs. A–P to Decl. of Sebastian Brady, ECF No. 67-1 (formal warning). To enforce the Second Data Request, FNA issued advanced warnings to the non-compliant States. Ex. C to March 31, 2026, Joint Status Report, ECF No. 143-1 (second advanced warning).

Recently, on May 15, 2026, FNA issued its Third Data Request. The Third Data Request "supersede[d] FN[A's] First and Second Data Requests," which FNA specified were "[t]hereby withdrawn." Third Data Request at 1. Along with the Third Data Request, FNA enclosed the data elements sought pursuant to the request and a proposed data and security protocol, which were the product of the negotiations between the parties. Ex. 2 and 3 to Third Data Request. FNA has not issued an advanced warning to enforce the Third Data Request (which also does not mention disallowance at all) nor taken any steps to disallow funding for failure to comply with its terms.

On June 26, 2026, the Department of Justice filed four lawsuits in the District Courts for the Eastern District of Kentucky, Western District of Michigan, District of Minnesota, and Middle District of Pennsylvania. *See* Exs. A–D to Notice of Pendency of Other Actions or Proceedings, ECF Nos. 183-1–183-4 (collectively, the "Enforcement Actions"). The Enforcement Actions all seek the same relief against the State Agencies in the respective States; (1) a judicial declaration that each State Agency failed to comply with SNAP Act Section 2020(a)(3) by refusing to comply with the Third Data Request, unreasonably rejecting USDA's proposed data and security protocols, and failing to negotiate those protocols in good faith; and (2) an injunction compelling the Agencies to comply with Section 2020(a)(3) and properly answer the Third Data Request by producing the relevant data.

Additionally, the Department of Justice recently filed preliminary injunctions in each case. *See* Mot. for Prelim. Inj., *United States v. Ky. Cabinet for Health & Fam. Servs.*, No. 3:26-cv-00051-CHB-EBA (E.D. Ky. July 10, 2026), ECF No. 8; Mot. for Prelim. Inj., *United States v. Pa. Dep't of Hum. Servs.*, No. 1:26-cv-01787-JPW (M.D. Pa. July 15, 2026), ECF No. 8; Mot. for Prelim. Inj., *United States v. Mich. Dep't of Health & Hum. Servs.*, No. 1:26-cv-01950-HYJ-MV (W.D. Mich. July 13, 2026), ECF No. 11; Mot. for Prelim. Inj., *United States v. Minn. Dep't of Child., Youth, and Fams.*, 0:26-cv-03120-MJD-DTS (D. Minn. July 17, 2026), ECF No. 19.

On July 10, rather than first contesting the Enforcement Actions in the Districts where they were filed, all Plaintiffs, on behalf of Kentucky, Michigan, Minnesota, and Pennsylvania, filed the present motion, which seeks the extraordinary relief of an injunction of pending litigation in four of its sister courts. Mot., ECF No. 186. Specifically, Plaintiffs request what amounts to a preliminary injunction under the first-to-file rule, asking the Court to enjoin the Enforcement Actions "until after the instant action before this Court is fully and finally resolved[.]" Proposed Order Granting Pl. States' Mot. to Enjoin Prosecution of Related Cases at 1, ECF No. 186-5 ("Proposed Order"); *see also* Mot. at 2.

After Plaintiffs submitted their motion to this Court, Pennsylvania, Kentucky, and Michigan also filed motions to stay the proceedings in their courts. *See* Mot. to Stay, *United States v. Ky. Cabinet for Health & Fam. Servs.*, No. 3:26-cv-00051-CHB-EBA (E.D. Ky. July 16, 2026), ECF No. 14; Mot. to Stay, *United States v. Pa. Dep't of Hum. Servs.*, No. 1:26-cv-01787-JPW (M.D. Pa. July 16, 2026), ECF No. 10; Mot. to Stay, *United States v. Mich. Dep't of Health & Hum. Servs.*, No. 1:26-cv-01950-HYJ-MV (W.D. Mich. July 22, 2026), ECF No. 14. The court in Kentucky has stayed consideration of the United States' preliminary injunction motion pending further order of the court. *See United States v. Ky. Cabinet for Health & Fam. Servs.*, No. 3:26-cv-00051-CHB-EBA (E.D. Ky. July 17, 2026), ECF No. 16.

**LEGAL STANDARD**

Under ordinary circumstances, a federal district court maintains the discretion to dismiss, stay, or transfer *its own case* to another district court under the first-to-file rule. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *see also Kohn L. Grp., Inc. v. Auto Parts Mfg.*

*Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). The rule is a "judicially created 'doctrine of federal comity,'" *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (quoting *Pacesetter Sys.*, 678 F.2d at 94–95), meaning that "[t]he most basic aspect of the first-to-file rule is that it is discretionary[.]" *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *see also Pacesetter Sys.*, 678 F.2d at 95 ("this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."). The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments. *See Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979). When evaluating claims under the first-to-file rule, courts examine three factors: "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn L. Grp.*, 787 F.3d at 1240. But "[e]ven where the three factors favor application of the first-to-file rule, a district court may decline to apply the rule based on equitable considerations." *Torres v. Segway, Inc.*, No. 25-CV-05005-BLF, 2026 WL 311504, at *6 (N.D. Cal. Feb. 5, 2026) (citing *Alltrade*, 946 F.2d at 628).

In cases where the first-to-file rule is applicable, it is commonly "the second district court [that] has discretion to transfer, stay, or dismiss the second case." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *see also Rampersad v. Rentex Inc.*, No. 3:16-CV-01710, 2017 WL 2876783, at *1 (S.D. Cal. Mar. 13, 2017) ("[a]bsent unusual circumstances, such an argument should be made on a motion to stay filed with the second court rather than on a motion to enjoin filed with the first court."); *accord AXIS Reinsurance Co. v. Northrop Grumman Corp.*, No. 2:17-CV-08660-AB (JCx), 2018 WL 4808540, at *2 (C.D. Cal. June 21, 2018). In their present motion, Plaintiffs have opted for the "unusual circumstance" of seeking an injunction by this District Court against proceedings in four of its sister courts.

The first-to-file rule affords district courts the discretion to enjoin later-filed actions when the first district has jurisdiction over all parties involved. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). But "[w]hen an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Bergh*

*v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976).  Thus, the Ninth Circuit has explicitly stated that "as a matter of comity, a federal court injunction against proceedings in another federal court will rarely be granted[.]" *Del Mar Avionics v. Quinton Instruments Co.*, 645 F.2d 832, 836 (9th Cir. 1981).

## ARGUMENT

### I.    This Action and the Enforcement Actions are Administratively Distinct

Before elaborating on the inappropriateness of enjoining the Enforcement Actions, it is helpful to untangle some of the administrative law concepts and previous proceedings that Plaintiffs muddy in their motion.  When the full context is properly understood, it becomes evident that the Enforcement Actions are independent of the case before this Court.

#### A.  The Scope of FNA's Actions

##### 1.  The significance of separate agency actions

FNA's actions in the Enforcement Actions must be considered against the backdrop of the Administrative Procedure Act claims that Plaintiffs advance in this case.  As the Court is aware, only final agency action is challengeable under the APA.  *See* 5 U.S.C. § 704; *see* First PI at 8–9; Second PI at 10–11.  The Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the 'consummation' of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

Previously, FNA undertook two distinct categories of actions subject to this Court's review.  First, it requested SNAP-related data to assist in conducting an audit of the SNAP program.  *See, e.g.*, Second Data Request at 1 (requesting data pursuant to 7 U.S.C. § 2020(a)(3)); *see also* 7 U.S.C. § 2020(a)(3)(B) ("All records, and the entire information systems in which records are contained, that are covered in subparagraph (A) shall (i) be made available for inspection and audit by the Secretary[.]").  Investigations and audits are generally not considered challengeable final agency action because they do not "impose an obligation, deny a right, or fix some legal relationship as a *consummation* of the administrative process." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d

770, 781 (9th Cir. 2000) (emphasis in original) (quoting *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948)).

Second, FNA commenced administrative funding disallowance proceedings under 7 C.F.R. § 276.4 to enforce its data requests. While these proceedings never reached their true regulatory conclusion because the Court enjoined them prior to completion of the administrative process, it is the disallowance proceedings that the Court determined constituted challengeable "final agency action." *See* Second PI at 10–11 (Court determining that FNA's advanced notification pursuant to 7 C.F.R. § 276.4 constituted final agency action).

FNA, through the DOJ, has now taken a third and entirely separate category of actions: initiating enforcement suits under SNAP Act Section 2020(g).[2] Specifically, Section 2020(g) enables FNA, after investigating and finding that a State Agency failed to properly administer the SNAP Act without good cause, to request that the Attorney General file suit against the State Agency. 7 U.S.C. § 2020(g). The Attorney General is then authorized to bring suit seeking an injunction compelling the State Agency to come into compliance. *Id.* Section 2020(g) instructs that the Attorney General

---

[2] In full, Section 2020(g) reads

If the Secretary determines, upon information received by the Secretary, investigation initiated by the Secretary, or investigation that the Secretary shall initiate upon receiving sufficient information evidencing a pattern of lack of compliance by a State agency of a type specified in this subsection, that in the administration of the supplemental nutrition assistance program there is a failure by a State agency without good cause to comply with any of the provisions of this chapter, the regulations issued pursuant to this chapter, the State plan of operation submitted pursuant to subsection (d) of this section, the State plan for automated data processing submitted pursuant to subsection (o)(2) of this section, or the requirements established pursuant to section 2032 of this title the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure. If the State agency does not correct such failure within that specified period, the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and, upon suit by the Attorney General in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located and a showing that noncompliance has occurred, appropriate injunctive relief shall issue, and, whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g) of this title as the Secretary determines to be appropriate, subject to administrative and judicial review under section 2023 of this title.

7 U.S.C. § 2020(g).

must file suit "in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located[.]" *Id.* Section 2020(g) also makes clear that seeking a court injunction is a separate action from seeking disallowance under 7 C.F.R. § 276.4, as it instructs that "whether or not [FNA] refers such matter to the Attorney General, [FNA] shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g)[.]" 7 U.S.C. § 2020(g).

Filing an enforcement action, however, is not itself a final agency action. First, it is not an "action" recognized by the APA. *See City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013) (the "filing of a civil action does not fit within the APA's definition of agency action: it is not a rule, order, license, sanction, form of relief, or failure to act."), *aff'd*, 798 F.3d 1159 (9th Cir. 2015); *see also Intra-Nat'l Home Care, LLC v. U.S. DOL*, No. 22-2628, 2024 WL 4100245, at *3 (3d Cir. Sep. 6, 2024) (agency's "filing of a civil suit is not 'agency action,' much less 'final agency action'") (Phipps, J., concurring in part) (citing 5 U.S.C. §§ 551(13), 701(b)(2), 704), *remanded*, 2025 WL 3484650 (W.D. Pa. Dec. 4, 2025). It is also not "final" because "[any] legal consequences will flow from the Court's [or] jury's findings and decisions, not a decision by the DOJ." *City of Oakland*, 901 F. Supp. 2d at 1195. Thus, the "Supreme Court has squarely held that the initiation of enforcement proceedings is not subject to APA review inasmuch as the filing of a complaint is no more than a threshold determination that further inquiry is warranted and has no legal force except to the extent of requiring a response." *NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985) (citing *FTC v. Standard Oil of Cal.*, 449 U.S. 232, 241–42 (1980)).

Thus, while examining Plaintiffs' motion, it is important to consider the different challengeable—and non-challengeable—agency actions that FNA has undertaken.

### 2. The significance of the Third Data Request

Plaintiffs assign little significance to the Third Data Request, announcing simply that it "merely restates USDA's renewed data demands[.]" Mot. at 6. But it did more than that. Through the Third Data Request, FNA formally withdrew the previous data requests and superseded them with a new request. This included, for example, a proposed protocol that developed through negotiations between FNA and the Plaintiff States after issuance of the Second Data Request and additional

reasoning addressing Plaintiffs' concerns.[3]  It is also supported by an initial results report detailing FNA's methodology and initial findings based on the States which complied with the First Data Request.  *See* USDA, *USDA SNAP Program Integrity Data Team: Preliminary Report* (May 13, 2026), https://perma.cc/3UAV-KVNS ("Preliminary Report").  In support of the Third Data Request, FNA also published an amended System of Records Notice ("SORN") which aligns Routine Uses 8 and 11 with SNAP Act Section 2020(e)(8)(A).  *See* Food and Nutrition Admin., Privacy Act of 1974; System of Records, 91 Fed. Reg. 35,948 (June 15, 2026).

As the Supreme Court has explained, "[i]t is black-letter law that an agency that takes superseding action . . . is entitled to 'reexamine[] the problem, recast its rationale and reach[] the same result.'"  *Biden v. Texas*, 597 U.S. 785, 813 (2022) (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, (2020).  Thus, failing to recognize the Third Data Request for what it is—a new, albeit non-final, agency action—improperly deprives FNA of the opportunity to take subsequent action to better design its audit.

**B.  The Scope of the Court's Second Preliminary Injunction**

In their motion, Plaintiffs miscast several of the Court's previous holdings to assign them outsized weight over the Enforcement Actions.  As outlined above, however, the Court's Second Preliminary Injunction was limited to the final agency action it determined was reviewable: disallowance proceedings pursuant to the Second Data Request.  *See supra* at Argument § I.A.1.; *see also* Second PI at 22 ("USDA is PRELIMINARILY ENJOINED from disallowing SNAP funding based on Plaintiff States' failure to comply with the demands set forth in the November 24 and December 23 letters or otherwise acting thereon").  The Court, therefore, has not opined on the Third Data Protocol, its accompanying protocol, or enjoined action pursuant to it.  This holding is in keeping with the APA principles outlined above that recognize the Third Data Request as a separate (albeit non-final) agency action.  *See supra* at Argument § I.A.1.

---

[3] This Court has never considered the propriety of that protocol, or whether the Plaintiffs' rejection of that protocol complies with their obligations under the FNA.

Thus, while Plaintiffs assert that the Court found that they "appropriately declined to agree to USDA's proposed protocols[,]" Mot. at 1, 4, the Court clearly contemplated that the parties would continue negotiating its terms. *See, e.g.*, Ex. D to March 31, 2026, Joint Status Report at 33:10–12; 47:23–48:5; 84:7–17, ECF No. 143-1. Indeed, the protocol issued with the Third Data Request is notably different than that examined by the Court pursuant to the Second Preliminary Injunction. *Compare* Ex. A to Decl. of Mark Ladov, ECF No. 116-2, *with* Ex. 2, Attach. B to Third Data Request. As Plaintiffs concede, the Court has not yet reviewed nor ruled on the operative proposed protocol. *See* Mot. at 5 (recognizing that the Court declined to hear argument regarding the protocol's compliance with Section 2020(e)(8)(A)); *see also* Ex.1 to Decl. of Liam E. O'Connor at 9:11–17, ECF No. 186-2. Similarly, Plaintiffs' contention that the Court declined to lift or dissolve the Second Preliminary Injunction runs into the same issue—the Court's declination was not based on a substantive determination, but an unwillingness to discuss substantive matters outside of motion practice. In short, the enforcement actions constitute new events and should be treated as such.

## II.    The Court Should Deny Plaintiffs' Motion

### A.  The Enforcement Actions are not Duplicative

While the Enforcement Actions involve a subset of similar issues resembling the prior actions, they are far from duplicative, and the Court should reject Plaintiffs' argument that they should be enjoined on that basis.

The purpose of the first-to-file rule is to promote judicial efficiency and to prevent conflicting rulings. *See Church of Scientology of Cal.*, 611 F.2d at 750; *see also Kohn L. Grp.*, 787 F.3d at 1240. While a court may apply the rule to cases with "substantially similar issues[,]" *Kohn L. Grp.*, 787 F.3d at 1239, after determining whether there is "substantial overlap" between the two suits, *id.* at 1241 (citation omitted), the doctrine is underpinned by equitable principles. As the Ninth Circuit has repeated, these equitable principles "involve[] determinations concerning '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' and that 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Pacesetter Sys.*, 678 F.2d at 95 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)); *accord Alltrade,* 946 F.2d at 628. These

9

equitable principles are at their pinnacle when, as here, "an injunction sought in one federal proceeding would interfere with another federal proceeding[.]" *Bergh*, 535 F.2d at 507. In such situations, "considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Id.*

Here, the differences between the actions are clear. The Enforcement Actions involve different (albeit non-final) underlying agency action: the Third Data Request. That Request includes a superseding agency action, explanations in support, updated data and security protocols, an amended SORN, and the initial data report. In fact, the Third Data Request is absent from Plaintiffs' operative complaint entirely and Plaintiffs have not amended their claims to account for the Third Data Request, or other developments critical to this case, including the amended SORN. *See generally*, Second Am. Compl., ECF No. 146 ("SAC").[4]

Further, the Enforcement Actions raise distinct claims not yet addressed by this Court. Plaintiffs' claims in the present action involve the propriety of FNA enforcing the now-withdrawn First and Second Data Requests through administrative funding disallowance proceedings as *ultra vires,* contrary to the APA, Spending Clause, and the U.S. Const. art. I, § 8, cl. 1. Indeed, the Court's First and Second Preliminary injunctions prohibited FNA from disallowing administrative funding pursuant to those requests. *See* First PI at 25; Second PI at 22. By contrast, the Enforcement Actions—unlike most first-to-file cases which involve successive suits by the same or similar plaintiffs—involve distinct claims brought by FNA and the Department of Justice regarding whether Kentucky, Michigan, Minnesota, and Pennsylvania's State Agencies unjustifiably failed to comply with the Third Data Request and to negotiate data and security protocols in good faith contrary to the SNAP Act. This Court has examined neither of those claims.

---

[4] After publication of the amended SORN, the individual plaintiffs in *Pallek v. Rollins*, No. 25-cv-1650 (D.D.C.) voluntarily dismissed their claims challenging FNA's First Data Request as contrary to the SNAP Act based on FNA's original SORN. *See* Joint Stipulation of Partial Dismissal Pursuant to Rule 41, *Pallek v. Rollins*, No. 25-cv-1650 (D.D.C. June 29, 2026), ECF No. 47 (dismissing Counts I and II). These claims are the same as many of Plaintiffs' claims in this suit. *Compare* Am. and Suppl. Compl. ¶¶ 118–32, *Pallek v. Rollins*, No. 25-cv-1650 (D.D.C. July 16, 2025), ECF No. 26-1, *with* SAC ¶¶ 333–48, 358; *see also* Second PI at 15 (relying on the unamended SORN to find that FNA had announced an intent to disclose data contrary to the SNAP Act).

10

Further, this action and the Enforcement Actions involve distinct statutory remedies that the SNAP Act authorizes FNA to pursue to ensure compliance with the Act's requirements. This action involves disallowance proceedings pursuant to 7 U.S.C. § 2020(g) and 7 C.F.R. § 276.4. The SNAP Act in Section 2020(g), however, authorizes referral to the Attorney General to bring an enforcement action as a separate remedy that FNA can pursue in tandem with disallowance. *See* 7 U.S.C. § 2020(g) ("whether or not [FNA] refers such matter to the Attorney General, [FNA] shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g) of this title as [FNA] determines to be appropriate, subject to administrative and judicial review under section 2023 of this title."). And Section 2020(g) contemplates that the Attorney General's enforcement action will proceed in the district where the noncompliant State Agency is located, regardless of whether administrative or judicial review of USDA's funding decisions occurs elsewhere. *See id.* (providing that the Attorney General may seek injunctive relief "in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located" and that, "whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold" funds "subject to administrative and judicial review under section 2023"). Thus, Congress established independent enforcement and funding-withholding mechanisms that may proceed simultaneously in different forums. This Court has had no occasion to review FNA and the Department of Justice's authority under Section 2020(g). These distinct and significant differences weigh heavily against enjoining the Enforcement Actions based on the first-to-file rule.[5] *See Rise*

---

[5] Plaintiffs imply that USDA has gone on a "spree for new forums[,]" Mot. at 1, 9, even though Section 2020(g) directs the DOJ to file suit "in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located," 7 U.S.C. § 2020(g); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 32–39 (1998) (finding that courts may not disregard congressionally mandated venue schemes, even for reasons of efficiency). If Plaintiffs believe that the Enforcement Actions are improperly venued, they may move in those cases to transfer venue, although Plaintiffs disavowed transfer through the present motion. *See* Mot. at 14. Unlike Defendants, Plaintiffs applied their own venue preferences to this action. They filed their suit in the Northern District of California despite the large number of State parties to this suit, and that California's State Agency, the California Department of Social Services ("CDSS"), is headquartered in Sacramento, *see* CDSS, *About CDSS*, https://www.cdss.ca.gov/home/about-cdss (last visited July 22, 2026), which is actually within the jurisdiction of the U.S. District Court for the Eastern District of California.

*Econ. v. Vought*, 823 F. Supp. 3d 1013, 1026, 1031 (N.D. Cal. 2026) ("differences in the agency actions challenged and the relief sought sufficiently distinguishes" two cases for the purpose of the first-to-file rule).

But, even if Plaintiffs could show that the issues in these cases are sufficiently similar (and they cannot), they must overcome the additional and significant hurdle of justifying an affirmative injunction against proceedings in coordinate district courts. *See Bergh*, 535 F.2d at 507 ("injunctions should be granted only in the most unusual cases"); *accord Del Mar Avionics*, 645 F.2d at 836 ("this court has held that as a matter of comity, a federal court injunction against proceedings in another federal court will rarely be granted, especially when the courts are within the same circuit." (citing *Bergh*, 535 F.2d at 507)); *see also Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, No. 22-CV-08958-CRB, 2024 WL 3748332, at *2 (N.D. Cal. Aug. 8, 2024); *AXIS Reinsurance*, 2018 WL 4808540, at *2.[6]  After all, the usual course for a first-to-file claim is to bring a motion in the later-filed case seeking to stay or dismiss those proceedings. *See Cedars-Sinai Med. Ctr.*, 125 F.3d at 769 ("[u]nder th[e first-to-file] rule, when cases involving the same parties and issues have been filed in two different districts, *the second district* court has discretion to transfer, stay, or dismiss *the second case* in the interest of efficiency and judicial economy) (listing cases) (emphasis added).

In their attempt to establish that "unusual circumstances" are present, Plaintiffs appeal to the general principles of judicial efficiency and prevention of inconsistent rulings. *See* Mot. at 15–17. Neither is availing.  Multiple district courts often litigate the same or similar action in the APA context.  There is a case filed earlier than this one, for example, in the District Court for the District of Columbia seeking to hold FNA's First Data Request unlawful as contrary to the APA. *See Pallek v. Rollins*, 25-cv-1650 (D.D.C.) (Compl., ECF No. 1 filed on May 22, 2025); *compare with* Compl., ECF No.1 (filed on July 28, 2025).  There has been no contention that this case should be enjoined to permit the first filed to go forward unimpeded.

---

[6] Plaintiffs seem to call into question whether this heightened showing applies, stating that "[e]ven assuming that standard applies here, it is clearly met." Mot. at 15.  Plaintiffs make no argument, however, about why this heightened standard does not apply, nor could they, because they are seeking the exact relief that triggers comity considerations, an injunction by one district court against proceedings in another.

Plaintiffs, moreover, fail to plead, let alone establish that the district courts in Kentucky, Michigan, Minnesota, or Pennsylvania cannot adequately adjudicate the claims before them. *See* Mot. at 15–17. Nor have Plaintiffs pled, let alone established, that the Attorney General (or other relevant litigating) offices in those States are incapable of effectively litigating the claims brought against their States. Indeed, *Pennsylvania, Kentucky, and Michigan have already filed stay motions in their respective districts based on the first-to-file rule. See supra* at Background. The court in Kentucky has stayed consideration of the United States' preliminary injunction motion pending its ruling on the motion to stay, *id.*, and the United States has already responded, United States' Opp'n to Defs.' Mot. for Stay, *United States v. Ky. Cabinet for Health & Fam. Servs.*, No. 3:26-cv-00051-CHB-EBA (E.D. Ky. July 21, 2026), ECF No. 17. Additionally, the motion to stay in Pennsylvania is fully briefed. *See* United States' brief in Opp'n to Defs.' Emergency Mot. to Stay, *United States v. Pa. Dep't of Hum. Servs.*, No. 1:26-cv-01787-JPW (M.D. Pa. July 22, 2026), ECF No. 13; Defs.' Reply in Support of Emergency Mot. to Stay, *United States v. Pa. Dep't of Hum. Servs.*, No. 1:26-cv-01787-JPW (M.D. Pa. July 23, 2026), ECF No. 14.

Thus, judicial efficiency is not conserved—nor the fair adjudication of claims advanced—by having this Court determine for its co-equal courts how their resources are best served, rather than permitting them to adjudicate claims arising in their districts. *Cf* Mot. at 16. Comity dictates, and the first-to-file rule prefers, litigation in those districts by those courts to determine their own judicial resources.

Similarly, there is little risk of inconsistent rulings. *See* Mot. at 15. As outlined above, this Court has not reviewed the Third Data Request, or the propriety of Plaintiffs' refusal to negotiate reasonable data and security protocols in good faith. Further, to the extent similar questions of law arise in in the Enforcement Actions, those courts will have this Court's opinions to guide them. And, while Plaintiffs claim the Court "will soon finally resolve all the issues that USDA wants . . . on summary judgment[,]" *id.* at 16, it is Plaintiffs who have bogged down the Court and the parties with an unnecessary discovery dispute in the face of a clearly complete and properly certified administrative record. There is no way to determine how long this case will continue, but it is not likely to be soon resolved.

On both accounts then—(1) establishing that the first-to-file rule counsels court action and (2) that the heightened standard for an injunctive is met—Plaintiffs' motion fails. Chief Judge Boasberg of the U.S. District Court for the District of Columbia recently dispensed with a similar motion in short order. In *World Professional Association for Transgender Health v. FTC*, No. CV 26-532 (JEB), 2026 WL 1999008 (D.D.C. July 10, 2026) ("*WPATH*"),[7] plaintiff sought a temporary restraining order blocking the FTC's prosecution in an enforcement action in another district. *Id.* at *1. Earlier in the litigation, Chief Judge Boasberg issued a preliminary injunction based on the plaintiff's allegation that the FTC's Civil Investigative Demand ("CID") seeking records violated the plaintiff's First Amendment rights. *See id.* The FTC (and several states) then brought an enforcement action in the Northern District of Texas alleging that WPATH violated the FTC Act's prohibitions on unfair or deceptive trade practices and false advertising. WPATH then returned to Chief Judge Boasberg to request an injunction prohibiting the FTC from proceeding with its suit. *See id.*[8]

In denying the motion, Chief Judge Boasberg led the opinion with the apt observation that, "[w]hen parties seek an extraordinary remedy, they must make an extraordinary showing." *Id.* For one, he noted that the enforcement action in Texas was "not an attempt to enforce the CID, which the FTC ha[d] withdrawn[,]" just like the Second Data Request in this case. *Id.* at *2. Thus, like here, there was no potential for frustration of the court's preliminary injunction.

Further, Chief Judge Boasberg was "skeptical" that "the rationale for avoiding duplicative litigation applies to actions by the Government to enforce the law." *Id.* As he noted, "[s]everal courts have reasoned that a plaintiff who files a pre-enforcement challenge to stop the FTC from obtaining

---

[7] True, this case is from an out-of-circuit court, which Plaintiffs will doubtlessly point out. But all district court cases are non-binding on other district courts, even in district courts within the same circuit. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001). Still, the Court is still welcome to consider it for its persuasive value, which Defendants assert is considerable. *See, e.g.*, *Jones v. PGA TOUR, Inc.*, 668 F. Supp. 3d 907, 917 (N.D. Cal. 2023).

[8] A key difference between *WPATH* and this case is that WPATH argued that an injunction issued by D.D.C. was appropriate to protect that court's jurisdiction. *See WPATH*, 2026 WL 1999008, at *1. Chief Judge Boasberg noted that "[t]he D.C. Circuit has held that anti-suit injunctions that 'protect the ordering court's own jurisdiction' are more readily justified than ones whose 'only purpose is to destroy' another court's jurisdiction." *Id.* (quoting *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1105 (D.C. Cir. 2024)). Here, by contrast, Plaintiffs seek an injunction from this Court ostensibly for the benefit of the courts in the Enforcement Actions, not to protect the jurisdiction of this Court.

14

information cannot then force the Commission to bring later enforcement actions as compulsory counterclaims in plaintiff's chosen forum." *Id.* (collecting cases). The same principle applies here. Section 2020(g) requires FNA to "immediately inform" a State Agency of a determination that it has failed to follow the SNAP Act and "allow the State agency a specified period of time for the correction of such failure." 7 U.S.C. § 2020(g). Thus, under Plaintiffs' theory here, any State could file a pre-enforcement action in their preferred forum and ask the court to enjoin any subsequent FNA enforcement action. This would frustrate Section 2020(g)'s forum clause, the FNA and DOJ's authority to bring enforcement actions, and create a race to the courthouse with the federal government two laps behind waiting for the expiration of the period for correction. *See WPATH*, 2026 WL 1999008, at *2 ("Courts have been hesitant to force government agencies to comply with a counterclaim requirement that would compress their investigative timelines and force hasty litigation decisions.").

In response to WPATH's arguments regarding litigation efficiency and the burdens of maintaining separate suits—like those of Plaintiffs' here—Chief Judge Boasberg also had an answer. "WPATH is free to cite this Court's prior Opinion in any attempt to stave off [the cost of maintaining two suits] in the Texas action." *Id.* at *3. The same is true of this Court's previous findings regarding the SNAP Act and FNA's previous data requests.

Thus, like *WPATH*, the Court should deny Plaintiffs' extraordinary request to enjoin proceedings in its fellow District Courts based on no more than generic claims of efficiency and avoidance of conflicting rulings.

### B. Other Equitable Factors

In similar circumstances, where a plaintiff seeks an injunction in a first-filed district court against a later-filed district court (and any future actions), courts in this district have considered equitable factors common to seeking injunction relief. *See, e.g.*, *Amarte USA Holdings*, 2024 WL 3748332, at *2 (applying permanent injunction factors in denying motion seeking to enjoin later-filed cases); *Hoyt v. Amazon.com, Inc.*, No. 19-CV-00218-JSC, 2019 WL 1411222, at *7 (N.D. Cal. Mar. 28, 2019) (considering balance of the equities); *see also Jhangmen Kinwai Furniture Decoration Co. Ltd, Kinwai USA Inc. v. Int'l Mkt. Centers, Inc.*, No. 215CV1419JCMPAL, 2016 WL 697112, at *2

15

(D. Nev. Feb. 18, 2016) ("A court may also relax the first-to-file rule if the balance of equities weighs in favor of the later-filed action."); *WPATH*, 2026 WL 1999008, at *1 (considering TRO factors).[9]

The Ninth Circuit has counseled that courts should refrain from involving the first-to-file rule in cases involving anticipatory suit, *see Alltrade*, 946 F.2d at 628. That is precisely the circumstance here, where Plaintiffs have filed both this suit in anticipation of FNA enforcement of the First Data Request, *see supra* at Background, and this motion in anticipation of enforcement through the Enforcement Actions. The Ninth Circuit has also advised that that "[a] court may decline to apply the first-to-file rule if the balance of convenience and equity weighs in favor of the later filed action." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 708 (N.D. Cal. 2021) (citing *Alltrade*, 946 F.2d at 628). Thus, courts in this Circuit have emphasized that they have "discretion to not apply the first-to-file rule even where all three threshold requirements are met. Fairness, convenience, and equitable concerns may outweigh the benefits of applying the rule[.]" *Subbaiah v. GEICO Gen. Ins. Co.*, No. 219CV06717ABJPRX, 2019 WL 9904278, at *5 (C.D. Cal. Dec. 11, 2019); *see also Torres*, 2026 WL 311504, at *6.[10] Here, the threshold requirements are not met, but additional equitable factors also weigh again entry of an injunction. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[9] Apart from the Enforcement Actions themselves, Plaintiffs seek an injunction prohibiting FNA and the Department of Justice from filing any additional suits. *See* Proposed Order at 1–2 (proposed order stating that "All Defendants and their officers, agents, servants, employees, and attorneys, together with all other entities or persons acting in concert or participation with Defendants, including the United States Department of Justice, are hereby ENJOINED from filing, prosecuting, or otherwise pursuing any action against any of the other Plaintiff States and/or Plaintiff States' agencies . . . until after the instant action before this Court is fully and finally resolved."). Thus, Plaintiffs' motion goes beyond merely seeking an injunction against currently pending case and seeks to preliminarily enjoin Defendants from filing new actions. The traditional preliminary injunction standard clearly applies to this portion of Plaintiffs' requested relief. *See Amarte USA Holdings*, 2024 WL 3748332, at *2

[10] To be clear, the Government is not arguing that the Court should supplant the first-to-file rule *in totem*. Instead, the Government merely contends that, in exercising its discretion to issue equitable relief, the Court may also consider other factors common to establishing entitlement to equitable relief. *See Pacesetter Sys.*, 678 F.2d at 95 (the rule is not a "rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.").

### 1. Irreparable Injury

Plaintiffs do not address irreparable injury to themselves (rather than the Court) in their motion, except perhaps to imply harm from having to litigate both this and the Enforcement Actions concurrently. *See* Mot. at 15–17.

Having to litigate in multiple forums, however, is not an irreparable injury. *See WPATH*, 2026 WL 1999008, at *3 ("[t]he expense and disruption of defending oneself in protracted adjudicatory proceedings is not an irreparable harm." (quoting *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017))); *accord Standard Oil Co. of Cal.*, 449 U.S. at 244 ("the expense and annoyance of litigation is part of the social burden of living under government. As we recently reiterated: Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury" (internal quotations and citations omitted)). The undersigned, for example, is doing so in this case and the *Pallek* case. And Plaintiffs present no reason to question the ability of the Attorney General (or other relevant litigating) offices of Kentucky, Michigan, Minnesota, and Pennsylvania to adequately defend their State Agencies in the District Courts in their States. Further, even subtracting the four attorneys representing those States in this litigation, Plaintiffs still have thirty-four counsel of record in this case. There is no reason to believe combinations of those thirty-four cannot sustain this and other litigation.

### 2. Balance of Equities

Balanced against Plaintiffs' lack of injury, the Government and the public are in fact harmed. FNA is obligated to oversee the SNAP Program and ensure it is free from waste and abuse. Each day FNA cannot obtain the data it needs to fulfil that mission, valuable taxpayer dollars are squandered, preventing it from feeding those in our country with the most need.

This harm is not abstract. FNA is being prevented from executing its statutory duties, real dollars are being wasted, and Plaintiffs are being permitted to persist in violating the SNAP Act. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[t]here is generally no public interest in the perpetuation of unlawful [State] action."). This is borne out by FNA's recent preliminary report, which indicates potentially billions of waste, fraud, and abuse in the 29 States that provided data to FNA. *See* Preliminary Report, https://perma.cc/3UAV-KVNS. And

this does not account for larger SNAP populations of Plaintiff States. In April 2026, Plaintiff States had more than half of all participating SNAP households nationwide, with California alone having more SNAP households than 20 of the compliant States combined.[11]

The public, therefore, has a strong interest in ensuring that the States follow the SNAP Act's mandates, as a government entity's "compliance with a mandatory statutory regime is presumably always in the public interest." *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017); *see also Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law, especially when there are no adequate remedies available." (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013))). Affirmative enforcement suits, such as those recently filed, are exactly the authority the SNAP Act grants FNA and the Department of Justice to ensure the State Agencies are abiding by their SNAP Act obligations.

An injunction prohibiting the FNA and Department of Justice from litigating the Enforcement Action would also encroach on the Executive's constitutional duty to "take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3; *see also United States v. Texas*, 599 U.S. 670, 678 (2023) ("[u]nder Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021))); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("the Government retains 'broad discretion' as to whom to prosecute." (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982))). FNA investigated the allegations relevant to the Enforcement Actions and found sufficient evidence of State Agency non-compliance to refer the matter to the Attorney General pursuant to Section 2020(g). The Attorney General, through the DOJ, has decided to pursue those claims.

---

[11] According to preliminary household participation data for April 2026, California had 3,084,372 participating SNAP households. This is roughly 84,000 more than the combined total of SNAP households that month in Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Dakota, South Dakota, Utah, Vermont, and Wyoming (approximately 3,000,247 households). *See* USDA, *Supplemental Nutrition Assistance Program: Number of Households Participating* (July 10, 2026), https://perma.cc/5G88-UE3J.

3:25-cv-06310-MMC          DEFS' OPP'N TO PLS' MOT. TO ENJOIN ENFORCEMENT ACTIONS

Finally, even if there were some overlap between this case and the Enforcement Actions, equity does not counsel that the former must extinguish the latter.  In fact, our legal system is designed to tolerate and even encourage percolation of legal issues through multiple forums.  *See Anunciato v. Trump*, No. 20-CV-07869-RS, 2020 WL 13547186, at *3 (N.D. Cal. Dec. 23, 2020) ("any concerns about inconsistent judgments are misplaced – our system encourages the independent development of law in each circuit and, consequently, percolation of those results up to the Supreme Court for ultimate decision if necessary."); *see also United States v. Mendoza*, 464 U.S. 154, 160 (1984) (explaining that preventing the same issues from being heard in multiple courts "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue" and "deprive [the Supreme] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question"); *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) ("[P]eriods of 'percolation' in, and diverse opinions from, state and federal appellate courts may yield a better informed and more enduring final pronouncement by [the Supreme] Court." (quoting *Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting))).  It is for this reason that even when legal issues overlap between cases, "[w]ise judicial administration . . . does not counsel [a] rigid mechanical solution[,]" but rather necessitates that courts apply an "ample degree of discretion" and consider factors "equitable in nature."  *Kerotest Mfg.*, 342 U.S. at 183–84; *see also Alltrade*, 946 F.2d at 628 ("[J]udges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity.").

Overall, FNA's interest in protecting the SNAP Program, pursuing violations of the SNAP Act, and the public's interest in conserving valuable taxpayer dollars through the continuance of the Enforcement Actions further support the denial of Plaintiffs' motion for an injunction.

## CONCLUSION

For the reasons outlined above, the Court should deny Plaintiffs' motion to enjoin the Enforcement Actions.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TYLER BECKER
Counsel to the Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

BENJAMIN S. KURLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 598-7755
ben.kurland@usdoj.gov

*Counsel for Defendants*

3:25-cv-06310-MMC          DEFS' OPP'N TO PLS' MOT. TO ENJOIN ENFORCEMENT ACTIONS