ROB BONTA
Attorney General of California
PAUL STEIN
ROBIN GOLDFADEN
Supervising Deputy Attorneys General
SEBASTIAN BRADY
WILLIAM BELLAMY
MARIA F. BUXTON
KIANA HEROLD
LIAM E. O'CONNOR
JULIA HEMING SEGAL
JOSEPH H. MEEKER
Deputy Attorneys General
State Bar No. 336725
 300 S. Spring St. Office 9150-15
 Los Angeles, CA 90013
 Telephone:  (213) 269-6502
 E-mail:  joe.meeker@doj.ca.gov
*Attorneys for Plaintiff State of California*

*Additional counsel listed on signature page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, ET AL.**<br><br>                                  Plaintiffs,<br><br>               v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.**<br><br>                                  Defendants. | Case No. **3:25-cv-06310-MMC**<br><br>**PLAINTIFF STATES' REPLY IN SUPPORT OF MOTION TO ENJOIN PROSECUTION OF RELATED CASES**<br><br>Date: Friday, August 14, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney<br>Trial Date: None set<br>Action Filed: July 28, 2025 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   The Later-Filed Suits Involve The Same Legal Issues And Parties as This Case, so The First-to-File Rule Applies .................................................................. 2

II.  Injunctive Relief is Appropriate Here .......................................................... 6

    A.  Injunctive Relief Is Necessary to Promote Judicial Economy and Avoid Inconsistent Rulings ............................................................... 6

    B.  This Case Was Not An "Anticipatory" Suit ................................................ 9

    C.  The Traditional Equitable Factors Favor Granting Injunctive Relief ....... 10

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Horse Protection Ass'n v. Lyng*
690 F. Supp. 40 (D.D.C. 1988) ........................................................................................ 9

*Beauperthuy v. 24 Hour Fitness USA, Inc.*
No. 06-0715-SC, 2012 WL 3757486 (N.D. Cal. July 5, 2012) ...................................... *passim*

*Biden v. Texas*
597 U.S. 785 (2022) ........................................................................................................ 3

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*
No. 19-CV-05784-JST, 2021 WL 11714904 (N.D. Cal. Dec. 13, 2021) ........................ 6

*Daimler Chrysler Corp. v. Gen. Motors Corp.*
133 F. Supp. 2d 1041 (N.D. Ohio 2001) ......................................................................... 6

*Decker Coal Co. v. Commonwealth Edison Co.*
805 F.2d 834 (9th Cir. 1986) ........................................................................................... 6

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*
544 F. Supp. 2d 949 (N.D. Cal. 2008) ............................................................................. 10

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*
787 F.3d 1237 (9th Cir. 2015) .......................................................................................... 2

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*
No. C-11-1892 EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ............................... 7, 10

*Pacesetter Sys., Inc. v. Medtronic, Inc.*
678 F.2d 93 (9th Cir. 1982) ............................................................................................. 4, 5

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*
263 F. Supp. 3d 293 (D.D.C. 2017) ................................................................................. 11

*Rise Economy v. Vought*
823 F. Supp. 3d 1013 (N.D. Cal. 2026) ........................................................................... 5

*Rittman v. Amazon.com, Inc.*
No. C16-1554-JCC, 2024 WL 4253191 (W.D. Wash. Sept. 20, 2024) ........................... 6, 7, 10

*United States v. Minnesota Department of Children, Youth, and Families*
No. 26-cv-3120 (D. Minn. Jul. 23, 2026) ......................................................................... 8

*United States v. Pennsylvania Department of Human Services*
No. 1:26-CV-01787 (M.D. Pa. Jul. 28, 2026) .................................................................. 8

Plaintiff States' Reply in Support of Motion to Enjoin Prosecution of Related Cases (Case No. 3:25-cv-06310-MMC)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Walker v. Progressive Cas. Ins. Co.*
No. C03-656R, 2003 WL 21056704 (W.D. Wash. May 9, 2003) ............................................ 4

*Ward v. Follett Corp.*
158 F.R.D. 645 (N.D.Cal.1994) ......................................................................................... 10

*World Professional Association for Transgender Health (WPATH) v. FTC*
No. CV 26-532 (JEB), 2026 WL 1999008 (D.D.C. July 10, 2026)......................................... 9

STATUTES

7 U.S.C.
§ 2020(a)(3)................................................................................................. 2, 3, 8, 11
§ 2020(e)(8)...................................................................................................... 3, 4, 11

COURT RULES

Fed. R. Civ. P.
§ 13(a) ....................................................................................................................... 9

OTHER AUTHORITIES

Michael A. Cicero, *First-to-File and Choice-of-Forum Roots Run Too Deep for
Micron to Curb Most Races to the Courthouse*, 90 J. Pat. & Trademark Off.
Soc'y 547, 561–62 (2008)............................................................................................ 6

## INTRODUCTION

USDA's opposition brief boils down to the notion that it can avoid this Court's rulings and jurisdiction simply by issuing the same data demands on new pieces of paper and declaring that previous iterations of the same demands have been "superseded." But the data demands at issue in USDA's Later-Filed Suits seek the same data, rely on the same sources of statutory authority, and are accompanied by the same proposed data-sharing protocols that USDA has already presented for this Court's consideration, and which will be considered by this Court in the parties' summary judgment briefing. Thus, the Later-Filed Suits will turn on the same legal questions at issue in this litigation, including the issue that is central to all of the cases—whether USDA's demands are lawful. Indeed, USDA's Later-Filed Suits expressly seek contrary rulings on some of the key questions this Court has already preliminarily decided. The Later-Filed Suits also involve the same parties, and USDA does not contend otherwise. The Later-Filed Suits are plainly duplicative of this litigation, so the first-to-file rule applies to those cases.

As a matter of comity, this Court, as the first-filed court, is entitled to resolve the question of whether USDA should be permitted to prosecute its duplicative cases in other fora. And under the circumstances present here, enjoining USDA is necessary to promote judicial economy, avoid inconsistent rulings, and prevent USDA from filing still more duplicative actions against the remaining plaintiff states. USDA has thus far brought separate actions against four of the state plaintiffs in this case and may well bring 19 more duplicative suits against the remaining state plaintiffs absent the relief sought here. Each new court would then be forced to waste judicial resources deciding whether the first-to-file rule applies to that suit, to say nothing of the judicial resources that would be wasted relitigating the merits of the case. Allowing USDA to move forward with its duplicative suits would also risk inconsistent rulings on the applicability of the first-to-file rule as well as the underlying legal issues—not just the particular issues that this Court has already preliminarily decided. These are the precise outcomes that the first-to-file rule seeks to prevent, so this Court should apply the rule and enjoin Defendants and those in privity with them from prosecuting any duplicative cases during the pendency of this litigation, including the four they have already filed.

Plaintiff States' Reply in Support of Motion to Enjoin Prosecution of Related Cases (Case No. 3:25-cv-06310-MMC)

## ARGUMENT

**I.    THE LATER-FILED SUITS INVOLVE THE SAME LEGAL ISSUES AND PARTIES AS THIS CASE, SO THE FIRST-TO-FILE RULE APPLIES**

The Later-Filed Suits are duplicative of this litigation. They involve the same parties, turn on the same legal issues, and all seek to resolve the same ultimate question of whether Plaintiff States must comply with USDA's data demands. The purported differences between this case and the Later-Filed Suits that USDA identifies are technical and formalistic in the extreme, and do not defeat the application of the first-to-file rule, which applies so long as the cases involve "substantially similar" parties and issues. *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015).

USDA makes no argument that the parties in the two sets of litigation are dissimilar; nor could it. The Later-Filed Suits were brought at USDA's request and seek to enforce USDA's data demands, and they were brought against the SNAP agencies for four of the Plaintiff States in this case. Without disputing that point, USDA contends that the Later-Filed Suits do not involve similar issues to this case because the Later-Filed suits (1) are based on a supposedly "new" and distinct data demand, and (2) seek different remedies than the claims in this case. *See* Defs' Opp. at 9-10. Neither argument is persuasive.

First, for the reasons articulated in Plaintiffs' opening brief, *see* Dkt. 186 at 12-13, there is nothing "new" about USDA's "Third Data Request"; in all material respects it is identical to USDA's second demand issued in November 2025. The "Third Data Request" demands the same set of data under the same section of the SNAP Act, 7 U.S.C. § 2020(a)(3). And it proposes the same protocol terms presented to the Court in the joint status report, which, USDA contended at the time, provided a basis to dissolve the preliminary injunction enjoining USDA's second demand. *See* ECF No. 143 at 8. Contrary to USDA's assertions, the most recent proposed protocol was not "developed through negotiations between FNA and the Plaintiff States," *see* Defs' Opp. at 7; rather, it is the exact same protocol that USDA proposed to the Plaintiff States

after this Court enjoined USDA's second demand, and it does not incorporate any of the revisions Plaintiffs proposed at that time. *See* ECF No. 186, at 11-12; ECF No. 154.[1]

The so-called "Third Data Request" is thus duplicative of USDA's second data demand from November 2025. Accordingly, the courts in the Later-Filed Suits will be looking, in substance, at the same data demand, and they will be tasked with resolving the same legal questions that have already been preliminarily addressed and will soon be finally resolved in this case, including whether USDA must obtain the State agencies' agreement to a data and security protocol before collecting data under § 2020(a)(3); whether USDA's proposed data and security protocols align with § 2020(e)(8); and whether the State agencies' objections to USDA's proposed protocols are reasonable. Further, the Administrative Record and any discovery ordered by the Court here will overlap considerably or completely with the "Third Data Request." This case and the Later-Filed Suits thus turn on "the same core issues," *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486, at *10 (N.D. Cal. July 5, 2012), which is all that is required for the first-to-file rule to apply.

For this reason, USDA misses the mark in arguing that the Third Data Request is a "separate agency action" as that term is used in the APA context. *See* Defs' Opp. at 5. As an initial matter, unlike in the cases USDA relies on, the Third Data Request was not accompanied by any new reasoning or rationale. *Cf. Biden v. Texas,* 597 U.S. 785, 808 (2022) (new agency action where new memorandum provided more fulsome explanation). Indeed, the "Preliminary Report" that, USDA contends, provides support for its Third Data Request, *see* Defs' Opp. at 8, is already in the Administrative Record produced in this matter, *see* ECF No. 170 at 10, and is the subject of discovery requests currently pending before Judge Westmore, *see* ECF Nos. 180, 181. Thus, the only thing that separates the Third Data Request from the previous demands is that it was issued at a later date. Regardless, what matters here is that the Third Data Request is, in all

---

[1] Indeed, the most recent protocol is less protective in key respects than the version before the Court when it entered the second preliminary injunction in February. *See* ECF No. 154, Exh. A at 2-5. Yet, USDA is now asking four other district courts in the Later-Filed Suits to find that this Court has already determined its latest protocol to be reasonable, notwithstanding the second preliminary injunction, and notwithstanding this Court's statements at the April status conference that the demand remained enjoined and that USDA would have to file a motion if it wanted the Court to weigh in on the sufficiency of its latest protocol. *See* Status Conf. Tr. at 9:11-17.

3

material respects, identical to the November 2025 demand that has already been enjoined. The underlying facts and legal issues surrounding the Third Data Request are "substantially similar"—if not identical—to the facts and issues already raised in this lawsuit. And that is all that is required to apply the first-to-file rule. The rule does not require "[e]xact parallelism" between the two actions. *Walker v. Progressive Cas. Ins. Co.*, No. C03-656R, 2003 WL 21056704, at \*2 (W.D. Wash. May 9, 2003). More important is whether the actions turn on the same "central questions." *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). And USDA's "new" data demand does not raise any new questions not already encompassed by this litigation.[2] Both sets of litigation seek to resolve the question of whether USDA's demands are lawful, and a final judgment in this case will decide the issue of whether the states must comply with USDA's demands.

USDA's own actions in this case further demonstrate that the issues raised by the Third Data Request can, and should, be litigated here. Defendants' AR certifications have varied their language but generally acknowledge that this suit challenges "USDA's decision to seek SNAP data" (ECF No. 170), not any specific individual demand. In fact, USDA's third AR certification expressly refers to USDA's decision to "*enforce FN Administration's data request,*" ECF No. 184-1 (emphasis added), demonstrating that USDA's enforcement actions are part and parcel of this suit, rather than separate and distinct from it. And although Defendants' proposed protocol language has changed throughout the course of the litigation, Plaintiffs' claims regarding the demands themselves remain live. As noted previously, after this Court enjoined USDA's second data demand, USDA revised its proposed protocol language and, at a status conference, asked this Court to determine that its proposal was sufficiently protective under § 2020(e)(8). When presented with that proposed language—the same protocol terms appended to the Third Data

---

[2] Because the Third Data Request is materially identical to the data demands already enjoined in this case, and raises the same factual and legal issues as those demands, it is irrelevant that the Plaintiffs' Second Amended Complaint (SAC) does not expressly plead allegations related to the Third Data Request. The Third Data Request is plainly encompassed by the claims in the SAC, which challenges USDA's attempts to acquire the same data under the same statutory authority as the Third Data Request. A contrary conclusion would allow USDA to avoid this Court's jurisdiction and orders by issuing a continuous series of identical data demands, each one "superseding" the last.

4

Request—this Court stated that the question of whether the proposed protocols were sufficient could be resolved by filing a motion on the merits in this case. *See* Status Conf. Tr. at 9:11-17 (ECF No. 159). USDA could have filed a motion to dissolve the preliminary injunction or waited for summary judgment. Instead, USDA repackaged the same data demand and proposed protocol as a "new request," and filed separate cases seeking more favorable rulings from other courts. The Third Data Request is clearly part of the same decision to demand Plaintiff States' SNAP data, which Plaintiff States challenge in this litigation.

As for USDA's contention that the actions involve different requested remedies, that distinction is irrelevant to the first-to-file rule. For example, in *Pacesetter*, the Ninth Circuit applied the rule to a patent infringement suit and a separate suit seeking a declaration that the allegedly infringed patents were invalid, because the two actions turned on the same legal and factual issues and "differ[ed] only as to the remedy sought." 678 F.2d at 95-96. The same is true in this case. As this Court observed at the April status conference, an action seeking an order to require states to hand over the data—as USDA is seeking in the Later-Filed Suits—is merely "the flip side" of Plaintiffs' claims in this suit. Status Conf. Tr. at 23:18-25. USDA agreed with that characterization. *See id.*

USDA's reliance on *Rise Economy v. Vought*, 823 F. Supp. 3d 1013, 1031 (N.D. Cal. 2026) is also misplaced. Defs' Opp. at 11-12. The two cases at issue in *Rise Economy* were brought by different sets of plaintiffs against the same agency, and although both sets of plaintiffs alleged that defendants were working to dismantle the Consumer Finance Protection Bureau (CFPB), the two suits focused on distinct events. The first challenged the CFPB's internal efforts to dismiss employees beginning in February 2025, and the second challenged CFPB's November 2025 decision not to seek funding from the Federal Reserve. *Id.* at 1026. The relief sought in each case was materially different because each case sought to remedy different (and unrelated) unlawful behavior. But here, the relief sought in this case and the Later-Filed Suits are mirror images of each other: the USDA seeks an order forcing the states to comply with its data demands, and the Plaintiff States seek a declaration that those same data demands are contrary to law, arbitrary and

5

capricious, and unenforceable. The requests for relief turn on the same legal questions and should be resolved in one case.

Nothing in USDA's opposition changes the obvious conclusion that the Later-Filed Suits are simply an attempt to relitigate Plaintiff States' compliance with USDA's data demands in another forum. And as this Court observed in the April status conference, the lawfulness of USDA's demands, and the sufficiency of its new proposed protocol language, will be put before this Court in the parties' forthcoming motions for summary judgment. Status Conf. Tr. at 34:20-22; 35:3-9. Put another way, whether USDA is legally entitled to the data it demanded is what the "summary judgment motions are going to be all about[.]" *Id.* at 34:12-15. USDA should not be permitted to undermine or pre-empt this Court's ruling on that ultimate issue by seeking that same relief in other courts.

## II.    INJUNCTIVE RELIEF IS APPROPRIATE HERE

### A.    Injunctive Relief Is Necessary to Promote Judicial Economy and Avoid Inconsistent Rulings

A court's authority to enjoin the parties before it from engaging in duplicative litigation is well-established. *See*, *e.g.*, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (upholding grant of order enjoining later filed case); *Beauperthuy,* 2012 WL 3757486, at *10 (enjoining prosecution of later-filed suits); *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 11714904, at *4 (N.D. Cal. Dec. 13, 2021) (same); *Rittman v. Amazon.com, Inc.*, No. C16-1554-JCC, 2024 WL 4253191, at *4 (W.D. Wash. Sept. 20, 2024) (same). And USDA has it backward in arguing that the fate of the duplicative, subsequent suits should be decided in the four later-filed actions: "[T]he most appropriate approach is for the court where a complaint is first filed to determine which case should go forward." *Daimler Chrysler Corp. v. Gen. Motors Corp.*, 133 F. Supp. 2d 1041, 1042 (N.D. Ohio 2001) (collecting cases); *see also* Michael A. Cicero, *First-to-File and Choice-of-Forum Roots Run Too Deep for Micron to Curb Most Races to the Courthouse*, 90 J. Pat. & Trademark Off. Soc'y 547, 561–62 (2008) (noting that courts generally "grant forms of relief deferring to the first-filed court to determine the fate of the second-filed action.").

6

Accordingly, it is appropriate, and sometimes necessary, for first-filed courts to enjoin the parties from prosecuting a duplicative suit, most often when doing so would best promote the rule's purposes of avoiding inconsistent rulings and the waste of judicial resources.

Here, the need for injunctive relief to prevent these harms is manifest, given that USDA has filed not just one duplicative suit in another court—as is most often the situation in cases applying the first-to-file rule—but four. And under the logic USDA advances in its opposition brief, nothing is stopping it from filing 19 additional enforcement actions, in 19 different district courts, against the remaining Plaintiff States in this suit. In addition to the drain on judicial resources that relitigating the merits of this case many times over would require, it would be particularly inefficient to require each of those courts to separately consider and rule on the issue of whether the first-to-file rule applies in the first place. Requiring each individual state defendant to file its own first-to-file motion would be its own form of duplicative litigation. *See Rittman*, 2024 WL 4253191, at *2 (granting injunction where "it would be uneconomical for the parties and the courts to adjudicate similar motions . . . in district courts other than this one"). The sheer number of suits thus provides a good reason why the four Defendant States should not be required to first "ask the [] district court[s] in the second filed action[s] to stay proceedings." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *9 (N.D. Cal. Aug. 9, 2012).

As USDA notes (Defs' Opp. at 13), the state defendants in the Later-Filed Suits have already sought stays, but USDA omits the fact that those requested stays are *limited*—they only seek to stay proceedings until this Court has had an opportunity to resolve the first-to-file motion in the first instance. Absent injunctive relief in this matter, each state defendant will be required to brief a full stay motion based on first-to-file principles, requiring the courts hearing those cases to spend yet more time revisiting the issue. It is irrelevant whether those courts can "adequately adjudicate" such motions, *id.*—there is no doubt that they can; the point is that doing so would waste judicial resources.

Some of the courts hearing the Later-Filed Suits have set schedules that will allow this Court to decide the Plaintiffs' States first-to-file motion before those courts reach that issue. For

example, in the Minnesota litigation, after noting that the case before it "has considerable overlap" with this case because it raises "some of the same issues that underlie this case, involving the same parties," *United States v. Minnesota Department of Children, Youth, and Families*, No. 26-cv-3120 (KMM/DTS) (D. Minn. Jul. 23, 2026) (Dkt. 23, at 1), the court stayed briefing on USDA's preliminary injunction motion and encouraged the parties to meet and confer on a briefing schedule for a potential motion to stay, *see id.* at 2. Similarly, in the Pennsylvania litigation, although the court denied Pennsylvania's motion to stay briefing on USDA's preliminary injunction motion pending this Court's resolution of the first-to-file issue, *see United States v. Pennsylvania Department of Human Services*, No. 1:26-CV-01787 (M.D. Pa. Jul. 28, 2026) (Dkt. 16, at 1), the court nevertheless extended Pennsylvania's deadline to respond to USDA's preliminary injunction motion to August 13, 2026, and set USDA's reply at August 27, 2026, *see id.* (Jul. 27, 2026) (Dkt. 15, at 1)—well after this Court's hearing on the instant motion. Granting injunctive relief would obviate the need for those courts to consider full stay motions, and would also reduce the risk of inconsistent rulings on threshold first-to-file issues, including whether the Later-Filed Suits should be stayed, dismissed, or transferred.

Injunctive relief is also necessary to prevent inconsistent rulings on the merits issues that this Court has already preliminarily addressed and will soon resolve at summary judgment. The risk of such rulings is exceptionally high in this case because, as Plaintiffs articulated in their opening brief, USDA expressly asks the courts hearing the Later-Filed suits to revisit this Court's key rulings, including by asking those courts to conclude that USDA need not obtain Plaintiff States' agreement to data and security protocols prior to disclosing data under § 2020(a)(3). Although it is true that circuits and district courts are free to reach different answers on abstract legal questions, *see* Defs' Opp. at 19, in its later-filed suits, USDA is asking courts to revisit this Court's determinations regarding the legal rights of the *same parties* in the *same dispute*. That is not simply developing the law, as USDA contends: it is asking for a do-over before a different judge. Such an effort is plainly improper and "offends the federal judiciary's policies of finality, economy, and comity, however 'questionable' [USDA] thinks the previous rulings are." *Beauperthuy*, 2012 WL 3757486, at \*13. For the same reason, USDA is wrong that the injunction

8

Plaintiff States seek here would somehow "undercut[]" the authority of the other district courts in the Later-Filed suits, Defs' Opp. at 1; the requested injunction would not restrict any other court's authority at all, only USDA's ability to burden the other courts with costly, duplicative litigation.

USDA spends considerable time arguing that this Court should follow *World Professional Association for Transgender Health (WPATH) v. FTC*, No. CV 26-532 (JEB), 2026 WL 1999008 (D.D.C. July 10, 2026), but that case is inapposite. As a preliminary matter, the court's ruling was based on Federal Rule of Civil Procedure Section 13(a), not the first-to-file rule. *See id.* at *2. But even if *WPATH* were a first-to-file case, the facts are distinguishable, for two main reasons. First, *WPATH* involved only one subsequent suit, and so did not pose a similarly grave risk of inconsistent rulings and wasted judicial resources as presented by USDA's four (and counting) Later-Filed Suits here. Second, the court in *WPATH* noted that the litigation before it had not progressed to a point where the second-filed enforcement action represented a "vexatious attempt to relitigate issues already decided." *Id.* at *3 (quoting *Am. Horse Protection Ass'n v. Lyng*, 690 F. Supp. 40, 44 (D.D.C. 1988)). Here, in sharp contrast, the case has been pending for over a year, has spanned three separate orders blocking USDA from enforcing its data demands, and is now heading toward resolution on summary judgment. And, as explained above, USDA *does* seek to relitigate issues that this Court has already considered.

The bottom line is that "[i]t is better that a single district court, one already versed in the law of the case and the case's history" decide the issues before it, *see Beauperthuy*, 2012 WL 3757486, at *12, than to allow USDA to pursue duplicative litigation in courts across the country. Enjoining USDA from further prosecuting the Later-Filed Suits would promote judicial economy, avoid inconsistent judgments in multiple fora, and further the interests of comity by allowing this Court, as the first-filed court, to resolve the question of whether the Later-Filed Suits should proceed.

**B.    This Case Was Not An "Anticipatory" Suit**

USDA contends that this Court should not apply the first-to-file rule because this case was filed "in anticipation of FNA enforcement of the First Data Request," and that the Plaintiff States' motion to enjoin the Later-Filed Suits was filed "in anticipation of enforcement through the

9

Enforcement Actions." Defs' Opp. at 16. These arguments misstate the facts and are wrong on the law.

An action amounts to an anticipatory suit when the plaintiff in the first action was in receipt of "specific, concrete indications that a suit by defendant was imminent." *Nat'l Union Fire Ins. Co.*, 2012 WL 3277222, at *5 (*quoting Ward v. Follett Corp.*, 158 F.R.D. 645, 638 (N.D.Cal.1994)). However, a suit is not anticipatory for the purposes of the first-to-file rule if "the imminency of a possible lawsuit is less pronounced." *Id.* at *6. For example, in *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 961 (N.D. Cal. 2008), the court concluded that a plaintiff's letter stating that they would be forced to take further legal action if they did not receive a favorable response, but indicating that amicable resolution may be possible, did not present an imminent threat of legal action that rendered the defendant's later-filed suit "anticipatory."  Here, Plaintiffs filed this suit in response to USDA threatening to initiate disallowance proceedings unless Plaintiffs complied with USDA's unlawful data demands. The suit was necessary to preserve the Plaintiff States' rights and prevent the loss of hundreds of millions of dollars of critical administrative funding. Moreover, this case was filed nearly a year before USDA filed the Later-Filed Suits.

USDA's second argument, that *this motion* was "anticipatory," is incoherent. The motion was filed after the Later-Filed suits, and in response to them. More to the point, a motion is not a suit, so the anticipatory suit exception to the first-to-file rule does not apply to this motion.

### C.    The Traditional Equitable Factors Favor Granting Injunctive Relief

Although some courts have considered the traditional injunction factors in deciding whether to issue an injunction pursuant to the first-to-file rule, district court decisions from this circuit demonstrate that consideration of those factors is not required. *See*, *e.g.*, *Beauperthuy*, 2012 WL 3757486, at *13 (not addressing traditional injunction factors); *Rittman*, 2024 WL 4253191, at *2 (same). An injunction barring subsequent, duplicative litigation under the first-to-file rule serves wholly different purposes than a traditional injunction preserving the status quo, and so turns on different considerations. But even if considered, the traditional factors favor granting injunctive relief here.

10

As for irreparable harm, in addition to the harms that will be borne by the courts hearing the Later-Filed Suits, inconsistent rulings on the underlying questions of law that this Court has already preliminarily decided would irreparably harm the Plaintiff States. If another court were to grant USDA's requests for preliminary injunctions in the Later-Filed Suits and order the state defendants to produce the demanded data, it would undermine the preliminary relief that the Plaintiff States have already obtained in this case and deprive them of the ability to receive further effective relief in this suit at summary judgment. Moreover, if another court accepts USDA's invitation to overrule this Court's conclusions on the requirements for a data and security protocol under § 2020(a)(3) and § 2020(e)(8), the state defendants may be ordered to disclose data in a manner that this Court has already concluded is contrary to the SNAP Act.

As for the balance of the equities and the public interest, preventing USDA from pursuing litigation with the express goal of undermining this Court's conclusions will pose no harm to USDA. And preventing data from being disclosed to USDA in a manner that is contrary to the demands of the SNAP Act is not a harm to USDA either. Indeed, as USDA itself notes, a government entity's "compliance with a mandatory statutory regime is presumably always in the public interest." *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017). And, contrary to USDA's contentions, preventing USDA from prosecuting duplicative litigation based on the same requests that are at issue in this case does not undermine the federal government's authority to enforce the law, *see* Defs' Opp. at 17-18. Whether USDA's request complies with the law, and whether it is entitled to the data it seeks, can and will be resolved at summary judgment in this case. USDA may also move to dissolve the Second Preliminary Injunction in this case at any time. But USDA is not entitled to make an end run around this Court's orders by seeking conflicting rulings from multiple other courts, and it will suffer no harm by resolving these issues in this case, where all the Plaintiff States are already present, and which has already been pending for more than a year. By contrast, allowing USDA to file duplicative litigation will burden the court system, undermine comity between the courts, and, for the reasons explained above, pose a severe risk of harm to the Plaintiff States.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion and enjoin USDA and U.S. DOJ from prosecuting their Later-Filed Suits and any additional duplicative suits against Plaintiff States and/or their agencies based on the same or similar demands for personal and sensitive SNAP data.

Dated: July 31, 2026                           Respectfully submitted,

                                               ROB BONTA
                                               Attorney General of California
                                               PAUL STEIN
                                               ROBIN GOLDFADEN
                                               Supervising Deputy Attorneys General
                                               SEBASTIAN BRADY
                                               WILLIAM BELLAMY
                                               MARIA F. BUXTON
                                               KIANA HEROLD
                                               LIAM E. O'CONNOR
                                               JULIA HEMING SEGAL

                                               */s/ Joe Meeker*
                                               JOSEPH H. MEEKER
                                               DEPUTY ATTORNEY GENERAL
                                               *Attorneys for Plaintiff State of California*

12

| **ADDITIONAL COUNSEL FOR PLAINTIFFS** | |
|---|---|
| Letitia James<br>Attorney General of New York<br><br>*/s/ Mark Ladov*<br>Mark Ladov<br>Special Counsel<br>Julie Dona<br>Special Counsel<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8240<br>mark.ladov@ag.ny.gov<br>*Attorneys for Plaintiff State of New York* | Kwame Raoul<br>Attorney General of Illinois<br><br>*/s/ Sherief Gaber*<br>Harpreet K. Khera<br>Bureau Chief, Special Litigation<br>Sherief Gaber<br>Assistant Attorney General<br>115 S. LaSalle St., 35th Flr.<br>Chicago, Illinois 60603<br>(773) 590-7127<br>sherief.gaber@ilag.gov<br>*Attorneys for Plaintiff State of Illinois* |
| Kristin Mayes<br>Attorney General of Arizona<br><br>*/s/ Luci D. Davis*<br>Luci D. Davis (AZ No. 035347)<br>Hayleigh S. Crawford (AZ No. 032326)<br>2005 N. Central Ave. Phoenix, AZ 85004<br>(602) 542-3333<br>Luci.Davis@azag.gov<br>Hayleigh.Crawford@azag.gov<br>ACL@azag.gov<br>*Attorneys for Plaintiff State of Arizona* | Philip J. Weiser<br>Attorney General of Colorado<br><br>*/s/ David Moskowitz*<br>David Moskowitz<br>Deputy Solicitor General<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>david.moskowitz@coag.gov<br>*Attorneys for Plaintiff State of Colorado* |
| William Tong<br>Attorney General of Connecticut<br><br>*/s/ Janelle R. Medeiros*<br>Janelle R. Medeiros<br>Special Counsel for Civil Rights<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5020<br>Janelle.Medeiros@ct.gov<br>*Attorneys for Plaintiff State of Connecticut* | Kathleen Jennings<br>Attorney General of Delaware<br><br>*/s/ Vanessa L. Kassab*<br>Ian R. Liston<br>Director of Impact Litigation<br>Vanessa L. Kassab<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br>*Attorneys for Plaintiff State of Delaware* |

13

| | |
|---|---|
| Brian L. Schwalb<br>Attorney General for the District of Columbia<br><br>*/s/ Nicole S. Hill*<br>Nicole S. Hill<br>Assistant Attorney General<br>Office of the Attorney General for the District of Columbia<br>400 Sixth Street, NW<br>Washington, D.C. 20001<br>(202) 727-4171<br>nicole.hill@dc.gov<br>*Attorneys for Plaintiff District of Columbia* | Anne E. Lopez<br>Attorney General of Hawai'i<br><br>*/s/ Kaliko'onālani D. Fernandes*<br>Special Assistant to the Attorney General<br>Kaliko'onālani D. Fernandes<br>Solicitor General<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>kaliko.d.fernandes@hawaii.gov<br>*Attorneys for Plaintiff State of Hawai'i* |
| Office of The Governor *ex rel*. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky<br><br>*/s/ S. Travis Mayo*<br>S. Travis Mayo<br>General Counsel<br>Laura C. Tipton<br>Deputy General Counsel<br>Office of the Governor<br>700 Capitol Avenue, Suite 106<br>Frankfort, KY 40601<br>(502) 564-2611<br>travis.mayo@ky.gov<br>laurac.tipton@ky.gov<br>*Attorneys for Plaintiff Kentucky Governors' Office* | Aaron M. Frey<br>Attorney General of Maine<br><br>*/s/ Brendan Kreckel*<br>Brendan Kreckel<br>Assistant Attorney General<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 0433-0006<br>Tel.:  207-626-8800<br>Fax:  207-287-3145<br>brendan.kreckel@maine.gov<br>*Attorneys for Plaintiff State of Maine* |
| Anthony G. Brown<br>Attorney General of Maryland<br><br>*/s/ James C. Luh*<br>James C. Luh<br>Senior Assistant Attorney General<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>410-576-6411<br>jluh@oag.state.md.us<br>*Attorneys for Plaintiff State of Maryland* | Andrea Joy Campbell<br>Attorney General of Massachusetts<br><br>*/s/ Katherine Dirks*<br>Katherine Dirks<br>Chief State Trial Counsel<br>Cassandra Thomson<br>Assistant Attorney General<br>Office of the Massachusetts Attorney General<br>1 Ashburton Place Boston, MA 02108<br>(617) 963-2277<br>katherine.dirks@mass.gov<br>cassandra.thomson@mass.gov<br>*Attorneys for Plaintiff Commonwealth of Massachusetts* |

14

| | |
|---|---|
| Dana Nessel<br>Attorney General of Michigan<br><br>/s/ Neil Giovanatti<br>Neil Giovanatti<br>Assistant Attorney General<br>Michigan Department of Attorney General<br>525 W. Ottawa<br>Lansing, MI 48909<br>(517) 335-7603<br>giovanattin@michigan.gov<br>beachb@michigan.gov<br>*Attorneys for Plaintiff State of Michigan* | Keith Ellison<br>Attorney General of Minnesota<br><br>/s/ Joseph R. Richie<br>Joseph R. Richie<br>Special Counsel<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota, 55101<br>(651) 300-0921<br>joseph.richie@ag.state.mn.us<br>*Attorneys for Plaintiff State of Minnesota* |
| Jennifer Davenport<br>Attorney General of New Jersey<br><br>/s/ Kashif T. Chand<br>Kashif T. Chand (NJ Bar No. 016752008)<br>Assistant Attorney General<br>New Jersey Office of the Attorney General,<br>Division of Law<br>124 Halsey Street, 5th Floor<br>Newark, NJ 07101<br>Tel: (973) 648-2052<br>kashif.chand@law.njoag.gov<br>*Attorneys for Plaintiff State of New Jersey* | Raúl Torrez<br>Attorney General of the State of New Mexico<br><br>/s/ Steven Prefrement<br>Steven Perfrement<br>Senior Litigation Counsel<br>New Mexico Department of Justice<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>SPerfrement@nmdoj.gov<br>505-601-7727<br>*Attorneys for the State of New Mexico* |
| Dan Rayfield<br>Attorney General of Oregon<br><br>/s/ Scott P. Kennedy<br>Scott P. Kennedy<br>Senior Assistant Attorney General<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>Tel (971) 453-9050<br>Fax (971) 673-5000<br>Scott.Kennedy@doj.oregon.gov<br>*Attorneys for Plaintiff State of Oregon* | Josh Shapiro, in his official capacity as<br>Governor of the Commonwealth of<br>Pennsylvania<br><br>/s/ Jacob B. Boyer<br>Jennifer Selber<br>General Counsel<br>Jacob B. Boyer<br>Deputy General Counsel<br>Pennsylvania Office of the Governor<br>30 N. 3rd St., Suite 200<br>Harrisburg, PA 17101<br>(717) 460-6786<br>jacobboyer@pa.gov<br>*Counsel for Governor Josh Shapiro* |

Plaintiff States' Reply in Support of Motion to Enjoin Prosecution of Related Cases (Case No. 3:25-cv-06310-MMC)

| | |
|---|---|
| Peter F. Neronha<br>Attorney General of Rhode Island<br><br>*/s/ Madeline R. Becker*<br>Madeline R. Becker (RI Bar No. 10034)<br>Special Assistant Attorney General<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400, Ext. 2151<br>mbecker@riag.ri.gov<br>*Attorneys for Plaintiff State of Rhode Island* | Nicholas W. Brown<br>Attorney General of Washington<br><br>*/s/ Jennifer K. Chung*<br>Jennifer K. Chung, WSBA #51583<br>William Mcginty, WSBA #41868<br>Julie Moroney, WSBA #59017<br>Assistant Attorneys General<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>206-464-7744<br>jennifer.chung@atg.wa.gov<br>william.mcginty@atg.wa.gov<br>julie.moroney@atg.wa.gov<br>*Attorneys for Plaintiff State of Washington* |
| Joshua L. Kaul<br>Attorney General of Wisconsin<br><br>*/s/ Karla Z. Keckhaver*<br>Karla Z. Keckhaver<br>Assistant Attorney General<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>608-264-6365<br>karla.keckhaver@wisdoj.gov<br>*Attorneys for Plaintiff State of Wisconsin* | Aaron D. Ford<br>Attorney General of Nevada<br><br>*/s/ Heidi Parry Stern*<br>Heidi Parry Stern (Bar. No. 8873)<br>Solicitor General<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>HStern@ag.nv.gov<br>*Attorneys for Plaintiff State of Nevada* |

16