UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br>Plaintiffs,<br>v.<br>UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,<br>Defendants. | Case No. 25-cv-06310-MMC (KAW)<br>**ORDER RE 6/18/2026 DISCOVERY LETTERS**<br>Re: Dkt. Nos. 179, 180, 181<br>[Discovery Letter Nos. 1-3] |

Plaintiff States filed the instant litigation against Defendants United States Department of Agriculture ("USDA"), United States Secretary of Agriculture Brooke Rollins, and United States Department of Agriculture's Office of Inspector General, challenging Defendant USDA's demand for personally identifying information and total amounts of benefits received for all SNAP applicants and recipients since January 2020. (Second Amend. Compl. ("SAC") ¶¶ 1, 11, Dkt. No. 146.) Pending before the Court are three discovery letters, concerning: (1) whether Defendants should be required to complete and supplement the administrative record ("AR"), (2) Plaintiffs' requests for production ("RFPs"), and (3) Plaintiffs' interrogatories. (Discovery Letter re AR, Dkt. No. 179; Discovery Letter re RFPs, Dkt. No. 180; Discovery Letter re Interrogatories, Dkt. No. 181.)

**A. Discovery Letter re Administrative Record**

In general, "judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1986). The AR, in turn, "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* (internal quotation omitted). Moreover, "[a]n agency may not exclude information it

United States District Court
Northern District of California

considered on the grounds that it did not rely on that information." *Doe v. United States Dep't of Homeland Sec.*, No. 20-cv-07517-BLF, 2021 U.S. Dist. LEXIS 146167, at *4 (N.D. Cal. Aug. 4, 2021) (internal quotation omitted).

Here, Plaintiffs seek: (1) that the AR be completed, (2) that the AR be supplemented by requiring Defendants to respond to discovery, and (3) that a privilege log be produced. (Discovery Letter re AR at 3, 4.)

**i. Completing the Record**

Typically, "[a]n agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." *Doe*, 2021 U.S. Dist. LEXIS 146167, at *4. To overcome that presumption, a plaintiff "must present clear evidence to the contrary[.]" *Id.* This clear evidence standard requires that a plaintiff: (1) "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *Gill v. Dep't of Justice*, No. 14-cv-3120-RS (KAW), 2015 U.S. Dist. LEXIS 170347, at *16-17 (internal quotation omitted). Neither bad faith nor improper motive, however, are required to rebut the presumption of completeness. *Id.* at *4-5.

In *Doe*, the district court found that the plaintiffs satisfied the clear evidence standard where the plaintiffs pointed to "the complete absence of any mention or explanation for the over three-year delay in adjudicating [an] I-485 application -- more than six times longer than the typical processing time -- and subsequent revocation of his I-140 petition[.]" 2021 U.S. Dist. LEXIS 146167, at *5. While the district court acknowledged that the agency had the authority to revoke the I-140 petition, the district court found it meaningful that there was no "explanation or acknowledgment of the unusually long delay -- six times longer than typical -- that led to a complete reversal of the prior finding that Doe I was an individual of extraordinary ability, which Defendants had found twice previously for his O-1 nonimmigrant status and initial I-140 Petition

United States District Court
Northern District of California

approval." *Id.* at *6-7. The district court thus found that it was "reasonable and non-speculative[] for Plaintiffs to believe that there are documents in the record that shed light on why Defendants reversed their three-year old decision on Doe I's I-140 Petition and the finding that he is an individual of extraordinary ability." *Id.* at *9.

Likewise in *Treez, Inc. v. United States Department of Homeland Security*, the district court found that the plaintiffs had rebutted the presumption of completeness where the plaintiffs alleged that there was nothing in the record "explain[ing] or articulat[ing] the reasons for departing from past precedent" or the decision to "appl[y] a novel legal requirement for H-1B visas that constitutes a new substantive rule." No. 22-cv-07027-RS (TSH), 2023 U.S. Dist. LEXIS 110823, at *12 (N.D. Cal. June 27, 2023). The district court found this was a reasonable, non-speculative ground to find that documents considered by the agency were not included in the AR. *Id.*; *see also id.* at *10 (explaining that the plaintiffs had sufficiently identified materials omitted from the record "by pointing to the absence of any communications").

As in *Doe* and *Treez, Inc.*, the Court finds that Plaintiffs have met their burden of identifying materials omitted from the record. Plaintiffs point to the absence of **any** intra- or inter-agency documents pre-dating Defendant USDA's first demand for data on May 6, 2025, despite Defendant Rollins acknowledging coordinating with DOGE during that period and Defendant USDA's attempts at obtaining data from Plaintiffs' EBT vendors. (Discovery Letter re AR at 3.) It is simply not apparent how no documents could exist from this period. Notably, Defendants do not appear to suggest that such documents do not exist, instead arguing that they may be subject to deliberative process privilege. (*See id.* at 8.) Yet Defendants fail to explain how coordination with DOGE for data requests or requests for data from EBT vendors would constitute deliberative process. Plaintiffs also observe that there are no documents explaining the scope of data requested and Defendant USDA's decision to bypass existing systems and procedures.[1] (*Id.* at 3.) As explained in *Doe* and *Treez, Inc.*, when there is a significant departure from past precedent, the

[1] The departure from past precedent was also acknowledged by Defendant Rollins, who asserted in an interview that Defendant USDA was asking every state to provide SNAP data "for the first time in history[.]" (*See* Discovery Letter re RFPs, Exh. A at 5-6, n. 1.)

United States District Court
Northern District of California

absence of any documents in the AR to explain such a departure constitutes a non-speculative ground for believing that the AR was not complete. Moreover, Plaintiffs' second cause of action directly challenges Defendants' departure from past precedent. (*See* SAC ¶ 370.) In such circumstances, courts have found that to allow "Defendants to omit . . . their internal reasoning or explanations for a departure now would leave a materially incomplete and fictional account of the actual decisionmaking process the Court must review in this case." *Treez, Inc.*, 2023 U.S. Dist. LEXIS 110823, at *14-15 (internal quotation omitted).

Defendants complain that Plaintiffs "have not identified a single document with which the record should be . . . completed." (Discovery Letter re AR at 7.) Courts have rejected similar arguments, finding that requiring a plaintiff to identify the specific documents that are missing to be "an impossibly high, and incorrect, standard. Demanding Plaintiff identify individualized documents that were considered but that they do not have creates an unattainable remedy because it would force Plaintiffs to already have what they are seeking." *Doe*, 2021 U.S. Dist. LEXIS 146167, at *11; *see also Treez, Inc.*, 2023 U.S. Dist. LEXIS 110823, at *14 (finding that requiring a plaintiff identify a particular document that the defendants considered would create a "catch-22 standard").

Plaintiffs identify two other categories of information that they assert are missing from the AR. First, Plaintiffs seek the materials underlying a May 13, 2026 "preliminary" review of SNAP data from non-plaintiff states, which they have used to justify the continued demands for Plaintiffs' data. (Discovery Letter re AR at 3.) The May 13, 2026 review, however, occurred after all of the data requests at issue and the filing of the operative complaint. Thus, it is not clear how this constitutes documents and materials on which the data requests at issue were based. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (explaining that review of a decision under the APA "is to be based on the full administrative record that was before the Secretary at the time he made his decision.").

Second, Plaintiffs point to the absence of materials concerning the possible use of the demanded data for immigration enforcement. (Discovery Letter re AR at 3.) In support, Plaintiffs point to Vice President J.D. Vance's January 22, 2026 statement, asserting that he called on "state

and local officials" to share SNAP and Medicaid data to support the administration's mass deportation campaign. (*Id.*; *see also* SAC ¶ 139.) A review of the cited video clip, however, shows that Mr. Vance was not discussing the requests at issue here, but was speaking about a hypothetical situation where an individualized request for SNAP and Medicaid data might be made to locate a specific person that officials were attempting to find. Plaintiffs also note that the USDA website removed language stating that individuals can apply for or receive SNAP without immigration consequences, as well as Defendants' refusal to confirm that it will not share SNAP data for immigration or enforcement purposes, but this is not clear evidence of an intent to use the requested SNAP data for immigration enforcement. (*See* SAC ¶¶ 159-160.) Thus, at this juncture, the Court cannot find that Plaintiffs have identified a non-speculative ground for their belief that documents concerning immigration enforcement are not in the record.

Accordingly, the Court ORDERS Defendants to complete the AR by producing and including all documents directly or indirectly before the agency, including inter- and intra-agency records pre-dating the first request for SNAP data and documents explaining the scope of data requested or the decision to depart from past practice. To be clear, this order is not limited to such documents. Should Defendants find documents that, for example, point to the use of the demanded data for immigration enforcement, Defendants must still include such documents in the AR if they were directly or indirectly before the agency when the demands for data were made.

**ii. Supplementing the Record**

In general, an APA case is decided based on the AR. There are, however, "narrow exceptions to this general rule." *Lands Council v. Forester of Region One of the U.S. Forest Serv.*, 395 F.3d 1019, 1030 (9th Cir. 2004). Specifically, courts are permitted to supplement the record with extra-record evidence under four circumstances:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Id.* (internal quotation omitted). The purpose of these exceptions is "to identify and plug holes in

United States District Court
Northern District of California

the administrative record." *Id.* That said, "[t]hough widely accepted, these exceptions are narrowly construed and applied." *Id.* If a court finds that "extra-record evidence is admissible under the circumstances above, then extra-record discovery should be permitted under the same circumstances." *Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 U.S. Dist. LEXIS 84544, at *7-8 (N.D. Cal. May 2, 2025).

Here, Plaintiffs argue that discovery and supplementation of the record are necessary because there are "glaring omissions from Defendants' record" that go to "fundamental questions of how Defendants determined how they would use and share the data demanded." (Discovery Letter re AR at 4.) As the Court previously discussed, there appears to be significant gaps in the AR, including the lack of any intra- or inter-agency documents pre-dating the first demand for data, as well as the lack of documents explaining the scope of data requested or the decision to depart from past practice. Additionally, Plaintiffs argue there is pretext and impropriety in making the demands. (*Id.*) The Court agrees that Plaintiffs have demonstrated pretext and impropriety, such that discovery is warranted.

In *DOC v. New York*, the Supreme Court found that extra-record discovery was justified because there was evidence of bad faith. 588 U.S. 752, 782-83 (2019). There, the Secretary of Commerce decided to reinstate a question about citizenship on the census questionnaire. *Id.* at 758. The Supreme Court found that discovery was warranted where the Secretary "was determined to reinstate a citizenship question from the time he entered office" and adopted the stated rationale "late in the process." *Id.* at 782-83.

Likewise, in *National TPS Alliance v. Noem*, the district court explained that bad faith can be found where "an agency's explanation for its action was pretextual." 2025 U.S. Dist. LEXIS 84544, at *8. The district court found that the government's reason to vacate, partially vacate, or terminate the temporary protected status ("TPS") for Venezuela and Haiti was pretextual and/or taken in bad faith, pointing to the "repeated discriminatory statements made by Secretary Noem and President Trump, the short timeframe in which decisions were made, the lack of legal and/or evidentiary support for the decisions, and the unprecedented nature of the decisions." *Id.* at *9. In short, there was a "troubling set of circumstances," including the animus of the decisionmakers,

"the anomalous procedures followed (the highly compressed time in which the decisions to vacate and then terminate were made and the precedential and unique nature of the decisions made), and the lack of bona fides for the decisions to vacate and then terminate." *Id.* at *11. Accordingly, the district court found that extra-record discovery was warranted.

In a separate *National TPS Alliance v. Noem* case concerning the termination of TPS designations for Honduras, Nicaragua, and Nepal, the district court also explained that "extra-record discovery was justified by evidence that the agency decision was pretextual." *Nat'l TPS All. v. Noem* (*Nat'l TPS II*), No. 25-cv-05687-TLT (SK), 2025 U.S. Dist. LEXIS 163072, at *6 (N.D. Cal. Aug. 21, 2025). There, pretext and bad faith could be found because there was a showing that the decisions "were based on a preordained determination to end the TPS program, rather than the objective review of the country conditions," including Ms. Noem's stated intent to alter the TPS program during her confirmation hearing, the lack of opportunity to review country conditions until later, and Ms. Noem's discriminatory statements. *Id.* at *6-7.

As in *DOC* and the *National TPS Alliance* cases, Plaintiffs have made a showing of pretext. For example, Defendant Rollins stated that "within the first hour of getting sworn in," her department was sending requests for information to the states to investigate an increase in benefits during the Biden administration. (*See* SAC ¶ 244, n.60.) Thus, like the Secretary in *DOC* and Ms. Noem in the *National TPS Alliance* cases, Defendant Rollins came into office with a preordained determination to seek the requested data. Moreover, taking Defendant Rollins at face value, demanding data within an hour (or even a day) of being sworn in is akin to "the highly compressed time" that was found problematic in *National TPS Alliance*. *See* 2025 U.S. Dist. LEXIS 84544, at *11. It is unclear how Defendants would have made any objective review of the data requests in such a short period. Thus, extra-record discovery is warranted.

In permitting extra-record discovery, the Court does not find that Plaintiffs are entitled to discovery as to the May 13, 2026 preliminary review and the potential misuse of the requested data for immigration enforcement. With respect to the former, Plaintiffs have not explained how the use of the May 13, 2026 preliminary review as a post-hoc rationalization for the data requests would be relevant to analysis of the case. As to the latter, while Plaintiffs may have valid

concerns regarding misuse of the requested data, Plaintiffs have not met the high standards required for supplementation and extra-record discovery on this issue. This finding does not affect the Court's ruling regarding the completion of the record; should documents before the agency be found that pertain to the use of the requested data for immigration enforcement purposes, such documents must still be added to the AR.

**iii. Privilege Log**

Finally, Plaintiffs seek a privilege log for any documents withheld on the basis of privilege, including deliberative privilege. In general, "deliberative materials are generally not part of the AR absent impropriety or bad faith by the agency." *Blue Mts. Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024). This is because "lawfulness of agency action [is assessed] based on the reasons offered by the agency," and "[d]eliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are ordinarily not relevant to that analysis." *Id.* at 445 (internal quotation omitted). Thus, "[b]ecause deliberative materials are not part of the administrative record to begin with, they are not required to be placed on a privilege log." *Id.* That said, "a showing of bad faith or improper behavior might justify production of a privilege log to allow the district [court] to determine whether excluded documents are actually deliberative." *Id.* (internal quotation omitted).

Here, as explained above, the Court has found that there is a showing of bad faith. In such situations, courts in this district have required a privilege log, including of documents withheld on the basis of deliberative process privilege. *See Nat'l TPS II*, 2025 U.S. Dist. LEXIS 163072, at *12-13. Accordingly, the Court will require a privilege log.

**B. Discovery Letter re RFPs**

As the Court has found that extra-record discovery is permitted, the Court turns to Plaintiffs' specific discovery requests.

RFP Nos. 1-3 concern the May 13, 2026 preliminary review. (Discovery Letter re RFPs at 2-3.) As Plaintiffs have not explained how this review was considered in making the demands for data -- which preceded the preliminary review -- the Court will not require this discovery.

RFP No. 4 seeks documents explaining Defendant Rollins' statement that "[USDA] asked

every state for the first time in history . . . to send us their [SNAP] data and let us with DOGE and a war room actually start going through this data to better understand how this explosion of SNAP benefits happened under Joe Biden." (Discovery Letter re RFPs at 3.) This request is directly relevant to the issue of bad faith and pretext, and thus production is required.

RFP No. 5 seeks documents describing and explaining Defendant USDA's decision to request data from EBT vendors and whether any materials were provided. (Discovery Letter re RFPs at 4.) This request goes to the dearth of documents concerning Defendants' actions pre-dating the first request for data, and thus production is required.

RFP No. 6 seeks data explaining Defendant USDA's determination that it had determined that each data element requested was necessary to complete its audit. (Discovery Letter re RFPs at 4.) Plaintiffs explain that this request is aimed at the absence of any internal documents concerning what Defendant USDA considered in determining the scope of its data demands. (*Id.*) This request goes to the issue of pretext and bad faith, and thus production is required.

RFP No. 7 seeks information regarding Defendant USDA's March 27, 2026 e-mail that it was pausing development on the National Accuracy Clearinghouse in order to leverage new technology in order to stop alleged abuse. (Discovery Letter re RFPs at 5.) While Defendants argue that the National Accuracy Clearinghouse is not at issue in this case, Plaintiffs point out that this issue tests their theory that Defendants are moving away from existing fraud protections in favor of less effective and less protective systems. (*Id.*) This request goes to the issue of pretext and bad faith, as well as the lack of documents explaining the departure from past practice, and thus production is required.

RFP No. 8 seeks communications between Defendants and any other federal agency, federal employee, federal contractor, or other third-party concerning the use or potential use of data collected for the SNAP Information Database.[2] (Discovery Letter re RFPs at 5.) As a general matter, such information would go to the issue of pretext and bad faith. Plaintiffs have agreed to meet and confer with Defendants about any overbreadth objection by discussing relevant

[2] It appears the SNAP Information Database is a proposed system to collect SNAP data. (*See* SAC ¶¶ 178-179.)

United States District Court
Northern District of California

custodians and deferring production of communications with White House officials other than DOGE; the Court therefore orders the parties to meet and confer on the scope of this request. (*See id.*)

RFP No. 9 seeks documents concerning the role of any other federal agency, federal employee, federal contractor, or third party regarding the data demands, analyzing the existence of waste or fraud in the SNAP program, and analyzing data held in the SNAP Information Database. (Discovery Letter re RFPs at 6.) Such information goes to the issue of pretext. As with RFP No. 8, Plaintiffs have agreed to meet and confer regarding overbreadth and defer production of White House documents. (*Id.*) The Court therefore orders the parties to meet and confer on the scope of this request.

RFP No. 10 seeks all documents concerning the use or potential use of the SNAP Information Database and data requests for immigration enforcement purposes. (Discovery Letter re RFPs at 6.) As Plaintiffs have not met their burden of demonstrating that such discovery is warranted, the Court will not require production.

RFP No. 11 seeks all documents reflecting meetings, videoconferences, or calls where the requests for data were discussed. (Discovery Letter re RFPs at 7.) Plaintiffs fail to explain why this request is relevant, but simply asserts that it is “plainly relevant.” (*Id.*) As Plaintiffs have not met their burden of demonstrating that such discovery is warranted, the Court will not require production.

RFP No. 12 seeks all documents concerning the use of SNAP data in the Palantir Pilot Program. (Discovery Letter re RFPs at 7.) Plaintiffs argue that this request concerns Defendant USDA’s decision to move away from existing fraud and waste protections in favor of systems such as the Palantir Pilot Program. (*Id.*) Based on the operative complaint, however, it appears the Palantir system concerns a repository of data for immigration enforcement. (*See* SAC ¶ 138.) As this goes to the issue of whether Defendants are seeking the data for immigration enforcement, the Court will not require production.

RFP No. 13 seeks all documents concerning the interpretation and implementation of Executive Order 14243 (“Stopping Waste, Fraud, and Abuse by Eliminating Information Silos”).

(Discovery Letter re RFPs at 7.) Defendants contend that this RFP is irrelevant because they have relied on statutory authority to seek records rather than the Executive Order. (*Id.*) Plaintiffs respond that Defendant USDA's initial data demand states that it was issued in furtherance of the Executive Order. (*Id.*; *see also* SAC, Exh. A.) Thus, such discovery appears relevant to the extent it concerns the data requests at issue. As to documents that are related to the Executive Order but not the data requests at issue, Plaintiffs do not explain how such production is relevant to the merits of this case. Accordingly, the Court will only require production of documents concerning the interpretation and implementation of the Executive Order as they relate to the data requests.

**C. Discovery Letter re Interrogatories**

Interrogatory No. 1 requires the identification of all individuals at Defendant USDA, DOGE, any other federal agency, or any third-party contractor involved in the decision to issue the data requests, the drafting of the challenged data demands, the design or development of the SNAP Information Database, and the preparation of the SNAP ID SORN.[3] (Discovery Letter re Interrogatories at 2.) Plaintiffs contend that such information is relevant because the identity of the individuals involved in these decisions go to the motivations for the data requests, as well as the extent to which individuals outside of Defendant USDA were involved in the decisionmaking process. (*Id.*) Defendants respond that this interrogatory is irrelevant because it seeks the identity of non-decisionmakers. (*Id.*) An AR, however, is not limited to documents provided to decisionmakers. Rather an AR includes "documents that were considered and relied upon by subordinates who provided recommendations to the decision-maker." *Regents of the Univ. v. United States Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 U.S. Dist. LEXIS 171805, at *8 (N.D. Cal. Oct. 17, 2017). Thus, to the extent that Defendants are arguing that non-decisionmakers are completely irrelevant to the inquiry at issue, Defendants misapprehend the law. The Court finds that the identity of individuals involved in the decisionmaking process is discoverable, as this goes to ensuring that the record is complete. *See Authors Guild v. NEH*, No. 25-cv-3923 (CM), 2025 U.S. Dist. LEXIS 262136, at *20 (S.D.N.Y. Dec. 18, 2025) ("[T]o the

[3] A SORN, or System of Records Notice, appears to be required by the Privacy Act before proceeding further with a proposed data collection. (SAC ¶ 13.)

United States District Court
Northern District of California

extent individuals outside NEH participated in or influenced the challenged decision, materials reflecting their involvement are likewise properly subject to discovery.”).

Interrogatory No. 2 seeks the identity of individuals who were part of the SNAP Program Integrity Data Team, as listed in the May 13, 2026 preliminary report. (Discovery Letter re Interrogatories at 2.) As above, the Court finds that such information is not discoverable.

Interrogatory No. 3 seeks the identity of anyone who has ever had access to the SNAP Information Database. (Discovery Letter re Interrogatories at 3.) Plaintiffs make no specific argument for why the identity of these individuals is relevant to the propriety of the data requests at issue and therefore have not met their burden of showing that this discovery is warranted.

Interrogatory No. 4 seeks the identity of any analysis, report, memorandum, statistical analysis or policy recommendation developed using data collected for the SNAP Information Database. (Discovery Letter re Interrogatories at 3.) Plaintiffs contend that this goes to understanding the true intent for the data requests. As such information goes to the issue of pretext and bad faith, the Court will permit this discovery.

Interrogatory No. 5 seeks the identity of individuals involved in reviewing and responding to Plaintiffs’ proposed edits to Defendant USDA’s proposed data and security protocols. (Discovery Letter re Interrogatories at 4.) Plaintiffs assert that this information is discoverable because Defendants put at issue their rejection of Plaintiffs’ proposed data and security protocols. (*Id.*) Plaintiffs fail to explain how these protocols are at issue in the litigation and their relevance to the data requests, and therefore have not met their burden of showing that this discovery is warranted.

Interrogatory No. 6 seeks the identity of any agreement, draft agreement, or proposed agreement between Defendant USDA and another agency or party to share data from the SNAP Information Database. (Discovery Letter re Interrogatories at 4.) Interrogatory No. 7, in turn, asks for the basis for the decision to enter into such an agreement and the anticipated use of data that would result from the agreement. (*Id.* at 5.) Plaintiffs contend that this is related to whether Defendants is using the SNAP data in ways that do not comply with the law. (*Id.* at 4.) Plaintiffs, however, do not explain how this information would fall into one of the categories permitted for

supplementation of the AR. Accordingly, the Court finds that Plaintiffs have not met their burden of showing that this discovery is warranted.

Defendants shall complete the AR within **30 days** of the date of this order. Defendants shall also produce the requested discovery as required by this order and a privilege log within **30 days** of the date of this order.

This order disposes of Dkt. Nos. 179, 180, and 181.

IT IS SO ORDERED.

Dated: August 31, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California